Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' PROPOSED JOINT PLAN OF REORGANIZATION, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (IV) APPROVING THE RIGHTS OFFERING PROCEDURES AND RELATED MATERIALS, (V) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND (VI) GRANTING RELATED RELIEF

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

# TABLE OF CONTENTS

**Page**

**RELIEF REQUESTED** .............................................................................................1

**JURISDICTION AND VENUE** ..............................................................................1

**PLAN SUMMARY** .................................................................................................1

**THE NEW NOTES AND NEW PREFERRED EQUITY RIGHTS OFFERINGS** ................1

**OVERVIEW OF THE RIGHTS OFFERING PROCEDURES** ...............................................1

**BASIS FOR RELIEF** ..............................................................................................1

**I.      THE COURT SHOULD APPROVE THE DISCLOSURE STATEMENT.** .................1

     A.      The Standard for Approval of the Disclosure Statement. .......................................1

     B.      The Disclosure Statement Contains Adequate Information in Accordance
            with Section 1125 of the Bankruptcy Code. ............................................................1

     C.      The Disclosure Statement Provides Sufficient Notice of Injunction,
            Release, and Exculpation Provisions in the Plan. ...................................................1

**II.     THE COURT SHOULD APPROVE THE DISCLOSURE STATEMENT
       HEARING NOTICE, DISCLOSURE STATEMENT OBJECTION
       DEADLINE, AND DISCLOSURE STATEMENT HEARING DATE** ........................1

     A.      The Court Should Approve the Disclosure Statement Hearing Notice ...................1

     B.      The Court Should Approve the Disclosure Statement Objection Deadline
            and Disclosure Statement Hearing Date ..................................................................1

**III.    THE COURT SHOULD APPROVE THE SOLICITATION AND VOTING
       PROCEDURES, INCLUDING THE VOTING AND TABULATION
       PROCEDURES, THE MATERIALS, AND THE TIMELINE FOR
       SOLICITING VOTES ON THE PLAN.** ...........................................................1

     A.      The Standard for Approval of Solicitation and Voting Procedures. ........................1

     B.      The Court Should Approve the Forms of the Ballots. ..............................................1

     C.      The Court Should Approve the Form and Distribution of the Solicitation
            Packages and Cover Letter to Parties Entitled to Vote on the Plan. .......................1

D.    Completion of Ballots. ............................................................................1

E.    General Ballot Tabulation and Voting Procedures. ..................................1

F.    The Court Should Approve the Notice of Confirmation Hearing............................1

G.    The Court Should Approve the Plan Supplement Notice. ........................1

H.    The Court Should Approve the Form of Notices to Non-Voting Classes. ..............1

I.    The Court Should Approve the Notices to Contract and Lease
       Counterparties. ..........................................................................................1

J.    The Court Should Approve the Voting Record Date, Solicitation Deadline,
       and Voting Deadline. ................................................................................1

IV.    **THE COURT SHOULD APPROVE THE PROCEDURES FOR
         CONFIRMING THE PLAN.** ...........................................................................1

A.    The Court Should Approve the Confirmation Hearing Date. ...................1

B.    The Court Should Approve the Procedures for Filing Objections to the
       Plan. ..........................................................................................................1

V.    **THE COURT SHOULD APPROVE THE RIGHTS OFFERING
        PROCEDURES.** ...............................................................................................1

A.    The Court Should Approve the Rights Offering Procedures and the Form
       of the Rights Offering Materials. .............................................................1

**NON-SUBSTANTIVE MODIFICATIONS** ................................................................1

**NOTICE** ..........................................................................................................................1

**NO PRIOR REQUEST** ..................................................................................................1

EXHIBIT A  Proposed Disclosure Statement Order

SCHEDULE 1  Disclosure Statement

SCHEDULE 2  Form of Solicitation and Voting Procedures

SCHEDULE 3A  Form of Class 3 Ballot

SCHEDULE 3B  Form of Class 4 Ballot

SCHEDULE 3C  Form of Class 5 Master Ballot

SCHEDULE 3D  Form of Class 5 Beneficial Holder Ballot

SCHEDULE 3E  Form of Class 6 Ballot

SCHEDULE 3F  Form of Class 10 Ballot

SCHEDULE 4  Form of Unimpaired Non-Voting Status Notice

SCHEDULE 5  Form of Impaired Non-Voting Status Notice

SCHEDULE 6  Form of Notice to Disputed Claim Holders

SCHEDULE 7  Form of Cover Letter

SCHEDULE 8  Form of Confirmation Hearing Notice

SCHEDULE 9  Form of Plan Supplement Notice

SCHEDULE 10  Form of Assumption Notice

SCHEDULE 11  Form of Rejection Notice

SCHEDULE 12  New Notes Rights Offering Procedures

SCHEDULE 13  New Preferred Equity Rights Offering Procedures

SCHEDULE 14A  Form of New Notes Rights Exercise Form

SCHEDULE 14B  Form of New Preferred Equity Rights Exercise Form

SCHEDULE 14C  Form of AI Questionnaire

SCHEDULE 15  Form of Disclosure Statement Hearing Notice

21st Century Oncology Holdings, Inc. ("21CH") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully state the following in support of this motion:

## **Relief Requested**

1.    The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, granting the following relief and such other relief as is just and proper:

a.    ***Disclosure Statement.*** Approving the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* substantially in the form annexed to the Order as Schedule 1 (the "Disclosure Statement")[1] as containing "adequate information" pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code");

b.    ***Disclosure Statement Hearing Notice***. Approving the manner and form of notice of the hearing to consider approval of the Disclosure Statement (the "Disclosure Statement Hearing") and the notice thereof (the "Disclosure Statement Hearing Notice"), substantially in the form annexed to the Order as Schedule 15;

c.    ***Solicitation and Voting Procedures.*** Approving procedures for: (i) soliciting, receiving, and tabulating votes to accept or reject the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Plan (the "Solicitation and Voting Procedures"), substantially in the form annexed to the Order as Schedule 2;

d.    ***Ballots.*** Approving the Class 3 ballot, Class 4 ballot, Class 5 master ballot, Class 5 beneficial holder ballot, Class 6 ballot, and Class 10 ballot (collectively, the "Ballots"), substantially in the forms annexed to the Order as Schedules 3A, 3B, 3C, 3D, 3E, and 3F respectively;

e.    ***Solicitation Packages.*** Finding that the solicitation materials and documents included in the solicitation packages (the "Solicitation Packages") that will be sent to, among others, holders of Claims or Interests entitled to vote to accept or reject the Plan, comply with

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Joint Chapter 11 Plan of Reorganization of* 21st Century Oncology Holdings, Inc. *and its Debtor Affiliates*, filed on July 14, 2017 [Docket No. 205] (as may be amended, supplemented, or modified from time to time, the "Plan").

Rules 3017(d) and 2002(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");

f.     ***Non-Voting Status Notices.***  Approving: (i) the form of notice applicable to holders of Claims or Interests that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, presumed to accept the Plan; (ii) the form of notice applicable to holders of Claims or Interests that are impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, presumed to reject the Plan; and (iii) the form of notice applicable to holders of Claims or Interests that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim or Interest (each, a "Non-Voting Status Notice"), substantially in the forms annexed to the Order as Schedule 4, Schedule 5, and Schedule 6, respectively;

g.     ***Cover Letter.***  Approving the form of letter (the "Cover Letter") that the Debtors will send to holders of Claims or Interests entitled to vote to accept or reject the Plan urging such parties to vote in favor of the Plan, substantially in the form annexed to the Order as Schedule 7;

h.     ***Confirmation Hearing Notice.***  Approving the form and manner of notice of the hearing to be held by the Court to consider Confirmation of the Plan (the "Confirmation Hearing," and the notice thereof, the "Confirmation Hearing Notice") pursuant to section 1129 of the Bankruptcy Code, substantially in the form annexed to the Order as Schedule 8;

i.     ***Plan Supplement Notice.***  Approving the notice related to the filing of the Plan Supplement, substantially in the form annexed to the Order as Schedule 9 (the "Plan Supplement Notice");

j.     ***Assumption and Rejection Notices.***  Approving the form of notices to counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan (the "Assumption Notice" and the "Rejection Notice," respectively), substantially in the forms annexed to the Order as Schedule 10 and Schedule 11, respectively;

k.     ***Rights Offering Procedures.***  Approving procedures and instructions for exercising New Notes Rights and New Preferred Equity Rights (collectively, the "Rights Offering Procedures"), substantially in the forms annexed to the Order as Schedule 12 and Schedule 13 respectively.

2

l.    ***Rights Offering Materials.***    Approving the form of materials necessary to the consummation of the Rights Offerings under the terms of the Rights Offering Procedures, including (i) the Backstop Purchase Agreement;[2] (ii) the form of New Notes Rights Exercise Form (as defined below), substantially in the form annexed to the Order as <u>Schedule 14A</u>; (iii) the form of New Preferred Equity Rights Exercise Form (as defined below), substantially in the form annexed to the Order as <u>Schedule 14B</u>; and (iv) the form of the AI Questionnaire (as defined below), substantially in the form annexed to the Order as <u>Schedule 14C</u> (subclauses (i), (ii), (iii), and (iv), collectively, the "<u>Rights Offering Materials</u>").

m.    ***Confirmation Timeline.***    Establishing the following dates and deadlines with respect to Confirmation, subject to modification as necessary (the "<u>Confirmation Timeline</u>") (all in prevailing Eastern Time):

| Event | Date | Description |
|---|---|---|
| Disclosure Statement Objection Deadline | September 12, 2017, at 4:00 p.m. | Deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to be ***actually received*** by the appropriate notice parties (the "<u>Disclosure Statement Objection Deadline</u>") |
| Disclosure Statement Objection Response Deadline | September 18, 2017 at 4:00 p.m. | Deadline by which responses to objections to the Disclosure Statement must be filed with the Court and served so as to be ***actually received*** by the appropriate notice parties (the "<u>Disclosure Statement Objection Response Deadline</u>") |
| Disclosure Statement Hearing Date | September 19, 2017 | Date for the hearing to consider the approval of the Debtors' Disclosure Statement (the "<u>Disclosure Statement Hearing Date</u>") |

---

[2]    The Debtors are seeking separate approval by the Court of the Backstop Purchase Agreement pursuant to the Backstop Approval Motion (as defined herein).  The Court-approved Backstop Purchase Agreement shall be included in the Rights Offering Materials.

3

| Event | Date | Description |
|---|---|---|
| Voting Record Date | September 19, 2017 | Date for determining (i) which holders of Claims or Interests in the Voting Classes, as defined herein, are entitled to vote to accept or reject the Plan and (ii) whether Claims or Interests have been properly assigned or transferred to an assignee under Bankruptcy Rule 3001(e) such that the assignee or transferee, as applicable, can vote to accept or reject the Plan as the holder of a Claim or Interest (the "Voting Record Date") |
| Solicitation Deadline | Seven business days following entry of the Order | Deadline for distributing Solicitation Packages, including Ballots, to holders of Claims or Interests entitled to vote to accept or reject the Plan (the "Solicitation Deadline") |
| Publication Deadline | September 28, 2017 | Date by which the Debtors will submit the Confirmation Hearing Notice in a substantially similar format modified for publication (the "Publication Notice") |
| Deadline to File Plan Supplement | October 17, 2017 | Deadline by which the Debtors will file the Plan Supplement |
| Plan Objection Deadline | October 26, 2017, at 4:00 p.m. | Deadline by which objections to the Plan must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Plan Objection Deadline") |
| Assumption/Rejection Objection Deadline | October 26, 2017, at 4:00 p.m. | Deadline by which objections to the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases, or the proposed Cure Claims associated therewith, must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Assumption/Rejection Objection Deadline") |

| Event | Date | Description |
|---|---|---|
| Voting Deadline | October 26, 2017, at 5:00 p.m. | Deadline by which *all* Ballots must be properly executed, completed, and delivered so that they are *actually received* (the "Voting Deadline") by Kurtzman Carson Consultants LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent") |
| Deadline to File Confirmation Brief | November 6, 2017, at 12:00 p.m. | Date by which the Debtors shall file their brief in support of Confirmation (the "Confirmation Brief Deadline") |
| Plan Objection Response Deadline | November 6, 2017, at 12:00 p.m. | Deadline by which responses to objections to the Plan must be filed with the Court and served so as to be *actually received* by the appropriate notice parties (the "Plan Objection Response Deadline") |
| Deadline to File Voting Report | November 6, 2017, at 12:00 p.m. | Date by which the report tabulating the voting on the Plan (the "Voting Report") shall be filed with the Court |
| Confirmation Hearing Date | November 9, 2017, at 10:00 a.m.[3] | Date and time for the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing Date") |

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

3      Subject to the Court's availability.

4.      The bases for the relief requested herein are sections 105, 363, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, and 3020, and Rules 3017-1, 3018-1, and 3020-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules").

## Plan Summary

5.      As of the Petition Date, the Debtors and the Restructuring Support Parties, which together hold in excess of 66.67% of the outstanding principal amount of the Debtors' prepetition funded indebtedness, have reached an agreement to support and pursue a series of transactions to effectuate a comprehensive restructuring of the Debtors' businesses that will deleverage the Debtors' balance sheet.  These restructuring transactions are embodied in that certain Restructuring Support Agreement, dated as of May 25, 2017 (including all schedules and exhibits thereto and as amended, modified, or otherwise supplemented, the "Restructuring Support Agreement"), and will reduce the Debtors' net debt by more than $500 million, or approximately 34% of the Debtors' prepetition funded indebtedness.

6.      In accordance with the Restructuring Support Agreement, the Debtors filed the Plan on July 14, 2017 to implement the restructuring.

7.      The Plan provides for the following distributions to be made to the Debtors' creditors:[4]

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|---|---|---|
| 1 | Other Secured Claims | Except to the extent that a holder of an Allowed Other Secured Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld) agree in writing to less favorable |

---

[4]    The following is intended to provide a summary of the "Treatment of Classes of Claims and Interests" section of the Plan. To the extent that this summary is inconsistent with the Plan, the Plan shall control.

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|-------|----------------|-------------------------------------|
| | | treatment of its Allowed Other Secured Claim, each holder of an Allowed Other Secured Claim shall receive, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Other Secured Claim, the following, as determined by the Debtors or the Reorganized Debtors, as applicable, in each case with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld: (A) payment in full, in Cash, of the unpaid portion of its Allowed Other Secured Claim on the following: (i) if such Allowed Other Secured Claim is Allowed as of the Effective Date, the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, the date such Allowed Other Secured Claim becomes due and payable, or as soon thereafter as is reasonably practicable); and (ii) if such Allowed Other Secured Claim is not Allowed as of the Effective Date, the date such Other Secured Claim is Allowed or as soon as reasonably thereafter practicable; (B) reinstatement pursuant to section 1124 of the Bankruptcy Code; or (C) such other treatment that would render its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. |
| 2 | Other Priority Claims | Except to the extent that a holder of an Allowed Other Priority Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld), agree in writing to less favorable treatment of its Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Other Priority Claim, payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the following: (i) if such Allowed Other Priority Claim is Allowed as of the Effective Date, the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, the date such Allowed Other Priority Claim becomes due and payable, or as soon thereafter as is reasonably practicable); and (ii) if such Allowed Other Priority Claim is not Allowed as of the Effective Date, the date such Other Priority Claim is Allowed or as soon thereafter as reasonably practicable. |
| 3 | MDL Claims | Except to the extent that a holder of an Allowed MDL Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld) agree in writing to less favorable treatment of its Allowed MDL Claim, on the Effective Date or as soon thereafter as reasonably practicable, each holder of an Allowed MDL Claim shall receive, in full and complete satisfaction, |

7

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|---|---|---|
| | | settlement, discharge and release of, and in exchange for, its Allowed MDL Claim, the following:  (A) its Pro Rata share of loans provided under the New MDL Term Loan Facility in an aggregate principal amount equal to (i) the aggregate amount of MDL Obligations owned or held by such holder as of immediately prior to the Effective Date <u>minus</u> (ii) the unpaid portion of its Allowed MDL Adequate Protection Payments; and (B) payment in full in Cash of the unpaid portion of its Allowed MDL Adequate Protection Payments. |
| 4 | First Lien Claims | Except to the extent that a holder of an Allowed First Lien Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld) agree to less favorable treatment of its Allowed First Lien Claim, on the Effective Date or as soon thereafter as reasonably practicable, each holder of an Allowed First Lien Claim, shall receive in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed First Lien Claim, the following:  (A) loans provided under the New First Lien Term Loan Credit Facility in an aggregate principal amount equal to (i) the aggregate amount of First Lien Obligations owned or held by such holder as of immediately prior to the Effective Date, <u>minus</u> (ii) the Exchanged Credit Facility Claims of such holder; *provided*, *however*, that no distributions shall be made on any of the Exchanged Credit Facility Claims, <u>minus</u> (iii) the unpaid portion of its Allowed First Lien Adequate Protection Payments; and (B) payment in full in Cash of the unpaid portion of its Allowed First Lien Adequate Protection Payments. |
| 5 | Note Claims | Except to the extent that a holder of an Allowed Note Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld) agree to less favorable treatment of its Allowed Note Claim, on the Effective Date or as soon thereafter as reasonably practicable, each holder of an Allowed Note Claim shall receive, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Note Claim, its Pro Rata share of: (i) the New Notes Rights (but only to the extent such holder is an Accredited Investor); (ii) the New Preferred Equity Rights (but only to the extent such holder is an Accredited Investor); and (iii) its Pro Rata share of the New Common Stock Equity Pool (subject to dilution on account of the shares of New Common Stock issuable upon conversion of the New Preferred Equity, the shares of New Common Stock issuable upon exercise of the New Warrants, and the Management Incentive Plan Equity).  The New Common Stock in the New Common Stock Equity Pool shall be distributed on a |

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|-------|----------------|-------------------------------------|
| | | Pro Rata basis to (a) holders of Allowed Note Claims and (b) holders of Allowed General Unsecured Claims that receive shares of the New Common Stock Equity Pool in accordance with the terms of this Plan. |
| 6 | General Unsecured Claims | Except to the extent that a holder of an Allowed General Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld), agree to less favorable treatment of its Allowed General Unsecured Claim, on the Effective Date or as soon thereafter as reasonably practicable, each holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed General Unsecured Claim, its Pro Rata share of either: (A) if such Allowed General Unsecured Claim (i) is less than or equal to $1,000,000 and such holder has not properly made the New Common Stock Election on a properly cast ballot or (ii) is greater than $1,000,000 and such holder has properly made the Convenience Claim Election on a properly cast ballot (*provided*, that in making such election, the holder has agreed to reduce the amount of such Allowed General Unsecured Claim for purposes of voting and distributions under the Plan to $1,000,000), its Pro Rata share of the Convenience Claim Distribution; or (B) if such Allowed General Unsecured Claim (i) is greater than $1,000,000 and such holder has not properly made the Convenience Claim Election on a properly cast ballot or (ii) is less than or equal to $1,000,000 and such holder has properly made the New Common Stock Election on a properly cast ballot, its Pro Rata share of the New Common Stock Equity Pool (subject to dilution on account of the shares of New Common Stock issuable upon conversion of the New Preferred Equity, the shares of New Common Stock issuable upon exercise of the New Warrants, and the Management Incentive Plan Equity). The New Common Stock in the New Common Stock Equity Pool shall be distributed on a Pro Rata basis to (a) holders of Allowed Note Claims and (b) holders of Allowed General Unsecured Claims that receive shares of the New Common Stock Equity Pool in accordance with the terms of this Plan. For the avoidance of doubt, if any holder in Class 6 holds more than one Allowed General Unsecured Claim, its Allowed General Unsecured Claims shall not be aggregated for purposes of any distribution to be made under the Plan. |
| 7 | Intercompany Claims | Each Allowed Intercompany Claim shall be canceled as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, with the consent of the Requisite Consenting First Lien Lenders and Requisite Backstop Parties, shall be Reinstated or compromised; *provided*, that the treatment of the Allowed |

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|-------|----------------|-------------------------------------|
|       |                | Intercompany Claims shall be effectuated in a tax efficient manner. No distribution shall be made on account of any Intercompany Claim. |
| 8 | Section 510(b) Claims | Holders of any Section 510(b) Claims shall not receive any recovery on account of such claims. |
| 9 | Intercompany Interests | Each Allowed Intercompany Interest shall be canceled as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, with the consent of the Requisite Consenting First Lien Lenders and Requisite Backstop Parties, shall be Reinstated or compromised.  No distribution shall be made on account of any Intercompany Interest. |
| 10 | Interests in 21CH and 21CI[5] | On the Effective Date, all Interests in 21CH shall be canceled as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, with the consent of the Requisite Consenting First Lien Lenders and Requisite Backstop Parties, shall be Reinstated or compromised.  In the event that (i) all Classes of Claims entitled to vote on the Plan vote to accept the Plan, (ii) there are no Allowed Section 510(b) Claims, and (iii) holders of Allowed Interests in 21CH and 21CI in Class 10 vote to accept the Plan, each holder of an Allowed Interest in 21CH (which consists of 21CI and CPPIB) shall receive, on the Effective Date or as soon thereafter as reasonably practicable, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Interests, its Pro Rata share of the New Warrants; *provided*, *however*, that if each of clauses (i), (ii), and (iii) in this sentence are not satisfied, then holders of Allowed Interests in 21CH shall receive no distribution on account of such Allowed Interests. <br><br> On the Effective Date, all Interests in 21CI shall be canceled, and holders of Allowed Interests in 21CI shall receive no distribution on account of such Allowed Interests. |

8.     In accordance with the foregoing description of the treatment of holders of Claims or Interests, the Plan contemplates classifying holders of Claims or Interests into certain Classes of Claims or Interests for all purposes, including with respect to voting on the Plan, pursuant to

---

[5]     Treatment of non-debtor Interests in Debtors other than 21CH and 21CI to be determined.

10

section 1126 of the Bankruptcy Code.  The following chart represents the Classes of Claims or

Interests under the Plan:[6]

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | MDL Claims | Impaired | Entitled to Vote |
| 4 | First Lien Claims | Impaired | Entitled to Vote |
| 5 | Note Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote (Presumed to Accept/Reject) |
| 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Presumed to Reject) |
| 9 | Intercompany Interests | Unimpaired/Impaired | Not Entitled to Vote (Presumed to Accept/Reject) |
| 10 | Interests in 21CH and 21CI | Impaired | Entitled to Vote |

9.      Based on the foregoing (and as discussed in greater detail herein), the Debtors are

proposing to solicit votes to accept or reject the Plan from holders of Claims or Interests in

Classes 3, 4, 5, 6, and 10 (each, a "Voting Class" and collectively, the "Voting Classes").  The

Debtors are ***not*** proposing to solicit votes from holders of Claims or Interests in Classes 1, 2, 7,

8, and 9 (each a "Non-Voting Class" and collectively, the "Non-Voting Classes").

---

[6]   The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor.  The classifications set forth in Classes 1 through 10 shall be deemed to apply to each Debtor, but any Class that is vacant as to a particular Debtor will be treated in accordance with Article III.3.4 of the Plan.  The Debtors reserve the right to modify the Plan in accordance with Article X thereof, including the right to withdraw the Plan as to any individual Debtor at any time before the Confirmation Date.

## The New Notes and New Preferred Equity Rights Offerings[7]

10.     The Plan contemplates the consummation of a New Notes Rights Offering and a New Preferred Equity Rights Offering (collectively, the "Rights Offerings") pursuant to which each holder of an Allowed Note Claim as of the Rights Offering Record Date (including any investment advisors, managers, managed funds or accounts, intermediaries and/or nominees who hold Allowed Note Claims) that is an Accredited Investor (each, a "Rights Offering Participant") will be entitled to receive non-transferable, non-certificated rights, but not the obligation, to purchase such Rights Offering Participant's *pro rata* share (based on its respective holdings of the aggregate outstanding principal amount of Notes as of the Rights Offering Record Date) of: (i) New Second Lien Notes in an aggregate original principal amount of $200,000,000 under the New Notes Rights Offering; and (ii) shares of New Preferred Equity with an aggregate initial liquidation value of $88,235,000 under the New Preferred Equity Rights Offering.  The Debtors have entered into the Backstop Purchase Agreement to ensure that, in the event the Rights Offerings are undersubscribed, they will nonetheless receive sufficient proceeds to meet their obligations under the Plan and Restructuring Support Agreement.[8] The Rights Offerings are vital components of the Debtors' comprehensive restructuring under the Plan.  As such, the terms of the Rights Offerings have been extensively negotiated among the Debtors and certain of their key stakeholders.

---

[7]    The following is intended to provide a summary of the Rights Offering Procedures.  To the extent that this summary is inconsistent with the Rights Offering Procedures, the Rights Offering Procedures shall control.  Capitalized terms not otherwise defined in this section have the meanings ascribed to them in the applicable Rights Offering Procedures.

[8]    For a detailed description of the Rights Offerings and Backstop Purchase Agreement, see *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Enter Into Backstop Purchase Agreement, (B) Pay Specified Payment and Related Expenses, (C) Provide Indemnification to Certain Parties and (II) Granting Related Relief* [Docket No. 200] (the "Backstop Approval Motion").

## Overview of the Rights Offering Procedures

11.     Approval of the Rights Offering Procedures is necessary to successfully implement the Rights Offerings, and, as a corollary, the Plan.  The Rights Offering Procedures include the following material provisions:

- **Eligibility:** Only Rights Offering Participants that have timely and validly completed and returned to Kurtzman Carson Consultants LLC, the subscription agent for the Rights Offerings (in such capacity, the "Subscription Agent"), an accredited investor questionnaire (the "AI Questionnaire"), which will be sent to each Rights Offering Participant concurrently with the distribution of the subscription exercise forms for the New Notes Rights Offering (the "New Notes Rights Exercise Form") and the New Preferred Equity Rights Offering (the "New Preferred Equity Rights Exercise Form" and together with the New Notes Rights Exercise Form, the "Rights Exercise Forms"), may participate in the Rights Offerings; provided, however, that each Backstop Party that holds an Allowed Note Claim as of the Rights Offering Record Date (i) shall be deemed to be an Accredited Investor and a Rights Offering Participant and (ii) shall not be required to complete and return an AI Questionnaire as a condition to its right to participate in the Rights Offerings.  Each Rights Offering Participant is entitled to receive sufficient copies of the AI Questionnaire for distribution to the beneficial owners of the Senior Notes for whom such Rights Offering Participant holds such Senior Notes.

- **Right to Purchase Rights Offering Shares:** Each Rights Offering Participant will be entitled to receive New Notes Rights and New Preferred Equity Rights, but not the obligation, to purchase such Rights Offering Participant's pro rata share of:  (i) New Second Lien Notes with an aggregate original principal amount of $200,000,000; and (ii) shares of New Preferred Equity with an aggregate initial liquidation value of $88,235,000.

- **Commencement and Expiration of the Rights Offerings; Rights Offerings Record Date**:  The Rights Offerings shall commence on the day upon which the Rights Exercise Forms and the AI Questionnaires are mailed to holders of Allowed Note Claims as of the Rights Offering Record Date.  The Rights Offerings shall expire at 5:00 p.m. (ET) on the twentieth (20th) calendar day (or if such day is not a Business Day, the next Business Day) after the Rights Offering Commencement Date (the period from the Rights Offering Commencement Date to the

13

Rights Offering Termination Time, the "<u>Subscription Period</u>"), and the Rights Offering Record Date shall be September 19, 2017.

- **<u>Exercise of Rights:</u>** In order to validly exercise New Notes Rights and New Preferred Equity Rights, each Rights Offering Participant that elects to participate in the Rights Offerings must have timely satisfied each of the Notes Rights Offering Conditions and the Equity Rights Conditions. Any Rights Offering Participant that has timely satisfied each of the Notes Rights Offering Conditions and the Equity Rights Offering Conditions shall be deemed to have made a binding, irrevocable election to exercise its New Notes Rights and New Preferred Equity Rights to the extent set forth in the Rights Exercise Forms delivered by such Rights Offering Participant; <u>provided</u>, <u>however</u>, that a Rights Offering Participant's right to participate in the Rights Offerings shall remain subject to its compliance with the Additional Conditions. Each Rights Offering Participant may exercise all or any portion of such Rights Offering Participant's New Notes Rights and/or New Preferred Equity Rights; <u>provided</u>, <u>however</u>, that a Rights Offering Participant shall not be permitted to participate in the Rights Offerings unless such Rights Offering Participant participates in both the New Preferred Equity Rights Offering and the New Notes Rights Offering in an equal proportionate amount.

- **<u>Transfer Restriction:</u>** The New Notes Rights and New Preferred Equity Rights received by each Rights Offering Participant shall not be transferable or assignable. The New Notes Rights and New Preferred Equity Rights may only be exercised by or through the Rights Offering Participant entitled to exercise such rights on the Rights Offering Record Date. Any transfer or attempted transfer of the New Notes Rights or the New Preferred Equity Rights will be null and void and the Debtors will not treat any purported transferee thereof as the holder of any New Notes Rights or New Preferred Equity Rights.

- **<u>Revocation</u>:** Once the Rights Offering Participant has properly exercised its New Notes Rights and New Preferred Equity Rights by making a Binding Rights Election, such exercise will not be permitted to be revoked by such Rights Offering Participant.

12.    The Rights Offering Procedures have been designed to efficiently transmit all materials necessary for participation in the Rights Offerings. Moreover, the Backstop Purchase Agreement, the AI Questionnaire, the New Notes Rights Exercise Form, and the New Preferred Equity Rights Exercise Form have been drafted to assure the clear communication of the

requirements for, and to facilitate, such participation. Thus, the Rights Offering Procedures afford holders of Allowed Note Claims a fair and reasonable opportunity to participate in the Rights Offerings.

### Basis for Relief

### I.    The Court Should Approve the Disclosure Statement.

### A.    The Standard for Approval of the Disclosure Statement.

13.    Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims or interests entitled to vote on the plan. 11 U.S.C. § 1125. Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

14.    A disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders, if applicable, to vote on a plan. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *see also In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1995) (adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the chapter 11 policy of fair settlement through a negotiation process between informed interested parties" (internal citation omitted)); *see also In re Amfesco Indus., Inc.*, No. CV-88-2952 (JBW), 1988 WL 141524, at *5 (E.D.N.Y. Dec. 21, 1988) (stating that "[u]nder

15

section 1125 of the Bankruptcy Code, a reasonable and typical creditor or equity security holder must be provided 'adequate information' to make an informed judgment regarding a proposed plan."); *BSL Operating Corp. v. 125 E Taverns, Inc. (In re BSL Operating Corp.)*, 57 B.R. 945, 950 (Bankr. S.D.N.Y. 1986) (stating that "[s]ection 1125 might be described as a non-rigid 'how-to-inform' section . . . . A disclosure statement . . . is evaluated only in terms of whether it provides sufficient information to permit enlightened voting by holders of claims or interests."); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (the adequacy of a disclosure statement is to be "determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negation process between informed interested parties.").

15.    "Adequate information" is a flexible standard, based on the facts and circumstances of each case.  11 U.S.C. § 1125(a)(1) ("'adequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records").  The Court has broad discretion in determining whether a disclosure statement contains adequate information. *See Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a):  'Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case.'" (quoting H.R. Rep. No. 595, at 408–09 (1977))); *see also In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) (explaining that "what constitutes adequate information in any particular situation is determined on a case-by-case basis . . . with the determination being largely within the discretion of the bankruptcy court").  This grant of discretion was intended to

16

permit courts to tailor the disclosures made in connection with a plan of reorganization to facilitate the efficient reorganization of debtors in a broad range of businesses and circumstances. *See* H.R. Rep. No. 95-595 at 409, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6364–65 ("In reorganization cases, there is frequently great uncertainty. Therefore, the need for flexibility is greatest.").

16. In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

    a.    the events that led to the filing of a bankruptcy petition;

    b.    the relationship of the debtor with its affiliates;

    c.    a description of the available assets and their value;

    d.    the company's anticipated future;

    e.    the source of information stated in the disclosure statement;

    f.    the debtors' condition while in chapter 11;

    g.    claims asserted against the debtor;

    h.    the estimated return to creditors under a chapter 7 liquidation;

    i.    the future management of the debtor;

    j.    the chapter 11 plan or a summary thereof;

    k.    financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

    l.    information relevant to the risks posed to creditors under the plan;

    m.    the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

    n.    litigation likely to arise in a nonbankruptcy context; and

    o.    tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).    Disclosure regarding all topics is not necessary in every case.  *See In re U.S. Brass Corp.*, 194 B.R. at 424; *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

**B.**     **The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

17.     The Disclosure Statement provides "adequate information" to allow holders of Claims or Interests in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, without limitation:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Solicitation and Voting Procedures | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article IV |
| Debtors' Corporate History, Structure, and Business Overview | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article V |
| Events Leading to the Chapter 11 Filings | An overview of the Debtors' out-of-court restructuring efforts in response to deteriorating economic conditions, including the negotiations with respect to the Plan and the Restructuring Support Agreement. | Article V |
| Developments in the Chapter 11 Cases | A description of the developments in the Debtors' Chapter 11 Cases. | Article VI |

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Summary of the Plan | Detailed information relating to the Plan, including among other things, the treatment of Claims and Interests thereunder. | Article VII |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan, including a liquidation analysis, financial projections, and a valuation. | Article VIII |
| Risk Factors | Certain risks associated with recoveries under the Plan and the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article IX |
| Certain Securities Laws Matters | A description of the applicability of section 1145 of the Bankruptcy Code and applicable securities laws related to the issuance of New Common Stock, New Preferred Equity, New Second Lien Notes, and/or New Warrants under the Plan. | Article X |
| Certain United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax consequences of the Plan. | Article XI |
| Recommendation | A recommendation by the Debtors that holders of Claims or Interests in the Voting Classes should vote to accept the Plan. | Article XII |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors. | Exhibit D |
| Valuation Analysis | A valuation of the post-Confirmation going concern value of the Debtors. | Exhibit E |
| Financial Projections | Financial projections relating to the Debtors' post-emergence operations. | Exhibit F |

18.     Based on the foregoing, the Debtors submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to holders of Claims or Interests entitled to vote to accept or reject the Plan.  Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" and therefore should be approved.

### C.     The Disclosure Statement Provides Sufficient Notice of Injunction, Release, and Exculpation Provisions in the Plan.

19.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.  Fed. R. Bankr. P. 3016(c).

20.     Article VIII.8.5 of the Plan describes in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing.  Further, the language in Article VIII.8.5 of the Plan is in bold, making it conspicuous to anyone who reads it.  Moreover, Articles VIII.8.2 and 8.3 of the Plan describe in detail the entities subject to or providing a release under the Plan, and the claims and causes of action so released, and Article VIII.8.4 of the Plan describes in detail the entities entitled to exculpation under the Plan.  Each of the foregoing sections of the Plan is set forth, conspicuously, in bold.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan.

## II.     The Court Should Approve the Disclosure Statement Hearing Notice, Disclosure Statement Objection Deadline, and Disclosure Statement Hearing Date

### A.     The Court Should Approve the Disclosure Statement Hearing Notice

21.     Bankruptcy Rule 3017(a) requires that notice of the hearing to consider the proposed disclosure statement be provided to creditors and other parties in interest.  Fed. R.

20

Bankr. P. 3017(a) (providing that after a disclosure statement is filed, it must be mailed with the notice of the hearing to consider the disclosure statement and any objections or modifications thereto on no less than 28 days' notice thereof); see also Fed. R. Bankr. P. 2002(b) (requiring not less than 28 days' notice by mail of the time for filing objections and the hearing to consider the approval of a disclosure statement).

22.    The Debtors will serve all known creditors with a copy of the Disclosure Statement Hearing Notice. The Disclosure Statement Hearing Notice identifies the following: (a) the date, time, and place of the Disclosure Statement Hearing; (b) the manner in which a copy of the Disclosure Statement (and exhibits thereto, including the Plan) can be obtained; and (c) the deadline and procedures for filing objections to the approval of the Disclosure Statement. Additionally, the Debtors will distribute copies of the Disclosure Statement, including the exhibits thereto, to parties on the 2002 List (as defined below).  Accordingly, the Debtors submit that the Disclosure Statement Hearing Notice should be approved.

**B.    The Court Should Approve the Disclosure Statement Objection Deadline and Disclosure Statement Hearing Date**

23.    The Debtors propose that the Disclosure Statement Hearing Date be **September 19, 2017, at 10:00 a.m.,** prevailing Eastern Time.  As a result, the Debtors request that the Court set the Disclosure Statement Objection Deadline for **September 12, 2017, at 4:00 p.m.**, prevailing Eastern Time, and the Disclosure Statement Objection Response Deadline for **September 18, 2017, at 4:00 p.m.**, prevailing Eastern Time.  The Debtors submit that they have provided adequate notice of the Disclosure Statement Hearing pursuant to the Disclosure Statement Hearing Notice and request that the Court approve such notice as appropriate and in compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules.

21

### III. The Court Should Approve the Solicitation and Voting Procedures, Including the Voting and Tabulation Procedures, the Materials, and the Timeline for Soliciting Votes on the Plan.

#### A. The Standard for Approval of Solicitation and Voting Procedures.

24.    Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c).    Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form."    Fed. R. Bankr. P. 3018(c).    Consistent with these requirements, the Debtors propose to use the Solicitation and Voting Procedures, which procedures include specific voting and tabulation requirements and processes, as described below.

#### B. The Court Should Approve the Forms of the Ballots.

25.    In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared and customized the Ballots.  Although based on Official Form B 314, the Ballots have been modified to (a) address the particular circumstances of the Chapter 11 Cases and (b) include certain additional information that is relevant and appropriate for Claims in certain of the Voting Classes.  The Debtors respectfully submit that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

**C.    The Court Should Approve the Form and Distribution of the Solicitation Packages and Cover Letter to Parties Entitled to Vote on the Plan.**

26.    Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims or interests upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be filed.  Fed. R. Bankr. P. 3017(d).

27.    In accordance with this requirement, the Debtors propose to send the Solicitation Packages to provide holders of Claims or Interests in the Voting Classes with the information they need to be able to make informed decisions with respect to how to vote on the Plan.  Specifically, on or before the Solicitation Deadline, the Debtors will cause the Solicitation Packages to be distributed by first-class U.S. mail to those holders of Claims or Interests in the Voting Classes.  Each Solicitation Package will include the following materials:

  a.    a copy of the Solicitation and Voting Procedures;

  b.    a Ballot, together with detailed voting instructions and a pre-addressed, postage prepaid return envelope;

  c.    the Cover Letter;

  d.    the Disclosure Statement, as approved by the Court (and the exhibits thereto, including the Plan);

  e.    the Order (excluding the exhibits thereto, except for the Solicitation and Voting Procedures);

  f.    the Confirmation Hearing Notice; and

  g.    such other materials as the Court may direct.

28.    The Debtors request that they be authorized, but not required, to distribute the Plan, the Disclosure Statement, and the Order (without exhibits, except for the Solicitation and Voting Procedures) to holders of Claims entitled to vote on the Plan in electronic format (i.e., on a CD-ROM or flash drive).  The Ballots, the Cover Letter, and the Confirmation Hearing

Notice will be provided *only* in paper format.  Distribution in this manner will translate into significant monetary savings for the Debtors' estates (the Plan, the Disclosure Statement, and the proposed Order, collectively, total hundreds of pages) by reducing printing and postage costs.

29.    Additionally, the Debtors will provide (a) complete Solicitation Packages to the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") and (b) the Order (in electronic format) and the Confirmation Hearing Notice to all parties required to be notified under Rule 2002 of the Bankruptcy Rules and Local Bankruptcy Rule 2002-1 (the "2002 List") as of the Voting Record Date.  Any party that receives the materials in electronic format but would prefer paper format may contact the Solicitation Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).  The Debtors will not mail Solicitation Packages or other solicitation materials to holders of Claims or Interests that have already been paid in full during the Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court.

30.    The Debtors respectfully request that the Solicitation Agent be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in (a) distributing the Solicitation Packages, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims against or Interests in the Debtors, (c) responding to inquiries from holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors regarding the Plan.

31.     In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website to be maintained by the Solicitation Agent.  Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the online balloting portal (which allows a holder to submit an electronic signature).  Instructions for electronic, online transmission of Ballots are set forth on the forms of Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

**D.      Completion of Ballots.**

32.     To facilitate the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria.  Specifically, the procedures for the general tabulation of Ballots and voting procedures applicable to holders of Claims or Interests (the "Voting and Tabulation Procedures") provide that the Debtors not count a Ballot if it is, among other things, illegible, submitted by a holder of a Claim or Interest that is not entitled to vote on the Plan, unsigned, or not clearly marked.[9]  Further, the Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report.

---

[9] The Voting and Tabulation Procedures are described in greater detail in the Solicitation and Voting Procedures.

### E.  General Ballot Tabulation and Voting Procedures.

33.  The proposed Voting and Tabulation Procedures set forth specific criteria with respect to the general tabulation of Ballots, and voting procedures applicable to holders of Claims or Interests.  The Debtors believe that the proposed Voting and Tabulation Procedures will facilitate the Plan confirmation process.  Specifically, the procedures will clarify any obligations of holders of Claims or Interests entitled to vote to accept or reject the Plan and will create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code.  Accordingly, the Debtors submit that the Voting and Tabulation Procedures are in the best interests of their estates, holders of Claims or Interests, and other parties in interest, and that good cause supports the relief requested herein.

### F.  The Court Should Approve the Notice of Confirmation Hearing.

34.  The Debtors will serve the Confirmation Hearing Notice on all known holders of Claims or Interests and the 2002 List (regardless of whether such parties are entitled to vote on the Plan) by no later than September 28, 2017, which will provide all parties in interest with at least 28 days' notice of the Plan Objection Deadline and the Confirmation Hearing.  The Confirmation Hearing Notice will include the following:  (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (*excluding* Ballots) from the Solicitation Agent and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Plan Objection Deadline; and (e) notice of the Confirmation Hearing Date and information related thereto.

26

35.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l).   Therefore, in addition to the foregoing distribution of the Confirmation Hearing Notice, the Debtors will publish the Publication Notice within five (5) business days after the Solicitation on one occasion in *USA Today* (National Edition), *Florida Times-Union, Palm Beach Post*, *Fort Myers News-Press*, *Cape Coral Daily Breeze*, *Palm Beach Post*, *Seattle Times*, *Gettysburg Times*, *South Jersey Times*, *Birmingham News*, *Baltimore Sun*, *The Aegis*, *Washington Post*, *Frankfort State Journal*, *Myrtle Beach Sun News*, *Arizona Republic*, *Bluefield Daily Telegraph*, *Las Vegas Review-Journal*, *Worcester Telegram & Gazette*, *The Daily Herald*, *Sampson Independent*, *Goldsboro News-Argus*, and *Oakland Press*.   The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Plan Objection Deadline, and the Confirmation Hearing to parties who did not otherwise receive notice thereof by mail.   Additionally, service and publication of the Confirmation Hearing Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

### G.     The Court Should Approve the Plan Supplement Notice.

36.     The Plan defines "Plan Supplement" to mean "the compilation of documents, schedules, term sheets and exhibits relevant to the implementation of the Plan (including the forms thereof …)" that are filed by the debtors no later than 14 days before the Confirmation Hearing on notice to parties in interest.   *See* Plan at Art. I.1.1 169.   The Plan Supplement will include, among other materials, the following in connection with Confirmation:   (a) the draft New First Lien Term Loan Credit Agreement (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New First Lien Term Loan Credit Facility); (b) the New MDL Term Loan Credit Agreement (or, in the absence thereof, a term sheet setting forth

the terms and conditions governing the New MDL Term Loan Facility); (c) the New Second Lien Notes Indenture (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New Second Lien Notes); (d) the New Warrant Documents (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New Warrants); (e) the New Organizational Documents; (f) a list of retained Causes of Action; (g) the Schedule of Assumed Executory Contracts and Unexpired Leases; (h) the Schedule of Rejected Executory Contracts and Unexpired Leases; (i) the schedule of Excluded Directors and Officers; (i) the New Intercreditor Agreement (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New Intercreditor Agreement); and (j) any and all other documentation necessary to effectuate the Restructuring Transactions.

37.    To ensure that all holders of Claims or Interests receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to send the Plan Supplement Notice on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter.  Accordingly, the Plan Supplement Notice should be approved.

**H.    The Court Should Approve the Form of Notices to Non-Voting Classes.**

38.    As discussed above, the Non-Voting Classes are *not* entitled to vote on the Plan. As a result, they will *not* receive Solicitation Packages and, instead, the Debtors propose that such parties receive a Non-Voting Status Notice.  Specifically, in lieu of solicitation materials, the Debtors propose to provide the following to holders of Claims or Interests in Non-Voting Classes:

| Class(es) | Status | Treatment |
|---|---|---|
| 1, 2 | Unimpaired—Presumed to Accept | Will receive a notice, substantially in the form annexed to the Order as <u>Schedule 4</u>, in lieu of a Solicitation Package. |

| Class(es) | Status | Treatment |
|---|---|---|
| 8 | Impaired—Presumed to Reject | Will receive a notice, substantially in the form annexed to the Order as Schedule 5, in lieu of a Solicitation Package. |
| Various | Disputed Claims | Holders of Claims or Interests that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim or Interest.  As such, holders of such Claims or Interests will receive a notice, substantially in the form annexed to the Order as Schedule 6 (which notice shall be served together with such objection). |

39.     The Debtors will not provide the holders in Classes 7 (Intercompany Claims) and 9 (Intercompany Interests) with a Solicitation Package or any other type of notice in connection with Solicitation.  Intercompany Claims and Intercompany Interests will either be cancelled as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, in consultation with the Requisite Consenting First Lien Lenders and Requisite Backstop Parties, Reinstated.  Thus, holders of Intercompany Claims or Intercompany Interests will not be entitled to vote to accept or reject the Plan.  Nevertheless, in light of the fact that the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors are requesting a waiver from any requirement to serve such holders of Intercompany Claims or Intercompany Interests.

40.     Each of the Non-Voting Status Notices will include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (*excluding* Ballots) from the Solicitation Agent free of charge and/or the Court's website via PACER; (b) a disclosure regarding the settlement, release, exculpation, and injunction language

29

set forth in Article VIII of the Plan; (c) notice of the Plan Objection Deadline; and (d) notice of the Confirmation Hearing Date; and (e) information related thereto.

41.    The Debtors believe that the mailing of Non-Voting Status Notices in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d).    Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to holders of Claims or Interests in the Non-Voting Classes.

42.    The Debtors further request that they not be required to mail Solicitation Packages or other Solicitation materials to:  (a) holders of Claims or Interests that have already been paid in full during the Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; or (b) any party to whom the Disclosure Statement Hearing Notice was sent but was subsequently returned as undeliverable.

## I.    The Court Should Approve the Notices to Contract and Lease Counterparties.

43.    Article V.5.1 of the Plan provides that each of the Debtors' Executory Contracts and Unexpired Leases will be deemed assumed and assigned to the Reorganized Debtors as of the Effective Date, unless such agreement: (a) is identified in the Schedule of Rejected Executory Contracts and Unexpired Leases; (b) was previously rejected by a Final Order; (c) previously expired or terminated pursuant to its terms; or (d) is subject to a motion that is made with the prior written consent of the Requisite Backstop Parties to reject that is pending on the Effective Date or pursuant to which the requested effective date of such rejection is after the Effective Date.  *See* Plan at Art. V.5.1.  Additionally, Article V.5.3 of the Plan provides that the Debtors will provide Cure Notices of proposed assumption and proposed amounts of Cure Claims to the applicable third parties.  *Id.* at Art. V.5.3.

44.     To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of assumption or rejection of their Executory Contract or Unexpired Lease (and any corresponding Cure Claim) pursuant to the Plan, the Debtors will mail an Assumption Notice or a Rejection Notice, as appropriate, within the time periods specified in the Plan.

**J.      The Court Should Approve the Voting Record Date, Solicitation Deadline, and Voting Deadline.**

45.     Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.  Fed. R. Bankr. P. 3018(a).  Similarly, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the Court must fix a time within which the holders of claims or interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan.  *See* Fed. R. Bankr. P. 3017(c).

46.     The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish **September 19, 2017** as the Voting Record Date.  Moreover, the Debtors propose that, with respect to any transferred Claim or Interest, the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim or Interest is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim or Interest ***only if***:  (a) all actions necessary to effectuate the transfer of the Claim or Interest pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the

31

transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim or Interest is transferred after the Voting Record Date, the transferee of such Claim or Interest shall be bound by any vote on the Plan made by the holder of such Claim or Interest as of the Voting Record Date.

47.     The Debtors request that, after the Debtors distribute Solicitation Packages to holders of Claims or Interests entitled to vote on the Plan by the Solicitation Deadline, the Court require that all holders of Claims or Interests entitled to vote on the Plan complete, execute, and return their customized Ballots so that they are *actually received* by the Solicitation Agent on or before the Voting Deadline.

48.     The foregoing timing and materials will afford holders of Claims or Interests entitled to vote on the Plan at least 28 days within which to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules. *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).  Accordingly, the Debtors request that the Court approve the form of, and the Debtors' proposed procedures for distributing, the Solicitation Packages to the holders of Claims in the Voting Classes.

**IV.     The Court Should Approve the Procedures for Confirming the Plan.**

      **A.     The Court Should Approve the Confirmation Hearing Date.**

49.     Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation.  11 U.S.C. § 1128.  Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a

disclosure statement, a court shall fix a time for the hearing on confirmation of a plan. Fed. R. Bankr. P. 3017(c). In accordance with Bankruptcy Rule 3017(c) and section 1128 of the Bankruptcy Code, the Debtors request that the Court establish November 9, 2017, at 10:00 a.m., prevailing Eastern Time as the Confirmation Hearing Date. The Debtors further request that the Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice to parties in interest other than such adjournment announced in open court and/or a notice of adjournment filed with the Court and served on the 2002 List.

### B.    The Court Should Approve the Procedures for Filing Objections to the Plan.

50.    Bankruptcy Rules 2002(b) and (d) require no less than 28 days' notice to all holders of Claims or Interests of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan. The Debtors request that the Court establish October 26, 2017, at 4:00 p.m., prevailing Eastern Time, as the Plan Objection Deadline.

51.    The Debtors also request that the Court direct the manner in which parties in interest may object to Confirmation of the Plan. Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1). The Confirmation Hearing Notice will require that objections to Confirmation of the Plan or requests for modifications to the Plan, if any, must:

    a.    be in writing;

    b.    conform to the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court;

    c.    state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

    d.    be filed with the Court (contemporaneously with a proof of service) upon the applicable notice parties so to be ***actually received*** on or before the Plan Objection Deadline.

52.    The Debtors also request that they (and other parties in support of the Plan) be permitted to file a reply to any objections to Confirmation of the Plan by October 30, 2017, at 12:00 p.m., prevailing Eastern Time.

53.    Finally, the Debtors request that the Court establish October 30, 2017, at 12:00 p.m., prevailing Eastern Time, as the Confirmation Brief Deadline.

54.    The Debtors believe that the Plan Objection Deadline, the Plan Objection Response Deadline, and the Confirmation Brief Deadline will afford the Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Confirmation Hearing.

## V.    The Court Should Approve the Rights Offering Procedures.

### A.    The Court Should Approve the Rights Offering Procedures and the Form of the Rights Offering Materials.

55.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In the Second Circuit, bankruptcy courts have authorized the use or sale of property of the estate outside the ordinary course of business when such use or sale is grounded upon a sound business purpose and is proposed in good faith.  *See In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale, or lease of property outside the ordinary course of business).  Once a debtor articulates a valid business justification under section 363, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company.  *See also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008).

34

Further, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp., (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

56.    To preserve the going-concern value of the Debtors' operations and to maximize the value of their estates for the benefit of all stakeholders, the Debtors intend to seek, prior to the Disclosure Statement Hearing, Court approval of the Backstop Purchase Agreement by and among (a) 21CH, (b) 21st Century Oncology, Inc., (c) certain of the direct and indirect subsidiaries of 21st Century Oncology, Inc., and (d) the Backstop Parties thereto. As described above, the fully backstopped Rights Offerings are key components of the Plan and the cornerstone of the Debtors' successful restructuring, and the Debtors submit that the approval of the Rights Offering Procedures and the Rights Offerings Materials are necessary to successfully effectuate the Rights Offerings contemplated in the Plan and the Backstop Purchase Agreement. Accordingly, the Debtors submit that the Rights Offering Procedures and the Rights Offering Materials are in the best interests of their estates and creditors and an appropriate exercise of business judgment. The Debtors further submit that approval of the Rights Offering Procedures and the Rights Offering Materials is essential to the Debtors' ability to implement the value maximizing transactions contemplated by the Plan.

## Non-Substantive Modifications

57.    The Debtors request authorization to make non-substantive changes, which are consistent in all material respects with the terms of the Restructuring Support Agreement, to the Disclosure Statement, Disclosure Statement Hearing Notice, Plan, Ballots, Confirmation Hearing

Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption Notice and Rejection Notice, Voting and Tabulation Procedures, Rights Offering Procedures, Rights Offering Materials, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

## **Waiver of Bankruptcy Rule 6004(h)**

58.    To successfully implement the foregoing, the Debtors request that the Court enter an order providing that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Notice**

59.    The Debtors will provide notice of this motion to:  (a) the United States Trustee for Region 2; (b) proposed counsel to the Committee; (c) counsel to the agent under the Debtors' postpetition financing facility; (d) counsel to the lenders under the Debtors' postpetition financing facility; (e) counsel to the ad hoc committee of lenders under the Debtors' prepetition secured credit facility; (f) counsel to the administrative agents under the Debtors' prepetition secured credit facilities; (g) counsel to the ad hoc committee of crossover lenders and noteholders and certain DIP lenders; (h) the indenture trustee for the Debtors' 11.00% senior notes due 2023; (i) the holders of the Debtors' SFRO PIK Notes; (j) the United States Attorney for the Southern District of New York; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for states in which the Debtors conduct business; (m) the Internal Revenue Service; and (n) any party that has requested notice pursuant to

36

Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

60.    No prior motion for the relief requested herein has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated:  August 13, 2017

*/s/ Christopher Marcus, P.C.*
Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

## **EXHIBIT A**

**Proposed Disclosure Statement Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

## ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' PROPOSED JOINT PLAN OF REORGANIZATION, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (IV) APPROVING THE RIGHTS OFFERING PROCEDURES AND RELATED MATERIALS, (V) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this "Order") pursuant to sections 105, 363, 1125, 1126, 1128 and 1145 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, 3020 and Local Bankruptcy Rules 3017-1, 3018-1, and 3020-1 approving:  (a) the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates*, substantially in the form attached hereto as Schedule 1 (the "Disclosure Statement"); (b) the Disclosure Statement Hearing Date and Disclosure Statement Hearing Notice, substantially in the form attached hereto as Schedule 15; (c) the Solicitation and Voting Procedures (including without limitation the Voting and Tabulation Procedures), substantially in the form attached hereto as Schedule 2; (d) the Voting Record Date, Solicitation Deadline, and Voting Deadline; (e) the

---

[1]   Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

manner and form of the Solicitation Packages and the materials contained therein, including the Ballots, substantially in the forms attached hereto as <u>Schedules 3A</u>, <u>3B</u>, <u>3C</u>, <u>3D</u>, <u>3E</u>, and <u>3F</u>, and the Cover Letter, substantially in the form attached hereto as <u>Schedule 7</u>; (f) the Plan Supplement Notice, substantially in the form annexed hereto as <u>Schedule 9</u>; (g) the Non-Voting Status Notices, substantially in the forms attached hereto as <u>Schedule 4</u>, <u>Schedule 5</u>, and <u>Schedule 6</u>; (h) the Assumption Notice and Rejection Notice, substantially in the forms attached hereto as <u>Schedule 10</u> and <u>Schedule 11</u>; (i) the Rights Offering Procedures, substantially in the forms attached hereto as <u>Schedule 12</u> and <u>Schedule 13</u>, and the Rights Offering Materials, substantially in the forms attached hereto as <u>Schedule 14A</u>, <u>Schedule 14B</u>, and <u>Schedule 14C</u>; (j) the Confirmation Timeline set forth herein and the Confirmation Hearing Notice, substantially in the form attached hereto as <u>Schedule 8</u>; and (k) the other dates and deadlines related thereto, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Motion (the "<u>Disclosure Statement Hearing</u>"); and upon consideration of the record of the Disclosure Statement Hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested

relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND:

A.    The Disclosure Statement Hearing Notice provided good and sufficient notice to all interested parties and no other or further notice need be provided.

B.    As to each of the Debtors, the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and no further information is necessary.

C.    The Disclosure Statement complies with Bankruptcy Rule 3016(c) and describes, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction, exculpation, and release (including third party release) provisions contained in the Plan.

D.    The Disclosure Statement complies with all applicable Local Bankruptcy Rules.

E.    The Solicitation and Voting Procedures provide for a fair and equitable voting process and are consistent with sections 1125 and 1126 of the Bankruptcy Code.

F.    The Ballots are sufficiently consistent with Official Form B 314 and adequately address the particular needs of these Chapter 11 Cases and are appropriate for the Voting Classes to vote to accept or reject the Plan.

G.    The proposed contents and distribution of the Solicitation Packages comply with Bankruptcy Rules 2002, 3017, and Local Rule 3017(b), and constitute sufficient notice to all interested parties of the Voting Record Date, Voting Deadline, Plan Objection Deadline, Confirmation Hearing, and all related matters.

H.    Ballots need not be provided to the holders of Claims or Interests in (i) Class 1 (Other Secured Claims), (ii) Class 2 (Other Priority Claims), (iii) Class 7 (Intercompany Claims), (iv) Class 8 (Section 510(b) Claims), or (v) Class 9 (Intercompany Interests) because such holders are presumed to either accept or reject the Plan, as applicable, and are not entitled to vote on account of such Claims or Interests.

I.    The Non-Voting Status Notices comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules and, together with the Confirmation Hearing Notice, provides adequate notice to holders of Claims or Interests in the Non-Voting Classes of their non-voting status and of the Confirmation Hearing.  No further notice is necessary

J.    The period during which the Debtors may solicit acceptances to the Plan is a reasonable and adequate period of time under the circumstances for creditors to make an informed decision to accept or reject the Plan.

K.    The Confirmation Hearing Notice, the Publication Hearing Notice and the procedures set forth below for providing such notice to all known holders of Claims or Interests and all other parties entitled to notice in the Chapter 11 Cases (regardless of whether such parties are entitled to vote to accept or reject the Plan) of the time, date, and place of the Confirmation Hearing and the contents of the Confirmation Hearing Notice and the Solicitation Packages comply with Bankruptcy Rules 2002 and 3017, and service of such materials as set forth herein constitutes sufficient notice to all interested parties.

L.    The Rights Offering Procedures and the Rights Offering Materials reflect the Debtors' exercise of prudent business judgment and provide sufficient information to enable each Rights Offering Participant to duly participate in the Rights Offerings.

4

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      The Motion is granted as provided herein.

## I.      Approval of the Disclosure Statement.

2.      The Disclosure Statement is hereby approved as containing adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code and no further information is necessary.

3.      The Disclosure Statement (including all applicable exhibits thereto) provides holders of Claims, holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release (including third-party release) provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

4.      All objections to the Disclosure Statement that have not been withdrawn or resolved previously or at the Disclosure Statement Hearing are hereby overruled.

## II.      Approval of the Disclosure Statement Hearing Notice.

5.      The Disclosure Statement Hearing Notice filed by the Debtors and served upon parties in interest in these Chapter 11 Cases on August [13], 2017 satisfies the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules and constitutes adequate and sufficient notice of (a) the Disclosure Statement Hearing, (b) the manner in which a copy of the Disclosure Statement (and the exhibits thereto, including the Plan) could be obtained, and (c) the time fixed for filing objections thereto.

## III.      Approval of the Solicitation and Voting Procedures.

6.      The Debtors are authorized to solicit, receive, and tabulate votes on the Plan in accordance with the Solicitation and Voting Procedures, including without limitation the Voting and Tabulation Procedures contained therein, which are hereby approved in their entirety.

IV.    **Approval of the Materials and Timeline for Soliciting Votes and the Procedures for Confirming the Plan.**

A.    **Approval of the Confirmation Timeline.**

7.    The following dates are hereby established (subject to modification as necessary, which modifications shall not require a hearing, but the Debtors shall serve notice of such modifications on all affected parties) with respect to the Solicitation of votes on the Plan, filing objections to the Plan, and Confirmation of the Plan (all times prevailing Eastern Time):

| Event | Date |
|---|---|
| Disclosure Statement Objection Deadline | September 12, 2017, at 4:00 p.m. |
| Disclosure Statement Objection Response Deadline | September 18, 2017, at 4:00 p.m. |
| Disclosure Statement Hearing Date | September 19, 2017 |
| Voting Record Date | September 19, 2017 |
| Solicitation Deadline | Seven business days following entry of the Order |
| Publication Deadline | September 28, 2017 |
| Deadline to File Plan Supplement | October 17, 2017 |
| Plan Objection Deadline | October 26, 2017, at 4:00 p.m. |
| Assumption/Rejection Objection Deadline | October 26, 2017, at 4:00 p.m. |
| Voting Deadline | October 26, 2017, at 5:00 p.m. |
| Deadline to File Confirmation Brief | November 6, 2017, at 12:00 p.m. |
| Plan Objection Response Deadline | November 6, 2017, at 12:00 p.m. |
| Deadline to File Voting Report | November 6, 2017, at 12:00 p.m. |
| Confirmation Hearing Date | November 9, 2017, at 10:00 a.m. |

B.    **Approval of the Ballots.**

8.    The Ballots are hereby approved.

6

**C.**     **Approval of the Form of, and Distribution of, Solicitation Packages to Parties Entitled to Vote on the Plan.**

9.     The Solicitation Packages to be transmitted on or before the Solicitation Deadline to those holders of Claims or Interests in the Voting Classes entitled to vote on the Plan as of the Voting Record Date, shall include the following, the form of each of which is hereby approved:

a.     a copy of the Solicitation and Voting Procedures;

b.     an appropriate form of Ballot, together with detailed voting instructions and a pre-addressed, postage prepaid return envelope;

c.     the Cover Letter;

d.     the Disclosure Statement, as approved by the Court (and the exhibits thereto, including the Plan);

e.     this Order (excluding the exhibits thereto, except for the Solicitation and Voting Procedures);

f.     the Confirmation Hearing Notice; and

g.     such other materials as the Court may direct.

10.     To avoid duplication and reduce expenses, the Solicitation Agent is authorized (but not directed) to provide any holder of a Claim or Interest who has filed multiple and/or duplicate Claims or Interests against any Debtor(s) that are classified under the Plan in the same Voting Class no more than one Solicitation Package and the appropriate number of Ballots for voting such holder's Claims or Interests in such Class, based on the nature of such Claims or Interests and the Debtor(s) against which such Claims or Interests are held.

11.     The Solicitation Packages provide the holders of Claims or Interests entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with Bankruptcy Rules 2002(b) and 3017(d), the Bankruptcy Code, and the Local Bankruptcy Rules.

12.     The Debtors shall distribute Solicitation Packages to all holders of Claims or Interests entitled to vote on the Plan on or before the Solicitation Deadline.  Such service shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

13.     The Debtors are authorized, but not directed or required, to distribute to holders of Claims or Interests entitled to vote on the Plan (a) the Plan, the Disclosure Statement, and this Order (excluding the exhibits thereto, except for the Solicitation and Voting Procedures) ***only*** in electronic format (i.e. on a CD-ROM or flash drive); and (b) the Ballots, the Cover Letter and the Confirmation Hearing Notice ***only*** in paper format; *provided*, *however*, that the Debtors are not required to mail the Solicitation Packages or any other type of notice in connection with Solicitation to: (x) holders of Claims or Interests that have already been paid in full during the Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court, (y) holders in Classes 7 (Intercompany Claims) or 9 (Intercompany Interests), or (z) any party to whom the Disclosure Statement Hearing Notice was sent but was subsequently returned as undeliverable.  On or before the Solicitation Deadline, the Debtors shall provide (a) complete Solicitation Packages to the U.S. Trustee and (b) the Order (in electronic format) and the Confirmation Hearing Notice to all parties on the 2002 List as of the Voting Record Date.

14.     Any party that receives materials in electronic format, but would prefer to receive materials in paper format, may contact the Solicitation Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

8

15. The Solicitation Agent is authorized to assist the Debtors in (a) distributing the Solicitation Package, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims against or Interests in the Debtors, (c) responding to inquiries from holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors regarding the Plan.

16. The Solicitation Agent is also authorized to accept Ballots via electronic online transmission solely through a customized online balloting portal on the Debtors' case website. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

**D. Approval of the Confirmation Hearing Notice and Publication Hearing Notice.**

17. The Confirmation Hearing Notice, together with the Publication Notice, constitute adequate and sufficient notice of the Confirmation Hearing, the manner in which a copy of the Disclosure Statement and the Plan could be obtained, and the time fixed for filing objections thereto, and such Confirmation Hearing Notice is hereby approved.

18. The Debtors shall (a) file and serve upon the 2002 List the Confirmation Hearing Notice on or before **September 28, 2017**; and (b) publish the Publication Notice one time within five (5) business days following the Solicitation Deadline, and in no event later than **September 28, 2017**, in *USA Today* (National Edition), *Florida Times-Union, Palm Beach Post*, *Fort Myers News-Press*, *Cape Coral Daily Breeze*, *Palm Beach Post*, *Seattle Times*, *Gettysburg Times*, *South*

9

*Jersey Times*, *Birmingham News*, *Baltimore Sun*, *The Aegis*, *Washington Post*, *Frankfort State Journal*, *Myrtle Beach Sun News*, *Arizona Republic*, *Bluefield Daily Telegraph*, *Las Vegas Review-Journal*, *Worcester Telegram & Gazette*, *The Daily Herald*, *Sampson Independent*, *Goldsboro News-Argus*, and *Oakland Press*.  This service and publication comports with the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

19.    The Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice to parties in interest other than such adjournment announced in open court and/or a notice of adjournment filed with the Court and served on the 2002 List.

**E.    Approval of Notice of Filing of the Plan Supplement.**

20.    The Debtors shall file and serve the Plan Supplement Notice as soon as reasonably practicable following the date on which the Plan Supplement is filed pursuant to the terms of the Plan, but in any event no later than 14 days prior to the Confirmation Hearing.

**F.    Approval of the Form of Notices to Non-Voting Classes.**

21.    The Non-Voting Status Notices are hereby approved.  Except to the extent the Debtors determine otherwise, the Debtors are not required to provide Solicitation Packages to holders of Claims or Interests in Non-Voting Classes, as such holders are not entitled to vote on the Plan.  Instead, on or before the Solicitation Deadline, the Solicitation Agent shall mail (first-class postage prepaid) a Non-Voting Status Notice in lieu of Solicitation Packages to those parties, outlined below, who are not entitled to vote on the Plan:

| Class(es) | Status | Treatment |
|---|---|---|
| 1, 2 | Unimpaired—Presumed to Accept | Will receive a notice, substantially in the form annexed to the Order as Schedule 4, in lieu of a Solicitation Package. |

| Class(es) | Status | Treatment |
|-----------|--------|-----------|
| 8 | Impaired—Presumed to Reject | Will receive a notice, substantially in the form annexed to the Order as <u>Schedule 5</u>, in lieu of a Solicitation Package. |
| Various | Disputed Claims | Holders of Claims or Interests that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim or Interest. As such, holders of such Claims or Interests will receive a notice, substantially in the form annexed to the Order as <u>Schedule 6</u> (which notice shall be served together with such objection). |

**G.    Approval of Notices to Contract and Lease Counterparties.**

22.    The Debtors are authorized to mail an Assumption Notice (and any corresponding Cure Claim) or a Rejection Notice to the applicable counterparties to Executory Contracts and Unexpired Leases that will be assumed, assumed and assigned, or rejected pursuant to the Plan (as the case may be), within the time periods specified in the Plan.  The inclusion of an Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases or the Schedule of Rejected Executory Contracts and Unexpired Leases is without prejudice to the Debtors' rights to modify their election to assume or reject such Executory Contract or Unexpired Lease in accordance with the Plan.

**H.    Approval of the Procedures for Filing Objections to the Plan.**

23.    All objections to Confirmation of the Plan, requests for modifications to the Plan, and objections to the Rejection Notice or the Assumption Notice or the proposed Cure Claims associated therewith, if any, in each case ***must***:  (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that

11

would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the notice parties so as to be *actually received* on or before **October 26, 2017, at 4:00 p.m.**, prevailing Eastern Time, by each of the notice parties identified in the Confirmation Hearing Notice.

24.     Any objections to the Plan that are not timely filed and properly served in accordance with this Order will not be considered by the Court and are denied and overruled unless otherwise ordered by the Court.  Any party that fails to object to the assumption of the Executory Contracts and Unexpired Leases identified in the Schedule of Assumed Executory Contracts and Unexpired Leases and the proposed Cure Claims associated therewith shall be forever barred, estopped and enjoined from disputing the assumption of such Executory Contracts and Unexpired Leases, and the proposed Cure Claims associated therewith, and asserting any Claim against the Debtors and their Estates arising under section 365(b)(1) of the Bankruptcy Code, except as set forth in the Plan.

## I.     Authority to Make Non-Substantive Modifications

25.     The Debtors are authorized to make any non-substantive or immaterial changes, which are consistent in all material respects with the Restructuring Support Agreement, to the Disclosure Statement, Disclosure Statement Hearing Notice, Plan, Ballots, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption Notice and Rejection Notice, Voting and Tabulation Procedures, Rights Offering Procedures, Rights Offering Materials, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

**J.        Approval of the Rights Offering Procedures and Rights Offering Materials.**

26.        The Rights Offering Procedures are approved.

27.        The Debtor is authorized to commence and conduct the Rights Offerings in accordance with the terms and conditions of the Backstop Purchase Agreement, the Rights Offerings Procedures and the Rights Offering Materials pursuant to sections 105, 363 and 1145 of the Bankruptcy Code.

28.        The New Notes Rights Exercise Form is approved.

29.        The New Preferred Equity Rights Exercise Form is approved.

30.        The AI Questionnaire is approved.

31.        The Debtor is authorized to distribute the Rights Offerings Procedures and the Rights Offerings Materials to each Rights Offering Participant.

32.        The Subscription Period is a reasonable period of time for the Rights Offerings Participants to make an informed decision regarding whether to exercise their New Notes Rights and New Preferred Equity Rights and such Subscription Period is approved.

33.        Each Rights Offerings Participant (other than the Backstop Parties) intending to participate in the Rights Offerings must affirmatively make a binding election to exercise its New Notes Rights and New Preferred Equity Rights on or prior to the Rights Offering Termination Time and must otherwise timely satisfy each of the terms and conditions set forth in the Rights Offerings Procedures and the Rights Offerings Materials, and will be deemed to have relinquished and waived all rights to participate in the Rights Offerings to the extent such Rights Offering Participant fails to timely satisfy each of the terms and conditions set forth in the Rights Offerings Procedures and the Rights Offerings Materials.

34.        The Debtor's designation of Kurtzman Carson Consultants LLC as the Subscription Agent for the Rights Offerings is approved.

13

35.     The New Notes Rights and New Preferred Equity Rights received by each Rights Offering Participant shall not be transferable or assignable.  The New Notes Rights and New Preferred Equity Rights may only be exercised by or through the Rights Offering Participant entitled to exercise such rights on the Rights Offering Record Date.  Any transfer or attempted transfer of the New Notes Rights or the New Preferred Equity Rights will be null and void and the Debtors will not treat any purported transferee thereof as the holder of any New Notes Rights or New Preferred Equity Rights.

36.     The distribution of the New Notes Rights and the New Preferred Equity Rights in connection with the Rights Offerings and the issuance of New Second Lien Notes and shares of New Preferred Equity on the Effective Date to Rights Offering Participants upon exercise of such rights qualify for the exemption from registration under applicable U.S. securities laws to the extent provided by section 1145 of the Bankruptcy Code.  The distribution of unsubscribed New Second Lien Notes and shares of New Preferred Equity purchased by the Backstop Parties pursuant to the Backstop Purchase Agreement qualify for the exemption from registration under applicable U.S. securities laws to the extent provided by section 4(a)(2) of the Securities Act.

37.     The Debtors may modify the Rights Offering Procedures or adopt any additional detailed procedures, consistent with the provisions of the Rights Offering Procedures, to effectuate the Rights Offerings and to issue the New Second Lien Notes and New Preferred Equity.

38.     The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary, to implement and effectuate the Rights Offerings.

## V.    Miscellaneous.

39.    The Debtors reserve the right to modify the Plan in accordance with Article X thereof and the Restructuring Support Agreement, including the right to withdraw the Plan as to any or all Debtors at any time before the Confirmation Date.

40.    Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

41.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42.    The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

43.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective upon its entry.

44.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

45.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

White Plains, New York
Dated: _____, 2017

_____
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## **SCHEDULE 1**

## **Disclosure Statement**

## **SCHEDULE 2**

## **Form of Solicitation and Voting Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

### SOLICITATION AND VOTING PROCEDURES

---

    **PLEASE TAKE NOTICE THAT** on [•], 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order (the "Disclosure Statement Order"): (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

    **A.**    **The Voting Record Date.**

    The Court has approved **September 19, 2017** as the record date for purposes of determining which holders of Claims or Interests in Class 3 (MDL Claims), Class 4 (First Lien Claims), Class 5 (Note Claims), Class 6 (General Unsecured Claims), and Class 10 (Interests in 21CH and 21CI) are entitled to vote on the Plan (the "Voting Record Date").

    With respect to any transferred Claim or Interest, the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim or Interest is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim or Interest ***only if***: (a) all actions necessary to effectuate the transfer of the Claim or Interest pursuant to Bankruptcy Rule 3001(e)

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Plan or the Disclosure Statement Order, as applicable.

have been completed by the Voting Record Date or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim or Interest is transferred after the Voting Record Date, the transferee of such Claim or Interest shall be bound by any vote on the Plan made by the holder of such Claim or Interest as of the Voting Record Date.

      **B.**       **The Voting Deadline.**

The Court has approved **October 26, 2017, at 5:00 p.m.,** prevailing Eastern Time as the voting deadline (the "Voting Deadline") for the Plan.  The Debtors may extend the Voting Deadline, in their discretion, without further order of the Court.  To be counted as votes to accept or reject the Plan, all ballots ("Ballots") must be properly executed, completed, and delivered to the Solicitation Agent (as defined herein) as directed on the applicable Ballot so that they are *actually received* by the Solicitation Agent by the Voting Deadline.

      **C.**       **Form, Content, and Manner of Notices.**

      **1.**       **The Solicitation Package.**

The following materials shall constitute the solicitation package (the "Solicitation Package"):

      a.      a copy of these Solicitation and Voting Procedures;

      b.      the *Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Procedures*, in substantially the form annexed as Schedule 8 to the Disclosure Statement Order (the "Confirmation Hearing Notice");

      c.      a cover letter, in substantially the form annexed as Schedule 7 to the Disclosure Statement Order, describing the contents of the Solicitation Package and urging the holders of Claims or Interests in each of the Voting Classes to vote to accept the Plan;

      d.      the applicable form of Ballot, in substantially the forms annexed as Schedules 3A to 3F to the Disclosure Statement Order, as applicable, together with detailed voting instructions and a pre-addressed, postage-prepaid return envelope;

      e.      the approved Disclosure Statement annexed as Schedule 1 to the Disclosure Statement Order (and the exhibits thereto, including the Plan);

      f.      the Disclosure Statement Order (excluding the exhibits thereto, except for the Solicitation and Voting Procedures);

      g.      any additional documents that the Court has ordered to be made available.

2

2.      **Distribution of the Solicitation Package.**

The Solicitation Package shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order (excluding the exhibits thereto, except for the Solicitation and Voting Procedures) in electronic format (i.e., on a CD-ROM or flash drive), and all other contents of the Solicitation Package, including Ballots, shall be provided in paper format. Any party that receives the materials in electronic format but would prefer paper format may contact Kurtzman Carson Consultants LLC, the solicitation agent retained by the Debtors in these chapter 11 cases (the "Solicitation Agent") by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

Within seven business days after entry of the Disclosure Statement Order, the Debtors shall mail, or cause to be mailed, the Solicitation Package to (a) all holders of Claims or Interests in the Voting Classes who are entitled to vote, as described in section D below, and (b) the U.S. Trustee. In addition, the Debtors will provide the Disclosure Statement Order (in electronic format) and the Confirmation Hearing Notice to all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 as of the Voting Record Date.

To avoid duplication and reduce expenses, the Debtors will make every reasonable effort to provide any holder of a Claim or Interest who has filed multiple and/or duplicate Claims or Interests against any Debtor(s) that are classified under the Plan in the same Voting Class no more than one Solicitation Package and the appropriate number of Ballots for voting such holder's Claims or Interests in such Class, based on the nature of such Claims or Interests and the Debtor(s) against which such Claims or Interests are held.

3.      **Resolution of Disputed Claims for Voting Purposes; Resolution Event.**

a.      Absent a further order of the Court, if a Claim or Interest in a Voting Class is the subject of a pending objection to "reduce and allow" the stated amount of the applicable holder's Claim or Interest that is filed with the Court on or prior to seven days before the Voting Deadline, the applicable Claim or Interest shall be deemed temporarily allowed in the reduced amount for voting purposes only, without further action by the holders of such Claim or Interest and without further order of the Court (unless the Court orders otherwise), and the holder of such Claim or Interest shall be entitled to vote such Claim or Interest in the reduced amount contained in such objection.

b.      If a Claim or Interest in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Court on or prior to seven days before the Voting Deadline: (i) the Debtors shall cause the applicable holder to be served with a Disputed Claim Notice substantially in the form annexed as Schedule 6 to the Disclosure Statement Order (which notice shall be served together with such objection); and (ii) the

3

applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim or Interest unless a Resolution Event (as defined herein) occurs as provided herein.

c.      A "Resolution Event" means the occurrence of one or more of the following events no later than two business days prior to the Voting Deadline:

   i.      an order of the Court is entered allowing such Claim or Interest pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

   ii.     an order of the Court is entered temporarily allowing such Claim or Interest for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

   iii.    a stipulation or other agreement is executed between the holder of such Claim or Interest and the Debtors resolving the objection and allowing such Claim or Interest in an agreed upon amount; or

   iv.     the pending objection is voluntarily withdrawn by the objecting party.

d.      No later than two business days following the occurrence of a Resolution Event, the Debtors shall cause the Solicitation Agent to distribute via email, hand delivery, or overnight courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder to the extent such holder has not already received a Solicitation Package containing a Ballot.

**4.      Non-Voting Status Notices for Classes Presumed to Accept the Plan, Classes Presumed to Reject the Plan, and Disputed Claims or Interests.**

Certain holders of Claims or Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive only the *Notice of Non-Voting Status to Holders of Unimpaired Claims or Equity Interests Presumed to Accept the Plan*, substantially in the form annexed as Schedule 4 to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots). Certain holders of Claims or Interests who are not entitled to vote because they are presumed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the *Notice of Non-Voting Status to Holders of Impaired Claims or Equity Interests Presumed to Reject the Plan*, substantially in the form annexed as Schedule 5 to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).  Certain holders of Claims or Interests that are subject to a pending objection by the Debtors will receive the *Notice of Non-Voting Status with Respect to Disputed Claims*, substantially in the form annexed as Schedule 6 to the Disclosure Statement

4

Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots) and notify such holders that they are not entitled to vote any disputed portion of their Claims or Interests on the Plan unless one or more Resolution Events have taken place before September 15, 2017.

### 5.    Notices in Respect of Executory Contracts and Unexpired Leases.

Counterparties to Executory Contracts and Unexpired Leases that receive an *Assumption Notice* or a *Rejection Notice*, substantially in the forms annexed as <u>Schedule 10</u> and <u>Schedule 11</u> to the Disclosure Statement Order, respectively, may file an objection to the Debtors' proposed assumption, rejection, and/or cure amount, as applicable.  Such objections must be ***actually received*** by the Debtors by <u>**October 26, 2017, at 4:00 p.m.,**</u> prevailing Eastern Time.

### D.    Voting and Tabulation Procedures.

### 1.    Holders of Claims or Interests Entitled to Vote.

Only the following holders of Claims or Interests in the Voting Classes shall be entitled to vote with regard to such Claims or Interests:

      a.      holders of Claims or Interests who, on or before the Voting Record Date, have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date; and (ii) is not the subject of a pending objection, other than a "reduce and allow" objection, filed with the Court at least seven days prior to the Voting Deadline, pending a Resolution Event as provided herein; *provided* that a holder of a Claim or Interest that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim or Interest in the reduced amount contained in such objection absent a further order of the Court; *provided*, *further*, that a holder of a Claim or Interest that is the subject of any other objection shall receive a Solicitation Package and be entitled to vote such Claim or Interest only upon a Resolution Event that results in allowance of such Claim or Interest;

      b.      holders of Claims or Interests that are listed in the Schedules; *provided* that Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled disputed, contingent, or unliquidated Claims that have been paid or superseded by a timely filed Proof of Claim or an untimely Proof of Claim which has been Allowed as timely by the Court) shall be allowed to vote only in the amounts set forth in section D.2(c) of these Solicitation and Voting Procedures;

      c.      holders whose Claims arise (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court, (ii) in an order entered by the Court, or (iii) in a document executed by the Debtors

pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

d.    holders of any Disputed Claims that have been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

e.    the assignee of any Claim or Interest that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (a) through (d) above; *provided* that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date, as applicable.

## 2.    Establishing Amounts of Claims and Interests for Voting Purposes.

Each holder of a Claim or Interest in a Voting Class shall be entitled to vote the amount of its Claim or Interest as of the Voting Record Date. The amount of the Claim or Interest established pursuant to this section D.2 shall control for voting purposes only and shall not constitute the Allowed amount of any Claim or Interest. Moreover, any amounts that are filled in on Ballots by the Debtors through the Solicitation Agent are not binding for purposes of Allowance and distribution.

**Class 3 MDL Claims**. Claim amounts will be calculated based on the principal amounts outstanding under the MDL Facility Credit Agreement held as of the Voting Record Date by each holder, as evidenced by records of the MDL Agent.

**Class 4 First Lien Claims**. Claim amounts will be calculated based on the principal amounts outstanding under the First Lien Credit Agreement held as of the Voting Record Date by each holder, as evidenced by records of the First Lien Agent.

**Class 5 Note Claims**. Claim amounts will be calculated based on the principal amounts outstanding under the Indenture held as of the Voting Record Date by each holder, as evidenced by records of the Indenture Trustee or by the securities position report(s) from the Depository Trust Company; *provided, however,* that any principal amounts thus voted may thereafter be adjusted by the Solicitation Agent, on a proportionate basis, with a view to the amount of Note Claims actually voted, including any accrued and unpaid prepetition interest.

**Class 6 General Unsecured Claims**. In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a.    the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court, (ii) set forth in an order of the Court, or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court;

b.    the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under section C.3(d) of these Solicitation and Voting Procedures;

6

c.      the Claim amount contained in a Proof of Claim that has been timely filed by the applicable Claims Bar Date (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; *provided*, *however*, that (i) any Ballot cast by a holder of a Claim who timely files a Proof of Claim in respect of a contingent Claim or a Claim in a wholly-unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Solicitation Agent) that is not the subject of an objection will count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and (ii) if a Proof of Claim is filed as partially liquidated and partially unliquidated, such Claim will be Allowed for voting purposes only in the liquidated amount; *provided, further*, *however*, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount set forth in a document filed with the Court as referenced in subparagraph (a) above, the Claim amount in the document filed with the Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes; and

d.      the Claim amount listed in the Schedules (to the extent such Claim is not superseded by a timely filed Proof of Claim) that is not scheduled as contingent, disputed, or unliquidated and/or has not been paid; *provided*, *however*, that if the applicable Bar Date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, disputed, or unliquidated will count as a vote towards satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and as a vote in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code; *provided*, *further*, that if the applicable Bar Date has expired, a Claim listed in the Schedules as contingent, disputed, or unliquidated shall not be entitled to vote.

Notwithstanding anything to the contrary contained herein: (x) any creditor who has filed or purchased duplicate Claims against the same Debtor within the same Class shall be provided with only one Solicitation Package and one ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; (y) holders of Claims filed for $0.00 are not entitled to vote; and (z) if a Proof of Claim has been amended by a later timely filed Proof of Claim, only the later filed amending Claim will be counted for voting purposes, regardless of whether the Debtors have objected to such earlier filed Claim.

**Class 10 Interests in 21CH and 21CI**.  Interest amounts will be calculated based on the amount of (a) any capital stock (including common stock and preferred stock), limited liability company interest, partnership interest, equity security (as defined in section 101(16) of the Bankruptcy Code) or other ownership, beneficial or profits interest of 21CH or 21CI, including, without limitation, the Series A Preferred Stock, and (b) any option, warrant, security, stock appreciation right, phantom unit, incentive, commitment, call, redemption right, repurchase right or other agreement, arrangement or right of any kind that is convertible into, exercisable or

7

exchangeable for, or otherwise permits any Person to acquire, any capital stock (including common stock and preferred stock), limited liability company interest, partnership interest or other equity security or other ownership, beneficial or profits interest of 21CH or 21CI (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

### 3.  <u>Voting and Ballot Tabulation Procedures.</u>

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Bankruptcy Rules:

a.  except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as the same may be extended by the Debtors), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with Confirmation of the Plan;

b.  the Solicitation Agent will date-stamp all Ballots when received. The Solicitation Agent shall retain the original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, unless otherwise ordered by the Court. The Solicitation Agent shall tabulate Ballots on a Debtor-by-Debtor basis;

c.  the Debtors will file with the Court, prior to the Confirmation Hearing, a voting report (the "<u>Voting Report</u>"). The Voting Report shall, among other things, certify to the Court in writing the amount and number of Allowed Claims or Allowed Interests of each Class accepting or rejecting the Plan, and delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, contain insufficient information to permit the identification of the holders submitting such Ballots, lack original signatures or any other necessary information, are received via facsimile, email, or any electronic means other than the Solicitation Agent's online balloting portal, or are damaged (collectively, the "<u>Irregular Ballots</u>");

d.  the method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Solicitation Agent actually receives the executed Ballot;

e.  delivery of a Ballot to the Solicitation Agent by facsimile, email, or any electronic means other than the Solicitation Agent's online balloting portal will not be valid;

f.  no Ballot should be sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), the Debtors' financial or legal advisors, or any administrative agent or indenture trustee, and if so sent will not be counted;

g.  if multiple Ballots are received from the same holder with respect to the same Claim or Interest prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

h.  holders must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, to the extent there are multiple Claims against or Interests in the same Debtor held by any particular holder within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims or Interests of any particular holder within a Class for the purpose of counting votes;

i.  a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a holder of Claims or Interests must indicate such capacity when signing and if requested by Solicitation Agent, the Debtor or the Court, must submit proper evidence of its authority to act;

j.  the Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the Voting Deadline, and any such waivers will be documented in the Voting Report;

k.  neither the Debtors, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification;

l.  unless waived by the Debtors or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

m.  in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

n.  subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the

opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report;

o.   if a Claim or Interest has been estimated or otherwise Allowed only for voting purposes by order of the Court, such Claim or Interest shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of Allowance or distribution;

p.   if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

q.   the following Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (i) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of such Claim or Interest; (ii) any Ballot cast by any Entity that does not hold a Claim or Interest in the applicable Voting Class; (iii) any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot submitted via the Solicitation Agent's online balloting portal shall be deemed an original signature); (iv) any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; and (v) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein;

r.   after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors;

s.   the Debtors are authorized to enter into stipulations with the holder of any Claim or Interest agreeing to the amount of a Claim or Interest for voting purposes;

t.   if a Class contains Claims or Interests eligible to vote on the Plan and no holder of Claims or Interests in such Class eligible to vote on the Plan votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims or Interests in such Class;

u.   any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code; and

v.   where any portion of a single Claim or Interest has been transferred to a transferee, all holders of any portion of such single Claim or Interest will be (i) treated as a single creditor for purposes of the numerosity

10

requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein), and (ii) required to vote every portion of such Claim or Interest collectively to accept or reject the Plan.  In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various holders of multiple portions of a single Claim or Interest partially reject and partially accept the Plan, such Ballots shall not be counted.

4.      **Master Ballot Voting and Tabulation Procedures.**

In addition to the foregoing generally applicable voting and ballot tabulation procedures, the following procedures shall apply to holders of Note Claims who hold their position through a broker, bank, or other nominee or an agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"):

a.      The Solicitation Agent shall distribute or cause to be distributed to the Nominees identified by the Solicitation Agent as Entities through which Beneficial Holders[3] hold their Class 5 Note Claims the appropriate number of (i) Solicitation Packages for each Beneficial Holder represented by the Nominee as of the Voting Record Date, which will contain copies of Ballots to each beneficial holder (a "Beneficial Holder Ballot"), and (ii) a master ballot (the "Master Ballot");

b.      Each Nominee shall immediately, and in any event within seven Business Days after its receipt of the Solicitation Packages, distribute the Solicitation Packages, including Beneficial Holder Ballots, it receives from the Solicitation Agent to all such Beneficial Holders,[4] providing such Beneficial Holders with a return address to send the completed Beneficial Holder Ballots, and any Nominee that is a holder of record with respect to Class 5 Note Claims shall obtain votes on behalf of Beneficial Holders of such Claims by one of the following two methods:

i.      "Pre-validate" the individual Class 5 Note Claim Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Class 5 Claim for voting within five (5)

---

[3]    A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims have not been satisfied prior to the Voting Record Date pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

[4]    Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each Nominee.  Each Nominee will then distribute the Solicitation Packages, as appropriate, in accordance with their customary practices and obtain votes to accept or to reject the Plan also in accordance with their customary practices.  If it is the Nominee's customary and accepted practice to submit a "voting instruction form" to the Beneficial Holders for the purpose of recording the Beneficial Holder's vote, the Nominee will be authorized to send the voting instruction form in lieu of, or in addition to, a Beneficial Holder Ballot.

Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package. A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including their DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Class 5 Claim held by the Nominee for such Beneficial Holder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder. The Beneficial Holder then completes the information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to the Solicitation Agent. A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; OR

ii. Within five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Class 5 Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee. In such case, the Nominee will tabulate the votes of its respective owners on a Master Ballot that will be provided to the Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent. The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline.

c.    each Nominee shall compile and validate the votes and other relevant information of all such Beneficial Holders on the Master Ballot; and transmit the Master Ballot to the Solicitation Agent on or before the Voting Deadline;

d.    any Beneficial Holder holding Class 5 Note Claims as a record holder in its own name shall vote on the Plan by completing and signing a Ballot and returning it directly to the Solicitation Agent on or before the Voting Deadline;

e.    any Beneficial Holder Ballot returned to a Nominee by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until such Nominee properly completes and delivers to the Solicitation Agent a Master Ballot that reflects the vote of such Beneficial Holders on

12

or before the Voting Deadline or otherwise validates the Beneficial Holder Ballot in a manner acceptable to the Solicitation Agent.  Nominees shall retain all Beneficial Holder Ballots returned by Beneficial Holders for a period of one year after the Effective Date of the Plan;

f.      if a Beneficial Holder holds Class 5 Note Claims through more than one Nominee or through multiple accounts, such Beneficial Holder may receive more than one Beneficial Holder Ballot and each such Beneficial Holder should execute a separate Beneficial Holder Ballot for each block of Class 5 Note Claims that it holds through any Nominee and must return each such Beneficial Holder Ballot to the appropriate Nominee;

g.      if a Beneficial Holder holds a portion of its Class 5 Note Claims through a Nominee or Nominees and another portion in its own name as the record holder, such Beneficial Holder should follow the procedures described in section D.3 herein to vote the portion held in its own name and the procedures described in section D.4 herein to vote the portion held by the Nominee(s);

h.      votes cast by Beneficial Holders through Nominees will be applied to the applicable positions held by such Nominees in Class 5, as of the Voting Record Date, as evidenced by the record and depository listings.  Votes submitted by a Nominee pursuant to a Master Ballot will not be counted in excess of the amount of such Claims held by such Nominee as of the Voting Record Date;

i.      if conflicting votes or "over-votes" are submitted by a Nominee pursuant to a Master Ballot, the Debtors will use reasonable efforts to reconcile discrepancies with the Nominees.  If over-votes on a Master Ballot are not reconciled prior to the preparation of the Voting Report, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position in Class 5;

j.      for purposes of tabulating votes, each Nominee or Beneficial Holder will be deemed to have voted the principal amount of its Claims in Class 5; any principal amounts thus voted may thereafter be adjusted by the Solicitation Agent, on a proportionate basis, with a view to the amount of Note Claims actually voted, including any accrued and unpaid prepetition interest;

k.      a single Nominee may complete and deliver to the Solicitation Agent multiple Master Ballots.  Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots.  If two or more Master Ballots submitted by a single Nominee are inconsistent, the latest received valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and

13

revoke any prior received Master Ballot. Likewise, if a Beneficial Holder submits more than one Beneficial Holder Ballot to its Nominee, (i) the latest received Beneficial Holder Ballot received before the submission deadline imposed by the Nominee shall be deemed to supersede any prior Beneficial Holder Ballot submitted by the Beneficial Holder, and (ii) the Nominee shall complete the Master Ballot accordingly; and

l.      the Debtors will, upon written request, reimburse Nominees for customary mailing and handling expenses incurred by them in forwarding the Beneficial Holder Ballot and other enclosed materials to the Beneficial Holders for which they are the Nominee. No fees or commissions or other remuneration will be payable to any broker, dealer, or other person for soliciting Beneficial Holder Ballot with respect to the Plan.

**E.      Amendments to the Plan and Solicitation and Voting Procedures.**

The Debtors reserve the right to make non-substantive or immaterial changes, which are consistent in all material respects with the Restructuring Support Agreement, to the Disclosure Statement, Disclosure Statement Hearing Notice, Plan, Ballots, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption Notice and Rejection Notice, Voting and Tabulation Procedures, Rights Offering Procedures, Rights Offering Materials, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

*      *      *      *

## **SCHEDULE 3A**

**Form of Class 3 Ballot**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**21st CENTURY ONCOLOGY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**

**CLASS 3 BALLOT FOR MDL CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS
CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS
BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY
RECEIVED* BY THE SOLICITATION AGENT BY OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING
EASTERN TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates*  (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [•], 2017 (the "Disclosure Statement Order").  The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 3 ballot (the "Class 3 Ballot") because you are a holder of an MDL Claim in Class 3 as of September 19, 2017 (the "Voting Record Date").  Class 3 MDL Claims include any Claim against any Debtor arising on account of, or in connection with, any MDL Obligations, the MDL Facility Credit Agreement, or any other "Credit Documents" (as defined in the MDL Facility Credit Agreement), including Claims for all accrued and unpaid principal, interest, fees, expenses, costs, and other charges and amounts constituting MDL Obligations.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 3 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kurtzman Carson Consultants LLC (the "Solicitation Agent") at no charge by: (i) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (ii) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (iii) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (iv) emailing 21coInfo@kccllc.com; or (b) for a fee via PACER at https://ecf.nysb.uscourts.gov/.

This Class 3 Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Class 3 Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 3, MDL Claims, under the Plan. If you hold Claims or Interests in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

**Item 1. Principal Amount of Claim.**[2]

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder of MDL Claims in the following aggregate unpaid principal amount (insert amount in box below) without regard to any accrued but unpaid interest:



$_____

**Item 2. Vote on Plan.**

The holder of the Class 3 MDL Claim against the Debtors set forth in Item 1 votes to (please check one):

☐ **ACCEPT** (vote FOR) the Plan          ☐ **REJECT** (vote AGAINST) the Plan

**Item 3. Important Information Regarding the Third Party Release.**

**Article VIII.8.3 of the Plan contains the following provision:**

Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments, the Backstop Order, the Restructuring Support Agreement, the purchase, sale, or rescission of the purchase or sale of any security of

---

[2]    For voting purposes only and subject to tabulation rules.

3

the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

*        *        *

"*RELEASING PARTIES*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

**IN CONNECTION WITH THE FOREGOING, PLEASE CAREFULLY REVIEW THE FOLLOWING:**

- **If you vote to accept the Plan, you will be a "Releasing Party"[3] under the Plan, and you will be deemed to provide the Third-Party Release provided in Article VIII.8.3 of the Plan.  If you vote to accept the plan, you cannot opt out of giving such release.**

- **If you vote to reject the Plan and wish to opt out of giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 3 Ballot to the Solicitation Agent by the Voting Deadline and check the opt out box below.**

- **If you do not vote on the Plan, but wish to opt out of giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 3 Ballot to the Solicitation Agent by the Voting Deadline, and check the opt out box below.**

- **If you (i) do not submit a Class 3 Ballot to the Solicitation Agent by the Voting Deadline, or (ii) submit a Class 3 Ballot, but do not vote to accept or reject the Plan, and fail to check the opt out box below, you will be deemed to consent to giving the release provided in Article VIII.8.3 of the Plan.**

**The holder of the Class 3 MDL Claim set forth in Item 1 that has not voted to accept the Plan elects to**:

☐ **Opt Out** of the Third Party Release.

<u>**Item 4**</u>.  **Certifications.**

By signing this Class 3 Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a)  that, as of the Voting Record Date, either:  (i) the undersigned is the holder of the MDL Claims being voted; or (ii) the undersigned is an authorized signatory for an Entity that is a holder of the MDL Claims being voted;

---

[3]  *"RELEASING PARTIES"* MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

(b) that the undersigned (or in the case of an authorized signatory, the holder) has received a copy of the Disclosure Statement, the Plan, the Disclosure Statement Order, and the Solicitation Package and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c) that the undersigned has cast the same vote with respect to all MDL Claims in Class 3 held by the holder of the MDL Claims being voted; and

(d) that no other Class 3 Ballots with respect to the amount of the MDL Claims identified in Item 1 have been cast or, if any other Class 3 Ballots have been cast with respect to such MDL Claims, then any such earlier Class 3 Ballots are hereby revoked.

Name of Holder: _____

(Print or Type)

_____

Signature: _____

Name of Signatory: _____

(If other than holder)

Title: _____

Address: _____

_____

_____

Telephone Number: _____

Email: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS CLASS 3 BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE)** *PROMPTLY* **VIA FIRST CLASS MAIL (OR IN THE ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR HAND DELIVERY TO THE BELOW ADDRESSES.  YOUR CLASS 3 BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME.**

**21st Century Oncology Holdings, Inc.**
**Ballot Processing Center**
**c/o Kurtzman Carson Consultants, LLC**
**2335 Alaska Avenue**
**El Segundo, CA 90245**

# PLEASE SELECT JUST ONE OPTION TO VOTE.  EITHER RETURN THIS PAPER CLASS 3 BALLOT WITH YOUR VOTE
# OR
# VOTE ELECTRONICALLY AS INSTRUCTED BELOW

6

**To submit your Class 3 Ballot via the Solicitation Agent's online portal, please visit http://www.kccllc.net/21co. Click on the "eBallot" section of the website and follow the instructions to submit your Class 3 Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Class 3 Ballot:**

**Unique eBallot ID#:_____**

**The Solicitation Agent's online portal is the sole manner in which Class 3 Ballots will be accepted via electronic or online transmission. Class 3 Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted toward Confirmation of the Plan.**

**Each eBallot ID# is to be used solely for voting only those MDL Claims described in Item 1 of your electronic Class 3 Ballot. Please complete and submit an electronic Class 3 Ballot for each eBallot ID# you receive, as applicable.**

## Creditors who cast a Class 3 Ballot using the Solicitation Agent's online portal should NOT also submit a paper Class 3 Ballot.

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 3 BALLOT ON OR BEFORE OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS CLASS 3 BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

---

| Class 3 — MDL Claims |
|---|

### INSTRUCTIONS FOR COMPLETING THIS CLASS 3 BALLOT

1. The Debtors are soliciting the votes of holders of Claims or Interests with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Class 3 Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Class 3 Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2. The Plan may be confirmed by the Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or Interests in at least one class of creditors or Interest holders that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. To ensure that your Class 3 Ballot is counted toward Confirmation of the Plan, you *must either*: (a) complete and submit this hard copy Class 3 Ballot or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website http://www.kccllc.net/21co. **Ballots will not be accepted by facsimile, email, or other electronic means (other than the online portal).**

4. **Use of Hard Copy Ballot.** To ensure that your hard copy Class 3 Ballot is counted toward Confirmation of the Plan, you must: (a) complete your Class 3 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 3 Ballot; and (c) clearly sign and return your original Class 3 Ballot in the enclosed pre-addressed, pre-paid envelope, or by delivery, overnight courier, or hand delivery to:

> **21st Century Oncology Holdings, Inc.**
> **Ballot Processing Center**
> **c/o Kurtzman Carson Consultants, LLC**
> **2335 Alaska Avenue**
> **El Segundo, CA 90245**

5. **OR Use of Online Ballot Portal.** To ensure that your electronic Class 3 Ballot is counted toward Confirmation of the Plan, please follow the instructions of the Debtors' case administration website at http://www.kccllc.net/21co. You will need to enter your unique eBallot ID# indicated above. The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots will not be accepted by facsimile, email, or other electronic means (other than the online portal).**

6. Your Class 3 Ballot *must* be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is October 26, 2017, at 5:00 p.m.**, prevailing Eastern Time.

7. If a Class 3 Ballot is received *after* the Voting Deadline and if the Voting Deadline is not extended, it may be counted toward Confirmation of the Plan only in the discretion of the Debtors. Additionally, **the following Class 3 Ballots will *not* be counted toward Confirmation of the Plan:**

(a) any Class 3 Ballot that partially rejects and partially accepts the Plan;
(b) any Class 3 Ballot that is sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), any indenture trustee or administrative agent, or the Debtors' financial or legal advisors;
(c) any Class 3 Ballot that is sent by facsimile, email, or any electronic means other than via the online portal;
(d) any Class 3 Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;
(e) any Class 3 Ballot cast by an Entity that does not hold a Claim in Class 3;

8

(f)  any Class 3 Ballot submitted by a holder not entitled to vote on the Plan;

(g)  any unsigned Class 3 Ballot;

(h)  any Class 3 Ballot that does not contain an original signature; and/or

(i)  any Class 3 Ballot not marked to accept or reject the Plan or any Class 3 Ballot marked both to accept and reject the Plan.

8.   The method of delivery of Class 3 Ballots to the Solicitation Agent is at the election and risk of each holder of an MDL Claim.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *actually receives* the originally executed Class 3 Ballot.  In all cases, holders should allow sufficient time to assure timely delivery.

9.   If multiple Class 3 Ballots are received from the same holder of an MDL Claim with respect to the same MDL Claim prior to the Voting Deadline, the latest, timely received, and properly completed Class 3 Ballot will supersede and revoke any earlier received Class 3 Ballots.

10.  You must vote all of your MDL Claims within Class 3 either to accept or reject the Plan and may *not* split your vote.  Further, for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, the Debtors may, in their discretion, (a) aggregate and treat separate MDL Claims held by a single creditor or separate affiliated Entities in Class 3 as if such creditor or such separate affiliated Entities held one MDL Claim in Class 3, and treat all votes related to such MDL Claim as a single vote to accept or reject the Plan; or (b) not aggregate or treat separate MDL Claims held by a single creditor or separate affiliated Entities in Class 3 as if such creditor or such separate affiliated Entities held one MDL Claim in Class 3, and treat all votes related to such MDL Claims as separate votes to accept or reject the Plan.

11.  This Class 3 Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12.  **Please be sure to sign and date your Class 3 Ballot**.  If you are signing a Class 3 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, you must submit proper evidence to the requesting party to so act on behalf of such holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 3 Ballot.

13.  If you hold Claims or Interests in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes *only* your Claims or Interests indicated on that ballot, so please complete and return each ballot that you received.

<div align="center">

**PLEASE MAIL YOUR CLASS 3 BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 3 BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE RESTRUCTURING HOTLINE AT: (888) 251-2679 (US TOLL-FREE) and
(310) 751-2609 (INTERNATIONAL TOLL) OR EMAIL 21COINFO@KCCLLC.COM.**

</div>

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 3 BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

---

## **SCHEDULE 3B**

### **Form of Class 4 Ballot**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) ) Chapter 11 |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) ) Case No. 17-22770 (RDD) |
| Debtors. | ) ) (Jointly Administered) |
|  | ) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**21st CENTURY ONCOLOGY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**

**CLASS 4 BALLOT FOR FIRST LIEN CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS
CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS
BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE
*ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY OCTOBER 26, 2017, AT 5:00 P.M.,
PREVAILING EASTERN TIME (THE "<u>VOTING DEADLINE</u>") IN ACCORDANCE WITH THE
FOLLOWING:**

---

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates*  (as may be modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>").  The Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [•], 2017 (the "<u>Disclosure Statement Order</u>").  The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 4 ballot (the "<u>Class 4 Ballot</u>") because you are a holder of a First Lien Claim in Class 4 as of September 19, 2017 (the "<u>Voting Record Date</u>").  Class 4 First Lien Claims include any Claim against any Debtor arising on account of, or in connection with, any First Lien Obligations, the First Lien Credit Agreement, or any of the other "Loan Documents" (as defined in the First Lien Credit Agreement), including Claims for all accrued and unpaid principal, interest, fees, expenses, costs, and other charges and amounts constituting First Lien Obligations.

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 4 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kurtzman Carson Consultants LLC (the "Solicitation Agent") at no charge by: (i) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (ii) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (iii) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (iv) emailing 21coInfo@kccllc.com; or (b) for a fee via PACER at https://ecf.nysb.uscourts.gov/.

This Class 4 Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Class 4 Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 4, First Lien Claims, under the Plan. If you hold Claims or Interests in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

<u>Item 1</u>.  **Principal Amount of Claim.**[2]

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder of First Lien Claims in the following aggregate unpaid principal amount (insert amount in box below) without regard to any accrued but unpaid interest:



$_____

<u>Item 2</u>.  **Vote on Plan.**

The holder of the Class 4 First Lien Claim against the Debtors set forth in Item 1 votes to (please check <u>one</u>):

☐  <u>**ACCEPT**</u> (vote FOR) the Plan          ☐  <u>**REJECT**</u> (vote AGAINST) the Plan

<u>Item 3</u>.  **Important Information Regarding the Third Party Release.**

<u>**Article VIII.8.3 of the Plan contains the following provision**</u>:

**Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole**

---

[2]    For voting purposes only and subject to tabulation rules.

2

or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments, the Backstop Order, the Restructuring Support Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

\*          \*          \*

"*RELEASING PARTIES*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

3

**IN CONNECTION WITH THE FOREGOING, PLEASE CAREFULLY REVIEW THE FOLLOWING:**

- **If you vote to accept the Plan, you will be a "Releasing Party"[3] under the Plan, and you will be deemed to provide the Third-Party Release provided in Article VIII.8.3 of the Plan.  If you vote to accept the plan, you cannot opt out of giving such release.**

- **If you vote to reject the Plan and wish to opt out of giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 4 Ballot to the Solicitation Agent by the Voting Deadline and check the opt out box below.**

- **If you do not vote on the Plan, but wish to opt out of giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 4 Ballot to the Solicitation Agent by the Voting Deadline, and check the opt out box below.**

- **If you (i) do not submit a Class 4 Ballot to the Solicitation Agent by the Voting Deadline, or (ii) submit a Class 4 Ballot, but do not vote to accept or reject the Plan, and fail to check the opt out box below, you will be deemed to consent to giving the release provided in Article VIII.8.3 of the Plan.**

**The holder of the Class 4 First Lien Claim set forth in Item 1 that has not voted to accept the Plan elects to**:

☐ **Opt Out** of the Third Party Release.

<u>Item 4</u>.  **Certifications.**

By signing this Class 4 Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a) that, as of the Voting Record Date, either:  (i) the undersigned is the holder of the First Lien Claims being voted; or (ii) the undersigned is an authorized signatory for an Entity that is a holder of the First Lien Claims being voted;

---

[3]  "*RELEASING PARTIES*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

(b) that the undersigned (or in the case of an authorized signatory, the holder) has received a copy of the Disclosure Statement, the Plan, the Disclosure Statement Order, and the Solicitation Package and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c) that the undersigned has cast the same vote with respect to all First Lien Claims in Class 4 held by the holder of the First Lien Claims being voted; and

(d) that no other Class 4 Ballots with respect to the amount of the First Lien Claims identified in Item 1 have been cast or, if any other Class 4 Ballots have been cast with respect to such First Lien Claims, then any such earlier Class 4 Ballots are hereby revoked.

Name of Holder:

(Print or Type)

Signature:

Name of Signatory:

(If other than holder)

Title:

Address:

Telephone Number:

Email:

Date Completed:

**PLEASE COMPLETE, SIGN, AND DATE THIS CLASS 4 BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE)** *PROMPTLY* **VIA FIRST CLASS MAIL (OR IN THE
ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR HAND DELIVERY TO
THE BELOW ADDRESSES.  YOUR CLASS 4 BALLOT MUST BE ACTUALLY RECEIVED BY THE
VOTING DEADLINE, WHICH IS OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME.**

**21st Century Oncology Holdings, Inc.
Ballot Processing Center
c/o Kurtzman Carson Consultants, LLC
2335 Alaska Avenue
El Segundo, CA 90245**

# PLEASE SELECT JUST ONE OPTION TO VOTE.  EITHER RETURN THIS PAPER CLASS 4 BALLOT WITH YOUR VOTE
## OR
# VOTE ELECTRONICALLY AS INSTRUCTED BELOW

**To submit your Class 4 Ballot via the Solicitation Agent's online portal, please visit <u>http://www.kccllc.net/21co</u>.  Click on the "eBallot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Class 4 Ballot:**

**Unique eBallot ID#:_____**

**The Solicitation Agent's online portal is the sole manner in which Class 4 Ballots will be accepted via electronic or online transmission.  Class 4 Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted toward Confirmation of the Plan.**

**Each eBallot ID# is to be used solely for voting only those First Lien Claims described in Item 1 of your electronic Class 4 Ballot.  Please complete and submit an electronic Class 4 Ballot for each eBallot ID# you receive, as applicable.**

**Creditors who cast a Class 4 Ballot using the Solicitation Agent's online portal should NOT also submit a paper Class 4 Ballot.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 4 BALLOT ON OR BEFORE OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS CLASS 4 BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

---

| Class 4— First Lien Claims |
|---|

## INSTRUCTIONS FOR COMPLETING THIS CLASS 4 BALLOT

1.  The Debtors are soliciting the votes of holders of Claims or Interests with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Class 4 Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Class 4 Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan may be confirmed by the Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or Interests in at least one class of creditors or Interest holders that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  To ensure that your Class 4 Ballot is counted toward Confirmation of the Plan, you **must either**:  (a) complete and submit this hard copy Class 4 Ballot or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website http://www.kccllc.net/21co.  **Ballots will not be accepted by facsimile, email, or other electronic means (other than the online portal).**

4.  **Use of Hard Copy Ballot.**  To ensure that your hard copy Class 4 Ballot is counted toward Confirmation of the Plan, you must: (a) complete your Class 4 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 4 Ballot; and (c) clearly sign and return your original Class 4 Ballot in the enclosed pre-addressed, pre-paid envelope, or by delivery, overnight courier, or hand delivery to:

> **21st Century Oncology Holdings, Inc.**
> **Ballot Processing Center**
> **c/o Kurtzman Carson Consultants, LLC**
> **2335 Alaska Avenue**
> **El Segundo, CA 90245**

5.  **OR Use of Online Ballot Portal.**  To ensure that your electronic Class 4 Ballot is counted toward Confirmation of the Plan, please follow the instructions of the Debtors' case administration website at http://www.kccllc.net/21co.  You will need to enter your unique eBallot ID# indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile, email, or other electronic means (other than the online portal).**

6.  Your Class 4 Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is October 26, 2017, at 5:00 p.m.**, prevailing Eastern Time.

7.  If a Class 4 Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it may be counted toward Confirmation of the Plan only in the discretion of the Debtors.  Additionally, **the following Class 4 Ballots will** not **be counted toward Confirmation of the Plan:**

> (a)  any Class 4 Ballot that partially rejects and partially accepts the Plan;
> (b)  any Class 4 Ballot that is sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), any indenture trustee or administrative agent, or the Debtors' financial or legal advisors;
> (c)  any Class 4 Ballot that is sent by facsimile, email, or any electronic means other than via the online portal;
> (d)  any Class 4 Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;

7

(e)  any Class 4 Ballot cast by an Entity that does not hold a Claim in Class 4;

(f)  any Class 4 Ballot submitted by a holder not entitled to vote on the Plan;

(g)  any unsigned Class 4 Ballot;

(h)  any Class 4 Ballot that does not contain an original signature; and/or

(i)  any Class 4 Ballot not marked to accept or reject the Plan or any Class 4 Ballot marked both to accept and reject the Plan.

8.  The method of delivery of Class 4 Ballots to the Solicitation Agent is at the election and risk of each holder of a First Lien Claim.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *actually receives* the originally executed Class 4 Ballot.  In all cases, holders should allow sufficient time to assure timely delivery.

9.  If multiple Class 4 Ballots are received from the same holder of a First Lien Claim with respect to the same First Lien Claim prior to the Voting Deadline, the latest, timely received, and properly completed Class 4 Ballot will supersede and revoke any earlier received Class 4 Ballots.

10.  You must vote all of your First Lien Claims within Class 4 either to accept or reject the Plan and may *not* split your vote.  Further, for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, the Debtors may, in their discretion, (a) aggregate and treat separate First Lien Claims held by a single creditor or separate affiliated Entities in Class 4 as if such creditor or such separate affiliated Entities held one First Lien Claim in Class 4, and treat all votes related to such First Lien Claim as a single vote to accept or reject the Plan; or (b) not aggregate or treat separate First Lien Claims held by a single creditor or separate affiliated Entities in Class 4 as if such creditor or such separate affiliated Entities held one First Lien Claim in Class 4, and treat all votes related to such First Lien Claims as separate votes to accept or reject the Plan.

11.  This Class 4 Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12.  **Please be sure to sign and date your Class 4 Ballot**.  If you are signing a Class 4 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, you must submit proper evidence to the requesting party to so act on behalf of such holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 4 Ballot.

13.  If you hold Claims or Interests in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes *only* your Claims or Interests indicated on that ballot, so please complete and return each ballot that you received.

### PLEASE MAIL YOUR CLASS 4 BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 4 BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE RESTRUCTURING HOTLINE AT: (888) 251-2679 (US TOLL-FREE) and
(310) 751-2609 (INTERNATIONAL TOLL) OR EMAIL 21COINFO@KCCLLC.COM.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 4 BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

---

## **SCHEDULE 3C**

## **Form of Class 5 Master Ballot**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

<div align="center">

**MASTER BALLOT FOR VOTING TO ACCEPT**
**OR REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF 21ST CENTURY ONCOLOGY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**

**CLASS 5 MASTER BALLOT FOR HOLDERS OF NOTE CLAIMS**

**11.00% SENIOR NOTES DUE 2023**

</div>

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [•], 2017 (the "Disclosure Statement Order"). The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 5 master ballot (the "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[2] of Class 5 Note Claims as of September 19, 2017 (the "Voting Record Date"). Class 5 Note

---

[1]   Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

Claims include any Claim against any Debtor arising on account of, or in connection with, the Note Obligations, the Notes, the Indenture or any other "Note Documents" (as defined in the Indenture), including Claims for all accrued and unpaid principal, interest, fees, expenses, costs, and other charges and amounts constituting Note Obligations.

**This Master Ballot is to be used by you as a broker, bank, or other nominee, or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"), or as the proxy holder of a Nominee, for certain Beneficial Holders' Class 5 Note Claims (the "Class 5 Claims"), to transmit to the Solicitation Agent (as defined below) the votes of such Beneficial Holders in respect of their Class 5 Claims to accept or reject the Plan.**

The rights and treatment for each Class are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Master Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kurtzman Carson Consultants LLC (the "Solicitation Agent") at no charge by:  (i) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (ii) visiting the Debtors' restructuring website at:  http://www.kccllc.net/21co; (iii) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (iv) emailing 21coInfo@kccllc.com; or (b) for a fee via PACER at https://ecf.nysb.uscourts.gov/.

This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Master Ballot in error, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

**YOUR VOTE ON THIS MASTER BALLOT FOR CERTAIN BENEFICIAL HOLDERS OF NOTE CLAIMS IN CLASS 5 SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A CLASS 5 CLAIM.**

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Class 5 ballot for Beneficial Holders of Note Claims (each, a "Beneficial Holder Ballot") or the collection of votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

The Court may confirm the Plan and thereby bind all holders of Claims or Interests.  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Solicitation Agent *actually receives* it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME.**

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐   Is a Nominee for the Beneficial Holders of the aggregate principal amount of the Class 5 Claims listed in Item 2 below, and is the record holder of such Notes, or

☐   Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a Nominee that is the registered holder of the aggregate principal amount of Class 5 Claims listed in Item 2 below, or

☐   Has been granted a proxy (an original of which is attached hereto) from a Nominee or a Beneficial Holder that is the registered holder of the aggregate principal amount of Class 5 Claims listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Class 5 Claims described in Item 2.

**Item 2.  Class 5 Claims Vote on Plan; Item 3. Releases**

The undersigned transmits the following votes and releases of Beneficial Holders of Class 5 Claims and certifies that the following Beneficial Holders of Class 5 Claims, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Claims as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each holder must vote all such Beneficial Holder's Class 5 Claims to accept or reject the Plan and may not split such vote.  Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted toward Confirmation.  If the Beneficial Holder has checked the box on Item 3 of the Beneficial Holder Ballot pertaining to the releases by holders of Claims or Interests, as detailed in Article VIII.8.3 of the Plan, please place an X in the Item 3 column below.

| Your Customer Account Number for Each Beneficial Holder of Class 5 Claims | Principal Amount of Class 5 Claims Held as of Voting Record Date | Item 2 Indicate the vote cast on the Beneficial Holder Ballot by checking the appropriate box below. | | | | Item 3 If the "Opt Out" box in Item 3 of the Beneficial Holder Ballot was completed, check the box in the column below (only if holder voted to reject the Plan or did not vote and opted out) |
|---|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | or | |
| 1 | $ | ☐ | | ☐ | | ☐ |
| 2 | $ | ☐ | | ☐ | | ☐ |
| 3 | $ | ☐ | | ☐ | | ☐ |
| 4 | $ | ☐ | | ☐ | | ☐ |
| 5 | $ | ☐ | | ☐ | | ☐ |
| 6 | $ | ☐ | | ☐ | | ☐ |
| TOTALS | $ | | | | | |

**Item 4.  Important Information Regarding the Third Party Release.**

**Article VIII.8.3 of the Plan contains the following Third Party Release:**

**Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and**

discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments, the Backstop Order, the Restructuring Support Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

*        *        *

"*RELEASING PARTIES*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

**IN CONNECTION WITH THE FOREGOING, PLEASE NOTE THE FOLLOWING LANGUAGE FROM THE BENEFICIAL HOLDER BALLOT**:

- **If you vote to accept the Plan, you will be a "Releasing Party"[3] under the Plan, and you will be deemed to provide the Third-Party Release provided in Article VIII.8.3 of the Plan. If you vote to accept the plan, you cannot opt out of giving such release.**

- **If you vote to reject the Plan and wish to opt out of the giving the release provided in Article VIII.8.3 of the Plan, you must submit this Beneficial Holder Ballot to the Solicitation Agent by the Voting Deadline and check the opt out box below.**

- **If you do not vote on the Plan, but wish to opt out of giving the release provided in Article VIII.8.3 of the Plan, you must submit this Beneficial Holder Ballot by the Voting Deadline, and check the opt out box below.**

- **If you (i) do not submit a Beneficial Holder Ballot by the Voting Deadline, or (ii) submit a Beneficial Holder Ballot, but do not vote to accept or reject the Plan, and fail to check the opt out box below, you will be deemed to consent to giving the release provided in Article VIII.8.3 of the Plan.**

<u>**Item 5**</u>.  **Other Class 5 Ballots Submitted by Beneficial Holders.**  The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of the Beneficial Holder Ballot:

| YOUR customer account number and/or Customer Name for each Beneficial Holder who completed Item 4 of the Beneficial Holder Ballot. | Transcribe from Item 4 of the Beneficial Holder Ballot | | | |
|---|---|---|---|---|
| | Account Number | Name of Registered Holder or Nominee | Principal Amount of other Class 5 Note Claims | CUSIP No. of other Class 5 Note Claims Voted |
| 1. | | | $ | |

---

[3]  "***RELEASING PARTIES***" **MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.**

| 2. | | | $ | |
|---|---|---|---|---|
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |

**Item 6.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

- it has received a copy of the Disclosure Statement, the Plan, the Disclosure Statement Order, the Beneficial Holder Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Class 5 Claims listed in Item 2 above;

- it has received a completed and signed Beneficial Holder Ballot from each Beneficial Holder listed in Item 2 of this Master Ballot;

- it is the registered holder of all Class 5 Claims listed in Item 2 above being voted, or

- it has been authorized by each Beneficial Holder of Class 5 Claims listed in Item 2 above to vote on the Plan;

- no other Master Ballots with respect to the same Class 5 Claims identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Claims, then any such earlier Master Ballots are hereby revoked;

- it has properly disclosed:  (a) the number of Beneficial Holders of Class 5 Claims who completed the Beneficial Holder Ballots; (b) the respective amounts of the Class 5 Claims owned, as the case may be, by each Beneficial Holder of Class 5 Claims who completed a Beneficial Holder Ballot; (c) the vote by each Beneficial Holder of Class 5 Claims; (e) whether the "Opt Out" box was checked by each Beneficial Holder of the Class 5 Claims in its Beneficial Holder Ballot; (f) each such Beneficial Holder of Class 5 Claims' certification as to other Class 5 Claims voted; and (g) the customer account or other identification number for each such Beneficial Holder of Class 5 Claims; and

- it will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders of Class 5 Claims (whether properly completed or defective) for at least one (1) year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered.

Name of Nominee: _____
(Print or Type)

Participant Number:

_____

Name of Proxy Holder or Agent for Nominee (if applicable):


_____
(Print or Type)
_____

Signature: _____

Name of Signatory: _____

Title: _____

Address: _____
_____
_____

Date Completed: _____

Email Address: _____

Phone Number: _____


**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS MAIL,
OVERNIGHT COURIER, OR HAND DELIVERY TO:**

**21st Century Oncology Holdings, Inc.
Ballot Processing Center
c/o Kurtzman Carson Consultants LLC
1290 Avenue of the Americas, 9th Floor
New York, NY 10104**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR
BEFORE OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING
DEADLINE IS NOT EXTENDED), THE VOTES TRANSMITTED BY THIS MASTER BALLOT MAY BE
COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE
DEBTORS.**

---

| Class 5 — Note Claims |
|:---:|

### INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT

1. The Debtors are soliciting the votes of holders of Claims or Interests with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Master Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Master Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

2. The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or Interests in at least one class of creditors or Interest holders that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. You should immediately distribute the Beneficial Holder Ballots and the Solicitation Packages to all Beneficial Holders of Class 5 Claims and take any action required to enable each such Beneficial Holder to vote timely the Claims that it holds. You many distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices. You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) the Beneficial Holder Ballot, and the collection of votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means. **Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Class 5 Claim shall not be counted toward Confirmation of the Plan until you properly complete and deliver, to the Solicitation Agent, a Master Ballot that reflects the vote of such Beneficial Holders *so that it is actually received* by October 26, 2017, at 5:00 p.m., prevailing Eastern Time or otherwise validate the Master Ballot in a manner acceptable to the Solicitation Agent.**

4. If you are transmitting the votes of any Beneficial Holder of Class 5 Claims other than yourself, you may either:

   (a) "Pre-validate" the individual Class 5 Note Claim Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Class 5 Claim for voting within five (5) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package. A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including their DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Class 5 Claim held by the Nominee for such Beneficial Holder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder. The Beneficial Holder then completes the information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to the Solicitation Agent. A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; OR

   (b) Within five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Class 5 Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee. In such case, the Nominee will tabulate the votes of its respective Beneficial Holders on the Master Ballot, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent. The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline.

5. With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) complete, sign and date the Master Ballot; (c) transmit such Master Ballot to the Solicitation Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date of the Plan. You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

6. The Master Ballot *must* be returned to the Solicitation Agent so as to be ***actually received*** by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is October 26, 2017, at 5:00 p.m.**, prevailing Eastern Time.

7. If a Master Ballot is received *after* the Voting Deadline and if the Voting Deadline is not extended, it may be counted toward Confirmation of the Plan only in the discretion of the Debtors. Additionally, **the following Master Ballots will *not* be counted toward Confirmation of the Plan**:

   (a) any Master Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;
   (b) any Master Ballot cast by an Entity that does not hold a Class 5 Claim;
   (c) any Master Ballot sent by facsimile or any electronic means;
   (d) any unsigned Master Ballot;
   (e) any Master Ballot that does not contain an original signature;
   (f) any Master Ballot (i) not marked to accept or reject the Plan, or (ii) marked to indicate that a Beneficial Holder voted both to accept and reject the Plan, in which case only the vote of such Beneficial Holder will not be counted;
   (g) any Master Ballot that is sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), any indenture trustee or administrative agent, or the Debtors' financial or legal advisors; and
   (h) any Master Ballot submitted by any Entity not entitled to cast a vote with respect to the Plan.

8. The method of delivery of Master Ballots to the Solicitation Agent is at the election and risk of each Nominee of Class 5 Claims. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *actually receives* the originally executed Master Ballot. In all cases, Beneficial Holders and Nominees should allow sufficient time to assure timely delivery.

9. If a Beneficial Holder or Nominee holds a Class 5 Claim against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Beneficial Holder or Nominee has a Claim, as applicable, in that Voting Class.

10. Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Votes received by multiple Master Ballots will be counted except to the extent that the votes thereon are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the last valid Master Ballot(s) received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot(s). If more than one Master Ballot is submitted and the later Master Ballot(s) supplement(s) rather than supersedes the earlier Master Ballot(s), please mark the subsequent Master Ballot(s) with the words "Additional Vote" or such other language as you customarily use to indicate an additional vote that is not meant to revoke an earlier vote.

11. The Master Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim, (b) an amendment to a Proof of Claim, (c) an assertion of a Claim, or (d) an admission by the Debtors of the nature, validity or amount of any Claim.

12. **Please be sure to sign and date the Master Ballot**. You must indicate that you are signing a Master Ballot in your capacity as a Nominee, or as the proxy holder of a Nominee, for certain Beneficial Holders' Class 5 Claims and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must

submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address.

13. If you are both the Nominee and the Beneficial Holder of any of the Class 5 Claims and you wish to vote such Class 5 Claims, you may return a Beneficial Holder Ballot or Master Ballot for such Class 5 Claims and you must vote your entire Class 5 Claims to either to accept or reject the Plan and may not split your vote. Accordingly, a Beneficial Holder Ballot that partially rejects and partially accepts the Plan, other than a Master Ballot with the votes of multiple Beneficial Holders, will not be counted toward Confirmation of the Plan. If any Beneficial Holder has submitted a Beneficial Holder Ballot attempting to split its vote, please contact the Solicitation Agent immediately.

14. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, the Debtors may, in their discretion, (a) aggregate and treat separate Note Claims held by a single creditor or separate affiliated Entities in Class 5 as if such creditor or such separate affiliated Entities held one Note Claim in Class 5, and treat all votes related to such Note Claim as a single vote to accept or reject the Plan; or (b) not aggregate or treat separate Note Claims held by a single creditor or separate affiliated Entities in Class 5 as if such creditor or such separate affiliated Entities held one Note Claim in Class 5, and treat all votes related to such Note Claims as separate votes to accept or reject the Plan.

15. The following additional rules shall apply to Master Ballots:

    (a) Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such Entities in the Class 5 Claims as of the Record Voting Date, as evidenced by the record and depository listings.

    (b) Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Class 5 Claims held by such Nominee;

    (c) To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

    (d) To the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the over-vote, but only to the extent of the Nominee's position in Class 5 Claims; and

    (e) For purposes of tabulating votes, each holder holding through a particular account will be deemed to have voted the principal amount relating its holding in that particular account, although the Solicitation Agent may be asked to adjust such principal amount to reflect the Class 5 Claim amount.

**PLEASE MAIL YOUR MASTER BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT,
THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE SOLICITATION AGENT AT:  (877) 833-4150 (US TOLL-FREE) AND (917) 281-4800
(INTERNATIONAL TOLL) OR EMAIL AT 21COINFO@KCCLLC.COM.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR
BEFORE THE VOTING DEADLINE, WHICH IS OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING
EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), THE VOTES
TRANSMITTED HEREBY MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN
THE DISCRETION OF THE DEBTORS.**

---

## **SCHEDULE 3D**

### **Form of Class 5 Beneficial Holder Ballot**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**BENEFICIAL HOLDER BALLOT FOR VOTING TO ACCEPT
OR REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
21ST CENTURY ONCOLOGY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**

**CLASS 5 BALLOT FOR BENEFICIAL HOLDERS OF NOTE CLAIMS**

**11.00% SENIOR NOTES DUE 2023**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS
CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, YOUR
BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY
RECEIVED* BY THE SOLICITATION AGENT BY OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING
EASTERN TIME (THE "VOTING DEADLINE").  IF, HOWEVER, YOU RECEIVED A RETURN
ENVELOPE ADDRESSED TO YOUR NOMINEE, YOU MUST FOLLOW THE DIRECTIONS OF YOUR
NOMINEE TO CAST YOUR VOTE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO
RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A CLASS 5 MASTER BALLOT, WHICH
MASTER BALLOT MUST BE RETURNED TO THE SOLICITATION AGENT BY THE VOTING
DEADLINE IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE
PLAN.**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [•], 2017 (the "Disclosure Statement Order").  The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

You are receiving this Class 5 ballot for Beneficial Holders[2] (the "Beneficial Holder Ballot") because you are a Beneficial Holder of a Note Claim in Class 5 as of September 19, 2017 (the "Voting Record Date"). Class 5 Note Claims include any Claim against any Debtor arising on account of, or in connection with, the Note Obligations, the Notes, the Indenture or any other "Note Documents" (as defined in the Indenture), including Claims for all accrued and unpaid principal, interest, fees, expenses, costs, and other charges and amounts constituting Note Obligations. Accordingly, you have a right to vote to accept or reject the Plan. You may cast your vote through this Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"), in accordance with the instructions provided by your Nominee, who will then submit a Class 5 master ballot (the "Master Ballot") on behalf of the Beneficial Holders of Class 5 Claims.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 5 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kurtzman Carson Consultants LLC (the "Solicitation Agent") at no charge by: (i) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (ii) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (iii) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (iv) emailing 21coInfo@kccllc.com; or (b) for a fee via PACER at https://ecf.nysb.uscourts.gov/.

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 5, Note Claims, under the Plan. If you hold Claims or Interests in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

**In order for your vote to count, your Nominee must receive this Beneficial Holder Ballot in sufficient time for your Nominee to include your vote on a Master Ballot that must be received by the Solicitation Agent on or before the Voting Deadline, which is October 26, 2017, at 5:00 p.m., prevailing Eastern Time. Please allow sufficient time for your vote to be included on the Master Ballot completed by your Nominee. If a Master Ballot recoding your vote is not received by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.**

<u>Item 1</u>.  **Amount of Claim.[3]**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder of Note Claims in the following aggregate unpaid principal amount (insert amount in box below, unless otherwise completed by your Nominee):



$_____

---

[2]    A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

[3]    For voting purposes only and subject to tabulation rules.

**Item 2.  Vote on Plan.**

The Beneficial Holder of the Class 5 Note Claim against the Debtors set forth in Item 1 votes to (please check <u>one</u>):

| | | | |
|---|---|---|---|
| ☐ | **ACCEPT** (vote FOR) the Plan | ☐ | **REJECT** (vote AGAINST) the Plan |

**Item 3.  Important Information Regarding the Third Party Release.**

**<u>Article VIII.8.3 of the Plan contains the following provision</u>:**

Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments, the Backstop Order, the Restructuring Support Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

*                *                *

"*RELEASING PARTIES*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE

PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

**IN CONNECTION WITH THE FOREGOING, PLEASE CAREFULLY REVIEW THE FOLLOWING**:

- If you vote to accept the Plan, you will be a "Releasing Party"[4] under the Plan, and you will be deemed to provide the Third-Party Release provided in Article VIII.8.3 of the Plan. If you vote to accept the plan, you cannot opt out of giving such release.

- If you vote to reject the Plan and wish to opt out of the giving the release provided in Article VIII.8.3 of the Plan, you must submit this Beneficial Holder Ballot to the Solicitation Agent by the Voting Deadline and check the opt out box below.

- If you do not vote on the Plan, but wish to opt out of giving the release provided in Article VIII.8.3 of the Plan, you must submit this Beneficial Holder Ballot by the Voting Deadline, and check the opt out box below.

- If you (i) do not submit a Beneficial Holder Ballot by the Voting Deadline, or (ii) submit a Beneficial Holder Ballot, but do not vote to accept or reject the Plan, and fail to check the opt out box below, you will be deemed to consent to giving the release provided in Article VIII.8.3 of the Plan.

---

[4] "*RELEASING PARTIES*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

**The Beneficial Holder of the Class 5 Note Claim set forth in Item 1 that has not voted to accept the Plan and elects to**:

☐ **Opt Out** of the Third Party Release.

**Item 4.   Other Beneficial Holder Ballots Submitted.**   By returning this Beneficial Holder Ballot, the Beneficial Holder of the Class 5 Note Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Note Claims owned by such Beneficial Holder, except as identified in the following table, and (b) *all* Beneficial Holder Ballots submitted by the Beneficial Holder indicate the same vote to accept or reject the Plan that the holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

<div align="center">

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED <u>OTHER</u>
CLASS 5 NOTE CLAIMS ON OTHER BENEFICIAL HOLDER BALLOTS**

</div>

| Account Number | Name of Registered Holder or Nominee | Principal Amount of Other Class 5 Note Claims | CUSIP No. of Other Class 5 Note Claims  Voted |
|---|---|---|---|
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |

**Item 5.   Certifications.**

By signing this Beneficial Holder Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a)   that, as of the Voting Record Date, either:  (i) the undersigned is the holder of the Note Claims being voted; or (ii) the undersigned is an authorized signatory for an Entity that is a holder of the Note Claims being voted;

(b)   that the undersigned (or in the case of an authorized signatory, the holder) has received a copy of the Disclosure Statement, the Plan, the Disclosure Statement Order, and the Solicitation Package and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c)   that the undersigned has cast the same vote with respect to all Note Claims in Class 5 held by the holder of the Note Claims being voted, including any votes cast with respect to other Note Claims identified in Item 4; and

(d)   that no other Beneficial Holder Ballots with respect to the amount of the Note Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Note Claims, then any such earlier Beneficial Holder Ballots are hereby revoked.

Name of Holder: _____

(Print or Type)

_____

Signature: _____

Name of Signatory: _____

(If other than holder)

Title: _____

Address: _____

_____

_____

Telephone
Number: _____

Email: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENVELOPE PROVIDED OR
OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* EITHER:**

**(1) THIS BENEFICIAL HOLDER BALLOT, OR**

**(2) IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, THE MASTER
BALLOT REFLECTING YOUR VOTE, WHICH IS TO BE SUBMITTED BY YOUR NOMINEE ON
YOUR BEHALF,**

**ON OR BEFORE OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME**

**(AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS
BENEFICIAL HOLDER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN
ONLY IN THE DISCRETION OF THE DEBTORS.**

| Class 5 — Note Claims |
|:---:|

**INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT**

1. The Debtors are soliciting the votes of holders of Claims or Interests with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Beneficial Holder Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2. The Plan may be confirmed by the Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or Interests in at least one class of creditors or Interest holders that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. To ensure that your vote is counted toward Confirmation of the Plan:

   (a) if your Nominee has pre-validated your Beneficial Holder Ballot with their DTC participant number, your account number, the principal amount of your Class 5 Claims, and their signature, then you must: (i) complete the Beneficial Holder Ballot; (ii) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; (iii) if you do not vote to accept the Plan, indicate whether you elect to opt out of the Third Party Release in the box provided in Item 3 of the Beneficial Holder Ballot; and (iv) sign and return your Beneficial Holder Ballot to the Solicitation Agent, using the preaddressed, stamped envelope provided to you in the Solicitation Package, so that it is *actually received* by the Solicitation Agent on or before the Voting Deadline, which is October 26, 2017, at 5:00 p.m., prevailing Eastern Time.

   (b) if your Nominee has *not* pre-validated your Beneficial Holder Ballot, then you must submit your Beneficial Holder Ballot to your Nominee in the manner directed by your Nominee so that your Nominee can submit a Master Ballot that reflects your vote so that the Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline, which is October 26, 2017, at 5:00 p.m., prevailing Eastern Time. You may instruct your Nominee to vote on your behalf in the Master Ballot by: (i) completing the Beneficial Holder Ballot; (ii) indicating your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; (iii) if you do not vote to accept the Plan, indicating whether you elect to opt out of the Third Party Release in the box provided in Item 3 of the Beneficial Holder Ballot; and (iv) signing and returning the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee. Your completed Beneficial Holder Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

   **The Solicitation Agent will not accept any Beneficial Holder Ballots by email, facsimile or other electronic means.** If you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot to your Nominee, including all certifications.

4. **The following Beneficial Holder Ballots submitted to your Nominee will *not* be counted toward Confirmation of the Plan**:

   (a) any Beneficial Holder Ballot that partially rejects and partially accepts the Plan;
   (b) any Beneficial Holder Ballot that is sent to the Debtors, the Debtors' agents, any indenture trustee or administrative agent, or the Debtors' financial or legal advisors;

7

(c) any Beneficial Holder Ballot that is sent by facsimile, email, or any electronic means other than in accordance with the instructions of your Nominee;

(d) any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;

(e) any Beneficial Holder Ballot cast by an Entity that does not hold a Claim in Class 5;

(f) any unsigned Beneficial Holder Ballot;

(g) any Beneficial Holder Ballot submitted by a holder not entitled to vote pursuant to the Plan.

(h) any Beneficial Holder Ballot that does not contain an original signature, except as otherwise instructed by your Nominee; and/or

(i) any Beneficial Holder Ballot not marked to accept or reject the Plan or any Beneficial Holder Ballot marked both to accept and reject the Plan.

5. To the extent you are required to submit your Beneficial Holder Ballot directly to your Nominee, if your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted toward Confirmation of the Plan unless the Debtors determine otherwise. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee.

6. No Beneficial Holder Ballot should be sent to any of the Debtors, the Debtors' agents, the Debtors' financial or legal advisors, or any indenture trustee or administrative agent, and if so sent will not be counted toward Confirmation of the Plan.

7. If you deliver multiple Beneficial Holder Ballots to the Nominee or the Solicitation Agent with respect to the same Note Claim prior to the Voting Deadline, the latest valid Beneficial Holder Ballot or Master Ballot reflecting your vote, as applicable, that is timely received by the Solicitation Agent will supersede and revoke any earlier received Beneficial Holder Ballots.

8. You must vote all of your Note Claims within Class 5 either to accept or reject the Plan and may **not** split your vote. Further, for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, the Debtors may, in their discretion, (a) aggregate and treat separate Note Claims held by a single creditor or separate affiliated Entities in Class 5 as if such creditor or such separate affiliated Entities held one Note Claim in Class 5, and treat all votes related to such Note Claim as a single vote to accept or reject the Plan; or (b) not aggregate or treat separate Note Claims held by a single creditor or separate affiliated Entities in Class 5 as if such creditor or such separate affiliated Entities held one Note Claim in Class 5, and treat all votes related to such Note Claims as separate votes to accept or reject the Plan.

9. This Beneficial Holder Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim, (b) an amendment to a Proof of Claim, (c) an assertion of a Claim, or (d) an admission by the Debtors of the nature, validity or amount of any Claim.

10. **Please be sure to sign and date your Beneficial Holder Ballot**. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, you must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Ballot.

11. If you hold Claims or Interests in more than one Class under the Plan you may receive more than one ballot coded for each different Class. Each ballot votes *only* your Claims or Interests indicated on that ballot, so please complete and return each ballot that you received.

12. The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a ballot.

<u>**PLEASE MAIL YOUR BENEFICIAL HOLDER BALLOT PROMPTLY**</u>

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE RESTRUCTURING HOTLINE AT:  (888) 251-2679 (US TOLL-FREE) AND (310)
751-2609 (INTERNATIONAL TOLL) OR EMAIL AT: 21COINFO@KCCLLC.COM**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* EITHER:**

**(1) THIS BENEFICIAL HOLDER BALLOT, OR**

**(2) IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, THE MASTER
BALLOT REFLECTING YOUR VOTE, WHICH IS TO BE SUBMITTED BY YOUR NOMINEE ON
YOUR BEHALF,**

**ON OR BEFORE <u>OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME</u>**

**(AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS
BENEFICIAL HOLDER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN
ONLY IN THE DISCRETION OF THE DEBTORS.**

---

## SCHEDULE 3E

## Form of Class 6 Ballot

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**21st CENTURY ONCOLOGY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**

---

**CLASS 6 BALLOT FOR HOLDERS OF GENERAL UNSECURED CLAIMS**

---

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS
> CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS
> BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE
> *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY OCTOBER 26, 2017, AT 5:00 P.M.,
> PREVAILING EASTERN TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE
> FOLLOWING:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [•], 2017 (the "Disclosure Statement Order"). The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 6 ballot (the "Class 6 Ballot") because you are a holder of a General Unsecured Claim in Class 6 as of September 19, 2017 (the "Voting Record Date"). Class 6 General Unsecured Claims include any Claim against any Debtor that is not a Secured Claim, an Administrative Claim, a Professional Claim, a Priority Tax Claim, an Other Priority Claim, a Note Claim, a Section 510(b) Claim, or an Intercompany Claim, that is not otherwise paid in full during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 6 Ballot (as well as the Plan, Disclosure Statement Order,

---

[1] Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kurtzman Carson Consultants LLC (the "Solicitation Agent") at no charge by: (i) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (ii) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (iii) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (iv) emailing 21coInfo@kccllc.com; or (b) for a fee via PACER at https://ecf.nysb.uscourts.gov/.

This Class 6 Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Class 6 Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 6, General Unsecured Claims, under the Plan. If you hold Claims or Interests in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

**Item 1. Amount of Claim.**[2]

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder of General Unsecured Claims in the following aggregate unpaid amount (insert amount in box below):



**Item 2. Vote on Plan.**

The holder of the Class 6 General Unsecured Claim against the Debtors set forth in Item 1 votes to (please check one):

| ☐  **ACCEPT** (vote FOR) the Plan | ☐  **REJECT** (vote AGAINST) the Plan |
|---|---|

**Item 3. Convenience Claim Election.**

Pursuant to Article III.3.2 of the Plan, a holder of a General Unsecured Claim that is asserted in an amount greater than $1,000,000 will receive its Pro Rata[3] share of the New Common Stock Equity Pool[4] (subject to dilution

---

2    For voting purposes only and subject to tabulation rules.

3    "Pro Rata" means the proportion that (a) an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, or (b) with respect to the New Common Stock Equity Pool, an Allowed Claim in Class 5 or an Allowed Claim in Class 6 (but only if the holder of such Allowed Claim in Class 6 receives shares of the New Common Stock Equity Pool on account of such Allowed Claim in Class 6 in accordance with the terms of this Plan) bears to the aggregate amount of all Allowed Claims in Class 5 and Allowed Claims in Class 6 (but only including Allowed Claims in Class 6 that holders of such Allowed Claims in Class 6 receive shares of the New Common Stock Equity Pool on account of such Allowed Claims in Class 6 in accordance with the terms of this Plan).

on account of the shares of New Common Stock issuable upon conversion of the New Preferred Equity, the shares of New Common Stock issuable upon exercise of the New Warrants, and the Management Incentive Plan Equity), **unless** it elects to receive its Pro Rata share of the Convenience Claim Distribution[5] on account of such asserted General Unsecured Claim (*provided*, that in making such election, such holder agrees to reduce the amount of such asserted General Unsecured Claim for purposes of voting and distributions under the Plan to $1,000,000).

**By checking the following box, you elect to (a) make the Convenience Claim Election; (b) if the amount listed in Item 1 is greater than $1,000,000, cap the Allowed amount of your General Unsecured Claim at $1,000,000; and (c) relinquish any right to receive your Pro Rata share of the New Common Stock Equity Pool.**

> ☐ The undersigned **ELECTS** to make the Convenience Claim Election and
> cap its General Unsecured Claim at $1,000,000

**Item 4**. **New Common Stock Election.**

Pursuant to Article III.3.2 of the Plan, a holder of a General Unsecured Claim that is asserted in an amount less than or equal to $1,000,000 will receive its Pro Rata share of the Convenience Claim Distribution, **unless** it elects to receive its Pro Rata share of the New Common Stock Equity Pool (subject to dilution on account of the shares of New Common Stock issuable upon conversion of the New Preferred Equity, the shares of New Common Stock issuable upon exercise of the New Warrants, and the Management Incentive Plan Equity).

**By checking the following box, you elect to: (a) make the New Common Stock Election; and (b) relinquish any right to receive your Pro Rata share of the Convenience Claim Distribution.**

> ☐ The undersigned **ELECTS** to make the New Common Stock Election

**Item 5**. **Important Information Regarding the Third Party Release.**

**Article VIII.8.3 of the Plan contains the following provision:**

**Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments, the Backstop Order, the**

---

[4]    The "New Common Stock Equity Pool" means the common stock of Reorganized 21CH, consisting of (i) Class A Common Stock, par value $0.001 per share, which is voting stock, and (ii) Class B Common Stock, par value $0.001 per share, which is limited voting stock, in each case, to be issued on terms consistent in all material respects with the terms set forth in the Plan.

[5]    The "Convenience Claim Distribution" means cash in the aggregate amount of $500,000.

Restructuring Support Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

\*        \*        \*

"*RELEASING PARTIES*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

IN CONNECTION WITH THE FOREGOING, PLEASE CAREFULLY REVIEW THE FOLLOWING:

- If you vote to accept the Plan, you will be a "Releasing Party"[6] under the Plan, and you will be deemed to provide the Third-Party Release provided in Article VIII.8.3 of the Plan.  If you vote to accept the plan, you cannot opt out of giving such release.

---

[6]    "*RELEASING PARTIES*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE;

- **If you vote to reject the Plan and wish to opt out of the giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 6 Ballot to the Solicitation Agent by the Voting Deadline and check the opt out box below.**

- **If you do not vote on the Plan, but wish to opt out of giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 6 Ballot to the Solicitation Agent by the Voting Deadline, and check the opt out box below.**

- **If you (i) do not submit a Class 6 Ballot to the Solicitation Agent by the Voting Deadline, or (ii) submit a Ballot, but do not vote to accept or reject the Plan, and fail to check the opt out box below, you will be deemed to consent to giving the release provided in Article VIII.8.3 of the Plan.**

**The holder of the Class 6 General Unsecured Claim set forth in Item 1 that has not voted to accept the Plan elects to**:

☐  **Opt Out** of the Third Party Release.

**Item 6.  Certifications.**

By signing this Class 6 Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a)  that, as of the Voting Record Date, either:  (i) the undersigned is the holder of the General Unsecured Claims being voted; or (ii) the undersigned is an authorized signatory for an Entity that is a holder of the General Unsecured Claims being voted;

(b)  that the undersigned (or in the case of an authorized signatory, the holder) has received a copy of the Disclosure Statement, the Plan, the Disclosure Statement Order, and the Solicitation Package and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c)  that the undersigned has cast the same vote with respect to all General Unsecured Claims in Class 6 held by the holder of the General Unsecured Claims being voted; and

(d)  that no other Class 6 Ballots with respect to the amount of the General Unsecured Claims identified in Item 1 have been cast or, if any other Class 6 Ballots have been cast with respect to such General Unsecured Claims, then any such earlier Class 6 Ballots are hereby revoked.

---

**(L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.**

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| | |
| Signature: | |
| Name of Signatory: | |
| | (If other than holder) |
| Title: | |
| Address: | |
| | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**PLEASE COMPLETE, SIGN, AND DATE THIS CLASS 6 BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS MAIL (OR IN THE
ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR HAND DELIVERY TO
THE BELOW ADDRESSES.  YOUR CLASS 6 BALLOT MUST BE ACTUALLY RECEIVED BY THE
VOTING DEADLINE, WHICH IS OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME.**

**21st Century Oncology Holdings, Inc.
Ballot Processing Center
c/o Kurtzman Carson Consultants, LLC
2335 Alaska Avenue
El Segundo, CA 90245**

# PLEASE SELECT JUST ONE OPTION TO VOTE.  EITHER RETURN THIS PAPER CLASS 6 BALLOT WITH YOUR VOTE
## OR
# VOTE ELECTRONICALLY AS INSTRUCTED BELOW

**To submit your Class 6 Ballot via the Solicitation Agent's online portal, please visit
http://www.kccllc.net/21co.  Click on the "eBallot" section of the website and follow the instructions to submit
your Class 6 Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized
electronic Class 6 Ballot:**

**Unique eBallot ID#:_____**

6

**The Solicitation Agent's online portal is the sole manner in which Class 6 Ballots will be accepted via electronic or online transmission.  Class 6 Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted toward Confirmation of the Plan.**

**Each eBallot ID# is to be used solely for voting only those General Unsecured Claims described in Item 1 of your electronic Class 6 Ballot.  Please complete and submit an electronic Class 6 Ballot for each eBallot ID# you receive, as applicable.**

**Creditors who cast a Class 6 Ballot using the Solicitation Agent's online portal should NOT also submit a paper Class 6 Ballot.**

| |
|---|
| **IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 6 BALLOT ON OR BEFORE OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS CLASS 6 BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.** |

| Class 6— General Unsecured Claims |
|---|

## INSTRUCTIONS FOR COMPLETING THIS CLASS 6 BALLOT

1.  The Debtors are soliciting the votes of holders of Claims or Interests with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Class 6 Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Class 6 Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan may be confirmed by the Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or Interests in at least one class of creditors or Interest holders that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  To ensure that your Class 6 Ballot is counted toward Confirmation of the Plan, you **must either**:  (a) complete and submit this hard copy Class 6 Ballot or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website http://www.kccllc.net/21co.  **Ballots will not be accepted by facsimile, email, or other electronic means (other than the online portal).**

4.  **Use of Hard Copy Ballot.**  To ensure that your hard copy Class 6 Ballot is counted toward Confirmation of the Plan, you must:  (a) complete your Class 6 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 6 Ballot; and (c) clearly sign and return your original Class 6 Ballot in the enclosed pre-addressed, pre-paid envelope, or by delivery, overnight courier, or hand delivery to:

<div align="center">

**21st Century Oncology Holdings, Inc.**
**Ballot Processing Center**
**c/o Kurtzman Carson Consultants, LLC**
**2335 Alaska Avenue**
**El Segundo, CA 90245**

</div>

5.  **OR Use of Online Ballot Portal.**  To ensure that your electronic Class 6 Ballot is counted toward Confirmation of the Plan, please follow the instructions of the Debtors' case administration website at http://www.kccllc.net/21co.  You will need to enter your unique eBallot ID# indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots will not be accepted by facsimile, email, or other electronic means (other than the online portal).**

6.  Your Class 6 Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is October 26, 2017, at 5:00 p.m.**, prevailing Eastern Time.

7.  If a Class 6 Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it may be counted toward Confirmation of the Plan only in the discretion of the Debtors.  Additionally**, the following Class 6 Ballots will** *not* **be counted toward Confirmation of the Plan:**

    (a)  any Class 6 Ballot that partially rejects and partially accepts the Plan;

    (b)  any Class 6 Ballot that is sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), any indenture trustee or administrative agent, or the Debtors' financial or legal advisors;

    (c)  any Class 6 Ballot that is sent by facsimile, email, or any electronic means other than via the online portal;

    (d)  any Class 6 Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;

(e)  any Class 6 Ballot cast by an Entity that does not hold a Claim in Class 6;

(f)  any Class 6 Ballot submitted by a holder not entitled to vote on the Plan;

(g)  any unsigned Class 6 Ballot;

(h)  any Class 6 Ballot that does not contain an original signature; and/or

(i)  any Class 6 Ballot not marked to accept or reject the Plan or any Class 6 Ballot marked both to accept and reject the Plan.

8.  The method of delivery of Class 6 Ballots to the Solicitation Agent is at the election and risk of each holder of a General Unsecured Claim.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *actually receives* the originally executed Class 6 Ballot.  In all cases, holders should allow sufficient time to assure timely delivery.

9.  If multiple Class 6 Ballots are received from the same holder of a General Unsecured Claim with respect to the same General Unsecured Claim prior to the Voting Deadline, the latest, timely received, and properly completed Class 6 Ballot will supersede and revoke any earlier received Class 6 Ballots.

10.  You must vote all of your General Unsecured Claims within Class 6 either to accept or reject the Plan and may *not* split your vote.  Further, for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, the Debtors may, in their discretion, (a) aggregate and treat separate General Unsecured Claims held by a single creditor or separate affiliated Entities in Class 6 as if such creditor or such separate affiliated Entities held one General Unsecured Claim in Class 6, and treat all votes related to such General Unsecured Claim as a single vote to accept or reject the Plan; or (b) not aggregate or treat separate General Unsecured Claims held by a single creditor or separate affiliated Entities in Class 6 as if such creditor or such separate affiliated Entities held one General Unsecured Claim in Class 6, and treat all votes related to such General Unsecured Claims as separate votes to accept or reject the Plan.

11.  This Class 6 Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12.  **Please be sure to sign and date your Class 6 Ballot**.  If you are signing a Class 6 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, you must submit proper evidence to the requesting party to so act on behalf of such holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 6 Ballot.

13.  If you hold Claims or Interests in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes *only* your Claims or Interests indicated on that ballot, so please complete and return each ballot that you received.

## PLEASE MAIL YOUR CLASS 6 BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 6 BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE RESTRUCTURING HOTLINE AT: (888) 251-2679 (US TOLL-FREE) and
(310) 751-2609 (INTERNATIONAL TOLL) OR EMAIL 21COINFO@KCCLLC.COM.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 6 BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

---

**<u>SCHEDULE 3F</u>**

**<u>Form of Class 10 Ballot</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**21st CENTURY ONCOLOGY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**

**CLASS 10 BALLOT FOR INTERESTS IN 21CH and 21CI**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS**
> **CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS**
> **BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE**
> ***ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY OCTOBER 26, 2017, AT 5:00 P.M.,**
> **PREVAILING EASTERN TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE**
> **FOLLOWING:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [•], 2017 (the "Disclosure Statement Order"). The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 10 ballot (the "Class 10 Ballot") because you are a holder of an Interest in 21CH or 21CI in Class 10 as of September 19, 2017 (the "Voting Record Date"). Class 10 includes (a) any capital stock (including common stock and preferred stock), limited liability company interest, partnership interest, equity security (as defined in section 101(16) of the Bankruptcy Code) or other ownership, beneficial or profits interest of 21CH or 21CI, including, without limitation, the Series A Preferred Stock, and (b) any option, warrant, security, stock appreciation right, phantom unit, incentive, commitment, call, redemption right, repurchase right or other agreement, arrangement or right of any kind that is convertible into, exercisable or exchangeable for, or otherwise

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

permits any Person to acquire, any capital stock (including common stock and preferred stock), limited liability company interest, partnership interest or other equity security or other ownership, beneficial or profits interest of 21CH or 21CI (whether or not arising under or in connection with any employment agreement), including any Claim against 21CH or 21CI that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 10 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kurtzman Carson Consultants LLC (the "Solicitation Agent") at no charge by:  (i) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (ii) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (iii) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (iv) emailing 21coInfo@kccllc.com; or (b) for a fee via PACER at https://ecf.nysb.uscourts.gov/.

This Class 10 Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Class 10 Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Interest.  Your Interest has been placed in Class 10, Interests in 21CH or 21CI, under the Plan.

**Item 1.  Amount of Interest.**[2]

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder of an Interest in 21CH or 21CI in the form and in the amount of [_____]:

**Item 2.  Vote on Plan.**

The holder of the Class 10 Interest in 21CH or 21CI against the Debtors set forth in Item 1 votes to (please check one):

☐  **ACCEPT** (vote FOR) the Plan          ☐  **REJECT** (vote AGAINST) the Plan

**Item 3.  Important Information Regarding the Third Party Release.**

**Article VIII.8.3 of the Plan contains the following provision:**

Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to

---

[2]    For voting purposes only and subject to tabulation rules.

assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments, the Backstop Order, the Restructuring Support Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

*       *       *

"*RELEASING PARTIES*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

**IN CONNECTION WITH THE FOREGOING, PLEASE CAREFULLY REVIEW THE FOLLOWING:**

- **If you vote to accept the Plan, you will be a "Releasing Party"[3] under the Plan, and you will be deemed to provide the Third-Party Release provided in Article VIII.8.3 of the Plan.  If you vote to accept the plan, you cannot opt out of giving such release.**

- **If you vote to reject the Plan, and wish to opt out of the giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 10 Ballot to the Solicitation Agent by the Voting Deadline and check the opt out box below.**

- **If you do not vote on the Plan, but wish to opt out of giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 10 Ballot to the Solicitation Agent by the Voting Deadline, and check the opt out box below.**

- **If you (i) do not submit a Class 10 Ballot to the Solicitation Agent by the Voting Deadline, or (ii) submit a Class 10 Ballot, but do not vote to accept or reject the Plan, and fail to check the opt out box below, you will be deemed to consent to giving the release provided in Article VIII.8.3 of the Plan.**

**The holder of the Class 10 Interest in 21CH or 21CI set forth in Item 1 that has not voted to accept the Plan elects to**:

☐ **Opt Out** of the Third Party Release.

<u>**Item 4**</u>.  **Certifications.**

By signing this Class 10 Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a)  that, as of the Voting Record Date, either:  (i) the undersigned is the holder of the Interest in 21CH or 21CI being voted; or (ii) the undersigned is an authorized signatory for an Entity that is a holder of the Interest in 21CH or 21CI being voted;

---

[3]  **"*RELEASING PARTIES*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (O) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (P) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (Q) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (R) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (Q), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.**

(b) that the undersigned (or in the case of an authorized signatory, the holder) has received a copy of the Disclosure Statement, the Plan, the Disclosure Statement Order, and the Solicitation Package and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c) that the undersigned has cast the same vote with respect to all Interests in 21CH or 21CI in Class 10 held by the holder of the Interests in 21CH or 21CI being voted; and

(d) that no other Class 10 Ballots with respect to the amount of the Interest in 21CH or 21CI identified in Item 1 have been cast or, if any other Class 10 Ballots have been cast with respect to such Interest in 21CH or 21CI, then any such earlier Class 10 Ballots are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| | |
| Signature: | |
| Name of Signatory: | |
| | (If other than holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**PLEASE COMPLETE, SIGN, AND DATE THIS CLASS 10 BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE)** *PROMPTLY* **VIA FIRST CLASS MAIL (OR IN THE ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR HAND DELIVERY TO THE BELOW ADDRESSES.  YOUR CLASS 10 BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME.**

**21st Century Oncology Holdings, Inc.
Ballot Processing Center
c/o Kurtzman Carson Consultants, LLC
2335 Alaska Avenue
El Segundo, CA 90245**

# PLEASE SELECT JUST ONE OPTION TO VOTE.  EITHER RETURN THIS PAPER CLASS 10 BALLOT WITH YOUR VOTE
# OR
# VOTE ELECTRONICALLY AS INSTRUCTED BELOW

**To submit your Class 10 Ballot via the Solicitation Agent's online portal, please visit http://www.kccllc.net/21co.  Click on the "eBallot" section of the website and follow the instructions to submit your Class 10 Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Class 10 Ballot:**

**Unique eBallot ID#:**_____

**The Solicitation Agent's online portal is the sole manner in which Class 10 Ballots will be accepted via electronic or online transmission.  Class 10 Ballots submitted by facsimile, email or other means of electronic transmission will not be counted toward Confirmation of the Plan.**

**Each eBallot ID# is to be used solely for voting only those Interests in 21CH or 21CI described in Item 1 of your electronic Class 10 Ballot.  Please complete and submit an electronic Class 10 Ballot for each eBallot ID# you receive, as applicable.**

**Interest holders who cast a Class 10 Ballot using the Solicitation Agent's online portal should NOT also submit a paper Class 10 Ballot.**

<div style="border:1px solid black; padding:8px; text-align:center;">

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 10 BALLOT ON OR BEFORE OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS CLASS 10 BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

</div>

| Class 10 — Interests in 21CH or 21CI |
|:---:|

## INSTRUCTIONS FOR COMPLETING THIS CLASS 10 BALLOT

1. The Debtors are soliciting the votes of holders of Claims or Interests with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Class 10 Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Class 10 Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2. The Plan may be confirmed by the Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or Interests in at least one class of creditors or Interest holders that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. To ensure that your Class 10 Ballot is counted toward Confirmation of the Plan, you **must either**: (a) complete and submit this hard copy Class 10 Ballot or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website http://www.kccllc.net/21co. **Ballots will not be accepted by facsimile, email, or other electronic means (other than the online portal).**

4. **Use of Hard Copy Ballot.** To ensure that your hard copy Class 10 Ballot is counted toward Confirmation of the Plan, you must: (a) complete your Class 10 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 10 Ballot; and (c) clearly sign and return your original Class 10 Ballot in the enclosed pre-addressed, pre-paid envelope, or by delivery, overnight courier, or hand delivery to:

<div align="center">

**21st Century Oncology Holdings, Inc.**
**Ballot Processing Center**
**c/o Kurtzman Carson Consultants, LLC**
**2335 Alaska Avenue**
**El Segundo, CA 90245**

</div>

5. **OR Use of Online Ballot Portal.** To ensure that your electronic Class 10 Ballot is counted toward Confirmation of the Plan, please follow the instructions of the Debtors' case administration website at http://www.kccllc.net/21co. You will need to enter your unique eBallot ID# indicated above. The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots will not be accepted by facsimile, email, or other electronic means (other than the online portal).**

6. Your Class 10 Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is October 26, 2017, at 5:00 p.m.**, prevailing Eastern Time.

7. If a Class 10 Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it may be counted toward Confirmation of the Plan only in the discretion of the Debtors. Additionally, **the following Class 10 Ballots will *not* be counted toward Confirmation of the Plan**:

   (a) any Class 10 Ballot that partially rejects and partially accepts the Plan;

   (b) any Class 10 Ballot that is sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), any indenture trustee or administrative agent, or the Debtors' financial or legal advisors;

   (c) any Class 10 Ballot that is sent by facsimile, email, or any electronic means other than via the online portal;

   (d) any Class 10 Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Interest in Class 10;

<div align="center">7</div>

(e)  any Class 10 Ballot cast by an Entity that does not hold an Interest in Class 10;

(f)  any Class 10 Ballot submitted by a holder not entitled to vote on the Plan;

(g)  any unsigned Class 10 Ballot;

(h)  any Class 10 Ballot that does not contain an original signature; and/or

(i)  any Class 10 Ballot not marked to accept or reject the Plan or any Class 10 Ballot marked both to accept and reject the Plan.

8.  The method of delivery of Class 10 Ballots to the Solicitation Agent is at the election and risk of each holder of an Interest in 21CH or 21CI.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *actually receives* the originally executed Class 10 Ballot.  In all cases, holders should allow sufficient time to assure timely delivery.

9.  If multiple Class 10 Ballots are received from the same holder of an Interest in 21CH or 21CI with respect to the same Interest in 21CH or 21CI prior to the Voting Deadline, the latest, timely received, and properly completed Class 10 Ballot will supersede and revoke any earlier received Class 10 Ballots.

10.  You must vote all of your Interests in 21CH or 21CI within Class 10 either to accept or reject the Plan and may *not* split your vote.  Further, for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, the Debtors may, in their discretion, (a) aggregate and treat separate Interests in 21CH or 21CI held by a single creditor or separate affiliated Entities in Class 10 as if such creditor or such separate affiliated Entities held one Interest in 21CH or 21CI in Class 10, and treat all votes related to such Interest in 21CH or 21CI as a single vote to accept or reject the Plan; or (b) not aggregate or treat separate Interests in 21CH or 21CI held by a single creditor or separate affiliated Entities in Class 10 as if such creditor or such separate affiliated Entities held one Interest in 21CH or 21CI in Class 10, and treat all votes related to such Interests in 21CH or 21CI as separate votes to accept or reject the Plan.

11.  This Class 10 Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Interest or (b) an assertion or admission of a Claim.

12.  **Please be sure to sign and date your Class 10 Ballot**.  If you are signing a Class 10 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, you must submit proper evidence to the requesting party to so act on behalf of such holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 10 Ballot.

13.  If you hold Claims or Interests in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes *only* your Claims or Interests indicated on that ballot, so please complete and return each ballot that you received.

<u>**PLEASE MAIL YOUR CLASS 10 BALLOT PROMPTLY**</u>

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 10 BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE RESTRUCTURING HOTLINE AT: (888) 251-2679 (US TOLL-FREE) and
(310) 751-2609 (INTERNATIONAL TOLL) OR EMAIL 21COINFO@KCCLLC.COM.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 10 BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS OCTOBER 26, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## **SCHEDULE 4**

## **Form of Unimpaired Non-Voting Status Notice**

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF UNIMPAIRED**
**CLAIMS OR EQUITY INTERESTS PRESUMED TO ACCEPT THE PLAN**

**PLEASE TAKE NOTICE THAT** on [•], 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No.[●]] (the "Disclosure Statement Order"):  (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim or Interest under the Plan, *you are not entitled to vote on the Plan*. Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) or Interest in a Debtor that is Unimpaired and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are *not* entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **November 9, 2017, at 10:00 a.m.**, prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **October 26, at 4:00 p.m.**, prevailing Eastern Time (the "Plan Objection Deadline"). Any objection to the Plan *must*: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be *actually received* on or before the Plan Objection Deadline:

| *Counsel to the Debtors* | |
|---|---|
| Christopher Marcus, P.C. | James H.M. Sprayregen, P.C. |
| John T. Weber | William A. Guerrieri (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Alexandra Schwarzman (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | **KIRKLAND & ELLIS LLP** |
| 601 Lexington Avenue | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| New York, New York 10022 | 300 North LaSalle Street |
| Telephone:    (212) 446-4800 | Chicago, Illinois 60654 |
| Facsimile:    (212) 446-4900 | Telephone:    (312) 862-2000 |
|  | Facsimile:    (312) 862-2200 |

| *U.S. Trustee* | |
|---|---|
| Paul Schwartzberg | |
| Susan Golden | |
| Office of the United States Trustee | |
| for the Southern District of New York | |
| U.S. Federal Office Building, 201 Varick Street, Suite 1006 | |
| New York, New York 10014 | |

| *Proposed Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases* | |
|---|---|
| Lorenzo Marinuzzi | |
| Daniel Harris | |
| Morrison & Foerster LLP | |
| 250 West 55th Street | |
| New York, New York 10019 | |

| **Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders** |
|---|
| Jayme Goldstein<br>Samantha Martin<br>Odelia Lee<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038 |
| **Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility** |
| Evan Fleck<br>Matthew Brod<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, New York 10005 |
| **Counsel to the MDL Agent** |
| Seth H. Lieberman<br>Patrick Sibley<br>Matthew W. Silverman<br>Pryor Cashman LLP<br>7 Times Square<br>New York, New York 10036 |
| **Counsel to the DIP Agent** |
| Joel H. Levitin<br>Richard A. Stieglitz, Jr.<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, New York 10005 |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**.  PURSUANT TO THE PLAN YOU ARE PRESUMED TO ACCEPT THE PLAN AND THEREFORE ARE DEEMED TO HAVE CONSENTED TO THE RELEASES SET FORTH IN ARTICLE VIII.8.3 OF THE PLAN.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

New York, New York
Dated: _____, 2017

/s/ _____

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

## **SCHEDULE 5**

### **Form of Impaired Non-Voting Status Notice**

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF**
**IMPAIRED CLAIMS OR EQUITY INTERESTS PRESUMED TO REJECT THE PLAN**

**PLEASE TAKE NOTICE THAT** on [•], 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No.[●]] (the "Disclosure Statement Order"):  (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim or Interest under the Plan, ***you are not entitled to vote on the Plan***.  Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) or Interest in a Debtor that is receiving no distribution under the Plan, you are presumed to reject the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **November 9, 2017, at 10:00 a.m.**, prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **October 26, 2017 at 4:00 p.m.**, prevailing Eastern Time (the "Plan Objection Deadline").  Any objection to the Plan ***must***:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be ***actually received*** on or before Plan Objection Deadline:

| *Counsel to the Debtors* | |
|---|---|
| Christopher Marcus, P.C.<br>John T. Weber<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:          (212) 446-4800<br>Facsimile:          (212) 446-4900 | James H.M. Sprayregen, P.C.<br>William A. Guerrieri (admitted *pro hac vice*)<br>Alexandra Schwarzman (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:          (312) 862-2000<br>Facsimile:          (312) 862-2200 |
| *U.S. Trustee* | |
| Paul Schwartzberg<br>Susan Golden<br>Office of the United States Trustee<br>for the Southern District of New York<br>U.S. Federal Office Building, 201 Varick Street, Suite 1006<br>New York, New York 10014 | |
| *Proposed Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases* | |
| Lorenzo Marinuzzi<br>Daniel Harris<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019 | |

| *Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders* |
|---|
| Jayme Goldstein<br>Samantha Martin<br>Odelia Lee<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038 |

| *Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility* |
|---|
| Evan Fleck<br>Matthew Brod<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, New York 10005 |

| *Counsel to the MDL Agent* |
|---|
| Seth H. Lieberman<br>Patrick Sibley<br>Matthew W. Silverman<br>Pryor Cashman LLP<br>7 Times Square<br>New York, New York 10036 |

| *Counsel to the DIP Agent* |
|---|
| Joel H. Levitin<br>Richard A. Stieglitz, Jr.<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, New York 10005 |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

New York, New York
Dated: _____, 2017

/s/ _____

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

## **SCHEDULE 6**

### **Form of Notice to Disputed Claim Holders**

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

### NOTICE OF NON-VOTING STATUS WITH RESPECT TO DISPUTED CLAIMS

     **PLEASE TAKE NOTICE THAT** on [•], 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No.[●]] (the "Disclosure Statement Order"):  (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

     **PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because you are the holder of a Claim or Interest that is subject to a pending objection by the Debtors. **You are not entitled to vote any disputed portion of your Claim on the Plan unless one or more of the following events have taken place before September 15, 2017 (the date that is two business days before the Voting Deadline)** (each, a "Resolution Event"):

1.  an order of the Court is entered allowing such Claim or Interest pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

2.  an order of the Court is entered temporarily allowing such Claim or Interest for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

3.  a stipulation or other agreement is executed between the holder of such Claim or Interest and the Debtors temporarily allowing the holder of such Claim or Interest to vote its Claim or Interest in an agreed upon amount; or

4.  the pending objection to such Claim or Interest is voluntarily withdrawn by the objecting party.

Accordingly, this notice is being sent to you for informational purposes only.

**PLEASE TAKE FURTHER NOTICE THAT** if a Resolution Event occurs, then no later than two business days thereafter, the Solicitation Agent shall distribute a Solicitation Package and a pre-addressed, postage pre-paid envelope to you (to the extent such Solicitation Package was not already distributed to you), and you must return your Ballot to the Solicitation Agent in accordance with the instructions set forth in the Solicitation Package no later than the Voting Deadline, which is on **October 26, 2017, at 5:00 p.m.,** prevailing Eastern Time.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claims, you should contact the Solicitation Agent in accordance with the instructions provided above.

2

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

New York, New York

Dated: _____, 2017

/s/ _____

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

## **SCHEDULE 7**

## **Form of Cover Letter**



**[DATE]**

<u>Via First Class Mail</u>

<u>RE</u>:    **21st Century Oncology Holdings, Inc.,** *et al.*,
      **Chapter 11 Case No. 17-22770 (RDD) (Bankr. S.D.N.Y.) (Jointly Administered)**

TO ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN:

21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>")[1] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") on May 25, 2017.

You have received this letter and the enclosed materials because you are entitled to vote on the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>").[2]    On [•], 2017, the Court entered an order (the "<u>Disclosure Statement Order</u>"):  (a) authorizing the Debtors to solicit acceptances for the Plan and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"); (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan, and for filing objections to the Plan.

> YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO
> VOTE ON THE PLAN.  THEREFORE, YOU SHOULD READ THIS LETTER
> CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO
> NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms used but not otherwise defined herein have the meanings as set forth in the Plan.

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Court for distribution to holders of Claims or Interests in connection with the solicitation of votes to accept the Plan. The Solicitation Package consists of the following:

    a.  a copy of the Solicitation and Voting Procedures;

    b.  a Ballot, together with detailed voting instructions and a pre-addressed, postage prepaid return envelope;

    c.  this letter;

    d.  the Disclosure Statement, as approved by the Bankruptcy Court (and the exhibits thereto, including the Plan);

    e.  the Disclosure Statement Order (excluding the exhibits thereto, except for the Solicitation and Voting Procedures);

    f.  the notice of the hearing to consider confirmation of the Plan; and

    g.  any other materials as directed by the Court.

21st Century Oncology Holdings, Inc. (on behalf of itself and each of the other Debtors) has approved the filing of the Plan and the solicitation of votes to accept the Plan. The Debtors believe that the acceptance of the Plan is in the best interests of their estates, holders of Claims or Interests, and all other parties in interest. Moreover, the Debtors believe that any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) on account of Claims or Interests asserted in the Chapter 11 Cases.

> **THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS INDICATED ON YOUR BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT ON OR BEFORE 5:00 P.M. PREVAILING EASTERN TIME ON THURSDAY, OCTOBER 26, 2017.**

If you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court

Electronic Records) at: https://ecf.nysb.uscourts.gov/.  A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.  Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, the solicitation materials, but may ***not*** advise you as to whether you should vote to accept or reject the Plan.

Sincerely,

_____

21st Century Oncology Holdings, Inc. on its own behalf and for each of the Debtors

## **SCHEDULE 8**

## **Form of Confirmation Hearing Notice**

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF HEARING TO CONSIDER**
**CONFIRMATION OF THE CHAPTER 11 PLAN FILED BY THE**
**DEBTORS AND RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE THAT** on [•], 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No.[●]] (the "Disclosure Statement Order"):  (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates*  (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates*  (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **November 9, 2017, at 10:00 a.m.,** prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140.

---

**PLEASE BE ADVISED**:  THE CONFIRMATION HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

---

## CRITICAL INFORMATION REGARDING VOTING ON THE PLAN

**Voting Record Date**.  The voting record date is **September 19, 2017** (the "Voting Record Date"), which is the date for determining which holders of Claims or Interests in Classes 3, 4, 5, 6, and 10 are entitled to vote on the Plan.  Holders of Claims or Interests in Classes 1, 2, 7, 8 and 9 are either presumed to accept or reject the Plan and therefore are not entitled to vote on the Plan.

**Voting Deadline**.  The deadline for voting on the Plan is on **Thursday, October 26, 2017, at 5:00 p.m.,** prevailing Eastern Time (the "Voting Deadline").  If you received a Solicitation Package, including a ballot, and intend to vote on the Plan you *must*:  (a) follow the voting instructions carefully; (b) complete *all* of the required information on the ballot; and (c) execute and return your completed ballot according to and as set forth in detail in the voting instructions so that it is *actually received* by the Debtors' solicitation agent, Kurtzman Carson Consultants LLC (the "Solicitation Agent") on or before the Voting Deadline.  *A failure to follow such instructions may disqualify your vote*.

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**, WHICH PROVISIONS ARE ALSO SET FORTH ON ANNEX 1 HERETO.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THESE PROVISIONS CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED UNDER THE PLAN.

---

**Plan Objection Deadline**.  The deadline for filing objections to the Plan is **October 26, 2017, at 4:00 p.m.,** prevailing Eastern Time (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing *must*:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; *and* (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be *actually received* on or before the Plan Objection Deadline:

2

| *Counsel to the Debtors* | |
|---|---|
| Christopher Marcus, P.C.<br>John T. Weber<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:        (212) 446-4800<br>Facsimile:        (212) 446-4900 | James H.M. Sprayregen, P.C.<br>William A. Guerrieri (admitted *pro hac vice*)<br>Alexandra Schwarzman (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:        (312) 862-2000<br>Facsimile:        (312) 862-2200 |

| *U.S. Trustee* |
|---|
| Paul Schwartzberg<br>Susan Golden<br>Office of the United States Trustee<br>for the Southern District of New York<br>U.S. Federal Office Building, 201 Varick Street, Suite 1006<br>New York, New York 10014 |

| *Proposed Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases* |
|---|
| Lorenzo Marinuzzi<br>Daniel Harris<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019 |

| *Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders* |
|---|
| Jayme Goldstein<br>Samantha Martin<br>Odelia Lee<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038 |

| *Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility* |
|---|
| Evan Fleck<br>Matthew Brod<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, New York 10005 |
| *Counsel to the MDL Agent* |
| Seth H. Lieberman<br>Patrick Sibley<br>Matthew W. Silverman<br>Pryor Cashman LLP<br>7 Times Square<br>New York, New York 10036 |
| *Counsel to the DIP Agent* |
| Joel H. Levitin<br>Richard A. Stieglitz, Jr.<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, New York 10005 |

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**.  If you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by:  (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at:  http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/.  A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.  Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

**The Plan Supplement**.  The Debtors will file the Plan Supplement on or before **October 17, 2017**, and will serve a notice on all holders of Claims or Interests entitled to vote on the Plan, which will:  (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

**<u>BINDING NATURE OF THE PLAN</u>:**

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS OR INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASES, FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, OR VOTED TO REJECT THE PLAN.**

New York, New York

Dated: _____, 2017

/s/ _____

Christopher Marcus, P.C.

John T. Weber

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

601 Lexington Avenue

New York, New York 10022

Telephone:    (212) 446-4800

Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.

William A. Guerrieri (admitted *pro hac vice*)

Alexandra Schwarzman (admitted *pro hac vice*)

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

300 North LaSalle Street

Chicago, Illinois 60654

Telephone:    (312) 862-2000

Facsimile:    (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

## ANNEX 1

### Effect of Confirmation of the Plan

#### *Discharge of Claims and Termination of Interests (Article VIII.8.1 of the Plan)*

Except as otherwise provided for herein or in the Confirmation Order, effective as of the Effective Date:  (a) the rights afforded in the Plan and the treatment of all Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against or in the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests that arose before the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, shall be satisfied, settled, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h) or 502(i) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other or further Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all such Claims and other debts and liabilities against the Debtors and satisfaction, termination or cancellation of all Interests and other rights of equity Security holders in the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim.

#### *Releases by the Debtors (Article VIII.8.2 of the Plan)*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, in exchange for their cooperation and, to the extent applicable, provision of new money pursuant to the Restructuring Transactions, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or

in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments, the Backstop Order, the Restructuring Support Agreement, the negotiation, formulation, preparation, implementation or administration of the Plan, the Plan Supplement, the Disclosure Statement, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim, cause of action or other assertion of liability released pursuant to the Debtor Release.

### _Releases by Holders of Claims and Interests (Article VIII.8.3 of the Plan)_

Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments, the Backstop Order, the Restructuring Support Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any

Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

### *Releasing Parties (Article VIII.1.1.182 of the Plan)*

"*Releasing Parties*" means collectively, and in each case solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Backstop Parties; (d) the DIP Lenders; (e) the DIP Agent; (f) the Consenting MDL Lenders; (g) the MDL Agent; (h) the Consenting First Lien Lenders; (i) the First Lien Agent; (j) the Consenting Noteholders; (k) the Indenture Trustee; (l) the Equity Parties; (m) all holders of Claims and Interests that are presumed to accept the Plan; (n) all holders of Claims or Interests entitled to vote on the Plan who either (1) vote to accept the Plan or (2) receive a ballot but abstain from voting on the Plan; (o) all holders of Claims and Interests entitled to vote on the Plan who vote to reject the Plan but do not elect on their ballot to opt-out of the Third-Party Release; (p) all Rights Offering Participants that participate in the Rights Offerings; (q) all other holders of Claims and Interests to the fullest extent permitted by law; and (r) with respect to the foregoing clauses (a) through (q), each of such Person's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such.

### *Released Parties (Article VIII.1.1.181 of the Plan)*

"*Released Parties*" means each of the following: (i)(a) the Debtors, (b) the Reorganized Debtors, and (c) with respect to each of the foregoing parties in clauses (i)(a) and (i)(b), each of such Entity's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment

bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such, and only if serving in such capacity; and (ii)(a) the Backstop Parties; (b) the DIP Lenders; (c) the DIP Agent; (d) the Consenting MDL Lenders; (e) the MDL Agent; (f) the Consenting First Lien Lenders; (g) the First Lien Agent; (h) the Consenting Noteholders; (i) the Indenture Trustee; (j) the Equity Parties; and (k) with respect to each of the foregoing Persons described in clauses (ii)(a) through (ii)(j), each of such Person's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees (including, in the case of the Equity Parties, any current or former director of any Debtor that is, or was, employed by either Equity Party), agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such, and only if serving in such capacity; provided, however, that notwithstanding anything to the contrary herein, any Equity Party (and, to the extent related to any Equity Party, any Person described in clause (ii)(k)) shall only constitute a Released Party to the extent such Equity Party becomes a Restructuring Support Party, does not breach its obligations under the Restructuring Support Agreement, and does not terminate the Restructuring Support Agreement; provided, further that the Excluded Directors and Officers shall not constitute Released Parties.

### *Exculpation (Article VIII.8.4 of the Plan)*

Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any cause of action, claim or other assertion of liability for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, administration, implementation or Filing of, as applicable, the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, the Rights Offerings, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, the Backstop Purchase Agreement, the Backstop Order, the Backstop Commitments, any Restructuring Transaction, or any other Restructuring Document or contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of Consummation, the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the Solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such

distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the Solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e).

## *Exculpated Parties (Article VIII.1.1.73 of the Plan)*

"*Exculpated Parties*" means each of the following: (i)(a) the Debtors, (b) the Reorganized Debtors, and (c) with respect to each of the foregoing parties in clauses (i)(a) and (i)(b), each of such Entity's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such, and only if serving in such capacity; and (ii)(a) the Backstop Parties; (b) the DIP Lenders; (c) the DIP Agent; (d) the Consenting MDL Lenders; (e) the MDL Agent; (f) the Consenting First Lien Lenders; (g) the First Lien Agent; (h) the Consenting Noteholders; (i) the Indenture Trustee; (j) the Equity Parties; and (k) with respect to each of the foregoing Persons described in clauses (ii)(a) through (ii)(j), each of such Person's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees (including, in the case of the Equity Parties, any current or former director of any Debtor that is, or was, employed by either Equity Party), agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such, and only if serving in such capacity; provided, however, that notwithstanding anything to the contrary herein, any Equity Party (and, to the extent related to any Equity Party, any Person described in clause (ii)(j)) shall only constitute an Exculpated Party to the extent such Equity Party becomes a Restructuring Support Party, does not breach its obligations under the Restructuring Support Agreement, and does not terminate the Restructuring Support Agreement; provided, further that the Excluded Directors and Officers shall not constitute Exculpated Parties.

## *Injunction (Article VIII.8.5 of the Plan)*

Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to <u>Section 8.2</u> or <u>Section 8.3</u> of this Plan, discharged or terminated pursuant to <u>Section 8.1</u> of this Plan, or are subject to exculpation pursuant to <u>Section 8.4</u> of this Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties, or any of their respective properties or Estates:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or by any means any judgment, award, decree, or order on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind on account of,

in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has filed, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan.

## **SCHEDULE 9**

### **Form of Plan Supplement Notice**

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on [•], 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"): (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order, the Debtors filed the Plan Supplement with the Court on October 17, 2017 [Docket No. [●]]. The Plan Supplement contains the following documents:

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Plan.

(a)    the draft New First Lien Term Loan Credit Agreement (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New First Lien Term Loan Credit Facility);

(b)    the New MDL Term Loan Credit Agreement (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New MDL Term Loan Facility);

(c)    the New Second Lien Notes Indenture (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New Second Lien Notes);

(d)    the New Intercreditor Agreement (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New Intercreditor Agreement);

(e)    the New Warrant Documents (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New Warrants);

(f)    the New Organizational Documents;

(g)    a list of retained Causes of Action;

(h)    the Schedule of Assumed Executory Contracts and Unexpired Leases;

(i)    the Schedule of Rejected Executory Contracts and Unexpired Leases; and

(j)    the schedule of Excluded Directors and Officers.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **November 9, 2017, at 10:00 a.m.,** prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **October 26, 2017, at 4:00 p.m.,** prevailing Eastern Time (the "Plan Objection Deadline").  Any objection to the Plan ***must***:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be ***actually received*** on or before the Plan Objection Deadline:

2

| *Counsel to the Debtors* | |
|---|---|
| Christopher Marcus, P.C.<br>John T. Weber<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:        (212) 446-4800<br>Facsimile:        (212) 446-4900 | James H.M. Sprayregen, P.C.<br>William A. Guerrieri (admitted *pro hac vice*)<br>Alexandra Schwarzman (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:        (312) 862-2000<br>Facsimile:        (312) 862-2200 |

| *U.S. Trustee* |
|---|
| Paul Schwartzberg<br>Susan Golden<br>Office of the United States Trustee<br>for the Southern District of New York<br>U.S. Federal Office Building, 201 Varick Street, Suite 1006<br>New York, New York 10014 |

| *Proposed Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases* |
|---|
| Lorenzo Marinuzzi<br>Daniel Harris<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019 |

| *Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders* |
|---|
| Jayme Goldstein<br>Samantha Martin<br>Odelia Lee<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038 |

| *Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility* |
|---|
| Evan Fleck |
| Matthew Brod |
| Milbank, Tweed, Hadley & McCloy LLP |
| 28 Liberty Street |
| New York, New York 10005 |

| *Counsel to the MDL Agent* |
|---|
| Seth H. Lieberman |
| Patrick Sibley |
| Matthew W. Silverman |
| Pryor Cashman LLP |
| 7 Times Square |
| New York, New York 10036 |

| *Counsel to the DIP Agent* |
|---|
| Joel H. Levitin |
| Richard A. Stieglitz, Jr. |
| Cahill Gordon & Reindel LLP |
| Eighty Pine Street |
| New York, New York 10005 |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

New York, New York

Dated: _____, 2017

/s/ _____

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

## **SCHEDULE 10**

## **Form of Assumption Notice**

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF (A) EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES TO BE ASSUMED OR ASSUMED AND ASSIGNED BY THE**
**DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY,**
**AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

**PLEASE TAKE NOTICE THAT** on [•], 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"): (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Schedule of Assumed Executory Contracts and Unexpired Leases* [Docket No. [●]] (the "Assumption Schedule"), attached hereto as Exhibit 1, with the Court as part of the Plan Supplement on October 17, 2017 as contemplated under the Plan.  The determination to assume or assume and assign, as of the Effective Date, the Executory Contracts and Unexpired Leases identified in the Assumption Schedule was made as of October 26, 2017 and is subject to revision at any time prior to the Effective Date.

---

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT WILL BE ASSUMED OR ASSUMED AND ASSIGNED AS OF THE EFFECTIVE DATE PURSUANT TO THE PLAN.  THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN, INCLUDING THE ASSUMPTION SCHEDULE.[3]**

---

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **November 9, 2017, at 10:00 a.m.,** prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140.

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption or assumption and assignment.  Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contracts and Unexpired Leases, which amounts are listed in the Assumption Schedule.  Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contracts and Unexpired Leases identified in the Assumption Schedule will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors in Cash on the Effective Date or as soon as reasonably practicable thereafter.  In the event of a dispute, however, payment of the

---

[3]    Neither the exclusion nor inclusion of any contract or lease on the Assumption Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder. Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) contest any Claim asserted in connection with assumption or assumption and assignment of any Executory Contract or Unexpired Lease.

cure amount would be made following the entry of a final order(s) resolving the dispute and approving the assumption or assumption and assignment. If an objection to the proposed assumption, assumption and assignment, or related cure amount is sustained by the Court, however, the Debtors may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming or assuming and assigning it.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any objections to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease identified in the Assumption Schedule) is **October 26, 2017, at 4:00 p.m.,** prevailing Eastern Time (the "Plan Objection Deadline"). Any objection to the Plan *must*: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be ***actually received*** on or before the Plan Objection Deadline:

| *Counsel to the Debtors* | |
|---|---|
| Christopher Marcus, P.C. | James H.M. Sprayregen, P.C. |
| John T. Weber | William A. Guerrieri (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Alexandra Schwarzman (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | **KIRKLAND & ELLIS LLP** |
| 601 Lexington Avenue | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| New York, New York 10022 | 300 North LaSalle Street |
| Telephone:     (212) 446-4800 | Chicago, Illinois 60654 |
| Facsimile:     (212) 446-4900 | Telephone:     (312) 862-2000 |
| | Facsimile:     (312) 862-2200 |

| *U.S. Trustee* |
|---|
| Paul Schwartzberg |
| Susan Golden |
| Office of the United States Trustee |
| for the Southern District of New York |
| U.S. Federal Office Building, 201 Varick Street, Suite 1006 |
| New York, New York 10014 |

| *Proposed Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases* |
|---|
| Lorenzo Marinuzzi |
| Daniel Harris |
| Morrison & Foerster LLP |
| 250 West 55th Street |
| New York, New York 10019 |

| *Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders* |
|---|
| Jayme Goldstein<br>Samantha Martin<br>Odelia Lee<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038 |
| *Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility* |
| Evan Fleck<br>Matthew Brod<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, New York 10005 |
| *Counsel to the MDL Agent* |
| Seth H. Lieberman<br>Patrick Sibley<br>Matthew W. Silverman<br>Pryor Cashman LLP<br>7 Times Square<br>New York, New York 10036 |
| *Counsel to the DIP Agent* |
| Joel H. Levitin<br>Richard A. Stieglitz, Jr.<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, New York 10005 |

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption or assumption and assignment of the Executory Contracts and Unexpired Leases identified in the Assumption Schedule and/or related cure or adequate assurances proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or assumption and assignment, as applicable, or cure amount will be deemed to have assented to such assumption or assumption and assignment, as applicable, and cure amount.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST**

**COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED OR ASSUMED AND ASSIGNED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE EFFECTIVE DATE OF THE DEBTORS' OR REORGANIZED DEBTORS' ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED OR ASSUMED AND ASSIGNED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

      **PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

---

New York, New York

Dated: _____, 2017

/s/ _____

Christopher Marcus, P.C.

John T. Weber

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

601 Lexington Avenue

New York, New York 10022

Telephone:    (212) 446-4800

Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.

William A. Guerrieri (admitted *pro hac vice*)

Alexandra Schwarzman (admitted *pro hac vice*)

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

300 North LaSalle Street

Chicago, Illinois 60654

Telephone:    (312) 862-2000

Facsimile:    (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

## **SCHEDULE 11**

## **Form of Rejection Notice**

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES TO BE REJECTED PURSUANT TO THE PLAN**

PLEASE TAKE NOTICE THAT on [•], 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No.[●]] (the "Disclosure Statement Order"): (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1] Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2] Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

PLEASE TAKE FURTHER NOTICE THAT the Debtors filed the *Schedule of Rejected Executory Contracts and Unexpired Leases* [Docket No. [●]] (the "Rejection Schedule") attached hereto as Exhibit 1, with the Court as part of the Plan Supplement on October 17, 2017, as contemplated under the Plan. The determination to reject, as of the Effective Date, the Executory Contracts and Unexpired Leases identified in the Rejection Schedule was made as of October 26, 2017 and is subject to revision at any time prior to the Effective Date.

---

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT WILL BE REJECTED AS OF THE EFFECTIVE DATE PURSUANT TO THE PLAN. THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN. INCLUDING THE REJECTION SCHEDULE.[3]**

---

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **November 9, 2017, at 10:00 a.m.,** prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140.

PLEASE TAKE FURTHER NOTICE THAT all proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and Unexpired Leases identified in the Rejection Schedule, if any, must be filed[4] so that they are ***actually received***, on or before the date that is thirty days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection, by either: (i) electronically using the interface available on the website of the Debtors' notice and claims agent at https://epoc.kccllc.net/21co; or (ii) first-class U.S. Mail, overnight mail, or other hand-delivery system, at the following address:

If delivered by first-class U.S. Mail or overnight mail:
21st Century Oncology Holdings, Inc.
Claims Processing Center
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, California 90245

If delivered by hand:
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street, Room 248
White Plains, NY 10601

---

[3]    Neither the exclusion nor inclusion of any contract or lease on the Rejection Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder. Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Rejection Schedule and assume or assume and assign such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) contest any Claim asserted in connection with the rejection of any Executory Contract or Unexpired Lease.

[4]    Proofs of claim submitted by facsimile or electronic mail will not be accepted and will not be deemed timely filed.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed on or before the deadline specified herein will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, their Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court.**

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **October 26, 2017, at 4:00 p.m.,** prevailing Eastern Time (the "Plan Objection Deadline"). Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be actually received on or before the Plan Objection Deadline:

| Counsel to the Debtors | |
|---|---|
| Christopher Marcus, P.C. <br> John T. Weber <br> **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** <br> 601 Lexington Avenue <br> New York, New York 10022 <br> Telephone:    (212) 446-4800 <br> Facsimile:    (212) 446-4900 | James H.M. Sprayregen, P.C. <br> William A. Guerrieri (admitted *pro hac vice*) <br> Alexandra Schwarzman (admitted *pro hac vice*) <br> **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** <br> 300 North LaSalle Street <br> Chicago, Illinois 60654 <br> Telephone:    (312) 862-2000 <br> Facsimile:    (312) 862-2200 |
| *U.S. Trustee* | |
| Paul Schwartzberg <br> Susan Golden <br> Office of the United States Trustee <br> for the Southern District of New York <br> U.S. Federal Office Building, 201 Varick Street, Suite 1006 <br> New York, New York 10014 | |
| *Proposed Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases* | |
| Lorenzo Marinuzzi <br> Daniel Harris <br> Morrison & Foerster LLP <br> 250 West 55th Street <br> New York, New York 10019 | |

| *Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders* |
|---|
| Jayme Goldstein<br>Samantha Martin<br>Odelia Lee<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038 |
| *Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility* |
| Evan Fleck<br>Matthew Brod<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, New York 10005 |
| *Counsel to the MDL Agent* |
| Seth H. Lieberman<br>Patrick Sibley<br>Matthew W. Silverman<br>Pryor Cashman LLP<br>7 Times Square<br>New York, New York 10036 |
| *Counsel to the DIP Agent* |
| Joel H. Levitin<br>Richard A. Stieglitz, Jr.<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, New York 10005 |

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the rejection of the Executory Contracts and Unexpired Leases identified in the Rejection Schedule and/or related rejection damages proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login

identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov/.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

---

New York, New York

Dated: _____, 2017

/s/
_____

Christopher Marcus, P.C.

John T. Weber

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

601 Lexington Avenue

New York, New York 10022

Telephone:   (212) 446-4800

Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.

William A. Guerrieri (admitted *pro hac vice*)

Alexandra Schwarzman (admitted *pro hac vice*)

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

300 North LaSalle Street

Chicago, Illinois 60654

Telephone:   (312) 862-2000

Facsimile:    (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

## SCHEDULE 12

### New Notes Rights Offering Procedures

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

<div align="center">

### NOTES RIGHTS OFFERING PROCEDURES

</div>

1.    **Introduction**

      21st Century Oncology Holdings, Inc. ("21C Holdings") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") are pursuing a proposed restructuring (the "Restructuring") of their existing debt and other obligations to be effectuated pursuant to a plan of reorganization (the "Plan") in connection with voluntary, pre-arranged reorganization cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), in accordance with the terms and conditions set forth in that certain Restructuring Support Agreement, dated as of May 25, 2017 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "RSA"),[2] by and among the Debtors and the other entities party thereto defined therein as "Restructuring Support Parties".

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the RSA or, if any such term is not defined in the RSA, such term shall have the meaning given to it in that certain Backstop Purchase Agreement, dated as of [    ], 2017 (together with all exhibits, schedules and attachments thereto, as amended, supplemented, amended and restated or otherwise modified from time to time, the "Backstop Purchase Agreement"), by and among 21C Holdings, 21st Century Oncology, Inc. ("21C Oncology") and certain of its direct and indirect subsidiaries, and the entities party thereto defined therein as "Backstop Parties".

In connection with the Plan, after obtaining approval of these procedures (these "Notes Rights Offering Procedures") by the Bankruptcy Court and in accordance with the terms of the Backstop Purchase Agreement, the Debtors shall launch a notes rights offering (the "Notes Rights Offering") pursuant to which each holder of an Allowed Senior Notes Claim as of the Rights Offering Record Date (as defined below) (including any investment advisors, managers, managed funds or accounts, intermediaries and/or nominees who hold Allowed Senior Notes Claims) that is an Accredited Investor (each, a "Rights Offering Participant" and, collectively, the "Rights Offering Participants") will be entitled to receive non-transferable, non-certificated rights (the "Notes Rights"), but not the obligation, to purchase such Rights Offering Participant's *pro rata* share (based on its respective holdings of the aggregate outstanding principal amount of Senior Notes as of the Rights Offering Record Date) of New Second Lien Notes (the "Rights Offering Notes") with an aggregate original principal amount of $200,000,000 (the "Notes Rights Offering Amount").   Rights Offering Participants will be issued Notes Rights at no charge.

Only Rights Offering Participants that have timely and validly completed and returned to Kurtzman Carson Consultants LLC, the subscription agent for the Notes Rights Offering (in such capacity, the "Subscription Agent"), an accredited investor questionnaire (the "AI Questionnaire"), which will be sent to each Rights Offering Participant concurrently with the distribution of the Notes Rights Exercise Form (as defined below), may participate in the Notes Rights Offering; provided, however, that each Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date (i) shall be deemed an Accredited Investor and a Rights Offering Participant and (ii) shall not be required to complete and return an AI Questionnaire as a condition to its right to participate in the Notes Rights Offering. Each Rights Offering Participant is entitled to receive sufficient copies of the AI Questionnaire for distribution to the beneficial owners of the Senior Notes for whom such Rights Offering Participant holds such Senior Notes.

Rights Offering Notes shall be issued in minimum denominations of $[_____]. Fractional Rights Offering Notes shall not be issued upon exercise of the Notes Rights and no compensation to Rights Offering Participants that otherwise would have received fractional Rights Offering Notes shall be paid in respect of such fractional Rights Offering Notes. Each Rights Offering Participant's maximum amount of Rights Offering Notes that such Rights Offering Participant is permitted to subscribe for pursuant to the exercise of its Notes Rights shall be rounded  down to the nearest whole Rights Offering Note.

**THE DISCLOSURE STATEMENT DISTRIBUTED IN CONNECTION WITH THE DEBTORS' SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN WILL SET FORTH IMPORTANT INFORMATION THAT SHOULD BE CAREFULLY READ AND CONSIDERED BY EACH RIGHTS OFFERING PARTICIPANT PRIOR TO MAKING A DECISION TO PARTICIPATE IN THE NOTES RIGHTS OFFERING, INCLUDING ARTICLE IX OF THE DISCLOSURE STATEMENT REGARDING CERTAIN RISK FACTORS TO BE CONSIDERED BEFORE EXERCISING ANY NOTES RIGHTS.**

2.    **Backstop Purchase Agreement**

Any Rights Offering Notes that are not subscribed for and purchased in the Notes Rights Offering by a Rights Offering Participant (including any Rights Offering Notes that holders of Allowed Senior Notes Claims as of the Rights Offering Record Date who are not Accredited Investors could have purchased if such holders had received Notes Rights if they were Accredited Investors and exercised such Notes Rights in the Notes Rights Offering) (such Rights Offering Notes, the "Unsubscribed Notes") shall be put to and purchased by the Backstop Parties (subject to their respective Backstop Notes Commitment Amounts) in accordance with the terms and conditions of the Backstop Purchase Agreement.

There will be no over-subscription privilege provided in connection with the Notes Rights Offering, such that any Unsubscribed Notes will not be offered to other Rights Offering Participants, but rather will be purchased by the Backstop Parties (subject to their respective Backstop Notes Commitment Amounts) in accordance with the terms and conditions of the Backstop Purchase Agreement.

In consideration for the Debtors' right to call the Backstop Notes Commitments of the Backstop Parties to purchase the Unsubscribed Notes pursuant to the terms of the Backstop Purchase Agreement, 21C Holdings shall issue to the Backstop Parties (or their designees) additional shares of New Preferred Equity with an aggregate initial liquidation value equal to $15,000,000 (the "Notes Put Option Shares") on a *pro rata* basis based upon their respective Backstop Commitment Percentages. The Notes Put Option Shares will be paid only to the Backstop Parties that do not default on their respective Backstop Notes Commitments.

3.    **Commencement and Expiration of the Notes Rights Offering; Rights Offering Record Date**

The Notes Rights Offering shall commence on the day upon which the Notes Rights Exercise Forms and the AI Questionnaires are mailed to holders of Allowed Senior Notes Claims as of the Rights Offering Record Date (the "Rights Offering Commencement Date").

The Notes Rights Offering shall expire at 5:00 p.m. (New York City time) on [_____] (such date, the "Rights Offering Termination Date" and such time on the Rights Offering Termination Date, the "Rights Offering Termination Time"). If the Rights Offering Termination Date and/or the Rights Offering Termination Time is/are extended in accordance with the terms of these Notes Rights Offering Procedures, the Debtors shall promptly notify the Rights Offering Participants, before 9:00 a.m. (New York City time) on the Business Day before the then-effective Rights Offering Termination Date, in writing, of such extension and the date of the new Rights Offering Termination Date and/or the time of the new Rights Offering Termination Time. Each Rights Offering Participant intending to participate in the Notes Rights Offering must affirmatively make an election to exercise its Notes Rights at or prior to the Rights Offering Termination Time in accordance with the provisions of Section 4 below.

"Rights Offering Record Date" means September 19, 2017.

4.      **Exercise of Notes Rights**

      Each Rights Offering Participant that elects to participate in the Notes Rights Offering must have timely satisfied each of the Notes Rights Offering Conditions (as defined below).  Any Rights Offering Participant that has timely satisfied each of the Notes Rights Offering Conditions shall be deemed to have made a binding, irrevocable election to exercise its Notes Rights to the extent set forth in the Notes Rights Exercise Form delivered by such Rights Offering Participant (a "Binding Rights Election"); provided, however, that a Rights Offering Participant's right to participate in the Notes Rights Offering shall remain subject to its compliance with the Additional Conditions (as defined below).

**The Binding Rights Election Cannot Be Withdrawn.**

      Each Rights Offering Participant is entitled to participate in the Notes Rights Offering solely to the extent provided in these Notes Rights Offering Procedures.  Further, each Rights Offering Participant may exercise all or any portion of such Rights Offering Participant's Notes Rights; provided, however, that a Rights Offering Participant shall not be permitted to participate in the Notes Rights Offering unless such Rights Offering Participant also participates in the Equity Rights Offering in an equal proportionate amount.

      (a)      **Exercise by Rights Offering Participants**

      To exercise its Notes Rights, each Rights Offering Participant must satisfy each of the following conditions (collectively, the "Notes Rights Offering Conditions"):  (i) deliver a duly executed and properly completed AI Questionnaire to the Subscription Agent so that such AI Questionnaire is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time; (ii) deliver a duly executed and properly completed notes rights offering subscription exercise form (the "Notes Rights Exercise Form") to the Subscription Agent so that such Notes Rights Exercise Form is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time; and (iii) pay to the Subscription Agent, by wire transfer of immediately available funds in accordance with the Payment Instructions (as defined below), its Aggregate Cash Exercise Price (as defined below), so that payment of the Aggregate Cash Exercise Price is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.  In addition to the foregoing, to participate in the Notes Rights Offering, a Rights Offering Participant must also agree to (x) vote to accept the Plan with respect to all of the Claims and Interests owned or controlled by such Rights Offering Participant (to the extent any such Claims and Interests are entitled to vote to accept or reject the Plan) and timely deliver a ballot voting to accept the Plan with respect to all of the Claims and Interests owned or controlled by such Rights Offering Participant (to the extent any such Claims and Interests are entitled to vote to accept or reject the Plan) in accordance with solicitation procedures approved by the Bankruptcy Court, and (y) not opt out of any releases set forth in Article VIII of the Plan (clauses (x) and (y) of this sentence being the "Additional Conditions").

      Anything herein to the contrary notwithstanding, if any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date participates in the Notes Rights Offering in its capacity as a Rights Offering Participant, then such Backstop Party shall not be required to pay its Aggregate Cash Exercise Price at or before the Rights Offering

Termination Time, but rather shall be permitted to deposit its Aggregate Cash Exercise Price into the Deposit Account at any time on or before the Deposit Deadline in the same manner that such Backstop Party would be required to deposit its Aggregate Notes Cash Purchase Price pursuant to Section 2.2(d) of the Backstop Purchase Agreement.

To facilitate the exercise of the Notes Rights, on the Rights Offering Commencement Date, the Debtors will mail or cause to be mailed, based upon information provided to the Debtors by the Trustee, a Notes Rights Exercise Form to each holder of an Allowed Senior Notes Claim as of the Rights Offering Record Date, together with instructions for the proper completion, due execution and timely delivery to the Subscription Agent of the Notes Rights Exercise Form and the AI Questionnaire.

When the Notes Rights Exercise Forms are mailed to holders of Allowed Senior Notes Claims as of the Rights Offering Record Date, the Debtors shall include in such mailing written instructions (the "Payment Instructions") relating to the payment of the Aggregate Cash Exercise Price for each Rights Offering Participant that exercises its Notes Rights. The Payment Instructions shall include wire transfer instructions for the payment of the Aggregate Cash Exercise Price for each Rights Offering Participant that exercises its Notes Rights.

The purchase price for Rights Offering Notes shall be equal to the principal amount thereof. Any reference to a Rights Offering Participant's "Aggregate Exercise Price" shall mean an aggregate amount equal to the portion of the Notes Rights Offering Amount that such Rights Offering Participant validly elects to subscribe for and purchase (as set forth in the Notes Rights Exercise Form that such Rights Offering Participant properly completes and duly executes and delivers to the Subscription Agent at or before the Rights Offering Termination Time).

Each Rights Offering Participant electing to exercise its Notes Rights in the Notes Rights Offering shall have the right to pay its Aggregate Exercise Price by (at the sole option and election of such Rights Offering Participant) (i) exchanging all or any portion of the principal amount of Credit Facility Claims owned or controlled by such Rights Offering Participant as of the Rights Offering Termination Time (any such exchange of Credit Facility Claims, a "Credit Facility Claim Exchange") and/or (ii) paying cash in an aggregate amount (taking together clauses (i) and (ii)) equal to the Aggregate Exercise Price for such Rights Offering Participant. Any Credit Facility Claims that are exchanged in a Credit Facility Claim Exchange shall acquire New Second Lien Notes on a dollar-for-dollar basis based on the aggregate principal amount of such Credit Facility Claims (it being understood and agreed that all accrued and unpaid interest on such Credit Facility Claims as of the Effective Date shall be paid in full in cash on the Effective Date pursuant to the Plan). Each Rights Offering Participant shall indicate on its Notes Rights Exercise Form whether such Rights Offering Participant elects to pay such Rights Offering Participant's Aggregate Exercise Price through a Credit Facility Claim Exchange (and the aggregate principal amount of Credit Facility Claims that will be subject to such Credit Facility Claim Exchange) and/or with cash (and the amount of such cash). The portion of a Rights Offering Participant's Aggregate Exercise Price that such Rights Offering Participant elects to pay in cash shall be referred to herein as such Rights Offering Participant's "Aggregate Cash Exercise Price". Subject to the immediately succeeding paragraph, if a Rights Offering Participant shall (x) fail to make an election on its Notes Rights Exercise Form as to the form of

payment of its Aggregate Exercise Price or (y) elect on its Notes Rights Exercise Form to pay all or any portion of its Aggregate Exercise Price through a Credit Facility Claim Exchange and the aggregate principal amount of Credit Facility Claims owned or controlled by such Rights Offering Participant as of the Rights Offering Termination Time is less than the aggregate principal amount of Credit Facility Claims that such Rights Offering Participant has elected to be subject to such Credit Facility Claim Exchange (as specified on such Rights Offering Participant's Notes Rights Exercise Form), then (in either case of <u>clause (x)</u> or <u>clause (y)</u>) such Rights Offering Participant shall be deemed to not have properly completed its Notes Rights Exercise Form and, as such, the Notes Rights Offering Conditions shall not have been satisfied with respect to such Rights Offering Participant.

Anything herein to the contrary notwithstanding, if any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date participates in the Notes Rights Offering in its capacity as a Rights Offering Participant, then (a) such Backstop Party shall not be required to elect the form of payment of its Aggregate Exercise Price in its Notes Rights Exercise Form, but rather shall be permitted to make such election at any time on or before the Purchase Notice Deadline in the same manner that such Backstop Party would be required to make such election with respect to such Backstop Party's Aggregate Notes Purchase Price pursuant to Section 2.2(c) of the Backstop Purchase Agreement, and (b) such Backstop Party shall be permitted to pay all or any portion of its Aggregate Exercise Price through a Credit Facility Claim Exchange with Credit Facility Claims owned or controlled by such Backstop Party as of the time such Backstop Party makes the election described in <u>clause (a)</u> of this paragraph.

### (b)    <u>Failure to Exercise Notes Rights</u>

**Unexercised Notes Rights will be relinquished immediately following the Rights Offering Termination Time.**  If a Rights Offering Participant does not satisfy each of the Notes Rights Offering Conditions and each of the Additional Conditions for any reason (including by failing to deliver a duly executed and properly completed Notes Rights Exercise Form and AI Questionnaire to the Subscription Agent so that such documents are *actually received* by the Subscription Agent at or before the Rights Offering Termination Time), such Rights Offering Participant shall be deemed to have fully and irrevocably relinquished and waived its Notes Rights.

Any attempt to exercise Notes Rights after the Rights Offering Termination Time shall be null and void and the Debtors shall not be obligated to honor any such purported exercise after the Rights Offering Termination Time, regardless of when the documents relating thereto were sent.

**The method of delivery of the Notes Rights Exercise Form, the AI Questionnaire and any other required documents is at each Rights Offering Participant's option and sole risk, and delivery will be considered made only when *actually received* by the Subscription Agent.  If delivery is by mail, registered mail with return receipt requested, properly insured, is encouraged and strongly recommended.  In all cases, the Rights Offering Participant should allow sufficient time to ensure timely delivery prior to the Rights Offering Termination Time.**

**The risk of non-delivery of the Notes Rights Exercise Form and any other required documents sent to the Subscription Agent in connection with the exercise of the Notes Rights lies solely with the Rights Offering Participants, and none of the Debtors, the Reorganized Debtors, the Backstop Parties, or any of their respective officers, directors, employees, agents or advisors, including the Subscription Agent, assumes the risk of non-delivery under any circumstance whatsoever.**

(c)    **Payment for Rights Offering Notes**

If, on or prior to the Rights Offering Termination Time, the Subscription Agent for any reason does not receive from or on behalf of a Rights Offering Participant immediately available funds by wire transfer in an amount equal to the Aggregate Cash Exercise Price (if any) for such Rights Offering Participant's exercised Notes Rights, such Rights Offering Participant shall be deemed to have fully and irrevocably relinquished and waived its Notes Rights; provided, however, that the Debtors may pursue all remedies at equity and in Law to compel payment or seek damages. Anything herein to the contrary notwithstanding, if any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date participates in the Notes Rights Offering in its capacity as a Rights Offering Participant, then such Backstop Party shall not be required to pay its Aggregate Cash Exercise Price (if any) at or before the Rights Offering Termination Time, but rather shall be permitted to deposit its Aggregate Cash Exercise Price into the Deposit Account at any time on or before the Deposit Deadline in the same manner that such Backstop Party would be required to deposit its Aggregate Notes Cash Purchase Price pursuant to Section 2.2(d) of the Backstop Purchase Agreement.

The aggregate amount of cash received by the Debtors from (i) Rights Offering Participants for Rights Offering Notes in the Notes Rights Offering and (ii) the Backstop Parties for Rights Offering Notes pursuant to the Backstop Purchase Agreement shall be used by reorganized 21C Oncology solely for the purposes set forth in the Plan.

(d)    **Deemed Representations and Acknowledgements**

Any Person exercising Notes Rights shall be deemed to have made the following representations and acknowledgements:

(i)    such Person held an Allowed Senior Notes Claim as of the Rights Offering Record Date;

(ii)    such Person is an Accredited Investor;

(iii)    the Notes Rights are not transferable or assignable, and may only be exercised by a Rights Offering Participant;

(iv)    the exercise of the Notes Rights is and shall be irrevocable; provided, that nothing in these Notes Rights Offering Procedures shall amend, modify or otherwise alter the right of the Requisite Backstop Parties to terminate the

7

Backstop Purchase Agreement pursuant to the terms of the Backstop Purchase Agreement;

(v)    if such Person elected on its Notes Rights Exercise Form to pay all or any portion of its Aggregate Exercise Price through a Credit Facility Claim Exchange, such Person owns or controls as of the Rights Offering Termination Time at least the aggregate principal amount of Credit Facility Claims subject to such Credit Facility Claim Exchange;

(vi)    such Person has read and understands these Notes Rights Offering Procedures, the Notes Rights Exercise Form, the Plan and the Disclosure Statement and understands the terms and conditions herein and therein and the risks associated with the Debtors and their business as described in the Disclosure Statement;

(vii)    such Person is not relying upon any information, representation or warranty other than as expressly set forth in these Notes Rights Offering Procedures, the Notes Rights Exercise Form, the Plan, or the Disclosure Statement; provided, however, that the Backstop Parties are relying on the representations and warranties of the Debtors made in the Backstop Purchase Agreement; and

(viii)    such Person has consulted, to the extent deemed appropriate, with its own advisors as to the financial, tax, legal and related matters concerning an investment in the Rights Offering Notes and on that basis believes that an investment in the Rights Offering Notes is suitable and appropriate for itself.

(e)    **Disputes, Waivers, and Extensions**

All determinations as to the proper completion, due execution, timeliness, or eligibility of any exercise arising in connection with the submission of a Notes Rights Exercise Form or an AI Questionnaire, and other matters affecting the validity or effectiveness of any attempted exercise of any Notes Rights, shall be reasonably made by the Debtors, in good faith consultation with the Requisite Backstop Parties, which determinations shall be final and binding. A Notes Rights Exercise Form or AI Questionnaire shall be deemed not properly completed, duly executed and/or duly delivered unless and until all defects and irregularities have been waived or cured within such time as the Debtors, with the prior written consent of the Requisite Backstop Parties, determine in their discretion reasonably exercised in good faith. The Debtors reserve the right, but are under no obligation, to give notice to any Rights Offering Participant regarding any defect or irregularity in connection with any purported exercise of Notes Rights by such Rights Offering Participant and the Debtors may, but are under no obligation to, permit such defect or irregularity to be cured within such time as they may, with the prior written consent of the Requisite Backstop Parties, determine in good faith. None of the Debtors, the Subscription Agent, or the Backstop Parties shall incur any liability for failure to give such notification.

The Debtors, with the prior written consent of the Requisite Backstop Parties, may (i) extend the duration of the Notes Rights Offering or adopt additional procedures to more efficiently administer the distribution and exercise of the Notes Rights; and (ii) make such other changes to the Notes Rights Offering, including changes that affect which Persons constitute Rights Offering Participants, that the Debtors, in the exercise of their reasonable judgment, determine are necessary.

### (f)    Funds

All payments required to be made in connection with a Rights Offering Participant's exercise of its Notes Rights (the "Rights Offering Funds") shall be deposited in accordance with "Payment for Rights Offering Notes" section of these Notes Rights Offering Procedures and held by the Subscription Agent in a segregated account or accounts pending the Effective Date, which segregated account or accounts will: (i) not constitute property of the Debtors' estates until the Effective Date; (ii) be separate and apart from, and not commingled with, the Subscription Agent's general operating funds and any other funds subject to any lien or any cash collateral arrangements; (iii) be maintained for the sole purpose of holding the money for administration of the Notes Rights Offering until the Effective Date; and (iv) be invested only in cash, cash equivalents and short-term direct obligations of the United States government. The Subscription Agent shall not use the Rights Offering Funds for any purpose other than to release the funds as directed by the Debtors on the Effective Date and shall not encumber, or permit the Rights Offering Funds to be encumbered, by any lien or similar encumbrance.

### (g)    Plan Releases

See Article VIII of the Plan for important information regarding releases.

## 5.    Transfer Restriction; Revocation

The Notes Rights received by each Rights Offering Participant shall not be transferable or assignable. The Notes Rights may only be exercised by or through the Rights Offering Participant entitled to exercise such Notes Rights on the Rights Offering Record Date. Any transfer or attempted transfer of the Notes Rights will be null and void and the Debtors will not treat any purported transferee thereof as the holder of any Notes Rights. Once the Rights Offering Participant has properly exercised its Notes Rights by making a Binding Rights Election, such exercise will not be permitted to be revoked by such Rights Offering Participant.

In addition, if a Rights Offering Participant properly exercises its Notes Rights and elects on its Notes Rights Exercise Form to pay all or any portion of its Aggregate Exercise Price through a Credit Facility Claim Exchange, then such Rights Offering Participant shall not, on or after the Rights Offering Termination Time, sell, assign or otherwise transfer any of the Credit Facility Claims that are owned or controlled by such Rights Offering Participant such that such Rights Offering Participant shall own or control Credit Facility Claims immediately after such sale, assignment or transfer in an aggregate principal amount that is less than the aggregate principal amount of Eligible Credit Facility Claims subject to such Credit Facility Claim Exchange.

**6.      Inquiries and Transmittal Of Documents; Subscription Agent**

The instructions contained in the Notes Rights Exercise Form should be carefully read and strictly followed.

All questions relating to these Notes Rights Offering Procedures, other documents associated with the Notes Rights Offering, or the requirements to participate in the Notes Rights Offering should be directed to the Subscription Agent:

<div align="center">

**21st Century Oncology Holdings, Inc.**
**c/o Kurtzman Carson Consultants, LLC**
**2335 Alaska Avenue**
**El Segundo, CA 90245**

</div>

**7.      Notes Rights Offering Conditioned Upon Confirmation of the Plan; Reservation of Rights**

All exercises of Notes Rights are subject to and conditioned upon the confirmation and effectiveness of the Plan.  The Debtors will accept a Binding Rights Election only upon the confirmation and effectiveness of the Plan.

In the event that (i) the Notes Rights Offering is terminated, (ii) the Debtors revoke or withdraw the Plan, or (iii) the Backstop Purchase Agreement is terminated in accordance with the terms thereof, the Subscription Agent shall return all amounts received from the Rights Offering Participants, without any interest, as soon as reasonably practicable (but in no event later than three (3) Business Days) after the occurrence of any of the foregoing events (all without offset, set-off, counterclaim or reduction of any kind by the Subscription Agent or any of the Debtors), and, in the case of clauses (ii) and (iii) above, the Notes Rights Offering shall automatically be terminated.

**8.      Miscellaneous**

**(a)      Rights Offering Distribution Date**

The Rights Offering Notes acquired in connection with the Notes Rights Offering by Rights Offering Participants that have elected to participate in the Notes Rights Offering and who have validly exercised their Notes Rights shall be distributed in accordance with the distribution provisions contained in the Plan.

**(b)      No Public Market or Listing**

There is not and there may not be a public market for the Rights Offering Notes, and the Debtors do not intend to seek any listing or quotation of the Rights Offering Notes on any stock exchange, other trading market or quotation system of any type whatsoever on the Effective Date.  Accordingly, there can be no assurance that an active trading market for the Rights Offering Notes will ever develop or, if such a market does develop, that it will be maintained.

## **SCHEDULE 13**

### **New Preferred Equity Rights Offering Procedures**

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## EQUITY RIGHTS OFFERING PROCEDURES

### 1.    Introduction

21st Century Oncology Holdings, Inc. ("21C Holdings") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") are pursuing a proposed restructuring (the "Restructuring") of their existing debt and other obligations to be effectuated pursuant to a plan of reorganization (the "Plan") in connection with voluntary, pre-arranged reorganization cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), in accordance with the terms and conditions set forth in that certain Restructuring Support Agreement, dated as of May 25, 2017 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "RSA"),[2] by and among the Debtors and the other entities party thereto defined therein as "Restructuring Support Parties".

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the RSA or, if any such term is not defined in the RSA, such term shall have the meaning given to it in that certain Backstop Purchase Agreement, dated as of [   ], 2017 (together with all exhibits, schedules and attachments thereto, as amended, supplemented, amended and restated or otherwise modified from time to time, the "Backstop Purchase Agreement"), by and among 21C Holdings, 21st Century Oncology, Inc. and certain of its direct and indirect subsidiaries, and the entities party thereto defined therein as "Backstop Parties".

In connection with the Plan, after obtaining approval of these procedures (these "Equity Rights Offering Procedures") by the Bankruptcy Court and in accordance with the terms of the Backstop Purchase Agreement, the Debtors shall launch an equity rights offering (the "Equity Rights Offering") pursuant to which each holder of an Allowed Senior Notes Claim as of the Rights Offering Record Date (as defined below) (including any investment advisors, managers, managed funds or accounts, intermediaries and/or nominees who hold Allowed Senior Notes Claims) that is an Accredited Investor (each, a "Rights Offering Participant" and, collectively, the "Rights Offering Participants") will be entitled to receive non-transferable, non-certificated rights (the "Equity Rights"), but not the obligation, to purchase such Rights Offering Participant's *pro rata* share (based on its respective holdings of the aggregate outstanding principal amount of Senior Notes as of the Rights Offering Record Date) of shares of New Preferred Equity (the "Rights Offering Shares") with an aggregate initial liquidation value of $88,235,000 (the "Equity Rights Offering Amount"). Rights Offering Participants will be issued Equity Rights at no charge.

Only Rights Offering Participants that have timely and validly completed and returned to Kurtzman Carson Consultants LLC, the subscription agent for the Equity Rights Offering (in such capacity, the "Subscription Agent"), an accredited investor questionnaire (the "AI Questionnaire"), which will be sent to each Rights Offering Participant concurrently with the distribution of the Equity Rights Exercise Form (as defined below), may participate in the Equity Rights Offering; provided, however, that each Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date (i) shall be deemed an Accredited Investor and a Rights Offering Participant and (ii) shall not be required to complete and return an AI Questionnaire as a condition to its right to participate in the Equity Rights Offering. Each Rights Offering Participant is entitled to receive sufficient copies of the AI Questionnaire for distribution to the beneficial owners of the Senior Notes for whom such Rights Offering Participant holds such Senior Notes.

Rights Offering Shares shall have an initial liquidation value of $[_____]. Fractional Rights Offering Shares shall not be issued upon exercise of the Equity Rights and no compensation to Rights Offering Participants that otherwise would have received fractional Rights Offering Shares shall be paid in respect of such fractional Rights Offering Shares. Each Rights Offering Participant's maximum amount of Rights Offering Shares that such Rights Offering Participant is permitted to subscribe for pursuant to the exercise of its Equity Rights shall be rounded down to the nearest whole Rights Offering Share.

**THE DISCLOSURE STATEMENT DISTRIBUTED IN CONNECTION WITH THE DEBTORS' SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN WILL SET FORTH IMPORTANT INFORMATION THAT SHOULD BE CAREFULLY READ AND CONSIDERED BY EACH RIGHTS OFFERING PARTICIPANT PRIOR TO MAKING A DECISION TO PARTICIPATE IN THE EQUITY RIGHTS OFFERING, INCLUDING ARTICLE IX OF THE DISCLOSURE STATEMENT REGARDING CERTAIN RISK FACTORS TO BE CONSIDERED BEFORE EXERCISING ANY EQUITY RIGHTS.**

2.      **Backstop Purchase Agreement**

Any Rights Offering Shares that are not subscribed for and purchased in the Equity Rights Offering by a Rights Offering Participant (including any Rights Offering Shares that holders of Allowed Senior Notes Claims as of the Rights Offering Record Date who are not Accredited Investors could have purchased if such holders had received Equity Rights if they were Accredited Investors and exercised such Equity Rights in the Equity Rights Offering) (such shares, the "Unsubscribed Shares") shall be put to and purchased by the Backstop Parties (subject to their respective Backstop Equity Commitment Amounts) in accordance with the terms and conditions of the Backstop Purchase Agreement.

There will be no over-subscription privilege provided in connection with the Equity Rights Offering, such that any Unsubscribed Shares will not be offered to other Rights Offering Participants, but rather will be purchased by the Backstop Parties (subject to their respective Backstop Equity Commitment Amounts) in accordance with the terms and conditions of the Backstop Purchase Agreement.

In consideration for the Debtors' right to call the Backstop Equity Commitments of the Backstop Parties to purchase the Unsubscribed Shares pursuant to the terms of the Backstop Purchase Agreement, 21C Holdings shall issue to the Backstop Parties (or their designees) additional shares of New Preferred Equity with an aggregate initial liquidation value equal to $5,625,000 (the "Equity Put Option Shares") on a *pro rata* basis based upon their respective Backstop Commitment Percentages. The Equity Put Option Shares will be paid only to the Backstop Parties that do not default on their respective Backstop Equity Commitments.

3.      **Commencement and Expiration of the Equity Rights Offering; Rights Offering Record Date**

The Equity Rights Offering shall commence on the day upon which the Equity Rights Exercise Forms and the AI Questionnaires are mailed to holders of Allowed Senior Notes Claims as of the Rights Offering Record Date (the "Rights Offering Commencement Date").

The Equity Rights Offering shall expire at 5:00 p.m. (New York City time) on [_____] (such date, the "Rights Offering Termination Date" and such time on the Rights Offering Termination Date, the "Rights Offering Termination Time"). If the Rights Offering Termination Date and/or the Rights Offering Termination Time is/are extended in accordance with the terms of these Equity Rights Offering Procedures, the Debtors shall promptly notify the Rights Offering Participants, before 9:00 a.m. (New York City time) on the Business Day before the then-effective Rights Offering Termination Date, in writing, of such extension and the date of the new Rights Offering Termination Date and/or the time of the new Rights Offering Termination Time. Each Rights Offering Participant intending to participate in the Equity Rights Offering must affirmatively make an election to exercise its Equity Rights at or prior to the Rights Offering Termination Time in accordance with the provisions of Section 4 below.

"Rights Offering Record Date" means September 19, 2017.

3

## 4.    Exercise of Equity Rights

Each Rights Offering Participant that elects to participate in the Equity Rights Offering must have timely satisfied each of the Equity Rights Offering Conditions (as defined below).  Any Rights Offering Participant that has timely satisfied each of the Equity Rights Offering Conditions shall be deemed to have made a binding, irrevocable election to exercise its Equity Rights to the extent set forth in the Equity Rights Exercise Form delivered by such Rights Offering Participant (a "Binding Rights Election"); provided, however, that a Rights Offering Participant's right to participate in the Equity Rights Offering shall remain subject to its compliance with the Additional Conditions (as defined below).

### The Binding Rights Election Cannot Be Withdrawn.

Each Rights Offering Participant is entitled to participate in the Equity Rights Offering solely to the extent provided in these Equity Rights Offering Procedures.  Further, each Rights Offering Participant may exercise all or any portion of such Rights Offering Participant's Equity Rights; provided, however, that a Rights Offering Participant shall not be permitted to participate in the Equity Rights Offering unless such Rights Offering Participant also participates in the Notes Rights Offering in an equal proportionate amount.

### (a)    Exercise by Rights Offering Participants

To exercise its Equity Rights, each Rights Offering Participant must satisfy each of the following conditions (collectively, the "Equity Rights Offering Conditions"):  (i) deliver a duly executed and properly completed AI Questionnaire to the Subscription Agent so that such AI Questionnaire is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time; (ii) deliver a duly executed and properly completed equity rights offering subscription exercise form (the "Equity Rights Exercise Form") to the Subscription Agent so that such Equity Rights Exercise Form is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time; and (iii) pay to the Subscription Agent, by wire transfer of immediately available funds in accordance with the Payment Instructions (as defined below), its Aggregate Exercise Price (as defined below), so that payment of the Aggregate Exercise Price is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time. In addition to the foregoing, to participate in the Equity Rights Offering, a Rights Offering Participant must also agree to (x) vote to accept the Plan with respect to all of the Claims and Interests owned or controlled by such Rights Offering Participant (to the extent any such Claims and Interests are entitled to vote to accept or reject the Plan) and timely deliver a ballot voting to accept the Plan with respect to all of the Claims and Interests owned or controlled by such Rights Offering Participant (to the extent any such Claims and Interests are entitled to vote to accept or reject the Plan) in accordance with solicitation procedures approved by the Bankruptcy Court, and (y) not opt out of any releases set forth in Article VIII of the Plan (clauses (x) and (y) of this sentence being the "Additional Conditions").

Anything herein to the contrary notwithstanding, if any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date participates in the Equity Rights Offering in its capacity as a Rights Offering Participant, then such Backstop Party shall not be required to pay its Aggregate Exercise Price at or before the Rights Offering Termination

Time, but rather shall be permitted to deposit its Aggregate Exercise Price into the Deposit Account at any time on or before the Deposit Deadline in the same manner that such Backstop Party would be required to deposit its Aggregate Share Purchase Price pursuant to Section 1.2(c) of the Backstop Purchase Agreement.

To facilitate the exercise of the Equity Rights, on the Rights Offering Commencement Date, the Debtors will mail or cause to be mailed, based upon information provided to the Debtors by the Trustee, an Equity Rights Exercise Form to each holder of an Allowed Senior Notes Claim as of the Rights Offering Record Date, together with instructions for the proper completion, due execution and timely delivery to the Subscription Agent of the Equity Rights Exercise Form and the AI Questionnaire.

When the Equity Rights Exercise Forms are mailed to holders of Allowed Senior Notes Claims as of the Rights Offering Record Date, the Debtors shall include in such mailing written instructions (the "Payment Instructions") relating to the payment of the Aggregate Exercise Price for each Rights Offering Participant that exercises its Equity Rights. The Payment Instructions shall include wire transfer instructions for the payment of the Aggregate Exercise Price for each Rights Offering Participant that exercises its Equity Rights.

Any reference to a Rights Offering Participant's "Aggregate Exercise Price" shall mean an aggregate amount equal to the product of (a) eighty-five percent (85%) and (b) the portion of the Equity Rights Offering Amount that such Rights Offering Participant validly elects to subscribe for and purchase (as set forth in the Equity Rights Exercise Form that such Rights Offering Participant properly completes and duly executes and delivers to the Subscription Agent at or before the Rights Offering Termination Time).

### (b) Failure to Exercise Equity Rights

**Unexercised Equity Rights will be relinquished immediately following the Rights Offering Termination Time.** If a Rights Offering Participant does not satisfy each of the Equity Rights Offering Conditions and each of the Additional Conditions for any reason (including by failing to deliver a duly executed and properly completed Equity Rights Exercise Form and AI Questionnaire to the Subscription Agent so that such documents are *actually received* by the Subscription Agent at or before the Rights Offering Termination Time), such Rights Offering Participant shall be deemed to have fully and irrevocably relinquished and waived its Equity Rights.

Any attempt to exercise Equity Rights after the Rights Offering Termination Time shall be null and void and the Debtors shall not be obligated to honor any such purported exercise after the Rights Offering Termination Time, regardless of when the documents relating thereto were sent.

**The method of delivery of the Equity Rights Exercise Form, the AI Questionnaire and any other required documents is at each Rights Offering Participant's option and sole risk, and delivery will be considered made only when *actually received* by the Subscription Agent. If delivery is by mail, registered mail with return receipt requested, properly insured, is encouraged and strongly recommended. In all cases, the**

Rights Offering Participant should allow sufficient time to ensure timely delivery prior to the Rights Offering Termination Time.

**The risk of non-delivery of the Equity Rights Exercise Form and any other required documents sent to the Subscription Agent in connection with the exercise of the Equity Rights lies solely with the Rights Offering Participants, and none of the Debtors, the Reorganized Debtors, the Backstop Parties, or any of their respective officers, directors, employees, agents or advisors, including the Subscription Agent, assumes the risk of non-delivery under any circumstance whatsoever.**

### (c)    Payment for Rights Offering Shares

If, on or prior to the Rights Offering Termination Time, the Subscription Agent for any reason does not receive from or on behalf of a Rights Offering Participant immediately available funds by wire transfer in an amount equal to the Aggregate Exercise Price for such Rights Offering Participant's exercised Equity Rights, such Rights Offering Participant shall be deemed to have fully and irrevocably relinquished and waived its Equity Rights; provided, however, that the Debtors may pursue all remedies at equity and in Law to compel payment or seek damages. Anything herein to the contrary notwithstanding, if any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date participates in the Equity Rights Offering in its capacity as a Rights Offering Participant, then such Backstop Party shall not be required to pay its Aggregate Exercise Price at or before the Rights Offering Termination Time, but rather shall be permitted to deposit its Aggregate Exercise Price into the Deposit Account at any time on or before the Deposit Deadline in the same manner that such Backstop Party would be required to deposit its Aggregate Share Purchase Price pursuant to Section 1.2(c) of the Backstop Purchase Agreement.

The aggregate amount of cash received by the Debtors from (i) Rights Offering Participants for Rights Offering Shares in the Equity Rights Offering and (ii) the Backstop Parties for Rights Offering Shares pursuant to the Backstop Purchase Agreement shall be referred to herein as the "Equity Rights Offering Cash Amount". The Equity Rights Offering Cash Amount shall be used: (x) first, to satisfy any unpaid amounts constituting DIP Facility Obligations outstanding on the Effective Date; (y) second, to satisfy out-of-pocket costs and expenses incurred by the Debtors in connection with the Restructuring; and (z) third, for working capital and other general corporate purposes of the Reorganized Debtors following the Effective Date.

### (d)    Deemed Representations and Acknowledgements

Any Person exercising Equity Rights shall be deemed to have made the following representations and acknowledgements:

(i)    such Person held an Allowed Senior Notes Claim as of the Rights Offering Record Date;

(ii)    such Person is an Accredited Investor;

(iii)  the Equity Rights are not transferable or assignable, and may only be exercised by a Rights Offering Participant;

(iv)  the exercise of the Equity Rights is and shall be irrevocable; <u>provided</u>, that nothing in these Equity Rights Offering Procedures shall amend, modify or otherwise alter the right of the Requisite Backstop Parties to terminate the Backstop Purchase Agreement pursuant to the terms of the Backstop Purchase Agreement;

(v)  such Person has read and understands these Equity Rights Offering Procedures, the Equity Rights Exercise Form, the Plan and the Disclosure Statement and understands the terms and conditions herein and therein and the risks associated with the Debtors and their business as described in the Disclosure Statement;

(vi)  such Person is not relying upon any information, representation or warranty other than as expressly set forth in these Equity Rights Offering Procedures, the Equity Rights Exercise Form, the Plan, or the Disclosure Statement; <u>provided</u>, <u>however</u>, that the Backstop Parties are relying on the representations and warranties of the Debtors made in the Backstop Purchase Agreement; and

(vii)  such Person has consulted, to the extent deemed appropriate, with its own advisors as to the financial, tax, legal and related matters concerning an investment in the Rights Offering Shares and on that basis believes that an investment in the Rights Offering Shares is suitable and appropriate for itself.

**(e)**       **<u>Disputes, Waivers, and Extensions</u>**

All determinations as to the proper completion, due execution, timeliness, or eligibility of any exercise arising in connection with the submission of an Equity Rights Exercise Form or an AI Questionnaire, and other matters affecting the validity or effectiveness of any attempted exercise of any Equity Rights, shall be reasonably made by the Debtors, in good faith consultation with the Requisite Backstop Parties, which determinations shall be final and binding. An Equity Rights Exercise Form or AI Questionnaire shall be deemed not properly completed, duly executed and/or duly delivered unless and until all defects and irregularities have been waived or cured within such time as the Debtors, with the prior written consent of the Requisite Backstop Parties, determine in their discretion reasonably exercised in good faith. The Debtors reserve the right, but are under no obligation, to give notice to any Rights Offering Participant regarding any defect or irregularity in connection with any purported exercise of Equity Rights by such Rights Offering Participant and the Debtors may, but are under no obligation to, permit such defect or irregularity to be cured within such time as they may, with the prior written consent of the Requisite Backstop Parties, determine in good faith. None of the Debtors, the Subscription Agent, or the Backstop Parties shall incur any liability for failure to give such notification.

The Debtors, with the prior written consent of the Requisite Backstop Parties, may (i) extend the duration of the Equity Rights Offering or adopt additional procedures to more efficiently administer the distribution and exercise of the Equity Rights; and (ii) make such other changes to the Equity Rights Offering, including changes that affect which Persons constitute Rights Offering Participants, that the Debtors, in the exercise of their reasonable judgment, determine are necessary.

### (f)    Funds

All payments required to be made in connection with a Rights Offering Participant's exercise of its Equity Rights (the "Rights Offering Funds") shall be deposited in accordance with "Payment for Rights Offering Shares" section of these Equity Rights Offering Procedures and held by the Subscription Agent in a segregated account or accounts pending the Effective Date, which segregated account or accounts will: (i) not constitute property of the Debtors' estates until the Effective Date; (ii) be separate and apart from, and not commingled with, the Subscription Agent's general operating funds and any other funds subject to any lien or any cash collateral arrangements; (iii) be maintained for the sole purpose of holding the money for administration of the Equity Rights Offering until the Effective Date; and (iv) be invested only in cash, cash equivalents and short-term direct obligations of the United States government. The Subscription Agent shall not use the Rights Offering Funds for any purpose other than to release the funds as directed by the Debtors on the Effective Date and shall not encumber, or permit the Rights Offering Funds to be encumbered, by any lien or similar encumbrance.

### (g)    Plan Releases

See Article VIII of the Plan for important information regarding releases.

## 5.    Transfer Restriction; Revocation

The Equity Rights received by each Rights Offering Participant shall not be transferable or assignable.  The Equity Rights may only be exercised by or through the Rights Offering Participant entitled to exercise such Equity Rights on the Rights Offering Record Date. Any transfer or attempted transfer of the Equity Rights will be null and void and the Debtors will not treat any purported transferee thereof as the holder of any Equity Rights.  Once the Rights Offering Participant has properly exercised its Equity Rights by making a Binding Rights Election, such exercise will not be permitted to be revoked by such Rights Offering Participant.

## 6.    Inquiries and Transmittal Of Documents; Subscription Agent

The instructions contained in the Equity Rights Exercise Form should be carefully read and strictly followed.

All questions relating to these Equity Rights Offering Procedures, other documents associated with the Equity Rights Offering, or the requirements to participate in the Equity Rights Offering should be directed to the Subscription Agent:

<div align="center">
<b>21st Century Oncology Holdings, Inc.</b><br>
<b>c/o Kurtzman Carson Consultants, LLC</b><br>
<b>2335 Alaska Avenue</b><br>
<b>El Segundo, CA 90245</b>
</div>

**7.**    **Equity Rights Offering Conditioned Upon Confirmation of the Plan; Reservation of Rights**

All exercises of Equity Rights are subject to and conditioned upon the confirmation and effectiveness of the Plan.  The Debtors will accept a Binding Rights Election only upon the confirmation and effectiveness of the Plan.

In the event that (i) the Equity Rights Offering is terminated, (ii) the Debtors revoke or withdraw the Plan, or (iii) the Backstop Purchase Agreement is terminated in accordance with the terms thereof, the Subscription Agent shall return all amounts received from the Rights Offering Participants, without any interest, as soon as reasonably practicable (but in no event later than three (3) Business Days) after the occurrence of any of the foregoing events (all without offset, set-off, counterclaim or reduction of any kind by the Subscription Agent or any of the Debtors), and, in the case of clauses (ii) and (iii) above, the Equity Rights Offering shall automatically be terminated.

**8.**    **Dilution**

Shares of New Preferred Equity issued as of the Effective Date pursuant to the Equity Rights Offering shall be subject to dilution by the issuance of New Warrants.

**9.**    **Miscellaneous**

**(a)**    **Rights Offering Distribution Date**

The Rights Offering Shares acquired in connection with the Equity Rights Offering by Rights Offering Participants that have elected to participate in the Equity Rights Offering and who have validly exercised their Equity Rights shall be distributed in accordance with the distribution provisions contained in the Plan.

**(b)**    **No Public Market or Listing**

There is not and there may not be a public market for the Rights Offering Shares, and the Debtors do not intend to seek any listing or quotation of the Rights Offering Shares on any stock exchange, other trading market or quotation system of any type whatsoever on the Effective Date.  Accordingly, there can be no assurance that an active trading market for the Rights Offering Shares will ever develop or, if such a market does develop, that it will be maintained.

## **SCHEDULE 14A**

## **Form of New Notes Rights Exercise Form**

## INSTRUCTIONS TO NOTES RIGHTS EXERCISE FORM[1]

You have received the attached Notes Rights Exercise Form because you are a holder of an Allowed Senior Notes Claim as of the Rights Offering Record Date.  **If you wish to participate in the Notes Rights Offering, each of the Notes Rights Offering Conditions and each of the Additional Conditions must be satisfied at or prior to the Rights Offering Termination Time (5:00 p.m. (New York City time) on [    ], 2017), unless provided otherwise herein.**  You may deliver this Notes Rights Exercise Form via electronic mail or regular mail, overnight or hand delivery to the Subscription Agent at the following address:

<div align="center">

**21st Century Oncology Holdings, Inc.**
**c/o Kurtzman Carson Consultants, LLC**
**2335 Alaska Avenue**
**El Segundo, CA 90245**

</div>

The Notes Rights Offering Procedures are hereby incorporated herein by reference as if fully set forth herein.  Pursuant to the Plan and the Notes Rights Offering Procedures, each holder of an Allowed Senior Notes Claim (including any investment advisors, managers, managed funds or accounts, intermediaries and/or nominees who hold Allowed Senior Notes Claims) who is a "Rights Offering Participant" will be eligible to participate in the Notes Rights Offering.  A holder of an Allowed Senior Notes Claim is a "Rights Offering Participant" if such holder holds an Allowed Senior Notes Claim as of the Rights Offering Record Date and is an Accredited Investor, as such holder certifies on a duly executed and properly completed AI Questionnaire that is delivered to the Subscription Agent and is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.

Please consult the Plan, the Disclosure Statement, the Rights Offering Procedures, and the order approving the Rights Offerings (collectively, the "Rights Offering Documents") for a complete description of the Rights Offerings.  Copies of the Rights Offering Documents may be obtained, free of charge, by contacting the Subscription Agent.

To subscribe for Rights Offering Notes pursuant to the Notes Rights Offering:

1. Review the principal amount of your Allowed Senior Notes Claim set forth in Item 1a.

2. Review your Total Maximum Subscription Amount (as defined below) set forth in Item 1b.

3. Calculate your Aggregate Exercise Price, and the portions thereof to be paid through a Credit Facility Claim Exchange and/or in cash,  pursuant to Item 2; *provided*, *however*, that if any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date participates in the Notes Rights

---

[1]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Notes Rights Offering Procedures or, if any such term is not defined in the Notes Rights Offering Procedures, such term shall have the meaning given to it in the Plan.

Offering in its capacity as a Rights Offering Participant, then (a) such Backstop Party shall not be required to elect the form of payment of its Aggregate Exercise Price in its Notes Rights Exercise Form, but rather shall be permitted to make such election at any time on or before the Purchase Notice Deadline in the same manner that such Backstop Party would be required to make such election with respect to such Backstop Party's Aggregate Notes Purchase Price pursuant to Section 2.2(c) of the Backstop Purchase Agreement, and (b) such Backstop Party shall be permitted to pay all or any portion of its Aggregate Exercise Price through a Credit Facility Claim Exchange with Credit Facility Claims owned or controlled by such Backstop Party and/or one more Affiliates of such Backstop Party that are identified in such Backstop Party's Purchase Notice as of the time such Backstop Party makes the election described in <u>clause (a)</u> of this paragraph.

4.    <u>Read and complete</u> the certification, representations, warranties and agreements in Item 3.

5.    <u>Deliver</u> a duly executed and properly completed Notes Rights Exercise Form to the Subscription Agent so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.

6.    <u>Pay</u> the Aggregate Cash Exercise Price to the Subscription Agent in accordance with the Payment Instructions set forth in Item 4 so that such payment is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time; *provided*, *however*, that if any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date participates in the Notes Rights Offering in its capacity as a Rights Offering Participant, then such Backstop Party shall be permitted to deposit its Aggregate Cash Exercise Price into the Deposit Account at any time on or before the Deposit Deadline in the same manner that such Backstop Party would be required to deposit its Aggregate Notes Cash Purchase Price pursuant to Section 2.2(d) of the Backstop Purchase Agreement.

7.    <u>Deliver</u> your W-8 or W-9, as applicable, to the Subscription Agent so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time pursuant to Item 5.

Participation in the Notes Rights Offering is voluntary, and is limited to Rights Offering Participants. Further, each Rights Offering Participant may exercise all or any portion of such Rights Offering Participant's Notes Rights; *provided*, *however*, that a Rights Offering Participant shall not be permitted to participate in the Notes Rights Offering unless such Rights Offering Participant also participates in the Equity Rights Offering in an equal proportionate amount.

*[Remainder of Page Intentionally Left Blank.]*

2

## NOTES RIGHTS EXERCISE FORM

### Rights Offering Termination Time

**The Rights Offering Termination Time is 5:00 p.m. (New York City time)
on [   ], 2017.**

**Please consult the Rights Offering Documents for additional
information with respect to this Notes Rights Exercise Form.**

Rights Offering Participants (including any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date) are entitled to participate in the Notes Rights Offering, as further described in the Notes Rights Offering Procedures. To exercise your Notes Rights, review the amounts in Items 1a and 1b below and read and complete, as applicable, Items 2a-c, 3, 4 and 5 below.

**Item 1.  Amount of Eligible Claim(s)**

Pursuant to the Notes Rights Offering Procedures, each Rights Offering Participant is entitled to participate in the Notes Rights Offering to the extent of such Rights Offering Participant's Allowed Senior Notes Claims as of the Rights Offering Record Date.

     **1a**.    As of the Rights Offering Record Date, the principal amount of your Allowed Senior Notes Claims is:

$\underline{\hspace{4cm}}$
*[PRE-PRINTED]*

     **1b**.    Therefore, for the purposes of the Notes Rights Offering, you have Notes Rights to subscribe for up to the **maximum** aggregate original principal amount of Rights Offering Notes set forth in the box below (the "Total Maximum Subscription Amount"). Each Rights Offering Participant may subscribe for all or any portion of its Total Maximum Subscription Amount; *provided*, *however*, that a Rights Offering Participant shall not be permitted to participate in the Notes Rights Offering unless such Rights Offering Participant also participates in the Equity Rights Offering in an equal proportionate amount.

$\underline{\hspace{4cm}}$
(the Total Maximum Subscription Amount)[1]
*[PRE-PRINTED]*

---

[1]    The Total Maximum Subscription Amount shall equal the product of (rounded down to the nearest whole $1,000) (a) $200.0 million and (b) the quotient obtained by dividing (i) the amount set forth in Item 1a <u>by</u> (ii) the aggregate principal amount of all outstanding Senior Notes as of the Rights Offering Record Date.

1

**Item 2.  Calculation of Aggregate Exercise Price**

**2a.**    Your Aggregate Exercise Price shall be an amount equal to the portion of your Total Maximum Subscription Amount that you validly elect to subscribe for and purchase.  The portion of your Total Maximum Subscription Amount that you elect to subscribe for and purchase shall only be in multiples of $1,000.  Please indicate your Aggregate Exercise Price below.

$\underline{\hspace{3cm}}$
(your Aggregate Exercise Price)

**2b.**    You may elect to pay your Aggregate Exercise Price through a Credit Facility Claim Exchange and/or with cash.  Credit Facility Claims that are used to pay any portion of your Aggregate Exercise Price through a Credit Facility Claim Exchange shall only be in multiples of $1,000.  Please indicate below the respective aggregate principal amounts of Credit Facility Claims owned or controlled by you and, if applicable, any of your Affiliate(s) that will be subject to such Credit Facility Claim Exchange.

| Principal Amount of Credit Facility Claims: | Owned or Controlled by: |
|---|---|
| $\underline{\hspace{3cm}}$ | Rights Offering Participant |
| $\underline{\hspace{3cm}}$ | $\underline{\hspace{2cm}}$<br>(Name of Affiliate 1<br>of Rights Offering Participant) |
| $\underline{\hspace{3cm}}$ | $\underline{\hspace{2cm}}$<br>(Name of Affiliate 2<br>of Rights Offering Participant) |

**2c.**    Please indicate below the amount of cash, if any, to be used to pay your Aggregate Exercise Price.  The portion of your Aggregate Exercise Price that you elect to pay in cash is your Aggregate Cash Exercise Price.

$\underline{\hspace{3cm}}$
(your Aggregate Cash Exercise Price)

2

To exercise your Notes Rights, you must pay an amount equal to the Aggregate Cash Exercise Price in accordance with the Payment Instructions set forth below in Item 4 so that such payment is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time; *provided*, *however*, that if any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date participates in the Notes Rights Offering in its capacity as a Rights Offering Participant, then (i) such Backstop Party shall not be required to elect the form of payment of its Aggregate Exercise Price in its Notes Rights Exercise Form, but rather shall be permitted to make such election at any time on or before the Purchase Notice Deadline in the same manner that such Backstop Party would be required to make such election with respect to such Backstop Party's Aggregate Notes Purchase Price pursuant to Section 2.2(c) of the Backstop Purchase Agreement, and (ii) such Backstop Party shall be permitted to pay all or any portion of its Aggregate Exercise Price through a Credit Facility Claim Exchange with Credit Facility Claims owned or controlled by such Backstop Party and/or one more Affiliates of such Backstop Party that are identified in such Backstop Party's Purchase Notice as of the time such Backstop Party makes the election described in <u>clause (i)</u> of this paragraph.  Further, such Backstop Party shall be permitted to deposit its Aggregate Cash Exercise Price into the Deposit Account at any time on or before the Deposit Deadline in the same manner that such Backstop Party would be required to deposit its Aggregate Notes Cash Purchase Price pursuant to Section 2.2(d) of the Backstop Purchase Agreement.

**Item 3.  Subscription Certifications, Representations, Warranties and Agreements**

Except in the case of Section 1(a) of this Item 3, the certifications, representations, warranties and agreements set forth in this Item 3 shall be deemed to be made jointly and severally by the Rights Offering Participant and any Affiliate of such Rights Offering Participant identified in Item 2b above.  By returning the Notes Rights Exercise Form:

1.    The Rights Offering Participant hereby certifies that it (a) was the holder of the Allowed Senior Notes Claims identified in Item 1 as of the Rights Offering Record Date; (b) agrees to be bound by all the terms and conditions of the Notes Rights Offering Procedures; (c) has obtained a copy of the Rights Offering Documents and understands that the exercise of Notes Rights pursuant to the Notes Rights Offering is subject to all the terms and conditions set forth in such Rights Offering Documents; and (d) has read and understands Article VIII of the Plan and agrees to the releases set forth therein.

2.    The Rights Offering Participant hereby represents and warrants that (a) to the extent applicable, it is duly formed, validly existing, and in good standing under the laws of the jurisdiction of its formation; and (b) it has the requisite power and authority to enter into, execute and deliver this Notes Rights Exercise Form and to perform its obligations hereunder and in each of the other Rights Offering Documents and has taken all necessary action required for due authorization, execution, delivery and performance hereunder and thereunder.

3

3.        The Rights Offering Participant acknowledges and understands that this Notes Rights Exercise Form shall not be binding on the Debtors or Reorganized Debtors until the conditions to effectiveness of the Plan, as set forth in the Plan, are satisfied.

4.        The Rights Offering Participant hereby agrees that this Notes Rights Exercise Form constitutes a valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium, and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith, and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

5.        The Rights Offering Participant hereby represents and warrants that the exercise of its Notes Rights is and shall be irrevocable; *provided*, that nothing in the Notes Rights Offering Procedures shall amend, modify or otherwise alter the right of the Requisite Backstop Parties to terminate the Backstop Purchase Agreement pursuant to the terms of the Backstop Purchase Agreement.

6.        The Rights Offering Participant hereby represents and warrants that it has duly executed and properly completed an AI Questionnaire pursuant to which such Rights Offering Participant has certified that it is an Accredited Investor, and such Rights Offering Participant understands that the Debtors are relying on such certification.

7.        The Rights Offering Participant hereby represents and warrants that (a) the Rights Offering Notes are being acquired by such Rights Offering Participant for the account of such Rights Offering Participant for investment purposes only, within the meaning of the Securities Act, and not with a view to the distribution thereof, and in compliance with all applicable securities laws; (b) its Notes Rights are not transferable or assignable, and may only be exercised by such Rights Offering Participant; and (c) no one other than the Rights Offering Participant has any right to acquire the Rights Offering Notes being acquired by the Rights Offering Participant.

8.        The Rights Offering Participant hereby represents and warrants that its financial condition is such that the Rights Offering Participant has no need for any liquidity in its investment in the Reorganized Debtors and is able to bear the risk of holding the Rights Offering Notes for an indefinite period of time and the risk of loss of its entire investment in the Reorganized Debtors.

9.        The Rights Offering Participant hereby represents and warrants that it (a) is capable of evaluating the merits and risks of acquiring the Rights Offering Notes; and (b) has consulted, to the extent deemed appropriate, with its own advisors as to the financial, tax, legal and related matters concerning an investment in the

4

Rights Offering Notes and on that basis believes that an investment in the Rights Offering Notes is suitable and appropriate for itself.

10.     The Rights Offering Participant represents and warrants that (a) it has been given the opportunity to (i) ask questions and receive satisfactory answers concerning the terms and conditions of the Notes Rights Offering, and (ii) obtain additional information in order to evaluate the merits and risks of an investment in the Reorganized Debtors, and to verify the accuracy of the information contained in the Rights Offering Documents; (b) it has read and understands the Rights Offering Documents and the terms and conditions herein and therein and the risks associated with the Debtors and their business as described in the Disclosure Statement; and (c) no statement, printed material or other information that is contrary to the information contained in any Rights Offering Document has been given or made by or on behalf of the Debtors or the Backstop Parties to such Rights Offering Participant.

11.     The Rights Offering Participant acknowledges and understands that:

(a)     An investment in the Reorganized Debtors is speculative and involves significant risks.

(b)     The Rights Offering Notes will be subject to certain restrictions on transferability as described in the Plan and, as a result of the foregoing, the marketability of the Rights Offering Notes will be severely limited.

(c)     The Rights Offering Participant will not transfer, sell or otherwise dispose of the Rights Offering Notes in any manner that will violate the Securities Act or any state or foreign securities laws.

(d)     The Rights Offering Notes have not been, and will not be, registered under the Securities Act or any state or foreign securities laws, and are being offered and sold in reliance upon federal, state and foreign exemptions from registration requirements for transactions not involving any public offering. The Rights Offering Participant recognizes that reliance upon such exemptions is based in part upon the representations of such Rights Offering Participant contained herein and in the AI Questionnaire executed and delivered by the Rights Offering Participant.

12.     The Rights Offering Participant hereby represents and warrants that it is not relying upon any information, representation or warranty other than as expressly set forth in any of the Rights Offering Documents; *provided*, *however*, that the Backstop Parties are relying on the representations and warranties of the Debtors made in the Backstop Purchase Agreement.

13.     The Rights Offering Participant hereby represents and warrants that it is aware that (a) no federal, state, local or foreign agency has passed upon the Rights

5

Offering Notes or made any finding or determination as to the fairness of an investment in the Rights Offering Notes; and (b) the data set forth in any Rights Offering Documents or in any supplemental letters or materials thereto are not necessarily indicative of future returns, if any, which may be achieved by the Reorganized Debtors.

14.     The Rights Offering Participant hereby acknowledges that the Debtors and the Reorganized Debtors seek to comply with all applicable anti-money laundering laws and regulations.   In furtherance of such efforts, the Rights Offering Participant hereby represents and agrees that (a) no part of the Rights Offering Funds used by the Rights Offering Participant to acquire the Rights Offering Notes has been, or shall be, directly or indirectly derived from, or related to, any activity that may contravene federal, state, or international laws and regulations, including anti-money laundering laws and regulations; and (b) no contribution or payment to the Debtors or the Reorganized Debtors by the Rights Offering Participant shall cause the Debtors or the Reorganized Debtors to be in violation of any applicable anti-money laundering laws and regulations including without limitation, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001 and the U.S. Department of the Treasury Office of Foreign Assets Control regulations, each as amended.   The Rights Offering Participant hereby agrees to (x) provide the Debtors and the Reorganized Debtors all information that may be reasonably requested to comply with applicable U.S. law; and (y) promptly notify the Debtors and the Reorganized Debtors (if legally permitted) if there is any change with respect to the representations and warranties provided herein.

15.     The Rights Offering Participant hereby agrees to provide such information and to execute and deliver such documents as may reasonably be necessary to comply with any and all laws, rules and regulations to which the Debtors or Reorganized Debtors are subject.

Certification by Rights Offering Participant: _____

Date: _____

Name of Rights Offering Participant: _____

(Print or Type)

Social Security or Federal Tax I.D. No.: _____

Signature: _____

Name of Person Signing: _____

(If other than Rights Offering Participant)

Title (if corporation, partnership or LLC): _____

Street Address:

City, State, Zip Code: _____

Contact E-mail: _____

Telephone Number: _____

Certification by Affiliate 1[2]: _____

Date: _____

Name of Affiliate: _____

(Print or Type)

Social Security or Federal Tax I.D. No.: _____

Signature: _____

Name of Person Signing: _____

_____

[2] Certifications by additional Affiliates to be attached as necessary.

7

(If other than Affiliate)

Title (if corporation, partnership or LLC): _____

Street Address: 

City, State, Zip Code: _____

Contact E-mail: _____

Telephone Number: _____

## Item 4.  Payment Instructions

Pursuant to your Binding Rights Election, you must make your payment of the Aggregate Cash Exercise Price calculated in Item 2c above by wire transfer so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.

Please have wire transfers delivered to: [TBD]

## Item 5.  Tax Information

1.  Each Rights Offering Participant that is a U.S. person[3] must provide its taxpayer identification number on a signed Internal Revenue Service ("IRS") form W-9 to the Subscription Agent.  This form is necessary for the Debtors and the Reorganized Debtors, as applicable, to comply with its tax filing obligations and to establish that the Rights Offering Participant is not subject to certain withholding tax obligations applicable to U.S. and non-U.S. persons.  The enclosed W-9 form contains detailed instructions for furnishing this information.

2.  Each Rights Offering Participant that is not a U.S. person (as defined in the previous paragraph) is required to provide information about its status for withholding purposes, generally on an IRS form W-8BEN (for individuals) or W-8BEN-E (for most foreign entities), form W-8IMY (for most foreign intermediaries, flow-through entities, and certain U.S. branches), form W-8EXP (for most foreign governments, foreign central banks of issue, foreign tax-exempt organizations,

---

[3] The definition of "U.S. Person" for this purpose includes a U.S. citizen or resident, a corporation organized in the United States, a partnership organized in the United States, a limited liability company organized in the United States (other than a limited liability company wholly-owned by a foreign person), an estate (other than a foreign estate the income of which, from sources without the United States which is not effectively connected with the conduct of a trade or business within the United States, is not includible in gross income), and a trust if (1) a court within the United States is able to exercise primary supervision over the administration of the trust, and (2) one or more U.S. persons have the authority to control all substantial decisions of the trust.

foreign private foundations, and governments of certain U.S. possessions), or form W-8ECI (for most non-U.S. persons receiving income that is effectively connected with the conduct of a trade or business in the United States). Each Rights Offering Participant that is not a U.S. person should provide the Subscription Agent with the appropriate form W-8. Please contact the Subscription Agent if you need further information regarding these forms. Rights Offering Participants may also access the IRS website (www.irs.gov) to obtain the appropriate form W-8 and its instructions.

**Item 6.  Miscellaneous**

1.      The representations, warranties, covenants, and agreements of the Rights Offering Participant contained in this Notes Rights Exercise Form will survive the execution hereof and the distribution of the Rights Offering Notes to such Rights Offering Participant.

2.      Neither this Notes Rights Exercise Form nor any provision hereof shall be waived, modified, discharged, or terminated except by an instrument in writing signed by the party against whom any such waiver, modification, discharge, or termination is sought; *provided*, *however*, that any waiver by (a) the Debtors shall not be valid without the prior written consent of the Requisite Backstop Parties; and (b) the Reorganized Debtors shall be in accordance with the Plan and the terms contained herein.

3.      References herein to a person or entity in either gender include the other gender or no gender, as appropriate.

4.      This Notes Rights Exercise Form may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute one and the same agreement.

5.      This Notes Rights Exercise Form and its validity, construction and performance shall be governed in all respects by the laws of the State of New York.

[*Remainder of Page Intentionally Left Blank.*]

9

## SCHEDULE 14B

**Form of New Preferred Equity Rights Exercise Form**

## INSTRUCTIONS TO EQUITY RIGHTS EXERCISE FORM[1]

You have received the attached Equity Rights Exercise Form because you are a holder of an Allowed Senior Notes Claim as of the Rights Offering Record Date.  **If you wish to participate in the Equity Rights Offering, each of the Equity Rights Offering Conditions and each of the Additional Conditions must be satisfied at or prior to the Rights Offering Termination Time (5:00 p.m. (New York City time) on [    ], 2017), unless provided otherwise herein.**  You may deliver this Equity Rights Exercise Form via electronic mail or regular mail, overnight or hand delivery to the Subscription Agent at the following address:

<div align="center">

**21st Century Oncology Holdings, Inc.**
**c/o Kurtzman Carson Consultants, LLC**
**2335 Alaska Avenue**
**El Segundo, CA 90245**

</div>

The Equity Rights Offering Procedures are hereby incorporated herein by reference as if fully set forth herein.  Pursuant to the Plan and the Equity Rights Offering Procedures, each holder of an Allowed Senior Notes Claim (including any investment advisors, managers, managed funds or accounts, intermediaries and/or nominees who hold Allowed Senior Notes Claims) who is a "Rights Offering Participant" will be eligible to participate in the Equity Rights Offering.  A holder of an Allowed Senior Notes Claim is a "Rights Offering Participant" if such holder holds an Allowed Senior Notes Claim as of the Rights Offering Record Date and is an Accredited Investor, as such holder certifies on a duly executed and properly completed AI Questionnaire that is delivered to the Subscription Agent and is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.

Please consult the Plan, the Disclosure Statement, the Rights Offering Procedures, and the order approving the Rights Offerings (collectively, the "Rights Offering Documents") for a complete description of the Rights Offerings.  Copies of the Rights Offering Documents may be obtained, free of charge, by contacting the Subscription Agent.

To subscribe for Rights Offering Shares pursuant to the Equity Rights Offering:

1.    Review the principal amount of your Allowed Senior Notes Claim set forth in Item 1a.

2.    Review your Total Maximum Subscription Amount (as defined below) set forth in Item 1b.

3.    Calculate your Aggregate Exercise Price pursuant to Item 2.

---

[1]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Equity Rights Offering Procedures or, if any such term is not defined in the Equity Rights Offering Procedures, such term shall have the meaning given to it in the Plan.

4.     <u>Read and complete</u> the certification, representations, warranties and agreements in Item 3.

5.     <u>Deliver</u> a duly executed and properly completed Equity Rights Exercise Form to the Subscription Agent so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.

6.     <u>Pay</u> the Aggregate Exercise Price to the Subscription Agent in accordance with the Payment Instructions set forth in Item 4 so that such payment is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time; *provided, however,* that if any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date participates in the Equity Rights Offering in its capacity as a Rights Offering Participant, then such Backstop Party shall be permitted to deposit its Aggregate Exercise Price into the Deposit Account at any time on or before the Deposit Deadline in the same manner that such Backstop Party would be required to deposit its Aggregate Share Purchase Price pursuant to Section 1.2(c) of the Backstop Purchase Agreement.

7.     <u>Deliver</u> your W-8 or W-9, as applicable, to the Subscription Agent so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time pursuant to Item 5.

Participation in the Equity Rights Offering is voluntary, and is limited to Rights Offering Participants.  Further, each Rights Offering Participant may exercise all or any portion of such Rights Offering Participant's Equity Rights; *provided, however,* that a Rights Offering Participant shall not be permitted to participate in the Equity Rights Offering unless such Rights Offering Participant also participates in the Notes Rights Offering in an equal proportionate amount.

*[Remainder of Page Intentionally Left Blank.]*

## EQUITY RIGHTS EXERCISE FORM

### Rights Offering Termination Time

### The Rights Offering Termination Time is 5:00 p.m. (New York City time) on [___], 2017.

### Please consult the Rights Offering Documents for additional information with respect to this Equity Rights Exercise Form.

Rights Offering Participants (including any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date) are entitled to participate in the Equity Rights Offering, as further described in the Equity Rights Offering Procedures.  To exercise your Equity Rights, review the amounts in Items 1a and 1b below and read and complete, as applicable, Items 2, 3, 4 and 5 below.

**Item 1.  Amount of Eligible Claim(s)**

Pursuant to the Equity Rights Offering Procedures, each Rights Offering Participant is entitled to participate in the Equity Rights Offering to the extent of such Rights Offering Participant's Allowed Senior Notes Claims as of the Rights Offering Record Date.

**1a.**    As of the Rights Offering Record Date, the principal amount of your Allowed Senior Notes Claims is:

$\$$_____
*[PRE-PRINTED]*

**1b.**    Therefore, for the purposes of the Equity Rights Offering, you have Equity Rights to subscribe for up to the **maximum** aggregate liquidation value of Rights Offering Shares set forth in the box below (the "Total Maximum Subscription Amount").   Each Rights Offering Participant may subscribe for all or any portion of its Total Maximum Subscription Amount; *provided*, *however*, that a Rights Offering Participant shall not be permitted to participate in the Equity Rights Offering unless such Rights Offering Participant also participates in the Notes Rights Offering in an equal proportionate amount.



$\$$_____
(the Total Maximum Subscription Amount)[1]
*[PRE-PRINTED]*

---

[1]    The Total Maximum Subscription Amount shall equal the product of (rounded down to the nearest whole $[___]) (a) $88.235 million and (b) the quotient obtained by dividing (i) the amount set forth in Item 1a by (ii) the aggregate principal amount of all outstanding Senior Notes as of the Rights Offering Record Date.

## Item 2.  Calculation of Aggregate Exercise Price

Your Aggregate Exercise Price shall be an amount equal to the product of (a) eighty-five percent (85%) and (b) the portion of your Total Maximum Subscription Amount that you validly elect to subscribe for and purchase.  The portion of your Total Maximum Subscription Amount that you elect to subscribe for and purchase shall only be in multiples of $[_____].  Please calculate your Aggregate Exercise Price below.



| $_____ (portion of Total Maximum Subscription Amount for which you elect to subscribe) | 85%  x  = | $_____ (your Aggregate Exercise Price) |
|---|---|---|

To exercise your Equity Rights, you must pay an amount equal to the Aggregate Exercise Price in accordance with the Payment Instructions set forth below in Item 4 so that such payment is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time; *provided*, *however*, that if any Backstop Party that holds an Allowed Senior Notes Claim as of the Rights Offering Record Date participates in the Equity Rights Offering in its capacity as a Rights Offering Participant, then such Backstop Party shall be permitted to deposit its Aggregate Exercise Price into the Deposit Account at any time on or before the Deposit Deadline in the same manner that such Backstop Party would be required to deposit its Aggregate Share Purchase Price pursuant to Section 1.2(c) of the Backstop Purchase Agreement.

## Item 3.  Subscription Certifications, Representations, Warranties and Agreements

By returning the Equity Rights Exercise Form:

1.      The Rights Offering Participant hereby certifies that it (a) was the holder of the Allowed Senior Notes Claims identified in Item 1 as of the Rights Offering Record Date; (b) agrees to be bound by all the terms and conditions of the Equity Rights Offering Procedures; (c) has obtained a copy of the Rights Offering Documents and understands that the exercise of Equity Rights pursuant to the Equity Rights Offering is subject to all the terms and conditions set forth in such Rights Offering Documents; and (d) has read and understands Article VIII of the Plan and agrees to the releases set forth therein.

2.      The Rights Offering Participant hereby represents and warrants that (a) to the extent applicable, it is duly formed, validly existing, and in good standing under the laws of the jurisdiction of its formation; and (b) it has the requisite power and authority to enter into, execute and deliver this Equity Rights Exercise Form and to perform its obligations hereunder and in each of the other Rights Offering Documents and has taken all necessary action required for due authorization, execution, delivery and performance hereunder and thereunder.

3.      The Rights Offering Participant acknowledges and understands that this Equity Rights Exercise Form shall not be binding on the Debtors or Reorganized Debtors until the conditions to effectiveness of the Plan, as set forth in the Plan, are satisfied.

4.      The Rights Offering Participant hereby agrees that this Equity Rights Exercise Form constitutes a valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium, and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith, and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

5.      The Rights Offering Participant hereby represents and warrants that the exercise of its Equity Rights is and shall be irrevocable; *provided* that nothing in the Equity Rights Offering Procedures shall amend, modify or otherwise alter the right of the Requisite Backstop Parties to terminate the Backstop Purchase Agreement pursuant to the terms of the Backstop Purchase Agreement.

6.      The Rights Offering Participant hereby represents and warrants that it has duly executed and properly completed an AI Questionnaire pursuant to which such Rights Offering Participant has certified that it is an Accredited Investor, and such Rights Offering Participant understands that the Debtors are relying on such certification.

7.      The Rights Offering Participant hereby represents and warrants that (a) the Rights Offering Shares are being acquired by such Rights Offering Participant for the account of such Rights Offering Participant for investment purposes only, within the meaning of the Securities Act, and not with a view to the distribution thereof, and in compliance with all applicable securities laws; (b) its Equity Rights are not transferable or assignable, and may only be exercised by such Rights Offering Participant; and (c) no one other than the Rights Offering Participant has any right to acquire the Rights Offering Shares being acquired by the Rights Offering Participant.

8.      The Rights Offering Participant hereby represents and warrants that its financial condition is such that the Rights Offering Participant has no need for any liquidity in its investment in the Reorganized Debtors and is able to bear the risk of holding the Rights Offering Shares for an indefinite period of time and the risk of loss of its entire investment in the Reorganized Debtors.

9.      The Rights Offering Participant hereby represents and warrants that it (a) is capable of evaluating the merits and risks of acquiring the Rights Offering Shares; and (b) has consulted, to the extent deemed appropriate, with its own advisors as to the financial, tax, legal and related matters concerning an investment in the

Rights Offering Shares and on that basis believes that an investment in the Rights Offering Shares is suitable and appropriate for itself.

10.     The Rights Offering Participant represents and warrants that (a) it has been given the opportunity to (i) ask questions and receive satisfactory answers concerning the terms and conditions of the Equity Rights Offering, and (ii) obtain additional information in order to evaluate the merits and risks of an investment in the Reorganized Debtors, and to verify the accuracy of the information contained in the Rights Offering Documents; (b) it has read and understands the Rights Offering Documents and the terms and conditions herein and therein and the risks associated with the Debtors and their business as described in the Disclosure Statement; and (c) no statement, printed material or other information that is contrary to the information contained in any Rights Offering Document has been given or made by or on behalf of the Debtors or the Backstop Parties to such Rights Offering Participant.

11.     The Rights Offering Participant acknowledges and understands that:

(a)     An investment in the Reorganized Debtors is speculative and involves significant risks.

(b)     The Rights Offering Shares will be subject to certain restrictions on transferability as described in the Plan and, as a result of the foregoing, the marketability of the Rights Offering Shares will be severely limited.

(c)     The Rights Offering Participant will not transfer, sell or otherwise dispose of the Rights Offering Shares in any manner that will violate the New Organizational Documents, the Securities Act or any state or foreign securities laws.

(d)     The Rights Offering Shares have not been, and will not be, registered under the Securities Act or any state or foreign securities laws, and are being offered and sold in reliance upon federal, state and foreign exemptions from registration requirements for transactions not involving any public offering. The Rights Offering Participant recognizes that reliance upon such exemptions is based in part upon the representations of such Rights Offering Participant contained herein and in the AI Questionnaire executed and delivered by the Rights Offering Participant.

12.     The Rights Offering Participant acknowledges and understands that it is required to properly complete and duly execute and deliver to Reorganized 21CH a counterpart of the New Stockholders Agreement as a condition to receiving any Rights Offering Shares. The Rights Offering Participant further acknowledges and understands that it shall be deemed to have accepted the terms of the New Stockholders Agreement (solely in its capacity as a shareholder of Reorganized 21CH) and to be a party thereto without further action or signature. The New Stockholders Agreement shall be effective as of the Effective Date and, as of such

4

date, shall be deemed to be valid, binding, and enforceable in accordance with its terms, and the Rights Offering Participant shall be bound thereby (including any obligation set forth therein to waive or refrain from exercising any appraisal, dissenters' or similar rights) even if it has not actually executed and delivered a counterpart thereof.

13.     The Rights Offering Participant hereby represents and warrants that it is not relying upon any information, representation or warranty other than as expressly set forth in any of the Rights Offering Documents; *provided*, *however*, that the Backstop Parties are relying on the representations and warranties of the Debtors made in the Backstop Purchase Agreement.

14.     The Rights Offering Participant hereby represents and warrants that it is aware that (a) no federal, state, local or foreign agency has passed upon the Rights Offering Shares or made any finding or determination as to the fairness of an investment in the Rights Offering Shares; and (b) the data set forth in any Rights Offering Documents or in any supplemental letters or materials thereto are not necessarily indicative of future returns, if any, which may be achieved by the Reorganized Debtors.

15.     The Rights Offering Participant hereby acknowledges that the Debtors and the Reorganized Debtors seek to comply with all applicable anti-money laundering laws and regulations.   In furtherance of such efforts, the Rights Offering Participant hereby represents and agrees that (a) no part of the Rights Offering Funds used by the Rights Offering Participant to acquire the Rights Offering Shares has been, or shall be, directly or indirectly derived from, or related to, any activity that may contravene federal, state, or international laws and regulations, including anti-money laundering laws and regulations; and (b) no contribution or payment to the Debtors or the Reorganized Debtors by the Rights Offering Participant shall cause the Debtors or the Reorganized Debtors to be in violation of any applicable anti-money laundering laws and regulations including without limitation, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001 and the U.S. Department of the Treasury Office of Foreign Assets Control regulations, each as amended.  The Rights Offering Participant hereby agrees to (x) provide the Debtors and the Reorganized Debtors all information that may be reasonably requested to comply with applicable U.S. law; and (y) promptly notify the Debtors and the Reorganized Debtors (if legally permitted) if there is any change with respect to the representations and warranties provided herein.

16.     The Rights Offering Participant hereby agrees to provide such information and to execute and deliver such documents as may reasonably be necessary to comply with any and all laws, rules and regulations to which the Debtors or Reorganized Debtors are subject.

Date: _____

Name of Rights Offering Participant: _____

(Print or Type)

Social Security or Federal Tax I.D. No.: _____

Signature: _____

Name of Person Signing: _____

(If other than Rights Offering Participant)

Title (if corporation, partnership or LLC): _____

Street Address: _____

City, State, Zip Code: _____

Contact E-mail: _____

Telephone Number: _____

## Item 4.  Payment Instructions

Pursuant to your Binding Rights Election, you must make your payment of the Aggregate Exercise Price calculated in Item 2 above by wire transfer so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.

Please have wire transfers delivered to:  [TBD]

## Item 5.  Tax Information

1. Each Rights Offering Participant that is a U.S. person[2] must provide its taxpayer identification number on a signed Internal Revenue Service ("IRS") form W-9 to the Subscription Agent.   This form is necessary for the Debtors and the Reorganized Debtors, as applicable, to comply with its tax filing obligations and to

---

[2] The definition of "U.S. Person" for this purpose includes a U.S. citizen or resident, a corporation organized in the United States, a partnership organized in the United States, a limited liability company organized in the United States (other than a limited liability company wholly-owned by a foreign person), an estate (other than a foreign estate the income of which, from sources without the United States which is not effectively connected with the conduct of a trade or business within the United States, is not includible in gross income), and a trust if (1) a court within the United States is able to exercise primary supervision over the administration of the trust, and (2) one or more U.S. persons have the authority to control all substantial decisions of the trust.

establish that the Rights Offering Participant is not subject to certain withholding tax obligations applicable to U.S. and non-U.S. persons.  The enclosed W-9 form contains detailed instructions for furnishing this information.

2.   Each Rights Offering Participant that is not a U.S. person (as defined in the previous paragraph) is required to provide information about its status for withholding purposes, generally on an IRS form W-8BEN (for individuals) or W-8BEN-E (for most foreign entities), form W-8IMY (for most foreign intermediaries, flow-through entities, and certain U.S. branches), form W-8EXP (for most foreign governments, foreign central banks of issue, foreign tax-exempt organizations, foreign private foundations, and governments of certain U.S. possessions), or form W-8ECI (for most non-U.S. persons receiving income that is effectively connected with the conduct of a trade or business in the United States).  Each Rights Offering Participant that is not a U.S. person should provide the Subscription Agent with the appropriate form W-8.  Please contact the Subscription Agent if you need further information regarding these forms.  Rights Offering Participants may also access the IRS website (www.irs.gov) to obtain the appropriate form W-8 and its instructions.

## Item 6.  Miscellaneous

1.   The representations, warranties, covenants, and agreements of the Rights Offering Participant contained in this Equity Rights Exercise Form will survive the execution hereof and the distribution of the Rights Offering Shares to such Rights Offering Participant.

2.   Neither this Equity Rights Exercise Form nor any provision hereof shall be waived, modified, discharged, or terminated except by an instrument in writing signed by the party against whom any such waiver, modification, discharge, or termination is sought; *provided*, *however*, that any waiver by (a) the Debtors shall not be valid without the prior written consent of the Requisite Backstop Parties; and (b) the Reorganized Debtors shall be in accordance with the Plan and the terms contained herein.

3.   References herein to a person or entity in either gender include the other gender or no gender, as appropriate.

4.   This Equity Rights Exercise Form may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute one and the same agreement.

5.   This Equity Rights Exercise Form and its validity, construction and performance shall be governed in all respects by the laws of the State of New York.

*[Remainder of Page Intentionally Left Blank.]*

7

## <u>SCHEDULE 14C</u>

## <u>Form of AI Questionnaire</u>

## INSTRUCTIONS TO AI QUESTIONNAIRE[1]

You have received the attached AI Questionnaire because you are a holder of an Allowed Senior Notes Claim as of the Rights Offering Record Date. **If you wish to participate in the Rights Offerings, you must deliver a duly executed and properly completed copy of this AI Questionnaire to the Subscription Agent so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time (5:00 p.m. (New York City time) on [    ], 2017).** You may deliver this AI Questionnaire via electronic mail or regular mail, overnight or hand delivery to the Subscription Agent at the following address:

**21st Century Oncology Holdings, Inc.**
**c/o Kurtzman Carson Consultants, LLC**
**2335 Alaska Avenue**
**El Segundo, CA 90245**

Pursuant to the Plan and the Rights Offering Procedures, each holder of an Allowed Senior Notes Claim (including any investment advisors, managers, managed funds or accounts, intermediaries and/or nominees who hold Allowed Senior Notes Claims) who is a "Rights Offering Participant" is eligible to participate in the Rights Offerings. A holder of an Allowed Senior Notes Claim is a "Rights Offering Participant" if such holder holds an Allowed Senior Notes Claim as of the Rights Offering Record Date and is an Accredited Investor. One of the conditions to a Rights Offering Participant's participation in the Rights Offerings is the delivery of a duly executed and properly completed copy of this AI Questionnaire to the Subscription Agent so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.

Please consult the Plan, the Disclosure Statement, the Rights Offering Procedures, and the order approving the Rights Offerings (collectively, the "Rights Offering Documents") for a complete description of the Rights Offerings. Copies of the Rights Offering Documents may be obtained, free of charge, by contacting the Subscription Agent.

To duly execute, properly complete and deliver to the Subscription Agent this AI Questionnaire:

1. Review the amount of your Allowed Senior Notes Claim in Section 1.

2. Complete the "Eligibility Certification" in Section 2.

3. Initial next to the applicable paragraph in the "Accredited Investor Certification" in Section 3.

4. Coordinate to have your Nominee (as defined below) complete the Nominee Confirmation of Ownership in Section 4.

---

[1]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Rights Offering Procedures to which this AI Questionnaire is attached.

5.    <u>Deliver</u> this AI Questionnaire to the Subscription Agent so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.  You only need to return one AI Questionnaire to participate in both Rights Offerings.

[*Remainder of Page Intentionally Left Blank*.]

## AI QUESTIONNAIRE

**Section 1:  Confirmation of Ownership**

**Your ownership of an Allowed Senior Notes Claim must be confirmed in order to be eligible to receive Equity Rights and Notes Rights.**

If your Senior Notes are held in "street name" by a bank, brokerage house, or other financial institution (each, a "<u>Nominee</u>"), you must forward your AI Questionnaire to the Nominee with sufficient time for the Nominee to complete the "Nominee Confirmation of Ownership" in Section 4 of this AI Questionnaire (including providing the Nominee's medallion guarantee or list of authorized signatories) and for the Nominee to deliver the AI Questionnaire to the Subscription Agent so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.  If authorized to do so, the Nominee may complete the entire AI Questionnaire on your behalf.

**Item 1.  Amount of Allowed Senior Notes Claim(s)**.  I certify that I hold Allowed Senior Notes Claims in the following principal amount as of the Rights Offering Record Date (September 19, 2017) set forth in the box below or that I am the authorized signatory of that beneficial owner.  For purposes of this AI Questionnaire, do not adjust the principal amount for any accrued or unmatured interest or any accretion factor.

$$\underline{\$\phantom{\text{_____}}}$$

**Section 2:  Eligibility Certification**

In order to receive Equity Rights and Notes Rights under the Plan, the holder of Allowed Senior Notes Claims must:

1.      Be an Accredited Investor;

2.      Answer "Yes" to Question 1 below; and

3.      Deliver a duly executed and properly completed copy of this AI Questionnaire to the Subscription Agent so that it is *actually received* by the Subscription Agent at or before the Rights Offering Termination Time.

**Question 1.**  Is the respondent an "Accredited Investor"? ____ Yes _____ No

If "Yes", please indicate which category (*i.e.,* 1 through 4) of Section 3 below that the holder of Allowed Senior Notes Claims falls under:  _____

3

IN WITNESS WHEREOF, I certify that: (i) I am an authorized signatory of the holder indicated below; (ii) I executed this AI Questionnaire on the date set forth below; and (iii) this AI Questionnaire (x) contains accurate representations with respect to the undersigned and (y) is a certification to the Debtors and the Bankruptcy Court.

_____
(Signature)

By: _____
(Please Print or Type)

Title: _____
(Please Print or Type)

Address, telephone number and facsimile number:

_____

_____

_____

Certain communications during the Rights Offerings may be performed via e-mail. For that reason, you are required to provide your e-mail address below:

_____
(E-Mail Address)

**Section 3: Accredited Investor Certification**

Please indicate the basis on which you would be deemed an "Accredited Investor" by initialing the appropriate line provided below.

An Accredited Investor shall include any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories, at the time of the sale of the securities to that person:

1.    **___ initials**    any bank as defined in section 3(a)(2) of the Securities Act of 1933 (as amended and including any rule or regulation promulgated thereunder, the "Securities Act"), or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Securities Act, whether in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934, as amended; any insurance company as defined in section 2(a)(13) of the Securities Act; any investment company registered under the Investment Company Act of 1940, as amended,

4

or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958, as amended; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended, if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

2.  ___ **initials**    any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940, as amended;

3.  ___ **initials**    any organization described in section 501(c)(3) of the Internal Revenue Code of 1986, as amended, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

4.  ___ **initials**    any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

5.  ___ **initials**    any natural person whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000;

6.  ___ **initials**    any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

7.  ___ **initials**    any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in 17 C.F.R. 230.506(b)(2)(ii); and

8.  ___ **initials**    any entity in which all of the equity owners are accredited investors.

**Section 4:  Nominee Confirmation of Ownership**

**Your ownership of Senior Notes must be confirmed in order to participate in the Rights Offerings.**

**To be completed by Nominee only.**  The Nominee holding your Senior Notes as of the Rights Offering Record Date must complete the box below on your behalf.

| | |
|---|---|
| DTC Participant Name:<br><br>_____<br><br>DTC Participant Number:<br><br><br>_____<br><br>DTC Participant Contact Name:<br><br><br>_____<br><br>DTC Participant Authorized Signature:<br><br><br>_____<br><br>DTC Participant Contact Number:<br><br><br>_____<br><br>DTC Participant Email Address:<br><br><br>_____<br><br>Beneficial Holder Name:<br><br><br>_____<br><br>Beneficial Holder Account Number: | Principal Amount of the Senior Notes (CUSIP [_____]) that was held by Nominee for account indicated below as of the Rights Offering Record Date (September 19, 2017):<br><br>$ _____<br><br><br><br><br><br>**Nominee's Medallion Guarantee (or attach authorized signatory list hereto):** |

6

## **SCHEDULE 15**

## **Form of Disclosure Statement Hearing Notice**

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF DISCLOSURE STATEMENT HEARING

**PLEASE TAKE NOTICE THAT** 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") filed: (i) on July 14, 2017, the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan"); and (ii) on August 13, 2017, (a) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") and (b) *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Approving the Rights Offering Procedures and Related Materials, (V) Scheduling Certain Dates with Respect Thereto, and (VI) Granting Related Relief* (the "Disclosure Statement Motion").[2]

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Disclosure Statement Motion.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Disclosure Statement Hearing") will be held on **September 19, 2017, at 10:00 a.m.,** prevailing Eastern Time before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140 (the "Court"), to consider the entry of an order approving, among other things, (a) the Disclosure Statement; (b) the Disclosure Statement Hearing Date and Disclosure Statement Hearing Notice; (c) the Disclosure Statement Objection Deadline and Disclosure Statement Objection Response Deadline; (d) the Voting Record Date, Solicitation Deadline, and Voting Deadline; (e) the manner and form of the Solicitation Packages and the materials contained therein; (f) the Plan Supplement Notice; (g) the Non-Voting Status Notices; (h) the Assumption Notice and Rejection Notice; (i) the Solicitation and Voting Procedures; (j) the Confirmation Timeline, Confirmation Hearing Notice and Publication Notice; (k) the Rights Offering Procedures and Rights Offering Materials; and (l) the other dates and deadlines related thereto. Please be advised that the Disclosure Statement Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on the list of parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Disclosure Statement is **September 12, 2017, at 4:00 p.m.,** prevailing Eastern Time (the "Disclosure Statement Objection Deadline"). Any objection to the Disclosure Statement **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of the objection and, if practicable, a proposed modification to the Disclosure Statement (or related materials) that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be actually received on or before the Disclosure Statement Objection Deadline:

| Counsel to the Debtors | |
|---|---|
| Christopher Marcus, P.C.<br>John T. Weber<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:        (212) 446-4800<br>Facsimile:        (212) 446-4900 | James H.M. Sprayregen, P.C.<br>William A. Guerrieri (admitted *pro hac vice*)<br>Alexandra Schwarzman (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:        (312) 862-2000<br>Facsimile:        (312) 862-2200 |

| U.S. Trustee |
|---|
| Paul Schwartzberg<br>Susan Golden<br>Office of the United States Trustee<br>for the Southern District of New York<br>U.S. Federal Office Building, 201 Varick Street, Suite 1006<br>New York, New York 10014 |

| Proposed Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases |
|---|
| Lorenzo Marinuzzi<br>Daniel Harris<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019 |

| Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders |
|---|
| Jayme Goldstein<br>Samantha Martin<br>Odelia Lee<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038 |

| *Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility* |
|---|
| Evan Fleck<br>Matthew Brod<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, New York 10005 |
| *Counsel to the MDL Agent* |
| Seth H. Lieberman<br>Patrick Sibley<br>Matthew W. Silverman<br>Pryor Cashman LLP<br>7 Times Square<br>New York, New York 10036 |
| *Counsel to the DIP Agent* |
| Joel H. Levitin<br>Richard A. Stieglitz, Jr.<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, New York 10005 |

New York, New York
Dated: _____, 2017

/s/
Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*