| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: September 19, 2017<br>Hearing Time: 10:00 a.m. |

-------------------------------------------------------------------X
:
In re                                                              :      Chapter 11
:
21ST CENTURY ONCOLOGY HOLDINGS, *et al.*,    :
:      Case No. 17-22770 (RDD)
:
Debtors.                                                     :
-------------------------------------------------------------------X

## OBJECTION OF UNITED STATES TRUSTEE TO DEBTORS' DISCLOSURE STATEMENT RELATING TO THE JOINT PLAN OF REORGANIZATION

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this objection to the Debtors' Disclosure Statement For The Joint Plan of Reorganization of 21st Century Oncology Holdings and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "Disclosure Statement"). ECF Doc. No. 311. In support thereof, the United States Trustee respectfully states:

**I.    INTRODUCTION**

The Disclosure Statement should not be approved because it fails to provide creditors with sufficient information to allow them to make an informed choice as to whether to approve or reject the proposed Joint Plan of Reorganization of 21st Century Oncology Holdings and its Debtor Affiliates (the "Plan"). ECF No. 205.

First, the Disclosure Statement should contain additional information explaining why the Plan treats two different classes as unimpaired despite the fact that under the Plan the legal rights of each such class' members will be altered. Simply put, although the Debtors list Classes 1 and 2 as unimpaired, both classes are deemed to provide non-consensual third-party releases to non-

1

debtors.  As this Court discussed in <u>Chassix</u>,[1] creditors whose rights do not simply pass through the bankruptcy process are not truly unimpaired, yet the Plan aims to do exactly this.

Second, additional information should be provided in the Disclosure Statement explaining why creditors that vote to reject the Plan (but fail to separately opt out of the third-party releases), or are deemed to reject the Plan, are deemed to have consented to the releases.

Third, the Disclosure Statement should provide adequate information of the existence of the rare and exceptional circumstances that the Second Circuit has held would justify imposing a third-party release on an impaired non-consenting creditor.  Other than boilerplate language, the Disclosure Statement provides no information that there is anything unusual about this case that would justify such extraordinary relief.  Not only are the proposed releases extremely overbroad, but other than vague assertions, there is no information establishing that the released parties provided consideration for the releases.  As such, the releases do not appear to comport with Second Circuit law or the Bankruptcy Code, and the Debtors should provide information to explain why they believe otherwise.

Finally, it is unclear if the Disclosure Statement and Plan comply with Rule 1.8(h) of the New York Rules of Professional Conduct, which prevents lawyers from limiting their liability. The Disclosure Statement and Plan should be amended to clearly comply with New York Rules of Professional Conduct.

---

[1] <u>In re Chassix Holdings, Inc.</u>, 533 B.R. 64 (Bankr. S.D.N.Y. 2015) (Wiles, J.).

**II.    FACTS**

        **General Facts**

1. On May 25, 2017, 21st Century Oncology Holdings and its debtor affiliates (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2. The Debtors are a global physician-led provider of integrated cancer care services. Declaration of Paul Rundell at ¶ 7, ECF No. 16. The Debtors service patients at over 179 locations worldwide. Id. at ¶ 16.

3. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of Bankruptcy Code.

4. On May 26, 2017, the Court entered an order directing that these Chapter 11 cases be jointly administered. ECF Doc. No. 30.

5. On June 15, 2017, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to Section 1102(a) of the Bankruptcy Code. ECF Doc. No. 92. An Amended Committee Appointment was filed on June 16, 2017. ECF No. 94.

        **Plan and Disclosure Statement**

6. On July 14, 2017, the Debtors filed the Plan.

7. On August 13, 2017, the Debtors filed the Disclosure Statement.

8. The Plan provides for "Releasing Parties" to release all claims held against Released Parties, including the DIP Lenders and their agent, the Consenting MDL Lenders and their agent, certain First Lien Lenders and their agent, certain Noteholders and their Indenture Trustee, Equity partners, and with respect to each of the foregoing, their current and former

3

affiliates, partners, subsidiaries, officers, directors, principals, employees, agents, manages funds, advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals, other than for claims arising out of fraud, willful misconduct or gross negligence. Plan at 17 and 51.

9. "Releasing Parties" are defined to include (i) all holders of claims and interests who are presumed to accept the Plan, (ii) all holders of claims and interests entitled to vote on the Plan who either vote to accept the Plan or receive a ballot but abstain from voting on the Plan, (iii) all holders of claims and interests entitled to vote on the Plan who vote to reject the Plan but do not elect on their ballot to opt-out of the third party releases, and (iv) all other holders of Claims and Interests to the fullest extent permitted by law. Plan at 17.

10. Under the Plan, Classes 1 (other secured creditors) and 2 (other priority creditors) are unimpaired and presumed to accept the Plan. Plan at 24.

11. Under the Plan Class 8 (section 510(b) claims) will not receive any recovery under the plan, is impaired and presumed to reject the plan. Id. at 25 and 28.

### III. DISCUSSION

#### A. The Governing Law

12. Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125. The Bankruptcy Code defines "adequate information" as: Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable

4

such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan . . . . 11 U.S.C. § 1125(a)(1); see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994); In re Adelphia Commc'ns Corp., 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); Kunica v. St. Jean Fin., Inc., 233 B.R. 46, 54 (S.D.N.Y. 1999). To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. See In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives . . . ." In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less. See In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. Adelphia, 352 B.R. at 596 (citing Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94, 100 (3d Cir. 1988)). Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement too, at least so long as the additional information is accurate and its inclusion is not misleading. Adelphia, 352 B.R. at 596. The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. In re Duratech Indus., 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), aff'd, 241 B.R.

5

283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor as to what it is going to get and when, and what contingencies there are that might intervene. In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). For the reasons set forth below, the Disclosure Statement does not provide sufficient disclosures appropriate to the circumstances of these cases.

    **B.**    **The Disclosure Statement Fails to Set Forth Adequate Information Regarding Why Classes 1 and 2 are Classified as Unimpaired Despite the Fact That the Legal Rights of Each Class Will Be Altered If the Plan is Confirmed**

13. Under the Plan, Classes 1 and 2 are listed as unimpaired and do not vote on the Plan. Plan at 24. Classes 1 and 2, however, are designated as Releasing Parties providing releases to the Released Parties. Plan at 17.

14. The Bankruptcy Code provides that a class of claims or interest is impaired under a plan of reorganization unless, with respect to each claim or interest of such class, the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest. . . " 11 U.S.C. § 1124 (1). The Debtors treat Classes 1 and 2 of creditors as unimpaired. Merely because the Debtors' choose to characterize these classes as unimpaired, however, does not mean that they are in reality unimpaired. Classes 1 and 2 are clearly impaired as the legal rights of every holder of claims in Classes 1 and 2 will be undeniably altered should releases be imposed against each holder without consent.

15. Without being afforded the opportunity to vote on the Plan, the third-party releases (if the Plan is confirmed) will be imposed upon every holder of Classes 1 and 2. Accordingly, the Disclosure Statement cannot be approved until the Debtors amend the Plan to permit Classes 1 and 2 to vote for or against the Plan (and opt in or out of the releases), or strike Classes 1 and 2 from the definition of Releasing Party. See In re Genco Shipping & Trading Ltd., 513 B.R. 233, 270 (Bankr. S.D.N.Y.2014) ("The Court agrees that simply classifying a

party as unimpaired does not mean that they should be somehow automatically deemed to grant a release where the requirements of *Metromedia* have not been met.").

        **C.**        **The Disclosure Statement Fails to Adequately Explain the Bases for the Plan Imposing Third-Party Releases on Creditors That (i) Vote to Reject the Plan, But Do Not Opt-Out of the Releases, or (ii) Are Deemed to and Therefore are Precluded from Voting**

16.    In In re Chassix Holdings, the Court (J. Wiles) explained that while courts have often treated a vote in favor of a plan as "consent" to third-party releases, "then by the same logic a creditor who votes to reject a plan should also be presumed to have rejected the proposed third party releases that are set forth in the plan." Chassix Holdings, 533 B.R. 64, 79 (Bankr. S.D.N.Y. 2015). Therefore, the Court held, an "additional 'opt in' requirement [for a rejecting creditor]. . . . would have been little more than a Court-endorsed trap for the careless or inattentive creditor." Id.

17.    The Court further held that if a creditor is deemed to reject the plan and given no opportunity to vote or to "opt in", "it would defy common sense to conclude that those parties had 'consented' to releases." Id. at 81; see also, In re Chemtura Corp., 439 B.R. 561, 609-613 (Bankr. S.D.N.Y. 2010) (J. Gerber) (stating that third-party releases are unenforceable when creditors were not provided with a mechanism to express their desire to grant or withhold such release); In re Oneida Ltd., 351 B.R. 79, 94 (Bankr. S.D.N.Y. 2006) (J. Gropper) (although the equity committee had raised, but then abandoned, an objection to the validity of the non-debtor third-party releases, the Court found that the releases were acceptable because all of the affected creditors had consented by affirmatively checking a box on the ballot indicating their willingness to grant the releases).

18.    Here, the Debtors seek approval of third party releases from creditors that (i) reject the Plan, but fail to opt-out of the releases and (ii) creditors that are deemed to reject the

7

plan and, as not being given the chance to vote, cannot opt-out of the releases (Class 8). Unless these third-party releases are severed from the Plan, the Disclosure Statement should not be approved as it does not explain why both rejecting creditors and non-voting creditors that do not receive a recovery under the Plan have their rights against third-parties further stripped away.

### C.    The Disclosure Statement Should be Amended to Provide Adequate Information Concerning the Proposed Releases

19. Other than mere boilerplate language, the Disclosure Statement contains no information as to how the broad release provisions in the Plan are consistent with the Second Circuit's decisions in In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008) ("Manville II"), vacated & remanded on other grounds, 557 U.S. 137 (2009), aff'g in part & rev'g in part, 600 F.3d 135 (2d Cir. 2010) ("Manville III") and Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141 (2d Cir. 2005).

20. In Metromedia, the Second Circuit held that non-debtor third-party releases are proper only in "rare cases." Metromedia, 416 F. 3d at 142. The Second Circuit articulated at least two reasons for its reluctance to approve these releases:

> First, the only explicit authorization in the Code for non-debtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims. [and]
>
> Second, a non-debtor release is a device that lends itself to abuse. By it, a non-debtor can shield itself from liability to third parties. In form, it is a release; in effect it may operate as a bankruptcy discharge without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity.

Id. at 142.

21. The Second Circuit held that "[i]n bankruptcy cases, a Court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the Debtors'

8

reorganization plan." Id. at 141 (quoting SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285, 292 (2d Cir. 1992)).  The appellate court cautioned, however, that a non-debtor third-party release is not considered to be adequately supported by consideration simply because the non-debtor contributed something to the reorganization and the enjoined creditor took something out. Metromedia at 143. Rather, "[a] non-debtor third-party release should not be approved absent a finding by the court that 'truly unusual circumstances' exist that render the release terms important to the success of the plan." Id.

      22.    Subsequent cases further clarify the Metromedia requirements.  For example, in In re DBSD North America, Inc., the Court stated:

> As the Second Circuit's decision in Metromedia and my earlier decision in Adelphia provide, exculpation provisions (and their first cousins, so-called "third party releases") are permissible under some circumstances, but not as a routine matter. They may be used in some cases, including those where the provisions are important to a debtor's plan; the claims are "channeled" to a settlement fund rather than extinguished; the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; the released party provides substantial contribution; and where the plan otherwise provides for full payment of the enjoined claims.

In re DBSD N. Am., Inc., 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (emphasis in original) (footnotes omitted); In re Motors Liquidation Co., 477 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Although (since the Code is silent on the matter) third-party releases aren't 'inconsistent with the applicable provisions of this title,' the Second Circuit has ruled that they're permissible only in rare cases, with appropriate consent or under circumstances that can be regarded as unique,

9

some of which the Circuit listed.  But where those circumstances haven't been shown, third-party releases can't be found to be appropriate.").[2]

23.    Before a court considers whether the proponent of a plan has demonstrated the "truly unusual circumstances" mandated by Metromedia, it must first determine whether it has subject matter jurisdiction to approve the releases or injunctions provided for by and against non-debtor  third-parties.  See Manville II; accord In re Dreier LLP, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010); In re Metcalfe & Mansfield Alternative Invs., 421 B.R.685, 695 (Bankr. S.D.N.Y. 2010).  In Manville II, the Second Circuit held that "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the res of the bankruptcy estate."  Manville II, 517 F.3d at 66; see also Dreier, 429 BR. at 133 (because the court lacks jurisdiction to enjoin claims that do not affect property of the estate or the administration of the estate, non-debtor  third-party releases must be limited to claims that are derivative of the debtors).

24.    The Plan proposes to release non-debtor third-parties from various claims and liabilities.  Plan at 51.  Because these releases seek to include the release of claims by non-

---

[2] Other examples include: (i) Adelphia, 368 B.R. at 268-69 (holding that three categories of non-debtor third-party releases are acceptable under Metromedia: (1) persons indemnified by the estate under by-laws, employment contracts, or loan agreements, (2) persons involved in unique transactions, such as a party who makes a substantial financial contribution to the estate; and (3) persons who consent to the releases); (ii) In re Karta Corp., 342 B.R. 45 (S.D.N.Y. 2006) (framing inquiry as  "whether a significant non-debtor financial contribution plus other unusual  factors render a situation so "unique" that the non-debtor third-party releases are appropriate.").  Id. at 55; (iii) In re  Oneida Ltd., 351 B.R. 79 (Bankr. S.D.N.Y. 2006) (the equity committee had raised, but then abandoned, an  objection to the validity of the non-debtor third-party releases, and the court found that the releases in that case were  acceptable because all of the affected creditors had consented by affirmatively checking a box on the ballot  indicating their willingness to grant the releases); (iii) In re Spiegel, Inc., No. 03-11540 (BRL), 2006 WL 2577825, *7 (Bankr. S.D.N.Y. Aug. 16, 2006) (plan's non-debtor third-party releases and injunctions were critical components  of the settlement that played a "vital part in the plan" and "were necessary to the proposed reorganization of the Debtors and the successful administration of their estates"); and (iv) In re XO Commc'ns, Inc., 330 B.R. 394, 440 (Bankr. S.D.N.Y. 2005) (non-debtor third-party releases were permissible where the non-debtors  provided significant consideration, the non-debtors were integral to the plan, and the non-debtors' interests aligned   with those of the debtors with regard to the claims).

debtor third-parties against non-debtor third-parties, the Second Circuit's rulings in <u>Manville II</u> and <u>Metromedia</u> govern the Court's determination as to whether this release may be approved. It is now settled in the Second Circuit that the Court does not have subject matter jurisdiction to approve this provision because it seeks to release "direct" (non-derivative) claims that non-debtor third-parties may have against other non-debtor third parties.  <u>See Manville III</u>, 600 F.3d at 153 (clarifying on remand that the bankruptcy court does not have jurisdiction to enjoin claims against non-debtor insurers that are not derivative of the debtor).

25.	Accordingly, the Disclosure Statement should be amended to provide, beyond mere boilerplate language, <u>see</u> Disclosure Statement at 85-88, this information.  As written, there is nothing unusual in the Plan to demonstrate that it is extraordinary when compared to other cases and plans.

      **D.**	**The Releases for Attorneys are Inappropriately Broad**

26.	Rule 1.8(h)(1) of the New York Rules of Professional Conduct (the "New York Rule") provides that a "lawyer shall not . . . make an agreement prospectively limiting the lawyer's liability to a client for malpractice."  *See* N.Y. Comp. Codes R. & Regs. tit. 22 § 1200 Rule 1.8(h)(1) (2010).  Neither the Disclosure Statement nor the Plan contain any provision to ensure compliance with the New York Rule and ensure that the releases for attorneys are appropriately limited.  The Disclosure Statement and Plan, therefore, should not be approved until it they are revised to include the following provision: "Nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct."

11

WHEREFORE, the United States Trustee respectfully requests that the Court deny the approval of the Disclosure Statement and grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
       August 14, 2017

                                      WILLIAM K. HARRINGTON
                                      UNITED STATES TRUSTEE, Region 2

By:    /s/ *Paul Schwartzberg*
        Paul Schwartzberg
        Trial Attorney
        201 Varick Street, Rm 1006
        New York, New York 10014
        Tel. No. (212) 510-0500