**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## JOINT CHAPTER 11 PLAN OF REORGANIZATION
## OF 21ST CENTURY ONCOLOGY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES

| | |
|---|---|
| Christopher Marcus, P.C. | James H.M. Sprayregen, P.C. |
| John T. Weber | William A. Guerrieri (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Alexandra Schwarzman (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | **KIRKLAND & ELLIS LLP** |
| 601 Lexington Avenue | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| New York, New York 10022 | 300 North LaSalle Street |
| Telephone:    (212) 446-4800 | Chicago, Illinois 60654 |
| Facsimile:    (212) 446-4900 | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

~~Proposed~~ Counsel to the Debtors and Debtors in Possession

---

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DRAFT PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT, NOR HAS THE BANKRUPTCY COURT APPROVED A DISCLOSURE STATEMENT WITH RESPECT TO THE PLAN.**

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 14

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
      GOVERNING LAW, AND OTHER REFERENCES ........................................................ 14
1.1     Defined Terms ................................................................................................... 14
1.2     Rules of Interpretation ...................................................................................... 2125
1.3     Computation of Time ........................................................................................ 2226
1.4     Governing Law .................................................................................................. 2226
1.5     Reference to Monetary Figures ......................................................................... 2226
1.6     Reference to the Debtors or the Reorganized Debtors ..................................... 2226
1.7     Controlling Document ....................................................................................... 2226

ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS ...................................................... 2226
2.1     Administrative Claims ...................................................................................... 2226
2.2     DIP Claims ........................................................................................................ 2327
2.3     Professional Claims .......................................................................................... 2327
2.4     Priority Tax Claims ........................................................................................... 2428
2.5     Statutory Fees ................................................................................................... 2428

ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS ....... 2428
3.1     Classification of Claims and Interests .............................................................. 2428
3.2     Treatment of Classes of Claims and Interests ................................................. 2529
3.3     Special Provision Governing Unimpaired Claims ........................................... 3035
3.4     Elimination of Vacant Classes ......................................................................... 3035
3.5     Voting Classes; Presumed Acceptance by Non-Voting Classes ..................... 3035
3.6     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ............. 3035
3.7     Intercompany Interests ..................................................................................... 3035

ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN ........................................ 3136
4.1     Restructuring Transactions ............................................................................... 3136
4.2     General Settlement of Claims and Interests ..................................................... 3136
4.3     New Preferred Equity, New Common Stock and New Warrants ..................... 3136
4.4     New First Lien Term Loan Credit Facility ...................................................... 3237
4.5     New MDL Term Loan Facility ........................................................................ 3237
4.6     New Revolving Credit Facilities ...................................................................... 3338
4.7     New Second Lien Notes .................................................................................... 3338
4.8     Rights Offerings ............................................................................................... 3439
4.9     Put Option Shares ............................................................................................. 3642
4.10    Exemption from Registration Requirements .................................................... 3642
4.11    Subordination ................................................................................................... 3642
4.12    Vesting of Assets in the Reorganized Debtors ................................................ 3743
4.13    Cancellation of Notes, Instruments, Certificates, and Other Documents ....... 3743
4.14    Corporate Action .............................................................................................. 3844
4.15    Corporate Existence ......................................................................................... 3945
4.16    Charter, Bylaws, and New Organizational Documents ................................... 3945
4.17    Effectuating Documents; Further Transactions ............................................... 3945
4.18    Section 1146(a) Exemption .............................................................................. 3945
4.19    Directors and Officers ...................................................................................... 4046
4.20    Employee Arrangements of the Reorganized Debtors ..................................... 4046
4.21    Management Incentive Plan ............................................................................. 4046
4.22    Preservation of Causes of Action .................................................................... 4046

**TABLE OF CONTENTS (CONT'D)**

**Page**

4.23    Avoidance Actions ............................................................................................... 47

4.24    Trustee Fees and Expenses .................................................................................. 47

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ................... ~~41~~48

5.1    Assumption or Assumption and Assignment of Executory Contracts and Unexpired Leases......................................................................................................... ~~41~~48

5.2    Rejection of Executory Contracts or Unexpired Leases and Claims Based Thereon................. ~~42~~48

5.3    Cure of Defaults for Assumed or Assumed and Assigned Executory Contracts and Unexpired Leases ........................................................................................ ~~42~~49

5.4    Indemnification ................................................................................................... ~~43~~50

5.5    Insurance Policies ............................................................................................... ~~43~~50

5.6    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ....... ~~43~~51

5.7    Modifications, Amendments, Supplements, Restatements, or Other Agreements ..................... ~~44~~51

5.8    Reservation of Rights .......................................................................................... ~~44~~51

5.9    Nonoccurrence of Effective Date ......................................................................... ~~44~~51

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** .......................................................... ~~44~~51

6.1    Distributions on Account of Claims and Interests Allowed as of the Effective Date ............... ~~44~~51

6.2    Special Rules for Distributions to Holders of Disputed Claims and Interests........................... ~~44~~52

6.3    Delivery of Distributions ..................................................................................... ~~45~~52

6.4    Minimum Distributions ....................................................................................... ~~47~~54

6.5    Claims and Interests Paid or Payable by Third Parties ........................................ ~~47~~54

6.6    Setoffs ................................................................................................................. ~~47~~55

6.7    Allocation Between Principal and Accrued Interest ........................................... ~~48~~55

**ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS**................... ~~48~~55

7.1    Committee Designee ........................................................................................... 55

7.2    Claims and Interests Administration Responsibilities......................................... ~~48~~56

7.2~~3~~    Estimation of Claims and Interests ..................................................................... ~~48~~56

7.3~~4~~    Adjustment to Claims and Interests Without Objection ...................................... ~~48~~56

7.4~~5~~    Objections to Claims and Interests; Time to File ................................................ ~~48~~56

7.5~~6~~    Disallowance of Claims and Interests ................................................................. ~~49~~57

7.6~~7~~    Amendments to Claims ....................................................................................... ~~49~~57

7.7~~8~~    No Distributions Pending Allowance .................................................................. ~~49~~57

7.8~~9~~    Distributions After Allowance ............................................................................ ~~49~~57

7.9~~10~~    Single Satisfaction of Claims and Interests ........................................................ ~~50~~58

**ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN** ........................................................ ~~50~~58

8.1    Discharge of Claims and Termination of Interests .............................................. ~~50~~58

8.2    Releases by the Debtors ...................................................................................... ~~50~~58

8.3    Releases by Holders of Claims and Interests ...................................................... ~~51~~59

8.4    Exculpation ......................................................................................................... ~~52~~60

8.5    Injunction ........................................................................................................... ~~52~~60

8.6    Protection Against Discriminatory Treatment .................................................... ~~53~~60

8.7    Release of Liens ................................................................................................. ~~53~~61

8.8    Reimbursement or Contribution ......................................................................... ~~53~~61

8.9    Recoupment ........................................................................................................ ~~53~~61

8.10    Subordination Rights ....................................................................................... ~~53~~61

8.11    Professional Responsibility ............................................................................. 61

**ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ......................................... ~~54~~62

9.1    Conditions Precedent to the Effective Date ........................................................ ~~54~~62

9.2    Waiver of Conditions Precedent ......................................................................... ~~55~~63

9.3    Effect of Non-Occurrence of Conditions to Consummation ............................... ~~55~~63

ii

TABLE OF CONTENTS (CONT'D)

**Page**

9.4      Substantial Consummation ................................................... ~~55~~63

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**............................~~56~~64
10.1      Modification of Plan .................................................................~~56~~64
10.2      Effect of Confirmation on Modifications...............................~~56~~64
10.3      Revocation or Withdrawal of Plan .......................................~~56~~64

**ARTICLE XI RETENTION OF JURISDICTION** ................................................~~56~~64

**ARTICLE XII MISCELLANEOUS PROVISIONS** .........................................~~58~~66
12.1      Immediate Binding Effect .....................................................~~58~~66
12.2      Additional Documents ...........................................................~~58~~66
12.3      Dissolution of the Committee ................................................~~58~~66
12.4      Payment of Statutory Fees ....................................................~~58~~66
12.5      Reservation of Rights ............................................................~~58~~66
12.6      Successors and Assigns..........................................................~~58~~66
12.7      Service of Documents ............................................................~~59~~67
12.8      Term of Injunctions or Stays..................................................~~59~~67
12.9      Entire Agreement ...................................................................~~59~~68
12.10    Plan Supplement ....................................................................~~59~~68
12.11    Non-Severability ...................................................................~~60~~68
12.12    Votes Solicited in Good Faith ...............................................~~60~~68
12.13    Closing of Chapter 11 Cases .................................................~~60~~68
12.14    Waiver or Estoppel.................................................................~~60~~69

iii

**INTRODUCTION**

21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 Cases jointly propose this Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Interests in each Debtor pursuant to the Bankruptcy Code. The Debtors seek to consummate the Restructuring Transactions on the Effective Date. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS WHO ARE ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I**

**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

**1.1     Defined Terms**

1.      "*21C*" means Debtor 21st Century Oncology, Inc.

~~2~~2.      "*21C, LLC*" means Debtor 21st Century Oncology, LLC.

3.      "*21C, LLC Operating Agreement*" means that certain Amended and Restated Operating Agreement for 21st Century Oncology, LLC, dated as of January 1, 2016, made by and between 21C and Bethesda Hospital, Inc.

4.      "*21CH*" means Debtor 21st Century Oncology Holdings, Inc.

~~3~~5.      "*21CI*" means Debtor 21st Century Oncology Investments, LLC.

~~4~~6.      "*Accredited Investor*" means an "accredited investor" as such term is defined in Rule 501 under the Securities Act.

~~5~~7.      "*Administrative Claim*" means any Claim against any Debtor for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code; (e) all Claims for "Transaction Expenses" as defined in the Restructuring Support Agreement (including "Backstop Expenses" as defined in the Backstop Purchase Agreement), without any request for the filing of retention applications or fee applications; and (f) all Claims for the "Liquidated Damages Payment" as defined in the Backstop Purchase Agreement to the extent earned pursuant to the terms thereof.

~~6~~8.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Professional Claims, shall be the Business Day that is 30 days after the Effective Date; and (b) with respect to Professional Claims, shall be the Business Day that is 45 days after the Effective Date.

79.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

810.    "*AI Questionnaire*" means the accredited investor questionnaire which (a) will be sent to each holder of an Allowed Note Claim or an Eligible General Unsecured Claim on or before the Solicitation Deadline, and (b) as a condition to such holder's participation in the Rights Offerings, must be properly completed, duly executed and timely delivered by such holder to the subscription agent for the Rights Offerings on or before the Questionnaire Deadline in accordance with the Rights Offering Procedures.

11.    "*Allowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim Filed by the applicable Bar Date in accordance with the Bar Date Order or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or a Claim or Interest for which a Proof of Claim or request for payment of Administrative Claim expressly is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest that is Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided*, that with respect to a Claim or Interest described in clauses (a) and (b) above (except any Claim allowed pursuant to the DIP Orders), such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by the Plan, (including the Claims Objection Deadline), the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order.  Unless otherwise specified in the Plan or in an order of the Bankruptcy Court allowing such Claim or Interest, "Allowed" in reference to a Claim or Interest shall not include: (1) any interest on the amount of such Claim accruing from and after the Petition Date; (2) any punitive or exemplary damages; or (3) any fine, penalty or forfeiture.  Any Claim or Interest (except any Claim allowed pursuant to the DIP Orders) that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable.  For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim or Interest. "*Allow*", "*Allowance*" and "*Allowing*" shall have correlative meanings.

912.    "*Amended Schedule*" means, as applicable, an Amended Schedule of Assumed Executory Contracts and Unexpired Leases or an Amended Schedule of Rejected Executory Contracts and Unexpired Leases.

13.    "*Amended Schedule of Assumed Executory Contracts and Unexpired Leases*" has the meaning given to such term in Section 5.1 hereof.

14.    "*Amended Schedule of Rejected Executory Contracts and Unexpired Leases*" has the meaning given to such term in Section 5.1 hereof.

15.    "*Amended Schedules Bar Date*" has the meaning given to such term in the Bar Date Order.

1016.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code.

11.    "*Backstop Approval Motion*" means the motion and proposed form of order to be Filed by the Debtors with the Bankruptcy Court seeking the approval of the Backstop Purchase Agreement, including the Rights Offering Procedures, pursuant to section 363 of the Bankruptcy Code or otherwise, authorizing the payment of certain expenses and other amounts thereunder (including the Equity Put Option Shares, the Notes Put Option Shares, the Liquidated Damages Payment and the Backstop Expenses) and the indemnification provisions set forth

~~therein, and granting any other related relief, which motion and proposed form of order shall be consistent in all material respects with the Restructuring Support Agreement and otherwise in form and substance reasonably acceptable to the Requisite Parties.~~

~~12~~17.    "*Backstop Approval Motion*" means the *Debtors' Motion for Entry of an Order (I) Authorizing Debtors to (A) Enter into Backstop Purchase Agreement, (B) Pay Specified Payment and Related Expenses, (C) Provide Indemnification to Certain Parties and (II) Granting Related Relief* [Docket No. 200].

18.    "*Backstop Commitment*" means, with respect to any Backstop Party, the obligation of such Backstop Party, subject to the terms and conditions set forth in the Backstop Purchase Agreement, to purchase the Unsubscribed Equity and Unsubscribed Notes pursuant to, and on the terms set forth in, Sections 1.2(a) and 2.2(a) of the Backstop Purchase Agreement, respectively; and "*Backstop Commitments*" means the Backstop Commitments of all of the Backstop Parties collectively.

~~13~~19.    "*Backstop Commitment Percentage*" means, with respect to any Backstop Party, the percentage set forth opposite the name of such Backstop Party under the heading "Backstop Commitment Percentage" on Schedule 1 to the Backstop Purchase Agreement, as such percentage may be modified from time to time in accordance with the terms of the Backstop Purchase Agreement; and "*Backstop Commitment Percentages*" means the Backstop Commitment Percentages of all of the Backstop Parties collectively.

~~14~~20.    "*Backstop Equity Commitment Amount*" has the meaning given to such term in Section 4.~~7~~8(b) hereof.

~~15~~21.    "*Backstop Notes Commitment Amount*" has the meaning given to such term in Section 4.~~7~~8(a) hereof.

~~16.    "Backstop Order" means an order of the Bankruptcy Court approving the Backstop Approval Motion, which order shall be consistent in all material respects with the Restructuring Support Agreement and otherwise in form and substance reasonably acceptable to the Requisite Parties and shall include, among other things, provisions expressly approving (a) the issuance of the Equity Put Option Shares and the Notes Put Option Shares, (b) the payment of the Liquidated Damages Payment and the Backstop Expenses, and (c) the indemnification provisions set forth in the Backstop Purchase Agreement.~~

~~17~~22.    "*Backstop Order*" means the *Order (I) Authorizing Debtors to (A) Enter into Backstop Purchase Agreement, (B) Pay Specified Payment and Related Expenses, (C) Provide Indemnification to Certain Parties and (II) Granting Related Relief* [Docket No. 443].

23.    "*Backstop Parties*" means each of the Entities and/or their investment advisors, managers, managed funds or accounts, intermediaries or nominees set forth on Schedule 1 to the Backstop Purchase Agreement, solely in their capacities as such.

~~18~~24.    "*Backstop Prepayment*" has the meaning given to such term in Section 4.~~7~~8(a) hereof.

~~19.    "Backstop Purchase Agreement" means the Backstop Purchase Agreement, dated as of [___], 2017, by and between the Debtors and the Backstop Parties setting forth, among other things, the terms and conditions of the Rights Offerings, the Backstop Commitments, the issuance of Equity Put Option Shares and the Notes Put Option Shares, the payment of the Liquidated Damages Payment and the Backstop Expenses, and the rights to indemnification of the Backstop Parties and certain other indemnified parties, such agreement to contain representations, warranties, covenants, conditions to closing, termination rights, indemnities, reimbursements and other terms and provisions that are consistent in all material respects with the Restructuring Term Sheet and otherwise reasonably acceptable to the Requisite Parties, and the disclosures to the representations and warranties made by the Debtors in the Backstop Purchase Agreement shall be reasonably acceptable to the Requisite Backstop Parties.~~

20 25.    "*Backstop Purchase Agreement*" means the Backstop Purchase Agreement, dated as of September 21, 2017 (together with all exhibits, schedules and attachments thereto, as amended, restated, supplemented or otherwise modified from time to time in accordance with its terms), by and between the Debtors and the Backstop Parties, a copy of which was filed with the Bankruptcy Court [Docket No. 434].

26.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

21 27.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York or another court having jurisdiction over the Chapter 11 Cases.

22 28.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and the general, local, and chambers rules of the Bankruptcy Court.

23 29.    "*Bar Date*" means the Claims Bar Date, the Governmental Bar Date, the Amended Schedules Bar Date or the Rejection Damages Bar Date, as applicable; and "*Bar Dates*" means a collective reference to the Claims Bar Date, the Governmental Bar Date, the Amended Schedules Bar Date and the Rejection Damages Bar Date.

24 30.    "*Bar Date Order*" means that certain order entered on [_____] [Dkt. ___] July 24, 2017 [Docket No. 253] by the Bankruptcy Court establishing the Bar Dates.

25 31.    "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday in New York, as defined in Bankruptcy Rule 9006(a).

26 32.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

27 33.    "*Causes of Action*" means any and all claims, actions, causes of action (including Avoidance Actions), choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and any avoidance, recovery, subordination, or other actions against insiders and/or any other Entities under the Bankruptcy Code) of any of the Debtors and/or any of the Estates, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, choate or inchoate, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted based in whole or in part upon any act or omission or other event occurring at any time prior to (and including) the Effective Date.

28 34.    "*Certificate*" means any instrument evidencing a Claim or an Interest.

29 35.    "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

30 36.    "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code, as supplemented by section 102(2) of the Bankruptcy Code, whether or not asserted.

31 37.    "*Claims Bar Date*" has the meaning given to such term in the Bar Date Order.

32 38.    "*Claims Objection Deadline*" means the deadline for objecting to a Claim or Interest asserted against or in a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date and

4

(b) such other date as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court.

3339.    "*Claims Register*" means the official register of Claims against the Debtors maintained by the Notice and Claims Agent.

3440.    "*Class*" means each category of holders of Claims or Interests established under Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

3541.    "*Class B 21C, LLC Interests*" means Class B membership interests in 21C, LLC issued to and held by Bethesda Hospital, Inc. pursuant to the 21C, LLC Operating Agreement in its capacity as the Class B Member (as defined in the 21C, LLC Operating Agreement).

42.    "*Committee*" means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

3643.    "*Committee Designee*" means the designee appointed by the Committee to participate in the post-Effective Date reconciliation process for Convenience Class Claims.

44.    "*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

3745.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

3846.    "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order, as such hearing(s) may be adjourned or continued from time to time.

3947.    "*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance consistent in all material respects with the Restructuring Support Agreement and otherwise reasonably acceptable to the Requisite Parties.

4048.    "*Consenting First Lien Lenders*" means each First Lien Lender (or its nominee, investment manager, advisor or subadvisor) that is party to the Restructuring Support Agreement as a "Consenting Existing Lender" (as defined in the Restructuring Support Agreement), solely in its capacity as such.

4149.    "*Consenting MDL Lenders*" means each MDL Lender (or its nominee, investment manager, advisor or subadvisor) that is party to the Restructuring Support Agreement as a "Consenting MDL Lender" (as defined in the Restructuring Support Agreement), solely in its capacity as such.

4250.    "*Consenting Noteholders*" means each Noteholder (or its nominee, investment manager, advisor or subadvisor) that is party to the Restructuring Support Agreement as a "Consenting Noteholder" (as defined in the Restructuring Support Agreement), solely in its capacity as such.

4351.    "*Convenience Claim Distribution*" means cash in the aggregate amount of $5002,600,000, which amount shall be used to make distributions to holders of Allowed General Unsecured Claims (x) each asserted in an amount less than or equal to $1,000,000, unless the holder has properly made the New Common Stock Election on a properly cast ballot, or (y) each asserted in an amount greater than $1,000,000, for which the holder has properly made the Convenience Claim Election on a properly cast ballot.

4452.    "*Convenience Claim Election*" means the election available to a holder of an Allowed General Unsecured Claim asserted in an amount greater than $1,000,000 to opt to receive its Pro Rata share of the Convenience Claim Distribution in full and complete satisfaction, discharge and release of such Allowed General Unsecured Claim; *provided*, that in making such election, the holder of such Allowed General Unsecured Claim has

agreed, to the extent such holder's Allowed General Unsecured Claim is for an amount greater than $1,000,000, to reduce the amount of such Allowed General Unsecured Claim for purposes of voting and distributions under the Plan to $1,000,000.

45~~53~~.    "*Convenience Class Claim*" means a General Unsecured Claim in Class 6, the holder of which, pursuant to Article III hereof, may be eligible to receive its Pro Rata share of the Convenience Claim Distribution in accordance with the terms of the Plan.

54.    "*Consummation*" means the occurrence of the Effective Date.

46~~55~~.    "*CPPIB*" means Canada Pension Plan Investment Board, a Canadian federal crown corporation.

47~~56~~.    "*Cure*" or "*Cure Claim*" means any Claim (unless waived or modified by the applicable counterparty) against a Debtor based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

48~~57~~.    "*Cure Notice*" means a notice sent to counterparties to an Executory Contract or Unexpired Lease in connection with the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease under the Plan pursuant to section 365 of the Bankruptcy Code, the form and substance of which notice shall be approved by the Disclosure Statement Order and shall include (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) the proposed amount to be paid on account of Cure Claims, and (c) procedures for resolution by the Bankruptcy Court of any related disputes; *provided that the Schedule of Assumed Executory Contracts and Unexpired Leases and any Amended Schedule of Assumed Executory Contracts and Unexpired Leases may each constitute a "Cure Notice" hereunder*.

49~~58~~.    "*D&O Liability Insurance Policies*" means all unexpired directors', managers', and officers' insurance policies (including any "tail policy") of any of the Debtors with respect to directors, managers, officers, and employees of the Debtors.

50~~59~~.    "*Debtor Release*" means the releases set forth in <u>Section 8.2</u> of this Plan.

51~~60~~.    "*Debtors*" means, collectively, each of the debtors in the above-captioned Chapter 11 Cases.

52~~61~~.    "*DIP Agent*" means Morgan Stanley Senior Funding, Inc., as administrative agent for the DIP Lenders and as collateral agent for itself and the DIP Lenders, solely in its capacities as such (together with its successors and permitted assigns in such capacities).

53~~62~~.    "*DIP Claim*" means any Claim against any Debtor held by any DIP Lender or the DIP Agent arising under or related to the DIP Facility or the DIP Documents, including Claims for all accrued and unpaid principal, interest, fees, expenses, costs, and other charges and amounts constituting "Obligations" (as defined in the DIP Credit Agreement).

54~~63~~.    "*DIP Credit Agreement*" means that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of June 2, 2017 (together with all exhibits, schedules and attachments thereto, as amended, restated, supplemented or otherwise modified from time to time in accordance with its terms), by and among Debtor 21C, as borrower, Debtor 21CH and certain other Debtors, as guarantors, the DIP Lenders, and the DIP Agent.

55~~64~~.    "*DIP Documents*" means the DIP Credit Agreement, the Interim DIP Order, the Final DIP Order, the other "Loan Documents" (as defined in the DIP Credit Agreement) and any related agreements, documents, certificates, instruments, exhibits and schedules delivered or executed from time to time in connection therewith, as amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof.

5665.    "*DIP Facility*" means that certain debtor-in-possession term loan credit facility in an aggregate principal amount not to exceed $75,000,000 provided by the DIP Lenders on the terms of, and subject to the conditions set forth in, the DIP Credit Agreement and the other DIP Documents.

5766.    "*DIP Lenders*" means, collectively, the banks, financial institutions and other Persons from time to time party to the DIP Credit Agreement as "Lenders" (as defined therein), solely in their capacity as such.

5867.    "*DIP Orders*" means the Interim DIP Order and the Final DIP Order, as applicable.

5968.    "*Disallowed*" means, with respect to a Claim or Interest, a Claim or Interest, or any portion thereof, that is (a) determined to be disallowed pursuant to a Final Order of the Bankruptcy Court or is deemed disallowed in accordance with the terms of the Plan or the Confirmation Order; (b) Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law; or (c) not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.  "*Disallow*", "*Disallowance*", "*Disallows*" and "*Disallowing*" shall have correlative meanings.

6069.    "*Disclosure Statement*" means the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates*, dated as of [____],August 13, 2017, as may be amended, supplemented, or otherwise modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, all of which shall be consistent in all material respects with the Restructuring Support Agreement and otherwise in form and substance reasonably acceptable to the Requisite Parties.

6170.    "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement and the Solicitation, which order shall be consistent in all material respects with the Restructuring Support Agreement and otherwise in form and substance reasonably acceptable to the Requisite Parties.

6271.    "*Disputed*" means, with respect to any Claim or Interest, or any portion thereof, a Claim or Interest that is not yet Allowed, including (a) any Claim evidenced by a Proof of Claim that, on its face, is contingent or unliquidated; (b) any Claim that is subject to an objection filed by the Claims Objection Deadline or a request for estimation, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court; (c) any Claim scheduled by the Debtors as contingent, unliquidated or disputed, (d) any Claim evidenced by a Proof of Claim which amends a Claim scheduled by the Debtors as contingent, unliquidated or disputed, and (e) any Claim or Interest that is not an Allowed Claim or Allowed Interest or a Disallowed Claim or a Disallowed Interest.

6372.    "*DTC*" means The Depositary Trust Company, its nominee, Cede & Co., or any Affiliate thereof.

6473.    "*Distribution Agent*" means, as applicable, the Reorganized Debtors or any Entity the Reorganized Debtors select to make or to facilitate distributions in accordance with the Plan.

6574.    "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, upon which the Distribution Agent shall make distributions to holders of Allowed Claims and Allowed Interests entitled to receive distributions under the Plan.

6675.    "*Effective Date*" means the date on which this Plan shall take effect, which date shall be the first Business Day after the Confirmation Date on which (ia) no stay of the Confirmation Order is in effect, and (iib) all conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of this Plan have been satisfied or waived in accordance with Section 9.2 of this Plan, which date shall be specified in a notice Filed by the Reorganized Debtors with the Bankruptcy Court.

6776.    "*Election Forms*" means the forms delivered to all holders of Claims or Interests that are not entitled to vote to accept or reject this Plan, which forms contain a mechanism by which such holders may opt out of the Third-Party Release.

77.    "*Eligible General Unsecured Claim*" means any General Unsecured Claim that is either Allowed or Disputed (each as defined in Section 4.8(c) hereof).

78.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

6879.    "*Equity Parties*" means CPPIB and the Vestar Funds.

6980.    "*Equity Put Option Shares*" means the put option payment to be paid by the Debtors to the Backstop Parties (or their designees), in the form of additional shares of New Preferred Equity with an aggregate initial liquidation value equal to $[_____],$5,625,000.00, on a pro rata basis based upon the Backstop Parties' respective Backstop Commitment Percentages, in consideration for the Debtors' right to cause the Backstop Parties to purchase the Unsubscribed Equity on the terms, but subject to the conditions and limitations, set forth in the Backstop Purchase Agreement.

7081.    "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

7182.    "*Exchanged Credit Facility Claims*" means the Allowed First Lien Claims that are exchanged by: (i) Rights Offering Participants for New Second Lien Notes in connection with the New Notes Rights Offering or (ii) Backstop Parties for New Second Lien Notes pursuant to the Backstop Purchase Agreement in connection with the New Notes Rights Offering.

7283.    "*Excluded Directors and Officers*" means the Debtors' and Reorganized Debtors' current and former directors and officers that do not fall within the meaning of Released Party, which Excluded Directors and Officers shall (x) be identified as part of the Plan Supplement, (y) be reasonably acceptable to the Requisite Backstop Parties, and (z) not include any current or former director of any Debtor that is, or was, employed by either Equity Party.

7384.    "*Exculpated Parties*" means each of the following: (i)(a) the Debtors, (b) the Reorganized Debtors, and (c) with respect to each of the foregoing parties in clauses (i)(a) and (i)(b), each of such Entity's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such, and only if serving in such capacity; and (ii)(a) the Backstop Parties; (b) the DIP Lenders; (c) the DIP Agent; (d) the Consenting MDL Lenders; (e) the MDL Agent; (f) the Consenting First Lien Lenders; (g) the First Lien Agent; (h) the Consenting Noteholders; (i) the Indenture Trustee; (j) the Equity Parties; (k) the Committee; (l) the members of the Committee (solely in their capacity as such) and (km) with respect to each of the foregoing Persons described in clauses (ii)(a) through (ii)(jl), each of such Person's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees (including, in the case of the Equity Parties, any current or former director of any Debtor that is, or was, employed by either Equity Party), agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such, and only if serving in such capacity; provided, however, that notwithstanding anything to the contrary herein, any Equity Party (and, to the extent related to any Equity Party, any Person described in clause (ii)(jm)) shall only constitute an Exculpated Party to the extent such Equity Party becomes a Restructuring Support Party, does not breach its obligations under the Restructuring Support Agreement, and does not terminate the Restructuring Support Agreement; provided, further that the Excluded Directors and Officers shall not constitute Exculpated Parties.

7485.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

~~75~~86.    "*Exit Facilities*" means, collectively, the:  (i) New First Lien Term Loan Credit Facility; (ii) ~~-~~New MDL Term Loan Facility; and (iii) ~~-~~New Second Lien Notes.

~~76~~87.    "*Exit Facility Documents*" means, collectively, the:  (i) New First Lien Term Loan Documents; (ii) ~~-~~New MDL Term Loan Documents; and (iii) New Second Lien Notes Documents.

~~77~~88.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent.

~~78~~89.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

~~79~~90.    "*Final DIP Order*" means the *Final Order: (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties and (D) Grant Adequate Protection to Prepetition Secured Parties; and (II) Granting Related Relief* [Docket No. 134].

~~80~~91.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended and is in full force and effect, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, that no order shall fail to be a Final Order solely due to the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rules 59 or 60 of the Federal Rules of Civil Procedure, or Rule 9024 of the Bankruptcy Rules may be filed with respect to such order.

~~81~~92.    "*First Lien Adequate Protection Payments*" means the adequate protection payments granted to the First Lien Lenders and the First Lien Agent pursuant to paragraphs 12(b)(i)-(ii) of the Final DIP Order.

~~82~~93.    "*First Lien Agent*" means Morgan Stanley Senior Funding, Inc., as administrative agent and collateral agent for the First Lien Lenders under the First Lien Credit Agreement and the other "Loan Documents" (as defined in the First Lien Credit Agreement), together with any successor thereto in such capacities.

~~83~~94.    "*First Lien Claim*" means any Claim against any Debtor arising on account of, or in connection with, any First Lien Obligations, the First Lien Credit Agreement, or any of the other "Loan Documents" (as defined in the First Lien Credit Agreement), including Claims for all accrued and unpaid principal, interest, fees, expenses, costs, and other charges and amounts constituting First Lien Obligations.

~~84~~95.    "*First Lien Credit Agreement*" means that certain Credit Agreement, dated as of April 30, 2015 (as amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date), by and among 21CH, 21C, as borrower, the First Lien Agent, and the First Lien Lenders.

~~85~~96.    "*First Lien Credit Facilities*" means, collectively, the term loan facility and the revolving loan facility provided by the First Lien Lenders under the First Lien Credit Agreement.

~~86~~97.    "*First Lien Lenders*" means the several banks and other financial institutions or entities from time to time party to the First Lien Credit Agreement as "Lenders" (as defined in therein), in their capacities as such.

~~87~~98.    "*First Lien Obligations*" means all "Obligations" as defined in the First Lien Credit Agreement.

~~88~~99.    "*General Unsecured Claim*" means any Claim against any Debtor that is not a Secured Claim, an Administrative Claim, a Professional Claim, a Priority Tax Claim, an Other Priority Claim, a Note Claim, a Section 510(b) Claim, or an Intercompany Claim, that is not otherwise paid in full during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court.

89100.    "*Global Prepayment*" has the meaning given to such term in Section 4.~~7~~8(a) hereof.

90101.    "*Governance Term Sheet*" means the Summary of Terms of New Organizational Documents attached as Exhibit 2 to the Restructuring Term Sheet (including any schedules, annexes, and exhibits attached thereto), as such agreement, schedules, annexes, and exhibits may be amended, supplemented, amended and restated or otherwise modified from time to time in accordance with the terms thereof.³

91102.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

92103.    "*Governmental Bar Date*" has the meaning given to such term in the Bar Date Order.

93104.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class consisting of Claims or Interests that are "impaired" within the meaning of section 1124 of the Bankruptcy Code.

94105.    "*Indemnification Provisions*" means each of the Debtors' indemnification provisions set forth, as of the Petition Date, in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, or contracts for the directors and officers of the Debtors, but solely as such indemnification provisions cover claims or losses arising out of acts or omissions that occur prior to the Effective Date incurred by Persons that are (a) directors and/or officers as of the Effective Date and (b) not Excluded Directors and Officers.

95106.    "*Indenture*" means that certain Indenture, dated as of April 30, 2015 (as amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date), for the Notes, by and among 21C, as issuer, each of the Guarantors (as defined therein) party thereto, and the Indenture Trustee, relating to the issuance by 21C of the Notes.

96107.    "*Indenture Trustee*" means Wilmington Trust, National Association, as trustee under the Indenture or any successor thereto in such capacity.

97108.    "*Indenture Trustee Charging Lien*" means ~~a~~any lien or other priority in payment that secures repayment of the Indenture Trustee Expenses, to the extent set forth in the Indenture or any ancillary documents, instruments or agreements.

98109.    "*Indenture Trustee Expenses*" means any reasonable and documented fees ~~and,~~ out-of-pocket costs and expenses, disbursements, advancements and indemnities, incurred by the Indenture Trustee whether prior to or after the Petition Date ~~by the Indenture Trustee~~ and whether prior to or after the Effective Date that are required to be paid or satisfied under the Indenture. ~~Such~~For the avoidance of doubt, such amounts shall include, but are not limited to, the reasonable, documented, out-of-pocket fees, costs and expenses of counsel to the Indenture Trustee actually incurred by the Indenture Trustee in connection with the Debtors' Chapter 11 Cases and the distributions to the Noteholders under the Plan.

99110.    "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

100111.    "*Intercompany Claim*" means any Claim held by a Debtor ~~[or a Non-Debtor Subsidiary]~~ against any Debtor.

10~~1~~12.    "*Intercompany Interest*" means an Interest in any Debtor held by another Debtor; *provided, however*, that the Interests in Debtor~~s~~ 21CH ~~owned or held by Debtor~~and 21CI shall not constitute Intercompany Interests but shall constitute, and be treated as, Class ~~10~~11 Interests.

102113. "*Interest*" means (a) any capital stock (including common stock and preferred stock), limited liability company interest, partnership interest, equity security (as defined in section 101(16) of the Bankruptcy Code) or other ownership, beneficial or profits interest of any Debtor, including, without limitation, the Series A

---

³    ~~NTD: This Exhibit to the Restructuring Term Sheet was not finalized at the time of filing.  Please provide current draft of Governance Term Sheet.~~

Preferred Stock, and (b) any option, warrant, security, stock appreciation right, phantom unit, incentive, commitment, call, redemption right, repurchase right or other agreement, arrangement or right of any kind that is convertible into, exercisable or exchangeable for, or otherwise permits any Person to acquire, any capital stock (including common stock and preferred stock), limited liability company interest, partnership interest or other equity security or other ownership, beneficial or profits interest of any Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

103114. "*Interim Compensation Order*" means the order entered by the Bankruptcy Court establishing procedures for the compensation of Professionals [Docket No. ——].233].

104115. "*Interim DIP Order*" means the *Interim Order: (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties and (D) Grant Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (III) Granting Related Relief* [Docket No. 31].

105116. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

106117. "*Management Incentive Plan*" means a post-Effective Date management incentive plan, the material terms of which shall be consistent with Section 4.2021 of this Plan.

107118. "*Management Incentive Plan Equity*" means the New Common Stock issued pursuant to the Management Incentive Plan (including upon exercise or conversion of any awards issued under the Management Incentive Plan) in accordance with Section 4.2021 of this Plan, which shall dilute all New Common Stock equally.

108119. "*MDL Adequate Protection Payments*" means the adequate protection payments granted to the MDL Lenders and the MDL Agent pursuant to paragraphs 12(a)(i)-(ii) of the Final DIP Order.

1209. "*MDL Agent*" means Wilmington Savings Fund Society, FSB, as administrative agent for the MDL Lenders and as collateral agent for itself and the MDL Lenders, solely in such capacities (together with its successors and assigns in such capacities).

1210. "*MDL Claim*" means any Claim against any Debtor arising on account of, or in connection with, any MDL Obligations, the MDL Facility Credit Agreement, or any other "Credit Documents" (as defined in the MDL Facility Credit Agreement), including Claims for all accrued and unpaid principal, interest, fees, expenses, costs, and other charges and amounts constituting MDL Obligations.

111122. "*MDL Debtors*" means, collectively, (i) Medical Developers, LLC, (ii) MD International Investments, LLC and (iii) with respect to each of the foregoing, any successor thereto, whether, by merger, consolidation, or otherwise, on and after the Effective Date, after giving effect to the Restructuring Transactions.

1123. "*MDL Facility*" means the senior secured delayed draw term loan credit facility in an aggregate principal amount of $35,000,000 provided pursuant to the MDL Facility Credit Agreement.

113124. "*MDL Facility Credit Agreement*" means that certain Amended and Restated Credit and Guaranty Agreement, dated as of March 6, 2017 (as amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date), by and among Debtor Medical Developers, LLC, as borrower, 21CH and certain of its Subsidiaries party thereto as "Guarantors" (as defined therein), the MDL Agent, and the MDL Lenders.

114125. "*MDL Lenders*" means the financial institutions and other Persons from time to time party to the MDL Facility Credit Agreement as "Lenders" (as defined therein), in their capacities as such.

115126. "*MDL Obligations*" means all "Obligations" as defined in the MDL Facility Credit Agreement.

11

116127.  "*New Board*" means Reorganized 21CH's initial board of directors as of the Effective Date.  The New Board shall consist of seven (7) directors that shall be appointed in accordance with the terms of the Governance Term Sheet.

117128.  "*New Common Stock*" means the common stock of Reorganized 21CH, consisting of (i) Class A Common Stock, par value $0.001 per share, which is voting stock, and (ii) Class B Common Stock, par value $0.001 per share, which is limited voting stock, in each case, to be issued on terms consistent in all material respects with the terms set forth in the Restructuring Term Sheet and otherwise reasonably acceptable to the Requisite Parties.

118129.  "*New Common Stock Election*" means the election available to a holder of an Allowed General Unsecured Claim asserted in an amount less than or equal to $1,000,000 to opt to receive its Pro Rata share of the New Common Stock Equity Pool (subject to dilution on account of the shares of New Common Stock issuable upon conversion of the New Preferred Equity, the shares of New Common Stock issuable upon exercise of the New Warrants, and the Management Incentive Plan Equity), in full and complete satisfaction, discharge and release of such Allowed General Unsecured Claim.

119130. "*New Common Stock Equity Pool*" means 100% of the New Common Stock issued and outstanding on the Effective Date to be distributed to the holders of Allowed Note Claims and Allowed General Unsecured Claims in accordance with Section 3.2(e) and Section 3.2(f) of this Plan, subject to dilution on account of the shares of New Common Stock issuable upon conversion of the New Preferred Equity, the shares of New Common Stock issuable upon exercise of the New Warrants, and the Management Incentive Plan Equity.

120131.  "*New Domestic Collateral*" means, as at any date of determination, all assets and property of the Reorganized 21C Debtors that would, if the First Lien Credit Agreement were in full force and effect at such time of determination, constitute "Collateral" for purposes of, and as defined in, the First Lien Credit Agreement and excluding, for the avoidance of doubt, all existing and future assets or property of the MDL Debtors or any of their direct or indirect Subsidiaries (including any and all property constituting New MDL Revolving Credit Facility Collateral).

1321.    "*New Domestic Revolving Credit Facility*" means a revolving loan credit facility in an aggregate principal amount not to exceed (i) $50,000,000 or (ii) $85,000,000 (provided, that, at least $35,000,000 of the proceeds of such amount shall be used solely to prepay obligations under the New MDL Term Loan Facility) incurred by the Reorganized 21C Debtors after the Effective Date, the indebtedness and other obligations under which credit facility may only be guaranteed by the Reorganized 21C Debtors and secured by the New Domestic Collateral (subject to such Lien priorities as are contemplated by the Exit Facility Documents); *provided*, that, such credit facility may only be incurred to the extent and in the manner permitted or not prohibited by the Exit Facility Documents.

122133. "*New First Lien Term Loan Agent*" means the financial institution or other Person appointed by a majority of the New First Lien Term Loan Lenders to act as administrative agent for the New First Lien Term Loan Lenders and as collateral agent for the New First Lien Term Loan Lenders and the other secured parties under the New First Lien Term Loan Credit Facility, or any successor thereto, solely in such capacities.

1234.    "*New First Lien Term Loan Credit Agreement*" means that certain credit agreement, dated on or about the Effective Date (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), by and among Reorganized 21C, as borrower, the other Reorganized 21C Debtors, as guarantors, the New First Lien Term Loan Lenders and the New First Lien Term Loan Agent, providing for the issuance of the New First Lien Term Loan Credit Facility, which New First Lien Term Loan Credit Agreement shall be (i) consistent in all material respects with the terms and conditions set forth in the Restructuring Term Sheet, and otherwise reasonably acceptable to the Requisite Parties and (ii) in form and substance substantially similar to the draft credit agreement Filed as an exhibit to the Plan Supplement or consistent in all material respects with the terms set forth in the term sheet relating to the New First Lien Term Loan Credit Facility Filed as an exhibit to the Plan Supplement, as applicable.

124135. "*New First Lien Term Loan Credit Facility*" means the first lien term loan credit facility in an aggregate original principal amount equal to the aggregate amount of First Lien Obligations outstanding as of

immediately prior to the Effective Date, minus the Exchanged Credit Facility Claims, which credit facility shall be provided to the Reorganized 21C Debtors on the terms set forth in the New First Lien Term Loan Credit Agreement, and the indebtedness and other obligations under which shall only be guaranteed by the Reorganized 21C Debtors and secured by the New Domestic Collateral (subject to such Lien priorities as are set forth in the New Intercreditor Agreement).

125136. "*New First Lien Term Loan Documents*" means, collectively, the New First Lien Term Loan Credit Agreement, the New Intercreditor Agreement, any guarantee, security or collateral agreement, deed of trust, mortgage, certificate, instrument, exhibit, schedule, related agreement, and other documentation entered into in connection with the New First Lien Term Loan Credit Facility or any obligations thereunder, each of which shall contain terms and conditions that are consistent in all material respects with the Restructuring Term Sheet and shall otherwise be in form and substance reasonably acceptable to the Requisite Parties.

126137. "*New First Lien Term Loan Lenders*" means, collectively, the banks, financial institutions and other Persons from time to time party to the New First Lien Term Loan Credit Agreement as lenders, solely in their capacity as such.

127138. "*New Intercreditor Agreement*" means that certain intercreditor agreement, dated on or about the Effective Date (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), by and among the Reorganized 21C Debtors, the New First Lien Term Loan Agent, the New MDL Term Loan Agent, the New Second Lien Notes Trustee and each other Person party thereto from time to time relating to, among other things, rights to the New Domestic Collateral, which New Intercreditor Agreement shall be consistent in all material respects with the Restructuring Term Sheet (including to the Lien priorities set forth in the "Intercreditor Arrangements" section of the Restructuring Term Sheet) and shall otherwise be in form and substance reasonably acceptable to the Requisite Parties.

128139. "*New MDL Revolving Credit Facility*" means a revolving loan credit facility in an aggregate principal amount not to exceed $10,000,000 incurred after the Effective Date by any MDL Debtor or any of their direct or indirect Subsidiaries, as borrower, the indebtedness and other obligations under which credit facility may be guaranteed by one or more of the MDL Debtors and/or any of their direct or indirect Subsidiaries, and secured on a first-priority basis by New MDL Revolving Credit Facility Collateral; *provided*, that, such credit facility may only be incurred to the extent and in the manner permitted or not prohibited by the Exit Facility Documents.

129140. "*New MDL Revolving Credit Facility Collateral*" means, as at any date of determination, all or substantially all assets and property (including all proceeds, products, profits and returns thereof) of the MDL Debtors and any of their direct or indirect Subsidiaries who are obligors under the New MDL Revolving Credit Facility, in each case, existing as of such date or acquired thereafter, including all property which would constitute "Collateral" for purposes of that certain Security Agreement, dated as of December 6, 2016 (as amended prior to, and as in effect on, the Petition Date), by and among the MDL Debtors, as grantors, and Wilmington Savings Fund Society, FSB, as collateral agent.

130141. "*New MDL Term Loan Agent*" means the financial institution or other Person appointed by a majority of the New MDL Term Loan Lenders to act as administrative agent for the New MDL Term Loan Lenders and as collateral agent for the New MDL Term Loan Lenders and the other secured parties under the New MDL Term Loan Facility, or any successor thereto, solely in such capacities.

131142. "*New MDL Term Loan Credit Agreement*" means that certain credit agreement, dated on or about the Effective Date (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), by and among Reorganized 21C, as borrower, the other Reorganized 21C Debtors, as guarantors, the New MDL Term Loan Lenders and the New MDL Term Loan Agent, providing for the issuance of the New MDL Term Loan Facility, which New MDL Term Loan Credit Agreement shall be (i) consistent in all material respects with the terms and conditions set forth in the Restructuring Term Sheet, and otherwise reasonably acceptable to the Requisite Parties and (ii) in form and substance substantially similar to the draft credit agreement Filed as an exhibit to the Plan Supplement or consistent in all material respects with the terms set forth in the term sheet relating to the New MDL Term Loan Credit Facility Filed as an exhibit to the Plan Supplement, as applicable.

13

1432.   "*New MDL Term Loan Facility*" means the term loan credit facility in an aggregate original principal amount equal to the aggregate amount of MDL Obligations outstanding as of immediately prior to the Effective Date, which shall be provided to the Reorganized 21C Debtors on the terms set forth in the MDL Credit Agreement, and the indebtedness and other obligations under which shall only be guaranteed by the Reorganized 21C Debtors and secured by the New Domestic Collateral (subject to such Lien priorities as are set forth in the New Intercreditor Agreement).

133144.   "*New MDL Term Loan Documents*" means the New MDL Term Loan Credit Agreement, the New Intercreditor Agreement, any guarantee, security or collateral agreement, deed of trust, mortgage, certificate, instrument, exhibit, schedule, related agreement, and other documentation entered into in connection with the New MDL Term Loan Facility or any obligations thereunder, each of which shall contain terms and conditions that are consistent in all material respects with the Restructuring Term Sheet and shall otherwise be in form and substance reasonably acceptable to the Requisite Parties.

1345.   "*New MDL Term Loan Lenders*" means, collectively, the banks, financial institutions and other Persons from time to time party to the New MDL Term Loan Credit Agreement as lenders, solely in their capacity as such.

135146.   "*New Notes Rights*" means the non-transferable, non-certificated rights to be issued to Rights Offering Participants pursuant to the New Notes Rights Offering in accordance with the New Notes Rights Offering Procedures.

136147.   "*New Notes Rights Offering*" means the notes rights offering to be conducted and consummated by Debtor 21C in connection with the Restructuring Transactions, in accordance with the New Notes Rights Offering Procedures, and backstopped by the Backstop Parties pursuant to the Backstop Purchase Agreement.

137148.   "*New Notes Rights Offering Amount*" means New Second Lien Notes in an aggregate original principal amount equal to $200,000,000.00.

138149.   "*New Notes Rights Offering Cash Amount*" means the aggregate amount of cash received by the Debtors from (x) Rights Offering Participants for New Second Lien Notes in the New Notes Rights Offering and (y) the Backstop Parties for New Second Lien Notes pursuant to the Backstop Purchase Agreement.

139150.   "*New Notes Rights Offering Procedures*" means the procedures governing the New Notes Rights Offering, which are attached as Exhibit BSchedule 13 to the Backstop Purchase Agreement, as approved by the Bankruptcy CourtDisclosure Statement Order.

140151.   "*New Organizational Documents*" means the certificates or articles of incorporation, bylaws, or such other applicable formation documents of each of the Reorganized Debtors21CH (including the "New Certificate of Incorporation" as defined in the Backstop Purchase Agreement, the New Stockholders Agreement and the New Registration Rights Agreement),) and any other Reorganized Debtor as may be determined by the Debtors and the Requisite Consenting Noteholders, each of which shall be consistent in all material respects with the terms and conditions set forth in the Governance Term Sheet and otherwise in form and substance reasonably acceptable to the Requisite Parties.

141152.   "*New Preferred Equity*" means the new series of convertible preferred stock to be issued by Reorganized 21CH on the Effective Date on terms consistent in all material respects with the terms set forth in the Restructuring Term Sheet and otherwise reasonably acceptable to the Requisite Parties.

142153.   "*New Preferred Equity Rights*" means the non-transferable, non-certificated rights to be issued to Rights Offering Participants pursuant to the New Preferred Equity Rights Offering and in accordance with the New Preferred Equity Rights Offering Procedures.

1543.   "*New Preferred Equity Rights Offering*" means the preferred equity rights offering to be conducted and consummated by Debtor 21CH in connection with the Restructuring Transactions, in accordance with the New

Preferred Equity Rights Offering Procedures, and backstopped by the Backstop Parties pursuant to the Backstop Purchase Agreement.

144155. "*New Preferred Equity Rights Offering Amount*" means New Preferred Equity with an aggregate initial liquidation value equal to $88,235,000.00.

1456. "*New Preferred Equity Rights Offering Cash Amount*" means the aggregate amount of cash received by the Debtors from (a) Rights Offering Participants for New Preferred Equity in the New Preferred Equity Rights Offering and (b) the Backstop Parties for New Preferred Equity pursuant to the Backstop Purchase Agreement.

146157. "*New Preferred Equity Rights Offering Procedures*" means the procedures governing the New Preferred Equity Rights Offering, which are attached as Exhibit ASchedule 14 to the Backstop Purchase Agreement, as approved by the Bankruptcy CourtDisclosure Statement Order.

147158. "*New Registration Rights Agreement*" means that certain registration rights agreement, effective as of the Effective Date, for the benefit of Persons that receive shares of New Common Stock and/or shares of New Preferred Equity under the Plan (including in the New Preferred Equity Rights Offering) or pursuant to the Backstop Purchase Agreement, providing for registration rights that are consistent in all material respects with the Governance Term Sheet and otherwise in form and substance reasonably acceptable to the Requisite Parties.

148159. "*New Revolving Credit Facilities*" means, collectively, the New Domestic Revolving Credit Facility and the New MDL Revolving Credit Facility.

149160. "*New Second Lien Notes*" means the senior secured second lien notes in an aggregate original principal amount equal to the New Notes Rights Offering Amount, which shall be secured by New Domestic Collateral (subject to such Lien priorities as are set forth in the New Intercreditor Agreement) and issued on the Effective Date by Reorganized 21C and guaranteed by the other Reorganized 21C Debtors on terms consistent in all material respects with the terms set forth in the Restructuring Term Sheet and otherwise reasonably acceptable to the Requisite Parties.

150161. "*New Second Lien Notes Documents*" means the New Second Lien Notes Indenture, the New Second Lien Notes, the New Intercreditor Agreement, any guarantee, security or collateral agreement, deed of trust, mortgage, certificate, instrument, exhibit, schedule, related agreement, and other documentation entered into in connection with the New Second Lien Notes Indenture or any obligations thereunder, each of which shall contain terms and conditions that are consistent in all material respects with the Restructuring Term Sheet and shall otherwise be in form and substance reasonably acceptable to the Requisite Parties.

151162. "*New Second Lien Notes Indenture*" means that certain indenture, dated on or about the Effective Date (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), by and among Reorganized 21C, as issuer, the other Reorganized 21C Debtors, as guarantors, and the New Second Lien Notes Trustee, providing for the issuance of the New Second Lien Notes, which New Second Lien Notes Indenture shall be (i) consistent in all material respects with the terms and conditions set forth in the Restructuring Term Sheet, and otherwise reasonably acceptable to the Requisite Parties and (ii) in form and substance substantially similar to the draft indenture Filed as an exhibit to the Plan Supplement or consistent in all material respects with the terms set forth in the term sheet relating to the New Second Lien Notes Filed as an exhibit to the Plan Supplement, as applicable.

152163. "*New Second Lien Notes Trustee*" means the financial institution or other Person appointed by holders of a majority of the New Second Lien Notes to act as trustee and/or collateral agent in connection with the New Second Lien Notes Indenture, or any successor thereto, solely in its capacity as such.

153164. "*New Stockholders Agreement*" means that certain stockholders agreement, effective as of the Effective Date, that shall contain terms and provisions that are consistent in all material respects with the Governance Term Sheet and shall otherwise be in form and substance acceptable to the Requisite Parties, to which

all Persons that receive New Common Stock and/or New Preferred Equity on the Effective Date will be required to become or will be deemed parties.

16~~5~~. "*New Warrants*" means the warrants to acquire shares of New Common Stock, which New Warrants are to be issued by the Reorganized 21CH on the Effective Date on terms consistent in all material respects with the terms set forth in the Restructuring Term Sheet and otherwise reasonably acceptable to the Requisite Parties.

~~155~~166. "*New Warrant Documents*" means the documents and certificates evidencing the New Warrants, which shall be consistent in all material respects with the terms and conditions set forth in the Restructuring Term Sheet and otherwise in form and substance reasonably acceptable to the Requisite Parties.

~~156.    "Non-Debtor Subsidiaries" means all of 21CH's Subsidiaries who are not Debtors in these Chapter 11 Cases.~~

~~157~~167. "*Non-Debtor Interest*" means an Interest in any Debtor held by a non-Debtor; *provided, however, that the Class B 21C, LLC Interests and the Interests in Debtors 21CH and 21CI shall not constitute Non-Debtor Interests but shall constitute, and shall be treated as, Class 10 Interests and Class 11 Interests, respectively.*

168. "*Non-Defaulting Backstop Party*" means each Backstop Party that does not default on its obligation to purchase Unsubscribed Equity and/or Unsubscribed Notes pursuant to the Backstop Agreement.

~~158~~169. "*Note Claim*" means any Claim against any Debtor arising on account of, or in connection with, the Note Obligations, the Notes, the Indenture or any other "Note Documents" (as defined in the Indenture), including Claims for all accrued and unpaid principal, interest, fees, expenses, costs, and other charges and amounts constituting Note Obligations.

~~159~~170. "*Note Obligations*" means all "Obligations" as defined in the Indenture.

~~160~~171. "*Noteholders*" means the beneficial owners (or nominees, investment managers, advisors or subadvisors for the beneficial owners) of the Notes, solely in their capacity as such.

~~161~~172. "*Notes*" means the 11.00% Senior Notes due 2023 issued by 21C pursuant to the Indenture.

~~162~~173. "*Notes Put Option Shares*" means the put option payment to be paid by the Debtors to the Backstop Parties (or their designees), in the form of additional shares of New Preferred Equity with an aggregate initial liquidation value equal to $~~[_____]~~, $15,000,000.00, on a pro rata basis based upon the Backstop Parties' respective Backstop Commitment Percentages, in consideration for the Debtors' right to cause the Backstop Parties to purchase the Unsubscribed Notes on the terms, but subject to the conditions and limitations, set forth in the Backstop Purchase Agreement.

~~163~~174. "*Notice and Claims Agent*" means Kurtzman Carson Consultants LLC, the notice and claims agent retained by the Debtors in the Chapter 11 Cases pursuant to the order entered by the Bankruptcy Court on May 26, 2017 [Docket No. 37].

~~164~~175. "*Other Priority Claim*" means any Claim against any Debtor other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

17~~6~~. "*Other Secured Claim*" means any Secured Claim against any Debtor other than the following:  (a) a First Lien Claim; (b) an MDL Claim; or (c) a DIP Claim.  For the avoidance of doubt, a Secured Tax Claim constitutes an Other Secured Claim.

~~166~~177. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code, as modified to include a limited liability company, business trust, joint stock company, trust, unincorporated association, joint

16

venture or other entity of whatever nature to the extent not otherwise expressly excluded from the definition of "person" in section 101(41) of the Bankruptcy Code.

167**8**.    "*Petition Date*" means May 25, 2017, the date on which each of the Debtors filed its respective petition for relief commencing the Chapter 11 Cases.

168**179**. "*Plan*" means this joint chapter 11 plan (including the Plan Supplement), together with all exhibits, schedules and attachments thereto, as each may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules, and the Restructuring Support Agreement, which Plan shall be consistent in all material respects with the terms set forth in the Restructuring Term Sheet and otherwise reasonably acceptable to the Requisite Parties.

169**180**. "*Plan Supplement*" means the compilation of documents, schedules, term sheets and exhibits relevant to the implementation of the Plan (including forms thereof, each as may be amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules, and the Restructuring Support Agreement), each of which shall contain terms and conditions that are consistent in all material respects with the terms of the Restructuring Support Agreement and the Restructuring Term Sheet and otherwise be in form and substance reasonably satisfactory to the Requisite Parties, to be Filed by the Debtors no later than 14 days before the Confirmation Hearing, including the following, as applicable:  (a) the draft New First Lien Term Loan Credit Agreement (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New First Lien Term Loan Credit Facility); (b) the New MDL Term Loan Credit Agreement (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New MDL Term Loan Facility); (c) the New Second Lien Notes Indenture (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New Second Lien Notes); (d) the New Warrant Documents (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New Warrants); (e) the New Organizational Documents; (f) a list of retained Causes of Action; (g) ~~the~~ Schedule of Assumed Executory Contracts and Unexpired Leases; (h) the Schedule of Rejected Executory Contracts and Unexpired Leases; (i) the schedule of Excluded Directors and Officers; (~~i~~j) the New Intercreditor Agreement (or, in the absence thereof, a term sheet setting forth the terms and conditions governing the New Intercreditor Agreement); ~~and (j~~(k) the identities of the members of the New Board and the officers of the Reorganized Debtors (to the extent known); (l) the schedule of Specified Directors and Officers; and (m) any and all other documentation necessary to effectuate the Restructuring Transactions.

170**181**. "*Prepetition Agents*" means, collectively, the MDL Agent, the First Lien Agent and the Indenture Trustee.

171**182**. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code against any Debtor.

172**183**. "*Pro Rata*" means the proportion that (a) an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, ~~or~~(b) with respect to the New Common Stock Equity Pool, an Allowed Claim in Class 5 or an Allowed Claim in Class 6 (but only if the holder of such Allowed Claim in Class 6 receives shares of the New Common Stock Equity Pool on account of such Allowed Claim in Class 6 in accordance with the terms of this Plan) bears to the aggregate amount of all Allowed Claims in Class 5 and Allowed Claims in Class 6 (but only including Allowed Claims in Class 6 that holders of such Allowed Claims in Class 6 receive shares of the New Common Stock Equity Pool on account of such Allowed Claims in Class 6 in accordance with the terms of this Plan~~).~~), or (c) with respect to the Convenience Claim Distribution, an Allowed Claim in Class 6 (but only if the holder of such Allowed Claim in Class 6 receives Cash from the Convenience Claim Distribution on account of such Allowed Claim in Class 6 in accordance with the terms of this Plan) bears to the aggregate amount of all Allowed Claims in Class 6 (but only including Allowed Claims in Class 6 that holders of such Allowed Claims in Class 6 receive Cash from the Convenience Claim Distribution on account of such Allowed Claims in Class 6 in accordance with the terms of this Plan).

173**184**. "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered after the Petition Date and prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the

Bankruptcy Code, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code, in either case excluding any ordinary course professionals retained pursuant to the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [Docket. No. ~~].~~232].

~~174~~185.  "*Professional Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals (in any such case) on or after the Petition Date through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Claim.

~~175~~186.  "*Professional Fee Amount*" means the aggregate amount of Professional Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors on or after the Petition Date and prior to and as of the Effective Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court, which estimates the Professionals shall deliver to the Debtors as set forth in <u>Section 2.3</u> of this Plan.

18~~76~~.  "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount as set forth in <u>Section 2.3</u> of this Plan.

~~177~~188.  "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases (as may be amended and supplemented from time to time in accordance with the Bar Date Order, the Bankruptcy Code and the Bankruptcy Rules).

~~178~~189. "*Questionnaire Deadline*" means November 6, 2017.

190.  "*Reinstated*" or "*Reinstatement*" means, with respect to any Claim of Interest, the treatment provided for in section 1124 of the Bankruptcy Code.

17~~9~~1.  "*Rejection Damages Bar Date*" has the meaning given to such term in the Bar Date Order.

~~180~~192. "*Related Parties*" means, with respect to any Person, such Person's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees (including, in the case of the Equity Parties, any current or former director of any Debtor that is, or was, employed by either Equity Party), agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such.

~~181~~193. "*Released Parties*" means each of the following: (i)(a) the Debtors, (b) the Reorganized Debtors, and (c) with respect to each of the foregoing parties in clauses (i)(a) and (i)(b), each of such Entity's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such, and only if serving in such capacity; and (ii)(a) the Backstop Parties; (b) the DIP Lenders; (c) the DIP Agent; (d) the Consenting MDL Lenders; (e) the MDL Agent; (f)- the Consenting First Lien Lenders; (g) the First Lien Agent; (h) the Consenting Noteholders; (i) the Indenture Trustee; (j) the Equity Parties; (k) the Committee; (l) members of the Committee (solely in their capacity as such); and (~~k~~m) with respect to each of the foregoing Persons described in clauses (ii)(a) through (ii)(~~j~~l), each of such Person's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees (including, in the case of the Equity Parties, any current or former director of any Debtor that is, or was, employed by either Equity Party), agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such, and only if serving in such capacity; <u>provided</u>, <u>however</u>, that notwithstanding anything to the contrary herein, any Equity Party (and, to the extent related to any Equity Party, any Person described in clause (ii)(~~k~~m)) shall only constitute a Released Party to the extent such Equity Party becomes a Restructuring Support

Party, does not breach its obligations under the Restructuring Support Agreement, and does not terminate the Restructuring Support Agreement; <u>provided</u>, <u>further</u> that the Excluded Directors and Officers, other than the Specified Directors and Officers, shall not constitute Released Parties.

182194. "*Releasing Parties*" means collectively, and in each case solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Backstop Parties; (d) the DIP Lenders; (e) the DIP Agent; (f) the Consenting MDL Lenders; (g) the MDL Agent; (h) the Consenting First Lien Lenders; (i) the First Lien Agent; (j) the Consenting Noteholders; (k) the Indenture Trustee; (l) the Equity Parties; (m) the Committee; (n) the members of the Committee; (o) all holders of Claims and Interests that are presumed to accept the Plan; (n and do not opt out of the Third-Party Release on their respective Election Forms; (p) all holders of Claims and Interests that are presumed to reject the Plan and do not opt out of the Third-Party Release on their respective Election Forms; (q) all holders of Claims or Interests entitled to vote on the Plan who either (1) vote to accept the Plan or (2) receive a ballot but abstain from voting on the Plan; (or) all holders of Claims and Interests entitled to vote on the Plan who vote to reject the Plan but do not elect on their ballot to opt-out of the Third-Party Release; (ps) all Rights Offering Participants that participate in the Rights Offerings; (qt) all other holders of Claims and Interests to the fullest extent permitted by law; and (r) u) with respect to the foregoing clauses (a) through (qt), each of such Person's current and former Affiliates, partners, Subsidiaries, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns, in each case in their capacity as such.

183195. "*Reorganized 21C*" means 21C, or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date, after giving effect to the Restructuring Transactions.

184196. "*Reorganized 21C Debtors*" means the Debtors that were borrowers, guarantors, or obligors under the First Lien Credit Facilities, or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date, after giving effect to consummation of the Restructuring Transactions.

185197. "*Reorganized 21CH*" means 21CH, or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date, after giving effect to consummation of the Restructuring Transactions.

1986. "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the Effective Date, after giving effect to consummation of the Restructuring Transactions.

187199. "*Requisite Backstop Parties*" means, as of any date of determination, Non-Defaulting Backstop Parties as of such date that are Specified Backstop Parties whose aggregate Backstop Commitment Percentages constitute more than 66-2/3% of the aggregate Backstop Commitment Percentages of all Non-Defaulting Backstop Parties as of such date that are Specified Backstop Parties; *provided, however*, that for purposes of approving or consenting to any amendment, supplement or other modification to, or any waiver of, any of the provisions set forth in Section 8.1 of the Backstop Purchase Agreement, the term "Requisite Backstop Parties" means, as of any date of determination, Non-Defaulting Backstop Parties as of such date that are Specified Backstop Parties whose aggregate Backstop Commitment Percentages constitute more than 75.0% of the aggregate Backstop Commitment Percentages of all Non-Defaulting Backstop Parties of such date that are Specified Backstop Parties.

188200. "*Requisite Consenting First Lien Lenders*" means, as of any date of determination, the Consenting First Lien Lenders (other than the Specified Backstop Parties (as defined in the Restructuring Support Agreement))) who own or control as of such date at least a majority of the aggregate principal amount of all First Lien Lender Claims owned or controlled by all of the Consenting First Lien Lenders (other than the Specified Backstop Parties) as of such date.

189201. "*Requisite Consenting Noteholders*" means, as of any date of determination, the Consenting Noteholders who own or control as of such date at least a majority of the aggregate principal amount of all Note Claims owned or controlled by all of the Consenting Noteholders as of such date.

190202. "*Requisite Parties*" means the Debtors and the Requisite Backstop Parties; *provided*, *however*, that in the context of whether a Restructuring Document is acceptable (including reasonably acceptable) to the Requisite Parties, to the extent such Restructuring Document contains provisions that are (i) not addressed in the Restructuring Support Agreement or (ii) not consistent with the terms of the Restructuring Support Agreement, then the term "*Requisite Parties*" shall also include (x) the Requisite Consenting First Lien Lenders to the extent (and solely to the extent) such provisions materially and adversely affect the treatment of the First Lien Claims under the Plan or the releases to be received by the Consenting First Lien Lenders and their respective Related Parties under the Plan, (y) the Requisite Consenting Noteholders to the extent (and solely to the extent) such provisions materially and adversely affect the treatment of the Notes Claims under the Plan or the releases to be received by the Consenting Noteholders or any of their respective Related Parties under the Plan, and (z) the Equity Parties to the extent (and solely to the extent) such provisions materially and adversely affect the treatment of the Interests under the Plan or the releases to be received by the Equity Parties or any of their respective Related Parties under the Plan; *provided*, *further* that if the Restructuring Support Agreement (including the Restructuring Term Sheet) otherwise provides that a Restructuring Document must be acceptable (including reasonably acceptable) to a specified Person or group of Persons (other than the Requisite Parties), then such Restructuring Document need only be acceptable (or reasonably acceptable) to such specified Person or group of Persons and not the Requisite Parties.

191203. "*Restructuring Documents*" means all agreements, instruments, pleadings, orders, forms, questionnaires and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to, the Restructuring Support Agreement, any of the Rights Offerings, the Plan and/or the Restructuring Transactions, including, but not limited to, (i) the Backstop Purchase Agreement, the Backstop Approval Motion and the Backstop Order, (ii) the New MDL Term Loan Documents, the New First Lien Term Loan Documents and the New Second Lien Notes Documents, (iii) the Plan and the Plan Supplement, (iv) the Disclosure Statement and any motion seeking the approval thereof, (v) the Disclosure Statement Order, (vi) the Confirmation Order, (vii) any "first day" motions, (viii) the ballots, the motion to approve the form of the ballots and the Solicitation, and the order of the Bankruptcy Court approving the form of the ballots and the Solicitation, (ix) the DIP Documents and the DIP Orders, (x) the New Organizational Documents, (xi) the New Warrant Documents, and (xii) any documentation relating to the use of cash collateral, distributions provided to the holders of any Claims and Interests, the Rights Offerings (including the Rights Offering Procedures) or other related documents, each of which shall contain terms and conditions that are consistent in all material respects with the Restructuring Support Agreement and shall otherwise be in form and substance reasonably acceptable to the Requisite Parties.

192204. "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of May 25, 2017, by and among the Debtors and the Restructuring Support Parties, including all exhibits, schedules and attachments thereto, as such agreement, exhibits, schedules and attachments may be amended, supplemented, amended and restated or otherwise modified from time to time in accordance with the terms thereof, a copy of which is attached as Exhibit [    ] to the Disclosure Statement.B to the *Declaration of Paul Rundell (I) In Support of First Day Motions and (II) Pursuant to Local Rule 1007-2 [Docket No. 16].*  For the avoidance of doubt, any reference to the Restructuring Support Agreement shall be deemed to include the Restructuring Term Sheet.

193205. "*Restructuring Support Parties*" means, collectively, the Debtors, the Consenting Noteholders, the Consenting First Lien Lenders, the Consenting MDL Lenders, and the Equity Parties, in each case, that are party to the Restructuring Support Agreement.

194206. "*Restructuring Term Sheet*" means the term sheet attached as Exhibit A to the Restructuring Support Agreement (including any schedules, annexes, and exhibits attached thereto), as such agreement, schedules, annexes, and exhibits may be amended, supplemented, amended and restated or otherwise modified from time to time in accordance with the terms thereof, setting forth the material terms and conditions of the Restructuring Transactions.

195207. "*Restructuring Transactions*" means, collectively, the transactions necessary or desirable to effectuate the comprehensive restructuring of the existing debt and other obligations of, and the existing Interests in, the Debtors to be consummated pursuant to the Plan, as described in or contemplated by the Restructuring Support Agreement and the other Restructuring Documents.

196208. "*Rights Forfeiture Event*" has the meaning given to such term in Section 4.8 hereof.

.        "*Rights Offering Participants*" means the holders of Allowed Note Claims as of [___], 2017, each of whom is an Accredited Investor and has completed and delivered to the subscription agent a customary accredited investor questionnaire pursuant to the Rights Offering Procedures.

209.        "*Rights Offering*

197.        "*Rights Offering ProceduresConditions*" means, collectively, the Notes Rights Offering Conditions (as defined in the New Notes Rights Offering Procedures), the Equity Rights Offering Conditions (as defined in the New Preferred Equity Rights Offering Procedures) and the Additional Conditions (as defined in each of the New Notes Rights Offering Procedures and the New Preferred Equity Rights Offering Procedures).

198210. "*Rights Offering Participant*" means each holder of an Eligible General Unsecured Claim or an Allowed Note Claim as of the Rights Offering Record Date that is an Accredited Investor (as demonstrated by an AI Questionnaire that has been properly completed, duly executed and timely delivered by such holder to the subscription agent on or before the Questionnaire Deadline in accordance with the Rights Offering Procedures).

211.        "*Rights Offering Procedures*" means, collectively, the New Notes Rights Offering Procedures and the New Preferred Equity Rights Offering Procedures.

212.        "*Rights Offerings*" means, collectively, the New Notes Rights Offering and the New Preferred Equity Rights Offering.

199213. "*Rights Offering Record Date*" means October 16, 2017.

214.        "*Rights Offering Termination Time*" means 5:00 p.m. (New York City time) on November 29, 2017.

215.        "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with any applicable official bankruptcy forms, as the same may have been amended, modified, or supplemented from time to time.

200216. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, Filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtors from time to time prior to the Confirmation Date, which Schedule of Assumed Executory Contracts and Unexpired Leases shall be subject to the consent of the Requisite Backstop Parties, which consent shall not be unreasonably withheld.

2017. "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, Filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtors from time to time prior to the Confirmation Date, which Schedule of Rejected Executory Contracts and Unexpired Leases shall be subject to the consent of the Requisite Backstop Parties, which consent shall not be unreasonably withheld.

202218. "*Section 510(b) Claim*" means any Claim against any Debtor arising from the rescission of a purchase or sale of a Security of any Debtor or any Affiliate of any Debtor, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

203219. "*Secured Claim*" means any Claim against any Debtor:  (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in an Estate's interest in such property or to the extent of the amount subject to

setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

220. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

205221. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as in effect or as amended, and the rules and regulations of the United States Securities and Exchange Commission promulgated thereunder, or any similar federal, state, or local law.

206222. "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

207223. "*Series A Preferred Stock*" means all shares of preferred stock, par value $0.001 per share, of 21CH designed as "Series A Convertible Preferred Stock" pursuant to the terms of the Amended and Restated Certificate of Designations of Series A Convertible Preferred Stock filed by 21CH with the Delaware Secretary of State on September 8, 2016.

208224. "*Servicer*" means an agent or other authorized representative of holders of Claims or Interests, including, for the avoidance of doubt, the DIP Agent, the MDL Agent, the First Lien Agent, and the Indenture Trustee.

209225. "*Solicitation*" means the solicitation of votes in connection with the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code and the applicable procedures approved by the Bankruptcy Court and set forth in the Disclosure Statement Order.

210226. "*Solicitation Deadline*" means the date that is seven (7) Business Days following entry of the Disclosure Statement Order.

227. "*Specified Backstop Parties*" means collectively, the Backstop Parties other than the certain funds, accounts or investment vehicles party to the Backstop Purchase Agreement that are managed or advised by, or are Affiliates of, HPS Investment Partners, LLC.

211228. "*Specified Directors and Officers*" means certain specified current and former directors and officers of the Debtors and Reorganized Debtors that fall within the meaning of Released Party, which Specified Directors and Officers shall be (x) identified as part of the Plan Supplement and (y) acceptable to the Requisite Backstop Parties.

229. "*Subsidiary*" means, as of any time of determination and with respect to any specified Person, (i) any corporation more than fifty percent (50%) of the voting or capital stock of which is, as of such time, directly or indirectly owned by such Person, (ii) any limited liability company, partnership, limited partnership, joint venture, association, or other Entity in which such Person, directly or indirectly, owns more than fifty percent (50%) of the equity economic interest thereof, or (iii) any corporation, limited liability company, partnership, limited partnership, joint venture, association, or other Entity in which such Person, directly or indirectly, has the power to elect or direct the election of more than fifty percent (50%) of the members of the board of directors, board of managers, managing member, general partner or similar governing body of such Entity as of such time.

212230. "*Third-Party Release*" means the releases set forth in Section 8.3 of this Plan.

231. "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of New York.

214232. "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

215233. "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

216234. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

217235. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class consisting of Claims or Interests that are not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

218236. "*Unsubscribed Equity*" means the New Preferred Equity offered for sale in the New Preferred Equity Rights Offering that is not subscribed for by the Rights Offering Participants by the ~~twentieth (20th) calendar day (or if such day is not a Business Day, the next Business Day) after the commencement of the New Preferred Equity Rights Offering and otherwise in compliance with the New Preferred Equity Rights Offering Procedures, including shares of New Preferred Equity that holders of Allowed Note Claims as of the applicable record date who are not Accredited Investors could have purchased if such holders exercised their respective New Preferred Equity Rights in the New Preferred Equity Rights Offering~~Rights Offering Termination Time in accordance with the terms of the New Preferred Equity Rights Offering Procedures.

219237. "*Unsubscribed Notes*" means New Second Lien Notes offered for sale in the New Notes Rights Offering that are not subscribed for by Rights Offering Participants by the ~~twentieth (20th) calendar day (or if such day is not a Business Day, the next Business Day) after the commencement of the New Notes Rights Offering and otherwise in compliance with the New Notes Rights Offering Procedures, including  New Notes that holders of Allowed Note Claims as of the applicable record date who are not Accredited Investors could have purchased if such holders exercised their respective New Notes Rights in the New Notes Rights Offering~~Rights Offering Termination Time in accordance with the terms of the New Notes Rights Offering Procedures.

220238. "*Unsubscribed Securities*" means collectively, the Unsubscribed Equity and Unsubscribed Notes.

221239. "*Vestar Funds*" means, collectively, (i) Vestar Capital Partners V, L.P., a Cayman Islands exempted limited partnership, (ii) Vestar Capital Partners V-A, L.P., a Cayman Islands exempted limited partnership, (iii) Vestar Executives V, L.P., a Cayman Islands exempted limited partnership, (iv) Vestar Holdings V, L.P., a Cayman Islands exempted limited partnership, and (v) Vestar/Radiation Therapy Investments, LLC, a Delaware limited liability company.

## 1.2    Rules of Interpretation

For purposes of the Plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system;

(j)  references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (l) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

## 1.3     Computation of Time

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

## 1.4     Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict of laws principles.

## 1.5     Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## 1.6     Reference to the Debtors or the Reorganized Debtors

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

## 1.7     Controlling Document

In the event of an inconsistency between the Plan, the Disclosure Statement and the Restructuring Support Agreement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control (unless otherwise stated in such Plan Supplement document or in the Confirmation Order).  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of this Plan.

## 2.1     Administrative Claims

Except to the extent that a holder of an Allowed Administrative Claim (other than holders of Professional Claims, DIP Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment for such Allowed Administrative Claim (in each case with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld), each holder of an Allowed Administrative Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Administrative Claim an amount of Cash equal to the unpaid portion of such Allowed Administrative Claim either:  (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the

Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, when such Allowed Administrative Claim is due or as soon thereafter as reasonably practicable); (b) if such Administrative Claim is not Allowed as of the Effective Date, unless otherwise agreed in writing by the holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim (for the avoidance of doubt, holders of such Allowed Administrative Claims shall not be required to fFile a request for payment of such Allowed Administrative Claim as provided in the second paragraph of this Section 2.1 of this Plan); (d) at such time and upon such terms as may be agreed upon in writing by the holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, in consultation with the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders; or (e) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except as otherwise provided in this Section 2.1 of this Plan, and except with respect to Administrative Claims that are DIP Claims, Professional Claims, or Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code, requests for payment of Administrative Claims must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, and the requesting party no later than 60 days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

Notwithstanding any provision to the contrary in the Plan, Governmental Units shall not be required to file a request for the payment of an expense described in section 503(b)(1)(B) or (C) of the Bankruptcy Code as a condition of it being Allowed as an Administrative Claim.

## 2.2    DIP Claims

The DIP Claims shall be deemed to be Allowed Secured Claims and superpriority Administrative Claims in the full amount due and owing under the DIP Facility as of the Effective Date. In full and final satisfaction, settlement, release, and discharge of and in exchange for each DIP Claim, the unpaid portion of each DIP Claim will be paid in full in Cash to the holder of such DIP Claim on the Effective Date, funded from Cash on hand and the New Preferred Equity Rights Offering Cash Amount.

## 2.3    Professional Claims

All requests for payment of Professional Claims must be Filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Interim Compensation Order and the Bankruptcy Code. The Reorganized Debtors shall pay Professional Claims in Cash in the amount the Bankruptcy Court Allows following entry of an order by the Bankruptcy Court Allowing such Professional Claims, including from the funds in the Professional Fee Escrow Account.

On the Effective Date, the Reorganized Debtors shall establish the Professional Fee Escrow Account in trust for the Professionals and fund it with Cash equal to the Professional Fee Amount. Professionals shall estimate in good faith their unpaid Professional Claims through the Effective Date and shall deliver such good faith estimates to the Debtors no later than five Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims fFiled with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors may, in consultation with the Requisite Backstop Parties, estimate the unpaid and

unbilled fees and expenses of such Professional.  No funds in the Professional Fee Escrow Account shall be property of the Estates.  Any funds remaining in the Professional Fee Escrow Account after all Allowed Professional Claims have been paid will be turned over to the Reorganized Debtors.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## 2.4    Priority Tax Claims

In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, except to the extent that a holder of an Allowed Priority Tax Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing to less favorable treatment for such Allowed Priority Tax Claim (in each case with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld), each holder of ~~an Allowed Priority Tax Claim shall receive treatment in accordance with section 1129(a)(9) of the Bankruptcy Code.~~ such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Reorganized Debtors and the holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

## 2.5    Statutory Fees

All fees due and payable pursuant to section 1930 of title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay the U.S. Trustee Fees until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE III

### CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

## 3.1    Classification of Claims and Interests

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in Article II of this Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors (*i.e.*, there will be ~~10~~12 Classes for each Debtor); *provided*, that any Class that is vacant as to a particular Debtor will be treated in accordance with Section 3.4 below.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 3 | MDL Claims | Impaired | Entitled to Vote |
| 4 | First Lien Claims | Impaired | Entitled to Vote |
| 5 | Note Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote |
| 8 | Section 510(b) | Impaired | Presumed to Reject |
| 9 | Intercompany Interests | Unimpaired~~Impaired~~ | ~~Not Entitled~~Presumed to ~~Vote~~Accept |
| 10 | Class B 21C, LLC Interests | Unimpaired | Presumed to Accept |
| ~~10~~11 | Interests in 21CH and 21CI | Impaired | Entitled to Vote |
| 12 | Non-Debtor Interests | Impaired | Presumed to Reject |

**3.2     Treatment of Classes of Claims and Interests**

Except to the extent that the Debtors or the Reorganized Debtors, as applicable, and a holder of an Allowed Claim or Allowed Interest, as applicable, agree in writing to less favorable treatment for such Allowed Claim or Allowed Interest, as applicable (in each case with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld), such holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest.  Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon thereafter as reasonably practicable.

(a)     **Class 1 — Other Secured Claims**

(1)     *Classification*:  Class 1 consists of all Other Secured Claims.

(2)     *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld) agree in writing to less favorable treatment of its Allowed Other Secured Claim, each holder of an Allowed Other Secured Claim shall receive, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Other Secured Claim, the following, as determined by the Debtors or the Reorganized Debtors, as applicable, in each case with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld:

(A)     payment in full, in Cash, of the unpaid portion of its Allowed Other Secured Claim on the following:  (i) if such Allowed Other Secured Claim is Allowed as of the Effective Date, the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, the date such Allowed Other Secured Claim becomes due and payable, or as soon thereafter as is reasonably practicable); and (ii) if such Allowed Other Secured Claim is not Allowed as of the Effective Date, the date such Other Secured Claim is Allowed or as soon as reasonably thereafter practicable;

(B)     reinstatement pursuant to section 1124 of the Bankruptcy Code; or

> (C)   such other treatment that would render its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(3)   *Voting*: Class 1 is Unimpaired. Holders of Allowed Other Secured Claims in Class 1 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Other Secured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

**(b)    Class 2 — Other Priority Claims**

(1)   *Classification*:  Class 2 consists of all Other Priority Claims.

(2)   *Treatment*:  Except to the extent that a holder of an Allowed Other Priority Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld), agree in writing to less favorable treatment of its Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Other Priority Claim, payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the following:  (i) if such Allowed Other Priority Claim is Allowed as of the Effective Date, the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, the date such Allowed Other Priority Claim becomes due and payable, or as soon thereafter as is reasonably practicable); and (ii) if such Allowed Other Priority Claim is not Allowed as of the Effective Date, the date such Other Priority Claim is Allowed or as soon thereafter as reasonably practicable.

(3)   *Voting*:  Class 2 is Unimpaired. Holders of Allowed Other Priority Claims in Class 2 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Other Priority Claims in Class 2 are not entitled to vote to accept or reject the Plan.

**(c)    Class 3 — MDL Claims**

(1)   *Classification*:  Class 3 consists of all MDL Claims.

(2)   *Allowance*: The MDL Claims ~~shall be~~are Allowed as set forth in the Final DIP Order, including for the avoidance of doubt any MDL Claims for postpetition interest at the non-default rate set forth in the MDL Facility Credit Agreement.

(3)   *Treatment*: Except to the extent that a holder of an Allowed MDL Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld) agree in writing to less favorable treatment of its Allowed MDL Claim, on the Effective Date or as soon thereafter as reasonably practicable, each holder of an Allowed MDL Claim shall receive, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed MDL Claim, the following:

> (A)    its Pro Rata share of loans provided under the New MDL Term Loan Facility in an aggregate principal amount equal to (i) the aggregate amount of MDL Obligations owned or held by such holder as of immediately prior to the Effective Date <u>minus</u> (ii) the unpaid portion of its Allowed MDL Adequate Protection Payments; and

> (B)    payment in full in Cash of the unpaid portion of its Allowed MDL Adequate Protection Payments.

(4)     *Voting*:  Class 3 is Impaired.  Holders of Allowed MDL Claims in Class 3 are entitled to vote to accept or reject the Plan.

**(d)     Class 4 — First Lien Claims**

(1)     *Classification*:  Class 4 consists of all First Lien Claims.

(2)     *Allowance*:  The First Lien Claims ~~shall be~~are Allowed as set forth in the Final DIP Order, including for the avoidance of doubt any First Lien Claims for postpetition interest at the non-default rate set forth in the First Lien Credit Agreement.

(3)     *Treatment*:  Except to the extent that a holder of an Allowed First Lien Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld) agree to less favorable treatment of its Allowed First Lien Claim, on the Effective Date or as soon thereafter as reasonably practicable, each holder of an Allowed First Lien Claim, shall receive in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed First Lien Claim, the following:

(A)     loans provided under the New First Lien Term Loan Credit Facility in an aggregate principal amount equal to (i) the aggregate amount of First Lien Obligations owned or held by such holder as of immediately prior to the Effective Date, <u>minus</u> (ii) the Exchanged Credit Facility Claims of such holder; *provided*, *however*, that no distributions shall be made on any of the Exchanged Credit Facility Claims, ~~minus (iii)~~ <u>other than on account of all accrued and unpaid interest on such Exchanged Credit Facility Claims as of the Effective Date (if any), minus (iii)</u> the unpaid portion of its Allowed First Lien Adequate Protection Payments; and

(B)     payment in full in Cash of the unpaid portion of its Allowed First Lien Adequate Protection Payments.

(4)     *Voting*:  Class 4 is Impaired.  Holders of Allowed First Lien Claims in Class 4 are entitled to vote to accept or reject the Plan.

**(e)     Class 5 — Note Claims**

(1)     *Classification*:  Class 5 consists of all Note Claims.

(2)     *Allowance*:  The Note Claims ~~shall be~~are Allowed ~~as set forth~~ in the ~~Final DIP Order, including for the avoidance~~<u>aggregate outstanding principal amount under the Indenture</u> of ~~doubt~~<u>not less than $368,177,181, plus</u> any accrued ~~but~~<u>and</u> unpaid interest and fees ~~payable~~<u>with respect to the foregoing (which</u> as of the Petition Date ~~in accordance with~~ <u>was not less than $44,470,210), plus fees, costs, expenses and other amounts asserted under</u> the Indenture.

(3)     *Treatment*:  Except to the extent that a holder of an Allowed Note Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld) agree to less favorable treatment of its Allowed Note Claim, on the Effective Date or as soon thereafter as reasonably practicable, each holder of an Allowed Note Claim shall receive, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Note Claim, <u>(A)</u> its ~~Pro Rata share~~<u>pro rata share (as determined below in this Section 3.2(e)(3))</u> of:  (i) the New Notes Rights

(but only to the extent such holder is an Accredited Investor); and (ii) the New Preferred Equity Rights (but only to the extent such holder is an Accredited Investor); and (iii) B) its Pro Rata share of the New Common Stock Equity Pool (subject to dilution on account of the shares of New Common Stock issuable upon conversion of the New Preferred Equity, the shares of New Common Stock issuable upon exercise of the New Warrants, and the Management Incentive Plan Equity). The Each holder of an Allowed Note Claim that will receive the New Notes Rights and New Preferred Equity Rights shall receive its pro rata share of the New Notes Rights and New Preferred Equity Rights based on the proportion that such holder's Allowed Note Claim as of the Rights Offering Record Date bears to the aggregate amount of (I) all Eligible General Unsecured Claims as of the Rights Offering Record Date held by each Person that has certified that it is an Accredited Investor (as demonstrated by an AI Questionnaire that has been properly completed, duly executed and timely delivered by such holder to the subscription agent for the Rights Offerings on or before the Questionnaire Deadline in accordance with the Rights Offering Procedures) plus (II) all Allowed Note Claims as of the Rights Offering Record Date.  Additionally, the New Common Stock in the New Common Stock Equity Pool shall be distributed on a Pro Rata basis to (a) holders of Allowed Notes Claims and (b) holders of Allowed General Unsecured Claims that receive shares of the New Common Stock Equity Pool in accordance with the terms of this Plan.

(4)     *Voting*:  Class 5 is Impaired.  Holders of Allowed Note Claims in Class 5 are entitled to vote to accept or reject the Plan.

**(f)     Class 6 — General Unsecured Claims**

(1)     *Classification*:  Class 6 consists of all General Unsecured Claims.

(2)     *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, which consent shall not be unreasonably withheld), agree to less favorable treatment of its Allowed General Unsecured Claim, on the Effective Date or as soon thereafter as reasonably practicable, each holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed General Unsecured Claim, its Pro Rata share of either:

(A)     if such Allowed General Unsecured Claim (i) is less than or equal to $1,000,000 and such holder has <u>not</u> properly made the New Common Stock Election on a properly cast ballot or (ii) is greater than $1,000,000 and such holder has properly made the Convenience Claim Election on a properly cast ballot (*provided*, that in making such election, the holder has agreed to reduce the amount of such Allowed General Unsecured Claim for purposes of voting and distributions under the Plan to $1,000,000), its Pro Rata share of the Convenience Claim Distribution; or

(B)     if such Allowed General Unsecured Claim (i) is greater than $1,000,000 and such holder has <u>not</u> properly made the Convenience Claim Election on a properly cast ballot or (ii) is less than or equal to $1,000,000 and such holder has properly made the New Common Stock Election on a properly cast ballot, its Pro Rata share of the New Common Stock Equity Pool (subject to dilution on account of the shares of New Common Stock issuable upon conversion of the New Preferred Equity, the shares of New Common Stock issuable upon exercise of the New Warrants, and the Management Incentive Plan Equity).

Any holder of an Eligible General Unsecured Claim as of the Rights Offering Record Date that (x) has not made the Convenience Claim Election (with respect to an Eligible

General Unsecured Claim greater than $1,000,000) or has made the New Common Stock Election (with respect to an Eligible General Unsecured Claim less than or equal to $1,000,000) and (y) is an Accredited Investor (as demonstrated by an AI Questionnaire that has been properly completed, duly executed and timely delivered by such holder to the subscription agent for the Rights Offerings on or before the Questionnaire Deadline in accordance with the Rights Offering Procedures) shall also receive its pro rata share of the New Notes Rights and the New Preferred Equity Rights (based on the proportion that such holder's Eligible General Unsecured Claim as of the Rights Offering Record Date bears to the aggregate amount of (I) all Eligible General Unsecured Claims as of the Rights Offering Record Date held by each Person that has certified that it is an Accredited Investor (as demonstrated by an AI Questionnaire that has been properly completed, duly executed and timely delivered by such holder to the subscription agent for the Rights Offerings on or before the Questionnaire Deadline in accordance with the Rights Offering Procedures) plus (II) all Allowed Note Claims as of the Rights Offering Record Date).

The New Common Stock in the New Common Stock Equity Pool shall be distributed on a Pro Rata basis to (ai) holders of Allowed Notes Claims and (b)-ii) holders of Allowed General Unsecured Claims that receive shares of the New Common Stock Equity Pool in accordance with the terms of this Plan.

For the avoidance of doubt, if any holder in Class 6 holds more than one Allowed General Unsecured Claim, its Allowed General Unsecured Claims shall not be aggregated for purposes of any distribution to be made under this Section 3.2(f).

(3)     *Voting*:  Class 6 is Impaired.  Holders of Allowed General Unsecured Claims in Class 6 are entitled to vote to accept or reject the Plan.

**(g)     Class 7 — Intercompany Claims**

(1)     *Classification*:  Class 7 consists of all Intercompany Claims.

(2)     *Treatment*:  Each Allowed Intercompany Claim shall be canceled as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, with the consent of the Requisite Consenting First Lien Lenders and Requisite Backstop Parties, shall be Reinstated or compromised; *provided*, that the treatment of the Allowed Intercompany Claims shall be effectuated in a tax efficient manner.  No distribution shall be made on account of any Intercompany Claim.

(3)     *Voting*:  Class 7 is either (i) Unimpaired, in which case the holders of Allowed Intercompany Claims in Class 7 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or (ii) Impaired, and not receiving any distribution under the Plan, in which case the holders of Allowed Intercompany Claims in Class 7 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of an Allowed Intercompany Claim in Class 7 will not be entitled to vote to accept or reject the Plan.

**(h)     Class 8 — Section 510(b) Claims**

(1)     *Classification*:  Class 8 consists of all Section 510(b) Claims.

(2)     *Treatment*:  Holders of any Section 510(b) Claims shall not receive any recovery on account of such claims.

(3) *Voting*: Class 8 is Impaired.  Holders of Claims in Class 8 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**(i)    Class 9 — Intercompany Interests**

(1) *Classification*:  Class 9 consists of all Intercompany Interests.

(2) *Treatment*:  Each Allowed Intercompany Interest shall be ~~canceled as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, with the consent of the Requisite Consenting First Lien Lenders and Requisite Backstop Parties, shall be Reinstated or compromised.~~Reinstated.  No distribution shall be made on account of any Intercompany Interest.

(3) *Voting*:  Class 9 is ~~either (i)~~Unimpaired, ~~in which case the~~and holders of Allowed Intercompany Interests in Class 9 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code~~, or (ii) Impaired, and not receiving any distribution under the Plan, in which case the holders of such Allowed Intercompany Interests in Class 9 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.~~   Therefore, each holder of an Allowed Intercompany Interest in Class 9 will not be entitled to vote to accept or reject the Plan.

**(j)    Class 10 — Class B 21C, LLC Interests ~~in 21CH and 21CI~~[3]**

(1) *Classification*:  ~~Class 10~~ Class 10 consists of all Class B 21C, LLC Interests.

(2) *Treatment*:  Each Allowed Class B 21C, LLC Interest shall be Reinstated.  No distribution shall be made on account of any Class B 21C, LLC Interest.

(3) *Voting*:  Class 10 is Unimpaired, and holders of Allowed Class B 21C, LLC Interests in Class 10 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each holder of an Allowed Class B 21C, LLC Interest in Class 10 will not be entitled to vote to accept or reject the Plan.

**(k)    Class 11 — Interests in 21CH and 21CI**

(1) *Classification*:  Class 11 consists of all Interests in 21CH and 21CI.

(2) *Treatment*:

(A) On the Effective Date, all Interests in 21CH shall be canceled as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, with the consent of the Requisite Consenting First Lien Lenders and Requisite Backstop Parties, shall be Reinstated or compromised.  In the event that (i) all Classes of Claims entitled to vote on the Plan vote to accept the Plan, (ii) there are no Allowed Section 510(b) Claims, and (iii) holders of Allowed Interests in 21CH and 21CI in Class ~~10~~11 vote to accept the Plan, each holder of an Allowed Interest in 21CH (which consists of 21CI and CPPIB) shall receive, on the Effective Date or as soon thereafter as reasonably practicable, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Interests, its Pro Rata share of the New Warrants; *provided*, *however*, that if each of clauses (i), (ii), and (iii) in this sentence are not satisfied, then holders of

___
[3] ~~Note: Treatment of non-debtor Interests in Debtors other than 21CH and 21CI to be determined.~~

Allowed Interests in 21CH shall receive no distribution on account of such Allowed Interests.

(B)     On the Effective Date, all Interests in 21CI shall be ~~canceled, and holders of Allowed Interests in 21CI shall receive no distribution on account of such Allowed Interests~~Reinstated.

(3)     *Voting*:  Class ~~10~~11 is Impaired.  Holders of Interests in Class ~~10~~11 are entitled to vote to accept or reject the Plan.

(l)     **Class 12 — Non-Debtor Interests**

(1)     *Classification*:  Class 12 consists of all Non-Debtor Interests.

(2)     *Treatment*:  Each Allowed Non-Debtor Interest shall be canceled as of the Effective Date. No distribution shall be made on account of any Non-Debtor Interest.

(3)     *Voting*:  Class 12 is Impaired.  Holders of Interests in Class 12 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**3.3     Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**3.4     Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**3.5     Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote on the Plan and no holder of Claims or Interests in such Class eligible to vote on the Plan votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims or Interests in such Class.

**3.6     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

The Debtors seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to Class 8 as the holders of Claims in Class 8 are presumed to have rejected the Plan.  The Debtors also seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any other Class(es) of Claims or Interests that vote to reject the Plan.  The Debtors reserve the right to modify the Plan in accordance with Article X of this Plan and subject to the terms and conditions of the Restructuring Support Agreement to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by (a) modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules and (b) withdrawing the Plan as to an individual Debtor at any time before the Confirmation Date, in each case with the consent of the Requisite Backstop Parties.

**3.7**    **Intercompany Interests**

To the extent Reinstated under the Plan, distributions on account of Allowed Intercompany Interests are not being received by holders of such Allowed Intercompany Interests on account of their Allowed Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the holders of the New Common Stock, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims.  For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Allowed Intercompany Interests shall be owned by the same Reorganized Debtor that corresponds with the Debtor that owned such Allowed Intercompany Interests prior to the Effective Date.

## ARTICLE IV

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

**4.1**    **Restructuring Transactions**

On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtors shall take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including:  (a) the execution, delivery, and filing, as applicable, of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation, each containing terms that are consistent in all material respects with the terms of the Plan and the Restructuring Support Agreement, and that satisfy the requirements of applicable law and any other terms to which the Requisite Parties may agree; (b) the execution, delivery, and filing, as applicable, of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation, each on terms consistent in all material respects with the terms of the Plan and the Restructuring Support Agreement and having other terms for which the Requisite Parties agree; (c) the execution, delivery, and filing, as applicable, of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Restructuring Transactions in the most tax efficient manner, as determined by the Debtors and the Requisite Backstop Parties; (e) the execution, delivery, and filing, if applicable, of the New First Lien Term Loan Documents, New MDL Term Loan Documents, New Second Lien Notes Documents, the New Warrant Documents (if applicable), the New Organizational Documents, and any documentation related to the New Preferred Equity or the Restructuring Transactions; (f) any actions necessary to effectuate the Rights Offerings, and (g) all other actions that the Requisite Parties determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

**4.2**    **General Settlement of Claims and Interests**

Unless otherwise set forth in the Plan, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved by the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests and is fair, equitable, and within the range of reasonableness.  Subject to Article VI of the Plan, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

**4.3**    **New Preferred Equity, New Common Stock and New Warrants**

All existing Interests in 21CH and 21CI shall be canceled as of the Effective Date and Reorganized 21CH shall issue (a) the New Preferred Equity to (i) Rights Offering Participants who elect to participate in the New Preferred Equity Rights Offering and (ii) the Backstop Parties pursuant to the Backstop Purchase Agreement, (b) the New Common Stock to holders of Allowed Claims entitled to receive New Common Stock pursuant to the Plan, and (c) subject to satisfaction of the conditions set forth in Section 3.2(j)(2) hereof, the New Warrants to holders of Allowed Interests in 21CH entitled to receive New Warrants pursuant to the Plan, which issuances and distributions

described in clauses (a), (b) and (c) of this sentence shall be authorized by the New Organizational Documents. The issuance of New Preferred Equity, New Common Stock and New Warrants, including any options for the purchase thereof and equity awards associated therewith (if applicable), shall be authorized without the need for any further corporate action and without any further action by the Debtors, Reorganized 21CH or any of the other Reorganized Debtors, as applicable. All New Preferred Equity and New Common Stock issued under the Plan (including New Preferred Equity issued to Rights Offering Participants in the New Preferred Equity Rights Offering and New Preferred Equity issued to the Backstop Parties pursuant to the Backstop Purchase Agreement) shall be deemed duly authorized, validly issued, fully paid, and non-assessable and not to have been issued in violation of any preemptive rights, rights of first refusal or similar rights or any applicable law. All shares of New Common Stock or other Securities to be received upon (x) conversion of any shares of New Preferred Equity or (y) exercise of any Warrants (if applicable) shall be deemed to have been duly authorized, validly issued, fully paid, and nonassessable, and not to have been issued in violation of any preemptive rights, rights of first refusal or similar rights or any applicable law. It shall be an express condition to the right of a holder of an Allowed Claim or any other Person to receive New Common Stock and/or New Preferred Equity in connection with the Restructuring Transactions that such holder or other Person execute and deliver to Reorganized 21CH a counterpart of the New Stockholders Agreement. Notwithstanding anything herein to the contrary, each holder of New Preferred Equity and/or New Common Stock (whether such holder received shares of New Common Stock and/or New Preferred Equity on the Effective Date or after the Effective Date (including receipt of shares of New Common Stock upon conversion of shares of New Preferred Equity, upon exercise of New Warrants (if applicable), or otherwise)) shall be deemed to have accepted the terms of the New Stockholders Agreement (solely in their capacity as shareholders of Reorganized 21CH) and to be parties thereto without further action or signature. The New Stockholders Agreement shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Preferred Equity and/or New Common Stock shall be bound thereby (including any obligation set forth therein to waive or refrain from exercising any appraisal, dissenters' or similar rights) even if such holder has not actually executed and delivered a counterpart thereof.

**4.4    New First Lien Term Loan Credit Facility**

On the Effective Date, the Reorganized 21C Debtors shall incur obligations under the New First Lien Term Loan Credit Facility, the terms of which will be set forth in the New First Lien Term Loan Documents. Confirmation of the Plan shall be deemed approval of the New First Lien Term Loan Credit Facility and the New First Lien Term Loan Documents, and all transactions contemplated thereby, including, without limitation, the incurrence by Reorganized Debtor 21C of the loans, indebtedness, liabilities and other obligations under the New First Lien Term Loan Credit Facility and the guarantee thereof by the other Reorganized 21C Debtors, any supplemental or additional syndication of the New First Lien Term Loan Credit Facility, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized 21C Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized 21C Debtors to enter into and execute the New First Lien Term Loan Documents and such other documents as may be required to effectuate the treatment afforded by the New First Lien Term Loan Credit Facility. On the Effective Date, all of the Liens and security interests to be granted in accordance with the New First Lien Term Loan Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the New Domestic Collateral granted thereunder in accordance with the terms of the New First Lien Term Loan Documents, (c) shall be deemed automatically, without any further action being required by the Debtors, the Reorganized Debtors, the New First Lien Term Loan Agent, or any of the New First Lien Term Loan Lenders, perfected on the Effective Date and subject to the New Intercreditor Agreement, and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized 21C Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all approvals and consents by Governmental Units necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and the occurrence of the Effective Date and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

**4.5**    <u>New MDL Term Loan Facility</u>

On the Effective Date, the Reorganized 21C Debtors shall incur obligations under the New MDL Term Loan Facility, the terms of which will be set forth in the New MDL Term Loan Documents.  Confirmation of the Plan shall be deemed approval of the New MDL Term Loan Facility and the New MDL Term Loan Documents, and all transactions contemplated thereby, including, without limitation, the incurrence by Reorganized Debtor 21C of the loans, indebtedness, liabilities and other obligations under the New MDL Term Loan Facility and the guarantee thereof by the other Reorganized 21C Debtors, any supplemental or additional syndication of the New MDL Term Loan Facility, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized 21C Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized 21C Debtors to enter into and execute the New MDL Term Loan Documents and such other documents as may be required to effectuate the treatment afforded by the New MDL Term Loan Facility.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the New MDL Term Loan Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the New Domestic Collateral granted thereunder in accordance with the terms of the New MDL Term Loan Documents, (c) shall be deemed automatically, without any further action being required by the Debtors, the Reorganized Debtors, the New MDL Term Loan Agent, or any of the New MDL Term Loan Lenders, perfected on the Effective Date and subject to the New Intercreditor Agreement, and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized 21C Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all approvals and consents by Governmental Units necessary to establish and perfect such Liens and security interests under the provisions of ~~the~~ applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and the occurrence of the Effective Date and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

**4.6**    <u>New Revolving Credit Facilities</u>

As set forth in the "Debt and Equity Securities and Obligations to be Issued or Incurred Under the Plan" section of the Restructuring Term Sheet, the Exit Facility Documents will permit (but shall not require) incurrence, after the Effective Date, of indebtedness and other obligations under the New Revolving Credit Facilities, subject to such terms and conditions relating thereto as are set forth in the applicable Exit Facility Documents.

**4.7**    <u>New Second Lien Notes</u>

On the Effective Date, Reorganized Debtor 21C shall issue, and the other Reorganized 21C Debtors shall guarantee, the New Second Lien Notes, the terms of which will be set forth in the New Second Lien Notes Documents.  Confirmation of the Plan shall be deemed approval of the New Second Lien Notes and the New Second Lien Notes Documents, and all transactions contemplated thereby, including, without limitation, all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized 21C Debtors in connection therewith, including the incurrence by Reorganized Debtor 21C of the indebtedness, liabilities and other obligations under the New Second Lien Notes and the other New Second Lien Notes Documents  and the guarantee thereof by the other Reorganized 21C Debtors, and the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized 21C Debtors to enter into and execute the New Second Lien Notes Documents and such other documents as may be required to effectuate the treatment afforded by the New Second Lien Notes. On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Second Lien Notes Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the New Domestic Collateral granted thereunder in accordance with the terms of the New Second Lien Notes Documents, (c) shall be deemed automatically, without any further action being required by the Debtors, the Reorganized Debtors, the New Second Lien Notes Trustee, or any of the holders of the New Second Lien Notes, perfected on the Effective Date and subject to the New Intercreditor Agreement, and (d) shall not be subject to avoidance, recharacterization or equitable subordination for any purposes whatsoever and shall not

constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized 21C Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all approvals and consents by Governmental Units necessary to establish and perfect such Liens and security interests under the provisions of ~~the~~ applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and the occurrence of the Effective Date and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. All New Second Lien Notes (and the guarantees thereof) issued on the Effective Date shall be deemed to have been duly authorized, validly issued, fully paid and nonassessable, and not to have been issued in violation of any preemptive rights, rights of first refusal or similar rights or any applicable law.

**4.8    Rights Offerings**

The Rights Offerings shall be conducted by the Debtors and consummated on the terms and subject to the conditions set forth in the Rights Offering Procedures, the Backstop Purchase Agreement, and the Backstop Order. To facilitate the Rights Offerings and the other Restructuring Transactions, the Backstop Parties have agreed to purchase the Unsubscribed Securities offered for sale in the Rights Offerings, subject to the terms and conditions set forth in the Backstop Purchase Agreement. The Backstop Parties' obligation to purchase the Unsubscribed Securities pursuant to the Backstop Purchase Agreement shall be contingent upon (a) the entry of the Backstop Order, which ~~shall approve~~ approved the payment of certain expenses and other amounts thereunder (including the Equity Put Option Shares, the Notes Put Option Shares, the Liquidated Damages Payment and the Backstop Expenses), and (b) all conditions precedent to closing set forth in the Backstop Purchase Agreement being satisfied or otherwise waived by the Requisite Backstop Parties in accordance with the Backstop Purchase Agreement. Confirmation shall constitute Bankruptcy Court approval of the Rights Offerings (including the transactions contemplated thereby, and all actions to be undertaken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith). Upon the Effective Date, the rights and obligations of the Debtors under the Backstop Purchase Agreement shall vest in the Reorganized Debtors, as applicable.

A Rights Offering Participant shall not be permitted to participate in ~~one~~the Rights Offering~~s~~ unless such Rights Offering Participant ~~also participates in~~satisfies all of the ~~other~~ Rights Offering ~~in an equal proportionate amount; *provided, however,* that, upon issuance~~Conditions. If (i) a Rights Offering Participant shall not be permitted to participate in the Rights Offerings because such Rights Offering Participant failed to satisfy all of the Rights Offering Conditions and (ii) such Rights Offering Participant shall have delivered to the subscription agent for the Rights Offerings the aggregate cash exercise price (or any portion thereof~~on the~~ ) with respect to the exercise of any of the New Notes Rights and New Preferred Equity Rights received by such Rights Offering Participant, then such aggregate cash exercise price (or portion thereof) shall be refunded to such Rights Offering Participant, without interest, as soon as reasonably practicable (but in no event later than ten (10) Business Days) after the Effective Date~~, the New Second Lien Notes and the New Preferred Equity shall not be attached to~~ (without offset, set-off, counterclaim or reduction of any kind by such subscription agent or any of the Debtors).

~~each other. The New Notes Rights and New Preferred Equity Rights received by each Rights Offering Participant shall not be transferable.~~

If (a) a Rights Offering Participant's Eligible General Unsecured Claim as of the Rights Offering Record Date (or any portion thereof) is not an Allowed (as defined in Section 4.8(c) hereof) General Unsecured Claim on the date that is one (1) Business Day after the Confirmation Hearing, or (b) a Rights Offering Participant that holds an Eligible General Unsecured Claim as of the Rights Offering Record Date either (x) makes the Convenience Claim Election with respect to such Eligible General Unsecured Claim on a properly cast ballot under the Plan (if such Eligible General Unsecured Claim is greater than $1,000,000) or (y) fails to make the New Common Stock Election with respect to such Eligible General Unsecured Claim on a properly cast ballot under the Plan (if such Eligible General Unsecured Claim is less than or equal to $1,000,000) (each of the events described in clauses (a) and (b) of this sentence being referred to herein as a "Rights Forfeiture Event"), then (in any such case): (i) such Rights Offering Participant's New Notes Rights and New Preferred Equity Rights that were issued to such Rights Offering Participant on account of such Eligible General Unsecured Claim (or such portion thereof) shall be deemed

immediately and automatically terminated as of the date of the occurrence of such Rights Forfeiture Event (even if such New Notes Rights and New Preferred Equity Rights were exercised prior to such date), without a need for any further action on the part of (or notice provided to) any Person, except as otherwise provided in this Section 4.8, (ii) such Rights Offering Participant shall not be permitted to participate in the Rights Offerings with respect to such New Notes Rights and New Preferred Equity Rights, and (iii) any exercise of such New Notes Rights and New Preferred Equity Rights by (or on behalf of) such Rights Offering Participant prior to the date of the occurrence of such Rights Forfeiture Event shall be deemed void, irrevocably rescinded and of no further force or effect, and the New Second Lien Notes and New Preferred Equity that could have been subscribed for and purchased pursuant to a valid exercise of such New Notes Rights and New Preferred Equity Rights shall be deemed not to have been subscribed for and purchased in the Rights Offerings.

~~If a group of Backstop Parties that are Affiliates of one another~~ If (a) a Rights Offering Participant exercised its New Notes Rights and New Preferred Equity Rights (each, on account of its Eligible General Unsecured Claim as of the Rights Offering Record Date (or any portion thereof)) on or before the Rights Offering Termination Time in accordance with the Rights Offering Procedures, and (b) a Rights Forfeiture Event shall occur with respect to such Eligible General Unsecured Claim (or such portion thereof), then such Rights Offering Participant shall be entitled to receive from the Debtors a notice of such Rights Forfeiture Event as soon as reasonably practicable following the occurrence thereof; *provided, however,* that the failure of the Debtors to deliver any such notice shall not affect the occurrence of the Rights Forfeiture Event or the effects thereof on the Rights Offering Participant's New Notes Rights and New Preferred Equity Rights (or the exercise thereof) or the ability of such Rights Offering Participant to participate in the Rights Offerings, all as set forth in the immediately preceding paragraph. Further, if (i) a Rights Forfeiture Event shall occur with respect to a Rights Offering Participant's Eligible General Unsecured Claim as of the Rights Offering Record Date (or any portion thereof), and (ii) such Rights Offering Participant shall have delivered to the subscription agent for the Rights Offerings the aggregate cash exercise price (or any portion thereof) with respect to the exercise of any of the New Notes Rights and New Preferred Equity Rights received by such Rights Offering Participant on account of such Eligible General Unsecured Claim (or such portion thereof), then such aggregate cash exercise price (or such portion thereof) shall be refunded to such Rights Offering Participant, without interest, as soon as reasonably practicable (but in no event later than ten (10) Business Days) after the Effective Date (without offset, set-off, counterclaim or reduction of any kind by such subscription agent or any of the Debtors).

If the Persons in any Backstop Group (as defined in the Backstop Purchase Agreement) purchase (i) New Second Lien Notes in the New Notes Rights Offering in an aggregate original principal amount that is less than the product of (A) ~~aggregate~~ the Rights Offering Percentages (as defined in the Backstop Purchase Agreement) of such Backstop ~~Parties~~ Group and (B) the New Notes Rights Offering Amount, or (ii) New Preferred Equity in the New Preferred Equity Rights Offering with an aggregate initial liquidation value that is less than the product of (A) the ~~aggregate~~ Rights Offering Percentages of such Backstop ~~Parties~~ Group and (B) the New Preferred Equity Rights Offering Amount, then, in either case, the Backstop Parties in such Backstop ~~Parties~~ Group shall be required to purchase Unsubscribed Notes or Unsubscribed Equity, as applicable, ~~such that no~~ in an amount equal to such deficiency ~~exists~~ and such obligation shall constitute the Backstop Commitments of such Backstop Parties (it being understood that such obligation to purchase such Unsubscribed Securities shall be satisfied prior to determining the Backstop Commitments of all other Backstop Parties).

(a)    **New Notes Rights Offering**

The Debtors shall distribute the New Notes Rights to the Rights Offerings Participants on behalf of the Reorganized Debtors as set forth in the Plan and the New Notes Rights Offering Procedures. Pursuant to the New Notes Rights Offering Procedures, the New Notes Rights Offering shall be open to all Rights Offerings Participants. Each Rights Offering Participant shall be offered the New Notes Rights to purchase its ~~Pro Rata share of New Second Lien Notes in the aggregate amount~~ pro rata share of the New Notes Rights Offering Amount. Each Rights Offering Participant shall purchase New Second Lien Notes by, at the election of such Rights Offering Participant: (a) ~~-~~ exchanging all or a portion of the Allowed (as defined in Section 1.1.11 hereof) First Lien Claims that such Rights Offering Participant owns ~~or controls~~ and/or (b) paying Cash in an aggregate amount (taking together <u>clauses</u> <u>(a)</u> and <u>(b)</u> above) equal to the aggregate original principal amount of the New Second Lien Notes to be acquired by such Rights Offering Participant.

Any Unsubscribed Notes shall be put to and purchased by the Backstop Parties in accordance with the terms and conditions of the Backstop Purchase Agreement and the Backstop Order; *provided*, *however*, that no Backstop Party shall be required to purchase Unsubscribed Notes pursuant to such Backstop Party's Backstop Commitment in an aggregate original principal amount that exceeds (x) the dollar amount set forth opposite the name of such Backstop Party under the heading "Backstop Notes Commitment Amount" on <u>Schedule 1</u> to the Backstop Purchase Agreement (as it may be amended, supplemented or otherwise modified from time to time in accordance with the terms of the Backstop Purchase Agreement), *minus* (y) the aggregate original principal amount of all New Second Lien Notes that such Backstop Party subscribes for in the New Notes Rights Offering (such amount, the "<u>Backstop Notes Commitment Amount</u>").  There will be no over-subscription privilege in the New Notes Rights Offering, such that any Unsubscribed Notes will not be offered to other Rights Offering Participants, but rather will be purchased by the Backstop Parties (subject to their respective Backstop Notes Commitment Amounts) in accordance with the terms and conditions of the Backstop Purchase Agreement and the Backstop Order.

On the Effective Date, ~~the~~ Reorganized Debtor 21C shall offer to prepay, at 100% of the principal amount thereof (plus all accrued and unpaid interest thereon to the date of prepayment), the obligations under the New First Lien Term Loan Credit Facility held by the Backstop Parties or any of their respective Affiliates in an aggregate principal amount equal to the lesser of (i) the New Notes Rights Offering Cash Amount and (ii) the aggregate principal amount of the obligations under the New First Lien Term Loan Credit Facility held by the Backstop Parties and their respective Affiliates.  Such prepayment (the "<u>Backstop Prepayment</u>") shall be made to the Backstop Parties and their respective Affiliates that accept the offer on a ~~Pro Rata~~pro rata basis (based on their respective shares of the aggregate principal amount of Note~~s~~ Claims that were held by such Backstop Parties and their respective Affiliates as of the Effective Date (prior to the consummation of the Restructuring Transactions)); *provided*, *however*, if any portion of the Backstop Prepayment is not accepted by any such Backstop Party or any of its Affiliates, then such portion shall be <u>continually</u> re-offered to the other Backstop Parties and their respective Affiliates that accepted their respective full pro rata shares of the Backstop Prepayment and continue to hold obligations under the New First Lien Term Loan Credit Facility <u>(in accordance with the respective pro rata shares of such Backstop Parties and such Affiliates)</u> until the full amount of the Backstop Prepayment has been accepted by such Backstop Parties and/or such Affiliates or any portion of the Backstop Prepayment is not accepted by such Backstop Parties and their respective Affiliates.  If the New Notes Rights Offering Cash Amount exceeds the Backstop Prepayment that is actually paid to Backstop Parties and their respective Affiliates, then Reorganized Debtor 21C shall offer to prepay, at 100% of the principal amount thereof (plus all accrued and unpaid interest thereon to the date of prepayment), obligations under the New First Lien Term Loan Credit Facility held by all holders of such obligations (including, for the avoidance of doubt, obligations under the New First Lien Term Loan Credit Facility held by the Backstop Parties or any of their respective Affiliates) in an aggregate principal amount equal to the amount of such excess, such offer to be made on a pro rata basis to such holders (based on their respective shares of the aggregate principal amount of obligations under the New First Lien Term Loan Credit Facility held by all holders of such obligations) (such prepayment, the "<u>Global Prepayment</u>").  If the New Notes Rights Offering Cash Amount exceeds the sum of (x) the Backstop Prepayment that is actually paid to the Backstop Parties and their respective Affiliates and (y) the Global Prepayment that is actually paid to holders of obligations under the New First Lien Term Loan Credit Facility, then the amount of such excess shall be used by Reorganized Debtor 21C to permanently repay obligations under the New MDL Term Loan Facility in an aggregate amount equal to such excess.

**(b)      New Preferred Equity Rights Offering**

The Debtors shall distribute the New Preferred Equity Rights to the Rights Offerings Participants on behalf of the Reorganized Debtors as set forth in the Plan and the New Preferred Equity Rights Offering Procedures. Pursuant to the New Preferred Equity Rights Offering Procedures, the New Preferred Equity Rights Offering shall be open to all Rights Offerings Participants.  Each Rights Offering Participant shall be offered the New Preferred Equity Rights to purchase its ~~Pro Rata~~pro rata share of ~~New Preferred Equity with an aggregate initial liquidation value equal to~~ the New Preferred Equity Rights Offering Amount.

Each Rights Offering Participant electing to exercise its New Preferred Equity Rights shall purchase New Preferred Equity by paying Cash in an aggregate amount equal to eighty-five percent (85%) of the aggregate initial liquidation value of New Preferred Equity to be acquired by such Rights Offering Participant in the New Preferred

Equity Rights Offering. For the avoidance of doubt, the total amount of Cash that will be paid for all of the New Preferred Equity offered in the New Preferred Equity Rights Offering (whether purchased in the New Preferred Equity Rights Offering or pursuant to the Backstop Purchase Agreement) shall be $75.0 million.

Any Unsubscribed Equity shall be put to and purchased by the Backstop Parties in accordance with the terms and conditions of the Backstop Purchase Agreement and the Backstop Order; *provided*, *however*, that no Backstop Party shall be required to purchase Unsubscribed Equity pursuant to such Backstop Party's Backstop Commitment with an aggregate initial liquidation value that exceeds (i) the dollar amount set forth opposite the name of such Backstop Party under the heading "Backstop Equity Commitment Amount" on Schedule 1 to the Backstop Purchase Agreement (as it may be amended, supplemented or otherwise modified from time to time in accordance with the terms of the Backstop Purchase Agreement), minus (ii) the aggregate initial liquidation value of all New Preferred Equity that such Backstop Party subscribes for in the New Preferred Equity Rights Offering (such amount, the "Backstop Equity Commitment Amount"). There will be no over-subscription privilege in the New Preferred Equity Rights Offering, such that any Unsubscribed Equity will not be offered to other Rights Offering Participants, but rather will be purchased by the Backstop Parties (subject to their respective Backstop Equity Commitment Amounts) in accordance with the terms and conditions of the Backstop Purchase Agreement and the Backstop Order.

The New Preferred Equity Rights Offering Cash Amount shall be used: (x) first, to satisfy any unpaid DIP Claims outstanding on the Effective Date; (y) second, to satisfy out-of-pocket costs and expenses incurred by the Debtors in connection with the Restructuring Transactions and (z) third, for working capital and other general corporate purposes of the Reorganized Debtors following the Effective Date.

(c)        **Certain Rights Offering Definitions**

Solely for purposes of Section 4.8 hereof (except as otherwise indicated) and as used in the definition of "Eligible General Unsecured Claim" in Section 1.1.77 hereof, (i) "Allowed" means, with respect to any Claim (or any portion thereof), as of any date of determination, (A) a Claim that is evidenced by a Proof of Claim Filed by the applicable Bar Date in accordance with the Bar Date Order; (B) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (C) a Claim that is allowed pursuant to the Plan or a Final Order of the Bankruptcy Court as of such date; *provided*, that with respect to a Claim described in clauses (A) and (B) above (except any Claim allowed pursuant to the DIP Orders), such Claim shall be considered "Allowed" as of such date of determination only to the extent that, with respect to such Claim, no objection to allowance or priority or a request for estimation thereof has been interposed on or prior to such date, or such an objection is so interposed and the Claim has been allowed by a Final Order of the Bankruptcy Court as of such date; and (ii) "Disputed" means, with respect to any Claim (or any portion thereof), as of any date of determination, a Claim that is neither Allowed nor disallowed as of such date.

**4.9      Put Option Shares**

As consideration for the Debtors' right to call the Backstop Parties' Backstop Commitments, on the Effective Date, the Equity Put Option Shares and the Notes Put Option Shares shall be distributed to the Non-Defaulting Backstop Parties under and as set forth in the Backstop Purchase Agreement.

**4.10     Exemption from Registration Requirements**

The offering, issuance, sale and distribution of (a) all shares of New Common Stock, shares of New Preferred Equity, the New Second Lien Notes, and the New Warrants (if any) under the Plan (including New Preferred Equity issued to Rights Offering Participants in the New Preferred Equity Rights Offering and New Preferred Equity issued to the Backstop Parties pursuant to the Backstop Purchase Agreement), (b) all shares of New Common Stock or other securities issued upon conversion of any shares of New Preferred Equity, and (c) all shares of New Common Stock or other securities issued upon exercise of the New Warrants (if applicable), in each such case), will be exempt from, among other things, the registration and prospectus delivery requirements under the Securities Act or any similar federal, state, or local laws in reliance upon ~~either (i)~~ section 1145 of the Bankruptcy Code to the maximum extent permitted and applicable and, to the extent that reliance on such section is either not permitted or ~~(ii)~~not applicable, the exemption set forth in section 4(a)(2) of the Securities Act ~~or Regulation D~~

promulgated thereunder.  All shares of New Common Stock, the New Preferred Equity, the New Second Lien Notes, and the New Warrants (if any) issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom.

Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Common Stock, the New Preferred Equity, the New Warrants (if any), or the New Second Lien Notes through the facilities of DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of such securities under applicable securities laws.

DTC shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether such securities are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

## 4.11    Subordination

The allowance, classification, and treatment of all Claims and Interests under the Plan conform to and are consistent with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and the Plan recognizes and implements any such rights.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the rights of the Debtors or the Reorganized Debtors, as applicable, are hereby reserved to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto upon entry of a Final Order ruling that such Allowed Claim or Allowed Interest (or portion thereof) is subordinated.  On the Effective Date, any and all subordination rights or obligations that a holder of a Claim or Interest may have with respect to any distribution to be made under the Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights will be enjoined permanently.  Accordingly, distributions under the Plan to holders of Allowed Claims and Allowed Interests will not be subject to turnover or payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

## 4.12    Vesting of Assets in the Reorganized Debtors

Except as otherwise provided herein, or in any agreement, instrument, or other document incorporated in the Plan (including, without limitation, the New First Lien Term Loan Documents, New MDL Term Loan Documents, and New Second Lien Notes Documents, as applicable), on the Effective Date, all property in each Debtor's Estate, all Causes of Action and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor (excluding any Executory Contracts and Unexpired Leases included on the Schedule of Rejected Executory Contracts and Unexpired Leases), free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, the Plan Supplement, or the Confirmation Order.  Notwithstanding anything to the contrary in the Plan, the Unimpaired Claims against a Debtor shall remain the obligations solely of such Debtor or such Reorganized Debtor and shall not become obligations of any other Debtor or Reorganized Debtor by virtue of the Plan, the Chapter 11 Cases, or otherwise.

## 4.13    Cancellation of Notes, Instruments, Certificates, and Other Documents

On the Effective Date, except as otherwise provided in this Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement:  (a) the obligations of the Debtors under (i) the DIP Credit Agreement and the other the DIP Documents, (ii) the First Lien Credit Agreement and any other "Loan Document" as defined therein, (iii) the MDL Facility Credit Agreement and any other "Credit Document" as defined therein, (iv) the Indenture and any other "Note Document" as defined therein, and (v) any Interest in any of the Debtors (other than Intercompany Interests) (including the Series A Preferred Stock), or any certificate, share, note, bond, indenture, purchase right, option, warrant, call, put, award, commitment, registration rights, preemptive right,

right of first refusal, right of first offer, co-sale right, investor rights, or other instrument or document of any character directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest shall be automatically extinguished, canceled and of no further force or effect, and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any instrument or document described in underline clause (a) above evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors shall be automatically released and discharged, and the holders of, parties to or beneficiaries of any such instrument or document shall have no rights arising from or relating to such instrument or document or the extinguishment or cancellation thereof; *provided*, that notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of an Allowed Claim or an Allowed Interest shall continue in effect solely for purposes of (i) enabling such holder to receive distributions under the Plan on account of such Allowed Claim or Allowed Interest as provided herein, (ii) allowing the DIP Agent or applicable Prepetition Agent to make distributions on account of the DIP Claims, MDL Claims, First Lien Claims, or Note~s~ Claims, as applicable, (iii) preserving the DIP Agents' or Prepetition Agents' (as applicable) rights to compensation and indemnification under the DIP Credit Agreement, the MDL Credit Facility Agreement, the First Lien Credit Agreement, or the Indenture, as applicable, as against any money or property distributable to the holders of DIP Claims, First Lien Claims, MDL Claims or Note~s~ Claims, including, permitting the Indenture Trustee to maintain, enforce and exercise its Indenture Trustee Charging Lien against distributions on the ~Notes Claims~Note Claims and as otherwise provided under the Indenture, (iv) permitting the DIP Agent and the Prepetition Agents to enforce any obligation owed to it under the Plan, ~and (v~(v) preserving all rights, including rights of enforcement, of the Indenture Trustee against any Person other than a Released Party (including the Debtors and Reorganized Debtors), and (vi) permitting the DIP Agent and Prepetition Agents to appear in the Chapter 11 Cases or in any related proceeding in the Bankruptcy Court or any other court; *provided, further*, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under the Plan or the Final DIP Order; *provided, further*, that nothing in this section shall effect a cancellation of any New Common Stock, New Preferred Equity, New Warrants (if any) or New Second Lien Notes, or, solely to the extent reinstated or compromised by the Debtors, with the consent of the Requisite Backstop Parties, any Intercompany Interests or Intercompany Claims. Each of the DIP Agent and Prepetition Agents shall be discharged and shall have no further obligation or liability except as provided in the Plan and Confirmation Order, and after the performance by DIP Agent or such Prepetition Agents and their respective representatives and professionals of any of their respective obligations and duties required under or related to the Plan or Confirmation Order, the DIP Agent or such Prepetition Agents shall be relieved of and released from any obligations and duties arising thereunder. On the Effective Date, except as set forth in the Plan, any Lien securing any Claim shall be deemed released, and the holder of such Claim shall be authorized and directed to release any collateral or other property of any Debtor held by such holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).

If the record holder of the Notes is DTC or its nominee or another securities depository or custodian thereof, and such Notes are represented by a global Security held by or on behalf of the DTC or such other securities depository or custodian, then each such holder of the Notes shall be deemed to have surrendered its Note or other evidence of indebtedness upon surrender of such global Security by DTC or such other securities depository or custodian thereof.

**4.14**    **Corporate Action**

On the Effective Date, or as soon thereafter as is reasonably practicable, all actions as may be necessary or appropriate to effect any transactions described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (a) the adoption, execution, delivery and/or filing of the New Organizational Documents (including the New Stockholders Agreement and the Registration Rights Agreement), (b) the selection of the directors, managers, and officers for the Reorganized Debtors, including the appointment of the New Board; (c) the authorization, issuance, delivery and distribution of New Common Stock, New Preferred Equity, and the New Warrants; (d) the authorization, issuance, delivery and distribution of shares of New Common Stock upon conversion of shares of New Preferred Equity and upon exercise of the New Warrants, and the reservation of a

sufficient number of shares of New Common Stock for issuance, delivery and distribution upon any such conversion or exercise; (e) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (f) the entry into or issuance of (as applicable) the New First Lien Term Loan Credit Facility, New MDL Term Loan Facility, and New Second Lien Notes and the execution, delivery, and filing of the New First Lien Term Loan Documents, New MDL Term Loan Documents, and New Second Lien Notes Documents, as applicable, and the granting of the Liens and security interests in the collateral under the New First Lien Term Loan Documents, the New MDL Term Loan Documents and the New Second Lien Notes Documents, as applicable; (g) the adoption of the Management Incentive Plan; (h) the Rights Offerings; and (i) all other actions that may be required by applicable law.  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of Reorganized 21CH and the other Reorganized Debtors, and any corporate action required by the Debtors, Reorganized 21CH, or the other Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors, Reorganized 21CH, or the other Reorganized Debtors.  On or before the Effective Date (as applicable), the appropriate officers of the Debtors, Reorganized 21CH, or the other Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the Restructuring Transactions) in the name of and on behalf of Reorganized 21CH and the other Reorganized Debtors, including with respect to the New First Lien Term Loan Credit Facility, New MDL Term Loan Facility, New Second Lien Notes, and any and all other agreements, documents, Securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.  The authorizations and approvals contemplated by this Section 4.~~13~~14 shall be effective notwithstanding any requirements under non-bankruptcy law.

## 4.15    Corporate Existence

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of Entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended or amended and restated by the Plan (including pursuant to the provisions of Section 4.~~12~~13 of the Plan), the New Organizational Documents, or otherwise (in each case, consistent in all material respects with the terms and conditions set forth in the Governance Term Sheet and otherwise in form and substance reasonably acceptable to the Requisite Parties), and to the extent such documents are amended or amended and restated, such documents are deemed to be amended or amended and restated pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).  Nothing in this Section 4.~~14~~15 shall alter, change or otherwise modify the treatment of the Class ~~[___]~~11 Interests pursuant to Article III.

## 4.16    Charter, Bylaws, and New Organizational Documents

On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors' respective certificates of incorporation and bylaws (and other formation and constituent documents relating to limited liability companies) shall be amended or amended and restated as may be required to be consistent with the provisions of the Plan, the New Organizational Documents, the Exit Facility Documents, and the New Warrant Documents, as applicable, and the Bankruptcy Code.  The New Organizational Documents shall, among other things:  (a) authorize the issuance of the New Common Stock, the New Preferred Equity and the New Warrants (if any); and (b) be modified or deemed to be modified to include a provision pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, ~~include a provision~~ prohibiting the issuance of non-voting equity Securities.  After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

43

**4.17**    **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtors and the officers and members of the boards of directors and managers thereof shall be authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the New Organizational Documents, the Exit Facility Documents, the Warrant Documents, as applicable, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan or the Confirmation Order.

**4.18**    **Section 1146(a) Exemption**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, Security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral as security for any or all of the New First Lien Term Loan Credit Facility, New MDL Term Loan Facility, or New Second Lien Notes, as applicable; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**4.19**    **Directors and Officers**

The members of the New Board shall be chosen in accordance with the terms of the Governance Term Sheet and shall be identified at or prior to the Confirmation Hearing in the Plan Supplement or at the Confirmation Hearing consistent with section 1129(a)(5) of the Bankruptcy Code. On the Effective Date, except as otherwise provided in the Plan Supplement or announced on the record at the Confirmation Hearing, the existing officers of the Debtors shall serve in their current capacities for the Reorganized Debtors. From and after the Effective Date, each director, officer, or manager of the Reorganized Debtors shall serve pursuant to the terms of the respective Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the respective Reorganized Debtor's jurisdiction of formation.

**4.20**    **Employee Arrangements of the Reorganized Debtors**

As of the Effective Date, the Reorganized Debtors, with the advance written consent of the Requisite Backstop Parties, which consent shall not be unreasonably withheld, shall be authorized to: (a) maintain, amend, or revise employment, indemnification, and other arrangements with their directors, officers, and employees, that were employed by, or serving on the board of directors of, any of the Debtors as of the Petition Date that have not been rejected before or as of the Effective Date, subject to the terms and conditions of any such agreement; and (b) enter into new employment, indemnification, and other arrangements with directors, officers, and employees; in the case of clause (b) herein, as determined by the board of directors of the applicable Reorganized Debtor. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

**4.21**     **Management Incentive Plan**

Within one hundred fifty (150) days after the Effective Date, the New Board shall adopt the Management Incentive Plan that provides for the issuance of the Management Incentive Plan Equity to employees, consultants and directors of any of the Reorganized Debtors or any of their respective Subsidiaries.  The New Board shall determine a percentage of the shares of New Common Stock that are issued and outstanding on the Effective Date after giving effect to the consummation of the Restructuring Transactions (including the distribution of all shares of New Common Stock in respect of the ~~Notes~~Note Claims  and the Allowed General Unsecured Claims and any other distributions of shares of New Common Stock made pursuant to the Plan or in connection with the Restructuring Transactions) that shall be reserved for issuance under the Management Incentive Plan.   The form of the Management Incentive Plan Equity, the participants in the Management Incentive Plan, the allocations of the Management Incentive Plan Equity to such participants (including the amount of allocations and the timing of the grant of the Management Incentive Plan Equity), and the terms and conditions of the Management Incentive Plan (including vesting, exercise prices, base values, hurdles, forfeiture, repurchase rights and transferability) shall be determined by the New Board in its sole discretion.

**4.22**     **Preservation of Causes of Action**

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article VIII of this Plan, the DIP Orders, or a Final Order of the Bankruptcy Court, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically identified in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article VIII of this Plan, the DIP Orders, or a Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Section 4.~~21~~22 include any Claim or Cause of Action with respect to, or against, a Released Party.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action preserved pursuant to the first paragraph of this Section 4.~~21~~22 that a Debtor may hold against any Entity shall vest in the Reorganized Debtors.  The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

**4.23     Avoidance Actions**

Notwithstanding anything to the contrary in this Plan, on the Effective Date, all Avoidance Actions shall be waived by the Debtors and Reorganized Debtors and their Estates, *provided, however* that Avoidance Actions against Excluded Directors and Officers shall not be waived.

**4.24     Trustee Fees and Expenses**

On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall pay in Cash, all Indenture Trustee Expenses without the need for the Indenture Trustee to file fee applications or any other applications or motions with the Bankruptcy Court, and from and after the Effective Date, the Reorganized Debtors shall pay in

Cash all Indenture Trustee Expenses incurred in connection with facilitating distributions to holders of Note Claims. Nothing in the Plan shall in any way affect or diminish the right of the Indenture Trustee to assert the Indenture Trustee Charging Lien against any distributions to holders of Note Claims with respect to any unpaid Indenture Trustee Expenses or other amounts payable to the Indenture Trustee under the Indenture.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1**     **Assumption or Assumption and Assignment of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed assumed and assigned to the Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, regardless of whether such Executory Contract or Unexpired Lease is set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, other than: (1) those that are identified specifically or by category on the Schedule of Rejected Executory Contracts and Unexpired Leases or any Amended Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have been previously rejected by a Final Order; (3) those that previously expired or terminated pursuant to their terms; or (4) those that are the subject of a motion that is made with the prior written consent of the Requisite Backstop Parties to reject that is pending on the Effective Date or pursuant to which the requested effective date of rejection is after the Effective Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the assumptions, assumptions and assignments, or rejections, as applicable, of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.  Any motions to assume, assume and assign, or reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date.

Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement (a) the Schedule of Rejected Executory Contracts and Unexpired Leases (each, an "Amended Schedule of Rejected Executory Contracts and Unexpired Leases"), and/or (b) the Schedule of Assumed Executory Contracts and Unexpired Leases (each, an "Amended Schedule of Assumed Executory Contracts and Unexpired Leases"), in each case, at any time through and including the date that is sixty (60) days after the Effective Date, which Amended Schedule shall be Filed with the Bankruptcy Court; *provided* that to the extent any such Amended Schedule is Filed prior to the Effective Date, each such alteration, amendment, modification or supplement reflected in such Amended Schedule shall require the written consent of the Requisite Backstop Parties prior to such Filing.

To the extent applicable, any Executory Contracts or Unexpired Leases, including related instruments and agreements, assumed during the Chapter 11 Cases shall be deemed modified such that the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under, or any other transaction or matter that would result in a violation, breach or default under, or increase, accelerate or otherwise alter any obligations or liabilities of the Debtors or the Reorganized Debtors under, or result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Reorganized Debtors pursuant to, the applicable Executory Contract or Unexpired Lease, and any consent or advance notice required under such Executory Contract or Unexpired Lease shall be deemed satisfied by Confirmation.

**5.2**    **Rejection of Executory Contracts or Unexpired Leases and Claims Based Thereon**

On the Effective Date, each Any objection by a counterparty to the proposed rejection of its Executory Contract or Unexpired Lease must be Filed, served and actually received by the Debtors on or before the date that is seven (7) days following the Filing of the Schedule of Rejected Executory Contracts and Unexpired Leases or the Amended Schedule of Rejected Executory Contracts and Unexpired Leases, as applicable.

Each Executory Contract and Unexpired Lease that is listed on the Schedule of Rejected Executory Contracts and Unexpired Leases or an Amended Schedule of Rejected Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code. The Debtors or Reorganized Debtors, as applicable, with the consent of the Requisite Backstop Parties, may abandon any personal property that may be located at any premises that are subject to any rejected Unexpired Lease pursuant to section 554 of the Bankruptcy Code.

Proofs of Claim with respect to Claims against any Debtor arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be fFiled with the Bankruptcy Court on or before the Rejection Damages Bar Date; *provided* that the Rejection Damages Bar Date for any such Executory Contract or Unexpired Lease identified on an Amended Schedule of Rejected Executory Contracts and Unexpired Leases shall be the date that is thirty (30) days following the filing of such Amended Schedule. **Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not Filed by the Rejection Damages Bar Date will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and any such Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, settled, released, and discharged, and be subject to the permanent injunction set forth in Article VIII hereof, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** Claims arising from the rejection of the Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Section 3.2(f) of this Plan.

**5.3**    **Cure of Defaults for Assumed or Assumed and Assigned Executory Contracts and Unexpired Leases**

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed or assumed and assigned by the Debtors shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, solely by payment of the Cure amount, as reflected in the applicable Cure Notice, in Cash on the Effective Date or as soon thereafter as reasonably practicable, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree, subject to the prior written consent of the Requisite Backstop Parties. The proposed Cure amount for an Executory Contract or Unexpired Lease that is assumed or assumed and assigned pursuant to this Plan shall be zero dollars unless otherwise indicated in a Cure Notice.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices to the applicable third parties.; *provided* that solely to the extent a Cure amount is related to an Executory Contract or Unexpired Lease that is identified on an Amended Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors shall distribute, or cause to be distributed, such Cure Notice to the applicable third party on the date that such Amended Schedule is Filed. **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment or related Cure amount must be Filed, served and actually received by the Debtors at least seven** days before the Confirmation Hearing.**(7) days before the Confirmation Hearing;** *provided* **that solely with respect to an Executory Contract or Unexpired Lease that is identified on an Amended Schedule of Assumed Executory Contracts and Unexpired Leases, such objection must be Filed, served and actually received by the Debtors or the Reorganized Debtors, as applicable, on or before the date that is seven (7) days following the Filing of such Amended Schedule.** Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure amount related thereto (if any) will be deemed to have assented to such assumption, assumption and assignment, or Cure amount. Notwithstanding anything herein to the contrary, in the event that any Executory Contract or Unexpired Lease is removed from the Schedule of Rejected Executory Contracts and Unexpired Leases after such 14-day deadline, a Cure Notice with

respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider whether such Executory Contract or Unexpired Lease can be assumed or assumed and assigned.

In the event of a dispute between the Debtors and a counterparty to any Executory Contract or Unexpired Lease to be assumed or assumed and assigned regarding (1) the Cure amount related thereto, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, assumption and assignment or the Cure payments required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon in writing by the Debtors or the Reorganized Debtors, as applicable (with the consent of the Requisite Backstop Parties, which consent shall not be unreasonably withheld), and the counterparty to the Executory Contract or Unexpired Lease. Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment, which Final Order or orders may, for the avoidance of doubt, be entered (and any related hearing may be held) after the Effective Date. The Debtors or Reorganized Debtors, as applicable, reserve the right to reject any Executory Contract or Unexpired Lease in resolution of any Cure disputes. If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, will have the right to add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases ~~Date~~ (with the consent of the Requisite Backstop Parties, which consent shall not be unreasonably withheld), in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full and final release and satisfaction of any Cures, Claims or defaults against any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any such Executory Contract or Unexpired Lease at any time before the effective date of assumption or assumption and assignment. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## 5.4    Indemnification

On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan; *provided, however*, the assumption of the obligations under the Indemnification Provisions shall not be deemed an assumption by the Debtors of any contract, agreement, resolution, instrument or document in which such Indemnity Provisions are contained, memorialized, agreed to, embodied or created (or any of the terms or provisions thereof) if such contract, agreement, resolution, instrument or document requires the Debtors or the Reorganized Debtors to make any payments or provide any arrangements (including any severance payments) to any current or former director or officer of any of the Debtors other than indemnification payments, reimbursement and advancement of expenses and other similar payments. Furthermore, the Indemnification Provisions related to the Excluded Directors and Officers shall not be assumed and/or continued. For the avoidance of doubt, nothing in this Section 5.4 shall be a determination of the Allowance, Disallowance or priority of the Claims, if any, of any directors or officers of any of the Debtors that served in such capacity only prior to the Petition Date.

## 5.5    Insurance Policies

Notwithstanding anything in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto, including all D&O Liability Insurance Policies (including tail coverage liability insurance). Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of all such insurance policies,

including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be fFiled, and shall survive the Effective Date.

After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce, modify or restrict in any way, the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect as of the Effective Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date of the Plan shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date.

**5.6    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

**5.7    Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed or assumed and assigned shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**5.8    Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**5.9    Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts or Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

**6.1**    **Distributions on Account of Claims and Interests Allowed as of the Effective Date**

Except as otherwise provided herein or by a Final Order, the Reorganized Debtors or the Distribution Agent shall make initial distributions under the Plan on account of Allowed Claims and Allowed Interests on the Distribution Date; provided, however, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims and Allowed Other Secured Claims shall be paid in accordance with Sections 2.4 and 3.2(a), respectively.

**6.2**    **Special Rules for Distributions to Holders of Disputed Claims and Interests**

Notwithstanding any provision to the contrary herein and except as otherwise agreed by the relevant parties:  (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Disputed Interest until all such disputes in connection with such Disputed Claim or Disputed Interest have been resolved by settlement or Final Order; and (b) any Entity that holds both (i) an Allowed Claim or Allowed Interest and (ii) a Disputed Claim or Disputed Interest, shall not receive any distribution on the Allowed Claim or Allowed Interest unless and until all objections to the Disputed Claim or Disputed Interest have been resolved by settlement or Final Order or the Claims and Interests have been Allowed or expunged.  Any dividends or other distributions arising from property distributed to holders of Allowed Claims or Allowed Interests in a Class and paid to such holders under the Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim or Disputed Interest in such Class that becomes an Allowed Claim or Allowed Interest after the date or dates that such dividends or other distributions were earlier paid to holders of Allowed Claims or Allowed Interests in such Class.

**6.3**    **Delivery of Distributions**

**(a)**    **Record Date for Distributions to Holders of Non-Publicly Traded Securities**

On the Effective Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Effective Date.  Notwithstanding the foregoing, if a Claim, other than one based on a publicly traded Certificate, is transferred and the Debtors have been notified in writing of such transfer less than 10 days before the Effective Date, the Distribution Agent shall make distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

**(b)**    **Distribution Process**

The Distribution Agent shall make all distributions required under the Plan, except that distributions to holders of Allowed Claims governed by a separate agreement, which shall include the DIP Facility, the Indenture, the MDL Facility Credit Agreement, and the First Lien Credit Agreement, and administered by a Servicer, including the DIP Agent, the Indenture Trustee, the MDL Agent and the First Lien Agent, shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the applicable governing agreement, *provided* that distributions to holders of Note Claims shall be made at the direction of the Indenture Trustee and the Indenture Trustee may transfer or direct the transfer of such distribution directly through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise) and will be entitled to recognize and deal for all purposes under the Plan with the holders of Note Claims to the extent consistent with the customary practices of DTC; *provided, further,* that distributions shall be subject in all respects to the right of the Indenture Trustee to assert its Indenture Trustee Charging Lien against such distributions.  All distributions to be made to holders of Note Claims shall be eligible to be distributed through the facilities of DTC and as provided under the Indenture.  Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to holders of Allowed

Claims, including Claims that become Allowed after the Effective Date, shall be made to holders of record as of the Effective Date by the Distribution Agent or a Servicer, as appropriate: (1) to the address of such holder as set forth in the books and records of the applicable Debtor (or if the Debtors have been notified in writing, on or before the date that is 10 days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been fFiled and the Distribution Agent has not received a written notice of a change of address on or before the date that is 10 days before the Effective Date; or (3) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf. The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan. In addition, notwithstanding anything to the contrary contained herein, including this Section 6.3, distributions under the Plan to holders of publicly traded Securities shall be made in accordance with customary distribution procedures applicable to such Securities.

(c)     **Accrual of Dividends and Other Rights**

For purposes of determining the accrual of distributions or other rights after the Effective Date, each of the New Common Stock that will compromise the New Common Stock Equity Pool, and the shares of New Preferred Equity, shall be deemed distributed as of the Effective Date regardless of the date on which it is actually distributed; *provided, however*, the Reorganized Debtors shall not pay any such distributions or distribute such other rights, if any, until after distributions of the New Common Stock or New Preferred Equity, as applicable, actually take place.

(d)     **Compliance Matters**

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

(e)     **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition*, on the Effective Date.

(f)     **Fractional, Undeliverable, and Unclaimed Distributions**

(1)     *Fractional Distributions*. Whenever any distribution of fractional shares of New Common Stock would otherwise be required pursuant to the Plan, the actual distribution shall reflect a rounding of such fraction to the nearest share (up or down), with half shares or less being rounded down. Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

(2)     *Undeliverable Distributions*. If any distribution to a holder of an Allowed Claim or Allowed Interest is returned to the Distribution Agent as undeliverable, no further distributions shall be made to such holder unless and until the Distribution Agent is notified in writing of such holder's then-current address or other necessary information

for delivery, at which time all currently due missed distributions shall be made to such holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is canceled pursuant to Section 6.3(f)(3) below, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

(3)     *Reversion.* Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the applicable Reorganized Debtor and, to the extent such Unclaimed Distribution is New Common Stock, shall be deemed canceled. Upon such revesting, the Claim or Interest of the holder or its successors with respect to such property shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. Nothing contained in the Plan or at law shall require the Debtors, the Reorganized Debtors or any other Distribution Agent to attempt to locate any holder of an Allowed Claim or Allowed Interest.

**(g)     Surrender of Canceled Instruments or Securities**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim is governed by an agreement and administered by a Servicer). Such Certificate shall be canceled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate. Notwithstanding the two immediately preceding sentences, this Section 6.3(g) shall not apply to any Claims and Interests reinstated pursuant to the terms of the Plan.

**6.4     Minimum Distributions**

Holders of Allowed Claims entitled to distributions of $50 or less shall not receive distributions, and each Claim to which this limitation applies shall be discharged pursuant to Article VIII of this Plan and its holder shall be forever barred pursuant to Article VIII of this Plan from asserting that Claim against the Reorganized Debtors or their property.

**6.5     Claims and Interests Paid or Payable by Third Parties**

**(a)     Claims and Interests Paid by Third Parties**

A Claim or Interest shall be reduced in full, and such Claim or Interest shall be Disallowed without an objection to such Claim or Interest having to be fFiled and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim or Interest receives payment in full on account of such Claim or Interest from a party that is not a Debtor or Reorganized Debtor. To the extent a holder of a Claim or Interest receives a distribution on account of such Claim or Interest and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim or Interest, such holder shall repay, return, or deliver any distribution held by or transferred to such holder to the applicable Reorganized Debtor to the extent such holder's total recovery on account of such Claim or Interest from the third party and under the Plan exceeds the amount of such Claim or Interest as of the date of any such distribution under the Plan.

**(b)     Claims and Interests Payable by Insurance Carriers**

No distributions under the Plan shall be made on account of an Allowed Claim or Allowed Interest that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim or Allowed Interest has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim or Interest, then immediately upon such insurers' agreement, such

Claim or Interest may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Notice and Claims Agent without an objection to such Claim or Interest having to be fFiled and without any further notice to or action, order, or approval of the Bankruptcy Court.

      **(c)**     **Applicability of Insurance Policies**

Except as otherwise provided herein, distributions to holders of Allowed Claims and/or Allowed Interests shall be in accordance with the provisions of any applicable insurance policy. Notwithstanding anything to the contrary contained herein (including Article VIII), nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity (other than aany Released Party), including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**6.6**    **Setoffs**

Except as otherwise expressly provided for herein, each Debtor or Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may, but shall not be required to, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature whatsoever that such Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however,* that neither the failure to effectuate such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such holder. In no event shall any holder of Claims be entitled to setoff any such Claim against any Claim, right, or Cause of Action of any Debtor or Reorganized Debtor (as applicable) unless such holder has fFiled a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

**6.7**    **Allocation Between Principal and Accrued Interest**

Except as otherwise provided herein, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to interest, if any, on such Allowed Claim accrued and unpaid through the Effective Date.

# ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

**7.1**    **Committee Designee**

    **(a)**    **Appointment**

On or prior to the Effective Date, the Committee shall appoint the Committee Designee to participate in the post-Effective Date reconciliation process for Convenience Class Claims. The role and responsibilities of the Committee Designee shall terminate after all distributions are made to holders of Allowed Convenience Class Claims from the Convenience Claims Distribution and the Reorganized Debtors so advise the Committee Designee in writing (which notice must be sent via email to the Committee Designee and counsel to the Committee Designee, if any).

(b)        **Rights and Powers**

The Committee Designee and the Reorganized Debtors shall work cooperatively to expeditiously resolve Convenience Class Claims in a cost-effective and expeditious manner consistent with the procedures outlined in this Article VII. The Reorganized Debtors shall provide the Committee Designee with no less than three (3) Business Days' advance notice of any objections to be filed, or settlements to be entered into, with respect to any Convenience Class Claim. To the extent a dispute arises between the Reorganized Debtors and the Committee Designee with respect to the resolution of a Convenience Class Claim that cannot be resolved consensually, the Committee Designee shall have standing solely for the limited purpose of (i) being heard regarding any objection Filed with respect to a Convenience Class Claim by the Debtors or any other party-in-interest and (ii) seeking appropriate relief from the Bankruptcy Court, including objecting to a proposed settlement of any Convenience Class Claim.

Subject to Section 7.1(c) below, the Committee Designee shall be authorized and empowered to retain and pay professionals to represent it with respect to its responsibilities without the approval of the Bankruptcy Court.

(c)        **Payment of Fees and Expenses**

The reasonable and documented fees and expenses of the Committee Designee, including the fees and expenses of any professionals retained by the Committee Designee, in each case, solely to the extent associated with the reconciliation process for the Convenience Claim Distribution and the Convenience Class Claims, shall be paid by the Reorganized Debtors up to the amount of $75,000 in the aggregate without further notice or approval from the Bankruptcy Court within 30 days of receipt of each invoice. For the avoidance of doubt, the Reorganized Debtors shall have no obligation to pay any fees and expenses of the Committee Designee, including the fees and expenses of any professionals retained by the Committee Designee, in excess of $75,000 in the aggregate.

**7.2       Claims and Interests Administration Responsibilities**

After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses its predecessor Debtor had with respect to any Claim or Interest immediately before the Effective Date. Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**7.2̶3       Estimation of Claims and Interests**

Before or after the Effective Date, the Debtors or the Reorganized Debtors may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Interest that is Disputed, contingent, or unliquidated, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim or Interest is estimated. All of the aforementioned Claims and Interests and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims and

Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## 7.34    Adjustment to Claims and Interests Without Objection

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors without an objection to such Claim or Interest having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## 7.45    Objections to Claims and Interests; Time to File

Prior to the Effective Date, the Debtors or any other party in interest may object to the Allowance of any Claim or Interest (unless previously Allowed by an order of the Bankruptcy Court or expressly Allowed pursuant to the terms of the Plan). After the Effective Date, only the Reorganized Debtors may object to the allowance of any Claim or Interest (unless previously Allowed by an order of the Bankruptcy Court or expressly Allowed pursuant to the terms of the Plan); *provided*, *however*, that the U.S. Trustee may object to the Allowance of any Professional Claim. Any objections to those Claims or Interests (other than Administrative Claims) shall be served and ~~filed on or before the later of: (a) the date that is 180 days after the Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in~~ ~~clause (a) hereof.~~ Filed on or before the Claims Objection Deadline. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the objecting party effects service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) by first class mail, postage prepaid, on the signatory on the Proof of Claim as well as all other representatives identified in the Proof of Claim or any attachment thereto; or (iii) if counsel has agreed to accept service, by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Cases (so long as such appearance has not been subsequently withdrawn). From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

## 7.56    Disallowance of Claims and Interests

Any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors. All Proofs of Claim Filed on account of an Indemnification Provision with respect to a director or officer shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Provision is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the applicable Bar Date or requests for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.**

## 7.67    Amendments to Claims

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and the Reorganized Debtors and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

**7.7̶8**    **No Distributions Pending Allowance**

If an objection to a Claim, Interest or portion thereof is Filed as set forth in Article VII of this Plan, no payment or distribution provided under the Plan shall be made on account of such Claim, Interest or portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest, respectively.

**7.8̶9**    **Distributions After Allowance**

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, respectively, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan.  On the next Distribution Date following the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, or as otherwise agreed, the Reorganized Debtors shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law or as otherwise provided herein.

**7.9̶10**    **Single Satisfaction of Claims and Interests**

Holders of Allowed Claims or Allowed Interests may assert such Claims against or Interests in each Debtor obligated with respect to such Claim or Interests, and such Claims and Interests shall be entitled to share in the recovery provided for the applicable Class of Claims or Interests against each obligated Debtor based upon the full Allowed amount of the Claim or Interest.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of Allowed Claims or Allowed Interests exceed 100% of the underlying Allowed Claim or Allowed Interest plus applicable interest.  For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay U.S. Trustee Fees until such time as a particular case is closed, dismissed, or converted.

**ARTICLE VIII**

**EFFECT OF CONFIRMATION OF THE PLAN**

**8.1**    **Discharge of Claims and Termination of Interests**

**Except as otherwise provided for herein or in the Confirmation Order, effective as of the Effective Date:  (a) the rights afforded in the Plan and the treatment of all Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against or in the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests that arose before the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, shall be satisfied, settled, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h) or 502(i) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other or further Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all such Claims and other debts and liabilities against the Debtors and satisfaction, termination or cancellation of all Interests and other rights of equity Security holders in the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim.**

**8.2**     **Releases by the Debtors**

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, in exchange for their cooperation and, to the extent applicable, provision of new money pursuant to the Restructuring Transactions, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments, the Backstop Order, the Restructuring Support Agreement, the negotiation, formulation, preparation, implementation or administration of the Plan, the Plan Supplement, the Disclosure Statement, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim, cause of action or other assertion of liability released pursuant to the Debtor Release.

**8.3**     **Releases by Holders of Claims and Interests**

Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments, the Backstop Order, the Restructuring Support Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, or any other Restructuring Documents, any other act or omission, transaction, agreement, event, or other

occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

8.4     **Exculpation**

Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any cause of action, claim or other assertion of liability for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, administration, implementation or Filing of, as applicable, the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, the Rights Offerings, the Rights Offering Procedures, the DIP Facility, the Exit Facilities, the DIP Documents, the Exit Facility Documents, the New Warrant Documents, the New Organizational Documents, the Backstop Purchase Agreement, the Backstop Order, the Backstop Commitments, any Restructuring Transaction, or any other Restructuring Document or contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of Consummation, the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the Solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the Solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e).

8.5     **Injunction**

Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 8.2 or Section 8.3 of this Plan, discharged or terminated pursuant to Section 8.1 of this Plan, or are subject to exculpation pursuant to Section 8.4 of this Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties, or any of their respective properties or Estates:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or by any means any judgment, award, decree, or order on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind on account of, in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has fFiled, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or

continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan.

**8.6    Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

**8.7    Release of Liens**

Except as otherwise specifically provided in the Plan, the Exit Facility Documents (including in connection with any express written amendment of any mortgage, deed of trust, Lien, pledge, or other security interest under the Exit Facility Documents), or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors, the DIP Agent, the First Lien Agent, the MDL Agent or any other holder of a Secured Claim.  In addition, at the sole expense of the Debtors or the Reorganized Debtors, the DIP Agent, the First Lien Agent and the MDL Agent shall execute and deliver all documents reasonably requested by the Debtors, Reorganized Debtors or administrative agent(s) or indenture trustee(s) for the Exit Facilities to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors and their designees to file UCC-3 termination statements and other release documentation (to the extent applicable) with respect thereto.

**8.8    Reimbursement or Contribution**

If the Bankruptcy Court Disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever Disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

**8.9    Recoupment**

In no event shall any holder of a Claim or Interest be entitled to recoup such Claim or Interest against any Claim, right, interest, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

**8.10    Subordination Rights**

Any distributions under the Plan to holders of Claims or Interests shall be received and retained free from any obligations to hold or transfer the same to any other holder and shall not be subject to levy, garnishment, attachment, or other legal process by any holder by reason of claimed contractual subordination rights.  Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity

from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

**8.11      Professional Responsibility**

Notwithstanding anything else to the contrary in this Article VIII, nothing in the Plan shall limit the liability of the attorneys to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8, Rule 1.8(h)(1) (2009); *provided, however,* that any party seeking to assert such a claim against any such attorney must first seek relief, on proper notice, from the Bankruptcy Court.

**ARTICLE IX**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**9.1      Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 9.2 of this Plan:

(a)      the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Amount;

(b)      each of the DIP Orders shall have been entered by the Bankruptcy Court, and the Final DIP Order shall not have been stayed or modified or vacated on appeal;

(c)      the Disclosure Statement Order shall have been entered by the Bankruptcy Court and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

(d)      the Confirmation Order shall have been entered by the Bankruptcy Court confirming the Plan in form and substance consistent in all material respects with the Restructuring Support Agreement and otherwise reasonably acceptable to the Requisite Parties, and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

(e)      the Debtors shall not be in default under the DIP Facility or the Final DIP Order (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived by the DIP Lenders or cured by the Debtors in a manner consistent with the DIP Facility and the DIP Orders);

(f)      the Plan and the Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but prior to the Effective Date, shall have been made in accordance with Section 10.1 of this Plan;

(g)      the Backstop Purchase Agreement shall not have been terminated, and all conditions precedent (including, without limitation, the entry of the Backstop Order by the Bankruptcy Court and the Backstop Order becoming a Final Order, but excluding any conditions related to the occurrence of the Effective Date) to the obligations of the Backstop Parties under the Backstop Purchase Agreement shall have been satisfied or waived in accordance with the terms thereof, and the closing of the Backstop Purchase Agreement shall occur concurrently with the occurrence of the Effective Date;

(h)      the Exit Facility Documents shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the Exit Facilities shall have been waived or satisfied in accordance with the terms thereof and the closing of the Exit Facilities shall occur concurrently with the occurrence of the Effective Date;

**(i)**      all conditions precedent to the issuance of the New Common Stock, the New Preferred Equity and the New Warrants, other than any conditions related to the occurrence of the Effective Date, shall have occurred;

**(j)**      the New Organizational Documents shall have been duly filed with the applicable authorities in the relevant jurisdictions;

**(k)**      all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the Restructuring Transactions shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

**(l)**      the Restructuring Support Agreement shall not have validly terminated as to all Restructuring Support Parties thereto and shall be in full force and effect and shall not be the subject of a pending motion to reject, and the Debtors and the Restructuring Support Parties shall be in compliance therewith;

**(m)**      with respect to all documents and agreements necessary to implement the Plan: (1) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable Governmental Units in accordance with applicable laws; and (3) such documents and agreements shall have been effected or executed;

**(n)**      this Plan and all other Restructuring Documents shall be in form and substance consistent in all material respects with the Restructuring Support Agreement and otherwise reasonably acceptable to the Requisite Parties;

**(o)**      all Transaction Expenses (including Backstop Expenses) shall have been paid in full, in Cash, in accordance with the Restructuring Support Agreement, the Backstop Purchase Agreement, the Plan, the DIP Orders, and the Backstop Order, as applicable;

**(p)**      there shall be no ruling, judgment or order issued by any Governmental Unit making illegal, enjoining, or otherwise preventing or prohibiting the consummation of the Restructuring Transactions, unless such ruling, judgment or order has been stayed, reversed or vacated within three (3) Business Days after such issuance; and

**(q)**      there shall be no material litigation or investigation by any Governmental Unit involving the Debtors as of the Effective Date that has had, or would reasonably be expected to have, a material adverse effect on the business, financial condition or results of operations of the Reorganized Debtors, taken as a whole.

**9.2**      **Waiver of Conditions Precedent**

The Debtors, with the prior written consent of the Requisite Backstop Parties and the Requisite Consenting First Lien Lenders, may waive any of the conditions to the Effective Date set forth in <u>Section 9.1</u> of this Plan (except for <u>Section 9.1(d)</u>) at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan.

**9.3**      **Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then, except as provided in such Final Order, the Plan will be null and void in all respects, and nothing contained in the Plan, the Disclosure Statement, or the Restructuring Support Agreement shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by an Entity; (b) prejudice in any manner the rights of any Debtor or any

other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

**9.4**     **Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

ARTICLE X

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**10.1**     **Modification of Plan**

Effective as of the date hereof, with the consent of the Requisite Backstop Parties:  (a) the Debtors reserve the right, in accordance with in accordance with section 1127(a) of the Bankruptcy Code, the Bankruptcy Rules and any applicable court order, to amend or modify the Plan before the entry of the Confirmation Order, in either case consistent in all material respects with the terms and conditions set forth herein; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, in each case consistent in all material respects with the terms and conditions set forth herein. Notwithstanding anything to the contrary herein, the Debtors or the Reorganized Debtors, as applicable, shall not amend or modify the Plan in a manner inconsistent in any material respect with the Restructuring Support Agreement.  A holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claim or Interest of such holder.

**10.2**     **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation of votes thereon pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**10.3**     **Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all Debtors before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then:  (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity; *provided*, *however*, that all orders of the Bankruptcy Court and all documents executed pursuant thereto, except the Confirmation Order, shall remain in full force and effect.

ARTICLE XI

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.       Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against or Interest in a Debtor, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims and Interests;

2.       decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.       resolve any matters related to Executory Contracts or Unexpired Leases, including:  (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.       ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.       adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.       enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.       enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.       grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.       issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including with respect to:  (a) the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to Section 6.5(a) of this Plan; (b) the releases, injunctions, and other provisions contained in Article- VIII of this Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) section 1141 of the Bankruptcy Code;

11.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.      consider any modifications of the Plan to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.      hear and determine matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

15.      enter an order or Final Decree concluding or closing the Chapter 11 Cases;

16.      enforce all orders previously entered by the Bankruptcy Court;

17.      decide and resolve all matters related to the Rights Offerings, the Backstop Purchase Agreement, the Backstop Commitments or the Backstop Order; and

18.      hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the Exit Facility Documents shall be governed by the jurisdictional provisions therein.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### 12.1    Immediate Binding Effect

Subject to Section 9.1 hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

### 12.2    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 12.3    Dissolution of the Committee

On the Effective Date, the Committee shall dissolve automatically and the members thereof and their respective Professionals, including the Committee's professionals, shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, provided, however, that the Committee Designee will continue to participate in the post-Effective Date reconciliation of Convenience Class Claims, as more fully described in Section 7.1 of this Plan.

### 12.4    Payment of Statutory Fees

All U.S. Trustee Fees shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

### 12.5    Reservation of Rights

The Plan shall have no force or effect unless and until entry by the Bankruptcy Court of the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action

by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

**12.6    Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**12.7    Service of Documents**

Any pleading, notice, or other document shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

| | |
|---|---|
| **Debtors/Reorganized Debtors** | **21st Century Oncology Holdings, Inc.**<br>2270 Colonial Boulevard,<br>Fort Myers, Florida 33907<br>Attn:    Paul Rundell |
| ~~Proposed~~ Counsel to Debtors | **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:    Christopher Marcus, P.C.<br>            John T. Weber |
| | **Kirkland & Ellis LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn:    William A. Guerrieri<br>            Alexandra Schwarzman |
| **Committee** | **Morrison & Foerster LLP**<br>250 West 55th Street<br>New York, New York 10023<br>Attn.:    Lorenzo Marinuzzi<br>            Jonathan I. Levine<br>            Benjamin Butterfield |
| **United States Trustee** | **Office of the United States Trustee**<br>**for the Southern District of New York**<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn.:    Paul K. Schwartzberg, Esq. |
| **Backstop Parties** | **Stroock & Stroock & Lavan LLP**<br>180 Maiden Lane<br>New York, New York 10038<br>Attn.:    Jayme T. Goldstein<br>            Samantha Martin<br>            Odelia Lee |

**12.8**    **Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**12.9**    **Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**12.10**    **Plan Supplement**

After any of such documents included in the Plan Supplement are Filed, copies of such documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from www.kccllc.net/21co or the Bankruptcy Court's website at www.nysb.uscourts.gov.  Unless otherwise ordered by the Bankruptcy Court, to the extent any document in the Plan Supplement is inconsistent with the terms of the Plan, the Plan shall control.  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date consistent in all material respects with the Restructuring Support Agreement.

**12.11**    **Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors, the Requisite Consenting First Lien Lenders and Requisite Backstop Parties, consistent with the terms set forth herein and the Restructuring Support Agreement; and (c) nonseverable and mutually dependent.

**12.12**    **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, equity holders (regardless of whether such interests are held directly or indirectly), officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, neither any of such Persons or Entities nor the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the Solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan.

**12.13**    <u>**Closing of Chapter 11 Cases**</u>

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; *provided*, that, following the Effective Date, the Reorganized Debtors may seek to close certain of the Chapter 11 Cases, other than the Chapter 11 Case pending for 21CH, that have been fully administered, notwithstanding the fact that the reconciliation of General Unsecured Claims may be ongoing and the shares of New Common Stock comprising the New Common Stock Equity Pool may not yet been issued and distributed.

**12.14**    <u>**Waiver or Estoppel**</u>

Each holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement or the Debtors or Reorganized Debtors' right to enter into settlements was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court or the Notice and Claims Agent prior to the Confirmation Date.

[*Remainder of page intentionally left blank.*]

Dated: ~~July 14~~October 13, 2017

21ST CENTURY ONCOLOGY HOLDINGS, INC.
on behalf of itself and all other Debtors

*/s/ Paul Rundell*

Paul Rundell
Interim Chief Executive Officer
21st Century Oncology Holdings, Inc.
2270 Colonial Boulevard
Fort Myers, Florida 33907