B1040 (FORM 1040) (12/15)

|  ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>SYLVIA CARAVETTA | **DEFENDANTS**<br>21st Century Oncology Holdings, Inc |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Deliberately harmed by denying medical treatment for breast cancer  523(a)(6) willful and malicious injury

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ 25 million dollars |
| Other Relief Sought | |

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES |||| 
|---|---|---|---|
| NAME OF DEBTOR<br>21st Century Oncology Holdings Inc | BANKRUPTCY CASE NO.<br>17-22770 (RDD) |||
| DISTRICT IN WHICH CASE IS PENDING<br>Southern District of New York | DIVISION OFFICE | NAME OF JUDGE<br>Drain ||
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF<br>Sylvia Caravetta | DEFENDANT<br>21st Century Oncology Holdings Inc | ADVERSARY PROCEEDING NO. ||
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE ||
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>[signature] ||||
| DATE<br>12/22/18 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Sylvia Caravetta |||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| 21st Century Oncology Holdings, Inc., et al., | Case No. 17-22770 (RDD) |
| Reorganized Debtors. | Jointly Administered |
| Sylvia Caravetta Pro Se Plaintiff | Adv. Proc. No. |

### Disability Accommodation

I am disabled and my disability is mental health. Due to my disability and my neuropsychological mental disorder I require extra time to access my case and file all responses.
I will make every attempt to respond within the time limits set and I very much want to respond within the time limits set, but my mental health obstacles are difficult to overcome most of the time.
I require extra time up to 45 days to access my case and file all responses.

Respectfully submitted this day of , 2018
Dec 22,

by Sylvia Caravetta

Sylvia Caravetta
522 Monaco K
Delray Beach, FL 33446

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                                        Chapter 11
21st Century Oncology Holdings, Inc., et al.,                 Case No. 17-22770 (RDD)

Reorganized Debtors.                                          Jointly Administered

Sylvia Caravetta Pro Se Plaintiff                             Adv. Proc. No.

## COMPLAINT

In this complaint I am demanding damages owed to me by the debtors who intentionally harmed me.

My rights have been violated and I have been intentionally harmed by this court as well as by the debtors.

### My rights violated and intentionally harmed by this court:

My claim, Claim Number 2466, was wrongly denied and expunged by this court and Judge Drain.

The basis of my claim is a tort, intentional activity which harmed me done to me by the debtors prior to bankruptcy, and this is not dischargeable.

I requested a new judge be assigned to my claim and that request was entered as a "letter" and filed on December 3, 2018 and entered on December 6, 2018. However as of this date I have not received any response whatsoever, even though multiple other actions have taken place in this case since then. My request has been completely ignored. I have waited for a response up to the time I am filing this complaint and I am still waiting.

I have deliberately been harmed due to disability.

This court refused to take into consideration my disability accommodation requirement which is a violation of federal law. I notified the court that my mental disorders make it difficult for me to respond in a timely manner and that I need more time to respond. This ADA requirement of mine to access my case was ignored.

I have deliberately been harmed due to my pro se status.

I am not allowed to file electronically, ECF, as every attorney is allowed to do. This is unfair to me in that it makes it more difficult to respond and delays my responses as opposed to uploading responses in minutes. I have had a PACER account for many years. I know how to

page 1 of 8

file electronically. I called the court and was told by a female in Judge Drain's courtroom that I am not allowed to use ECF. I do not know if ALL Pro Se parties are not allowed, or that just I am not allowed, and no one would respond to me to answer that question.

I was not given sufficient time to respond to evidence, meaning the Declaration of Marla Dudak. In fact, I was actually working on my response when my claim was denied, etc. In fact, the debtors LACKED evidence to rebut the information I provided in MY CLAIM. This was ignored by the judge and my claim was dismissed before I could direct attention to that.

I was deliberately blocked from participating in the hearing that I was finally able to attend telephonically on November 16, 2018. Up to that date I did not have phone service; the judge muted his side so that individuals located in the courtroom could hear him but I could not, and that is a violation of my rights in this case. I could not "un-mute" myself; the muting was done on the courtroom side. I was also hung up on/disconnected numerous times during the hearing. During the entire hearing loud landscaper activity was going on at my residence which I have no control over whatsoever and if I had been given a specific time to be heard I could have arranged for that, but that did not happen. Instead, I was told to attend beginning at 10:00am and the hearing lasted for at least 2 hours, during which time I was muted and disconnected numerous times. Due to the fact of the way the hearing was handled, that I was disconnected and muted, I was actually deliberately not permitted to participate in the hearing.

I was also told by the debtors attorney Nathaniel Koslof that I should contact Andrew Kissner of Morrison Foerster for help but Kissner refused to assist me in any way whatsoever, however he assisted others in this claim.

**My rights violated and intentionally harmed by this debtors:**

I was intentionally harmed by the actions taken against me by two 21st Century Oncology physicians, Dr. Dudak and Dr. Bohrer, constituting deliberate willful and malicious injury as defined by FRBP IV. Section 523(a)(6).

The only evidence provided by 21st Century Oncology, Dudak's Declaration, actually confirms my claim.

No other evidence, in the form of a declaration or anything else, was provided by Dr. Bohrer, due to the fact that my numerous emails prove also that I was harmed by this physician.

I advised the debtors that I have copies of all emails sent and received in this case.

I was deliberately denied treatment for breast cancer by Dudak, a breast cancer surgeon, and Bohrer, an oncologist.

I was treated like trash by Dudak and Bohrer and their treatment towards me caused extreme mental, emotional, psychological and physical distress.

Both physicians deliberately violated my rights to refuse treatment; I did not want radiation or chemotherapy, I did want aromatase inhibitors and surgery only.

page 2 of 8

Emails and timeline of interaction between myself and doctors Dudak and Bohrer are below.

## DUDAK:

I was denied treatment and deliberately and fraudulently misled regarding tests by Dudak and because of Dudak's actions my credit was damaged and I was referred to collections.

On June 1, 2017, I went to my office appointment with Dudak and brought biopsy test results with me. Despite this, Dudak stated that she wanted to order more tests on the biopsy in order to determine whether the cancer was "hormone driven" or "HER2 driven" and to do that she would send the biopsy slides all the way across the country to Dr. Press at the University of Southern California (USC) because "he is a famous doctor."

I believed Dudak when she stated there was tests that could determine if the cancer was HER2 driven or hormone driven.

Dudak is a surgeon. Her expertise is surgery. She cannot advise on tests. Advising on tests is beyond the scope of her specialty and she cannot interpret tests.

Dudak tested my biopsy fraudulently a 3rd and 4th time for HER2 when those tests had already been done twice prior to my appointment with Dudak.

Dudak fraudulently ordered a less sensitive HER2 test when 2 prior more sensitive HER2 tests had already been done.

Dudak fraudulently sent the biopsy to a lab in California in order to cover up the repeat testing fraud and also to deliberately confuse me by telling me false information about fictitious testing to determine HER2 or hormone driven cancer. If she had told me that she was sending the biopsy slides for more HER2 testing I would not have authorized it.

Later when I learned that the tests she ordered were only HER2 tests previously completed, I advised the USC lab that due to the fact that the tests done on my biopsy were fraudulent and repetitive I would not pay for them and I would also refer the fraudulent activity to Medicare which I did do. USC Lab referred me to collections and thereby damaged my credit.

Dudak also tried to mislead me about Medicare payments regarding testing the biopsy and other testing. Dudak informed me about the mammaprint test, then stated that Medicare might not pay for it unless I have surgery and other treatment by 21st Century Oncology physicians.

I was suspicious about this and had never been told anything like this before so I contacted Medicare. Medicare informed me that Medicare does not make those types of restrictions, such as not paying for testing until a patient agrees to have surgery or other treatment, etc.

### Dudak Emails and Timeline:

June 3 2017: I email carol.tripoli@21co.com and state that I allow her to send my biopsy to Dr. Press. I state that I want a mammaprint test done on my biopsy. I state that Medicare pays

for mammaprint test.
June 5 2017: Tripoli responds that Dudak is on vacation but she will give her this message.
June 5 2017: I ask if the biopsy was forwarded to Press. I ask if someone else performs tasks like requesting mammaprint tests when Dudak is not there.
June 5 2017: Tripoli responds test request sent to Press. Tripoli states Dudak wants to wait for Press' test results first. Tripoli states if Press' test comes back before Dudak returns she will find out if she can request mammaprint.
June 5 2017: I respond to Tripoli and I state I want both tests done and I do not want to wait until Dudak comes back and I have rights as a patient.
June 6 2017: I email Tripoli and state I want RX for aromatase inhibitors and want to start taking them now and that my research shows it shrinks tumors before surgery and I have been asking for aromatase inhibitors since March 2017. I state I gave Dudak my test results as requested. I state I have rights as a patient and my rights have been violated.
June 7 2017: Tripoli responds she had June 6 off and will forward my emails to Dudak.
June 7 2017: I respond to Tripoli and state I am sorry for bugging her and Dudak about this.
June 13 2017: I email Tripoli and ask if my test results from Press are back and state I want a copy.
June 13 2017: Tripoli responds test results from Press are not back and she will email me when she receives them.
June 15 2017: Tripoli emails me and states here are your HER2 test results and states she will order mammaprint test today and she attached the HER2 test results from Dr. Press.
June 15 2017: I respond to Tripoli asking her if only HER2 was tested or if any other tests were done on my biopsy. I state that now Dudak has test results and now I want aromatase inhibitors RX and I give her my pharmacy information. I state I want a response to this email today.
June 15 2017: I email Tripoli again and ask her why more HER2 tests were done when I already gave Dudak the HER2 tests I had. I ask why the biopsy was sent to California. I ask if my biopsy was put into a clinical trial at Dr. Press' hospital.
June 15 2017: I email Tripoli again and tell her a page is missing from my test results.
June 15 2017: Tripoli responds and attaches entire report. Tripoli states Dudak will call me.
June 16 2017: Tripoli emails and states that she has figured my payment for surgery next Friday and instructs me how I can pay.
June 16 2017: I email Tripoli and state I want to be informed of all things and that is my right as a patient. I state I am waiting for my mammaprint results. I ask where the mammaprint test was sent. I ask why Dudak has not prescribed aromatase inhibitors yet. I ask why Dudak hasn't referred me to an oncologist yet. I state I have declined most cancer treatment and that is my right. I state I am postponing my surgery at this time because I want to see all test results.
June 18 2017: I email Tripoli and state that I received a phone message from Dudak who said I have HER2 cancer and I would not get aromatase inhibitors until after surgery and radiation. I state that at my June 1st appointment Dudak said she would find an oncologist for me but as of this date I do not have an oncologist. I state that I am obese but have lost weight and my research tells me that fat blocks the action of herceptin. I state I want hormone treatment and have been asking for aromatase inhibitors since March 2017. I state that since June 2 I have felt a burning sensation in my right armpit and fatty area in my right lateral chest. I state that my upper body is abnormally fatty due to having liposuction done on my abdomen in 2009 by my gynecologist who told me that my abdomen was protrusive however it was protrusive due to uterine fibroids that he did not treat at that time but that I had myomectomy in 2012.
June 19 2017: Tripoli responds giving 2 names of oncologists Drs. Reddy and Bohrer.

page 4 of 8

June 19 2017: I email Tripoli and thank her for names of oncologists and state I will email next week about mammaprint.
June 19 2017: Tripoli responds OK.
June 28 2017: I email Tripoli and ask if my mammaprint test is back yet.
June 28 2017: Tripoli responds that she called company and test should be back Monday.
June 28 2017: I respond to Tripoli and ask her the name of the company.
June 28 2017: I email Tripoli and ask her if Agendia is the name of the mammaprint company.
June 29 2017: Tripoli responds that the mammaprint was sent to Agendia.
July 3 2017: Tripoli emails stating that mammaprint results came in but are inconclusive and state unable to provide results for this specimen.
July 3 2017: I respond to Tripoli and ask her to forward the test results to me.
July 3 2017: Tripoli responds and attachs the mammaprint report.
July 3 2017: I email Tripoli and state I want another mammaprint test done.
July 3 2017: Tripoli responds that Dudak stated that my new oncologist can order a new test.
July 3 2017: I respond to Tripoli and ask if Dudak is refusing to order another mammaprint?
July 3 2017: Tripoli responds yes.
July 3 2017: I email Tripoli and state that Dudak ordered tests for the information that I already provided prior to my appointment with her June 1 and she also stated that the tests she ordered would give information on whether my cancer was hormone (ER/PR) driven or HER2 driven but the tests did not show that and were only testing for HER2 which I already knew. I stated Dudak is refusing to send another test for information I do not know.
July 3 2017: I email Tripoli correcting a typographical error for ER/PR.
July 7 2017: I email Tripoli and withdraw all permissions I signed and request a complete copy of my records and state that I will sign a release if I need to.
July 7 2017: I email Tripoli stating I want answers to why my biopsy was sent again for HER2 testing I already had, and why Dudak told me the testing would be to find out if the cancer was hormone driven or HER2 driven when that was not what was actually ordered.
July 8 2017: I email Tripoli and tell her to make sure my address is correct on my records or I will not receive them and that the letter carrier advised me to tell her that. I stated that I want every single thing in my file sent to me.
September 6 2017: I email Tripoli and advise that as of this date I have not received my records.
**NO RECORDS RECEIVED OR FURTHER RESPONSE FROM DUDAK'S OFFICE.**

**Emails to Dr. Press of USC (University of Southern California):**
June 16 2017: I emailed Press and Villalobos stating I received HER2 test results from this lab but was told that other testing would be done on the biopsy.
June 16 2018: Villalobos responded stating that Dudak sent orders to test for HER2 via IHC and FISH tests and for no other tests.
June 16 2018: I respond to Villalobos stating I am confused and I want to know if there is a test to determine if a cancer is ER/PR (hormone) driven versus HER2 driven.
June19 2018: I email again but only to Press and state no one responded to me and that I want a response and want to know if my biopsy was used for some other reason like a clinical trial, etc.
June 20 2018: Press responds that only HER2 testing was done on my biopsy.
June 20 2018: I ask again if my test results were entered into a clinical trial, etc.
June 22 2018: Press responds that only HER2 testing was performed on my biopsy and my test results were not entered into any clinical trial but my emails and test results are in the USC database as legally required.

page 5 of 8

July 27 2017: I email patient accounts, patientaccounts@med.usc.edu and advise that due to the fact that these are repeated tests I will not pay for them and I will also report it to Medicare.
July 27 2018: Received "automatic reply" from patientaccounts@med.usc.edu stating my email was received.

## BOHRER:

I never had an office visit with Dr. Bohrer, but at her request, I submitted my medical records. After she viewed my records she refused to see me; she refused to make an appointment so that I could get treatment.

My biopsy test showed that my cancer was high percentage hormone, estrogen and progesterone ("ER/PR"), receptor cancer.

### Bohrer Emails and Timeline:

June 20 2017: I email teresa.williams@21co.com and state that I spoke with her on the phone but the connection was bad so I am emailing her. I describe the tests I have had so far on the biopsy and on myself, and that I have declined chemotherapy, herceptin, and that I am obese but losing weight and have Type 2 Diabetes and hyperthyroid. I state I only want to be treated with aromatase inhibitors and won't consent to more testing.
June 20 2018: I forward the same email to teresa.williams@21co.com adding my age and menopause status.
June 22 2018: Teresa Williams responds quoting Dr. Bohrer that she would be happy to offer that treatment but needs to see her records before she comes in.
June 28 2018: I respond that I will get those to her no later than next week.
August 11 2017: I email Teresa Williams stating I have attached my records and attach the records.
September 6 2017: I email Teresa Williams stating that I sent the records as requested but didn't get an appointment yet and ask for the phone number and location of the office.
September 6 2017: I forward the same email sent to Teresa Williams with the attached records to Claraibel.Delgado@21co.com.
September 6 2018: I email Delgado and state that I just spoke to her on the phone but got cut off. I state that I previously emailed Williams. I state I refuse chemotherapy, therapy for HER2 and only want to be treated with aromatase inhibitors. I stated it is my right as a patient to refuse treatment. I give my phone number. I state I want to make an appointment today and that I need the office location address.
September 6 2018: I email Delgado again and tell her I spoke to her on the phone a half hour ago and am waiting for an appointment. I stated that she stated she would speak to Dr. Bohrer and give her the same information I already gave Williams. I give my phone number.
September 6 2018: I email Delgado. I state I am being re-routed to answering service even though the office is open. I state that I was hung up on while Delgado was asking if she could make an appointment for me. I state I have no other records and will not sign a release for other records. I state I would allow records from an imaging company to be sent. I state if I do not receive an appointment today I would take other action.
**NO FURTHER RESPONSE FROM BOHRER'S OFFICE.**

page 6 of 8

**Response to Dudak's Declaration:**

Dudak's declaration confirms everything I stated in my claim except for her comments about the medical records; I never received my records from Dudak.

Dudak is a surgeon. Her treatment is limited to surgery.

Dudak admits to ordering HER2 testing. The test result I brought to her office was a HER2 test result. This means that she ordered the exact same test as the test result that I brought on my office visit.

Dudak calls the test results I brought to her "conflicting" but she ordered the identical test. Since Dudak ordered the identical test, this means that she then had 2 "conflicting test results." She doesn't explain why she ordered the exact same test if the first test results were "conflicting."

I never gave consent for another HER2 test. She deliberately lied to me and stated she was ordering a different type of test, but in fact, all she did was just order another HER2 test from a lab across the country. The HER2 test she ordered was not as advanced as the HER2 test I brought with me to my office visit.

Dudak states I wouldn't follow her treatment plan and that is why she discharged me from the practice. Dudak wanted me to have chemotherapy and radiation and she wanted me to make an appointment for radiation therapy with a 21st Century Oncology physician. In the state of Florida, a patient may choose to accept or reject any type of treatment. I chose to reject chemotherapy and radiation. I wanted surgery and hormone inhibitors/aromatase inhibitors that inhibit the hormone action and influence on the cancer cells.

Dudak's "treatment plan" is surgery. Dudak is a surgeon. Dudak's "treatment" is surgery. Dudak could not offer any other type of treatment. I never rejected her treatment plan. I wanted surgery. That's why I went to her in the first place. My rejecting or accepting other types of treatment is not in Dudak's purview. Dudak rejected me and refused to perform surgery on me in a despicable and unprofessional way.

Dudak bizarrely claims that the Debtors provided me with a copy of my medical records.

Dudak also states that I received my records via email.

This means Dudak had difficulty reading and comprehending my "Response to Fourth Omnibus Objection" in which I clearly stated that I sent my records – the same records I brought with me to Dudak – to Bohrer via email. Dudak read that and then believed that I had received my records via email.

AS OF THIS DATE, I HAVE NEVER RECEIVED MY MEDICAL RECORDS FROM DR. MARLA DUDAK OF 21st CENTURY ONCOLOGY WHICH IS ILLEGAL IN FLORIDA.

I DO NOT HAVE A COPY OF MY MEDICAL RECORDS FROM 21st CENTURY ONCOLOGY WHATSOEVER.

page 7 of 8

NO ONE HAS EVER SENT ME A COPY OF MY MEDICAL RECORDS FROM 21st CENTURY ONCOLOGY.

Dudak's declaration verifies that she did exactly what I said she did: she ordered duplicate tests, refused to treat me, then refused to provide my medical records.

Response to Bohrer's Declaration and other evidence:

No other declaration was provided. No other evidence was provided.

**Compensation Demand:**

I was deliberately and willfully denied treatment for breast cancer by two 21st Century Oncology physicians.

The treatment I sought was basic, surgery, and aromatase inhibitors which are known to impact growth of breast cancer.

I was maliciously and deliberately denied basic treatment for breast cancer and I demand to be compensated in the amount of 25 million dollars.

**Explanation for compensation demand:**

In November 2018, a jury in Oklahoma ordered the insurance company Aetna to pay 25 million dollars to the family of a woman who died of cancer. Aetna had refused to pay for a type of radiation treatment stating that it was experimental. The treatment was in fact covered by Medicare. The woman died a year later after receiving the treatment she sought which was paid for by mortgaging her home. The jury ruled that Aetna "recklessly disregarded its duty to deal fairly and in good faith" with the patient.
I was treated in a manner worse than the Aetna patient was treated.
I was denied the most basic first-line treatment, surgery, in a deliberate and malicious way.
I was also denied treatment I sought for the hormone factor of my cancer.
Neither Dudak or Bohrer treated me with compassion or in good faith. Their conduct towards me was evil in the extreme and no explanation was given for refusing to treat me whatsoever. So it is for these reasons that I believe I am owed this level of compensation.

Respectfully submitted this day of , 2018
Dec 22,

by Sylvia Caravetta

Sylvia Caravetta
522 Monaco K
Delray Beach, FL 33446

page 8 of 8