**Hearing Date and Time: April 15, 2019 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: April 8, 2019 at 4:00 p.m. (prevailing Eastern Time)**

Jeffrey R. Gleit, Esq.
Allison H. Weiss, Esq.
Clark A. Freeman, Esq.
**SULLIVAN & WORCESTER LLP**
1633 Broadway
New York, New York 10019
(212) 660-3000 (Telephone)
(212) 660-3001 (Facsimile)

*Counsel to the Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF REORGANIZED DEBTORS' MOTION PURSUANT TO 11 U.S.C. § 350(b), RULE 5010 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 5010-1 OF THE LOCAL BANKRUPTCY RULES FOR THE SOUTHERN DISTRICT OF NEW YORK TO REOPEN CHAPTER 11 CASE

**PLEASE TAKE NOTICE** that on March 22, 2019, 21st Century Oncology Holdings,

Inc. and its reorganized debtor affiliates (collectively, the "**Debtors**" and after the Effective

Date[2] of the Plan, the "**Reorganized Debtors**"), filed the attached *Reorganized Debtors' Motion*

*Pursuant to 11 U.S.C. § 350(b), Rule 5010 of the Federal Rules of Bankruptcy Procedure and*

*Local Rule 5010-1 of the Local Bankruptcy Rules for the Southern District of New York to*

---

[1]    Each of the Reorganized Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

*Reopen Chapter 11 Case* (the "**Motion**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

PLEASE TAKE FURTHER NOTICE that the Motion is scheduled to be heard by the Bankruptcy Court on **April 15, 2019 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Hearing**").

PLEASE TAKE FURTHER NOTICE that responses or objections, if any, to the Motion shall (i) be in writing, (ii) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and (iii) be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M–399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M–399, to the extent applicable, and served upon the undersigned counsel—so as to be ***actually received*** on or before **April 8, 2019, at 4:00 p.m. (prevailing Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that, if no Objections to the Motion are timely filed and served, the Reorganized Debtors shall, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as **Exhibit A** to the Motion, which the Bankruptcy Court may enter, granting the Motion, with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates in open court at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and all other documents filed in the chapter 11 cases may be obtained by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: New York, New York
        March 22, 2019

**SULLIVAN & WORCESTER LLP**

By: */s/ Jeffrey R. Gleit*
Jeffrey R. Gleit, Esq.
Allison H. Weiss, Esq.
Clark A. Freeman, Esq.
1633 Broadway
New York, New York 10019
(212) 660-3000 (Telephone)
(212) 660-3001 (Facsimile)
jgleit@sandw.com
aweiss@sandw.com
cfreeman@sandw.com

John Terzaken, Esq.
Abram J. Ellis, Esq.
**SIMPSON THACHER & BARTLETT LLP**
900 G Street, N.W.
Washington, D.C. 20001
(202) 636-5858 (Telephone)
(202) 294-3539 (Facsimile)
john.terzaken@stblaw.com
aellis@stblaw.com

*Counsel for the Reorganized Debtors*

**Hearing Date and Time:  April 15, 2019 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  April 8, 2019 at 4:00 p.m. (prevailing Eastern Time)**

Jeffrey R. Gleit, Esq.
Allison H. Weiss, Esq.
Clark A. Freeman, Esq.
**SULLIVAN & WORCESTER LLP**
1633 Broadway
New York, New York 10019
(212) 660-3000 (Telephone)
(212) 660-3001 (Facsimile)

*Counsel to the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |

**REORGANIZED DEBTORS' MOTION PURSUANT**
**TO 11 U.S.C. § 350(b), RULE 5010 OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE AND LOCAL RULE 5010-1 OF THE LOCAL BANKRUPTCY RULES**
**FOR THE SOUTHERN DISTRICT OF NEW YORK TO REOPEN CHAPTER 11 CASE**

---

[1]  Each of the Reorganized Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......................................................................................... 1

JURISDICTION AND VENUE ........................................................................................ 7

BACKGROUND ............................................................................................................. 7

    A.    The Chapter 11 Bankruptcy Cases ........................................................... 7

    B.    The Motion to Close Cases ....................................................................... 14

    C.    The Florida Action .................................................................................... 14

RELIEF REQUESTED .................................................................................................... 16

BASIS FOR RELIEF REQUESTED ............................................................................... 17

    Cause Exists to Reopen the Bankruptcy Case ................................................... 17

        *(i) Factor One: Length of Time the Case was Closed* ........................................... 18

        *(ii) Factor Two: Whether A Nonbankruptcy Forum has Jurisdiction* ................... 18

        *(iii) Factor Three: Whether Prior Litigation in the Bankruptcy Court*
        *Determined that Another Court would be the Appropriate Forum* ........... 19

        *(iv) Factor Four: No Parties would Suffer Prejudice Should the Court*
        *Grant the Motion to Reopen the Case* ........................................................ 19

        *(v) Factor Five: Reorganized Debtors Will Benefit From Reopening the*
        *Case* ............................................................................................................. 20

        *(vi) Factor Six: Reorganized Debtors Are Likely to Succeed in Obtaining*
        *the Underlying Relief Requested* .............................................................. 21

NOTICE .......................................................................................................................... 25

NO PRIOR REQUEST ................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Castellanos v. 21st Century Oncology, LLC, et al.*,
    No. 11-CA-003690 (Fla. Lee County Ct.) .............................................................. 3

*Daewoo Int'l (Am.) Corp. Creditor Tr. V. SSTS Am. Corp.*,
    No. 02 CIV 9629 (NRB), 2003 WL 21355214 (S.D.N.Y. June 11, 2003) ........................ 21

*Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re Maxwell Commc'n Corp.)*,
    93 F.3d 1036 (2d Cir. 1996) ................................................................................ 24

*In re 243rd St. Bronx R&R LLC*,
    11 B 13321 (ALB), 2013 Bankr. LEXIS 1161 (Bankr. S.D.N.Y. Mar. 21, 2013) ....... 22, 24

*In re Arriva Pharm., Inc.*,
    456 B.R. 419 (Bankr. N.D. Cal. 2011) .................................................................. 21

*In re Atari, Inc.*,
    No. 13-10176 (JLG), 2016 Bankr. LEXIS 1779 (Bankr. S.D.N.Y. Apr. 20, 2016) ........... 18

*In re Easley-Brooks*,
    487 B.R. 400 (Bankr. S.D.N.Y. 2013) .................................................................. 18

*In re Emmerling*,
    223 B.R. 860 (B.A.P. 2d Cir. 1997) ..................................................................... 17

*In re Janssen*,
    396 B.R. 624 (Bankr. E.D. Pa. 2008) ................................................................... 18

*In re Kim*,
    556 B.R. 9 (Bankr. S.D.N.Y. 2017) ..................................................................... 18

*In re Oakhurst Lodge, Inc.*,
    582 B.R. 784 (Bankr. E.D. Cal. 2018) .................................................................. 24

*In re Odin Demolition & Asset Recovery, LLC*,
    544 B.R. 615 (Bankr. S.D. Tex. 2016) .................................................................. 18

*In re The Great Atlantic and Pac. Tea Co., Inc.*,
    544 B.R. 43 (Bankr. S.D.N.Y. 2016) .................................................................... 22

*OneBeacon Ins. Co. v. Empress Ambulance Serv., Inc.*,
    No. 02 CIV 2595 (WHP), 2003 WL 1857622 (S.D.N.Y. Mar. 28, 2003) ..................... 21

*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*,
    4 F.3d 1095 (2d Cir. 1993) ................................................................................ 22

*Tam Travel Inc. v. Delta Airlines Inc. (In re Travel Agent Comm'n Antitrust Litig.)*,
    583 F.3d 896 (6th Cir. 2009) .......................................................................... 22, 23

**Statutes and Rules**

11 U.S.C. § 105(a) ....................................................................................... 1, 7, 13 16

11 U.S.C. § 350(b) ................................................................................. 1, 7, 16, 17, 18

11 U.S.C. § 1107(a) ........................................................................................................ 7

11 U.S.C. § 1108 ............................................................................................................ 7

11 U.S.C. § 1125 ............................................................................................................ 8

28 U.S.C. § 157 .............................................................................................................. 7

28 U.S.C. § 157(b)(2)..................................................................................................... 7

28 U.S.C. § 1334 ............................................................................................................ 7

28 U.S.C. § 1408 ............................................................................................................ 7

28 U.S.C. § 1409 ............................................................................................................ 7

Fla. Stat. § 542.335 ...................................................................................................... 14

Fed. R. Bankr. P. 5010 ..................................................................................... 1, 7, 16, 17

Fed. R. Bankr. P. 1015(b) .............................................................................................. 8

S.D.N.Y. Local R. Bankr. P. 5010-1 ............................................................. 1, 7, 16, 17

**Other Authorities**

3 COLLIER ON BANKRUPTCY ¶ 350.03[5] (16th ed. 2018) .......................................... 17

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

The above-captioned reorganized debtors (collectively, the "**Reorganized Debtors**" and, prior to the Effective Date, as defined herein, the "**Debtors**"), hereby file this motion (the "**Motion**"), by and through their undersigned counsel, pursuant to sections 105(a) and 350(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 5010 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 5010-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for the entry of an order in substantially in the form attached hereto as **Exhibit A** reopening the chapter 11 case, Case No. 17-22770, *In re 21st Century Oncology Holdings, Inc.* (the "**Bankruptcy Case**").

In support of the Motion, the Reorganized Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT[1]

1.      The Reorganized Debtors seek to reopen the Bankruptcy Case to enforce the Plan and Confirmation Order, including the Plan Injunction and the Third-Party Release, against four doctors (the "**Plaintiffs**") who recently tendered their resignations to 21st Century Oncology, LLC ("**21C**") and who commenced an action against certain of the Reorganized Debtors in the United States District Court for the Middle District of Florida (the "**Florida Action**") on that same day[2] to invalidate certain standard covenants (the "**Non-Compete and Non-Solicitation Clauses**") in their employment agreements with 21C (the "**Employment Agreements**").  The Employment Agreements were assumed in the Bankruptcy Case without objection from the Plaintiffs, and now, the Plaintiffs, *ex post facto*, seek to invalidate the Employment Agreements,

---

[1]      Terms not defined in this Preliminary Statement are defined in the body of this Motion.

[2]      Three of the four Plaintiffs tendered their resignations on March 15, 2019, the same day they filed the Antitrust Complaint (as defined below) in the U.S. District Court for the Middle District of Florida.  The fourth Plaintiff's last day with 21C was March 6, 2019, following his resignation.

so that they can create their own separate oncology practice in the same geographic area and in direct competition with the Reorganized Debtors' oncology practice.

2.      Dr. Daniel Dosoretz ("**Danny Dosoretz**")—a founder of the 21C enterprise, who was the Chief Executive Officer and/or a director of 21st Century Oncology Holdings, Inc. and 21st Century Oncology Investments, LLC from inception through September 9, 2016—is not a named plaintiff in the Florida Action, but he is nonetheless at the center of this dispute. Danny Dosoretz is the parent of two of the Plaintiffs: Dr. Arie P. Dosoretz ("**Dosoretz**") is Danny Dosoretz's son,[3] and Dr. Amy Fox ("**Fox**") is his daughter. The other two Plaintiffs, Dr. James H. Rubenstein ("**Rubenstein**") and Dr. Michael J. Katin ("**Katin**"), are co-founders, with Danny Dosoretz, of the 21C enterprise.[4] Danny Dosoretz also owns and controls a company called 3680 Broadway Building Associates, which is the landlord to an existing lease held by 21C for over fifteen years for a location for one of its cancer treatment facilities in Ft. Myers, Florida (the "**Lease**").[5]

3.      In a meeting orchestrated by Danny Dosoretz on March 15, 2019, Danny Dosoretz and his son tendered their resignations to 21C and its Board, along with those of his daughter and long-time business partner Rubenstein, and threatened to commence the Florida Action if the Reorganized Debtors' did not engage in confidential settlement discussions related to releasing them from their Non-Compete and Non-Solicitation Clauses. When the Reorganized

---

[3]    In addition to serving as a radiation oncologist for 21C, Dosoretz served as 21C's physician head of recruitment post-Effective Date. In that capacity, Dosoretz coordinated the physician recruitment process and liaised between physician candidates and the physician recruitment teams with respect to negotiation of compensation and other terms of employment. Dosoretz gained extensive knowledge of 21C's growth and physician retention activities and strategy, even participating in Board of Directors meetings in connection with these responsibilities. Dosoretz was actively involved in recruitment activities right up until he tendered his resignation.

[4]    21C was founded in 1983 by a group of physicians, including Danny Dosoretz, Rubenstein, and Katin.

[5]    The Lease is dated June 4, 2004 and relates to a facility located at 3680 Broadway, Fort Myers, Florida 33901. This Lease was assumed pursuant to the Plan and Confirmation Order and the Reorganized Debtors reserve the right to seek relief in this Court in connection with this dispute.

Debtors refused to do so, the Plaintiffs commenced the Florida Action, styling their claims under antitrust law rather than employment law, in an attempt to circumvent this Court and the implications of the Debtor's approved Plan. At the same meeting, they delivered a copy of the notice that 3680 Broadway Building Associates sent to 21C that same day seeking to terminate the Lease.[6]

4.    This Court is familiar with Danny Dosoretz's pivotal leadership role at 21C for the vast majority of the period leading up to the Bankruptcy Case.  Danny Dosoretz developed and played an integral role in the company's strategies, business plans, and operations, including in matters related to mergers and acquisitions, exclusive service contracts with other healthcare providers, and physician recruiting, employment, and retention.  In fact, the Non-Compete and Non-Solicitation Clauses that appear in the Employment Agreements were executed by Plaintiffs while Danny Dosoretz was the Chief Executive Officer of 21C, and many of them were signed by Danny Dosoretz himself.  The Non-Compete and Non-Solicitation Clauses are also similar to clauses in other 21C physician employment contracts that Danny Dosoretz—at times, together with the lead lawyer for the Plaintiffs in the Florida Action, Luis Suarez from Boies Schiller Flexner LLP—actively defended against other former 21C physicians.[7]

5.    This Court is also familiar with Danny Dosoretz, as well as the Plaintiffs, in relation to certain legal issues that were resolved in the course of the Bankruptcy Case.  Among other issues, in January 2017, Danny Dosoretz was individually named in a lawsuit brought by whistleblowers for alleged violations of the False Claims Act and the federal Anti-Kickback

---

[6]    Despite the fact that the parties have been operating since June 1, 2004 under a five year lease that automatically renews unless ninety days' notice is given prior to each renewal, on March 15, 2019, 3680 Broadway Building Associates sent a "Notice of Termination of Month to Month Tenancy" to 21C purporting to terminate the Lease without complying with the notice provisions contained in the lease. Notably, the Lease property is specially equipped with vault facilities necessary to perform radiation oncology services.

[7]    *See, e.g.*, *Castellanos v. 21st Century Oncology, LLC, et al.*, No. 11-CA-003690 (Fla. Lee County Ct.).

Statute.  The action, which later settled, alleged that Danny Dosoretz entered into an illegal

agreement with a potential competitor to allocate the market for oncology services in Southwest

Florida.  In March 2017, the Reorganized Debtors were made aware of an antitrust investigation

by the U.S. Department of Justice into oncology services in Southwest Florida.  The Reorganized

Debtors cooperated with this investigation on behalf of all current 21C employees, including

Danny Dosoretz and the Plaintiffs.  In March 2018, Danny Dosoretz was individually named in a

class action suit alleging that he violated federal antitrust laws.  The Reorganized Debtors

assisted in obtaining a voluntary dismissal of that action as it implicated conduct that pre-dated

the Bankruptcy Case.

6.      Finally, this Court is familiar with the efforts of Danny Dosoretz, as well as

Plaintiffs Rubenstein and Katin, to exact concessions from the Debtors on the eve of

confirmation of the Plan when they threatened to leave 21C.  In order to move forward with the

confirmation process and preserve the value of the Debtors' enterprise, the Debtors were forced

to negotiate settlements with Danny Dosoretz, Katin, and Rubenstein.  Danny Dosoretz received

a lucrative new employment agreement and, notwithstanding the fact that the Plan was initially

drafted to exclude Danny Dosoretz from any prospective indemnification, a new indemnification

agreement.  Katin and Rubenstein also received new indemnification agreements in connection

with their agreement to continue to own and operate certain professional corporations or similar

entities that employ doctors who provide services as part of 21C.  Danny Dosoretz, Katin, and

Rubenstein were and are each significant investors in a group of companies that had entered into,

as landlord, an unexpired residential lease with 21C, and, as potential landlord, a letter of intent

with respect to another property with 21C.  As a condition of remaining with 21C, Danny

Dosoretz, Katin, and Rubenstein were able to negotiate for favorable treatment of such lease and

letter of intent. These individuals also received other significant benefits from the Debtors and the Reorganized Debtors (as applicable) by virtue of the settlements embodied in the Plan and the Confirmation Order, notably including a release and exculpation under the Plan. After having secured and enjoyed these benefits, Plaintiffs now seek to harm 21C by asserting antitrust violations in an attempt to invalidate their valid Employment Agreements and to start a competing radiation oncology practice.

7.      The assumption of the Employment Agreements was a critical component of the Plan, and the backstop parties to the Plan provided financing based upon the assumption that these Employment Agreements, as well as other employment agreements and critical contracts, would be assumed. The amount of financing provided by the backstop parties could have been negatively impacted had the Plaintiffs asserted their claims and objections to assumption of their Employment Agreements when ripe. Now, mere months after the close of the case, they are seeking to breach their Non-Compete and Non-Solicitation Clauses to form a competing practice with the former CEO in the Reorganized Debtors' hometown.

8.      The Employment Agreements at issue in the Florida Action and to which the Plaintiffs are contractually bound were assumed as of the Effective Date of the Plan. The Plaintiffs, despite having ***actual notice*** of the Debtors' intentions to assume the Employment Agreements, did not object to such assumption on the basis that they were overly restrictive, or on any basis, ***when they were required to object***, *i.e.*, at the Confirmation Hearing. In fact, Rubenstein and Katin even voted in favor of confirmation of the Plan after receiving notice of the assumption of their Employment Agreements.

9.      Because both (i) the Plan, as approved by the Confirmation Order, and (ii) the Assumption Notices received by the Plaintiffs assuming the Employment Agreements, clearly

provide for the "full release and satisfaction" of any claims or defaults arising under any assumed Executory Contracts, including any "nonmonetary" claims or defaults, upon the assumption thereof, and because the Plaintiffs did not object thereto, Plaintiffs remain bound by the terms of their Employment Agreements.

10.    The purpose of the bankruptcy process is to give debtors a fresh start.  The Debtors, like others who seek protection under chapter 11, were entitled to emerge from bankruptcy with a clean slate, including certainty as to the prepetition claims asserted against their estates and the executory contracts and leases that they determined were beneficial to their estates and consequently assumed.  It was therefore incumbent upon the Plaintiffs, as with all of the Debtors' other assumed executory contract counterparties, to assert any claims or defaults in their contracts at the Confirmation Hearing, and litigate their claims during the Bankruptcy Case.

11.    Moreover, two of the Plaintiffs – Rubenstein and Katin – voted in favor of confirmation of the Plan and therefore fall within the definition of "Releasing Parties" thereunder.  As Releasing Parties, under Section 8.3 of the Plan, Rubenstein and Katin, after receiving notice and for good and valuable consideration, consensually released all "Released Parties" (defined to include the Debtors and Reorganized Debtors) from any known or unknown claims or causes of action relating to, among other things, "the Debtors, the Reorganized Debtors, . . . [and] the business or contractual arrangements between any Debtor and any Releasing Party[.]"  By agreeing to this third-party release under the Plan, Rubenstein and Katin released the claims and causes of action asserted in the Florida Action.

12.    All of the factors that courts consider when deciding whether to reopen a case support reopening the Bankruptcy Case here.  For instance:  (i) the Bankruptcy Case has been closed for only three months; (ii) the Bankruptcy Court has jurisdiction to enforce the Plan and

Confirmation Order; and (iii) the Plaintiffs, who deliberately chose not to appear and object to the assumption of the Employment Agreements in this Bankruptcy Court, will not be prejudiced.

13.    Moreover, the Reorganized Debtors are likely to succeed on the merits in obtaining the underlying relief they seek—a motion to enforce the Plan and Confirmation Order, including the Plan Injunction and Third-Party Release, and for sanctions.

14.    Accordingly, and for all of the reasons set forth herein, the Bankruptcy Court should reopen the Bankruptcy Case in order to allow the Reorganized Debtors to move to enforce the Plan and Confirmation Order and impose sanctions.[8]

## JURISDICTION AND VENUE

15.    The United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

16.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

17.    The statutory predicates for the relief requested herein are sections 105(a) and 350(b) of the Bankruptcy Code, Bankruptcy Rule 5010, and Local Rule 5010-1.

## BACKGROUND

A.    **The Chapter 11 Bankruptcy Cases**

18.    On May 25, 2017 (the "**Petition Date**"), each of the sixty-one Debtors filed a voluntary petition for relief under the Bankruptcy Code in the Bankruptcy Court, Case No. 17-22770 (Hon. Robert Drain) (the "**Chapter 11 Cases**").  Prior to the Effective Date, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to

---

[8]      If the Bankruptcy Court determines that the relief requested should instead be sought by way of adversary proceeding pursuant to Rule 7001, *et seq.*, the Reorganized Debtors promptly will commence an adversary proceeding against the Plaintiffs.

sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner was made in the Chapter 11 Cases.

19.    On May 26, 2017, the Bankruptcy Court entered the *Order on Debtors' Motion for Entry of an Order Directing Joint Administration of Chapter 11 Cases*, allowing the Chapter 11 Cases to be procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 30].  Pursuant thereto, the Chapter 11 Cases were consolidated procedurally and jointly administered by the Bankruptcy Court under the lead case.

20.    On October 17, 2017, the Bankruptcy Court entered an order [Docket No. 541] (the "**Disclosure Statement Order**"): (a) authorizing the Debtors to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 522] (as modified, amended, or supplemented, the "**Plan**"); and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as modified, amended, or supplemented, the "**Disclosure Statement**") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

21.    As contemplated by the Plan and the Disclosure Statement Order, the Debtors filed the *Notice of Filing of Plan Supplement* [Docket No. 678] (as modified, amended, or supplemented, the "**Plan Supplement**") with the Bankruptcy Court on November 13, 2017.

22.     Attached to the Plan Supplement as <u>Exhibit I</u>, the Debtors filed that certain *Schedule of Assumed Executory Contracts and Unexpired Leases* (as modified, amended, or supplemented, the "**Assumption Schedule**").

23.     On November 13, 2017, the Debtors sent individualized notices (each, an "**Assumption Notice**") approved by the Bankruptcy Court to all of the contract counterparties clearly identifying each counterparty's specific executory contract or unexpired lease listed on the Assumption Schedule. *See Affidavit of Service* of the Plan Supplement dated November 16, 2017 [Docket No. 696], attached hereto as **Exhibit B**.

24.     Each of the Plaintiffs received an Assumption Notice with respect to his or her Employment Contract.  Copies of the Plaintiffs' Assumption Notices are attached hereto as **Exhibit C** (the "**Dosoretz Assumption Notice**"), **Exhibit D** (the "**Fox Assumption Notice**"), **Exhibit E** (the "**Katin Assumption Notice**"), and **Exhibit F** (the "**Rubenstein Assumption Notice**").

25.     Each Assumption Notice states clearly that: "[T]he deadline for filing objections to the Plan (including any objections to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease identified in the Assumption Schedule) is **November 27, 2017, at 4:00 p.m.,** prevailing Eastern Time." *See, e.g.*, the Dosoretz Assumption Notice at p. 3 (emphasis in original).

26.     Additionally, each Assumption Notice contains explicit language asserting that assumption of the Executory Contract or Unexpired Lease will result in the "full release and satisfaction" of any claims or defaults arising thereunder, including any "nonmonetary" claims:

> PLEASE TAKE FURTHER NOTICE THAT **ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL**

> **RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY**, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED OR ASSUMED AND ASSIGNED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE EFFECTIVE DATE OF THE DEBTORS' OR REORGANIZED DEBTORS' ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED OR ASSUMED AND ASSIGNED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.

*See, e.g.*, Dosoretz Assumption Notice at pp. 4-5.

27.    Despite the clear instructions with respect to objections to the assumption of the Employment Agreements and the effect of such assumption thereof, **none** of the Plaintiffs objected to the assumption of their individual Employment Agreements on any basis.

28.    In fact, two of the Plaintiffs, Rubenstein and Katin, affirmatively voted to accept the Plan and are Releasing Parties thereunder.  *See* the Rubenstein and Katin ballots voting in favor of the Plan, attached hereto as **Exhibits G and H**, respectively.  These two individuals were original co-founders of 21C.  As explained above, they demanded, and received, significant concessions from 21C in connection with confirmation of the Plan.

29.    As Releasing Parties, Rubenstein and Katin agreed that, "on the Confirmation Date and as of the Effective Date, and to the fullest extent permitted by applicable law," Rubenstein and Katin would:

> be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Releasing Parties [including the Debtors and Reorganized Debtors] from any and all claims, . . . rights, suits, damages, causes of action, remedies and liabilities whatsoever, . . . whether known or unknown, foreseen or unforeseen, existing or hereafter

10

> arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert . . . , based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, . . . the business or contractual arrangements between any Debtor and any Releasing Party, or . . . any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence.

Plan, Art. VIII, § 8.3.

30.     On January 9, 2018, the Bankruptcy Court held a hearing to consider confirmation of the Plan (the "**Confirmation Hearing**").  Many objections to the assumption of executory contracts and to the confirmation of the Plan were filed and heard at the Confirmation Hearing.  Again, Plaintiffs did not file any objections.

31.     On January 11, 2018, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 915] (the "**Confirmation Order**") confirming the Plan.

32.     The Plan became effective on January 16, 2018 (the "**Effective Date**") [Docket No. 919].

33.     Section 5.1 of the Plan provides, *inter alia,* that assumptions of Executory Contracts pursuant to the Plan are effective as of the Effective Date and that each Executory Contract assumed pursuant to the Plan shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms.  *See also* Confirmation Order at ¶¶ 71-75.

34.     Moreover, Paragraph 72 of the Confirmation Order provides for the "full release and satisfaction" of any claims or defaults arising under any assumed Executory Contracts or Unexpired Leases, including any "nonmonetary" claims:

> Unless a counterparty to an Executory Contract or Unexpired Lease being assumed (or assumed and assigned) under the Plan has objected to the Cure amount identified in the Schedule of Assumed Executory Contracts and Unexpired Leases and any amendments thereto, as applicable, the Debtors shall pay such Cure amount as reflected in the applicable Cure Notice and, to the extent applicable, as amended, in accordance with the terms of the Plan, and **the assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary,** including defaults of provisions restricting the change in control, composition of applicable governing bodies or ownership interest composition or other bankruptcy-related defaults, **arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption and/or assignment**. Any disputed Cure amount shall be determined in accordance with the procedures set forth in Article V, Section 5.3, of the Plan, and applicable bankruptcy and nonbankruptcy law.

Confirmation Order at ¶ 72 (emphasis added).

35.    Additionally, Section 8.1 of the Plan provides for a complete discharge of all claims that arose before the Effective Date:

> [A]ll Claims and Interests that arose before the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, shall be satisfied, settled, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely.

36.    In the Confirmation Order, the Bankruptcy Court found that the "discharges, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan are consistent with the Bankruptcy Code and applicable law" and "are integral components of the Plan", and immediately effective on the Effective Date.  Confirmation Order at ¶¶ 42, 103.

37.    The Bankruptcy Court also specifically found that the third-party release set forth in Section 8.3 of the Plan (the "**Third-Party Release**") was "appropriately tailored under the facts and circumstances" and:

> (a) consensual; (b) essential to Confirmation; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the claims and causes of action

> released by the Third Party Release; (e) materially beneficial to and in the best interests of the Debtors, their Estates and their stakeholders, and is important to the overall objectives of the Plan; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) **a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third Party Release against any of the Released Parties**; and (i) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

Confirmation Order at ¶¶ 47-50 (emphasis added).

38.      Section 8.5 of the Plan enjoins all persons from commencing any actions against the Reorganized Debtors based on the released or discharged claims (the "**Plan Injunction**"):

> [A]ll Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 8.2 . . . of this Plan [or] discharged or terminated pursuant to Section 8.1 of this Plan . . . shall be permanently enjoined, from and after the Effective Date, from . . . commencing or continuing in any matter any action of other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests.

39.      In the Confirmation Order, the Bankruptcy Court found that "[t]he injunction provisions set forth in Article VIII, Section 8.5 of the Plan are essential to the Plan; are necessary to preserve and enforce the discharge and releases set forth in Sections 8.1 . . . [and] 8.3 of the Plan . . . and are appropriately tailored to achieve that purpose."  Confirmation Order at ¶ 51. The Bankruptcy Court also provided that the injunction provisions "are important to the overall objectives of the Plan to finally resolve all claims or causes of action among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors."  *Id.* at ¶ 52.

40.      The Plan Injunction became "immediately effective on the Effective Date." Confirmation Order at ¶ 52.

13

**B.** **The Motion to Close Cases**

41.    On November 27, 2018, the Reorganized Debtors filed the *Reorganized Debtors' Motion for Entry of an Order (I) Closing the Chapter 11 Case, (II) Entering a Final Decree and (III) Granting Related Relief* (the "**Motion to Close**") [Docket No. 1258].

42.    On December 18, 2018, the Bankruptcy Court entered an Order granting the Motion to Close (the "**Closing Order**") [Docket No. 1278], which closed the Bankruptcy Case.[9]

**C.** **The Florida Action**

43.    On March 15, 2019, Dosoretz, Fox, Rubenstein, and Katin (together, "the **Plaintiffs**") filed that certain complaint (the "**Antitrust Complaint**"), attached hereto as **Exhibit I**, in the United States District Court for the Middle District of Florida, Fort Myers Division ("**Florida District Court**") against certain of the Reorganized Debtors (*i.e.*, 21st Century Oncology Holdings, Inc., 21st Century Oncology, LLC and 21st Century Oncology, Inc.) (the "**Florida Action**").  The facts alleged by the Plaintiffs date back as far as 2008 and were all known or should have been known by Plaintiffs prior to the Petition Date.  All of the Plaintiffs' claims could and should have been set forth in an objection to the assumption of their Employment Agreements.[10]

44.    In the Florida Action, the Plaintiffs seek (i) declaratory judgments that the Reorganized Debtors monopolized and or attempted to monopolize radiation oncology services in the Counties of Collier, Lee, and Charlotte, in Florida, in violation of Section 2 of the

---

[9]    Previously, on March 23, 2018, the Bankruptcy Court had entered an order closing sixty of the sixty-one Chapter 11 Cases [Docket No. 1038], leaving the Bankruptcy Case as the only open case.

[10]    Two Employment Agreement amendments related to Dosoretz and one Employment Agreement amendment related to Rubenstein post-date the closing of the Bankruptcy Case.  However, none of these amendments address or alter the Non-Compete and Non-Solicitation Clauses that the Plaintiffs are challenging in the Florida Action.  The Plaintiffs therefore have no claim that the challenged conduct post-dates the confirmation of the Plan.

Sherman Antitrust Act, and (ii) declaratory judgments that certain covenants of Plaintiffs

Employment Agreements are not enforceable under Florida Statute 542.335.[11]

45.    The impetus behind commencing the Florida Action is that the Plaintiffs,

understanding that the Employment Agreements were assumed in the Bankruptcy Case and that

they are bound by the terms of the Employment Agreements, now seek to invalidate the

Employment Agreements to relieve themselves of certain "restrictive" covenants therein.

46.    Specifically, according to the Complaint, the Plaintiffs seek to relieve themselves

of the Non-Compete and Non-Solicitation Clauses in their Employment Agreements so that they

can "provid[e] radiation oncology services . . . in competition with 21st Century Oncology."

Antitrust Complaint ¶ 100.  The Plaintiffs admit to "hav[ing] already taken a number of steps in

preparation of doing so."  *Id.*[12]  While the complaint appears carefully drafted to request

declaratory relief instead of an award of damages, it does not change the ultimate outcome that

the relief requested is barred by the Plan Injunction and the Third-Party Release.

47.    Plaintiffs do not allege any basis to invalidate the Non-Compete and Non-

Solicitation Clauses in their Employment Agreements other than 21C's alleged monopolization

or alleged attempted monopolization.  Plaintiffs also do not allege any acts in furtherance of the

alleged monopolization or attempted monopolization after the Effective Date.  Thus, the

purported legal basis for Plaintiffs' claim (the claimed "restraint" allegedly caused by

monopolization or attempted monopolization by 21C) arose long before the Bankruptcy Case.

---

[11]    Ironically, counsel to the Plaintiffs, Boies Schiller Flexner LLP, and specifically, Louis E. Suarez, since at least as early 2013 was counsel to 21C with respect to the **enforcement** of substantially similar covenants in a physician employment agreement.  Not only does the representation create an appearance of impropriety, it may also give rise to a conflict of interest and grounds for a motion to disqualify.  The Reorganized Debtors are investigating same.

[12]    The Reorganized Debtors are evaluating what claims, if any, they may have against the Plaintiffs and those with whom the Plaintiffs have worked to organize this effort to compete against the Reorganized Debtors in violation of Plaintiffs' Employment Agreements.  All rights of the Reorganized Debtors are expressly reserved.

Indeed, the Debtors repeatedly disclosed allegations of antitrust issues in their public filings and notices throughout the Bankruptcy Case.

48.    Because (i) the Plaintiffs did not object to the assumption of the Employment Agreements as required during the Bankruptcy Case, and (ii) all of the Plan, the Confirmation Order, and the Assumption Notices clearly provide for the "full release and satisfaction" of any claims or defaults arising under any assumed Executory Contracts, including any "nonmonetary" claims, upon assumption thereof, as provided in the Confirmation Order, the Plaintiffs remain bound by the terms of their Employment Agreements.  Nothing about 21C's business has changed, or is alleged by the Plaintiffs to have changed, since the conclusion of the bankruptcy process to invalidate the Employment Agreements at issue and, therefore, the Bankruptcy Court should reopen the Bankruptcy Case in order to enforce the Plan and Confirmation Order and to impose sanctions on the Plaintiffs.

49.    It is worthy of note that even if the alleged antitrust claims were legitimate (which they are not), the Plaintiffs, as oncologists in these practices and in leadership roles from 2008 (Katin and Rubenstein), 2009 (Fox) and 2015 (Dosoretz) would be participants in, *inter alia*, the "monopoly" and "exclusionary conduct" that they now so boldly allege.  In fact, the greater irony may be that it was Danny Dosoretz, the Plaintiffs' long-time colleague (Katin and Rubenstein) and father (Fox and Dosoretz) that created and grew these practices and was not only at the helm of 21C during the entirety of when, according to the Plaintiffs, all of these "antitrust" violations were occurring, but was also a signatory to many of the Employment Agreements that the Plaintiffs now seek to invalidate.

## **RELIEF REQUESTED**

50.    By this Motion, the Reorganized Debtors seek, pursuant to sections 105(a) and 350(b) of the Bankruptcy Code, Bankruptcy Rule 5010, and Local Rule 5010-1, the entry of an

order reopening the Bankruptcy Case for the purpose of enforcing the Plan and Confirmation

Order, including the Plan Injunction and the Third-Party Release, to enjoin the Plaintiffs from

pursuing the Florida Action, to impose sanctions, and to permit any ancillary relief to which 21C

is entitled.

## BASIS FOR RELIEF REQUESTED

### Cause Exists to Reopen the Bankruptcy Case

51.     Bankruptcy Rule 5010 provides that "[a] case may be reopened on motion of the

debtor or other party in interest pursuant to § 350(b) of the Code."  Fed. R. Bankr. P. 5010.[13]

Bankruptcy Code section 350(b) in turn provides that "a case may be reopened in the court in

which such case was closed to administer assets, to accord relief to the debtor, or for other

cause."  11 U.S.C. § 350(b).

52.     "While the Code does not define 'other cause' for purposes of reopening a case

under section 350(b), the decision to reopen or not is discretionary with the court, which may

consider numerous factors including equitable concerns, and ought to emphasize substance over

technical considerations."  *See In re Emmerling*, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997)

(quoting 3 *Collier on Bankruptcy,* ¶ 350.03[5]).  Section 350(b) "gives the court broad discretion

in the reopening of a case."  3 *Collier on Bankruptcy* ¶ 350.03[5].

53.     Some of the factors that courts in this district consider include:

    a.     the length of time that the case was closed;

    b.     whether a nonbankruptcy forum has jurisdiction to determine the
        issue that is the basis for reopening the case;

    c.     whether prior litigation in the bankruptcy court determined that
        another court would be the appropriate forum;

---

[13]     Local Rule 5010-1 adds the requirements that such a motion be in writing and state the name of the Judge
to whom it had been assigned at the time it was closed.

    d.    whether any parties would suffer prejudice should the court grant or deny the motion to reopen;

    e.    the extent of the benefit to any party by reopening; and

    f.    whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted.

*In re Kim*, 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017); *see In re Atari, Inc.*, No. 13-10176 (JLG), 2016 Bankr. LEXIS 1779, at *14 (Bankr. S.D.N.Y. Apr. 20, 2016); *In re Easley-Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013).

54.    Here, each and every one of these factors are applicable and weigh in favor of reopening the Bankruptcy Case.[14]

### (i) Factor One: Length of Time the Case was Closed

55.    When the period of time between the case closing and the motion to reopen is short, this factor favors reopening the case. *See In re Odin Demolition & Asset Recovery, LLC*, 544 B.R. 615, 632-33 (Bankr. S.D. Tex. 2016) (finding time frame of less than three months between closing case and motion to reopen as "rather insignificant"); *see also In re Janssen*, 396 B.R. 624, 637 (Bankr. E.D. Pa. 2008) (granting motion to reopen where "[t]he case was closed for a relatively short period of time, seven (7) months").

56.    Here, the Bankruptcy Case has not even been closed for three months.

57.    Therefore, the first factor weighs in favor of reopening the case.

### (ii) Factor Two: Whether A Nonbankruptcy Forum has Jurisdiction

58.    The Bankruptcy Court has exclusive jurisdiction over this matter.

---

[14]    The Closing Order also explicitly contemplated that the Reorganized Debtors would be permitted to seek to reopen the Bankruptcy Case in accordance with section 350(b) of the Bankruptcy Code. *See* Closing Order at ¶ 3 ("Entry of this Order and Final Decree is without prejudice to the rights of the Debtors, the Reorganized Debtors, or any other party in interest, to seek to reopen the Bankruptcy Case in accordance with 11 U.S.C. § 350(b).").

59.     Pursuant to the Retention of Jurisdiction provisions in the Confirmation Order and the Plan, the Bankruptcy Court "retain[ed] exclusive jurisdiction over the Chapter 11 Cases and all matters arising under, arising out of, or related to, the Chapter 11 Cases, including all matters listed in Article XI of the Plan" (Confirmation Order ¶ 153), which includes jurisdiction to: "enforce all orders previously entered by the Bankruptcy Court . . . and hear any other matter not inconsistent with the Bankruptcy Code."  Plan, Art. XI.

60.     The Bankruptcy Court also has "exclusive jurisdiction" to "resolve any matters related to Executory Contracts or Unexpired Leases, including: "(a) the assumption or assignment of any Executory contract . . . ; [and] (b) any potential obligation under any Executory Contract . . . that is assumed . . . ."  Plan, Art. XI, § 3.

61.     This matter concerns the assumption of the Employment Agreements pursuant to the Confirmation Order and enforcement of the Plan and Confirmation Order, including the Plan Injunction and the Third Party Release, not the merits of Plaintiffs' claims in the Florida Action. Consequently, this factor clearly weighs in favor of reopening the Bankruptcy Case.

### (iii) Factor Three: Whether Prior Litigation in the Bankruptcy Court Determined that Another Court would be the Appropriate Forum

62.     The Bankruptcy Court has not determined in prior litigation that another court would be the appropriate forum for litigation of the Florida Action.  Therefore, this factor also favors reopening this case.

### (iv) Factor Four: No Parties would Suffer Prejudice Should the Court Grant the Motion to Reopen the Case

63.     The Plaintiffs would not suffer prejudice from the reopening of the Bankruptcy Case.

64.     The Plaintiffs were well aware of the Chapter 11 Cases.  They were employed by the Debtors throughout the pendency of the bankruptcy and they had actual notice of all

milestone events, including the deadline to object to assumption of their Employment Agreements and confirmation of the Plan.

65.     Yet, the Plaintiffs did not object to the assumption of their Employment Agreements.  At no time did the Plaintiffs assert or argue that 21C had unlawfully monopolized or attempted to monopolize any market, or that their Employment Agreements were voidable because of any purported misconduct by 21C.  Instead, the Plaintiffs sat quietly while their Employment Agreements were assumed and various related agreements were also assumed by the Reorganized Debtors.  They, particularly Katin and Rubenstein, then actively sought and obtained benefits from the Reorganized Debtors in connection with confirmation of the Plan. Only after reaping the benefits of the Plan and Bankruptcy Case have the Plaintiffs now filed a separate suit in the U.S. District Court for the Middle District of Florida, just months after the Bankruptcy Case was closed.

66.     The Plaintiffs cannot now claim any prejudice from the reopening of the Bankruptcy Case so that the Bankruptcy Court can consider whether, in accordance with the Plan and Confirmation Order, the Plaintiffs have released their claims and are enjoined from prosecuting the Florida Action.

67.     This factor thus also weighs in favor of reopening the case.

### *(v)  Factor Five: Reorganized Debtors Will Benefit From Reopening the Case*

68.     The Plaintiffs have deliberately attempted to deny the Reorganized Debtors a fresh start by failing to raise their purported antitrust claim challenging the Non-Compete and Non-Solicitation Clauses in their Employment Agreements until after the Bankruptcy Case was closed.  The Reorganized Debtors therefore will benefit greatly from the Bankruptcy Court reopening the Bankruptcy Case to consider their contemplated motion to enforce the Plan and

Confirmation Order, including the Plan Injunction and the Third-Party Release, and to impose

sanctions.[15]

### (vi) Factor Six: Reorganized Debtors Are Likely to Succeed in Obtaining the Underlying Relief Requested

69.    The Reorganized Debtors are likely to succeed on their motion to enforce the Plan

and Confirmation Order, including the Plan Injunction and Third Party Release, against

Plaintiffs.

70.    "A final order confirming a chapter 11 plan bars litigation of all issues that could

have been raised in connection with confirmation . . . .  Numerous courts . . . on numerous

occasions [have held] that a bankruptcy court order approving the assumption of an executory

contract, is necessarily a finding that no uncured defaults exist."  *In re Arriva Pharm., Inc.*, 456

B.R. 419, 424 (Bankr. N.D. Cal. 2011) (internal citations omitted); *see also Daewoo Int'l (Am.)*

*Corp. Creditor Tr. v. SSTS Am. Corp.*, No. 02 CIV. 9629 (NRB), 2003 WL 21355214, at *3

(S.D.N.Y. June 11, 2003) ("As a general matter, a debtor's plan of reorganization, once

confirmed, binds the debtor and all creditors, whether or not a creditor has accepted the plan.");

*OneBeacon Ins. Co. v. Empress Ambulance Serv., Inc.*, No. 02 Civ. 2595 (WHP), 2003 WL

---

[15]    The Reorganized Debtors also would benefit because of the ongoing dispute with Andrew L. Woods ("**Woods**"). On January 11, 2019, the Bankruptcy Court entered its *Memorandum Of Decision* regarding the Woods Objection [Docket No. 1291] (the "**Woods Decision**"), which largely resolved the Reorganized Debtors' objection to Woods' claim, but directed the parties to engage in discovery on one issue. Woods appealed the Woods Decision (and the subsequent order (the "**Woods Order**")). That appeal currently is being briefed, but may result in further proceedings in this Court upon remand. In addition, on March 4, 2019, Woods defiantly resurrected his grievances against the Debtors (even though they were largely resolved by the Woods Order) by commencing a new action in the United States District Court for the Middle District of Florida, Fort Myers Division (the "**Florida Court**"), captioned *Andrew L. Woods v. Kimberly J. Commins-Tzoumakas, et. al*, Case 2:19-cv-00130-UA-UAM (the "**Woods Action**") against certain Exculpated Parties under the Plan. The Woods Action also attacks the integrity of the Reorganized Debtors' bankruptcy process. On March 11, 2019 the Florida Court *sua sponte* dismissed the Woods Action for lack of subject matter jurisdiction [Woods Action Docket No. 13]. The Florida Court gave Woods until March 21, 2019 to amend his complaint and correct the issues regarding the domicile of certain PLLC and LLP defendants. On March 21, 2019, Woods filed an amended complaint [Woods Action Docket No. 14]. Reopening the case will allow the Reorganized Debtors and Exculpated Parties to either move to transfer the Woods Action to this Court or move to enforce the Plan and Confirmation Order, including the exculpation provision and Plan Injunction against Woods.

1857622, at *3 (S.D.N.Y. Mar. 28, 2003) (finding, after taking judicial notice of a confirmed

plan, that asserted claims were barred because "[u]nder § 1141(d)(1) of the Bankruptcy Code, the

confirmation of a plan of reorganization discharges the debtor from any debt that arose before

the date of such confirmation, whether or not a proof of claim based on such debt is filed or the

holder has accepted the plan").

71.    Here, the Plaintiffs were on notice of the claims alleged in the Florida Action

prior to the Effective Date and received *actual* notice that failure to object to the assumption of

their Employment Agreements would result in the "full release and satisfaction of any Claims or

defaults, whether monetary or nonmonetary" with respect to the Employment Agreements.[16]

72.    The Plaintiffs cannot avoid the release of the Florida Action claims by styling

objections to the scope of their Employment Agreements as a purported restraint in furtherance

of an alleged monopoly or attempt to monopolize, where that same purported restraint existed

prepetition.  *See Tam Travel Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust*

*Litigation)*, 583 F.3d 896, 902 (6th Cir. 2009) (affirming dismissal of antitrust claim and holding

that the defendant's post-bankruptcy continuation of a pricing practice alleged to be the result of

---

[16]    *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, which stands for the proposition that a motion to assume an executory contract is a summary proceeding, and not the place for a formal ruling on underlying disputed issues, is inapposite here.  4 F.3d 1095, 1099 (2d Cir. 1993).  Despite the fact that the assumption of an executory contract pursuant to motion, without objection, may be insufficient for preclusive effect of certain substantive issues, s*ee, e.g.*, *In re The Great Atlantic and Pac. Tea Co., Inc.*, 544 B.R. 43, 50 (Bankr. S.D.N.Y. 2016), the assumption of an executory contract pursuant to the Plan process has greater import.  The issue presented to this Court in the Motion is whether the Confirmation Order, with the Plan Injunction therein, is preclusive and binding on all creditors and contract counter parties.  Indeed, the preclusive effect comes when the non-debtor party receives notice of the Plan, fails to object to the Plan, and the Plan is confirmed.  *See In re 243rd St. Bronx R&R LLC*, 11 B 13321 (ALB), 2013 Bankr. LEXIS 1161, at *13 (Bankr. S.D.N.Y. Mar. 21, 2013) ("By contrast [to assumption hearings], plan confirmation is intended to resolve **all** issues related to the plan, and it is **not** a summary proceeding.") (emphasis added).  The Plaintiffs received notice, failed to object, voted in favor of the Plan, and the Plan was confirmed – thus their claims are subject to the res judicata effect of the Confirmation Order.  *See id.* If the plaintiffs had objected to the assumption of their Employment Agreements, these agreements could have been carved out of the Plan until an adversary proceeding or other litigation was commenced and a full trial on the merits occurred.

illegal price-fixing was not an overt act such that a bankruptcy discharge did not apply, but instead was merely a reaffirmation of a previous act).

73.    The Plaintiffs' purported antitrust claims arise from alleged acts by 21C that would necessarily have occurred before the Effective Date.  Each of the Plaintiffs entered into their Employment Agreements before the Petition Date, fully aware of the Non-Compete and Non-Solicitation Clauses.  The "monopoly" alleged by Plaintiffs is based on 21C's "exclusionary conduct", which the Antitrust Complaint describes[17] as the creation and maintenance of a bonus pool for urologists; the creation of financial incentives for other physicians to make referrals; exclusive contracts with two hospitals; the purchase of competitors; and the Non-Compete and Non-Solicitation Clauses that Plaintiffs freely entered into.  Antitrust Complaint ¶ 95.  However, Plaintiffs do not associate dates, or even years, with any of these events.  That is because all of the alleged misconduct would have occurred **before** the Petition Date.[18]  *See* Antitrust Complaint ¶¶ 90-94.  As such, to the extent Plaintiffs' purported claims exist at all, they existed well before and during the Bankruptcy Case.  There is no question, therefore, that the Plaintiffs' purported claims were known to them prior to the deadlines to object to assumption and confirmation, and those claims were within the scope of the Plan Injunction and Third-Party Release, which categorically bar the prosecution of claims relating to 21C's pre-Effective Date conduct.  *See In re Travel Agent Comm'n Antitrust Litigation*, 583 F.3d at 902.

74.    Moreover, the Plaintiffs, despite the clear instructions in the Assumption Notices that an objection to the Plan needed to be filed prior to the Confirmation Hearing, intentionally

---

[17]    21C rejects any suggestion that 21C has violated the antitrust laws alleged in the Florida Action and repeats these allegations without admitting or conceding they are true.  Moreover, the Complaint does not allege and in fact admits that the compensation provided for under the Employment Agreements is lawful under federal anti-kickback legislation and the Stark Law.

[18]    Katin and Rubenstein entered into Employment Agreements in 2008; Fox entered her Employment Agreement in 2009; and Dosoretz entered his Employment Agreement in 2015.   Antitrust Complaint ¶¶ 90-94.

did not file objections, but rather stood back and "laid in wait" to commence the Florida Action until after the Bankruptcy Case was closed, thereby securing benefits for themselves—the full benefits of the Plan and Confirmation.

75.     For example, Katin and Rubenstein received indemnity agreements in conjunction with the assumption of their Employment Agreements.   In addition, certain unexpired nonresidential leases that Katin and Rubenstein were parties to, or that entities they owned were parties to, were assumed by the Reorganized Debtors.  The Plaintiffs also received both a release and exculpation under the Plan.

76.     In accordance with the Plan and Confirmation Order, because the Plaintiffs failed to object to the assumption of the Employment Agreements under the Plan or to confirmation of the Plan itself, Plaintiffs' claims are "full[y] release[d]."  *See* Confirmation Order ¶ 72.   Once a chapter 11 plan has been confirmed, the debtor, creditors, and other parties in interest are bound by its provisions.  *See In re 243rd St.*, 2013 Bankr. LEXIS 1161, at *13 ("[P]lan confirmation is intended to resolve all issues related to the plan, and it is not a summary proceeding"); *In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 791 (Bankr. E.D. Cal. 2018) ("[T]he confirmation order has res judicata effect on issues that were raised in conjunction with plan confirmation ***or could have been raised at that time***.") (emphasis added); *see also Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re Maxwell Commc'n Corp.)*, 93 F.3d 1036 (2d Cir. 1996) (discussing binding nature of plan).

77.     Consequently, the Plaintiffs are bound by the terms of the Plan (two of the Plaintiffs – Katin and Rubenstein – even voted in favor of it) and the Confirmation Order, wherein all claims or defaults, whether monetary or nonmonetary under the Employment Agreements were fully released.  Pursuant to the Plan Injunction in Section 8.5 of the Plan, the

Plaintiffs are permanently enjoined from prosecuting their claims, and pursuant to the Third-Party Release in Section 8.3 of the Plan, Katin and Rubenstein released their claims.

78.     The Reorganized Debtors are therefore likely to succeed in obtaining an order enforcing the Plan and Confirmation Order, including the Plan Injunction, (and imposing sanctions) against the Plaintiffs.

79.     This factor, and all of the other factors, favor reopening the Bankruptcy Case.

## NOTICE

80.     The Reorganized Debtors will provide notice to (a) counsel to the Plaintiffs, (b) the U.S. Trustee and (c) parties on the Service List as defined in the Case Management Order.  In light of the nature of the relief requested, the Reorganized Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

81.     No prior request for the relief sought in this Motion has been made to this Court or any other court in connection with these Chapter 11 Cases.

**WHEREFORE,** the Reorganized Debtors respectfully request that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 22, 2019

**SULLIVAN & WORCESTER LLP**

By: */s/ Jeffrey R. Gleit*
Jeffrey R. Gleit, Esq.
Allison H. Weiss, Esq.
Clark A. Freeman, Esq.
1633 Broadway
New York, New York 10019
(212) 660-3000 (Telephone)
(212) 660-3001 (Facsimile)
jgleit@sandw.com
aweiss@sandw.com
cfreeman@sandw.com

John Terzaken, Esq.
Abram J. Ellis, Esq.
**SIMPSON THACHER & BARTLETT LLP**
900 G Street, N.W.
Washington, D.C. 20001
(202) 636-5858 (Telephone)
(202) 294-3539 (Facsimile)
john.terzaken@stblaw.com
aellis@stblaw.com

*Counsel for the Reorganized Debtors*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
| | ) |
| Reorganized Debtors. | ) (Jointly Administered) |
| | ) |

## ORDER TO REOPEN THE BANKRUPTCY CASE

Upon consideration of the *Reorganized Debtors' Motion Pursuant to 11 U.S.C.*
*§ 350(b), Rule 5010 of the Federal Rules of Bankruptcy Procedure and Local Rule 5010-1 of the*
*Local Bankruptcy Rules for the Southern District of New York to Reopen Chapter 11 Case*
[Docket No. ___] (the "**Motion**")[2]; and it appearing that this Court has jurisdiction to consider
the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and it
appearing that venue of these chapter 11 cases and the Motion in this district is proper pursuant
to 28 U.S.C. §§ 1408 and 1409; and it appearing that this is a core proceeding pursuant to 28
U.S.C. § 157(b); and the Court having considered the Motion, all related pleadings and
documents, and the record established in these chapter 11 cases; and the Court having found that
due and proper notice and service of the Motion has been given and that no other further notice
or service of the Motion need be given; and the Court having found that the relief sought in the
Motion is in the best interests of the Reorganized Debtors, the Debtors' estates, their creditors,
and other parties in interest; and the Court having found that the relief sought in the Motion is

---

[1] Each of the Reorganized Debtors in the above-captioned jointly administered chapter 11 cases and their
respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11
Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the
Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the
Motion.

appropriate under the circumstances, consistent with applicable law, and necessary to effectuate the purposes of the Plan, and that good and sufficient cause exists for granting the relief set forth herein; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Bankruptcy Case is hereby reopened.

3.      The Reorganized Debtors and their agents are authorized to take all actions necessary to effectuate the relief granted in accordance with the Motion and pursuant to this Order.

4.      The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

5.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

IT IS SO ORDERED.

White Plains, New York

Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Affidavit of Service of Plan Supplement [Docket No. 696]**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## AFFIDAVIT OF SERVICE

I, Robert Terziyan, depose and say that I am employed by Kurtzman Carson Consultants LLC (KCC), the claims and noticing agent for the Debtors in the above-captioned case.

On November 13, 2017, at my direction and under my supervision, employees of KCC caused to be served the following document via First Class Mail upon the service list attached hereto as **Exhibit A**; via Electronic Mail upon the service list attached hereto as **Exhibit B**; and on November 14, 2017, upon the service list attached hereto as **Exhibit C** via First Class Mail; and upon the service list attached hereto as **Exhibit D** via Overnight Mail:

- **Notice and Plan Supplement for the First Amended Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates** [Docket No. 678]

Dated November 16, 2017

Robert Terziyan

State of California
County of Los Angeles

A notary public or other officer completing this affidavit verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Subscribed and sworn to (or affirmed) before me on this 16th day of November, 2017, by Robert Terziyan proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature: 

RICARDO TEJEDA ROMERO
Commission # 2144287
Notary Public - California
Los Angeles County
My Comm. Expires Feb 27, 2020

---

[1] Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

17-22770-rdd    Doc 696    Filed 11/16/17    Entered 11/16/17 21:40:44    Main Document
Pg 2 of 11

# Exhibit A

**Exhibit A**
Master Service List
Served via First Class Mail

| Description | CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| US Department of Justice | Department of Justice US Attorney General | Commercial Litigation Branch | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |
| Environmental Protection Agency (Regional) | Environmental Protection Agency | | 290 Broadway | | New York | NY | 10007-1866 |
| Federal Communications Commission | Federal Communications Commission | | 445 12th Street SW | | Washington | DC | 20554 |
| Internal Revenue Service | Internal Revenue Service | Centralized Insolvency Operation | PO Box 7346 | | Philadelphia | PA | 19101-7346 |
| Agent under the Debtors' Postpetition Financing Facility (DIP Agent for the Revolver / Term Loan) | Morgan Stanley Senior Funding Inc | | 1585 Broadway | | New York | NY | 10036 |
| Agent under the Debtors' Postpetition Financing Facility (DIP Agent for the Revolver / Term Loan) | Morgan Stanley Senior Funding Inc | | 1300 Thames Street | 4th Floor | Baltimore | MD | 21231 |
| US Trustee | Office of the United States Trustee | Paul Schwartzberg Susan Golden | US Federal Office Building | 201 Varick Street Suite 1006 | New York | NY | 10014 |
| United States Attorney's Office SDNY | Office of US Attorney SDNY | Attn Rebecca S Tinio | 86 Chambers St Third Floor | | New York | NY | 10007 |
| Holders of the Debtors' SFRO PIK Notes | Ravi Patel | | 2783 Pillsbury Way | | Wellington | FL | 33414 |
| Counsel to NCH Healthcare System Inc NCHMD Inc & Naples Community Hospital Inc | Robins Kaplan LLP | David B Shemano | 2049 Century Park East | Suite 3400 | Los Angeles | CA | 90067 |
| Counsel to NCH Healthcare System Inc NCHMD Inc & Naples Community Hospital Inc | Robins Kaplan LLP | Lawrence A Farese | 711 Fifth Avenue South | Suite 201 | Naples | FL | 34102 |
| Counsel to NCH Healthcare System Inc NCHMD Inc & Naples Community Hospital Inc | Robins Kaplan LLP | Michael A Kolcun | 399 Park Avenue Suite 3600 | | New York | NY | 10022 |
| Secretary of the State | Secretary of State | Division of Corporations | 99 Washington Ave Ste 600 | One Commerce Plz | Albany | NY | 12231-0001 |
| Secretary of the State | Secretary of State | | 123 William St | | New York | NY | 10038-3804 |
| Securities and Exchange Commission Headquarters | Securities and Exchange Commission | Attn General Counsel | 100 F St NE | | Washington | DC | 20549 |
| Counsel to Federal Communications Commission | US Department of Justice | Attorney General | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |
| Department of Veterans Affairs | US Department of Veterans Affairs | Kathleen Ellis | 222 Richmond Avenue Bldg 3 | Room 103 | Batavia | NY | 14020 |
| MDLLC Term Loan | Wilmington Savings Fund Society FSB | Attn Geoff Lewis | 500 Delaware Avenue 11th Floor | | Wilmington | DE | 19801 |
| Indenture Trustee for the Debtors' 11% Senior Notes Due 2023 (the "Senior Notes") | Wilmington Trust National Association | Attention 21st Century Oncology Inc Senior Notes Administrator | 246 Goose Lane Suite 105 | | Guilford | CT | 06437-2186 |
| Oncure Notes | Wilmington Trust National Association | Attention Joseph P O'Donnell | 246 Goose Lane Suite 105 | | Guilford | CT | 06437 |

In re 21st Century Oncology Holdings, Inc., et al.
Case No. 17-22770 (RDD)

Page 1 of 1

17-22770-rdd    Doc 1342    Filed 03/22/19    Entered 03/22/19 19:44:58    Main Document
Pg 41 of 151

# Exhibit B

**Exhibit B**
Master Service List
Served via Electronic Mail

| Description | CreditorName | CreditorNoticeName | Email |
|---|---|---|---|
| Counsel to Spirit Realty Corporation | Akerman LLP | John E Mitchell | john.mitchell@akerman.com |
| Counsel to Spirit Realty Corporation | Akerman LLP | Katherine C Fackler | katherine.fackler@akerman.com |
| Counsel to Spirit Realty Corporation | Akerman LLP | Susan F Balaschak | susan.balaschak@akerman.com |
| Counsel to Wilmington Trust NA as Indenture Trustee | Arent Fox LLP | Andrew I Silfen & Beth M Brownstein | andrew.silfen@arentfox.com; beth.brownstein@arentfox.com |
| Counsel to DOC-21st Century Sarasota, LLC, Landlord | Baker & Mckenzie LLP | Debra A Dandeneau | Debra.Dandeneau@bakermckenzie.com |
| Counsel to Roche Diagnostics Corporation | Barnes & Thornburg LLP | David M. Powlen | david.powlen@btlaw.com |
| Counsel for David Di Pietro | Berger Singerman LLP, | Christopher A. Jarvinen, Sharon Kegerreis | CJarvinen@bergersingerman.com; SKegerreis@bergersingerman.com |
| Counsel to United Parcel Service, Inc. | Bialson, Bergen & Schwab | Lawrence M Schwab Kenneth T Law | Klaw@bbslaw.com |
| Counsel to Dignity Health (d/b/a Marian Regional Medical Center) | Binder & Schwartz LLP | Eric B Fisher Tessa B Harver | efisher@binderschwartz.com; tharvey@binderschwartz.com |
| Counsel to Central Coast Medical Oncology Corp | Bovitz & Spitzer | J Scott Bovitz Esq | bovitz@bovitz-spitzer.com |
| Counsel to McKesson Specialty Care Distribution Corporation | Buchalter A Professional Corporation | Jeffrey K Garfinkle | jgarfinkle@buchalter.com |
| Counsel to American Oncologic Associates of Michigan PC and Michigan Healthcare Professionals PC | Butzel Long PC | Joshua E Abraham | abraham@butzel.com |
| Counsel to the Administrative Agents under the Debtors' Prepetition Secured Credit Facilities; Counsel to Morgan Stanley Senior Funding Inc (MSSF) | Cahill Gordon & Reindel LLP | Attn Joel H Levitin and Richard A Stieglitz | jlevitin@cahill.com; rstieglitz@cahill.com |
| Counsel to HCP-RTS LLC | Carlton Fields | Natalie A Napierala | nnapierala@carltonfields.com |
| Counsel to Central Coast Medical Oncology Corp | Central Coast Medical Oncology - Corp | Dr Robert Dichmann | robert@ccmo.com |
| Counsel for Cardinal Health 108 LLC and Cardinal Health 414 LLC | Chiesa Shahinian & Giantomasi PC | Ryan P OConnor | roconnor@csglaw.com |
| Counsel for Cardinal Health 108 LLC and Cardinal Health 414 LLC | Chiesa Shahinian & Giantomasi PC | Scott A Zuber | szuber@csglaw.com |
| Counsel to Colonial Bldg. 3 of Naples, Inc. | Dal Lago Law | Michael R. Dal Lago, Esq. | mike@dallagolaw.com |
| Counsel to Canada Pension Plan Investment Board | Debevoise & Plimpton LLP | My Chi To & Daniel E Stroik | mcto@debevoise.com; destroik@debevoise.com |
| Counsel to David DiPietro | DelBello Donnellan Weingarten Wise & Wiederkehr, LLP | Attn: Jonathan S. Pasternak, Esq., Steven R. Schoenfeld | jpasternak@ddw-law.com; srs@ddw-law.com |
| US Department of Justice | Department of Justice US Attorney General | Commercial Litigation Branch | askdoj@usdoj.gov |
| Counsel to PMA Insurance Group | Earp Cohn PC | Allen A Etish | aetish@earpcohn.com |
| Counsel to BC Technical, Inc. | Eversheds Sutherland US LLP | Mark D Sherrill | marksherrill@eversheds-sutherland.com |
| Counsel to Kishore K Dass Ben Han and Rajiv Patel | Furr & Cohen PA | Alvin S Goldstein & Robert C Furr | agoldstein@furrcohen.com; mortman@furrcohen.com |
| Counsel to Central Coast Medical Oncology Corp | Grodsky & Olecki LLP | Allen Grodsky & Tim Henderson | allen@grodsky-olecki.com; tim@grodsky-olecki.com |
| Counsel to the following Creditors: Practice Management Groups; Current Employees/Contractors; Former Employees/Contractors; Landlords | Hunton & Williams LLP | Michael P Richman & Robert A Rich | mrichman@hunton.com; rrich2@hunton.com |
| Counsel to Iron Mountain Information Management, LLC. | Iron Mountain Information Management, LLC | Joseph Corrigan | Bankruptcy2@ironmountain.com; |
| Counsel to Pitt County Memorial Hospital Incorporated d/b/a Vidant Medical Center | K&L Gates LLP | Robert T Honeywell | robert.honeywell@klgates.com |
| Counsel to Data Breach Plaintiffs | Keller Rohrback LLP | Cari Campen Laufenberg | claufenberg@kellerrohrback.com |
| Counsel to Data Breach Plaintiffs | Keller Rohrback LLP | Chris Springer | cspringer@kellerrohrback.com |

**Exhibit B**
Master Service List
Served via Electronic Mail

| Description | CreditorName | CreditorNoticeName | Email |
|---|---|---|---|
| Counsel to Data Breach Plaintiffs | Keller Rohrback LLP | Gary Gotto Christopher Graver | ggotto@kellerrohrback.com; cgraver@kellerrohrback.com |
| On Behalf of Ken Burton, Jr. Tax Collector | Kerri Ward, Legal & Collection Support Specialist I, CFCA | Ken Burton, JR., Manatee County Tax Collector | legal@taxcollector.com |
| Counsel to Florida Oncology Partners, LLC | Kilpatrick Townsend & Stockton LLP | Guy N. Molinari, Esq., Gianfranco Finizio, Esq. | gmolinari@kilpatricktownsend.com; gfinizio@kilpatricktownsend.com |
| Counsel to Andrew L Woods | Klestadt Winters Jureller Southard & Stevens LLP | Tracy Klestadt & John Jureller Jr | tklestadt@klestadt.com; jjureller@klestadt.com |
| Counsel to Madlyn Dornaus | Lackey Hershman LLP | Deborah Deitsch-Perez & Jamie R Welton | ddp@lhlaw.net; jrw@lhlaw.net |
| Counsel to Commonage Corporation | Lippes Mathias Wexler Friedman LLP | John A Mueller | jmueller@lippes.com |
| Counsel to Debtor Knight Fire & Security Inc | Loren & Kean Law | Bruce E Loren | bloren@lorenkeanlaw.com; bankruptcyemail@lorenkeanlaw.com |
| Counsel to Data Breach Plaintiffs | Lowenstein Sandler LLP | Michael S Etkin Andrew Behlmann | metkin@lowenstein.com; abehlmann@lowenstein.com |
| Counsel to Central Coast Medical Oncology Corp | Marilyn Macron PC | Marilyn Cowhey Macron | marilyn@marilynmacron.com |
| Counsel to State of Michigan Department of Treasury | Michigan Attorney General | Bill Schuette and Juandisha M Harris | harrisj12@michigan.gov |
| Counsel to the Ad Hoc Committee of Lenders under the Debtors' Prepetition Secured Credit Facility (the "First Lien Ad Hoc Committee") | Milbank Tweed Hadley & McCloy LLP | Attn Dennis F Dunne Evan R Fleck and Matthew L Brod | efleck@milbank.com; mbrod@milbank.com; ddunne@milbank.com |
| Agent under the Debtors' Postpetition Financing Facility (DIP Agent for the Revolver / Term Loan) | Morgan Stanley Senior Funding Inc | | AGENCY.BORROWERS@morganstanley.com |
| Counsel to Elekta Inc | Moritt Hock & Hamroff LLP | Theresa A Driscoll | tdriscoll@moritthock.com |
| Counsel to the Official Committee of Unsecured Creditors of 21st Century Oncology Holdings Inc et al | Morrison & Foerster LLP | Lorenzo Marinuzzi Jonathan I Levine Daniel J Harris & Benjamin W Butterfield | lmarinuzzi@mofo.com; jonlevine@mofo.com; dharris@mofo.com; bbutterfield@mofo.com |
| NJ Department of Environmental Protection | NJ Department of Environmental Protection | Richard Peros | Richard.Peros@dep.nj.gov |
| Counsel to Laura A. Hudson, Individually and as Personal Representative for the Estate of Todd Michael Hudson | Norman L Schroeder II PA | Norman L Schroeder II | Nschroeder@nlsbankruptcy.com |
| Local Counsel to SCG Capital Corp | Norris Mclaughlin & Marcus PA | Melissa A Pena | mapena@nmmlaw.com |
| Counsel to Simi Valley Hospital & Health Care Services, a California nonprofit religious corporation dba Adventist Health Simi Valley | Norton Rose Fulbright US LLP | Rebecca J Winthrop | rebecca.winthrop@nortonrosefulbright.com |
| Massachusetts Attorney General | Office of the MA Attorney General | Attn Bankruptcy Department | ago@state.ma.us |
| Maryland Attorney General | Office of the MD Attorney General | Attn Bankruptcy Department | oag@oag.state.md.us |
| Michigan Attorney General | Office of the MI Attorney General | Attn Bankruptcy Department | miag@michigan.gov |
| Nevada Attorney General | Office of the NV Attorney General | Attn Bankruptcy Department | AgInfo@ag.nv.gov |
| US Trustee | Office of the United States Trustee | Paul Schwartzberg Susan Golden | paul.schwartzberg@usdoj.gov |
| Washington Attorney General | Office of the WA Attorney General | Attn Bankruptcy Department | emailago@atg.wa.gov |
| United States Attorney's Office SDNY | Office of US Attorney SDNY | Attn Rebecca S Tinio | Rebecca.Tinio@usdoj.gov |
| Counsel to Jewish Hospital and St Mary's Healthcare | Polsinelli PC | Jeremy R Johnson | jeremy.johnson@polsinelli.com |
| Counsel to Jewish Hospital and St Mary's Healthcare | Polsinelli PC | Jerry L Switzer Jr | jswitzer@polsinelli.com |
| Counsel to Charlene R Thomas Charles C Thomas II MD McDowell Medical Offices LLC McDowell Medical Equipment LLC Henderson Medical Offices LLC Henderson Medical Equipment LLC Strategic Healthcare Advisors LLC Rutherford Medical Offices LLC Regional Development Partners and Rutherford Medical Equipment LLC | Poyner Spruill LLP | Jill C Walters | jwalters@poynerspruill.com |

**Exhibit B**
Master Service List
Served via Electronic Mail

| Description | CreditorName | CreditorNoticeName | Email |
|---|---|---|---|
| Counsel to Wilmington Savings Fund Society FSB as Prepetition MDL Agent | Pryor Cashman LLP | Seth H Lieberman Patrick Sibley & Matthew W Silverman | slieberman@pryorcashman.com; psibley@pryorcashman.com; msilverman@pryorcashman.com |
| Counsel to Atrium 6030 LLC | Rashti & Mitchell Attorneys at law | Timothy T Mitchell | tim@rashtiandmitchell.com |
| Counsel to Edit Tolnai | Reich Reich & Reich, P.C. | Lawrence R. Reich, Esq. | lreich@reichpc.com |
| Counsel to Varian | Rimon, P.C. | Attn: Phillip Wang, Esq. | phillip.wang@rimonlaw.com |
| Counsel to NCH Healthcare System Inc NCHMD Inc & Naples Community Hospital Inc | Robins Kaplan LLP | David B Shemano | DShemano@RobinsKaplan.com |
| Counsel to NCH Healthcare System Inc NCHMD Inc & Naples Community Hospital Inc | Robins Kaplan LLP | Lawrence A Farese | LFarese@RobinsKaplan.com |
| Counsel to NCH Healthcare System Inc NCHMD Inc & Naples Community Hospital Inc | Robins Kaplan LLP | Michael A Kolcun | MKolcun@RobinsKaplan.com |
| Counsel to Robert Russell James Corbel Roxanne Haatvedt Veneta Delucchi Melquiades Bonilla Carl Schmitt Matthew Benzion Kathleen LaBarge Stacey Schwartz Timothy Meulenberg Stephen Wilbur Jackie Griffith Judith Cabrera Sharon MacDermid and Steven Brehio Plaintiffs in In re: 21st Century Oncology Customer Data Security Breach Litigation | Robinson Calcagnie Inc | Daniel S Robinson | drobinson@robinsonfirm.com |
| Counsel to Data Breach Plaintiffs | Robinson Calcagnie Inc | Daniel S Robinson Wesley Polischuk | drobinson@robinsonfirm.com; wpolischuk@robinsonfirm.com |
| Counsel to Moody's Investors Service Inc | Satterlee Stephens LLP | Christopher R Belmonte Esq & Pamela A Bosswick Esq | cbelmonte@ssbb.com; pbosswick@ssbb.com |
| Securities and Exchange Commission Headquarters | Securities and Exchange Commission | Attn General Counsel | SECBankruptcy-OGC-ADO@SEC.GOV |
| Securities and Exchange Commission New York Regional Office | Securities and Exchange Commission NY Regional Office | Andrew Calamari Regional Director | bankruptcynoticeschr@sec.gov |
| Counsel to the following Creditors: Practice Management Groups; Current Employees/Contractors; Former Employees/Contractors; Landlords | Shumaker Loop & Kendrick LLP | Steven M Berman | sberman@slk-law.com |
| Counsel to Florida Community Bank | Shutts & Bowen LLP | Larry I Glick | lglick@shutts.com |
| Counsel to Florida Community Bank | Shutts & Bowen LLP | Peter H Levitt | PLevitt@shutts.com |
| Counsel to Nationwide Health Properties LLC | Sidley Austin LLP | Andrew P Propps | apropps@sidley.com |
| Counsel to Nationwide Health Properties LLC | Sidley Austin LLP | Anna Gumport | agumport@sidley.com |
| Counsel to Nationwide Health Properties LLC | Sidley Austin LLP | Bojan Guzina | bguzina@sidley.com |
| Counsel to the Ad Hoc Committee of Crossover Lenders and Noteholders and Certain DIP Lenders | Stroock & Stroock & Lavan LLP | Attn Jayme T Goldstein Matthew A Schwartz Frank A Merola & Samantha Martin | jgoldstein@stroock.com; mschwartz@stroock.com; fmerola@stroock.com; smartin@stroock.com |
| Counsel to Data Breach Claimants | Stull, Stull & Brody | Melissa Emert, Esq. | memert@ssbny.com |
| Counsel to Radiology Regional Center PA | Trenam Kemker Scharf Barkin Frye O'Neill & Mullis PA | Lori V Vaughan Esq | lvaughan@trenam.com |
| Local Counsel to SCG Capital Corp | Tyding & Rosenberg LLP | Joseph Selba Esq | jselba@tydingslaw.com |
| Department of Veterans Affairs | US Department of Veterans Affairs | Kathleen Ellis | Kathleen.ellis3@va.gov |
| MDLLC Term Loan | Wilmington Savings Fund Society FSB | Attn Geoff Lewis | adminagent@wsfsbank.com |
| Oncure Notes | Wilmington Trust National Association | Attention Joseph P O'Donnell | jodonnell@wilmingtontrust.com |

17-22770-rdd    Doc 1342    Filed 03/22/19    Entered 03/22/19 19:44:58    Main Document
Pg 8 of 11

# Exhibit C

**Exhibit C**
Master Service List
Served via First Class Mail

| Description | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| Alabama Attorney General | Office of the AL Attorney General | Attn Bankruptcy Department | PO Box 300152 | | | Montgomery | AL | 36130-0152 |
| Arizona Attorney General | Office of the AZ Attorney General | Attn Bankruptcy Department | 1275 W Washington St | | | Phoenix | AZ | 85007 |
| California Attorney General | Office of the CA Attorney General | Attn Bankruptcy Department | 1300 I St Ste 1740 | | | Sacramento | CA | 95814 |
| Florida Attorney General | Office of the FL Attorney General | Attn Bankruptcy Department | The Capitol PL 01 | | | Tallahassee | FL | 32399-1050 |
| Indiana Attorney General | Office of the IN Attorney General | Attn Bankruptcy Department | Indiana Govt Center South 5th Fl | 302 West Washington St | | Indianapolis | IN | 46204 |
| Kentucky Attorney General | Office of the KY Attorney General | Attn Bankruptcy Department | 700 Capitol Avenue | Capitol Building Suite 118 | | Frankfort | KY | 40601 |
| Massachusetts Attorney General | Office of the MA Attorney General | Attn Bankruptcy Department | One Ashburton Place | | | Boston | MA | 02108-1698 |
| Maryland Attorney General | Office of the MD Attorney General | Attn Bankruptcy Department | 200 St Paul Place | | | Baltimore | MD | 21202-2202 |
| Michigan Attorney General | Office of the MI Attorney General | Attn Bankruptcy Department | 525 W Ottawa St | PO Box 30212 | | Lansing | MI | 48909-0212 |
| North Carolina Attorney General | Office of the NC Attorney General | Attn Bankruptcy Department | 9001 Mail Service Center | PO Box 629 | | Raleigh | NC | 27699-9001 |
| New Jersey Attorney General | Office of the NJ Attorney General | Attn Bankruptcy Department | Richard J Hughes Justice Complex | 25 Market St | PO Box 080 | Trenton | NJ | 08625 |
| Nevada Attorney General | Office of the NV Attorney General | Attn Bankruptcy Department | Old Supreme Ct Bldg | 100 N Carson St | | Carson City | NV | 89701 |
| New York Attorney General | Office of the NY Attorney General | Attorney General | 120 Broadway 24th Fl | | | New York | NY | 10271 |
| New York Attorney General | Office of the NY Attorney General | Attorney General | The Capitol | | | Albany | NY | 12224-0341 |
| Rhode Island Attorney General | Office of the RI Attorney General | Attn Bankruptcy Department | 150 S Main St | | | Providence | RI | 02903 |
| South Carolina Attorney General | Office of the SC Attorney General | Attn Bankruptcy Department | Rembert C Dennis Office Bldg | PO Box 11549 | | Columbia | SC | 29211-1549 |
| Washington Attorney General | Office of the WA Attorney General | Attn Bankruptcy Department | 1125 Washington St SE | PO Box 40100 | | Olympia | WA | 98504-0100 |
| Wisconsin Attorney General | Office of the WI Attorney General | Attn Bankruptcy Department | Wisconsin Dept of Justice | State Capitol Room 114 East | PO Box 7857 | Madison | WI | 53707-7857 |
| West Virginia Attorney General | Office of the WV Attorney General | Attn Bankruptcy Department | State Capitol Bldg 1 Rm E-26 | 1900 Kanawha Blvd East | | Charleston | WV | 25305 |
| Environmental Protection Agency (US) | US Environmental Protection Agency | Mail Code 2310A, Office of General Counsel | 1200 Pennsylvania Ave NW | | | Washington | DC | 20460 |

17-22770-rdd    Doc 1312    Filed 03/22/19    Entered 03/22/19 19:44:58    Main Document
Pg 10 of 51

# Exhibit F

17-22770-rdd    Doc 696    Filed 11/16/17    Entered 11/16/17 21:40:44    Main Document
Pg 1 of 1

**Exhibit D**

Chambers Service List

Served via Overnight Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| United States Bankruptcy Court | Honorable Judge Drain | 300 Quarropas Street Rm 248 | Chambers Copy | White Plains | NY | 10601 |

In re 21st Century Oncology Holdings, Inc., et al.
Case No. 17-22770 (RDD)

## Exhibit C

**Dosoretz Assumption Notice**

21st Century Oncology Holdings, Inc.
c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

PRF # 85533***
Case No.: 17-22770
Svc: 10

PackID: 37
NameID: 13057842
SortID: 1299|1
Sort: 592

DOSORETZ, ARIE P
19 GEORGETOWN
FT MYERS, FL 33919

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF (A) EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES TO BE ASSUMED OR ASSUMED AND ASSIGNED BY THE**
**DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY,**
**AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

        **PLEASE TAKE NOTICE THAT** on October 17, 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. 541] (the "Disclosure Statement Order"): (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

PLEASE TAKE FURTHER NOTICE THAT the Debtors filed the *Schedule of Assumed Executory Contracts and Unexpired Leases* (the "Assumption Schedule") with the Court as part of the Plan Supplement on November 13, 2017 as contemplated under the Plan. The determination to assume or assume and assign, as of the Effective Date, the Executory Contracts and Unexpired Leases identified in the Assumption Schedule was made as of November 13, 2017 and is subject to revision at any time prior to the Effective Date.

> **PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE LISTED ON <u>EXHIBIT 1</u>, ATTACHED HERETO, THAT WILL BE ASSUMED OR ASSUMED AND ASSIGNED AS OF THE EFFECTIVE DATE PURSUANT TO THE PLAN. THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN, INCLUDING THE ASSUMPTION SCHEDULE.[3]**

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **December 11, 2017, at 10:00 a.m.,** prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140.

PLEASE TAKE FURTHER NOTICE THAT section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption or assumption and assignment. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contracts and Unexpired Leases, which amounts are listed in the Assumption Schedule. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such Executory Contract or Unexpired Lease.

PLEASE TAKE FURTHER NOTICE THAT absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contracts and Unexpired Leases identified in the Assumption Schedule will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors in Cash on the Effective Date or as soon as reasonably practicable thereafter. In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and

---

[3]   Neither the exclusion nor inclusion of any contract or lease on the Assumption Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder. Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) contest any Claim asserted in connection with assumption or assumption and assignment of any Executory Contract or Unexpired Lease.

approving the assumption or assumption and assignment.  If an objection to the proposed assumption, assumption and assignment, or related cure amount is sustained by the Court, however, the Debtors may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming or assuming and assigning it.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any objections to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease identified in the Assumption Schedule) is **November 27, 2017, at 4:00 p.m.,** prevailing Eastern Time (the "Plan Objection Deadline").  Any objection to the Plan ***must***:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be ***actually received*** on or before the Plan Objection Deadline:

| Counsel to the Debtors | |
|---|---|
| Christopher Marcus, P.C. | James H.M. Sprayregen, P.C. |
| John T. Weber | William A. Guerrieri (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Alexandra Schwarzman (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | **KIRKLAND & ELLIS LLP** |
| 601 Lexington Avenue | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| New York, New York 10022 | 300 North LaSalle Street |
| Telephone:    (212) 446-4800 | Chicago, Illinois 60654 |
| Facsimile:    (212) 446-4900 | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |
| **U.S. Trustee** | |
| Paul Schwartzberg | |
| Susan Golden | |
| Office of the United States Trustee | |
| for the Southern District of New York | |
| U.S. Federal Office Building, 201 Varick Street, Suite 1006 | |
| New York, New York 10014 | |
| **Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases** | |
| Lorenzo Marinuzzi | |
| Jonathan Levine | |
| Morrison & Foerster LLP | |
| 250 West 55th Street | |
| New York, New York 10019 | |
| **Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders** | |
| Jayme Goldstein | |
| Samantha Martin | |
| Odelia Lee | |
| Stroock & Stroock & Lavan LLP | |
| 180 Maiden Lane | |
| New York, New York 10038 | |

| *Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility* |
|---|
| Evan Fleck<br>Matthew Brod<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, New York 10005 |
| *Counsel to the MDL Agent* |
| Seth H. Lieberman<br>Patrick Sibley<br>Matthew W. Silverman<br>Pryor Cashman LLP<br>7 Times Square<br>New York, New York 10036 |
| *Counsel to the DIP Agent* |
| Richard A. Stieglitz, Jr.<br>Joel H. Levitin<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, New York 10005 |

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption or assumption and assignment of the Executory Contracts and Unexpired Leases identified in the Assumption Schedule and/or related cure or adequate assurances proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or assumption and assignment, as applicable, or cure amount will be deemed to have assented to such assumption or assumption and assignment, as applicable, and cure amount.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED OR ASSUMED AND ASSIGNED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE EFFECTIVE DATE OF THE DEBTORS' OR REORGANIZED DEBTORS' ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED OR ASSUMED AND ASSIGNED**

**SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

---

New York, New York
Dated:  November 13, 2017

*/s/ Christopher Marcus, P.C.*

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

**Exhibit 1**

| Debtor Entity | Counterparty | Contract Description | Date | Cure Amount (if any) |
|---|---|---|---|---|
| 21st Century Oncology, LLC | DOSORETZ, ARIE P | Employment Agreement - Bonus Pool Diagnostic | 11/06/2015 | $0.00 |
| 21st Century Oncology, LLC | DOSORETZ, ARIE P | Employment Agreement - Bonus Pool Pathology Lab Addendum | 03/14/2016 | $0.00 |
| 21st Century Oncology, LLC | DOSORETZ, ARIE P | Employment Agreement - Physician RAD Oncology | 02/03/2015 | $0.00 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## **Exhibit D**

**Fox Assumption Notice**

21st Century Oncology Holdings, Inc.
c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

PRF # 85533***                          PackID: 47
Case No.: 17-22770                    NameID: 13058760
Svc: 10                                  SortID: 1306|1
                                              Sort: 858

FOX, AMY M
15750 OLD WEDGEWOOD COURT
FORT MYERS, FL 33908

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-22770 (RDD) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**NOTICE OF (A) EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES TO BE ASSUMED OR ASSUMED AND ASSIGNED BY THE**
**DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY,**
**AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

  **PLEASE TAKE NOTICE THAT** on October 17, 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. 541] (the "Disclosure Statement Order"):  (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1] Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2] Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Schedule of Assumed Executory Contracts and Unexpired Leases* (the "Assumption Schedule") with the Court as part of the Plan Supplement on November 13, 2017 as contemplated under the Plan. The determination to assume or assume and assign, as of the Effective Date, the Executory Contracts and Unexpired Leases identified in the Assumption Schedule was made as of November 13, 2017 and is subject to revision at any time prior to the Effective Date.

---

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE LISTED ON EXHIBIT 1, ATTACHED HERETO, THAT WILL BE ASSUMED OR ASSUMED AND ASSIGNED AS OF THE EFFECTIVE DATE PURSUANT TO THE PLAN. THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN, INCLUDING THE ASSUMPTION SCHEDULE.[3]**

---

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **December 11, 2017, at 10:00 a.m.,** prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140.

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption or assumption and assignment. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contracts and Unexpired Leases, which amounts are listed in the Assumption Schedule. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contracts and Unexpired Leases identified in the Assumption Schedule will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors in Cash on the Effective Date or as soon as reasonably practicable thereafter. In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and

---

[3]    Neither the exclusion nor inclusion of any contract or lease on the Assumption Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder. Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) contest any Claim asserted in connection with assumption or assumption and assignment of any Executory Contract or Unexpired Lease.

approving the assumption or assumption and assignment.  If an objection to the proposed assumption, assumption and assignment, or related cure amount is sustained by the Court, however, the Debtors may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming or assuming and assigning it.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any objections to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease identified in the Assumption Schedule) is **November 27, 2017, at 4:00 p.m.,** prevailing Eastern Time (the "Plan Objection Deadline").  Any objection to the Plan ***must***:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be ***actually received*** on or before the Plan Objection Deadline:

| Counsel to the Debtors | |
|---|---|
| Christopher Marcus, P.C.<br>John T. Weber<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:       (212) 446-4800<br>Facsimile:        (212) 446-4900 | James H.M. Sprayregen, P.C.<br>William A. Guerrieri (admitted *pro hac vice*)<br>Alexandra Schwarzman (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:       (312) 862-2000<br>Facsimile:        (312) 862-2200 |
| *U.S. Trustee* | |
| Paul Schwartzberg<br>Susan Golden<br>Office of the United States Trustee<br>for the Southern District of New York<br>U.S. Federal Office Building, 201 Varick Street, Suite 1006<br>New York, New York 10014 | |
| *Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases* | |
| Lorenzo Marinuzzi<br>Jonathan Levine<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019 | |
| *Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders* | |
| Jayme Goldstein<br>Samantha Martin<br>Odelia Lee<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038 | |

| *Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility* |
|---|
| Evan Fleck<br>Matthew Brod<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, New York 10005 |
| *Counsel to the MDL Agent* |
| Seth H. Lieberman<br>Patrick Sibley<br>Matthew W. Silverman<br>Pryor Cashman LLP<br>7 Times Square<br>New York, New York 10036 |
| *Counsel to the DIP Agent* |
| Richard A. Stieglitz, Jr.<br>Joel H. Levitin<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, New York 10005 |

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption or assumption and assignment of the Executory Contracts and Unexpired Leases identified in the Assumption Schedule and/or related cure or adequate assurances proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or assumption and assignment, as applicable, or cure amount will be deemed to have assented to such assumption or assumption and assignment, as applicable, and cure amount.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED OR ASSUMED AND ASSIGNED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE EFFECTIVE DATE OF THE DEBTORS' OR REORGANIZED DEBTORS' ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED OR ASSUMED AND ASSIGNED**

**SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

---

New York, New York
Dated:  November 13, 2017

*/s/ Christopher Marcus, P.C.*
Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

**Exhibit 1**

| Debtor Entity | Counterparty | Contract Description | Date | Cure Amount (if any) |
|---|---|---|---|---|
| 21st Century Oncology, LLC | FOX, AMY M | Employment Agreement - Bonus Pool Lee County Diagnostic | 01/01/2013 | $0.00 |
| 21st Century Oncology, LLC | FOX, AMY M | Employment Agreement - Bonus Pool Pathology Lab Addendum | 03/01/2016 | $0.00 |
| 21st Century Oncology, LLC | FOX, AMY M | Employment Agreement - Physician RAD Oncology RH | 04/16/2009 | $0.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## **Exhibit E**

**Katin Assumption Notice**

21st Century Oncology Holdings, Inc.
c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

PRF # 85533***
Case No.: 17-22770
Svc: 11

PackID: 3
NameID: 13061504
SortID: 1205|1
Sort: 1193

KATIN, MICHAEL
2270 COLONIAL BLVD
FORT MYERS, FL 33907

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) | Chapter 11 |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) ) | Case No. 17-22770 (RDD) |
| Debtors. | ) ) ) | (Jointly Administered) |

**NOTICE OF (A) EXECUTORY CONTRACTS AND
UNEXPIRED LEASES TO BE ASSUMED OR ASSUMED AND ASSIGNED BY THE
DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY,
AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

> **PLEASE TAKE NOTICE THAT** on October 17, 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. 541] (the "Disclosure Statement Order"):  (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates*  (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Schedule of Assumed Executory Contracts and Unexpired Leases* (the "Assumption Schedule") with the Court as part of the Plan Supplement on November 13, 2017 as contemplated under the Plan. The determination to assume or assume and assign, as of the Effective Date, the Executory Contracts and Unexpired Leases identified in the Assumption Schedule was made as of November 13, 2017 and is subject to revision at any time prior to the Effective Date.

> **PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE LISTED ON EXHIBIT 1, ATTACHED HERETO, THAT WILL BE ASSUMED OR ASSUMED AND ASSIGNED AS OF THE EFFECTIVE DATE PURSUANT TO THE PLAN. THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN, INCLUDING THE ASSUMPTION SCHEDULE.[3]**

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **December 11, 2017, at 10:00 a.m.,** prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140.

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption or assumption and assignment. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contracts and Unexpired Leases, which amounts are listed in the Assumption Schedule. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contracts and Unexpired Leases identified in the Assumption Schedule will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors in Cash on the Effective Date or as soon as reasonably practicable thereafter. In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and

---

[3]    Neither the exclusion nor inclusion of any contract or lease on the Assumption Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder. Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) contest any Claim asserted in connection with assumption or assumption and assignment of any Executory Contract or Unexpired Lease.

approving the assumption or assumption and assignment.  If an objection to the proposed assumption, assumption and assignment, or related cure amount is sustained by the Court, however, the Debtors may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming or assuming and assigning it.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any objections to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease identified in the Assumption Schedule) is **November 27, 2017, at 4:00 p.m.,** prevailing Eastern Time (the "Plan Objection Deadline").  Any objection to the Plan ***must***:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be ***actually received*** on or before the Plan Objection Deadline:

| Counsel to the Debtors | |
|---|---|
| Christopher Marcus, P.C. | James H.M. Sprayregen, P.C. |
| John T. Weber | William A. Guerrieri (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Alexandra Schwarzman (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | **KIRKLAND & ELLIS LLP** |
| 601 Lexington Avenue | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| New York, New York 10022 | 300 North LaSalle Street |
| Telephone:        (212) 446-4800 | Chicago, Illinois 60654 |
| Facsimile:        (212) 446-4900 | Telephone:        (312) 862-2000 |
|  | Facsimile:        (312) 862-2200 |

| U.S. Trustee |
|---|
| Paul Schwartzberg |
| Susan Golden |
| Office of the United States Trustee |
| for the Southern District of New York |
| U.S. Federal Office Building, 201 Varick Street, Suite 1006 |
| New York, New York 10014 |

| Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases |
|---|
| Lorenzo Marinuzzi |
| Jonathan Levine |
| Morrison & Foerster LLP |
| 250 West 55th Street |
| New York, New York 10019 |

| Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders |
|---|
| Jayme Goldstein |
| Samantha Martin |
| Odelia Lee |
| Stroock & Stroock & Lavan LLP |
| 180 Maiden Lane |
| New York, New York 10038 |

| Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility |
|---|
| Evan Fleck<br>Matthew Brod<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, New York 10005 |
| Counsel to the MDL Agent |
| Seth H. Lieberman<br>Patrick Sibley<br>Matthew W. Silverman<br>Pryor Cashman LLP<br>7 Times Square<br>New York, New York 10036 |
| Counsel to the DIP Agent |
| Richard A. Stieglitz, Jr.<br>Joel H. Levitin<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, New York 10005 |

PLEASE TAKE FURTHER NOTICE THAT any objections to the Plan in connection with the assumption or assumption and assignment of the Executory Contracts and Unexpired Leases identified in the Assumption Schedule and/or related cure or adequate assurances proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

PLEASE TAKE FURTHER NOTICE THAT any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or assumption and assignment, as applicable, or cure amount will be deemed to have assented to such assumption or assumption and assignment, as applicable, and cure amount.

PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED OR ASSUMED AND ASSIGNED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE EFFECTIVE DATE OF THE DEBTORS' OR REORGANIZED DEBTORS' ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE.  ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED OR ASSUMED AND ASSIGNED

**SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

---

New York, New York
Dated:  November 13, 2017

*/s/ Christopher Marcus, P.C.*

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

**Exhibit 1**

| Debtor Entity | Counterparty | Contract Description | Date | Cure Amount (if any) |
|---|---|---|---|---|
| 21st Century Oncology, Inc. | KATIN, MICHAEL | Employment Agreement - Executive Physician RAD Oncology | 02/21/2008 | $0.00 |
| 21st  Century Oncology, LLC | Katin, Michael | Employment Agreement - Physician | 7/1/1981 | $0.00 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**<u>Exhibit F</u>**

**Rubenstein Assumption Notice**

21st Century Oncology Holdings, Inc.
c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

PRF # 85533***                           PackID: 106
Case No.: 17-22770                    NameID: 13066464
Svc: 10                                    SortID: 1249|1
                                                Sort: 1746

RUBENSTEIN, JAMES
13301 PONDEROSA WAY
FORT MYERS, FL 33907

Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (A) EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES TO BE ASSUMED OR ASSUMED AND ASSIGNED BY THE**
**DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY,**
**AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

        **PLEASE TAKE NOTICE THAT** on October 17, 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. 541] (the "Disclosure Statement Order"):  (a) authorizing 21st Century Oncology Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] and (b) approving, among other things, (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of 21st Century Oncology Holdings, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) the solicitation materials and documents to be included in the solicitation packages; (iii) the rights offering procedures and related materials; and (iv) the procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]    Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30].  The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

PLEASE TAKE FURTHER NOTICE THAT the Debtors filed the *Schedule of Assumed Executory Contracts and Unexpired Leases* (the "Assumption Schedule") with the Court as part of the Plan Supplement on November 13, 2017 as contemplated under the Plan. The determination to assume or assume and assign, as of the Effective Date, the Executory Contracts and Unexpired Leases identified in the Assumption Schedule was made as of November 13, 2017 and is subject to revision at any time prior to the Effective Date.

---

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE LISTED ON EXHIBIT 1, ATTACHED HERETO, THAT WILL BE ASSUMED OR ASSUMED AND ASSIGNED AS OF THE EFFECTIVE DATE PURSUANT TO THE PLAN. THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN, INCLUDING THE ASSUMPTION SCHEDULE.[3]**

---

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **December 11, 2017, at 10:00 a.m.,** prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, Courtroom 248, White Plains, New York 10601-4140.

PLEASE TAKE FURTHER NOTICE THAT section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption or assumption and assignment. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contracts and Unexpired Leases, which amounts are listed in the Assumption Schedule. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such Executory Contract or Unexpired Lease.

PLEASE TAKE FURTHER NOTICE THAT absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contracts and Unexpired Leases identified in the Assumption Schedule will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors in Cash on the Effective Date or as soon as reasonably practicable thereafter. In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and

---

[3]   Neither the exclusion nor inclusion of any contract or lease on the Assumption Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder. Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) contest any Claim asserted in connection with assumption or assumption and assignment of any Executory Contract or Unexpired Lease.

approving the assumption or assumption and assignment.  If an objection to the proposed assumption, assumption and assignment, or related cure amount is sustained by the Court, however, the Debtors may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming or assuming and assigning it.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any objections to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease identified in the Assumption Schedule) is **November 27, 2017, at 4:00 p.m.,** prevailing Eastern Time (the "Plan Objection Deadline").  Any objection to the Plan ***must***:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be ***actually received*** on or before the Plan Objection Deadline:

| Counsel to the Debtors | |
|---|---|
| Christopher Marcus, P.C.<br>John T. Weber<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:      (212) 446-4800<br>Facsimile:      (212) 446-4900 | James H.M. Sprayregen, P.C.<br>William A. Guerrieri (admitted *pro hac vice*)<br>Alexandra Schwarzman (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:      (312) 862-2000<br>Facsimile:      (312) 862-2200 |

| U.S. Trustee |
|---|
| Paul Schwartzberg<br>Susan Golden<br>Office of the United States Trustee<br>for the Southern District of New York<br>U.S. Federal Office Building, 201 Varick Street, Suite 1006<br>New York, New York 10014 |

| Counsel to the Official Committee of Unsecured Creditors Appointed in These Chapter 11 Cases |
|---|
| Lorenzo Marinuzzi<br>Jonathan Levine<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019 |

| Counsel to Certain Backstop Parties and the Ad Hoc Committee of Crossover Lenders and Noteholders |
|---|
| Jayme Goldstein<br>Samantha Martin<br>Odelia Lee<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038 |

| *Counsel to the Ad Hoc Committee of Lenders Under the Debtors' Prepetition Secured Credit Facility* |
|---|
| Evan Fleck<br>Matthew Brod<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, New York 10005 |
| *Counsel to the MDL Agent* |
| Seth H. Lieberman<br>Patrick Sibley<br>Matthew W. Silverman<br>Pryor Cashman LLP<br>7 Times Square<br>New York, New York 10036 |
| *Counsel to the DIP Agent* |
| Richard A. Stieglitz, Jr.<br>Joel H. Levitin<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, New York 10005 |

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption or assumption and assignment of the Executory Contracts and Unexpired Leases identified in the Assumption Schedule and/or related cure or adequate assurances proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or assumption and assignment, as applicable, or cure amount will be deemed to have assented to such assumption or assumption and assignment, as applicable, and cure amount.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED OR ASSUMED AND ASSIGNED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE EFFECTIVE DATE OF THE DEBTORS' OR REORGANIZED DEBTORS' ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED OR ASSUMED AND ASSIGNED**

**SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (b) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (c) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (d) emailing 21coInfo@kccllc.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER (the Court's Public Access to Court Electronic Records) at: https://ecf.nysb.uscourts.gov/. A login identification and password to PACER are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.8.3 CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

---

New York, New York
Dated:  November 13, 2017

*/s/ Christopher Marcus, P.C.*
Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors*
*and Debtors in Possession*

**Exhibit 1**

| Debtor Entity | Counterparty | Contract Description | Date | Cure Amount (if any) |
|---|---|---|---|---|
| 21st Century Oncology, LLC | RUBENSTEIN, JAMES | Employment Agreement - Bonus Pool Diagnostic (Lee County) | 12/14/2009 | $0.00 |
| 21st Century Oncology, LLC | RUBENSTEIN, JAMES | Employment Agreement - Physician RAD Oncology | 02/21/2008 | $0.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## **Exhibit G**

**Rubenstein Ballot**

permits any Person to acquire, any capital stock (including common stock and preferred stock), limited liability company interest, partnership interest or other equity security or other ownership, beneficial or profits interest of 21CH or 21CI (whether or not arising under or in connection with any employment agreement), including any Claim against 21CH or 21CI that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 11 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kurtzman Carson Consultants LLC (the "Solicitation Agent") at no charge by: (i) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (ii) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (iii) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (iv) emailing 21coInfo@kccllc.com; or (b) for a fee via PACER at https://ecf.nysb.uscourts.gov/.

This Class 11 Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Class 11 Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Interest. Your Interest has been placed in Class 11, Interests in 21CH or 21CI, under the Plan.

**Item 1.  Amount of Interest.[2]**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder of an Interest in 21CH or 21CI in the form and in the amount of  375,091 units                                .

**Item 2.  Vote on Plan.**

The holder of the Class 11 Interest in 21CH or 21CI against the Debtors set forth in Item 1 votes to (please check one):

| ☒ **ACCEPT** (vote FOR) the Plan[*][3] | ☐ **REJECT** (vote AGAINST) the Plan |
|---|---|

**RECEIVED**

\*    The holder of Interest in 21CI reserves the right to disclaim the warrants to be issued. The disclaimer of warrants will be accomplished withing 60 days of issuance, or by February 1, 2019.

**NOV 2 9 2018**

**Item 3.  Important Information Regarding the Third Party Release.**

**Article VIII.8.3 of the Plan contains the following provision:**

**KURTZMAN CARSON CONSULTANTS**

Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to

RCVD NOV 29'18 PM04:07

---

2    For voting purposes only and subject to tabulation rules.

3    The foregoing Ballot notwithstanding, the Holder of Class 11 Interests reserves the right to disclaim acceptance of the transfer of warrants to and including January 31, 2019.

CID: 24179629

1722839171020175702000023

IN CONNECTION WITH THE FOREGOING, PLEASE CAREFULLY REVIEW THE FOLLOWING:

- If you vote to accept the Plan, you will be a "Releasing Party"[3] under the Plan, and you will be deemed to provide the Third-Party Release provided in Article VIII.8.3 of the Plan. If you vote to accept the plan, you cannot opt out of giving such release.

- If you vote to reject the Plan, and wish to opt out of the giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 11 Ballot to the Solicitation Agent by the Voting Deadline and check the opt out box below.

- If you do not vote on the Plan, but wish to opt out of giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 11 Ballot to the Solicitation Agent by the Voting Deadline, and check the opt out box below.

- If you (i) do not submit a Class 11 Ballot to the Solicitation Agent by the Voting Deadline, or (ii) submit a Class 11 Ballot, but do not vote to accept or reject the Plan, and fail to check the opt out box below, you will be deemed to consent to giving the release provided in Article VIII.8.3 of the Plan.

The holder of the Class 11 Interest in 21CH or 21CI set forth in Item 1 that has not voted to accept the Plan elects to:

☐ **Opt Out** of the Third Party Release.

---

[3] *"RELEASING PARTIES"* MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) THE COMMITTEE; (N) THE MEMBERS OF THE COMMITTEE; (O) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN AND DO NOT OPT OUT OF THE THIRD-PARTY RELEASE ON THEIR RESPECTIVE ELECTION FORMS; (P) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO REJECT THE PLAN AND DO NOT OPT OUT OF THE THIRD-PARTY RELEASE ON THEIR RESPECTIVE ELECTION FORMS; (Q) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (R) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (S) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (T) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (U) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (T), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

CID: 24179629

4

Class 11

1722839171020175702000023

**Item 4.  Certifications.**

By signing this Class 11 Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a)  that, as of the Voting Record Date, either:  (i) the undersigned is the holder of the Interest in 21CH or 21CI being voted; or (ii) the undersigned is an authorized signatory for an Entity that is a holder of the Interest in 21CH or 21CI being voted;

(b)  that the undersigned (or in the case of an authorized signatory, the holder) has received a copy of the Disclosure Statement, the Plan, the Disclosure Statement Order, and the Solicitation Package and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c)  that the undersigned has cast the same vote with respect to all Interests in 21CH or 21CI in Class 11 held by the holder of the Interests in 21CH or 21CI being voted; and

(d)  that no other Class 11 Ballots with respect to the amount of the Interest in 21CH or 21CI identified in Item 1 have been cast or, if any other Class 11 Ballots have been cast with respect to such Interest in 21CH or 21CI, then any such earlier Class 11 Ballots are hereby revoked.

| | |
|---|---|
| Name of Holder: | James Rubenstein (via Betty Rubenstein) |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | Steven M. Bernabm Esq. , as Counsel |
| | (If other than holder) |
| Title: | Attorney |
| Address: | |
| | 13301 Ponderosa Way
Fort Myers, FL 33907 |
| Telephone Number: | 813-229-7600 |
| Email: | sberman@slw-law.com |
| Date Completed: | as of 11/20/2017 |

**PLEASE COMPLETE, SIGN, AND DATE THIS CLASS 11 BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS MAIL (OR IN THE
ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR HAND DELIVERY TO
THE BELOW ADDRESSES.  YOUR CLASS 11 BALLOT MUST BE ACTUALLY RECEIVED BY THE
VOTING DEADLINE, WHICH IS NOVEMBER 20, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME.**

**21st Century Oncology Holdings, Inc.
Ballot Processing Center
c/o Kurtzman Carson Consultants, LLC
2335 Alaska Avenue
El Segundo, CA 90245**

CID: 24179629

Class 11

1722839171020175702000023

## Exhibit H

**Katin Ballot**

Ballot #623 Date Filed: 11/29/2018

permits any Person to acquire, any capital stock (including common stock and preferred stock), limited liability company interest, partnership interest or other equity security or other ownership, beneficial or profits interest of 21CH or 21CI (whether or not arising under or in connection with any employment agreement), including any Claim against 21CH or 21CI that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 11 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Kurtzman Carson Consultants LLC (the "Solicitation Agent") at no charge by: (i) calling the Debtors' restructuring hotline at (888) 251-2679 (US toll-free) and (310) 751-2609 (international toll); (ii) visiting the Debtors' restructuring website at: http://www.kccllc.net/21co; (iii) writing to 21st Century Oncology Holdings, Inc., Ballot Processing Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245; and/or (iv) emailing 21coInfo@kccllc.com; or (b) for a fee via PACER at https://ecf.nysb.uscourts.gov/.

This Class 11 Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Class 11 Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Interest. Your Interest has been placed in Class 11, Interests in 21CH or 21CI, under the Plan.

**Item 1.** Amount of Interest.[2]

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder of an Interest in 21CH or 21CI in the form and in the amount of <u>11,432 units</u>                .

**Item 2.** Vote on Plan.

The holder of the Class 11 Interest in 21CH or 21CI against the Debtors set forth in Item 1 votes to (please check one):

| ☒ **ACCEPT** (vote FOR) the Plan *[3] | ☐ **REJECT** (vote AGAINST) the Plan |

**RECEIVED**

\* The holder of Interest in 21CI reserves the right to disclaim the warrants to be issued. The disclaimer of warrants will be accomplished within 60 days of issuance, or by February 1, 2019.

**NOV 29 2018**

**Item 3.** Important Information Regarding the Third Party Release.

**Article VIII.8.3 of the Plan contains the following provision:**

**KURTZMAN CARSON CONSULTANTS**

Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to

**RCVD NOV 29'18 PM04:06**

---

2    For voting purposes only and subject to tabulation rules.

3    The foregoing Ballot notwithstanding, the Holder of Class 11 Interests reserves the right to disclaim acceptance of the transfer of warrants to and including January 31, 2019.

CID: 24179638

1722839171020175702000032

Class 11

**IN CONNECTION WITH THE FOREGOING, PLEASE CAREFULLY REVIEW THE FOLLOWING:**

- If you vote to accept the Plan, you will be a "Releasing Party"[3] under the Plan, and you will be deemed to provide the Third-Party Release provided in Article VIII.8.3 of the Plan. If you vote to accept the plan, you cannot opt out of giving such release.

- If you vote to reject the Plan, and wish to opt out of the giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 11 Ballot to the Solicitation Agent by the Voting Deadline and check the opt out box below.

- If you do not vote on the Plan, but wish to opt out of giving the release provided in Article VIII.8.3 of the Plan, you must submit this Class 11 Ballot to the Solicitation Agent by the Voting Deadline, and check the opt out box below.

- If you (i) do not submit a Class 11 Ballot to the Solicitation Agent by the Voting Deadline, or (ii) submit a Class 11 Ballot, but do not vote to accept or reject the Plan, and fail to check the opt out box below, you will be deemed to consent to giving the release provided in Article VIII.8.3 of the Plan.

The holder of the Class 11 Interest in 21CH or 21CI set forth in Item 1 that has not voted to accept the Plan elects to:

☐ **Opt Out** of the Third Party Release.

---

[3] *"RELEASING PARTIES"* MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE BACKSTOP PARTIES; (D) THE DIP LENDERS; (E) THE DIP AGENT; (F) THE CONSENTING MDL LENDERS; (G) THE MDL AGENT; (H) THE CONSENTING FIRST LIEN LENDERS; (I) THE FIRST LIEN AGENT; (J) THE CONSENTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEE; (L) THE EQUITY PARTIES; (M) THE COMMITTEE; (N) THE MEMBERS OF THE COMMITTEE; (O) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO ACCEPT THE PLAN AND DO NOT OPT OUT OF THE THIRD-PARTY RELEASE ON THEIR RESPECTIVE ELECTION FORMS; (P) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE PRESUMED TO REJECT THE PLAN AND DO NOT OPT OUT OF THE THIRD-PARTY RELEASE ON THEIR RESPECTIVE ELECTION FORMS; (Q) ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN WHO EITHER (1) VOTE TO ACCEPT THE PLAN OR (2) RECEIVE A BALLOT BUT ABSTAIN FROM VOTING ON THE PLAN; (R) ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN WHO VOTE TO REJECT THE PLAN BUT DO NOT ELECT ON THEIR BALLOT TO OPT-OUT OF THE THIRD-PARTY RELEASE; (S) ALL RIGHTS OFFERING PARTICIPANTS THAT PARTICIPATE IN THE RIGHTS OFFERINGS; (T) ALL OTHER HOLDERS OF CLAIMS AND INTERESTS TO THE FULLEST EXTENT PERMITTED BY LAW; AND (U) WITH RESPECT TO THE FOREGOING CLAUSES (A) THROUGH (T), EACH OF SUCH PERSON'S CURRENT AND FORMER AFFILIATES, PARTNERS, SUBSIDIARIES, OFFICERS, DIRECTORS, PRINCIPALS, EMPLOYEES, AGENTS, MANAGED FUNDS, ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, TOGETHER WITH THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH.

CID: 24179638

4

**Item 4. Certifications.**

By signing this Class 11 Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a) that, as of the Voting Record Date, either: (i) the undersigned is the holder of the Interest in 21CH or 21CI being voted; or (ii) the undersigned is an authorized signatory for an Entity that is a holder of the Interest in 21CH or 21CI being voted;

(b) that the undersigned (or in the case of an authorized signatory, the holder) has received a copy of the Disclosure Statement, the Plan, the Disclosure Statement Order, and the Solicitation Package and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c) that the undersigned has cast the same vote with respect to all Interests in 21CH or 21CI in Class 11 held by the holder of the Interests in 21CH or 21CI being voted; and

(d) that no other Class 11 Ballots with respect to the amount of the Interest in 21CH or 21CI identified in Item 1 have been cast or, if any other Class 11 Ballots have been cast with respect to such Interest in 21CH or 21CI, then any such earlier Class 11 Ballots are hereby revoked.

| | |
|---|---|
| Name of Holder: | Michael J. Katin |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | Steven M. Berman, Esq., as Counsel |
| | (If other than holder) |
| Title: | Attorney |
| Address: | 2270 Colonial Blvd. Attn Executive Vice President Fort Myers, FL 33907 |
| Telephone Number: | 813-229-7600 |
| Email: | sberman@slk-law.com |
| Date Completed: | as of 11/20/2017 |

**PLEASE COMPLETE, SIGN, AND DATE THIS CLASS 11 BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* VIA FIRST CLASS MAIL (OR IN THE ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR HAND DELIVERY TO THE BELOW ADDRESSES. YOUR CLASS 11 BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS NOVEMBER 20, 2017, AT 5:00 P.M., PREVAILING EASTERN TIME.**

**21st Century Oncology Holdings, Inc.**
**Ballot Processing Center**
**c/o Kurtzman Carson Consultants, LLC**
**2335 Alaska Avenue**
**El Segundo, CA 90245**

CID: 24179638

1722839171020175702000032

Class 11

## Exhibit I

**Antitrust Complaint**

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

Dr. Arie Pablo Dosoretz, Dr. Amy Fox,
Dr. James H. Rubenstein, and
Dr. Michael J. Katin,

       Plaintiffs,

v.                                                                Civil Action No. 2:19-cv-00162

21st Century Oncology
Holdings, Inc.,
21st Century Oncology, LLC,
and 21st Century Oncology, Inc.

       Defendants.

_____/

## COMPLAINT

Dr. Arie Pablo Dosoretz, Dr. Amy Fox, Dr. James H. Rubenstein, and Dr. Michael J. Katin (collectively, "Plaintiffs") sue 21st Century Oncology Holdings, Inc., 21st Century Oncology, LLC, and 21st Century Oncology, Inc. (collectively, "Defendants" or "21st Century Oncology") and state:

## PRELIMINARY STATEMENT

This is an action for improperly maintaining a monopoly over the provision of radiation oncology services in Collier, Lee, and Charlotte Counties in the state of Florida through extensive anti-competitive conduct in violation of federal antitrust laws. This conduct has not only injured the Plaintiffs, radiation oncologists who wish to provide services in these three counties in competition with the Defendants, it has also injured elderly cancer patients, particularly patients suffering from prostate and breast cancer. Defendants' anti-competitive conduct includes requiring the radiation oncologists who work for them in these three counties – the only radiation

oncologists in these counties – to sign onerous non-compete agreements that entirely prevent or

sharply limit these doctors' ability to challenge Defendants' monopolist practice in these counties.

It also includes creating strong incentives, financial and otherwise, for other physicians employed

by the Defendants and who dominate the referrals for radiation oncology services in these three

counties to refer their cancer patients who need radiation oncology services *only to* radiation

oncologists employed by the Defendants.  It further includes two exclusive long-term contracts

with key hospitals, conferring on Defendants a monopoly on the provision of radiation oncology

services for patients at those hospitals.  Such conduct illegally perpetuates Defendants' monopoly,

locks out competition, and enables Defendants to charge significantly inflated prices for the

provision of radiation oncology services.  Plaintiffs seek an order declaring that Defendants'

conduct violates Section 2 of the Sherman Act because their anti-competitive conduct serves to

improperly perpetuate a monopoly and, in the alternative, because they have a dangerous

probability of improperly achieving monopoly power.

     In addition to their antitrust claims, the Plaintiff physicians also bring a series of claims for

declaratory relief under state law, seeking an order declaring these non-compete agreements

unenforceable because, *inter alia*, they serve to perpetuate an illegal monopoly or have a dangerous

probability of doing so.  Absent relief from this Court, elderly and infirm cancer patients in Collier,

Lee and Charlotte counties will face a critical shortage in access to radiation oncology services,

and will often have to wait weeks or more for their radiation therapy to commence, with the

potential in some cases for significant and even devastating adverse medical consequences and

severe adverse psychological consequences in almost all cases as nervous cancer patients wait for

their potentially life-saving treatment to begin.  In the alternative, each Plaintiff physician seeks a

declaration that his or her non-compete agreement is not enforceable as drafted because it is overly

long, overly broad, or not reasonably necessary to protect a legitimate business interest of the Defendants.

**PARTIES**

1.      Plaintiff Dr. Arie Pablo Dosoretz is a radiation oncologist employed by 21st Century Oncology, LLC.  Dr. Dosoretz attended medical school at the University of Pennsylvania and completed his specialty training in radiation oncology at Yale University where he was chief resident.  He is a resident of Florida.

2.      Plaintiff Dr. Amy Fox is a radiation oncologist employed by 21st Century Oncology, LLC.  Dr. Fox attended medical school at the Mount Sinai School of Medicine and completed her specialty training in oncology at the Harvard Radiation Oncology Program.  She is a resident of Florida.

3.      Plaintiff Dr. James H. Rubenstein is a radiation oncologist employed by 21st Century Oncology, LLC.  Dr. Rubenstein attended New York University School of Medicine and did his specialty training at the Hospital of the University of Pennsylvania where he was the chief resident in Radiation Oncology.  He is a resident of Florida.

4.      Plaintiff Michael J. Katin was a radiation oncologist employed by 21st Century Oncology, LLC. Dr. Katin attended medical school at the University of Pennsylvania School of Medicine.  He did his residency in radiation oncology  at the Harvard Radiation Oncology Program,  He also did a fellowship at Lankenau Hospital in Renal and Electrolyte Disorders, another fellowship at Roswell Park Memorial Institute in Medical Oncology, and a third fellowship at National Cancer Institute / National Institute of Health in Medical Oncology and Hematology. He is a resident of Florida.

5.      Defendant 21st Century Oncology Holdings, Inc. is a global provider of integrated cancer care services. A Delaware corporation, the company is headquartered in Fort Myers, Florida

and operates 167 treatment centers, including 131 centers located in 16 U.S. states, providing radiation oncology services for cancer patients. This Court has personal jurisdiction over 21st Century Oncology Holdings, Inc. pursuant to Section 48.193(1), Florida Statutes, as 21st Century Oncology Holdings, Inc. conducts business in this state, has an office in this state, and otherwise has sufficient minimum contacts with the state of Florida such that maintenance of this action in Florida does not violate traditional notions of fair play and substantial justice.

6.    Defendant 21st Century Oncology, LLC is a Florida limited liability company. The company operates multiple treatment centers in Florida including 11 radiation oncology centers in Collier, Lee, and Charlotte counties.

7.    21st Century Oncology, Inc. is a Florida corporation. The company operates (or has operated) multiple treatment centers in Florida including in Collier, Lee, and Charlotte counties.

## **JURISDICTION AND VENUE**

8.    Plaintiffs' claims for declaratory judgments regarding application of the Sherman Antitrust Act arise under Section 2 of the Sherman Antitrust Act, which is codified at 15 U.S.C. § 26, and under 28 U.S.C. § 2201.

9.    This Court has subject-matter jurisdiction over Plaintiffs' antitrust claims under 15 U.S.C. § 26; 28 U.S.C. §1331; and 28 U.S.C. §1337(a).

10.    The Court has personal jurisdiction over 21st Century Oncology because, *inter alia*, the Defendants: (a) transacted business throughout at least 16 states in the United States, including in this District; (b) provided services throughout much of the United States, including in this District; (c) had substantial contacts within the United States, including in this District; and/or (d)

were engaged in an unlawful restraint of trade which injured persons residing in, located in, or doing business throughout much of the United States, including in this District.

11.     Defendants engaged in conduct inside the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.  The activities of Defendants were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States.  Defendants' services are sold in the flow of interstate commerce.

12.     Venue is proper in this District pursuant to §12 of the Clayton Act (15 U.S.C. §22) and 28 U.S.C. §1391(b)-(d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed herein has been carried out in this District, and Defendants reside in, are licensed to do business in, are doing business in, had agents in, or are found or transact business in, this District.

13.     Plaintiffs' claims for declaratory relief regarding the applicability of Florida Statute 542.335 arise under 28 U.S.C. § 2201.  The Court has jurisdiction over these claims under 28 U.S.C. § 1367(a).

14.     Venue is proper in this District under 28 U.S.C. §1391 for Plaintiffs' declaratory relief claims on the applicability of Florida Statute 542.335 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.  All Defendants do business in Florida, and the acts and practices alleged herein were committed in part in Florida, causing injury to Plaintiffs and third parties within Florida.  Venue is also proper under the venue provisions in the various non-compete agreements at issue.

## **FACTS**

### **Radiation Oncology and Cancer Patients**:

15.     Radiation oncology is a medical specialty that involves the controlled use of radiation to treat cancer either for cure, or to reduce pain and other symptoms caused by cancer. Radiation therapy is a method of treating cancer by carefully targeted and regulated doses of high-energy radiation to kill cancer cells. Rapidly growing cells, such as cancer cells, are more susceptible to the effects of radiation therapy than are normal cells. Radiation therapy can be used to treat a number of different types of cancer, including cancer of the bladder, brain, head and neck, lung, breast, prostate, skin, rectum, stomach, testicles, cervix and uterus, among others. It may also be used to combat lymphoma and sarcoma. Radiation therapy is common for treatment of prostate and breast cancer.

16.     Radiation therapy may be used to treat breast cancer at almost every stage. Radiation therapy is an effective way to reduce the risk of breast cancer recurring after surgery. In addition, it is commonly used to ease the symptoms caused by cancer that has spread to other parts of the body (metastatic breast cancer).

17.     For prostate cancer, radiation therapy may be used: (1) As part of the first treatment (along with hormone therapy) for cancers that are either still confined to the prostate or have spread into nearby tissues and are either intermediate or high grade; (2) If the cancer is not removed completely or comes back (recurs) in the area of the prostate after surgery; and (3) if the cancer is advanced, to help keep the cancer under control for as long as possible and to help prevent or relieve symptoms.

18.     Patients who undergo radiation therapy usually have a course of treatment that lasts from three to nine weeks, depending on their diagnosis and other factors. Typically, they receive radiation therapy five days a week for the duration of the course of treatment.

19.     One quarter of new cancer cases are diagnosed in people aged 65 to 74. The median
age at diagnosis is 61 years for breast cancer, 68 years for colorectal cancer, 70 years for lung
cancer, and 66 years for prostate cancer.

20.     Prostate cancer is the most common cancer among men, except for skin cancer.
Prostate cancer is the second leading cause of cancer-related death in men in the United States.

21.     Prostate cancer mainly affects men over 50, and the risk increases as men get older.
The average age for men to be diagnosed with prostate cancer is between 65 and 69 years.  About
six cases in 10 are diagnosed in men aged 65 or older and very few are diagnosed before age 40.

22.     Breast cancer is the most common form of cancer to affect women, and incidence
is growing, with about 1.7 million new cases worldwide every year.  In the United States alone,
the National Cancer Institute (NCI) projects that 12.4 percent of women will develop breast cancer
in their lifetime.

23.     The risk for breast cancer increases with age; most breast cancers are diagnosed
after age 50. Of the women who are diagnosed with breast cancer in the United States each year,
less than 3 percent of them are below the age of 40.  The median age that women get a breast
cancer diagnosis is 62 years. The average age of death from breast cancer is 68.

24.     Prostate cancer and breast cancer are the two most common cancers that radiation
oncologists treat.

25.     It is important for patients who have been diagnosed with cancer and prescribed a
course of radiation therapy to receive that treatment promptly.  "[R]esearch has shown that a delay
between the diagnosis and start of radiation therapy can reduce its effectiveness[.]"[1]  "Having

---

[1] UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, DEMAND FOR RADIATION THERAPY
PROJECTED TO OUTPACE SUPPLY OF RADIATION ONCOLOGISTS (Public Release Oct. 18, 2010).

sufficient access to radiation therapy is not just a matter of convenience for patients, but it can sometimes make a difference between effective radiation that will cure a patient versus suboptimal radiation that will not cure a patient."[2]

**Product Market:**

26.     There are many types of cancer treatment.   A patient may receive medical monitoring, surgery, chemotherapy, hormone therapy, immunotherapy, radiation therapy, or a combination of different treatments.  The treatment recommended for a patient depends on the type of cancer the patient has and how advanced it is. Some people receive only one type of treatment. But many patients receive a combination of treatments, such as surgery with chemotherapy and/or radiation therapy.

27.     Radiation therapy and chemotherapy are two of the most common types of treatment for cancer.  While both are designed to effectively kill cancer cells, they are very different forms of treatment in terms of their process and effect on the body.  Radiation therapy and chemotherapy are sometimes complementary approaches for treating cancer patients, but they are not substitutes for one another except in rare circumstances involving a small percentage of patients.  For the overwhelming majority of patients, radiation therapy and chemotherapy are not substitutes; they are not fungible modes of treatment.

28.     Chemotherapy, or chemo, is a process in which drugs are used to treat cancer.  It is a "systemic" treatment — working through the whole body to prevent the spread of the disease.

---

[2] *Shortage of Radiation Oncologists May Be Looming*, ONCOLOGY TIMES, Vol. 32, Issue 23 (Dec. 10, 2010).

The drug(s) used will vary depending on the type and stage of cancer as well as the patient's age and health.  The goal of chemotherapy is to stop the spread of cancer to other parts of the body.

29.      Because chemotherapy drugs travel through the body, they can also impact healthy cells, leading to a variety of side effects.  The side effects of chemotherapy vary depending on the type and amount of chemotherapy drug used and how the body reacts to it.

30.      Chemotherapy is designed to kill fast-growing cancer cells, but can sometimes lead to side effects involving the body's other, healthy fast-growing cells.   Such side effects involve blood forming cells in the bone marrow (causing anemia, increased risk of infection, or bruising), the hair follicles (causing temporary hair loss) and cells in the mouth, and digestive and reproductive tract (causing nausea, loss of appetite, constipation, or diarrhea).  Some chemo drugs can damage cells in the heart, kidneys, bladder, lungs, and nervous system.

31.      Unlike chemotherapy, which usually exposes the whole body to cancer-fighting drugs, radiation therapy is typically a local treatment.  In most cases, it is aimed at and affects only the part of the body being treated.  Radiation therapy is planned to damage cancer cells, with as little harm as possible to nearby healthy cells.

32.      There are two basic types of radiation therapy: External Beam Radiation Therapy (EBRT) and Brachytherapy. With EBRT, the radiation is delivered from outside of the body using one of several different types of radiation systems. For patients undergoing Brachytherapy, a radioactive source is temporarily or permanently placed near the tumor site or in a cavity left by a tumor that has been surgically removed.

33.      While chemotherapy delivers drugs to the entire body, radiation therapy aims to reduce the amount of healthy cells that are lost during treatment by targeting only the areas of the body affected by the cancer.  Instead of killing the cells themselves, the radiation damages the

DNA of the target cells, which causes the cancer cells to die off.  While the treatment will affect the healthy cells surrounding the cancer cells as well, the healthy cells have the ability to heal themselves after treatment.  Radiation therapy differs from chemotherapy—it is used to treat just the tumor, so it affects only the part of the body that has cancer.

34.     For patients with private insurance, it is the insurance company that contracts with providers such as radiation oncologists and so determines whether they are part of the insurance company's network.  The insurance company pays the provider directly when an eligible insured receives services from the provider.  For the insured, it typically costs the same to see any doctor, including any radiation oncologist, in the network.  An insured can often choose to see an out-of-network radiation oncologist or other provider but then typically has a larger deductible and higher co-insurance.

35.     For patients with Medicare Advantage Plans, it is the Medicare Advantage Plan that contracts with providers such as radiation oncologists and so determines whether they are part of the plan's network.  The Medicare Advantage Plan pays the provider directly when an eligible insured receives services from the provider.

36.     For patients with a Medicaid managed care plan, it is the Medicaid managed care plan that contracts with providers such as radiation oncologists and so determines whether they are part of the managed care plan's provider network.  The Medicaid managed care plan pays the provider directly when an eligible insured receives services from the provider.

37.     The demand for radiation therapy is inelastic. In other words, an increase in price will lead to little or no decrease in demand because patients who need radiation therapy have nowhere to turn for an alternative, less expensive mode of treatment (or service) of similar quality

because there is no such alternative treatment.  For cancer patients, access to radiation therapy is often simply a matter of life or death.

38.     Radiation oncologists provide a series of closely related and integrated services, which are referred to as radiation oncology services, and collectively constitute the role of the radiation oncologist in treating patients with cancer.  In addition to supervising the provision of radiation therapy, the radiation oncologist also develops and prescribes the plan of treatment and makes sure that each dosage is given accurately.  The radiation oncologist tracks the patient's progress and adjusts the treatment as necessary and also identifies and treats any side effects that may occur due to radiation therapy.

39.     A hypothetical monopolist who enjoyed a monopoly over the provision of radiation oncology services would be able to impose a Small but Significant and Non-transitory Increase in Price (hereinafter "SSNIP") on private insurance companies without losing so many sales to make the price increase not profitable and indeed would lose very few sales.

40.     A hypothetical monopolist who enjoyed a monopoly over the provision of radiation oncology services would be able to impose a SSNIP on Medicare Advantage Plans without losing so many sales to make the price increase not profitable and indeed would lose very few sales.

41.     A hypothetical monopolist who enjoyed a monopoly over the provision of radiation oncology services would be able to impose a SSNIP on Medicaid managed care plans without losing so many sales to make the price increase not profitable and indeed would lose very few sales.

42.     There are at least three closely related product markets:  (1) the sale of radiation oncology services to private insurance companies; (2) the sale of radiation oncology services to Medicare Advantage Plans; and (3) the sale of radiation oncology services to Medicaid managed

care plans. There are also closely related markets for the sale of radiation oncology services to the fee-for-service component of Medicare and Medicaid.

**Monopoly Power**:

43.    21st Century Oncology operates 11 radiation oncology centers in Collier, Lee, and Charlotte Counties.  There are no other radiation oncology centers in those counties.  21st Century Oncology employs 14 radiation oncologists in Collier, Lee, and Charlotte Counties.  It has five radiation oncologists in Collier County, which has a population of 372,880; eight in Lee County, with a population of 739,224; and two in Charlotte County, which has a population of 182,033. (One radiation oncologist works in both Lee and Charlotte counties).

44.    The following map shows the availability of radiation oncologists in Collier, Lee, and Charlotte Counties and also indicates whether those radiation oncologists are employed by the Defendants.



Number of Radiation Oncologists by County

**Geographic Market**:

12

45.      The course of radiation therapy typically runs five days a week, generally from three to nine weeks, but usually about six weeks.  Most patients in Collier, Lee, and Charlotte counties, given the duration of the course of treatment, have a very strong preference for receiving radiation oncology services within a short drive, typically no more than 20 to 30 minutes driving distance from their homes, regardless of whether the patients have Medicare, Medicaid, or private insurance.   Very few cancer patients in Collier, Lee, and Charlotte counties travel more than 30 minutes to receive radiation oncology services in these three counties.  Cancer patients almost always travel to the same location every time for treatment so they receive the same dosage of radiation therapy from the same machine.  Patients must be treated by the same machine after therapy begins.   The radiation oncologists provide care in the same office where patients are receiving their radiation therapy.

46.      Patients receiving radiation oncology services are often in their mid-60s or older and are frequently also suffering from other illnesses besides cancer, and their age and medical condition reinforce their desire to receive treatment close to home.  Many patients are driven to radiation oncology services by a family member or close friend, which furthers patients' strong preference for obtaining treatment close to home.  Some patients are simultaneously receiving chemotherapy treatment and are suffering the side effects of that treatment, making them even more anxious to receive radiation therapy close to the comforts of home.

47.      By both action and words, Defendants recognize the importance of having radiation oncology services within close proximity of their patients.  By deed, in recognition of patients' preference to receive radiation oncology services close to their homes, 21st Century Oncology operates 11 offices spread across Collier, Lee, and Charlotte counties, including two in Ft. Myers and four in Naples.  The addresses of 21st Century Oncology offices in those three counties are:

1419 SE 8th Terrace, Cape Coral, FL  33990

3680 Broadway, Ft. Myers, FL  33901

7341 Gladiolus Drive, Ft. Myers, FL  33908

8931 Colonial Center Drive, Suite 100, Ft. Myers, FL  33905

1120 Lee Boulevard, Lehigh Acres, FL  33936

8991 Brighton Lane, Bonita Springs, FL  34135

1885 SW Health PKWY, Naples, FL  34109

733 4th Avenue N., Naples, FL  34102

955 10th Avenue N., Naples, FL  34102

8350 Sierra Meadows Blvd., Suite 200, Naples, FL  34113

3175 Harbor Blvd., Port Charlotte, FL  33952

48.    The locations of 21st Century Oncology offices in Collier, Lee, and Charlotte counties are depicted on the following map.



49.     Similarly, by words, one of the tabs on 21st Century Oncology's web site is labeled "Close to Home", https://www.21co.com/, and states: "Our convenient treatment locations allow patients to fight cancer closer to home, so you can focus on your life, while we focus on treating your cancer."

50.     At the center of this three county region sits Lee County, which is the most populous of these three counties by a wide margin.  Much of the population in Lee County is clustered around the Fort Myers/Cape Coral/Lehigh Acres area and the population in the two neighboring counties is largely along the coast to the north in Charlotte County and to the south in Collier County.  By far the largest hospital in this three county area is Lee Memorial Hospital, in Lee County.

51.     Publicly available information shows that most residents in these three counties, when they go to the hospital, attend a hospital in this tri-county area, and also that relatively few individuals residing outside this tri-county area are hospitalized in a hospital in these three counties.  The following chart illustrates the relevant flow of general acute care patients.

**Inflow and outflow of hospital discharges from Charlotte, Collier, and Lee counties
By payer type, Q3 2017 through Q2 2018**

| Payer type | Inflow[1] | Outflow[2] |
|---|---|---|
| MEDICARE | 12% | 7% |
| MEDICAID | 7% | 5% |
| COMMERCIAL | 9% | 9% |
| SELF PAY | 9% | 7% |
| OTHER | 9% | 5% |

Source:  Florida AHCA Inpatient Data, Q3 2017 – Q2 2018.

Notes:
[1] Inflow is defined as the number of discharges from hospitals inside Charlotte, Collier, and Lee counties of patients residing outside those three counties divided by the total patients discharged by hospitals in those counties.

[2] Outflow is defined as the number of discharges from hospitals outside Charlotte, Collier, and Lee counties of patients residing inside those three counties divided by the total patients in those three counties discharged by any Florida hospital.

52.     While there is not publicly available information regarding how far patients would be willing to travel to receive radiation oncology services, it is nearly certain, given the foregoing clinical aspects of radiation oncology services and 21st Century Oncology's multiple locations,

that the vast majority of patients who need radiation oncology services would be willing to travel

no farther than, and likely far less than, they would be willing to travel to obtain hospitalization

services.

53.  On information and belief, significantly more than half of 21st Century Oncology

patients receive radiation oncology services no more than 20 to 30 minutes driving distance from

their homes.

54.  Given patients' pronounced preference for receiving radiation oncology services

close to home, insurance companies, Medicare Advantage Plans, and Medicaid managed care

plans all have a strong preference for including in their network radiation oncologists close to

where their insureds reside.

55.  A hypothetical monopolist of all providers of radiation oncology services in Collier,

Lee, and Charlotte Counties would be able to impose a SSNIP on private insurance plans without

losing so many sales to make the price increase not profitable, and indeed would lose very few

sales.

56.  A hypothetical monopolist of all providers of radiation oncology services in Collier,

Lee, and Charlotte Counties would be able to impose a SSNIP on Medicare Advantage Plans

without losing so many sales to make the price increase not profitable, and indeed would lose very

few sales.

57.  A hypothetical monopolist of all providers of radiation oncology services in Collier,

Lee, and Charlotte Counties would be able to impose a SSNIP on Medicaid managed care plans

without losing so many sales to make the price increase not profitable, and indeed would lose very

few sales.

58.     The geographic market for radiation oncology services on the Southwest Coast of Florida—whether for radiation oncology services purchased by Medicare, Medicare Advantage Plans, Medicaid, Medicaid managed care plans, or private insurance companies—is no larger than Collier, Lee, and Charlotte Counties.

**<u>Pricing:</u>**

59.     Many patients who receive radiation oncology services through 21st Century Oncology in Collier, Lee, and Charlotte Counties are on Medicare and for some of those patients, the price of the service they receive is set by Medicare.  However, for Medicare patients who are enrolled in a Medicare Advantage Plan, the price of services is set not through Medicare, but rather through negotiations between the particular Medicare Advantage Plan, and the doctor or group of doctors providing the services.

60.     Some patients are on Medicaid, and for some of those patients, the price of the service they receive is set by Medicaid.  However, for Medicaid patients who are enrolled in a Medicaid managed care plan, the price of services is set not through Medicaid, but rather through negotiations between the particular Medicaid managed care plan, and the doctor or group of doctors providing the services.

61.     Many other patients who receive radiation oncology services through 21st Century Oncology in these three counties are privately insured, and the rates 21st Century Oncology receives for the services provided at 21st Century Oncology are set by negotiations with the private insurers, often using the Medicare rates as a starting point for the negotiations.

62.     For Medicare Advantage Plans, Medicaid managed care plans, or private insurance plans, a provider with market power is able to impose a supra-competitive rate.

**<u>Barriers to Entry and Anticompetitive Conduct:</u>**

63. Provision of radiation oncology services requires a sufficient number of highly-trained physicians and technicians. It also requires expensive equipment and specialized facilities.

64. A radiation therapy team is composed of a number of highly trained medical professionals led by a radiation oncologist. Radiation oncologists have completed at least four years of college, four years of medical school, one year of general medical training and four years of residency (specialty) training in radiation oncology. They have extensive training in cancer medicine and the safe use of radiation to treat disease.

65. Medical physicists work directly with the radiation oncologist during treatment planning and delivery. They oversee the work of the dosimetrist, who specializes in the characteristics and clinical relevance of radiation therapy machines and the absorption of radiation by the human body and ensures that complex treatments are properly tailored for each patient. Medical physicists develop and direct quality control programs for equipment and procedures. They also make sure the equipment works properly by taking precise measurements of the radiation beam and performing other safety tests on a regular basis.

66. Dosimetrists work with the radiation oncologist and medical physicist to carefully calculate the dose of radiation to make sure the tumor gets enough radiation. Using computers, they develop a treatment plan that can best destroy the tumor while sparing the healthy tissue.

67. Radiation therapists work with radiation oncologists to give the daily radiation treatment under the doctor's prescription and supervision. Radiation therapists also are in charge of the daily positioning and setup of patients to make sure they are in the correct position to receive the treatment plan designed by the radiation oncologist. In addition, radiation therapists maintain daily records and regularly check the treatment machines to make sure they are working properly.

68.     To be most effective, radiation therapy must be aimed precisely at the same target or targets each and every time treatment is given.  The process of measuring the patient's body and marking the skin to help the team direct the beams of radiation safely and exactly to their intended locations is called simulation. During simulation, the radiation oncologist and radiation therapist place the patient on the simulation machine in the exact position the patient will be in during the actual treatment.  The radiation therapist, under the doctor's supervision, then marks the area to be treated directly on the patient's skin or on immobilization devices.  Immobilization devices are molds, casts, headrests or other devices that help the patient remain in the same position during the entire treatment.

69.     The radiation oncologist may request that special blocks or shields be made for the patient. These blocks or shields are put in the external beam therapy machine before each treatment and are used to focus the radiation to the area of the tumor and keep the rays from hitting normal tissue.

70.     A machine called a linear accelerator, or linac, which is the most commonly used machine for the provision of external radiation and typically costs $2-3 million or more, creates the radiation beam for x-ray or photon radiation therapy.  A radiation oncology center typically has several linear accelerators.  Special computer software adjusts the beam's size and shape.  This helps target the tumor while avoiding healthy tissue near the cancer cells.

71.     Radiation therapy equipment includes external beam treatment units (linear accelerators, Cobalt 60 machines, etc.), mold room equipment, immobilization and stabilization equipment, dosimetry and quality control equipment, conventional and CT simulators, treatment planning software and hardware, oncology information systems including R&V software, and brachytherapy treatment units and patient imaging systems.

72.     Not only are specially trained staff and equipment required for the provision of radiation oncology, but the building and rooms where the radiation oncology services are provided must be specially designed or retrofitted.  A linear accelerator can weigh anywhere from about 10,000 to 22,000 pounds, and one common machine weighs about 17,000 pounds, and so requires a building and room that has been designed to support that weight.  The linear accelerator must be housed in a room known as a vault, which is shielded with lead to protect others working nearby from exposure to harmful levels of radiation.

73.     Opening a new radiation oncology office can easily cost $8 million to $10 million. The cost of opening a new office and the need to provide the services of numerous specialists is a barrier to entry.

**Referrals**

74.     Referrals are the lifeblood of radiation oncologists and 21st Century Oncology established significant direct and indirect financial incentives for the medical doctors and surgeons it employs to refer their cancer patients who need radiation oncology services only or almost exclusively to 21st Century Oncology's own radiation oncologists, thereby improperly perpetuating its monopoly and locking competitors out of the market, in another barrier to entry. The medical specialists such as GYN/oncologists, urologists, and pulmonologists, and surgeons such as head and neck surgeons, ear, nose and throat surgeons, colorectal surgeons, breast surgeons, and general surgeons, practice "upstream" from the radiation oncologists.   In other words, such physicians typically see patients with cancer before the radiation oncologists do and so refer their cancer patients to the radiation oncologists who practice "downstream" from them. Without a fount of referrals, little or no stream of cancer patients would reach the radiation oncologists.

75.     For instance, patients with prostate cancer are frequently referred to a radiation oncologist by their urologist.  Patients with breast cancer are often referred to radiation oncologists by their breast surgeons.

76.     Though it is generally illegal under the Stark Law to pay doctors for referring patients to other doctors, it is permissible to create a pool for referring doctors who refer patients to other physicians within the same group provided the pool is not allocated among the referring doctors on the basis of the number of referrals and provided certain other conditions are met.  For instance, if 10 urologists working for 21st Century Oncology refer patients with prostate cancer to radiation oncologists at 21st Century Oncology, the referring urologists could, if certain other conditions were met, each receive 1/10 or 10% of a pool created for the urologists who refer prostate cancer patients to radiation oncologists at 21st Century Oncology.

77.     On information and belief, 21st Century Oncology has created such a bonus pool for urologists and through that pool 21st Century Oncology has created very substantial financial incentives for its urologists to refer patients with prostate cancer to radiation oncologists at 21st Century Oncology and effectively created a substantial financial penalty for 21st Century Oncology urologists if they do not do so.

78.     On information and belief, 21st Century Oncology has created incentives for other medical doctors and surgeons at 21st Century Oncology to refer their cancer patients to radiation oncologists at 21st Century Oncology.  Sometimes that incentive takes the form of creating a bonus pool whereby doctors at 21st Century Oncology who refer their patients for assorted diagnostic radiology or imaging tests at 21st Century Oncology are entitled to participate in the imaging pool, which is funded through a percentage of the profits of all the imaging done at 21st Century Oncology.  Sometimes it takes the form of paying physicians at 21st Century Oncology a salary in

excess of what they could earn in the market place.  Sometimes it takes the form of paying other doctors to take the on-call responsibilities of 21st Century Oncology surgeons at local hospitals where the 21st Century Oncology surgeons must agree to be on call to handle any surgical emergencies at certain set intervals.  That is a duty many surgeons do not like because of the unpredictable and late hours and because it may require them to handle appendectomies and other types of surgery that they may not have performed since they completed their training, sometimes decades ago.  Sometimes it takes the form of multiple incentives.

79.     As a result of these various pools and incentives, there is significant pressure for other upstream medical doctors and surgeons to refer their cancer patients to the radiation oncologists at 21st Century Oncology.  The executives at 21st Century Oncology who set the other physicians' terms of employment including their salaries, their eligibility for various types of bonuses and other incentives, know or can readily determine to whom the other physicians refer their cancer patients for radiation oncology services..

80.     21st Century Oncology presently employs all or most of the medical doctors or surgeons in Collier, Lee, and/or Charlotte Counties in various upstream specialty areas, further solidifying its monopoly and locking competitors out of the market.     There are four GYN/oncologists in this tri-county area. All four are employed by 21st Century Oncology.  There is one surgeon specialized in oncologic head and neck surgery in this tri-county county area.  He is employed by 21st Century Oncology.  There are seven breast surgeons in this tri-county area and all but one work for 21st Century Oncology. There is one ENT cancer surgeon in these three counties, and that surgeon is employed by 21st Century Oncology.   There are four certified colorectal surgeons in Lee County, and all four work for 21st Century Oncology.

**Acquisitions and Exclusive Contracts:**

81.     21st Century Oncology has an exclusive contract for the provision of radiation oncology services both with Lee Memorial Health System, the only hospital system in Lee County, and with Naples Community Hospital ("NCH"), the dominant hospital in Collier County.

82.     Under its exclusive contract with Lee Memorial Health System, every time a patient at Lee Memorial Health System needs a consult with a radiation oncologist, that consult is referred to a radiation oncologist at 21st Century Oncology.  Those consults are an important and constant source of referrals, further perpetuating 21st Century Oncology's monopoly and locking out the competition in another barrier to entry, because upon discharge, patients will typically see the same radiation oncologists who did the consult while the patient was hospitalized.

83.     While patients typically receive radiation oncology services on an outpatient basis, it is unfortunately a common occurrence for cancer patients receiving radiation therapy, who are often elderly and sick, to require hospitalization during the course of their multi-week radiation therapy.  When that happens, the radiation oncologist helps care for the patient while the patient is hospitalized.  But under the exclusive contract between Lee Memorial Health System and 21st Century Oncology, a radiation oncologist who is not part of the 21st Century Oncology, would not be permitted to treat his or her patient while the patient was hospitalized.   Such a contractual prohibition is both an improper means of perpetuating 21st Century Oncology's monopoly and a barrier to entry for potential competitors.

84.     In conjunction with Lee Memorial Hospital and Florida Cancer Society, 21st Century Oncology operates a Regional Cancer Center, near Lee Memorial Hospital, where cancer patients can see various specialists in one visit because they all have offices at the same location. 21st Century Oncology leases space at the Regional Cancer Center to provide radiation oncology services, and no one else can provide such services at that center.

85.     In about 2008/09, 21st Century Oncology purchased a radiation oncology clinic
from NCH.  21st Century Oncology continues to operate the clinic in a building owned by the
hospital and across the street from the hospital.  21st Century Oncology provides out-patient
radiation oncology services in the clinic where it has a linear accelerator.

86.     Part of the condition of the 2008/09 purchase was a contractual provision stating
that NCH could not compete with 21st Century Oncology in the provision of radiation oncology
services.  On information and belief, that contract also provides that all oncology referrals for
patients hospitalized at Naples Community Hospital will be sent to doctors at 21st Century
Oncology and that only radiation oncologists from 21st Century Oncology would have privileges
at NCH.  That means that if there were another radiation oncologist whose patient was hospitalized
at NCH during the course of the radiation treatment, that radiation oncologist could not take care
of his or her patient while the patient was hospitalized.  Again, those contractual provisions both
improperly perpetuate 21st Century Oncology's monopoly and help lock out competitors.

87.     In October 2013, 21st Century Oncology closed on its $125 million acquisition of
OnCure Holdings, Inc., which together with its subsidiaries, comprised 33 radiation oncology
centers and 11 radiation oncology physician groups in Florida, California and Indiana.  One of
Oncure's radiation oncology centers was in Charlotte County.  Following the purchase, 21st
Century Oncology no longer had any competition from other radiation oncologists in Charlotte
County.

88.     In about 2014, 21st Century Oncology bought a group of urologists called
Specialists in Urology.  That urology group had started hiring its own radiation oncologists and
referring its prostate cancer patients to its own in-house radiation oncologists, but was struggling
financially, and on information and belief, was losing money.  By purchasing Specialists In

Urology, 21st Century Oncology eliminated a competitor in the provision of radiation oncology services.

**Non-Compete Agreements:**

89.      There are presently 14 oncologists working for 21st Century Oncology in Collier, Lee, and Charlotte Counties, and 21st Century Oncology required all of them to sign a covenant not to compete, or non-compete agreement, as a condition of their employment. Because those non-compete agreements are frequently multi-year in duration and often cover the entire counties of Lee, Collier, and Charlotte, the non-compete agreements prevent almost all of 21st Century Oncology's current radiation oncologists from going into competition with 21st Century Oncology in those counties, and often in far broader areas as well, and create another barrier to entry

90.      On or about February 3, 2015, Dr. Arie Pablo Dosoretz entered into a Physician's Employment Agreement with 21st Century Oncology, LLC ("Employment Agreement")[3], and simultaneously with the execution and delivery of the Employment Agreement, Dr. Dosoretz entered into a Non-Competition and Confidentiality Agreement with 21st Century Oncology, LLC ("Noncompetition Agreement"), which was incorporated by reference into the Employment Agreement. The agreements provide for venue in any state or federal court having jurisdiction over Lee County, Florida.  The restrictions in the Noncompetition Agreement run for 24 months following the termination of Dr. Dosoretz's employment for any reason.  The geographic scope of the prohibition in the Noncompetition Agreement extends to (i) Lee, Collier, and Charlotte Counties, Florida and (ii) a twenty (20) mile radius of each of the Employer's radiation oncology centers located at: (x) the Offices as such term is defined in the Employment Agreement, (y) any

---

[3] The Employment Agreement was amended by the parties' Amendment to Letter Agreement, entered into as of April 1, 2017, and Amendment to Physician's Employment Agreement effective as of July 1, 2018, and a Third Amendment to Physician's Employment Agreement, effective as of December 31, 2018.

other offices or locations where the Physician provides or provided professional or administrative services on behalf of the Employer; and (z) any hospital where Physician provides services on behalf of Employer.

91.     Under the Noncompetition Agreement Dr. Dosoretz is not permitted to:

a.      engage in the ownership, operation or management of radiation oncology facilities or otherwise engage in the provision of radiation oncology services (whether as a separate business or in conjunction with any practice or other medical services provider and whether at a hospital or elsewhere) (a "Competing Business").

b.      have any interest, whether as owner, stockholder, member, partner, director, officer, employee, consultant or otherwise, in any Competing Business within the Service Area.

c.      counsel, solicit, or attempt to induce any 21st Century Oncology employee to terminate employment or retention.

d.      employ any person employed by 21st Century Oncology.

e.      provide radiation oncology medical services of any kind to any patient referred to him, or to his new employer, by any person that referred five (5) or more patients to 21st Century Oncology during the twelve (12) months immediately preceding the end of his employment with 21st Century Oncology.

f.      provide radiation oncology medical services of any kind to any patient treated by 21st Century Oncology in the twenty-four (24) months immediately preceding the end of his employment with 21st Century Oncology.

The Noncompetition Agreement states that the restrictions contemplated by subsections (a), (e) and (f) above shall not prohibit Physician from providing emergency medical treatment.

92.     On or about April 16, 2009, Dr. Amy Fox entered into a Physician's Employment

Agreement with 21st Century Oncology, LLC ("Fox Employment Agreement")[4] and subsequently

on May 1, 2009, entered into a Non-Competition and Confidentiality Agreement ("Fox

Noncompetition Agreement"), which was incorporated by reference into the Employment

Agreement with 21st Century Oncology, LLC and Radiation Therapy Services, Inc., as 21st

Century Oncology Inc. was formerly known. The agreements provide for venue in any state or

federal court having jurisdiction over Lee County, Florida.   The restrictions in the Fox

Noncompetition Agreement run for 12 months following the termination of Dr. Fox's employment

for any reason.  The list of prohibited activities is the same for Dr. Amy Fox as for Dr. Arie

Dosoretz.  The geographic scope of the prohibitions extends to twenty (20) miles of Employer's

radiation oncology treatment office located at: (i) 419 SE 8th Terr., Cape Coral, FL; 3680

Broadway, Ft. Myers, FL; (ii) 7341 Gladiolus Dr., Ft. Myers, FL; (iii) 8931 Colonial Blvd., Suite

100, Ft. Myers, FL; (iv) 1120 Lee Blvd., Lehigh Acres, FL; or any other offices where the

Physician provides or provided services on behalf of the Employer (the "Service Area").

93.     On or about February 21, 2008, Dr. James H, Rubenstein and 21st Century

Oncology, Inc., (n/k/a 21st Century Oncology, LLC) entered into a Physician Employment

Agreement, which was amended on March 21, 2010 by that certain Amendment to Employment

Agreement, and again on September 24, 2014, by the parties' Second Amendment to Physician

Employment Agreement (collectively hereinafter referred to as the "Rubenstein Employment

Agreement").   The Rubenstein Employment Agreement provides that the parties submit to

---

[4] The Fox Employment Agreement was amended by the parties' First Amendment to Physician's
Employment Agreement, dated September 25, 2009, the Second Amendment to Physician's
Employment agreement effective April 16, 2009, and the Third Amendment to Physician's
Employment Agreement, effective June 19, 2012.

jurisdiction in any court of competent jurisdiction in Florida.  The non-compete provisions in the

Rubenstein Employment Agreement run for three years after termination of the agreement.  The

geographic scope of the restrictions in the Rubenstein Employment Agreement extend to: 1. At

any hospital in which 21st Century Oncology physicians regularly admit patients; 2. Any county

in which 21st Century Oncology or its affiliates operate a Center; 3. A radius of twenty-five (25)

miles of any 21st Century Oncology location providing radiation oncology services.  Under the

Rubenstein Employment Agreement, Dr. Rubenstein is prohibited from directly or indirectly

engaging in the practice of radiation therapy or oncology or otherwise competing with 21st

Century Oncology by practicing as a radiation therapist or oncologist.  There is an exception to

the non-compete that specifies that Dr. Rubenstein may, notwithstanding the non-compete, engage

in the practice of medicine, individually or as part of a group practice of five (5) or less radiation

oncologists following the termination or expiration of the Agreement; provided, that neither the

individual nor group practice (i) has affiliated relationships with any other physician practices or

(ii) has more than one geographic location.

94.     On or about February 21, 2008, Dr. Michael J. Katin and 21st Century Oncology,

Inc. (n/k/a 21st Century Oncology, LLC) entered into a Physician Employment Agreement, which

was amended by an Amendment to Employment Agreement effective March 1, 2010, a Second

Amendment to Physician Employment Agreement effective August 10, 2014, and a Third

Amendment to Employment Agreement effective July 1, 2018 (collectively the "Katin

Employment Agreement").  Under the non-compete provision in the Katin Employment

Agreement, Dr. Katin is prohibited from engaging in the practice of radiation therapy or oncology

or engaging in any business activity competitive with 21st Century Oncology. The non-compete

provision runs for three years after the termination of the Katin Employment Agreement, with a

geographic scope that extends to: 1. At any hospital in which 21st Century Oncology physicians regularly admit patients; 2. Any county in which 21st Century Oncology or its affiliates operate a Center; or 3. A radius of twenty-five (25) miles of any 21st Century Oncology location providing radiation oncology services.

**Intent to Monopolize:**

95.     Defendants' present exclusionary conduct—including the creation and continued maintenance of a lucrative referral pool for their urologists, the creation of financial incentives for the other physicians Defendants employ to make referrals to radiation oncologists working at 21st Century Oncology, Defendants' exclusive contracts with Lee Memorial Hospital and NCH, Defendants' purchase of their competitors, and the onerous non-compete agreements Defendants entered into with their radiation oncologists—all evidence Defendants' specific intent to monopolize the market for the provision of radiation oncology services to Medicare, Medicare Advantage Plans, Medicaid, Medicaid managed care plans, and private insurance plans in this tri-county area.

**Quality of Care and Reputational Harm:**

96.     21st Century Oncology is presently engaging in a number of different practices that have and continue to degrade the quality of care that it is providing and that threatens to harm their professional reputations because they are necessarily associated with the conduct of 21st Century Oncology.

97.     For instance, upon information and belief, to improve its bottom line, 21st Century Oncology has reduced the budget and funding available for experienced nurses and technicians, even though that has reduced the number of experienced nurses and technicians (because they have left) and adversely impacted the quality of patient care.  21st Century Oncology has also moved,

in certain instances, to pay doctors per patient treated and has not guaranteed income for experienced radiation oncologists, causing experienced doctors to leave.

98.     The problems extend to the physical plant.  The sanitation system in the Port Charlotte office overflowed during 2018, and months later, the office has still not been fully repaired and a stench lingers.

99.     The problems extend to personnel issues as well.  21st Century Oncology recently brought in a new chief operating officer, who lasted a few weeks in the job.

**Prospective Market Entrants:**

100.    Drs. Dosoretz, Fox, Rubenstein, and Katin are desirous of providing radiation oncology services in Collier, Lee, and Charlotte Counties, in competition with 21st Century Oncology and have already taken a number of steps in preparation of doing so.

101.    Among other steps, they have determined where they would open their first offices; prepared a detailed business plan, including costs and patient loads necessary to break even and then make a profit; determined what equipment they need to order, where to order it, and how much it would cost; prepared a staffing plan; determined how they would fund their start-up expenses; and retained an architect to prepare drawings for renovating their proposed office.

## COUNT I

**Declaratory Judgment Regarding Monopolization in Violation of the Sherman Act**

102.    Plaintiffs repeat and reallege paragraphs 1 through 101 hereof, as if fully set forth herein.

103.    This is a declaratory judgment count brought under Section 2 of the Sherman Antitrust Act, which is codified at 15 U.S.C. § 26, and under 28 U.S.C. § 2201 and 28 U.S.C. §

2202 for the purpose of determining an actual controversy among the parties with regard to whether Defendants' conduct violates Section 2 of the Sherman Act.

104.     Plaintiffs believe that Defendants' conduct violates Section 2 of the Sherman Act because Defendants have improperly maintained a monopoly on the provision of radiation oncology services to Medicare, Medicare Advantage Plans, Medicaid, Medicaid managed care plans, and private insurance plans and that their conduct should be declared illegal.  Defendants believe they are operating consistent with federal law.

105.     Defendants control 100 percent or nearly 100 percent of the market for the provision of radiation oncology services to Medicare, Medicare Advantage Plans, Medicaid, Medicaid managed care plans, and private insurance plans in Collier, Lee, and Charlotte Counties.

106.     Even if (1) Dr. Rubenstein practices in one location in the three county area, which he may do under the exception to his non-compete, provided he complies with certain other provisions in the Rubenstein Employment Agreement, (2)  Dr. Fox practices in a location in the three country area which she may do consistent with her non-compete if she complies with certain other provisions in the Fox Noncompetition Agreement, and (3) another radiation oncologist working for 21st Century Oncology practices in one location as he may do under his non-compete agreement provided he complies with certain other provisions, 21st Century Oncology would still employ more than 78% of the radiation oncologists in these three counties.

107.     Moreover, the limited exception or carve-out in the Rubenstein Employment Agreement provides that even if Dr. Rubenstein is practicing in a single office with no more than five radiation oncologists, he or his physician group or practice may not have "affiliated relationships with any other physician practices[.]"  If that phrase is interpreted to mean he cannot practice in a group that employs doctors other than radiation oncologists, that carve-out is illusory

because it is not possible to compete against 21st Century Oncology in a group composed solely of radiation oncologists.

108.    Presently, Defendants are willfully maintaining their monopoly through exclusionary conduct including:

  a. requiring all radiation oncologists working in these three counties to sign onerous agreements not to compete;

  b. financially incentivizing their in-house urologists to make referrals exclusively to radiation oncologists at 21st Century Oncology and effectively punishing them through loss of bonuses for referring patients to radiation oncologists not working for 21st Century Oncology;

  c. pressuring other medical doctors, including GYN/oncologists and breast surgeons, among other types of physicians, at 21st Century Oncology to make only in-company referrals for radiation oncology services by the provision of bonuses, enhanced salaries or other incentives;

  d. having an anti-competitive, exclusionary contract with Lee Memorial Health systems;

  e. having an anti-competitive exclusionary contract with Naples Community Hospital; and

  f. buying out competitors.

109.    As a result of Defendants' present exercise of their monopoly power, competition has been stifled.  Insurance companies, Medicare Advantage Plans, referring doctors and patients all have less choice about where to access radiation oncology services.  Similarly, the price of radiation oncology services in these three counties has been artificially and significantly inflated

for patients on private insurance, Medicare Advantage Plans, and Medicaid managed care plans as a result of the lack of competition.

110. But for Defendants' anticompetitive conduct, Drs. Dosoretz, Fox, Rubenstein, and Katin would have entered the market for provision of radiation oncological services in Collier, Lee, and Charlotte counties sooner and as a result of their competition, there would have been more choice for insurance companies, Medicare Advantage plans, and Medicaid managed care plans about where to access radiation oncology services in these three counties and fees for such services would have been lower. Furthermore, referring physicians would have had more choices about where to send their patients.

WHEREFORE, Plaintiffs seek a declaration finding that Defendants have violated Section 2 of the Sherman Act and that Defendants' conduct, specified in paragraphs 74-99, is in violation of the Sherman Act. Plaintiffs also seek reasonable attorneys' fees, court costs, interest, and any other relief this Court deems proper.

## COUNT II

### Declaratory Judgment Regarding Attempted Monopolization In Violation of the Sherman Act

111. Plaintiffs repeat and reallege paragraphs 1 through 101 hereof, as if fully set forth herein.

112. This is a declaratory judgment count brought under Section 2 of the Sherman Antitrust Act, which is codified at 15 U.S.C. § 26, and under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 for the purpose of determining an actual controversy among the parties with regard to whether Defendants' conduct violates Section 2 of the Sherman Act.

113. Plaintiffs believe that Defendants' present conduct violates Section 2 of the Sherman Act because Defendants have attempted to monopolize the market for provision of

radiation oncology services to Medicare, Medicare Advantage Plans, Medicaid, Medicaid
managed care plans, and private insurance plans and that their conduct should be declared illegal.
Defendants believe they are operating consistent with federal law.

114.    Defendants control 100 percent or nearly 100 percent of the market for provision
of radiation oncology services to insurance companies, Medicare, Medicare Advantage Plans,
Medicaid, and Medicaid managed care plans in Collier, Lee, and Charlotte Counties.

115.    Even if (1) Dr. Rubenstein practices in one location in the three county area, which
he may do under the exception to his non-compete, provided he complies with certain other
provisions of the Rubenstein Employment Agreement, (2) Dr. Fox practices in a location in the
three country area which she may do consistent with her non-compete if she complies with certain
other provisions in the Fox Noncompetition Agreement, and (3) another radiation oncologist
working for 21st Century Oncology practices in one location as he may do under his non-compete
agreement provided he complies with certain other provisions, 21st Century Oncology would still
employ more than 78% of the radiation oncologists in these three counties.

116.    Defendants presently hold a dominant position in the market for the provision of
radiation oncology services to Medicare, Medicare Advantage Plans, Medicaid, Medicaid
managed care plans, and private insurance plans in Collier, Lee, and Charlotte Counties and if they
have not already monopolized the market, they have a dangerous probability of success in doing
so.

117.    Moreover, the limited exception or carve-out in the Rubenstein Employment
Agreement provides that even if Dr. Rubenstein is practicing in a single office with no more than
five radiation oncologists, he or his physician group or practice may not have "affiliated
relationships with any other physician practices[.]"  If that phrase is interpreted to mean he cannot

practice in a group that employs doctors other than radiation oncologists, that carve-out is illusory because it is not possible to compete against 21st Century Oncology in a group composed solely of radiation oncologists.

118.     Presently, Defendants are engaged in exclusionary conduct, evidencing their specific intent to monopolize the market, including the following conduct:

a.  financially incentivizing their in-house urologists to make referrals exclusively to radiation oncologists at 21st Century Oncology and effectively punishing them through loss of bonuses for referring patients to radiation oncologists not working for 21st Century Oncology;

b.  pressuring other medical doctors, including GYN/oncologists and breast surgeons, among other types of physicians, at 21st Century Oncology to make only in-company referrals for radiation oncology services by the provision of bonuses, enhanced salaries or other incentives;

c.  pressuring other medical doctors and surgeons at 21st Century Oncology to make only in-company referrals for radiation oncology services;

d.  having an anti-competitive, exclusionary contract with Lee Memorial Health systems;

e.  having an anti-competitive exclusionary contract with Naples Community Hospital; and

f.  buying out competitors.

119.     As a result of Defendants' present conduct, they have a dangerous probability of being able to monopolize the market for radiation oncology services in Collier, Lee, and Charlotte Counties and stifle competition, undermining any choice provided to insurance companies,

Medicare, Medicare Advantage Plans, Medicaid, Medicaid managed care plans, referring doctors and patients about where to access radiation oncology services, and ensuring that the price of radiation oncology services in these three counties will be artificially and significantly inflated for patients on Medicare, Medicare Advantage Plans, Medicaid, Medicaid managed care plans, and private insurance plans.

120.    But for Defendants' anticompetitive conduct, Drs. Dosoretz, Fox, Rubenstein, and Katin would have entered the market for provision of radiation oncological services in Collier, Lee, and Charlotte Counties sooner and as a result of their competition, there would have been more choice for insurance companies, Medicare, Medicare Advantage plans, Medicaid, and Medicaid managed care plans about where to access radiation oncology services in these three counties and fees for such services would have been lower.  Furthermore, referring physicians would have had more choices about where to send their patients.

WHEREFORE, Plaintiffs seek a declaration finding that Defendants have violated Section 2 of the Sherman Act by attempting to monopolize the market and that Defendants' conduct, specified in paragraphs 74-99, is in violation of the Sherman Act.  Plaintiffs also seek reasonable attorneys' fees, court costs, interest, and any other relief this Court deems proper.

## COUNT III

### Declaratory Judgment under Fla. Stat. 542.335 as to Drs. Dosoretz, Fox, Rubenstein, and Katin

121.    Plaintiffs repeat and reallege paragraphs 1 through 101 hereof, as if fully set forth herein.

122.    This is a declaratory judgment count brought under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 for the purpose of determining an actual controversy among the parties with regard to the enforceability of restrictive covenants running against Drs. Dosoretz, Fox, Rubenstein, and Katin.

Plaintiffs believe the restrictive covenants at issue are not enforceable and seek a final judgment declaring these covenants are not enforceable.

123.    Based on all the facts and allegations as incorporated herein, an actual, present and existing controversy exists between the parties hereto as to the enforceability of the specified restrictive covenants. This Court's declaration will confer certainty on the parties with respect to their rights, duties and obligations under the specified restrictive covenants.

124.    Plaintiffs believe the restrictive covenants at issue are not presently enforceable for multiple reasons. First, a person seeking enforcement of a restrictive covenant must prove the existence of one or more legitimate business interests justifying the restrictive covenant. Fla. Stat. § 542.335(1)(b). Plaintiffs contend the restrictive covenants at issue, which prohibit the physicians from practicing in the three counties in question or sharply limit where they can practice, serve to unlawfully perpetuate a monopoly enjoyed by 21st Century Oncology in the provision of radiation oncology services in Collier, Lee, and Charlotte Counties and so are not justified by a legitimate business interest of 21st Century Oncology. Regardless of what business purpose or interest these non-competes may purport to serve, they cannot serve a legitimate business purpose because they perpetuate a monopoly.

125.    Second, cancer patients are typically referred to a particular radiation oncologist, not to 21st Century Oncology, and thus such referrals do not constitute "legitimate business interests" of 21st Century Oncology sufficient to support the restriction on competition. Thus, these agreements are not enforceable insofar as their enforcement allegedly serves to protect 21st Century Oncology's interest in the source of referrals.

126.    Third, anyone seeking to enforce such a covenant "must plead and prove the contractually specified restraint is reasonably necessary to protect the legitimate business interest

or interests justifying the restriction." Fla. Stat. § 542.335(1)(c).  Even assuming the restrictive covenants are justified by a legitimate business interest, Plaintiffs believe they are not necessary to protect that interest, which could be adequately protected by restrictive covenants that were sharply limited in temporal and geographic scope, especially because these broad non-compete agreements unlawfully perpetuate 21st Century Oncology's monopoly on the provision of radiation oncology services in Collier, Lee, and Charlotte counties.

127.    Fourth, under certain circumstances a court may refuse enforcement of an otherwise enforceable restrictive covenant on public policy grounds if the public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint.  Here, the enforcement of the restrictive covenants would lead to a critical shortage of radiation oncologists, to the detriment of cancer patients, including many elderly patients with prostate or breast cancer, in Collier, Lee, and Charlotte Counties, who need daily radiation therapy for a number of weeks.  It would also lead to significant delays of weeks or more before cancer patients in Collier, Lee, and Charlotte Counties would be able to start their radiation therapy treatment, with potentially significant and even catastrophic adverse medical consequences in some cases and significant psychological consequences in almost all cases.

128.    Five radiation oncologists currently practice in Collier County.  Eight currently practice in Lee County, and three in Charlotte County.  Four of the doctors who practice in Lee County, and one of the doctors who practice in Charlotte County are plaintiffs in this action, challenging the enforceability of their non-compete agreement.[5]  Together, they represent four of

---

[5] Dr. Katin and another radiation oncologist employed by 21st Century Oncology practice in both Lee and Charlotte counties.

the fourteen radiation oncologists practicing in the three country area, 50% of the radiation

oncologists practicing in Lee County and 33.3% of the radiation oncologists practicing in Charlotte

County.   If they are not able to practice because of their non-compete agreements, there will be a

critical shortage of physicians to provide timely radiation oncology services to cancer patients in

these counties, a critical access to care problem, and significant delays in the commencement of

radiation oncology services, including radiation therapy, therapy for cancer patients, many of

whom are elderly and have difficulty traveling any substantial distance for five-day-a-week

radiation oncology.

129.    Only three of the 14 radiation oncologists in Collier, Lee, and Charlotte Counties

speak Spanish.   Dr. Dosoretz and Dr. Fox are two of the three Spanish-speaking radiation

oncologists in those counties.   If they are prohibited from practicing or sharply limited in where

they can practice, Spanish-speaking cancer patients who prefer a physician who can speak to them

in their native tongue will suffer as a result.

130.    Defendants contend that the restrictive covenants are enforceable.   Thus, based on

all the facts and allegations as incorporated herein, an actual, present and existing controversy has

arisen between the parties hereto as to whether the restrictive covenants serve a legitimate business

interest and are necessary to protect a legitimate business interest as well as whether any legitimate

interest is substantially outweighed by countervailing public policy considerations.

WHEREFORE, Plaintiffs seek a declaration finding that the restrictive covenants of Drs.

Drs. Dosoretz, Fox, Rubenstein, and Katin are not enforceable under Florida Statute 542.335

because they do not serve a legitimate business purpose, are not necessary to serve such a purpose,

and are against public policy because their enforcement would lead a critical access to care

shortage for elderly cancer patients in Collier, Lee, and Charlotte Counties.  Plaintiffs also seek

reasonable attorneys' fees, court costs, interest, and any other relief this Court deems proper.

COUNT IV

**Declaratory Judgment under Fla. Stat. 542.335 as to Dr. Dosoretz**

131.    Plaintiffs repeat and reallege paragraphs 1 through 101 hereof, as if fully set forth

herein.

132.    This is a declaratory judgment count brought under 28 U.S.C. § 2201 and 28 U.S.C.

§ 2202 for the purpose of determining an actual controversy among the parties regarding whether

the restrictive covenants in Dr. Dosoretz's Noncompetition Agreement are overbroad, overlong

and not reasonably necessary to protect legitimate interests.  Fla. Stat. § 542.335(1)(c).

133.    Plaintiffs believe the covenant not to compete against Dr. Dosoretz in the

Noncompetition Agreement is presently overbroad and not reasonably necessary to protect any

legitimate business interest of 21st Century Oncology and, therefore, is not enforceable as written.

Defendants believe it is enforceable.

134.    Dr. Dosoretz has provided radiation oncology care to patients in Lee County only,

yet the covenant-not-to-compete in his Noncompetition Agreement improperly prohibits him from

providing radiation oncology care in Collier, Lee, and Charlotte counties.  Because that prohibition

far exceeds the area in which he has practiced radiation oncology with Defendants, Plaintiffs

believe that broad prohibition is unenforceable.

135.    The fact that the non-competition provision in the Rubenstein Employment

Agreement has an exception or carve-out allowing Dr. Rubenstein to practice radiation oncology

in one location of his own choosing, provided he does not practice with more than four other

radiation oncologists and certain other conditions are met, demonstrates there is no legitimate

business justification for a blanket prohibition on where Dr. Dosoretz can practice and that there should, at a minimum, be a carve-out allowing him to practice in at least one location as well.

136.     The prohibition in Dr. Dosoretz's Noncompetition Agreement extends beyond those three counties to a 20-mile radius of any 21st Century Oncology office or location where Dr. Dosoretz has provided professional or administrative services on behalf of the employer. Dr. Dosoretz has served as Clinical Director of Physician Recruitment at 21st Century Oncology. Dr. Dosoretz is uncertain as to where the Defendants believe he has provided professional or administrative services and contends any administrative work he may have performed is not a basis for precluding him from working as a radiation oncologist in any location.

137.     The prohibition in Dr. Dosoretz's Noncompetition Agreement also provides that he may not "provide radiation oncology medical services of any kind to any patient referred to him, or his new employer, by any person that referred five (5) or more patients to the Employer during the twelve (12) months immediately preceding the end of his employment with the Employer[.]" That provision, which applies even if Dr. Dosoretz did not in any way solicit the referral, extends far beyond reasonably protecting any legitimate business interest, infringes on the rights of patients and referring doctors alike, and is not presently enforceable.

138.     Yet another provision in his non-compete specifies that Dr. Dosoretz may not "employ any person employed or retained by the Employer (or any of its affiliated or related companies), whether that person is a full-time physician, part-time physician or independent contractor." Because a separate provision states that Dr. Dosoretz may not "counsel, solicit, or attempt to induce" any person employed by 21st Century Oncology to terminate his or her employment with the company, the ban on employing any person who works at 21st Century Oncology arguably applies even to former employees of 21st Century Oncology, which Dr.

Dosoretz did not induce to leave the company, and as such, Dr. Dosoretz believes the prohibition is not presently necessary to protect any legitimate business interest and so is not enforceable.

139.    Plaintiffs believe these and similar restrictive provisions in Dr. Dosoretz's Noncompetition Agreement are presently overly broad, overly long in duration, not reasonably necessary to protect any legitimate business interest of 21st Century Oncology and, therefore are not enforceable as written.    Defendants believe the Noncompetition Agreement is fully enforceable.  Accordingly, based on all the facts and allegations as incorporated herein, there is an actual controversy among the parties with regard to the permissible temporal and geographic scope of these restrictive provisions, assuming that they are enforceable at all.

WHEREFORE, Plaintiff Dr. Arie Pablo Dosoretz seeks a declaration finding that the Dr. Dosoretz's restrictive covenant is not enforceable as written under Florida Statute 542.335 because it is overbroad, overlong and not reasonably necessary to protect any legitimate business interest. Dr. Dosoretz also seeks reasonable attorneys' fees, court costs, interest, and any other relief this Court deems proper

## COUNT V

### Declaratory Judgment under Fla. Stat. 542.335 as to Dr. Fox

140.    Plaintiffs repeat and reallege paragraphs 1 through 101 hereof, as if fully set forth herein.

141.    This is a declaratory judgment count brought under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 for the purpose of determining an actual controversy among the parties regarding whether the restrictive covenants in the Fox Noncompetition Agreement running against Dr. Fox are presently overbroad, overlong and not reasonably necessary to protect legitimate interests of 21st Century Oncology.  Fla. Stat. § 542.335(1)(c).

142.    Plaintiffs believe the covenant not to compete against Dr. Fox in the Fox Noncompetition Agreement is overbroad and not reasonably necessary to protect any legitimate business interest and, therefore, is not presently enforceable.  Defendants believe it is enforceable.

143.    The covenant-not-to-compete running against Dr. Fox presently prohibits her from practicing within twenty miles of four specified offices or any other office where she has provided services on behalf of the employer.  The fact that the non-competition provision in the Rubenstein Employment Agreement governing Dr. Rubenstein has an exception or carve-out allowing Dr. Rubenstein to practice radiation oncology in one location of his own choosing, provided he does not practice with more than four other radiation oncologists and certain other conditions are met, demonstrates there is no legitimate business justification for a blanket prohibition on where Dr. Fox can practice and that there should, at a minimum, be a carve-out allowing her to practice in at least one location as well.

144.    The prohibition in the Fox Noncompetition Agreement also provides that she may not "provide radiation oncology medical services of any kind to any patient referred to her, or her new employer, by any person that referred five (5) or more patients to the Employer during the twelve (12) months immediately preceding the end of his employment with the Employer[.]"  That provision, which applies even if Dr. Fox did not in any way solicit the referral, extends far beyond protecting any legitimate business interest, infringes on the rights of patients and referring doctors alike, and is not enforceable.

145.    Yet another provision in the Fox Noncompetition Agreement provides that Dr. Fox may not "employ any person employed or retained by the Employer (or any of its affiliated or related companies), whether that person is a full-time physician, part-time physician or independent contractor."  Because a separate provision states that Dr. Fox may not "counsel,

solicit, or attempt to induce" any person employed by 21st Century Oncology to terminate his or her employment with the company, the ban on employing any person who works at 21st Century Oncology arguably applies even to former employees of 21st Century Oncology, which Dr. Fox did not induce to leave the company, and as such, Dr. Fox believes the prohibition is not necessary to protect any legitimate business interest and so is not enforceable.

146.     Plaintiffs believe these and similar provisions in the Fox Noncompetition Agreement are overly broad, overly long in duration, not reasonably limited to protect a legitimate business interest of 21st Century Oncology, and therefore, are not enforceable as drafted. Defendants believe the Fox Noncompetition Agreement is fully enforceable. Accordingly, based on all the facts and allegations as incorporated herein, there is an actual controversy among the parties with regard to the permissible temporal and geographic scope of these restrictive provisions, assuming that they are enforceable at all.

WHEREFORE, Plaintiff Dr. Amy Fox seeks a declaration finding that the Dr. Fox's restrictive covenant is not enforceable as written under Florida Statute 542.335 because it is overbroad, overlong and not reasonably necessary to protect any legitimate business interest. Dr. Fox also seeks reasonable attorneys' fees, court costs, interest, and any other relief this Court deems proper

## COUNT VI

### Declaratory Judgment under Fla. Stat. 542.335 as to Dr. Rubenstein

147.     Plaintiffs repeat and reallege 1 paragraphs 101 through hereof, as if fully set forth herein.

148.     This is a declaratory judgment count brought under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 for the purpose of determining an actual controversy among the parties regarding whether

the restrictive covenant running against Dr. Rubenstein is overbroad, overlong and not reasonably necessary to protect legitimate interests.  Fla. Stat. § 542.335(1)(c).

149.    Plaintiffs believe the covenant not to compete against Dr. Rubinstein in the Rubenstein Employment Agreement is overbroad and not reasonably necessary to protect any legitimate business interest and so is not presently enforceable.  Defendants believe it is enforceable.

150.    The covenant not to compete in the Rubenstein Employment Agreement runs for three years after Dr. Rubenstein's termination date.  This time period is unreasonable under the facts and circumstance presented, and so is not enforceable.

151.    Plaintiffs believe the geographic scope of the restrictions in the Rubenstein Employment Agreement are also wrongfully overbroad.  It does not simply prohibit Dr. Rubenstein, who has worked for 21st Century Oncology in Lee County, from working as a radiation oncologist near a center where he has worked or even in a county where he has worked.  Rather, it extends to: 1. Any hospital in which 21st Century Oncology physicians regularly admit patients; 2. Any county in which 21st Century Oncology or its affiliates operate a Center; 3. A radius of twenty-five (25) miles of any 21st Century Oncology location providing radiation oncology services.

152.    While there is a limited exception that allows Dr. Rubenstein to practice radiation oncology in one location as part of a group practice of five (5) or less radiation oncologists, provided certain other conditions are met, the exceedingly broad scope of his non-competition agreement is not reasonably necessary to protect a legitimate business interest of the Defendants and so Plaintiffs believe that his broad non-competition agreement is not enforceable.

153.    That limited exception or carve-out provides that even if Dr. Rubenstein is practicing in a single office with no more than five radiation oncologists, he or his physician group or practice may not have "affiliated relationships with any other physician practices[.]"  The meaning of that phrase is not clear, but if it is interpreted to mean he cannot practice in a group that employs doctors other than radiation oncologists, the prohibition is not necessary to protect any legitimate business interest, and it also makes his carve-out illusory because it is not possible to compete against 21st Century Oncology in a group composed solely of radiation oncologists.

154.    Plaintiffs believe these and similar provisions in Dr. Rubenstein's covenant not to compete are overly broad, overly long in duration, not reasonable and so are not presently enforceable.  Defendants believe the restrictions in the Rubenstein Employment Agreement are fully enforceable.  Accordingly, based on all the facts and allegations as incorporated herein, there is an actual controversy among the parties with regard to the permissible temporal and geographic scope of these restrictive provisions, assuming that they are enforceable at all.

WHEREFORE, Plaintiff Dr. James H. Rubenstein seeks a declaration finding that the Dr. Rubenstein's restrictive covenant is not enforceable as written under Florida Statute 542.335 because it is overbroad, overlong and not reasonably necessary to protect any legitimate business interest.  Dr. Rubenstein also seeks reasonable attorneys' fees, court costs, interest, and any other relief this Court deems proper

**COUNT VII**

**Declaratory Judgment under Fla. Stat. 542.335 as to Dr. Katin**

155.    Plaintiffs repeat and reallege paragraphs 1 through 101 hereof, as if fully set forth herein.

156.    This is a declaratory judgment count brought under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 for the purpose of determining an actual controversy among the parties regarding whether the restrictive covenant in the Katin Employment Agreement running against Dr. Katin is overbroad, overlong and not reasonably necessary to protect legitimate interests.   Fla. Stat. § 542.335(1)(c).

157.    Plaintiffs believe the covenant not to compete against Dr. Katin is overbroad, overly long, and not reasonably necessary to protect any legitimate business interest and so is not enforceable as drafted.  Defendants believe it is enforceable.

158.    The covenant not to compete in the Katin Employment Agreement runs for three years after Dr. Katin's termination date.  This time period is unreasonable under the facts and circumstances presented, and so is not enforceable.

159.    Plaintiffs believe the scope of the geographic restrictions in the Katin Employment Agreement are also wrongfully overbroad.  The restriction does not simply prohibit Dr. Katin, who has worked for 21st Century Oncology in Lee and Charlotte Counties, from working as a radiation oncologist near a center where he has worked or even in a county where he has worked.  Rather, it extends to: 1. Any hospital in which 21st Century Oncology physicians regularly admit patients; 2. Any county in which 21st Century Oncology or its affiliates operate a Center; or 3. A radius of twenty-five (25) miles of any 21st Century Oncology location providing radiation oncology services.

160.    The fact that non-competition provision in the Rubenstein Employment Agreement governing Dr. Rubenstein has a carve-out allowing Dr. Rubenstein to practice radiation oncology in one location of his choosing, provided he does not practice with more than four other radiation oncologists and certain other conditions are met, demonstrates there is no legitimate business

justification for a blanket prohibition on where Dr. Katin can practice and that, at a minimum, there should be a carve-out allowing him to practice in at least one location as well.

161.    The non-compete in the Katin Employment Agreement not only prohibits Dr. Katin from practicing as a radiation oncologist, it also provides he may not "interfere or disrupt or attempt to interfere or disrupt, the relationships between the Company Group and/or any of its joint ventures and any patient, referral source or supplier or any other person having business relationships with the Company Group and/or any of its joint ventures." That prohibition is replete with undefined terms that are extraordinarily vague and encompassing, and that prohibition is not enforceable because it is not reasonably necessary to serve any legitimate business purpose.

162.    Yet another provision in his non-compete provides that Dr. Katin may not "solicit, induce or hire, or attempt to solicit, induce or hire, any employee of the Company Group and/or any of its joint ventures[.]"  The prohibition on hiring any employee of the "Company Group" appears to apply even to former employees of 21st Century Oncology, whom Dr. Katin did not solicit or induce to leave the company, and as such, Dr. Katin believes the prohibition is not necessary to protect any legitimate business interest and so is not presently enforceable.

163.    Plaintiffs believe these and similar provisions in the Katin Employment Agreement are overly broad, overly long in duration, not reasonably limited to protect a legitimate business interest of 21st Century Oncology and, therefore, are not presently enforceable.  Defendants believe the restrictions in the Katin Employment Agreement are fully enforceable.  Accordingly, based on all the facts and allegations as incorporated herein, there is an actual controversy among the parties with regard to the permissible temporal and geographic scope of these restrictive provisions, assuming that they are enforceable at all.

WHEREFORE, Plaintiff Dr. Michael J. Katin seeks a declaration finding that the Dr. Katin's restrictive covenant is not enforceable as written under Florida Statute 542.335 because it is overbroad, overlong and not reasonably necessary to protect any legitimate business interest. Dr. Katin also seeks reasonable attorneys' fees, court costs, interest, and any other relief this Court deems proper

## PRAYER FOR RELIEF

Award to Plaintiffs their costs of suit, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. §15(a);

Declare that Defendants, their directors, officers, parents, employees, agents, successors, members, and all persons in active concert and participation are violating Section 2 of the Sherman Act through their anticompetitive practices as alleged herein, both because they have illegally monopolized the market for radiation oncology services in these three counties and in the alternative because they have a dangerous probability of doing so;

Declare that the non-compete agreements of Doctors Dosoretz, Fox, Rubenstein, and Katin are not enforceable, or in the alternative restrict the temporal and geographic scope of those overbroad, overlong and unreasonable agreements;

Award to Plaintiffs their costs of suit, including reasonable attorneys' fees and expenses, under their restrictive covenants;

and Award any other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a Jury Trial on all issues so triable.

Dated:  March 15, 2019                    Respectfully submitted,

                                          /s/ Luis E. Suarez
                                          *Luis E. Suarez*

                                          Ernest J. Marquart
                                          Florida Bar No. 905860
                                          emarquart@shumaker.com
                                          Thomas M. Wood
                                          Florida Bar No. 10080
                                          twoods@shumaker.com
                                          Michele Leo Hintson
                                          Florida Bar No. 604941
                                          mhintson@shumaker.com
                                          **SHUMAKER, LOOP & KENDRICK**
                                          101 East Kennedy Boulevard, Suite 2800
                                          Tampa, Florida 33602
                                          Telephone:  (813) 229-7600
                                          Facsimile:  (813) 229-1660

                                          Luis E. Suarez
                                          Florida Bar No. 390021
                                          lsuarez@bsfllp.com
                                          Mark J. Heise
                                          Florida Bar No. 771090
                                          mheise@bsfllp.com
                                          **BOIES SCHILLER FLEXNER LLP**
                                          100 Southeast Second Street, Suite 2800
                                          Miami, FL  33131
                                          Telephone:  (305) 539-8400
                                          Facsimile:  (305)539-1307

                                          STUART H. SINGER, ESQ.
                                          Florida Bar No. 377325
                                          Carl E. Goldfarb,
                                          Florida Bar No. 125891
                                          cgoldfarb@bsfllp.com
                                          **BOIES SCHILLER FLEXNER LLP**
                                          401 East Las Olas Blvd., Suite 1200
                                          Fort Lauderdale, Florida  33301
                                          Telephone:  (954) 356-0011
                                          Facsimile:  (954) 356-0022

                                          *Attorneys for Plaintiffs*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Dr. Arie Pablo Dosoretz, Dr. Amy Fox, Dr. James H. Rubenstein, and Dr. Michael J. Katin

### DEFENDANTS
21st Century Oncology Holdings, Inc., 21st Century Oncology, LLC and 21st Century Oncology, Inc.

**(b)** County of Residence of First Listed Plaintiff    Lee County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Boies Schiller Flexner LLP
100 S.E. Second Street, Suite 2800
Miami, Florida 33131

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government    Plaintiff

☒ 3   Federal Question
     *(U.S. Government Not a Party)*

☐ 2   U.S. Government    Defendant

☐ 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☒ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. 26
Brief description of cause:
This is an action for declaratory relief for monopolization and attempted monopolization.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.    DEMAND $      CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE      DOCKET NUMBER

DATE
03/15/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Luis E. Suarez

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

JS 44 Reverse (Rev. 12/19) Case 2:19-cv-00162   Document 1-1   Filed 03/22/19   Entered 03/23/19 10:41:58   Main Document
Pg 146 of 152

17-22770-rdd   Doc 1812   Filed 03/22/19   Entered 03/23/19 10:41:58   Main Document   Pg 146 of 152   Page D 53

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)   Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)   County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)   Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.   Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.   Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.   Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| Dr. Arie Pablo Dosoretz, Dr. Amy Dosoretz Fox, Dr. James H. Rubenstein, and Dr. Michael J. Katin | ) ) ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )   Civil Action No. _____ |
| 21st Century Oncology Holdings, Inc.; 21st Century Oncology, LLC; and 21st Century Oncology, Inc. | ) ) ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   21st Century Oncology Holdings, Inc.
2270 Colonial Boulevard
Fort Myers, FL 33907


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Ernest J. Marquart, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
emarquart@shumaker.com


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*CLERK OF COURT*


Date: _____   _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                            *Server's signature*


                                            _____
                                            *Printed name and title*


                                            _____
                                            *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Middle District of Florida

| | |
|---|---|
| Dr. Arie Pablo Dosoretz, Dr. Amy Dosoretz Fox, Dr. James H. Rubenstein, and Dr. Michael J. Katin | ) ) ) ) ) |
| _Plaintiff(s)_ | ) |
| v. | ) Civil Action No. |
| 21st Century Oncology Holdings, Inc.; 21st Century Oncology, LLC; and 21st Century Oncology, Inc. | ) ) ) ) |
| _Defendant(s)_ | ) ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_    21st Century Oncology, LLC
c/o Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301-2525

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Ernest J. Marquart, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
emarquart@shumaker.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____               _____
                                                 *Server's signature*

                                             _____
                                                 *Printed name and title*

                                             _____
                                                 *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| Dr. Arie Pablo Dosoretz, Dr. Amy Dosoretz Fox, Dr. James H. Rubenstein, and Dr. Michael J. Katin | ) ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| 21st Century Oncology Holdings, Inc.; 21st Century Oncology, LLC; and 21st Century Oncology, Inc. | ) ) ) ) |
| *Defendant(s)* | ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  21st Century Oncology, Inc.
c/o Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301-2525

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Ernest J. Marquart, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
emarquart@shumaker.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____     _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                                      .

❏  I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❏  I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏  I returned the summons unexecuted because _____ ; or

❏  Other *(specify)*:



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                              *Server's signature*


                                                   _____
                                                              *Printed name and title*


                                                   _____
                                                              *Server's address*

Additional information regarding attempted service, etc: