Jeffrey R. Gleit, Esq.
Allison H. Weiss, Esq.
Clark A. Freeman, Esq.
SULLIVAN & WORCESTER LLP
1633 Broadway
New York, New York 10019
(212) 660-3000 (Telephone)
(212) 660-3001 (Facsimile)

John Terzaken, Esq.
Abram J. Ellis, Esq.
SIMPSON THACHER & BARTLETT LLP
900 G Street, N.W.
Washington, D.C. 20001
(202) 636-5858 (Telephone)
(202) 294-3539 (Facsimile)

*Counsel to the Reorganized Debtors*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*, | ) | Case No. 17-22770 (RDD) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |

## MOTION TO CONFIRM CERTAIN DOCUMENTS ARE NOT PRIVILEGED AND, IF NECESSARY, COMPELLING ADDITIONAL RELATED DISCOVERY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ..................................................................................................... 5

    A.    Documents Uncovered on 21C's Own Server and Devices Are Not
           Privileged ................................................................................................ 5

    B.    The Dosoretz Emails Are Not Privileged Or Legally Protected Under the
           Crime-Fraud Exception .................................................................. 11

    C.    If Discovery is Warranted, the Court Should Compel Further Discovery
           Related to the Dosoretz Emails .................................................... 15

CONCLUSION .................................................................................................. 16

## TABLE OF AUTHORITIES

Page

**Cases**

*Amusement Indus., Inc. v. Stern*,
 293 F.R.D. 420 (S.D.N.Y. 2013) ........................................................ 16

*Aventa Learning, Inc. v. K12, Inc.*,
 830 F. Supp. 2d 1083 (W.D. Wash. 2011)............................................. 10

*Bingham v. Baycare Health System*,
 2016 WL 3917513 (M.D. Fla. July 20, 2016) ..................................... 8, 9

*Centennial Bank v. Servisfirst Bank Inc.*,
 2016 WL 6037552 (M.D. Fla. Oct. 14, 2016) ....................................... 7

*Cooksey v. Hilton Int'l Co.*,
 863 F. Supp. 150 (S.D.N.Y. 1994) ...................................................... 12

*In re Asia Global Crossing Ltd.*,
 322 B.R. 247 (Bankr. S.D.N.Y. 2005)............................................ 7, 8, 10

*In re County of Erie*,
 473 F.3d 413 (2d Cir. 2007).................................................................. 7

*In re Grand Jury Subpoena Dated July 6, 2005*,
 510 F.3d 180 (2d Cir. 2007).................................................................. 12

*In re Grand Jury Subpoena Duces Tecum*,
 731 F.2d 1032 (2d Cir. 1984)................................................................ 13

*In re Horowitz*,
 482 F.2d 72 (2d Cir. 1973).................................................................... 7

*In re Reserve Fund Sec. & Derivative Litig.*,
 275 F.R.D. 154 (S.D.N.Y. 2011) ...................................................... 7, 11

*In re St. Johnsbury Trucking Co. Inc.*,
 184 B.R. 446 (Bankr. D. Vt. 1995)........................................................ 12

*Kelleher v. City of Reading*,
 No. Civ. A. 01–3386, 2002 WL 1067442, (E.D.Pa. May 29, 2002) ...................................... 11

*Long v. Marubeni Am. Corp.*,
 No. 05CIV.639 (GEL)(KNF), 2006 WL 2998671 (S.D.N.Y. Oct. 19, 2006) ........................ 6

*Loughrin v. United States,*
    573 U.S. 351 (2014) ........................................................................................... 12

*Madanes v. Madanes,*
    199 F.R.D. 135 (S.D.N.Y. 2001) ............................................................... 12, 15

*Meyer v. Kalanick,*
    No. 15 CIV. 9796, 2016 WL 3189961 (S.D.N.Y. June 7, 2016) .......................... 12

*Miller v. Zara USA, Inc.,*
    151 A.D.3d 462 (N.Y. App. Div. 2017) ............................................................. 8

*United Sates v. Bell,*
    77 F.2d 965 (11th Cir. 1985) ........................................................................... 7

*United States v. Finazzo,*
    2013 WL 619572 (E.D.N.Y. Feb. 19, 2013) ............................................... passim

*United States v. Jacobs,*
    117 F.3d 82 (2d Cir.1997) .............................................................................. 12

*United States v. Zolin,*
    491 U.S. 554 (1989) ....................................................................................... 6

*von Bulow v. von Bulow,*
    811 F.2d 136 (2d. Cir 1987) ........................................................................... 6

**Rules**

FED. R. BANKR.P. 9017 ........................................................................................ 6

FED.R.EVID. 1101(b) ........................................................................................... 6

21st Century Oncology Holdings, Inc., 21st Century Oncology LLC, or 21st Century

Oncology Inc. ("21C") respectfully move the Court for an order (i) confirming that the

communications cited herein (referred to in this motion as the "Dosoretz Emails") and enclosed

as Exhibits B through G between Daniel "Danny" Dosoretz or Florida Plaintiffs[1] and attorneys at

Shumaker, Loop and Kendrick LLP ("Shumaker") are not privileged and (ii), if additional

discovery is required by the Court, compelling Danny Dosoretz, Shumaker, and the Florida

Plaintiffs to submit to additional discovery related to the Dosoretz Emails.

## INTRODUCTION

Newly-discovered documents on 21C's company server and devices have revealed that

the Florida Plaintiffs made false and misleading statements to the Court about their knowledge of

the claims brought in the Florida Action and their intentions to bring claims against 21C prior to

the Effective Date. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████ The Florida Plaintiffs then

knowingly and intentionally waited until after the Effective Date and the closure of the

bankruptcy case to bring their claims and brazenly declared to this Court that it was

inconceivable that they could have even known about these claims before the Effective Date.

---

[1]     This motion accompanies and is made in the alternative to 21C's Motion for Reconsideration,
which is being filed contemporaneously with this motion.  Unless otherwise indicated, capitalized terms
in this motion have the same definition as capitalized terms in the Motion For Entry Of An Order (I)
Enforcing The Plan And Confirmation Order, Including The Plan Injunction And Third-Party Release;
(II) Holding Dr. Arie Pablo Dosoretz, Dr. Amy Fox, Dr. Michael J. Katin, And James H. Rubenstein In
Contempt; (III) Imposing Sanctions; And (IV) Granting Related Relief (the "Motion to Enforce").

21C seeks an order from this Court confirming that the Dosoretz Emails are not subject to attorney-client privilege because Danny Dosoretz had no reasonable expectation of privacy in communications sent via 21C's server and devices, and that any claim of privilege or other legal protection over the Dosoretz Emails or related materials is barred under the crime-fraud exception because these materials demonstrate fraud perpetrated on 21C's equity investors, creditors, and the Court.

In parallel with this Motion, 21C has requested that the Court reconsider its decision authorizing the parties to conduct discovery because that decision relied on the Florida Plaintiffs' false representations, and to grant the Reorganized Debtors' pending Motion to Enforce. If the Court denies 21C's Motion for Reconsideration and determines that additional discovery is necessary in this proceeding, 21C also requests an order compelling the Florida Plaintiffs, Danny Dosoretz, and Shumaker to allow discovery into the Dosoretz Emails and related material.

## BACKGROUND

1.    On April 24, 2019, Reorganized Debtors filed the Motion to Enforce seeking an order barring the Florida Plaintiffs from pursuing their challenge to their Non-Compete Provisions because any such claims were barred when their contracts were assumed as part of 21C's Bankruptcy. Dkt. #1326.

2.    On May 8, 2019, Florida Plaintiffs filed a response to the Motion to Enforce. Dkt. 1333.[2] Florida Plaintiffs argued to this Court that they had no intention of leaving employment with 21C and had not considered antitrust claims against 21C prior to the Effective Date. Florida Plaintiffs further argued that it was "nonsensical" to think that they could have even conceived of

---

[2]    Response to Motion in Opposition to Reorganized Debtors' Motion for the Entry of an Order (1) Enforcing the Plan and Confirmation Order, Including the Plan Injunction and Third-Party Release; (II) Holding Dr. Arie Pablo Dosoretz, Dr. Amy Fox, Dr. Michael J. Katin and Dr. James H. Rubenstein in Contempt; (III) Imposing Sanctions; and (IV) Granting Related Relief.

2

the possibility of bringing claims related to their employment at the time they received their Assumption Notices. *Id.* ¶ 79. Further, Florida Plaintiffs argued that it was "pure folly" to imagine that they "(i) could have theorized a set of facts under which they would resign, (ii) would have predicted all facts under which 21C's market monopolization would exist more than one year henceforth, (iii) could have retained experts to conduct a market monopoly study to assess impact on an in futuro enforceability of the non-compete agreements, and then (iv) be in a position to argue that a case or controversy existed sufficient to litigate future enforceability under theorized facts that would not ripen for more than a year." *Id.* ¶ 40.

3.     In declarations filed in support of their Response, Florida Plaintiffs swore: "As of January 16, 2018, it did not occur to me to challenge my contract." Dkt. 1335 at 67 (Arie Dosoretz Decl. ¶ 4), 70 (Rubenstein Decl. ¶ 6), 72 (Katin Decl. ¶ 6), 74 (Amy Fox. Decl. ¶ 6). Plaintiff Arie Dosoretz swore further: "As of January 16, 2018, I had not taken any steps to enter the market for providing radiation oncology services in Lee, Collier, or Charlotte Counties, Florida, in competition with 21C and had not considered doing so." Dkt. 1335[3] at 67 (Arie Dosoretz Decl. ¶ 6).

4.     The Court then held a hearing and ordered the parties to conduct discovery on what the Florida Plaintiffs understood at the time the Court entered the Plan. May 15, 2019 Hearing Tr. (Ex. A) 20:5-7 ("If people want discovery on that, what people understood at the time, you know, they should do that."); *id.* 20:23-24 (in which the court compared this discovery to another case where "we had discovery about what the parties understood"); *id.* 24:25-25:1 (ordering discovery on "[a]ll of the bankruptcy content, what people understood this to be").

---

[3]     Notice Of Filing Declarations In Further Support Of Response In Opposition To Motion To Enforce (Doc. 1326) And Response In Opposition To Motion To Stay (Doc. 1328).

5.    The Reorganized Debtors own and operate an email server and issue company-owned devices for use by company employees for business purposes. Employees who utilize 21C's technology are subject to the policies set out in the company's Employee Handbook. (de Paz Decl. ¶ 10); Ex. H.

6.    As an employee of 21C, Danny Dosoretz and the Florida Plaintiffs were subject to the policies in the Employee Handbook, and in his capacity as the President and CEO of 21st Century Oncology, Inc., Danny Dosoretz signed the introduction to the Employee Handbook. In that introduction, Danny Dosoretz explained that the Employee Handbook "was developed to describe some of the expectations of our employees and to outline the policies, programs and benefits to eligible employees" and admonished employees to "familiarize yourself with the handbook." Ex. H.

7.    The Employee Handbook contains certain policies related to "Electronic Communication Devices." Specifically, the Employee Handbook confirms that: (1) 21C employees "should have no expectation of privacy when using company-owned or company-leased equipment," and (2) "[i]nformation passing through or stored on company equipment can and will be monitored." Ex. H.

8.    Consistent with the Employee Handbook, information sent through 21C's email server or through a company device has been and is monitored and reviewed by the company. (de Paz Decl. ¶¶ 6, 8.)

9.    Employees who utilize company-owned and issued devices are required to return such devices when their employment with 21C terminates, and Danny Dosoretz returned his company-issued laptop to 21C after resigning without dispute. (de Paz Decl. ¶¶ 11, 16.)

4

10.    In the course of identifying information relevant to this action, 21C collected and reviewed data sent through the company's server and stored on company devices.  The collection included emails and attachments that Danny Dosoretz sent through the company's server using a 21C email address and emails and attachments that were stored on the company-owned laptop that was issued to Danny Dosoretz for business purposes.  (de Paz Decl. ¶ 17.)

11.    Danny Dosoretz's company-owned laptop contained certain of his emails from a Gmail account because he took steps to affirmatively link his personal email with 21C's Microsoft Outlook application running on the 21C-owned laptop.  (de Paz Decl. ¶ 15; Gorczyk Decl. ¶ 14-15.)  21C's access to these emails did not in any way involve the search or collection of emails from any web-based program or any password protected applications.  (Gorczyk Decl. ¶ 16.)  To be clear, Danny Dosoretz's personal emails were on 21C's laptop because Danny Dosoretz personally brought those emails into 21C's information solutions hardware and network.  (de Paz Decl. ¶ 15; Gorczyk Decl. ¶ 14-15).

12.    The Dosoretz Emails reflect that Danny Dosoretz was planning with the Florida Plaintiffs, since well before the Effective Date, to challenge Florida Plaintiffs' Non-Compete Provisions and had taken steps to compete with 21C.  Initiated when Danny Dosoretz was still a 21C Board member and fiduciary, the plot to attack 21C evidenced by the Dosoretz Emails constitutes a fraud on 21C's pre-filing equity investors, creditors, and this Court.

## ARGUMENT

**A.    Documents Uncovered on 21C's Own Server and Devices Are Not Privileged**

13.    The Dosoretz Emails are not privileged because Danny Dosoretz had no reasonable expectation that such communications were private.[4]

---

[4]    Because 21C identified these documents in its own files, it cannot be claimed that these emails were inadvertently disclosed to 21C and thus neither Danny Dosoretz nor any other party has the right to

14.    The Federal Rules of Evidence apply in cases under the Bankruptcy Code. FED.

R. BANKR.P. 9017; FED.R.EVID. 1101(b).  Federal Rule of Evidence 501 states that the

federal common law of privileges applies when federal law determines the substantive rights of

the parties. FED.R.EVID. 1101(b); *United States v. Zolin*, 491 U.S. 554, 562 (1989).  Here, the

federal common law of privileges applies because the question of whether privilege applies arose

in the process of identifying evidence related to whether the Confirmation Plan bars the claims

brought in the Florida Action.  Moreover, the underlying claims in this action – those brought in

the Florida Action – are similarly governed by federal privilege rules based on federal question

jurisdiction flowing from Florida Plaintiffs' antitrust claims.  *See von Bulow v. von Bulow*, 811

F.2d 136 (2d. Cir 1987) (finding that asserted privileges in an action involving federal claims,

and state claims based on pendent and diversity jurisdiction, is governed by principles of federal

law).

15.    When a client has no reasonable expectation of privacy in a communication with

his lawyer, the attorney-client privilege does not apply.  Indeed, in order to establish the

existence of the attorney-client privilege, the party claiming privilege must establish the

existence of communications (1) between a client and his or her attorney (2) that are intended to

be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice.

*See In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007).  The party asserting the privilege has

the burden to show that a particular communication was intended to remain confidential and was

reasonably expected and understood to be confidential.  *See In re Asia Global Crossing Ltd.*, 322

B.R. 247, 255 (Bankr. S.D.N.Y. 2005) (quoting *United Sates v. Bell*, 77 F.2d 965, 971 (11th Cir.

---

seek "return" of those documents. *See Long v. Marubeni Am. Corp.*, No. 05CIV.639 (GEL)(KNF), 2006
WL 2998671, at *4 (S.D.N.Y. Oct. 19, 2006)(holding that the inadvertent disclosure doctrine did not
apply to communications discovered by the defendant employer while reviewing company computers
because the plaintiff employees did not "disclose" the communications in discovery.)

1985). A reasonable expectation of confidentiality does not exist when the communication will

be communicated over a medium that discloses the communication to third-parties. *In re*

*Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973); *United States v. Finazzo*, 2013 WL 619572, at \*7

(E.D.N.Y. Feb. 19, 2013)("A communication cannot be 'intended' to remain confidential,

however, when made through a medium that subjects it to disclosure to third parties.").

16.    Federal courts, including bankruptcy courts, have almost universally adopted the

test set forth in *Asia Global* to determine whether an employee had a reasonable expectation of

privacy in communications transmitted through an employer's server or device. *See e.g., In re*

*Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 159 (S.D.N.Y. 2011)(utilizing the *Asia*

*Global* test and noting that its use has been "widely adopted").[5]

17.    *Asia Global* identifies four factors for determining whether an employee has a

reasonable expectation of privacy when transmitting communications over a company device or

company server: "(1) does the corporation maintain a policy banning personal or other

objectionable use, (2) does the company monitor the use of the employee's computer or e-mail,

(3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation

notify the employee, or was the employee aware, of the use and monitoring policies?"  322 B.R.

247, 257 (Bankr. S.D.N.Y. 2005).

18.    While no single factor is dispositive, courts have often found the first factor,

finding that the existence of a workplace policy reserving the right to access and monitor

employee communications – rather than showing that employers did in fact monitor employee

---

[5]    Although federal law controls, Florida state law applies the same analysis. *See Centennial Bank
v. Servisfirst Bank Inc.*, 2016 WL 6037552, at \*9 (M.D. Fla. Oct. 14, 2016)(applying Florida state law
based on diversity jurisdiction and applying the *Asia Global* analysis to find that because the applicable
company policy was clear that there was no expectation of privacy, communications by the CEO over the
company server with counsel were not privileged even though the CEO claimed that he had the ultimate
authority to decide whether or not employee emails would be monitored).

accounts – to be persuasive. *See, e.g., Bingham v. Baycare Health System*, 2016 WL 3917513

(M.D. Fla. July 20, 2016)(finding no reasonable expectation of confidentiality in emails

transmitted over employer's email server); *United States v. Finazzo*, 2013 WL 619572, at *7

(E.D.N.Y. Feb. 19, 2013)(noting that a policy with an "outright ban" on personal use of

company-issued devices would end the privilege inquiry).   That is particularly true when applied

to a senior executive of the employer, or an employee who was personally involved in the

drafting of the employer's policy. *See, e.g., Miller v. Zara USA, Inc.,* 151 A.D.3d 462, 462 (N.Y.

App. Div. 2017)(holding that former general counsel had no reasonable expectation of privacy

when he had at least constructive knowledge that the company's employee handbook restricted

use of company computers to business purposes).

   19.   Danny Dosoretz had no reasonable expectation of privacy in communications sent

over 21C's email server or utilizing 21C's devices. First, the 21C Employee Handbook in effect

at the time of the Dosoretz Emails stated, in relevant parts:

- "21st Century Oncology provides its users with Internet access and electronic communications services as required for the performance and fulfillment of their job responsibilities. Users must understand that this access is for the purpose of increasing productivity and not for non-business activities."

- "21st Century Oncology employees should have no expectation of privacy when using company-owned or company-leased equipment. Information passing through or stored on company equipment can and will be monitored. 21st Century Oncology maintains the right to monitor and review Internet use and mail communications sent or received by users as necessary."

- "The Internet connection and e-mail system of 21st Century Oncology are for business use and employees are expected to conduct themselves accordingly."

Exhibit [G]. 21C thus prohibited the use of company technology for personal purposes by

making clear that its use was for business purposes **only**. 21C's notice to its employees that

personal use of company resources was prohibited was more explicit than warnings provided by

other companies whose policies were found sufficient under the first *Asia Global* factor. *See*

8

*Finazzo*, 2013 WL 619572, at *7 (E.D.N.Y. Feb. 19, 2013)(no expectation of privacy when

company policy permitted limited and reasonable personal use of company systems but

otherwise required use for company business only); *Bingham*, 2016 WL 3917513 (M.D. Fla. July

20, 2016)(no expectation of privacy when company policy allowed "de minimus (very limited)

personal use" of company's communication systems and prohibited use for operation of personal

business or for personal gain). Moreover, employees subject to the policy were specifically

advised that they should have no expectation of privacy over any emails sent or received using

company information solutions or hardware, and were explicitly notified employees that 21C

could and would monitor such communications.. As the then-CEO of 21C, Danny Dosoretz

signed this policy, and was clearly aware of its import. Thus, the first and fourth of the *Asia*

*Global* factors strongly support the conclusion that the Dosoretz Emails are not privileged.

20.    Second, Danny Dosoretz was also well aware that 21C could, would and did in

fact monitor, collect, and review relevant data on the company's server and devices. For

example, Danny Dosoretz knew that 21C was actively monitoring and reviewing emails retained

on company devices and incorporated into company servers as part of ongoing investigations and

litigations. Those investigations and litigations were active during all relevant times.[6] Danny

Dosoretz also received litigation holds pursuant to these actions that expressly informed him that

his emails on the company server were being preserved, providing additional notice that he had

no expectation of privacy. Thus, the second *Asia Global* factor strongly supports the conclusion

that the Dosoretz Emails are not privileged.

---

[6]    For example, *United States of America, et al. vs. Florida Cancer Specialists P.L., 21st Century
Oncology LLC, Dr. Daniel Dosoretz, et al.*, case no. 16-cv-00087, was filed on February 2, 2016 in the
U.S. District Court for the Middle District of Florida.

21.     Third, Danny Dosoretz took no special efforts or precautions to hinder 21C from accessing his personal emails. In fact, he did exactly the opposite by incorporating his own personal email into the company-owned and operated laptop and its applications. *See Asia Global*, 322 B.R. at 257 & n. 7 ("An employee may take precautions to limit access; offices can be locked, computers can be password-protected, and e-mails can be encrypted."); *Finazzo*, 2013 WL 619572, at *10 (E.D.N.Y. Feb. 19, 2013). Danny Dosoretz returned the company-issued laptop to 21C without encrypting any of these emails, preserving any rights to those private emails and documents or taking any steps to remove any personal information or data that he had stored on his laptop. (de Paz Decl. ¶ 18; Gorczyk Decl. ¶ 13); *See Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1106-07 (W.D. Wash. 2011)(finding that any reasonable expectation of confidentiality in a company-issued device was destroyed when an employee returned the device to his employer without asserting privilege). Thus, the third *Asia Global* factor strongly supports the conclusion that the Dosoretz Emails are not privileged.

22. In light of all these facts, it is clear that Danny Dosoretz had no reasonable expectation of privacy over the Dosoretz Emails, and thus the Dosoretz Emails are not privileged.[7] *See Finazzo*, 2013 WL 619572, at *7 (E.D.N.Y. Feb. 19, 2013); *Kelleher v. City of Reading*, No. Civ. A. 01–3386, 2002 WL 1067442, at *8 (E.D.Pa. May 29, 2002)(no reasonable expectation of privacy in workplace e-mail where employer's guidelines "explicitly informed employees that there was no such expectation of privacy"); *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154 (S.D.N.Y. 2011)(no reasonable expectation of privacy in email communications that an employee sent using company email system, where company's policy explicitly stated that employees "should limit their use of e-mail resources to official business,"

---

[7]      Some of the Dosoretz Emails are not privileged for other independent reasons, such as disclosure to a third party.

that company "reserves the right to access an employee's e-mail for a legitimate business reasons

or in conjunction with an approved investigation," that employees' email communications would

be automatically saved and were subject to review, and employee was aware of these policies.);

*Dombrowski v. Governor Mifflin Sch. Dist.*, No. CIV.A. 11-1278, 2012 WL 2501017, at *6 (E.D.

Pa. June 29, 2012)(no reasonable expectation of privacy in personal Gmail and AOL emails

between an employee and her attorney when emails were found on the employer's computer and

network server).

**B.    The Dosoretz Emails Are Not Privileged Or Legally Protected Under the Crime-
        Fraud Exception**

23.    The Dosoretz Emails are also not protected by any attorney-client privilege or the

attorney work-product protection because they are subject to the crime-fraud exception.

24.    It is well-settled that communications with counsel are not privileged or protected

by the attorney work-product protection if they are used to or do perpetrate a crime or fraud.

Thus, when the crime-fraud exception is found to apply, both attorney-client and work product

protections are eliminated.  *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 184

(2d Cir. 2007); *Meyer v. Kalanick*, No. 15 CIV. 9796, 2016 WL 3189961, at *3 (S.D.N.Y. June

7, 2016).

25.    The crime-fraud exception is not limited to only communications with counsel

and other documents that constitute technical frauds or crimes.  Indeed, "District courts in [the

Second] Circuit have long construed the [crime-fraud] exception as reaching some conduct

beyond crime and fraud." *Madanes v. Madanes*, 199 F.R.D. 135, 149 (S.D.N.Y. 2001); *Cooksey

v. Hilton Int'l Co.*, 863 F. Supp. 150, 151 (S.D.N.Y. 1994)("The exception is triggered if the

asserted crime or fraud was the 'objective of the client's communication' with its counsel. And

where fraud is asserted, 'the fraudulent nature of the objective need not be established

definitively; there need only be presented a reasonable basis for believing that objective was fraudulent.'").

26.    Fraud on the court is a type of fraud that is subject to the crime-fraud exception. *See In re St. Johnsbury Trucking Co., Inc.*, 184 B.R. 446, 458 (Bankr. D. Vt. 1995)(holding that an objectively unreasonable pleading filed for the improper purpose of imposing litigation costs on litigants and bankruptcy courts in two venues was not just sanctionable conduct, but could amount to fraud upon the court and ordering submission of relevant documents for *in camera* review).

27.    The party invoking the crime-fraud exception must "demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir.1997), abrogated on other grounds by *Loughrin v. United States*, 573 U.S. 351 (2014).  Courts evaluating a claim of crime-fraud exception look to whether a prudent person would find that the proffered evidence constitute "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Id.* (quoting *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1039 (2d Cir. 1984)).  Courts then evaluate the facts to determine whether the exception applies, potentially following an *in camera* review of the proffered evidence. *Id.*

28.    The Dosoretz Emails are not protected by any claim of attorney-client privilege or attorney-work product protection because they are subject to the crime-fraud exception. Specifically, the Dosoretz Emails reveal that the Florida Plaintiffs' declarations are fraudulent and that representations made to this Court in Florida Plaintiffs' filings are intentionally

12

misleading or false.  Allowing Danny Dosoretz to assert privilege or any legal protection over those emails would perpetuate a fraud on the court; accordingly, no assertion of privilege or protection can be asserted.  An *in camera* review of additional materials is within the Court's discretion, but unnecessary here, where the Dosoretz Emails are non-privileged documents that meet the threshold showing of a perpetration of a fraud on the court.

[8] Notice Of Filing Declarations In Further Support Of Response In Opposition To Motion To Enforce (Doc. 1326) And Response In Opposition To Motion To Stay (Doc. 1328).

[REDACTED]

34.     Accordingly, 21C respectfully requests an Order from the Court confirming that any claim of privilege or other legal protection over the Dosoretz Emails is barred under the crime-fraud exception.

**C.     If Discovery is Warranted, the Court Should Compel Further Discovery Related to the Dosoretz Emails**

35.     If the Court denies 21C's Motion for Reconsideration and determines that additional discovery is necessary in this proceeding, 21C requests an order compelling the Florida Plaintiffs, Danny Dosoretz and Shumaker to respond to discovery requests into the Dosoretz Emails and related material. *See Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 440 (S.D.N.Y. 2013)(finding that the crime-fraud exception applied, and thus granting a motion to

compel discovery as to communications between a client and attorneys as to subject matter that were in furtherance of a crime of fraud).

## CONCLUSION

The Movants respectfully request an order (i) confirming that the Dosoretz Emails are not privileged and (ii), if additional discovery is required by the Court, compelling Danny Dosoretz, Shumaker, and the Florida Plaintiffs to submit to additional discovery related to the Dosoretz Emails.

Consistent with the requirements of F.R.C.P. 37, the Movants have conferred with Florida Plaintiffs' counsel in advance of this filing.  Florida Plaintiffs' counsel did not agree to this filing.

DATED:     New York, New York
           May 28, 2019

                              SULLIVAN & WORCESTER LLP

                              By: */s/ Jeffrey R. Gleit*
                              Jeffrey R. Gleit, Esq.
                              Allison H. Weiss, Esq.
                              Clark A. Freeman, Esq.
                              1633 Broadway
                              New York, New York 10019
                              (212) 660-3000 (Telephone)
                              (212) 660-3001 (Facsimile)
                              jgleit@sandw.com
                              aweiss@sandw.com
                              cfreeman@sandw.com

                              John Terzaken, Esq.
                              Abram J. Ellis, Esq.
                              SIMPSON THACHER & BARTLETT LLP
                              900 G Street, N.W.
                              Washington, D.C. 20001
                              (202) 636-5858 (Telephone)
                              (202) 294-3539 (Facsimile)
                              john.terzaken@stblaw.com
                              aellis@stblaw.com

                              *Counsel to the Reorganized Debtors*

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| 21st CENTURY ONCOLOGY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-22770 (RDD) |
|  | ) |  |
| Reorganized Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER CONFIRMING CERTAIN DOCUMENTS ARE NOT PRIVILEGED AND COMPELLING DISCOVERY

Upon consideration of the *Reorganized Debtors' Motion to Confirm Certain Documents are Not Privileged and, If Necessary, Compelling Additional Related Discovery* [Docket No. ___] (the "**Motion**")[2], and it appearing that this Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having considered the Motion, all related pleadings and documents, and the record established in these chapter 11 cases; and the Court having found that due and proper notice and service of the Motion has been given and that no other further notice or service of the Motion need be given; and the Court having found that the relief sought in the Motion is in the best interests of the Reorganized Debtors, the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the relief sought in the Motion is appropriate under the

---

[1]    Each of the Reorganized Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth in the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 30]. The location of 21st Century Oncology Holdings, Inc.'s corporate headquarters and the Debtors' service address is: 2270 Colonial Boulevard, Fort Myers, Florida 33907.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Motion.

circumstances, consistent with applicable law, and necessary to effectuate the purposes of the

Plan, and that good and sufficient cause exists for granting the relief set forth herein; and after

due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Dosoretz Emails, as defined in the Motion to Confirm are not privileged.

3.      Claims of privilege over materials related to the subject matter of the Dosoretz

Emails are barred.

4.      Florida Plaintiffs must respond to discovery requests regarding the Dosoretz

Emails and related materials.

5.      The terms and conditions of this Order shall be immediately effective and

enforceable upon entry of this Order.

6.      This Court shall retain jurisdiction with respect to all matters arising from or

related to implementation of this Order.

IT IS SO ORDERED.

White Plains, New York

Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A



Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 17-22770-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   21st CENTURY ONCOLOGY HOLDINGS, INC.,

8

9          Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    300 Quarropas Street, Room 248

14                    White Plains, NY 10601

15

16                    May 15, 2019

17                    11:23 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: NAROTAM RAI

Page 2

1   HEARING re Motion to Approve (I) ENFORCE THE PLAN AND

2   CONFIRMATION ORDER, INCLUDING THE PLAN INJUNCTION AND THIRD-

3   PARTY RELEASE; (II) HOLDING DR. ARIE PABLO DOSORETZ, DR. AMY

4   FOX, DR. MICHAEL J. KATIN AND DR. JAMES H. RUBENSTEIN IN

5   CONTEMPT; (III) IMPOSING SANCTIONS; AND (IV) GRANTING

6   RELATED RELIEF

7

8   HEARING re Declaration of Jeffrey R. Gleit in Support of

9   Motion for Entry of an Order (I) ENFORCING THE PLAN AND

10  CONFIRMATION ORDER, INCLUDING THE PLAN INJUNCTION AND THIRD-

11  PARTY RELEASE; (II) HOLDING DR. ARIE PABLO DOSORETZ, DR. AMY

12  FOX, DR. MICHAEL J. KATIN AND DR. JAMES H. RUBENSTEIN IN

13  CONTEMPT; (III) IMPOSING SANCTIONS; AND (IV) GRANTING

14  RELATED RELIEF (related document(s)1326).

15

16  HEARING re Opposition to Reorganized Debtors' Motion for the

17  Entry of an Order ( 1) Enforcing the Plan and Confirmation

18  Order, Including the Plan Injunction and Third-Party

19  Release; (II) Holding Dr. Arie Pablo Dosoretz, Dr. Amy Fox,

20  Dr. Michael J. Katin and Dr. James H. Rubenstein in

21  Contempt; (III) Imposing Sanctions; and (IV) Granting

22  Related Relief (related document(s)1326) filed by Steven M.

23  Berman on behalf of Arie Pablo Dosoretz, Amy Fox, Michael J.

24  Katin, James Rubenstein.  (document #1333)

25

Page 3

1    HEARING re Reorganized Debtors' Reply to Plaintiffs'

2    Response in Opposition [Docket No. 1333] and In Further

3    Support of the Reorganized Debtors' Motion to Enforce Docket

4    [No. 1326] (related document(s) 1326) filed by Jeffrey R.

5    Gleit on behalf of 21st Century Oncology Holdings, Inc.

6    (document# 1342)

7

8    HEARING re Motion to Stay Proceedings in the Florida Action

9    Pending Resolution of the Reorganized Debtors Motion to

10   Enforce

11

12   HEARING re Opposition to Reorganized Debtors' Motion for the

13   Entry of an Order Staying Proceedings in the Florida Action

14   Pending Resolution of the Reorganized Debtors' Motion to

15   Enforce (related document(s)1328) filed by Steven M. Berman

16   on behalf of Arie Pablo Dosoretz, Amy Fox, Michael J. Katin,

17   James Rubenstein. (document #1334)

18

19   HEARING re Affidavit /Notice of Filing Declarations in

20   Further Support of Response in Opposition to Motion to

21   Enforce and Response in Opposition to Motion to Stay

22   (related document(s)1326, 1328) Filed by Steven M. Berman on

23   behalf of Arie Pablo Dosoretz, Amy Fox, Michael J. Katin,

24   James H. Rubenstein (document #1335)

25

Page 4

1   HEARING re Letter /Notice of Filing Appendix in Further

2   Support of Response in Opposition to Motion to Enforce and

3   Response in Opposition to Motion to Stay (related

4   document(s)1326, 1328) Filed by Steven M. Berman on behalf

5   of Arie Pablo Dosoretz, Amy Fox, Michael J. Katin, James H.

6   Rubenstein (document #1336)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 5

```
 1   A P P E A R A N C E S :

 2

 3   KLEE, TUCHIN, BOGDANOFF & STERN LLP

 4        Attorneys for the Debtors

 5        1999 Avenue of the Stars, 39th Floor

 6        Los Angeles, CA 90067

 7

 8   BY:  KENNETH N. KLEE

 9

10   ZSYMAN, AHARONL, GAYER & CO. and

11   SULLIVAN & WORCESTER LLP

12        Attorneys for the Debtors

13        1633 Broadway

14        New York, NY 10019

15

16   BY:  JEFFREY R. GLEIT

17

18   SHUMAKER, LOOP & KENDRICK, LLP

19        Attorneys for the Doctors

20        Bank of America Plaza

21        101 East Kennedy Blvd., Suite 2800

22        Tampa, FL 33602

23

24   BY:  STEVEN M. BERMAN

25
```

**Page 6**

1    SIMPSON THATCHER & BARTLETT LLP

2         Attorneys for the Debtors

3         900 G Street, N.W.

4         Washington, DC 20001

5

6    BY:  JOHN TERZAKEN

7

8

9    BOIES SCHILLER FLEXNER LLP

10        Attorneys for the Doctors

11        100 SE Second Street, Suite 2800

12        Miami, FL 33131

13

14   BY:  MARK J. HEISE

15

16   ALSO PRESENT TELEPHONICALLY:

17

18   MICHAEL RICHMAN

19   MARK HEISE

20   STEVEN BERMAN

21   LUIS SUAREZ

22   RICHARD STIEGLITZ

23   ALANA KATZ

24   CARL GOLDFARB

25

1                    P R O C E E D I N G S

2              THE COURT:  Okay.  In Re 21st Century Oncology?

3              MR. GLEIT:  Good morning, Your Honor.  Jeffrey

4    Gleit, Sullivan & Worcester, on behalf of the 21C, the

5    reorganized Debtors.  I'm here today with my co-counsel,

6    Jonathan Terzaken, from Simpson, and then the general

7    counsel of 21C, Amy Garrigues.

8              THE COURT:  Okay.  Good morning.

9              MR. TERZAKEN:  Good morning, Your Honor.

10             MR. BERMAN:  Good morning, Your Honor.  Steve

11   Berman, Ken Klee and Mark Heise, on behalf of the four

12   physicians.

13             THE COURT:  Okay.  Good morning.

14             MR. BERMAN:  Good morning.

15             THE COURT:  Everyone can sit down, unless they're

16   speaking.  Based on our telephone conference earlier this

17   week on Monday, this is a status conference, as opposed to

18   an oral argument on 21st Century's motion to enforce the

19   plan and confirmation order and enjoin the four doctors.

20             At that conference, it was agreed that the four

21   doctors would not proceed with the Florida litigation,

22   pending a ruling on the Debtors' motion to enforce, and that

23   agreement gave me the comfort that we could focus today on

24   what sort of discovery is warranted in connection with the

25   Debtors' motion in front of me.

1          So that's, I take it, the subject of this

2     conference.  Okay.

3               MR. GLEIT:  Yes, Your Honor.  And thank you.  We

4     did have a call on Tuesday.  Mr. Terzaken and I and counsel

5     for the Florida plaintiffs had a call to discuss today's

6     hearing, potential discovery.  While at a high level,

7     certain things may have been potentially agreed upon, there

8     is a fundamental dispute, I think, which we do want to raise

9     today, and which we touched upon in our reply.  And a lot of

10    it has to do -- will be with relevance, scope.  And I have

11    Mr. Terzaken here and he's going to address the Court with

12    the point.

13              But I think there's a legal threshold question we

14    would like Your Honor to decide, which I think then would

15    help govern any discovery going forward.  I think the legal

16    threshold is not for argument today, but it would be -- it's

17    almost like a motion to dismiss, and it could be argued in a

18    week.  And it has to do with their employment agreements and

19    non-competes, when they're entered into, any resets of

20    those.

21              And the issue -- the argument would relate around

22    if there's a claim and when it arose.  And that would then

23    dictate when discovery -- what discovery, if any, would be

24    needed.  Because if we don't address that issue, what is

25    going to happen is we're going to get hit with a discovery

Page 9

1    request that you would normally get in the antitrust action,

2    which will be broad and --

3              THE COURT:  All right.  And you raised this point

4    in the reply memorandum.

5              MR. GLEIT:  Yes, Your Honor.

6              THE COURT:  And I gave it some thought also.  It

7    seemed to me that the discrete issue that you're addressing

8    now is a non-bankruptcy issue.  It's an issue of federal law

9    and Florida law.

10             And unless both sides want me to decide that issue

11   -- and it wasn't clear to me; that was going to be my first

12   question that I was going to ask today, whether they do or

13   they don't -- clearly the Debtors do; I don't know whether

14   the doctors do or not -- my inclination was to not decide

15   that issue if I determined that the bankruptcy plan, the

16   confirmation order, precluded it being raised, I would

17   decide it in that context, but not as a matter of antitrust

18   and Florida law.

19             And it would seem to me, then, that -- assume for

20   the moment that I decided that the issue raised by the

21   doctors as to post-effective date conduct is an issue that's

22   not barred by the plan and confirmation order.  It would

23   seem to me then that that would go to the Florida court and

24   you could make your motion to dismiss then and say, this

25   isn't really a case where they have standing.  And the

Page 10

1    Florida court would decide that issue and then, if the

2    Florida court decided against you, there would be discovery

3    on that issue.

4              MR. GLEIT:  Now, I am going to turn it over to Mr.

5    Terzaken.  I actually thought Your Honor might raise some of

6    these concerns at the very least.  And the view -- our view

7    is that this is an issue that you determine all the time.

8    It's really the timing of when a right arises and --

9              THE COURT:  No, but I'm trying to distinguish

10   between two different things.

11             MR. GLEIT:  Sure.

12             THE COURT:  Yes, if -- the bankruptcy issues

13   include what is released, what isn't released, what's the

14   effect of assuming the contracts under the plan.  You know,

15   all those issues are bankruptcy issues.  And that includes,

16   you know, what is -- that includes the timing issue.

17             But it may -- it is certainly conceivable to me

18   that I would conclude that there are allegations that there

19   are post-effective breaches or events that give rise to and

20   a right to rescind or to assert a claim under the antitrust

21   laws that could be asserted as a defense that are entirely

22   post-effective date for bankruptcy purposes.

23             At that point, unless the parties want me to

24   decide that issue too, I think that should go to the Florida

25   court.  I mean, conceivably, they could agree to that

Page 11

1   because it might be more efficient, although it might not

2   be.  So, that's sort of where I'm coming out.

3           But clearly, the bankruptcy issues include whether

4   something is pre or post, and what the effect of the release

5   is.  So, I think what I'm saying to both sides here is that

6   the issue of the doctors' standing, at least on its face,

7   doesn't appear to me to be a bankruptcy issue, because

8   that's really an antitrust Florida law determination.

9           And I think I can give a sufficient ruling on the

10  bankruptcy issues that the Florida court would know what's

11  still live and what isn't at that point.

12          MR. GLEIT:  I understand, Your Honor.  If Mr.

13  Terzaken may just speak briefly?

14          THE COURT:  Okay.

15          MR. GLEIT:  All right.  Thank you, Your Honor.

16          MR. TERZAKEN:  Good morning, Your Honor.  And

17  thank you for raising these issues.  You've hit on exactly

18  the issue that we appear to have a disagreement in terms of

19  what's actually relevant to this suit.

20          THE COURT:  Okay.  All right.

21          MR. TERZAKEN:  We've obviously taken a position in

22  our papers that this claim arises as of the point of the

23  execution of the contracts.

24          THE COURT:  Right.

25          MR. TERZAKEN:  They've taken the position that you

1    can look at today's facts and retroactively essentially

2    disregard those contract terms.  But those are the very

3    different positions.

4              THE COURT:  Well, but those two positions subsume

5    more than one argument.

6              MR. TERZAKEN:  Agreed.

7              THE COURT:  And I'm saying I can -- I'm quite

8    comfortable deciding certain of those arguments, but not the

9    argument -- unless the parties want me to -- that you say is

10   a no-brainer; they don't have standing because the facts

11   they're alleging that are new aren't really new for purposes

12   of the antitrust laws and the Florida statute.  And they say

13   no, they are totally significant as post-effective date

14   events.

15             So, the bankruptcy issues I can decide is, you

16   know, what was at issue before the Court and the parties

17   when the plan was being confirmed?  That's a whole set of

18   other arguments that the doctors make.  They say, you know,

19   no, those issues really work before the Court at that point.

20   Because, you know, citing Orion Pictures and all sorts of

21   other arguments.  Those issues I can decide.

22             What I'm unwilling to decide unless, again, the

23   parties want me to, is the first point that I described to

24   you, which is your standing point, which is that the

25   separate argument that the doctors make that there are post-

Page 13

1      petition events that occur that independently or separately

2      give rise to a right under the antitrust laws and under the

3      Florida law, that's a set of -- that's a dispute that I

4      think, unless the parties want, because of judicial economy,

5      me to decide, should be decided by Florida court.

6               MR. TERZAKEN:  And that's an --

7               THE COURT:  I think it's -- I mean, look, I think

8      it's related to the jurisdiction, but I don't...  You know,

9      there's a point where enough is enough, and you've got to

10     move on.

11              MR. TERZAKEN:  And I understand the Court's

12     differentiation, and just so I can articulate it for myself,

13     because I think we understand where you're heading with

14     this, and we certainly agree with the positions.

15              The threshold legal issue we really want the Court

16     to decide before we even get to the relevance of any of this

17     alleged post-confirmation conduct is the question about

18     whether or not these particular non-compete provisions,

19     which were assumed as part of these executory contracts

20     before this Court, were valid at the time they were executed

21     and became effective.

22              THE COURT:  Yeah.  No, I think that's an issue

23     that I can decide, and should decide.

24              MR. TERZAKEN:  That's the issue we would --

25              THE COURT:  That's fine.

1          MR. TERZAKEN:  -- we would like to -- when we had

2     the conference about going into discovery, the dispute we've

3     been having is, we would say, because that is the issue,

4     which is a pure question of law, that we don't need to get

5     into what these other legend post-confirmation acts are or

6     aren't.

7          THE COURT:  I think that's right.  Although I'm

8     not sure it is a pure issue of law.  I think that the

9     parties might well want to consider discovery, which is also

10    a fact issue that the doctors raise as to what was the

11    context, the understanding, et cetera, when the contracts

12    were assumed.

13         MR. TERZAKEN:  And if that's correct, Your Honor,

14    we can have that discussion.  The discussion that we've been

15    having about discovery is they would like to dig into the

16    company's current HR files, their current contracts with

17    different professional organizations, other things that are

18    highly competitively sensitive to this organization that

19    really have --

20         THE COURT:  Well, they --

21         MR. TERZAKEN:  -- no relevance to the core

22    question.

23         THE COURT:  They can assert that those issues

24    exist.  But I'm not prepared to determine those today.  I

25    think those would be for a state court -- I mean, I'm sorry,

1    for the -- well, it's now a federal court, to determine.

2            MR. TERZAKEN:  So, the issue, I guess, that our

3    request to the Court -- and we're happy to argue this point

4    today or schedule a hearing as soon as it is convenient for

5    the Court -- what we'd like to be heard on in order to frame

6    the relevance discussion about any alleged discovery that's

7    necessary is whether we -- frankly, we have what we need.

8            If this is about the executory contracts and when

9    those contracts were executed, whether there were any

10   revisions, amendments, et cetera, to those contracts, what

11   they understood when they signed those contracts, I think

12   that's all in the record.

13           THE COURT:  Well, I don't know.  But anyway, I've

14   laid out how I'm approaching this, but I'm happy to hear

15   from the other side too.

16           MR. HEISE:  Good morning, Your Honor.  Mark Heise,

17   on behalf of the doctors.  The way that Your Honor has

18   framed the issue, I think is accurate.  But I do think just

19   for a moment we need to place this in context, because what

20   counsel for 21C is relating to you is sort of inconsistent

21   with what has previously taken place in this case.

22           You know from when the motion to reopen was filed

23   that the question was whether you were going to reopen

24   because they wanted, as they told you at the time, to enjoin

25   the Florida action as violating this Court's confirmation

1   order and injunction.

2              THE COURT:  Right.

3              MR. HEISE:  And when your order granted that

4   motion to reopen, it was very narrow.  It said you're going

5   to consider whether they can enjoin that Florida action.

6   And so, the question at that point was when were the overt

7   acts that Plaintiffs have alleged in this case?  Were they

8   pre-confirmation or pre-effective date, so that they would

9   not be allowed to proceed in Florida?  Or were they post-

10  effective date, so that the Florida court could consider not

11  just the non-compete agreements but the entire panoply of

12  anticompetitive conduct that was alleged in the complaint.

13  Because they always want to just focus on the non-compete.

14  That is only a portion of the anticompetitive behaviors.

15             So, at that point in time, the battle lines were

16  drawn.  When did these overt acts occur?  And if I may

17  approach, Your Honor, just to provide -- because we outlined

18  on our call with them yesterday the discovery that we

19  thought would be necessary -- if I may hand this, Your

20  Honor?

21             THE COURT:  Okay.

22             MR. HEISE:  At that time, when those battle lines

23  were drawn and 21C set forth their motion to enforce or

24  enjoin, they were very clear as to what they wanted.  They

25  said on at least seven occasions -- and I've highlighted a

Page 17

1    couple of them at the top of this document -- that basically

2    all of the alleged misconduct occurred before the petition

3    date; all of it was prior to the effective date.  They said

4    it seven different ways so there could be no confusion as to

5    what their position was.

6            And in our response, as Your Honor knows, we laid

7    out a variety of things that occurred post-effective date.

8    The first and most obvious was the non-competes all renewed

9    after the effective date, and under Florida law, the

10   Marciano case that we cited, there is clear --

11           THE COURT:  Can I interrupt you?  I just want to

12   make clear -- I thought I may have -- and I know people come

13   to these conferences primed to say stuff, even if the Court

14   indicates it's not necessary.

15           There is a distinct possibility that the plan and

16   confirmation order and the transactions approved as part of

17   the plan, including the assumption of the contracts,

18   precludes the doctors proceeding under all or some of the

19   theories that they have raised in the Florida action.

20           I have concluded I need to -- even if it's not

21   all, I need to decide that issue first.  And everything

22   that's not precluded, I'm saying can go forward in Florida.

23           MR. HEISE:  And we agree with that, Your Honor.

24           THE COURT:  Okay.  So, I think we're just focusing

25   on what discovery is relevant to what is precluded.

1              MR. HEISE:  And that's what -- if you look at what

2      I put here, the first example was this 21st Century contract

3      with the Lee Memorial Hospital system.

4              THE COURT:  All right.  But again, they are going

5      to say all of this is irrelevant because you don't have

6      standing to raise these issues.  And that is a motion to

7      dismiss type of defense.  If you were not precluded by the

8      plan and disclosure statement on anything, then it would

9      only be arguing a partial motion to dismiss defense.

10             So, my view on this is that you don't have to

11     convince me of these other points because that issue,

12     whether you're right or they're right, is not my issue.

13     It's the Florida courts issue --

14             MR. HEISE:  Right.

15             THE COURT:  -- on standing.  And your issue that,

16     no, this is all part of a whole panoply of anti-competitive

17     behavior, that's not my issue.  My issue is what, if

18     anything, did the doctors release or are estopped either by

19     statutory or judicial estoppel.  That's it.

20             MR. HEISE:  I understand and agree with what

21     you're saying, Your Honor.

22             THE COURT:  Okay.

23             MR. HEISE:  But what we've heard consistently from

24     21C is that nothing we have set forth is pre-effective date.

25             THE COURT:  Well, but that's --

1          MR. HEISE:  I mean, it's just post-effective date.

2          THE COURT:  I appreciate you're saying something

3    else.  They're now raising a non-bankruptcy defense to that.

4    And I'm saying, okay, all those issues...  I will decide the

5    bankruptcy issues, recognizing that those other issues

6    exist, without deciding them, without prejudice, you know,

7    et cetera.  But it just seems to me that it would be an

8    overreach on my part to decide those issues.  And you don't

9    want me to decide those issues.

10          MR. HEISE:  No.  That's why we filed --

11          THE COURT:  So, there's no reason why I should be

12   supervising discovery over those issues because there's a

13   separate gatekeeper, which isn't my issue, which is whether

14   you have standing to raise them.  And that's all a district

15   court issue.  I just don't want to get into that.

16          MR. HEISE:  Understood, Your Honor.

17          THE COURT:  So, I think what we should be talking

18   about here is what discovery, if any -- and I think there

19   may well be a right to it -- should be had with respect to

20   the context of the plan and these doctors' involvement in

21   it.

22          I mean, one of the arguments, clearly, that the

23   Debtors have been making is that this group is, you know,

24   not a sort of outsider group of doctors.  They're like front

25   and center in the whole thing.  I don't know if that's right

1   or not.

2            MR. HEISE:  It's not, and --

3            THE COURT:  Well, I know you take that position.

4            MR. HEISE:  Right.

5            THE COURT:  If people want discovery on that, what

6   people understood at the time, you know, they should do

7   that.

8            MR. HEISE:  Well, we --

9            THE COURT:  And that's a much briefer bankruptcy

10  focus type of discovery.

11           MR. HEISE:  And that was one of the topics that we

12  listed with them yesterday was that --

13           THE COURT:  Okay.

14           MR. HEISE:  -- they have repeatedly in their

15  papers said a variety of things.  We need --

16           THE COURT:  I know.

17           MR. HEISE:  -- to know where they're coming up

18  with this --

19           THE COURT:  And I'm fine with that.

20           MR. HEISE:  -- these claims.

21           THE COURT:  I'm fine with that.  I mean, I don't

22  want to turn one case into another case, but in the Lawsky

23  Frontier case we had discovery about what the parties

24  understood.  You know, one site argued it was irrelevant

25  because the plain meaning governance.  But I concluded it's

Page 21

1    more efficient to have the discovery and just deal with it.

2             You've raised factual issues.  I don't think the

3    Debtors are necessarily...  I think they are asserting these

4    issues as if they're uncontroverted facts.  I think you

5    should have some limited discovery on that and then we

6    decide whether I want to hear a witness or two on it.

7             MR. HEISE:  May I just ask a point of

8    clarification?

9             THE COURT:  Sure.

10            MR. HEISE:  Because as I've outlined, at each turn

11   when we say this was post-effective date conduct, they've

12   always retorted, no, it's all longstanding.  Those are

13   issues that you do not want to have discovery on?

14            THE COURT:  Well, I --

15            MR. HEISE:  Or --

16            THE COURT:  Look, I think that there is a distinct

17   bankruptcy interpretation that the Debtors want me to adopt

18   as to what it means when one does not oppose the assumption

19   of a contract.  And I can deal with that.  It doesn't -- but

20   I think what you're asserting is something very different,

21   which is that...  Well, let's start with the contracts.

22   That these are different contracts than the ones that were

23   assumed.  All right?

24            MR. HEISE:  Correct.

25            THE COURT:  I can deal with that issue without

Page 22

```
 1    discovery.  You can show me that they're different
 2    contracts.
 3              MR. HEISE:  That's an easy one.  The more
 4    difficult ones --
 5              THE COURT:  Secondly, you are saying that there
 6    are events that occurred post-assumption that are highly
 7    relevant to the declaratory judgment action to be relieved
 8    of these contracts.
 9              MR. HEISE:  Correct.
10              THE COURT:  That is -- you say those occurred
11    after the fact.  They say you can't rely on that anyway
12    because you don't have standing.  They also say, well, they
13    were occurring before the fact, too.  And you say doesn't,
14    right, because it's also occurring after the fact.
15              I can decide the relevance of that latter point,
16    if it's a continuum, you know.  On the other hand, if the
17    issue is these are brand-new facts that are happening
18    afterwards, to me, that's an issue for the District Court.
19              MR. HEISE:  But on the point you just raised of a
20    continuum --
21              THE COURT:  Right.
22              MR. HEISE:  -- we're unable to address that
23    without discovery.
24              THE COURT:  No, but I could -- I don't need to
25    decide that issue.  I can just say the Debtors are right,
```

1    that if it's a continuum it doesn't matter; or the doctors

2    are right, that because it's a continuum, there is no res

3    judicata, there's no statutory effect because it's

4    continuing.  I can decide that issue.  I don't need to

5    decide what continuation is.

6              MR. HEISE:  But we're not alleging it's a

7    continuation.  We're alleging it's a new overt act.

8              THE COURT:  Well, if it's all new then that can be

9    decided in the state court.  I don't --

10             MR. HEISE:  I agree with that.  But my concern

11   was, based upon their pleading, that everything was prior to

12   the effective date --

13             THE COURT:  No, I'm not going to be making

14   findings as to that.  I'm just going to be saying, to the

15   extent it is prior, it's X; to the extent it's a continuum,

16   it's X.  You know, whether it's barred or not, or to the

17   contrary, you know?  To the extent that it is something

18   else, it's not barred.

19             MR. KLEE:  Let me address it.

20             MR. HEISE:  Sure.

21             MR. KLEE:  Your Honor, Kenneth Klee, from Klee,

22   Tuchin, Bogdanoff & Stern, for the doctors.

23             I think I understand where the Court is going, and

24   that the Court's order will not preclude any Florida

25   determination on post-effective date actions, and whether

Page 24

1    they can be brought to standing, and the existence of them,

2    to focus the bankruptcy discovery.  Is that right, Your

3    Honor?

4              THE COURT:  Yeah.

5              MR. KLEE:  Yeah.  And to be clear for the record,

6    the doctors don't want to consent to have those issues --

7              THE COURT:  Right.

8              MR. KLEE:  -- decided in this court.

9              THE COURT:  And so, as far as I'm concerned, why

10   should I be supervising the discovery?

11             MR. KLEE:  Right.  You shouldn't.

12             THE COURT:  Right.

13             MR. KLEE:  But you should supervise the bankruptcy

14   discovery.

15             THE COURT:  Right.

16             MR. KLEE:  And the bankruptcy discovery should

17   focus on who got notice of what, and who was running the

18   company at plan time that's been put into play, and what was

19   assumed and what wasn't.

20             THE COURT:  Yeah.

21             MR. KLEE:  If there were separate noncompete

22   agreements that weren't assumed --

23             THE COURT:  No, I agree.

24             MR. KLEE:  -- that the Court needs to know.

25             THE COURT:  All of the bankruptcy content, what

Page 25

1    people understood this to be --

2              MR. KLEE:  Yes.

3              THE COURT:  -- you know, that's fine.

4              MR. KLEE:  And who was released and who wasn't.

5              THE COURT:  Yes.

6              MR. KLEE:  Yes.  So, those would be the issues

7    that would be right for discovery.

8              THE COURT:  Right.

9              MR. KLEE:  And that's what we'll focus on.

10             THE COURT:  Okay.  All right, that's fine.

11             MR. GLEIT:  And I'm sure it goes without saying,

12   but it's, you know, two-way discovery, because obviously the

13   knowledge (indiscernible) --

14             THE COURT:  Well, I'm assuming "we" was everyone

15   that's sitting at the two tables in front of me.

16             MR. GLEIT:  Yeah.  I'm assuming it was

17   unnecessary, but I just wanted to --

18             THE COURT:  Yeah.  So, I think -- I don't know if

19   you, in your discussions, talked about how long you think

20   that would take?  To me, it's not a long process, although

21   these are busy people.  So, you know, I don't know.  I don't

22   know how long it will take.

23             MR. HEISE:  What we had talked about, Your Honor,

24   was giving reciprocal discovery to each other by the end of

25   Friday.

1              THE COURT:  The paper discovery.

2              MR. HEISE:  Correct.

3              THE COURT:  Right.

4              MR. HEISE:  You know, whatever depositions we

5     want, whatever --

6              THE COURT:  That's two days from now.  Is that --

7     really?  Or is it -- can you do that?

8              MR. HEISE:  My understanding was Your Honor had

9     wanted to get this resolved in the next two to four weeks.

10             THE COURT:  Oh, I do.  I mean, I just don't want

11    you to set unrealistic --

12             MR. HEISE:  So --

13             THE COURT:  -- goals for yourself.

14             MR. HEISE:  Then, you know what, you're probably

15    right.  So, let me take your guidance.  Let's say we would

16    exchange discovery next --

17             THE COURT:  A week from today.

18             MR. HEISE:  -- next week.

19             THE COURT:  Yeah.

20             MR. HEISE:  And then to the extent we can work out

21    resolution, we'll immediately contact you to see what the

22    problems are.  But hopefully, we won't have to come before

23    you until we get to our next hearing.

24             THE COURT:  So, you're not willing to take a

25    deposition, it's just going to be paper?

1              MR. HEISE:  No, no.  We're going to take

2    depositions.

3              THE COURT:  By next week?

4              MR. HEISE:  No.  We're going to notice the

5    depositions of who you want.

6              THE COURT:  I got it.  I see.

7              MR. HEISE:  They may object, et cetera.  If we

8    can't work it out, then we'll come before you and say this

9    is why we need X, Y or Z person.

10             THE COURT:  All right.  Okay.

11             MR. KLEE:  Your Honor, I think --

12             THE COURT:  I misunderstood you.  I thought you

13   were going to actually exchange paper discovery --

14             MR. HEISE:  No, no.  It's --

15             THE COURT:  All right.

16             MR. HEISE:  -- the actual request.

17             THE COURT:  I've never known any litigator to do

18   that.

19             MR.  KLEE:  Your --

20             THE COURT:  Bankruptcy lawyers do that every now

21   and then.

22             MR. KLEE:  Your Honor, I think both sides want to

23   do this expeditiously.

24             THE COURT:  Right.

25             MR. KLEE:  If we can get our discovery done within

Page 28

1   the next month, we could have something on for hearing in

2   this court by mid-June.

3           THE COURT:  Okay.  That's --

4           MR. KLEE:  And that's --

5           THE COURT:  I'm fine with that.

6           MR. KLEE:  That's faster than litigators like to

7   proceed, but bankruptcy lawyers can do it.

8           THE COURT:  Okay.

9           MR. KLEE:  And if that's okay with the Debtor,

10  we'll have to co-process, and not everybody can attend every

11  deposition --

12          THE COURT:  You basically have 30 days for

13  discovery, subject to unanticipated events.

14          MR. GLEIT:  From our perspective, this is a very

15  important issue to the company.

16          THE COURT:  Right.

17          MR. GLEIT:  And if it were possible to do it

18  sooner, we would appreciate --

19          THE COURT:  Thirty days is pretty quick.  As I

20  understand it, everything is on hold for that 30 days,

21  right?

22          MR. KLEE:  That's correct, Your Honor.

23          THE COURT:  So...?

24          MR. KLEE:  The parties will agree to a standstill

25  in the Florida litigation.

1                    THE COURT:  Right.

2                    MR. KLEE:  And we did notify the court in the

3      Florida litigation of our standstill.  We're working out

4      papers to file with the Florida court.

5                    THE COURT:  Okay.

6                    MR. GLEIT:  Your Honor, 30 days works for the

7      Debtors, Your Honor.

8                    THE COURT:  All right.  And then, so --

9                    MR. KLEE:  And it doesn't even have to be a full

10     30 days.  We could set a hearing for the week of June 12th

11     or June 10th, June 17th --

12                    THE COURT:  Well, you'll have to get a date from

13     Ms. Lee.

14                    MR. KLEE:  Yeah, exactly.

15                    THE COURT:  And --

16                    MR. KLEE:  But something like that, so they can

17     have their hearing.

18                    THE COURT:  Okay.

19                    MR. GLEIT:  Okay.  I appreciate that, Your Honor.

20     So, that actually, I think, is a fair compromise.

21                    THE COURT:  Okay.  And now as far as the hearing

22     goes, this would be an evidentiary hearing, although it's

23     not going to be an enormous body of evidence.  And as I

24     think you all know, my practice for evidentiary hearings is

25     to take direct testimony of witnesses who are under your

1   control by declaration or affidavit submitted a week before

2   the hearing, and then having them there in person for cross

3   and redirect.  Obviously, if someone's not under your

4   control, then you have to subpoena them and I'll hear live

5   direct.

6          I also require the parties to meet and confer and

7   agree, use their best efforts to agree, and agree on the

8   admissibility of his many exhibits as they can, and give me

9   a joint exhibit book of agreed admitted exhibits, again, a

10  week in advance of the hearing so that we don't have to go

11  through all of that, which doubles the amount of time.

12          MR. GLEIT:  I will work with Mr. Klee on that.

13  And I understand.

14          THE COURT:  Okay.

15          MR. GLEIT:  I know, Your Honor -- and I might have

16  missed it when we were conferring -- but you also have a

17  form of pretrial order.  Do we need that for this?

18          THE COURT:  That's basically it.

19          MR. GLEIT:  Okay.  Fair enough.  I just --

20          THE COURT:  You can get that off the website, but

21  that's -- we've covered the three things in it, the

22  discovery cutoff date.  It does have a final pretrial

23  conference, which I don't think we need, although you can

24  build that in if you want to.  And then the submission of

25  the witness statements and the joint agreed evidence binders

1    --

2              MR. GLEIT:  I think we'll be able --

3              THE COURT:  -- or binder.

4              MR. GLEIT:  We should be able to agree on a lot of

5    the documents.

6              THE COURT:  Okay.

7              MR. GLEIT:  I would be shocked if we --

8              THE COURT:  Okay.

9              MR. GLEIT:  -- are not.

10             THE COURT:  Now, I do have to say Ms. Lee is

11   complaining that there's not a lot of time in June, but

12   she'll make time for you all.  That's my problem, you know,

13   unfortunately.

14             MR. KLEE:  Well, it's our problem too, Your Honor.

15             THE COURT:  Well, it's your problem too, but I

16   understand that, and I will tell her that she should find a

17   date for you that's consistent with what we've discussed.

18             MR. GLEIT:  Okay.  Thank you very much, Your

19   Honor.

20             THE COURT:  Okay.

21             MAN:  Thank you.

22             THE COURT:  Okay, great.

23             ALL:  Thank you, Your Honor.

24             (Whereupon these proceedings were concluded at

25   11:55 AM)

1                          C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4      transcript is a true and accurate record of the proceedings.

5

6

7

8      Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  May 17, 2019

| & | | | |
|---|---|---|---|
| **&**   5:3,10,11,18 6:1 7:4 23:22 | **330**   32:21 **33131**   6:12 **33602**   5:22 **39th**   5:5 | **allowed**   16:9 **amendments** 15:10 **america**   5:20 **amount**   30:11 | 24:22 **assuming**   10:14 25:14,16 **assumption**   17:17 |

**1**

**1**   2:17
**100**   6:11
**10019**   5:14
**101**   5:21
**10601**   1:14
**10th**   29:11
**11501**   32:23
**11:23**   1:17
**11:55**   31:25
**12th**   29:10
**1326**   2:22 3:4,4 4:4
**1328**   3:15,22 4:4
**1333**   2:24 3:2
**1334**   3:17
**1335**   3:24
**1336**   4:6
**1342**   3:6
**15**   1:16
**1633**   5:13
**17**   32:25
**17-22770**   1:3
**17th**   29:11
**1999**   5:5

**2**

**20001**   6:4
**2019**   1:16 32:25
**21c**   7:4,7 15:20 16:23 18:24
**21st**   1:7 3:5 7:2,18 18:2
**248**   1:13
**2800**   5:21 6:11

**3**

**30**   28:12,20 29:6 29:10
**300**   1:13 32:22

**9**

**900**   6:3
**90067**   5:6

**a**

**able**   31:2,4
**accurate**   15:18 32:4
**act**   23:7
**action**   3:8,13 9:1 15:25 16:5 17:19 22:7
**actions**   23:25
**acts**   14:5 16:7,16
**actual**   27:16
**address**   8:11,24 22:22 23:19
**addressing**   9:7
**admissibility**   30:8
**admitted**   30:9
**adopt**   21:17
**advance**   30:10
**affidavit**   3:19 30:1
**agree**   10:25 13:14 17:23 18:20 23:10 24:23 28:24 30:7 30:7,7 31:4
**agreed**   7:20 8:7 12:6 30:9,25
**agreement**   7:23
**agreements**   8:18 16:11 24:22
**aharonl**   5:10
**alana**   6:23
**allegations**   10:18
**alleged**   13:17 15:6 16:7,12 17:2
**alleging**   12:11 23:6,7

**amy**   2:3,11,19,23 3:16,23 4:5 7:7
**angeles**   5:6
**anti**   18:16
**anticompetitive** 16:12,14
**antitrust**   9:1,17 10:20 11:8 12:12 13:2
**anyway**   15:13 22:11
**appear**   11:7,18
**appendix**   4:1
**appreciate**   19:2 28:18 29:19
**approach**   16:17
**approaching** 15:14
**approve**   2:1
**approved**   17:16
**argue**   15:3
**argued**   8:17 20:24
**arguing**   18:9
**argument**   7:18 8:16,21 12:5,9,25
**arguments**   12:8 12:18,21 19:22
**arie**   2:3,11,19,23 3:16,23 4:5
**arises**   10:8 11:22
**arose**   8:22
**articulate**   13:12
**assert**   10:20 14:23
**asserted**   10:21
**asserting**   21:3,20
**assume**   9:19
**assumed**   13:19 14:12 21:23 24:19

21:18 22:6
**attend**   28:10
**attorneys**   5:4,12 5:19 6:2,10
**avenue**   5:5

**b**

**b**   1:21
**bank**   5:20
**bankruptcy**   1:1 1:12,23 9:8,15 10:12,15,22 11:3 11:7,10 12:15 19:3,5 20:9 21:17 24:2,13,16,25 27:20 28:7
**barred**   9:22 23:16 23:18
**bartlett**   6:1
**based**   7:16 23:11
**basically**   17:1 28:12 30:18
**battle**   16:15,22
**behalf**   2:23 3:5,16 3:23 4:4 7:4,11 15:17
**behavior**   18:17
**behaviors**   16:14
**berman**   2:23 3:15 3:22 4:4 5:24 6:20 7:10,11,14
**best**   30:7
**binder**   31:3
**binders**   30:25
**blvd**   5:21
**body**   29:23
**bogdanoff**   5:3 23:22
**boies**   6:9

**book** 30:9
**brainer** 12:10
**brand** 22:17
**breaches** 10:19
**briefer** 20:9
**briefly** 11:13
**broad** 9:2
**broadway** 5:13
**brought** 24:1
**build** 30:24
**busy** 25:21

### c

**c** 5:1 7:1 32:1,1
**ca** 5:6
**call** 8:4,5 16:18
**carl** 6:24
**case** 1:3 9:25
  15:21 16:7 17:10
  20:22,22,23
**center** 19:25
**century** 1:7 3:5
  7:2 18:2
**century's** 7:18
**certain** 8:7 12:8
**certainly** 10:17
  13:14
**certified** 32:3
**cetera** 14:11
  15:10 19:7 27:7
**cited** 17:10
**citing** 12:20
**claim** 8:22 10:20
  11:22
**claims** 20:20
**clarification** 21:8
**clear** 9:11 16:24
  17:10,12 24:5
**clearly** 9:13 11:3
  19:22
**come** 17:12 26:22
  27:8
**comfort** 7:23

**comfortable** 12:8
**coming** 11:2
  20:17
**company** 24:18
  28:15
**company's** 14:16
**compete** 13:18
  16:11,13
**competes** 8:19
  17:8
**competitive** 18:16
**competitively**
  14:18
**complaining**
  31:11
**complaint** 16:12
**compromise**
  29:20
**conceivable** 10:17
**conceivably** 10:25
**concern** 23:10
**concerned** 24:9
**concerns** 10:6
**conclude** 10:18
**concluded** 17:20
  20:25 31:24
**conduct** 9:21
  13:17 16:12 21:11
**confer** 30:6
**conference** 7:16
  7:17,20 8:2 14:2
  30:23
**conferences** 17:13
**conferring** 30:16
**confirmation** 2:2
  2:10,17 7:19 9:16
  9:22 13:17 14:5
  15:25 16:8 17:16
**confirmed** 12:17
**confusion** 17:4
**connection** 7:24
**consent** 24:6

**consider** 14:9
  16:5,10
**consistent** 31:17
**consistently** 18:23
**contact** 26:21
**contempt** 2:5,13
  2:21
**content** 24:25
**context** 9:17
  14:11 15:19 19:20
**continuation** 23:5
  23:7
**continuing** 23:4
**continuum** 22:16
  22:20 23:1,2,15
**contract** 12:2 18:2
  21:19
**contracts** 10:14
  11:23 13:19 14:11
  14:16 15:8,9,10
  15:11 17:17 21:21
  21:22 22:2,8
**contrary** 23:17
**control** 30:1,4
**convenient** 15:4
**convince** 18:11
**core** 14:21
**correct** 14:13
  21:24 22:9 26:2
  28:22
**counsel** 7:5,7 8:4
  15:20
**country** 32:21
**couple** 17:1
**court** 1:1,12 7:2,8
  7:13,15 8:11 9:3,6
  9:23 10:1,2,9,12
  10:25 11:10,14,20
  11:24 12:4,7,16
  12:19 13:5,7,15
  13:20,22,25 14:7
  14:20,23,25 15:1
  15:3,5,13 16:2,10

16:21 17:11,13,24
  18:4,15,22,25
  19:2,11,15,17
  20:3,5,9,13,16,19
  20:21 21:9,14,16
  21:25 22:5,10,18
  22:21,24 23:8,9
  23:13,23 24:4,7,8
  24:9,12,15,20,23
  24:24,25 25:3,5,8
  25:10,14,18 26:1
  26:3,6,10,13,17
  26:19,24 27:3,6
  27:10,12,15,17,20
  27:24 28:2,3,5,8
  28:12,16,19,23
  29:1,2,4,5,8,12,15
  29:18,21 30:14,18
  30:20 31:3,6,8,10
  31:15,20,22
**court's** 13:11
  15:25 23:24
**courts** 18:13
**covered** 30:21
**cross** 30:2
**current** 14:16,16
**cutoff** 30:22

### d

**d** 1:22 7:1
**date** 9:21 10:22
  12:13 16:8,10
  17:3,3,7,9 18:24
  19:1 21:11 23:12
  23:25 29:12 30:22
  31:17 32:25
**days** 26:6 28:12
  28:19,20 29:6,10
**dc** 6:4
**deal** 21:1,19,25
**debtor** 1:9 28:9
**debtors** 2:16 3:1,3
  3:9,12,14 5:4,12
  6:2 7:5,22,25 9:13

Page 3

19:23 21:3,17
22:25 29:7
**decide**   8:14 9:10
9:14,17 10:1,24
12:15,21,22 13:5
13:16,23,23 17:21
19:4,8,9 21:6
22:15,25 23:4,5
**decided**   9:20 10:2
13:5 23:9 24:8
**deciding**   12:8
19:6
**declaration**   2:8
30:1
**declarations**   3:19
**declaratory**   22:7
**defense**   10:21
18:7,9 19:3
**deposition**   26:25
28:11
**depositions**   26:4
27:2,5
**described**   12:23
**determination**
11:8 23:25
**determine**   10:7
14:24 15:1
**determined**   9:15
**dictate**   8:23
**different**   10:10
12:3 14:17 17:4
21:20,22 22:1
**differentiation**
13:12
**difficult**   22:4
**dig**   14:15
**direct**   29:25 30:5
**disagreement**
11:18
**disclosure**   18:8
**discovery**   7:24 8:6
8:15,23,23,25
10:2 14:2,9,15

15:6 16:18 17:25
19:12,18 20:5,10
20:23 21:1,5,13
22:1,23 24:2,10
24:14,16 25:7,12
25:24 26:1,16
27:13,25 28:13
30:22
**discrete**   9:7
**discuss**   8:5
**discussed**   31:17
**discussion**   14:14
14:14 15:6
**discussions**   25:19
**dismiss**   8:17 9:24
18:7,9
**dispute**   8:8 13:3
14:2
**disregard**   12:2
**distinct**   17:15
21:16
**distinguish**   10:9
**district**   1:2 19:14
22:18
**docket**   3:2,3
**doctors**   5:19 6:10
7:19,21 9:14,21
11:6 12:18,25
14:10 15:17 17:18
18:18 19:20,24
23:1,22 24:6
**document**   2:14,22
2:24 3:4,6,15,17
3:22,24 4:4,6 17:1
**documents**   31:5
**dosoretz**   2:3,11
2:19,23 3:16,23
4:5
**doubles**   30:11
**dr**   2:3,3,4,4,11,11
2:12,12,19,19,20
2:20

**drain**   1:22
**drawn**   16:16,23

**e**

**e**   1:21,21 5:1,1 7:1
7:1 32:1
**earlier**   7:16
**east**   5:21
**easy**   22:3
**economy**   13:4
**ecro**   1:25
**effect**   10:14 11:4
23:3
**effective**   9:21
10:19,22 12:13
13:21 16:8,10
17:3,7,9 18:24
19:1 21:11 23:12
23:25
**efficient**   11:1 21:1
**efforts**   30:7
**either**   18:18
**employment**   8:18
**enforce**   2:1 3:3,10
3:15,21 4:2 7:18
7:22 16:23
**enforcing**   2:9,17
**enjoin**   7:19 15:24
16:5,24
**enormous**   29:23
**entered**   8:19
**entire**   16:11
**entirely**   10:21
**entry**   2:9,17 3:13
**essentially**   12:1
**estopped**   18:18
**estoppel**   18:19
**et**   14:11 15:10
19:7 27:7
**events**   10:19
12:14 13:1 22:6
28:13
**everybody**   28:10

**evidence**   29:23
30:25
**evidentiary**   29:22
29:24
**exactly**   11:17
29:14
**example**   18:2
**exchange**   26:16
27:13
**executed**   13:20
15:9
**execution**   11:23
**executory**   13:19
15:8
**exhibit**   30:9
**exhibits**   30:8,9
**exist**   14:24 19:6
**existence**   24:1
**expeditiously**
27:23
**extent**   23:15,15
23:17 26:20

**f**

**f**   1:21 32:1
**face**   11:6
**fact**   14:10 22:11
22:13,14
**facts**   12:1,10 21:4
22:17
**factual**   21:2
**fair**   29:20 30:19
**far**   24:9 29:21
**faster**   28:6
**federal**   9:8 15:15
**file**   29:4
**filed**   2:22 3:4,15
3:22 4:4 15:22
19:10
**files**   14:16
**filing**   3:19 4:1
**final**   30:22
**find**   31:16

[findings - issue]                                                                    Page 4

**findings**  23:14
**fine**  13:25 20:19
  20:21 25:3,10
  28:5
**first**  9:11 12:23
  17:8,21 18:2
**fl**  5:22 6:12
**flexner**  6:9
**floor**  5:5
**florida**  3:8,13
  7:21 8:5 9:9,18,23
  10:1,2,24 11:8,10
  12:12 13:3,5
  15:25 16:5,9,10
  17:9,19,22 18:13
  23:24 28:25 29:3
  29:4
**focus**  7:23 16:13
  20:10 24:2,17
  25:9
**focusing**  17:24
**foregoing**  32:3
**form**  30:17
**forth**  16:23 18:24
**forward**  8:15
  17:22
**four**  7:11,19,20
  26:9
**fox**  2:4,12,19,23
  3:16,23 4:5
**frame**  15:5
**framed**  15:18
**frankly**  15:7
**friday**  25:25
**front**  7:25 19:24
  25:15
**frontier**  20:23
**full**  29:9
**fundamental**  8:8
**further**  3:2,20 4:1

**g**

**g**  6:3 7:1
**garrigues**  7:7
**gatekeeper**  19:13
**gayer**  5:10
**general**  7:6
**give**  10:19 11:9
  13:2 30:8
**giving**  25:24
**gleit**  2:8 3:5 5:16
  7:3,4 8:3 9:5 10:4
  10:11 11:12,15
  25:11,16 28:14,17
  29:6,19 30:12,15
  30:19 31:2,4,7,9
  31:18
**go**  9:23 10:24
  17:22 30:10
**goals**  26:13
**goes**  25:11 29:22
**going**  8:11,15,25
  8:25 9:11,12 10:4
  14:2 15:23 16:4
  18:4 23:13,14,23
  26:25 27:1,4,13
  29:23
**goldfarb**  6:24
**good**  7:3,8,9,10,13
  7:14 11:16 15:16
**govern**  8:15
**governance**  20:25
**granted**  16:3
**granting**  2:5,13
  2:21
**great**  31:22
**group**  19:23,24
**guess**  15:2
**guidance**  26:15

**h**

**h**  2:4,12,20 3:24
  4:5
**hand**  16:19 22:16

**happen**  8:25
**happening**  22:17
**happy**  15:3,14
**heading**  13:13
**hear**  15:14 21:6
  30:4
**heard**  15:5 18:23
**hearing**  2:1,8,16
  3:1,8,12,19 4:1
  8:6 15:4 26:23
  28:1 29:10,17,21
  29:22 30:2,10
**hearings**  29:24
**heise**  6:14,19 7:11
  15:16,16 16:3,22
  17:23 18:1,14,20
  18:23 19:1,10,16
  20:2,4,8,11,14,17
  20:20 21:7,10,15
  21:24 22:3,9,19
  22:22 23:6,10,20
  25:23 26:2,4,8,12
  26:14,18,20 27:1
  27:4,7,14,16
**help**  8:15
**high**  8:6
**highlighted**  16:25
**highly**  14:18 22:6
**hit**  8:25 11:17
**hold**  28:20
**holding**  2:3,11,19
**holdings**  1:7 3:5
**hon**  1:22
**honor**  7:3,9,10 8:3
  8:14 9:5 10:5
  11:12,15,16 14:13
  15:16,17 16:17,20
  17:6,23 18:21
  19:16 23:21 24:3
  25:23 26:8 27:11
  27:22 28:22 29:6
  29:7,19 30:15
  31:14,19,23

**hopefully**  26:22
**hospital**  18:3
**hr**  14:16
**hyde**  4:25 32:3,8

**i**

**ii**  2:3,11,19
**iii**  2:5,13,21
**immediately**
  26:21
**important**  28:15
**imposing**  2:5,13
  2:21
**inclination**  9:14
**include**  10:13
  11:3
**includes**  10:15,16
**including**  2:2,10
  2:18 17:17
**inconsistent**  15:20
**independently**
  13:1
**indicates**  17:14
**indiscernible**
  25:13
**injunction**  2:2,10
  2:18 16:1
**interpretation**
  21:17
**interrupt**  17:11
**involvement**
  19:20
**irrelevant**  18:5
  20:24
**issue**  8:21,24 9:7,8
  9:8,10,15,20,21
  10:1,3,7,16,24
  11:6,7,18 12:16
  13:15,22,24 14:3
  14:8,10 15:2,18
  17:21 18:11,12,13
  18:15,17,17 19:13
  19:15 21:25 22:17
  22:18,25 23:4

28:15
**issues**  10:12,15,15
  11:3,10,17 12:15
  12:19,21 14:23
  18:6 19:4,5,5,8,9
  19:12 21:2,4,13
  24:6 25:6
**iv**  2:5,13,21

**j**

**j**  2:4,12,20,23
  3:16,23 4:5 6:14
**james**  2:4,12,20
  2:24 3:17,24 4:5
**jeffrey**  2:8 3:4
  5:16 7:3
**john**  6:6
**joint**  30:9,25
**jonathan**  7:6
**judge**  1:23
**judgment**  22:7
**judicata**  23:3
**judicial**  13:4
  18:19
**june**  28:2 29:10
  29:11,11 31:11
**jurisdiction**  13:8

**k**

**katin**  2:4,12,20,24
  3:16,23 4:5
**katz**  6:23
**ken**  7:11
**kendrick**  5:18
**kennedy**  5:21
**kenneth**  5:8 23:21
**klee**  5:3,8 7:11
  23:19,21,21,21
  24:5,8,11,13,16
  24:21,24 25:2,4,6
  25:9 27:11,19,22
  27:25 28:4,6,9,22
  28:24 29:2,9,14
  29:16 30:12 31:14

**know**  9:13 10:14
  10:16 11:10 12:16
  12:18,20 13:8
  15:13,22 17:12
  19:6,23,25 20:3,6
  20:16,17,24 22:16
  23:16,17 24:24
  25:3,12,18,21,21
  25:22 26:4,14
  29:24 30:15 31:12
**knowledge**  25:13
**known**  27:17
**knows**  17:6

**l**

**l326**  2:14 3:22
**laid**  15:14 17:6
**law**  9:8,9,18 11:8
  13:3 14:4,8 17:9
**laws**  10:21 12:12
  13:2
**lawsky**  20:22
**lawyers**  27:20
  28:7
**ledanski**  4:25 32:3
  32:8
**lee**  18:3 29:13
  31:10
**legal**  8:13,15
  13:15 32:20
**legend**  14:5
**letter**  4:1
**level**  8:6
**limited**  21:5
**lines**  16:15,22
**listed**  20:12
**litigation**  7:21
  28:25 29:3
**litigator**  27:17
**litigators**  28:6
**live**  11:11 30:4
**llp**  5:3,11,18 6:1,9
**long**  25:19,20,22

**longstanding**
  21:12
**look**  12:1 13:7
  18:1 21:16
**loop**  5:18
**los**  5:6
**lot**  8:9 31:4,11
**luis**  6:21

**m**

**m**  2:22 3:15,22
  4:4 5:24
**making**  19:23
  23:13
**man**  31:21
**marciano**  17:10
**mark**  6:14,19 7:11
  15:16
**matter**  1:5 9:17
  23:1
**mean**  10:25 13:7
  14:25 19:1,22
  20:21 26:10
**meaning**  20:25
**means**  21:18
**meet**  30:6
**memorandum**  9:4
**memorial**  18:3
**miami**  6:12
**michael**  2:4,12,20
  2:23 3:16,23 4:5
  6:18
**mid**  28:2
**mineola**  32:23
**misconduct**  17:2
**missed**  30:16
**misunderstood**
  27:12
**moment**  9:20
  15:19
**monday**  7:17
**month**  28:1
**morning**  7:3,8,9
  7:10,13,14 11:16

15:16
**motion**  2:1,9,16
  3:3,8,9,12,14,20
  3:21 4:2,3 7:18,22
  7:25 8:17 9:24
  15:22 16:4,23
  18:6,9
**move**  13:10

**n**

**n**  5:1,8 7:1 32:1
**n.w.**  6:3
**narotam**  1:25
**narrow**  16:4
**necessarily**  21:3
**necessary**  15:7
  16:19 17:14
**need**  14:4 15:7,19
  17:20,21 20:15
  22:24 23:4 27:9
  30:17,23
**needed**  8:24
**needs**  24:24
**never**  27:17
**new**  1:2 5:14
  12:11,11 22:17
  23:7,8
**non**  8:19 9:8
  13:18 16:11,13
  17:8 19:3
**noncompete**
  24:21
**normally**  9:1
**notice**  3:19 4:1
  24:17 27:4
**notify**  29:2
**ny**  1:14 5:14
  32:23

**o**

**o**  1:21 7:1 32:1
**object**  27:7
**obvious**  17:8
**obviously**  11:21
  25:12 30:3

[occasions - released]                                                            Page 6

occasions 16:25
occur 13:1 16:16
occurred 17:2,7
  22:6,10
occurring 22:13
  22:14
oh 26:10
okay 7:2,8,13 8:2
  11:14,20 16:21
  17:24 18:22 19:4
  20:13 25:10 27:10
  28:3,8,9 29:5,18
  29:19,21 30:14,19
  31:6,8,18,20,22
old 32:21
oncology 1:7 3:5
  7:2
ones 21:22 22:4
oppose 21:18
opposed 7:17
opposition 2:16
  3:2,12,20,21 4:2,3
oral 7:18
order 2:2,9,10,17
  2:18 3:13 7:19
  9:16,22 15:5 16:1
  16:3 17:16 23:24
  30:17
organization
  14:18
organizations
  14:17
orion 12:20
outlined 16:17
  21:10
outsider 19:24
overreach 19:8
overt 16:6,16 23:7

**p**

p 5:1,1 7:1
pablo 2:3,11,19
  2:23 3:16,23 4:5

panoply 16:11
  18:16
paper 26:1,25
  27:13
papers 11:22
  20:15 29:4
part 13:19 17:16
  18:16 19:8
partial 18:9
particular 13:18
parties 10:23 12:9
  12:16,23 13:4
  14:9 20:23 28:24
  30:6
party 2:3,11,18
pending 3:9,14
  7:22
people 17:12 20:5
  20:6 25:1,21
person 27:9 30:2
perspective 28:14
petition 13:1 17:2
physicians 7:12
pictures 12:20
place 15:19,21
plain 20:25
plains 1:14
plaintiffs 3:1 8:5
  16:7
plan 2:1,2,9,10,17
  2:18 7:19 9:15,22
  10:14 12:17 17:15
  17:17 18:8 19:20
  24:18
play 24:18
plaza 5:20
pleading 23:11
point 8:12 9:3
  10:23 11:11,22
  12:19,23,24 13:9
  15:3 16:6,15 21:7
  22:15,19

points 18:11
portion 16:14
position 11:21,25
  17:5 20:3
positions 12:3,4
  13:14
possibility 17:15
possible 28:17
post 9:21 10:19,22
  11:4 12:13,25
  13:17 14:5 16:9
  17:7 19:1 21:11
  22:6 23:25
potential 8:6
potentially 8:7
practice 29:24
pre 11:4 16:8,8
  18:24
preclude 23:24
precluded 9:16
  17:22,25 18:7
precludes 17:18
prejudice 19:6
prepared 14:24
present 6:16
pretrial 30:17,22
pretty 28:19
previously 15:21
primed 17:13
prior 17:3 23:11
  23:15
probably 26:14
problem 31:12,14
  31:15
problems 26:22
proceed 7:21 16:9
  28:7
proceeding 17:18
proceedings 3:8
  3:13 31:24 32:4
process 25:20
  28:10

professional
  14:17
provide 16:17
provisions 13:18
pure 14:4,8
purposes 10:22
  12:11
put 18:2 24:18

**q**

quarropas 1:13
question 8:13
  9:12 13:17 14:4
  14:22 15:23 16:6
quick 28:19
quite 12:7

**r**

r 1:21 2:8 3:4 5:1
  5:16 7:1 32:1
rai 1:25
raise 8:8 10:5
  14:10 18:6 19:14
raised 9:3,16,20
  17:19 21:2 22:19
raising 11:17 19:3
rdd 1:3
really 9:25 10:8
  11:8 12:11,19
  13:15 14:19 26:7
reason 19:11
reciprocal 25:24
recognizing 19:5
record 15:12 24:5
  32:4
redirect 30:3
relate 8:21
related 2:6,14,14
  2:22,22 3:4,15,22
  4:3 13:8
relating 15:20
release 2:3,11,19
  11:4 18:18
released 10:13,13
  25:4

[relevance - thank]                                                                 Page 7

**relevance** 8:10 13:16 14:21 15:6 22:15
**relevant** 11:19 17:25 22:7
**relief** 2:6,14,22
**relieved** 22:7
**rely** 22:11
**renewed** 17:8
**reopen** 15:22,23 16:4
**reorganized** 2:16 3:1,3,9,12,14 7:5
**repeatedly** 20:14
**reply** 3:1 8:9 9:4
**request** 9:1 15:3 27:16
**require** 30:6
**res** 23:2
**rescind** 10:20
**resets** 8:19
**resolution** 3:9,14 26:21
**resolved** 26:9
**respect** 19:19
**response** 3:2,20 3:21 4:2,3 17:6
**retorted** 21:12
**retroactively** 12:1
**revisions** 15:10
**richard** 6:22
**richman** 6:18
**right** 9:3 10:8,20 11:15,20,24 13:2 14:7 16:2 18:4,12 18:12,14 19:19,25 20:4 21:23 22:14 22:21,25 23:2 24:2,7,11,12,15 25:7,8,10 26:3,15 27:10,15,24 28:16 28:21 29:1,8

**rise** 10:19 13:2
**road** 32:21
**robert** 1:22
**room** 1:13
**rubenstein** 2:4,12 2:20,24 3:17,24 4:6
**ruling** 7:22 11:9
**running** 24:17

**s**

**s** 2:14,22 3:4,15 3:22 4:4 5:1 7:1
**sanctions** 2:5,13 2:21
**saying** 11:5 12:7 17:22 18:21 19:2 19:4 22:5 23:14 25:11
**schedule** 15:4
**schiller** 6:9
**scope** 8:10
**se** 6:11
**second** 6:11
**secondly** 22:5
**see** 26:21 27:6
**sensitive** 14:18
**separate** 12:25 19:13 24:21
**separately** 13:1
**set** 12:17 13:3 16:23 18:24 26:11 29:10
**seven** 16:25 17:4
**she'll** 31:12
**shocked** 31:7
**show** 22:1
**shumaker** 5:18
**side** 15:15
**sides** 9:10 11:5 27:22
**signed** 15:11
**significant** 12:13

**simpson** 6:1 7:6
**sit** 7:15
**site** 20:24
**sitting** 25:15
**solutions** 32:20
**someone's** 30:3
**sonya** 4:25 32:3,8
**soon** 15:4
**sooner** 28:18
**sorry** 14:25
**sort** 7:24 11:2 15:20 19:24
**sorts** 12:20
**southern** 1:2
**speak** 11:13
**speaking** 7:16
**standing** 9:25 11:6 12:10,24 18:6,15 19:14 22:12 24:1
**standstill** 28:24 29:3
**stars** 5:5
**start** 21:21
**state** 14:25 23:9
**statement** 18:8
**statements** 30:25
**states** 1:1,12
**status** 7:17
**statute** 12:12
**statutory** 18:19 23:3
**stay** 3:8,21 4:3
**staying** 3:13
**stern** 5:3 23:22
**steve** 7:10
**steven** 2:22 3:15 3:22 4:4 5:24 6:20
**stieglitz** 6:22
**street** 1:13 6:3,11
**stuff** 17:13
**suarez** 6:21

**subject** 8:1 28:13
**submission** 30:24
**submitted** 30:1
**subpoena** 30:4
**subsume** 12:4
**sufficient** 11:9
**suit** 11:19
**suite** 5:21 6:11 32:22
**sullivan** 5:11 7:4
**supervise** 24:13
**supervising** 19:12 24:10
**support** 2:8 3:3 3:20 4:2
**sure** 10:11 14:8 21:9 23:20 25:11
**system** 18:3

**t**

**t** 32:1,1
**tables** 25:15
**take** 8:1 20:3 25:20,22 26:15,24 27:1 29:25
**taken** 11:21,25 15:21
**talked** 25:19,23
**talking** 19:17
**tampa** 5:22
**telephone** 7:16
**telephonically** 6:16
**tell** 31:16
**terms** 11:18 12:2
**terzaken** 6:6 7:6,9 8:4,11 10:5 11:13 11:16,21,25 12:6 13:6,11,24 14:1 14:13,21 15:2
**testimony** 29:25
**thank** 8:3 11:15 11:17 31:18,21,23

**thatcher** 6:1
**theories** 17:19
**thing** 19:25
**things** 8:7 10:10
  14:17 17:7 20:15
  30:21
**think** 8:8,13,14,15
  10:24 11:5,9 13:4
  13:7,7,13,22 14:7
  14:8,25 15:11,18
  15:18 17:24 19:17
  19:18 21:2,3,4,16
  21:20 23:23 25:18
  25:19 27:11,22
  29:20,24 30:23
  31:2
**third** 2:2,10,18
**thirty** 28:19
**thought** 9:6 10:5
  16:19 17:12 27:12
**three** 30:21
**threshold** 8:13,16
  13:15
**time** 10:7 13:20
  15:24 16:15,22
  20:6 24:18 30:11
  31:11,12
**timing** 10:8,16
**today** 7:5,23 8:9
  8:16 9:12 14:24
  15:4 26:17
**today's** 8:5 12:1
**told** 15:24
**top** 17:1
**topics** 20:11
**totally** 12:13
**touched** 8:9
**transactions**
  17:16
**transcribed** 4:25
**transcript** 32:4
**true** 32:4

**trying** 10:9
**tuchin** 5:3 23:22
**tuesday** 8:4
**turn** 10:4 20:22
  21:10
**two** 10:10 12:4
  21:6 25:12,15
  26:6,9
**type** 18:7 20:10

**u**

**u.s.** 1:23
**unable** 22:22
**unanticipated**
  28:13
**uncontroverted**
  21:4
**understand** 11:12
  13:11,13 18:20
  23:23 28:20 30:13
  31:16
**understanding**
  14:11 26:8
**understood** 15:11
  19:16 20:6,24
  25:1
**unfortunately**
  31:13
**united** 1:1,12
**unnecessary**
  25:17
**unrealistic** 26:11
**unwilling** 12:22
**use** 30:7

**v**

**valid** 13:20
**variety** 17:7 20:15
**veritext** 32:20
**view** 10:6,6 18:10
**violating** 15:25

**w**

**want** 8:8 9:10
  10:23 12:9,23

**13:4,15** 14:9
  16:13 17:11 19:9
  19:15 20:5,22
  21:6,13,17 24:6
  26:5,10 27:5,22
  30:24
**wanted** 15:24
  16:24 25:17 26:9
**warranted** 7:24
**washington** 6:4
**way** 15:17 25:12
**ways** 17:4
**we've** 11:21 14:2
  14:14 18:23 30:21
  31:17
**website** 30:20
**week** 7:17 8:18
  26:17,18 27:3
  29:10 30:1,10
**weeks** 26:9
**white** 1:14
**willing** 26:24
**witness** 21:6
  30:25
**witnesses** 29:25
**worcester** 5:11
  7:4
**work** 12:19 26:20
  27:8 30:12
**working** 29:3
**works** 29:6

**x**

**x** 1:4,10 23:15,16
  27:9

**y**

**y** 27:9
**yeah** 13:22 24:4,5
  24:20 25:16,18
  26:19 29:14
**yesterday** 16:18
  20:12
**york** 1:2 5:14

**z**

**z** 27:9
**zsyman** 5:10

# EXHIBIT B

# (FILED UNDER SEAL)

# EXHIBIT C

# (FILED UNDER SEAL)

# EXHIBIT D1

# (FILED UNDER SEAL)

# EXHIBIT D2

# (FILED UNDER SEAL)

# EXHIBIT E

# (FILED UNDER SEAL)

# EXHIBIT F1

# (FILED UNDER SEAL)

# EXHIBIT F2

# (FILED UNDER SEAL)

# EXHIBIT G

# (FILED UNDER SEAL)