**ZUMPANO PATRICIOS, P.A.**
312 Minorca Avenue
Coral Gables, FL 33134
Leon N. Patricios (admitted *Pro Hac Vice*)
Telephone: (305) 444-5565

*Counsel to Andrew L. Woods*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| 21ST CENTURY ONCOLOGY HOLDINGS, INC., *et al.*, | ) ) ) | Case No.: 17-22770 (RDD) |
| Reorganized Debtors. | ) ) | (Jointly Administered) |

**ANDREW L. WOODS' MOTION FOR RECUSAL**

Andrew L. Woods ("**Mr. Woods**"), by and through undersigned counsel, and pursuant to 28 U.S.C. § 455(a), respectfully moves the Hon. Robert D. Drain ("**Judge Drain**") to recuse himself from presiding over any portion of the Reopened Case[1] related to Mr. Woods, and in support of this Motion for Recusal (the "**Motion**") states as follows:

## I.    INTRODUCTION

Despite having recently prevailed against a motion to enjoin his pending lawsuit and impose sanctions, Mr. Woods remains unable to proceed for fear of an inevitable contempt hearing before a court that has all but ruled against him in advance. Under federal law, no judge may preside over litigation where his or her impartiality may reasonably be questioned. In this case, Mr. Woods has a reasonable belief that Judge Drain will not be impartial to Mr. Woods concerning the sole remaining issue in the Reopened Case.

With the Reorganized Debtors' Motion to Enforce resolved, the only issue left in the Reopened Case is whether Mr. Woods' continued prosecution of the Florida District Court Action violates the Stipulation. This issue overlaps entirely with the question of whether Mr. Woods has adequately pled certain tort causes of action under Florida law. However, Mr. Woods cannot safely ask a Florida court to rule on such issues. The Reopened Case has been kept open so that the Reorganized Debtors may seize the pending Florida law issues from the Florida court and instead present them to Judge Drain, who has all but promised to hold Mr. Woods in contempt if he proceeds with the very same lawsuit this Court held was not barred by the Exculpation Provision of the Confirmed Plan.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Reorganized Debtor's Motion for the Entry of an Order: (I) Enforcing the Plan and Confirmation Order, Including the Exculpation Provision and the Plan Injunction; (II) Holding Andrew L. Woods in Contempt; (III) Imposing Sanctions; and (IV) Granting Related Relief [Dkt. No. 1400] (the "**Motion to Enforce**"); or in this Court's Order dated January 15, 2020 (the "**Order Denying the Motion to Enforce**"), as appropriate.

2

At the hearing on the Motion to Enforce, Judge Drain: (i) made numerous insulting comments that establish antagonism toward Mr. Woods, including referring at length to Mr. Woods' lawsuit as "fantasy land," "totally bizarre," and "absurd," as well as commenting that the Florida Defendants (defined below) "should have gotten a medal" for denying Mr. Woods' payment; (ii) issued a statement suggesting that Mr. Woods has "no brain," which was published in a media article mere hours after the hearing; and (iii) arrested questions of Florida law that were outside the scope of the hearing.

No reasonable observer in these proceedings would conclude that Mr. Woods will receive a fair hearing when the Reorganized Debtors inevitably initiate contempt proceedings before Judge Drain for allegedly violating the Stipulation. Based on his conduct, Judge Drain has already passed judgment against Mr. Woods and is attempting to intimidate him into abandoning the Florida Action. Therefore, Judge Drain must recuse himself under 28 U.S.C. § 455(a) ("**Section 455(a)**").

## II.    FACTUAL BACKGROUND

A.    <u>**The 2016 Woods Action and the 2017 Bankruptcy Filing**</u>

In November of 2016, Mr. Woods sued Radiation Therapy Services, Inc. d/b/a 21st Century Oncology ("**21C**") (now one of the Reorganized Debtors) for breach of contract after 21C refused to pay him amounts due and owing under his employment agreement (the "**the 2016 Action**").[2] 21C petitioned for Chapter 11 relief in this Court and filed their Restructuring Support Agreement on May 25, 2017.[3] The 2016 Action was stayed on May 30, 2017 (and remains stayed).

---

[2] *Woods v. Radiation Therapy Services, Inc.*, No. 2:16-cv-00897-JES-MRM (M.D. Fla). Such action was filed in Florida state court but was removed to federal court.
[3] *In re 21st Century Oncology Holdings, Inc., et al.*, No. 17-22770 (RDD) (the "**Chapter 11 Cases**").

3

Mr. Woods then filed his Proof of Claim #175 (the "**Claim**") seeking in excess of $11,000,000 for amounts due and owing under his employment agreement (including certain incentive bonuses, COBRA benefits, interest, and severance). This Court recognized Mr. Woods' right to the full value of his Claim, but it ruled that the Claim was statutorily capped by Section 502(b)(7) of the Bankruptcy Code. [Dkt. No. 1291].[4] The Plan of Reorganization was subsequently confirmed and the Chapter 11 Cases were closed.

### B.   Commencement of the Florida District Court Action

On March 4, 2019, Mr. Woods commenced an action against Kimberly Commins-Tzoumakas ("**Ms. Commins-Tzoumakas**"), Hall, Render, Killian, Health & Lyman, PC ("**Hall Render**"), Allan Schweitzer ("**Mr. Schweitzer**"), Beach Point Capital Management, LP ("**Beach Point**"), and William R. Spalding ("**Mr. Spalding**") (collectively, the "**Florida Defendants**") in the United States District Court for the Middle District of Florida (the "**Florida Court**") (and, the "**Florida District Court Action**").[5] Such lawsuit alleges tortious interference and civil conspiracy against all defendants, some of whom were current and/or former officers and directors of 21C, as well as vicarious liability against the business entity defendant, Hall Render.

### C.   The Reorganized Debtors' Motion to Reopen

On May 9, 2019, the Reorganized Debtors filed their Motion to Reopen, and a hearing on such motion was held on June 27, 2019. The Motion to Reopen was granted, and in its Order Reopening Chapter 11 Case for Specific Purpose, this Court reopened the Chapter 11 cases

> for the specific purposes of (i) permitting the Reorganized Debtors to seek relief from this Court by motion to enjoin Andrew L. Woods [] from pursuing the 2019 [Florida District Court] Action

---

[4] Mr. Woods appealed such decision (the "**Appeal**"). The Appeal is now pending before the United States Court of Appeals for the Second Circuit.
[5] Mr. Woods removed Beach Point as a defendant in the First Amended Complaint filed on March 21, 2019.

> based on the Exculpation and Injunction provisions contained in Sections 8.4 and 8.5 of the Reorganized Debtors' Plan (the **"Motion to Enforce"**), (ii) the Court's determination of such Motion to Enforce and any opposition thereto, and (iii) subject to entry of the proposed stipulation referred to at the [June] Hearing, to ensure that the 2019 [Florida District Court] Action does not seek determinations of claims based on, or challenging, the condut of the Reorganized Debtors [C]hapter 11 [C]ases or seek relief from or a modification of the confirmed chapter 11 plan (the **"Plan"**) in these cases.

After this Court entered the above Order, the Reorganized Debtors filed their Motion to Enforce [Dkt. No. 1400] and a hearing was scheduled for November 22, 2019. Pursuant to the Scheduling and Pre-Trial Order dated September 19, 2019 [Dkt. No. 1414], the parties promptly commenced discovery on the issues of whether the Florida District Court Action was barred by the Exculpation Provision under Section 8.4 of the Plan (the "**Exculpation**") and the Injunction Provision under Section 8.5 of the Plan (the "**Injunction**").

**D.     Judge Drain's Comments at the June Hearing on the Motion to Reopen**

At the June 27, 2019 hearing on the Motion to Reopen (the "**June Hearing**"), Judge Drain directed the following comments at Mr. Woods in open court:

- "Transactions that were approved or reviewed by the court . . . are entitled to exculpation so that people don't do end runs outside of what the court did. And it's not going to happen here, particularly when you're doing it as part of, I believe, a smear campaign." 2019-06-27 Hr'g Tr. 27:3-9.

- "We don't do [smear campaigns] in New York [or in] the Federal Courts of New York. You saw how [Michael] Avenatti was treated in New York; that's not limited to him." 2019-06-27 Hr'g Tr. 27:12-15.[6]

---

[6] Judge Drain also noted that he formerly considered Mr. Woods to be a "formidable person," but was "dismayed [by] extraneous material in the [Florida District Court Action] Complaint that went in the other direction." *See* 2019-06-27 Hr'g Tr. 41:22-24.

5

**E.     The Stipulation and a Stay of the Florida District Court Action**

Also at the June Hearing, this Court voiced a concern that

> the [Florida District Court] Action will, based on the Complaint and, specifically allegations . . . set forth in Paragraph 72 through 76, as well as allegations concerning the restructuring of the debtors' obligations, seeks to litigate issues [and] events that clearly took place post-petition . . . in essence, reopening the bankruptcy case in another forum . . . .

2019-06-27 Hr'g. Tr. 38:1-14.

At this Court's direction, and in order to ease its above concerns, Mr. Woods entered into a Stipulation and Agreed Order with the Reorganized Debtors (the "**Stipulation**"). [Dkt. No. 1402]. Pursuant to the Stipulation, Mr. Woods agreed to strike paragraphs 72 through 76 from his then-operative complaint in the Florida District Court Action. Importantly, Mr. Woods also stipulated that

> [Mr.] Woods shall not contest or re-litigate in the 2019 [Florida District Court] Action any findings of the Bankruptcy Court made in the Chapter 11 cases, including, without limitation, those related to or set forth in the Plan and Confirmation Order including the good faith findings and scope of the exculpation clause therein. For avoidance of doubt, (i) **[Mr.] Woods will not seek to enforce a claim that has been discharged** against the Debtor, the Reorganized Debtor, or the Bankruptcy Estate; (ii) **[Mr.] Woods will not raise any issues that are barred by the Plan, Confirmation Order or any other order of this Court**; and (iii) this stipulation **shall not modify any rights resulting from [Mr.] Woods' opt-out and third-party releases under the Plan**.

[Dkt. No. 1402] (emphasis added). This Court entered the Stipulation on August 5, 2019.

In the time period during which this Court entered its Order Reopening the Case and the Stipulation, multiple motions to dismiss (and Mr. Woods' consolidated response in opposition) were pending in the Florida District Court Action. The Florida Court stayed the Florida District

6

Court Action pending resolution of the Motion to Enforce, without having ruled on the pending motions to dismiss. *See* Ex. "B."

F.     **Outcome of the Motion to Enforce**

Mr. Woods recently prevailed against the Reorganized Debtors' Motion to Enforce. Judge Drain held, *inter alia*, that the Exculpation is "(a) inapplicable to [Mr. Schweitzer] . . . , and (b) as to the other parties in the Florida District Court Action the conduct forming the basis of the causes of action contained in the Second Amended Complaint does not fall within the scope of the transactions covered by the Exculpation." [Dkt. No. 1447]. Although the Motion to Enforce was denied, Judge Drain ordered that

> The Reopened Case shall remain open to permit the Reorganized Debtors to seek relief in the event the continued prosecution of the Florida District Court Action threatens a violation of the Stipulation by (i) seeking determinations of claims based on, or challenging, the conduct of the Reorganized Debtors' Chapter 11 Cases or seeking relief from or a modification of the Plan, or (ii) contesting or re-litigation any findings of the Bankruptcy Court made in the Chapter 11 Cases, including, without limitation, those related to or set forth in the Plan and Confirmation Order including the good faith findings and scope of the exculpation therein, up to and including the date of this Court's December 18, 2018 Order granting the Final Motion to Close. Upon the earlier of (a) the final resolution of the Florida District Court Action and (b) the Reorganized Debtors' election to do so, the Reorganized Debtors shall email to chambers, with a copy to counsel for [Mr.] Woods, a proposed order re-closing the Reopened Case, along with a copy of this Order.

[Dkt. No. 1447].

Therefore, with the Exculpation issue of the Motion to Enforce resolved in Mr. Woods favor, the sole remaining issue in the Reopened Case is whether Mr. Woods' continued prosecution of the 2019 Woods Action violates the Stipulation. Under the above order, the

7

Reorganized Debtors may seek a contempt proceeding against Mr. Woods if he attempts to prosecute the Florida District Court Action.

G. **Judge Drain's Comments at the November Hearing on the Motion to Enforce**

At the November 22, 2019 hearing on the Motion to Enforce (the "**November Hearing**"), Judge Drain made numerous comments and "findings" that establish his partiality in further litigation in the Reopened Case because he has pre-judged the facts and made derogatory comments about Mr. Woods and his counsel.

Judge Drain made the following comments at the November Hearing:

- "I can't help myself and maybe I should. But I appreciate -- although I actually don't because Mr. Woods is a lawyer. How is [this] a tort?" 2019-11-22 Hr'g Tr. 180:12-14.

- "What are we talking about here? This is -- fantasy land. But go on with your argument. I guess you -- you know, I -- go ahead." 2019-11-22 Hr'g Tr. 182:11-18.

- "This is just totally bizarre, totally bizarre." 2019-11-22 Hr'g Tr. 183:4-5.

- "I hope you appreciate, sir, how absurd this sounds. They don't have the money.[7] The idea to say they owe the money and if they don't pay for it, for whatever reason, is somehow a tort when it's acknowledged that they need the money for something else is -- it's just ridiculous. And how a sophisticated person could in good faith make that argument is beyond me, absolutely beyond me." 2019-11-22 Hr'g Tr. 183:7-13.

- "Now maybe it will be that some district judge in Florida has to go through [this] analysis too. But I just -- I'm sorry. Just go on with the rest of your argument. Don't feel like you have to respond to this point." 2019-11-22 Hr'g Tr. 186:11-15.

- "I think the Florida court should understand that to hold officers of a company in financial distress personally liable under tort theories for not making -- for being involved peripherally and not making payments to creditors is utterly bizarre." 2019-11-22 Hr'g Tr. 187:12-16.

- "You know what? It doesn't matter whether [a decision regarding whether to pay him] was not said to him or not. We're now dealing with whether it's a tort not to pay him in October [when 21C knew it wouldn't make an interest payment to its bondholders]. And,

---

[7] Judge Drain ignored Mr. Woods' argument that based on available records and prior testimony, 21C had sufficient funds in the bank to pay Mr. Woods, but ultimately did not do so based upon the sending of false and defamatory letters from outside counsel.

8

in fact, nothing -- it wasn't -- it not only wasn't a tort, but, in fact, these people should have gotten a medal for having the wherewithal not to favor an insider by paying him four million dollars and, therefore, help save the company . . . and for [Mr. Woods] to say otherwise is really just beyond the pale." *See* 2019-11-22 Hr'g Tr. 191:3-9; 191:11-12.

- "It goes to damages. [21C] was never going to pay [Mr. Woods] . . . [t]hat means -- and I don't think this is the case -- that you have no brain because you know that they wouldn't have paid it. You know it . . . [y]ou don't have to admit it, but I know you know it." 2019-11-22 Hr'g Tr. 207:2-3; 11-13; 15-16.

- "In any event, it appears clear to me, in fact crystal clear, that Mr. Spalding was acting at the direction of the [Board] and that Ms. Commins[-Tzoumakas] had properly distanced herself from the whole matter . . . the idea that they had some separate agenda to cause Mr. Woods harm, separate and apart from the company's not paying him, based on the record before me is absurd." 2019-11-22 Hr'g Tr. 234:12-20.

- "I have a very serious concern . . . that the continued pursuit of this litigation on the theory that there is a tort claim under Florida law would, in fact, violate the discharge in this case given my conclusion that the defendants, other than Mr. Schweitzer, were acting solely as officers, directors or attorneys on behalf of the corporation. In other words, it appears clear to me that they're stand-ins for the corporation." 2019-11-22 Hr'g Tr. 242:4-12.

- "I had previously said I would leave [the Florida law] issue up ultimately to the Florida court. However, only on the condition that the stipulation was, in fact, entered into, which it was." 2019-11-22 Hr'g Tr. 242:17-20.

- "It would be almost inconceivable to me that the continued pursuit of the litigation against the defendants, other than Mr. Schweitzer, would not result in a contempt finding under the stipulation for breach of the stipulation and order." 2019-11-22 Hr'g Tr. 242:21-25.

- "Having said that, it's conceivable to me there's some nuance of Florida law I'm missing but, again, if the Florida law finds such a nuance, it's not interpreting the Bankruptcy Code and you all, on behalf of the defendants, can come back to me and enforce the contempt order. I'm just going to enforce the stipulation order by seeking contempt. 2019-11-22 Hr'g Tr. 243:1-7.

- "At this point, there's a clear warning. I don't think there's a reasonable basis not to understand my view that these people were acting on behalf of the company and, therefore, that the discharge would protect them . . . ." 2019-11-22 Hr'g Tr. 243:8-15.

- "I'm putting everyone on notice that if claims based on the sending of a letter by outside counsel as directed by the [Board] and the non-payment . . . is still being pursued as a

9

basis for this complaint, it's likely that I would find contempt and sanctions." 2019-11-22 Hr'g Tr. 243:16-25.

### H. The Overlap of Florida Law and Bankruptcy Issues

In the Florida District Court Action, there is complete overlap between the pending issues at the motion to dismiss stage and the question of whether Mr. Woods is attempting to re-sue the Reorganized Debtors. In Judge Drain's own words,

> the issue(s) of Florida law that would apply uniquely to the defendants really, to me, **almost entirely overlaps with whether this is a disguised claim against the debtor and therefore discharged** . . . [because] if you're acting for the corporation then you're not liable for these types of causes of action. Similarly, if you're really just acting for the corporation under bankruptcy law principles, it's a disguised claim against the debtor which would be discharged or subject to the automatic stay.

2019-11-22 Hr'g Tr. 14:14-25; 15:1 (emphasis added). In its Order staying the Florida District Court Action, the Florida Court seemed to agree with respect to the overlap of issues, when it held that resolution of the Motion to Enforce "may not only simplify or streamline the issues before [the] [c]ourt, but may eliminate them entirely." *See Ex.* "B."

In order to survive a motion to dismiss, Mr. Woods must allege either that: (a) through improper means, the Florida Defendants intentionally and unjustifiably interfered on their own behalf and not on behalf of 21C; or (b) the Florida Defendants interfered in bad faith.[8] There is total overlap between the above motion to dismiss issues in the Florida District Court Action and whether Mr. Woods' lawsuit will violate the Stipulation. Intentional torts are not discharged under the Plan.

---

[8] *See, e.g.*, *Bellinzoni v. Bell Italy Solution Corp.*, No. 6:18-cv-1971-Orl-22GJK, 2019 U.S. Dist. LEXIS 183915, at *10–12 (M.D. Fla. June 24, 2019); *Coller HMA Physician Mgmt., LLC v. NCH Healthcare Sys.*, No. 2:18-cv-408-FtM-38MRM, 2019 U.S. Dist. LEXIS 9902, at *25 (M.D. Fla. Jan 22, 2019); *McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. 1st DCA 1987) (holding that even where there may be a qualified privilege to interfere, that privilege "carries with it the obligation to employ means that are not improper").

### III.    ARGUMENT

#### A.    Legal Standard

"Any justice, judge, or magistrate [] of the United States shall disqualify himself [or herself] in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).  The inquiry under Section 455(a) is "an objective [test] which assumes that a reasonable person knows and understands all the relevant facts." *In re IBM Corp.*, 45 F.3d 641, 643 (2nd Cir. 1995) (citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2nd Cir. 1988)).  Although judicial remarks during the course of a trial ordinarily do not support a partiality challenge, "they *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1993).

In the context of ongoing litigation, recusal motions should normally be made "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *IBM Corp.*, 45 F.3d at 643 (quoting *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 333 (2nd Cir. 1987)).  The actual time elapsed between the events giving rise to the charge of bias or prejudice and the making of a motion to recuse is not necessarily dispositive. *Apple v. Jewish Hospital*, 829 F.2d at 333–34.  During ongoing litigation, recusal motions should be brought promptly in order to: (i) afford the judge an opportunity to address the merits of the application before taking any further steps that may be inappropriate for the judge to take; and (ii) avoid the risk that a party is holding back a recusal application as a fall-back in the event of an adverse ruling on a pending matter. *IBM Corp.*, 45 F.3d at 463.[9]

---

[9] *But see Apple v. Jewish Hospital*, 829 F.2d at 334 (applying a multi-factor analysis for the timeliness of a recusal motion in addition to the above considerations, including whether: (i) the movant has participated in a substantial manner in trial or pre-trial proceedings; (ii) granting the motion was made after the entry of judgment; (iii) the motion was made after the entry of judgment; and (iv) the movant can demonstrate good cause for delay).

11

**B.     Analysis**

    **1. The Motion for Recusal is Timely**

This Motion is timely because: (i) it has been brought at the earliest possible moment to allow this Court to address the merits before taking further steps that may be inappropriate; and (ii) there is no risk that Mr. Woods has held back a recusal motion as a fall-back in the event of an adverse ruling on a pending matter.

    a. The Timing of Mr. Woods' Motion Allows This Court to Evaluate the Merits Thereof Before Taking Additional Steps in the Litigation

In the context of a motion for recusal in ongoing litigation, the test for timeliness is whether the Court has the ability to consider a recusal before taking additional steps that may be inappropriate. *See, e.g.*, *IBM Corp.*, 45 F.3d at 643. Courts generally read some timeliness requirement into Section 455(a), but the statute does not impose a bright-line rule for timeliness. *See id.; Nisselson v. Empyrean Invs. Fund, L.P.*, No. 04-12078 (ALG), Adv. No. 05-01268 (ALG), 2006 Bankr. LEXIS 5056, at *9–10 (S.D.N.Y. Bankr Mar. 23, 2006); *United States v. Brinkworth*, 68 F.3d 633, 639 (2nd Cir. 1995). Mr. Woods has brought this Motion while there are no pending matters before this Court, and while the Florida District Court Action remains stayed. Accordingly, now is the appropriate time to evaluate whether a recusal is warranted.

In *IBM Corp.*, the Second Circuit ordered the recusal of a judge who had presided over litigation between the same parties for numerous years. *See IMB Corp.*, 45 F.3d at 642. The post-judgment context of *IBM Corp.* is similar to here, where Mr. Woods has prevailed on the Motion to Enforce and although the Reopened Case has been kept open for monitoring purposes, no requests for relief are pending. Like *IBM Corp.*, the Reopened Case is essentially dormant, and Mr. Woods does not seek to overturn a decision that has already been entered or litigated. *Id.* at 643. Therefore, this Motion is properly timed and will not waste judicial resources.

In contrast to the case here, recusal motions filed after the entry of an adverse ruling are presumptively untimely. *Nisselson*, 2006 Bankr. LEXIS 5056, at *11.[10] This Motion is unlike the recusal motion in *Nisselson*, which was not filed until after this Court had already issued a contempt order, and the movants had not shown good cause for the delay. Here there is no delay, as the Motion has been filed without any adverse order having been issued. Similarly, granting this Motion would not waste judicial resources because Mr. Woods asks the Court to recuse itself from *potential* contempt proceedings in the Reopened Case—not the *entire* adversary proceeding. *See id.*

Since there are no pending matters in the Reopened Case and the Florida District Court Action is stayed, now is the appropriate time to consider whether a reasonable observer might question Judge Drain's impartiality concerning the above issues. *See IBM Corp.*, 45 F.3d at 643.

  b. <u>Mr. Woods Has Not Held Back a Post-Hoc Recusal Motion</u>

Mr. Woods' Motion is not a fall-back for any adverse ruling. Indeed, and as discussed above, Mr. Woods *prevailed* against the Reorganized Debtors' Motion to Enforce. Instead, this Motion is properly timed to seek recusal from a *future* matter.

The basis for this Motion materialized when this Court entered its Order dated January 15, 2020, by which it kept the Reopened Case open "to permit the Reorganized Debtors to seek relief if the Florida District Court Action threatens a violation of the Stipulation." [Dkt. No. 1447]. At the November Hearing, Judge Drain unequivocally foreshadowed that if Mr. Woods moves forward against the Florida Defendants based on the tortious conduct alleged in the Second Amended Complaint, Mr. Woods will face contempt and sanctions in this Court. *See* 2019-11-22 Hr'g Tr. 243:16-25.

---

[10] *See also In re Olsen*, 358 B.R. 609, 624 (S.D.N.Y. Bankr. 2007) (holding that a recusal motion brought after the scheduled starting time of an evidentiary hearing was untimely). This is not the fact pattern here, where Mr. Woods brought his Motion well in advance of a potential contempt hearing.

In a hearing on such issues, the narrow question will be whether Mr. Woods' prosecution violates the Stipulation by "seeking determinations of claims based on, or challenging, the conduct of the . . . Chapter 11 Cases . . . ," or in other words, whether the Florida Defendants are being sued for conduct taken within the scope of their employment.[11] Judge Drain has already made clear that that in his view, the Florida Defendants were acting on behalf of 21C at all times, did not interfere by improper means, and did not act in bad faith, and therefore the Discharge protects them. *See* 2019-11-22 Hr'g Tr. 243:8-15. Therefore, in a hearing before Judge Drain as to whether continued litigation against the Florida Defendants violates the Discharge—made possible by this Court's recent Order keeping the Reopened Case open—Mr. Woods has already lost.

One might attempt to argue that this Motion could have been brought shortly after the June Hearing, when Judge Drain alluded to treating Mr. Woods like Michael Avenatti (an attorney accused of wire fraud, bank fraud, extortion, defrauding clients, and other offenses). *See* 2019-06-27 Hr'g Tr. 27:12-16. However, such argument ignores the test for timeliness regarding recusal motions. First, Section 455(a) provides that a judge "**shall** disqualify himself in **any proceeding** in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). Courts recognize that the mandate of Section 455(a) is not necessarily restricted to a certain time frame in ongoing legal proceedings. *See IBM Corp.*, 45 F.3d at 643; *Nisselson*, 2006 Bankr. LEXIS 5056, at *9–10; *Olsen*, 358 B.R. at 624. Second, while Judge Drain had clearly taken a partial position concerning the Florida District Court Action, he did not clearly do so concerning the Motion to Enforce. Put another way, Judge Drain's comments at the June Hearing did not establish that Mr. Woods stood no chance at the evidentiary hearing on

---

[11] Woods has argued that intentionally wrongful, tortious, and/or bad faith conduct (including making misrepresentations) is never within the scope of employment.

14

the Motion to Enforce, which Mr. Woods ultimately won. Then, in contrast, Judge Drain's conduct at the November Hearing established that Mr. Woods will inevitably face contempt and sanctions if he proceeds with litigation, despite the recent Order finding that the Exculpation does not bar Mr. Woods Action and accordingly finding no basis to sanction him. *See* [Dkt. No. 1447].

Here, Mr. Woods could not move for a recusal until after this Court entered an Order resolving the Motion to Enforce. With such Order entered recently, and with the Florida District Court Action still stayed, now is the appropriate time to bring this Motion because there is no pending relief and no judicial resources will be wasted if a recusal is granted, which it should be.

### 2. Judge Drain's Impartiality May Reasonably Be Questioned

No reasonable observer in these proceedings could conclude that Judge Drain will be impartial at a potential contempt hearing concerning whether Mr. Woods' pursuit of the Florida District Court Action violates the Stipulation. Therefore, Judge Drain must recuse himself from all aspects of the Reopened Case related to Mr. Woods.

The Second Circuit has made clear that the standard for recusal motions is objective reasonableness. *See IBM Corp.*, 45 F.3d at 644. In *IBM Corp*, a judge had denied a joint motion to dismiss a case which the prosecution conceded was "without merit," and also denied joint requests to allow the parties to dispose of billions of pages of documents that cost IBM several million dollars in storage fees each year. *Id.* at 642. In addition to such rulings, the judge commented on the parties in a newspaper interview. *Id.* at 642–43. The Second Circuit emphasized that even assuming that "the [j]udge's *subjective* disposition [was] one of impartiality," the court still held that it was "manifestly clear" that a reasonable observer would question the judge's impartiality under such circumstances. *Id.* at 644 (emphasis added).

The First Circuit has also cautioned that a judge's appearance of impartiality can become compromised by public statements. In *In re Boston's Children First*, the First Circuit ordered the recusal of a judge who issued media statements as part of his campaign to ensure that his orders would be enforced. *See In re Boston's Children First*, 244 F.3d 164, 169 (1st Cir. 2001). The First Circuit noted that when there is public attention drawn to a legal matter, even ambiguous comments may create an appearance of impropriety that Section 455(a) is designed to address. *Id.* at 170. "Regardless of a judge's actual impartialiy, [when] a reasonable person might perceive bias to exist, [] this cannot be permitted." *Id.* at 171.

Given the statements listed in Section II(G) above that evidence a high degree of antagonism against Mr. Woods, as well as certain insulting comments that were promptly relayed in the media, it is manifestly clear that a reasonable observer would question Judge Drain's impartiality.

At the November Hearing, Judge Drain publically antagonized Mr. Woods at tremendous length for pursing the Florida District Court Action. Having previously branded Mr. Woods' lawsuit as a "smear campaign" and likening Mr. Woods to Michael Avenatti (*see* Section II(D) above), Judge Drain began a diatribe unrelated to the legal issues presented by the Motion to Enforce.[12] Judge Drain repeatedly shouted that Mr. Woods' lawsuit was "fantasy land," "totally bizarre," and "absurd." 2019-11-22 Hr'g Tr. 182:11-18; 183:4-5; 183:7-8; 184:3; 234:12-25. At

---

[12] The Chapter 11 Cases were reopened for the specific purpose of, *inter alia*, allowing the Reorganized Debtors to seek relief under the Exculpation and Injunction. [Dkt. No. 1373]. In fact, and over the Reorganized Debtors' argument to the contrary, the Court had to acknowledge that the Discharge was not at issue at the November Hearing because Mr. Woods had entered into the Stipulation pursuant to the Court's instructions following the June Hearing. Therefore, whether the Florida Defendants were acting on behalf of 21C was outside the scope of the issues properly before the Court at the November Hearing. The sole issues were whether the acts taken by the Florida Defendants had both timing and tie in to the bankruptcy proceedings, which the Court found they did not.

16

a boiling point, Judge Drain stated that Mr. Woods and/or his counsel had to have "no brain" in order to have brought the Florida District Court Action. *See* 2019-11-22 Hr'g Tr. 207:2-16.[13]

Additionally, because the Florida District Court Action was not barred by the Exculpation (as the Court held), it was unnecessary to inquire—and much less rule upon—the Florida law issues concerning tortious interference and civil conspiracy. Yet, prior to concluding that "[Mr. Woods] has no brain," Judge Drain made up several "findings of fact" regarding the motivations of the Florida Defendants and 21C's board of directors (the "**Board**") in order to support his dicta opinion that Ms. Commins-Tzoumakas and Mr. Spalding were acting as agents of 21C at all times and did not commits by interfering with Mr. Woods' payment. Judge Drain made such "findings" despite his former promise that he would leave questions of Florida law to the Florida Court. 2019-11-22 Hr'g Tr. 242:17-20.

The most egregious of such "made up" facts include: (1) that 21C's Board authorized certain false and defamatory letters to be sent to Mr. Woods from outside counsel; and (2) that under no circumstances would the Board have authorized a payment to Mr. Woods in the time period immediately following his termination without cause. There was no testimony or other evidence that the Board authorized outside counsel to send letters disclaiming **all** liability for payment to Mr. Woods, or that 21C would have refused to pay Mr. Woods a penny following his termination under **any** circumstances. Indeed, there was substantial testimony to the contrary; including that 21C was ready and willing to pay Mr. Woods $4M if he signed a release. Concerning item (2) above, Judge Drain cited only his personal past experience in "representing bondholders." 2019-11-22 Hr'g Tr. 190:19-25.

---

[13] The very same evening of the November Hearing, Law360 published an article, "Judge Says Atty Has 'No Brain' for Seeking $9M Bonus Pay," attached hereto as Exhibit "E."

17

Because Judge Drain had already decided that the Florida Defendants' conduct in question was not covered by the Exculpation, these inappropriate "findings of fact" were: (i) well outside the scope of the Motion to Enforce (in that they addressed topics not noticed for hearing); (ii) not necessary to resolve the Motion to Enforce; and (iii) clearly intended to spite Mr. Woods' by undermining his arguments in the Florida District Court Action. Moreover, in seizing key Florida law issues from the Florida Court during the motion to dismiss stage of litigation, Judge Drain wrongfully construed facts in the light *least* favorable to Mr. Woods, in contradiction to the axiomatic rule of accepting well-plead allegations as true upon a motion to dismiss.

To say the least, the above conduct evidences a high degree of antagonism toward Mr. Woods that mandates recusal under Section 455(a). *See Liteky v. United States*, 510 U.S. at 555. Additionally, the immediate release of a news article headlined that Mr. Woods has "no brain" according to Judge Drain, mere hours after the hearing, further supports the reasonable conclusion that Judge Drain cannot be impartial in a subsequent judgment. It does not matter whether Judge Drain intended such statement to be broadcasted because any reasonable person hearing a judge proclaim that a litigant has "no brain" would question that judge's impartiality.

## IV.    CONCLUSION

WHEREFORE, Mr. Woods respectfully requests that the Hon. Robert D. Drain be recused from the Reopened Case, along with any additional relief that the Court deems just and proper.

| | |
|---|---|
| Dated: February 12, 2020 | Respectfully submitted,<br><br>**ZUMPANO PATRICIOS, P.A.**<br><br>By: /s/ *Leon N. Patricios*<br>Leon N. Patricios (admitted *Pro Hac Vice*)<br>312 Minorca Avenue<br>Coral Gables, FL 33134<br>Telephone: (305) 444-5565<br><br>*Attorneys for **Andrew L. Woods*** |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic mail this 12th day of February, 2020 on all counsel or parties of record on the Service List below.

By:    */s/ Leon N. Patricios*
       Leon N. Patricios

### SERVICE LIST

**SULLIVAN & WORCESTER LLP**
Jeffrey R. Gleit, Esq.
Allison H. Weiss, Esq.
Clark A. Freeman, Esq.
1633 Broadway
New York, New York 10019
(212) 660-3000 (Telephone)
(212) 660-3001 (Facsimile)
jgleit@sullivanlaw.com
aweiss@sullivanlaw.com
cfreeman@sullivanlaw.com

**KIRLAND & ELLIS LLP**
Christopher Marcus, P.C.
Mark McKane, P.C.
601 Lexington Avenue
New York, New York 10022
(212) 446-4800 (Telephone)
(212) 446-4900 (Facsimile)
Christopher.marcus@kirkland.com
Mark.mckane@kirkland.com