**Exhibit "A"**

**ZUMPANO PATRICIOS, P.A.**
312 Minorca Avenue
Coral Gables, FL 33134
Leon N. Patricios (admitted *Pro Hac Vice*)
Telephone: (305) 444-5565

*Counsel to Andrew L. Woods*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 21ST CENTURY ONCOLOGY HOLDINGS, INC., *et al.*, | Case No.: 17-22770 (RDD) |
| Reorganized Debtors. | (Jointly Administered) |

**ANDREW L. WOODS' DECLARATION IN SUPPORT OF MOTION FOR RECUSAL**

ANDREW L. WOODS, being at least eighteen (18) years of age and under penalty of perjury pursuant to 28 U.S.C. § 1746, declares as follows:

1. This Declaration is based upon my personal knowledge.

2. I am the chairman and CEO of Liberty Partners Group, LLC, which is a federal government relations and healthcare lobbying firm located in Washington, D.C. I am also an attorney not presently engaged in the practice of law.

3. This Declaration concerns my sincere belief that if I exercise my right to proceed with the Florida District Court Action,[1] I will be subjected to contempt proceedings before a judge who is not impartial.

4. In 2017 and 2018, I attended proceedings before Judge Drain in connection with my Claim against the Reorganized Debtors, and their Objection thereto. Although my Claim was ultimately held to be capped under the Bankruptcy Code (subject to my pending Appeal),

---

[1] Capitalized terms used but defined not herein shall have the meanings ascribed to them in Andrew L. Woods' Motion for Recusal filed on February 12, 2020 (the "**Motion**").

Judge Drain gave due consideration to my arguments during such proceedings. Unfortunately, I have not been afforded the same treatment concerning the Reopened Case and the issues therein.

5.  After I initiated the Florida District Court Action, the Reorganized Debtors moved this Court to reopen the Chapter 11 Cases in order to then enjoin my lawsuit and sanction me.

6.  At the June Hearing, and in my presence,[2] Judge Drain renounced his prior opinion that I was a "formidable person," and instead likened me to Michael Avenatti, an attorney accused of serious federal offenses including wire fraud, bank fraud, extortion, and defrauding clients. 2019-06-27 Hr'g Tr. 27:12-15; 41:22-24.

7.  Judge Drain also criticized me for running a "smear campaign" against 21C by attaching a press release issued by my local counsel in Florida to my Complaint. I never attached such press release to the Complaint or to any other pleading. In truth, it was the Reorganized Debtors who attached the press release to their Motion to Reopen. 2019-06-27 Hr'g Tr. 27:3-9.

8.  Some months later, I also attended the November Hearing in person to testify that the Florida District Court Action does not violate the Exculpation, the Injunction, or any other provision of the Plan, and that I am not trying to make an end-run around the Chapter 11 Cases.

9.  Following my testimony, I remained in the courtroom to observe oral arguments on the issues raised in the Motion to Enforce. During such arguments, and Judge Drain's bench ruling immediately thereafter, it became clear to me that Judge Drain bears a high degree of antagonism towards me and will not conduct a fair hearing if the Reorganized Debtors initiate contempt proceedings against me.

---

[2] Although then recovering from hospitalization and in reliance on a walking cane, I attended the June Hearing by train from Baltimore.

2

10. As detailed in Section II(G) of the Motion, Judge Drain directed numerous insulting comments at my attorney and at me, and shouted that I must have "no brain" to have brought my lawsuit in Florida. 2019-11-22 Hr'g Tr. 207:2-16. On the very same evening as the November Hearing, Law360 published an article about the Reopened Case titled "Judge Says Atty Has No Brain for Seeking $9M Bonus Pay."

11. In addition to making insulting personal comments, Judge Drain has shown that he already made up his mind that my pursuit of the Florida District Court Action will violate the Stipulation, and that he is going to rule against me in the event of a contempt hearing (which the Reorganized Debtors will surely bring if I attempt to proceed). Judge Drain referred to my lawsuit at length as "fantasy land," "totally bizarre," and "absurd." 2019-11-22 Hr'g Tr. 182:11-18; 183:4-5; 183:7-8; 184:3; 234:12-25

12. Furthermore, Judge Drain slandered my professional name in: (i) insisting that I "put[] my head in the sand" with respect to 21C's closed-door motives for not paying me, which I have no personal knowledge of because I was excluded from Board meetings at the relevant times; and (ii) suggesting that "[no] sophisticated person could in good faith make [my] argument[s]." 2019-11-22 Hr'g Tr. 183:12-13; 195:12-13. According to Judge Drain, I must either be an idiot or a crook.

13. Meanwhile, Judge Drain rained high praise upon the Florida Defendants—in particular Mr. Spalding and Ms. Commins—who apparently "should have gotten a medal for having the wherewithal not to favor an insider by paying [me] four million dollars." 2019-11-22

3

Hr'g Tr. 191:3-9. These are the same individuals that I allege tortiously interfered with 21C's obligation to pay me, which the record shows it intended to honor (at least in part).[3]

14.  Although applicable law bound the Court to rule in my favor concerning the Motion to Enforce, it is my belief, having been present at the November Hearing, that Judge Drain is attempting to intimidate me from prosecuting the Florida District Court Action by threatening me with a contempt holding and sanctions if I proceed.

15.  I believe that Judge Drain has clearly pre-judged a potential contempt hearing in this matter, and he did so in part by making up facts that are not supported anywhere in the record. Based on his antagonism and pre-disposition in favor of the Reorganized Debtors, I believe he cannot be impartial at a subsequent hearing in the Reopened Case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 10, 2020

Andrew J. Woods

---

[3] The testimony of Mr. Spalding indicated that 21C instructed him to pay me the sum of $4M if I executed a release. My position is that 21C owes me an additional $5M (a total of $9M) for my performance under my employment agreement.

4